Lee D. Winston
lwinston@winstoncooks.com
Roderick T. Cooks
rcooks@winstoncooks.com
Winston Cooks, LLC
420 20th Street North
Suite#2200
Birmingham, AL 35203
Telephone:    (205) 502-0970
Facsimile:    (205) 278-5876

Attorneys for the Plaintiff and the Proposed Class

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| DEREK L. MOBLEY, for and on behalf of himself and other persons similarly situated,<br><br>         Plaintiffs,<br><br>    vs.<br><br>WORKDAY, INC.,<br><br>         Defendant. | **CLASS ACTION**<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## NATURE OF COMPLAINT

Plaintiff, Derek L. Mobley ("Mobley" or "Representative Plaintiff") brings this suit for injunctive, monetary, and declarative relief against Defendant Workday, Inc. ("Workday") for engaging in a pattern or practice of illegal discrimination on the basis of race, age, and disability in violation of Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1866 ("42 U.S.C. § 1981), the Age Discrimination in Employment Act of 1967, and the ADA Amendments Act of 2008 ("ADAAA"). Defendant Workday, Inc.'s ("Workday" or "Defendant") continuous and systemic pattern or practice of discriminatory job screening-which disproportionately

disqualifies African-Americans, individuals over the age of forty (40) and individuals with disabilities from securing gainful employment-resulted in the denial of employment to Mr. Mobley.

Defendant Workday, Inc.'s artificial intelligence ("AI") systems and screening tools rely on algorithms and inputs created by humans who often have built-in motivations, conscious and unconscious, to discriminate. Defendant Workday, Inc. unlawfully offers an algorithm-based applicant screening system that determines whether an employer should accept or reject an application for employment based on the individual's race, age, and or disability.

## JURISDICTION AND VENUE

1. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343(3), and (4), 2201 and 2202, 42 U.S.C. 2000d-2 and 2000e5(f), and 29 U.S.C. § 621, et seq.

2. This is a suit authorized and instituted pursuant to the Act of Congress known as Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq., as amended, "The Civil Rights Act of 1866," 42 U.S.C. § 1981, the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, et seq., and the ADA Amendments Act of 2008 ("ADAAA").

3. Venue is proper in the Northern District of California under 28 U.S.C. § 1391(B) & (c) because Workday is located here and the acts complained of occurred in the Northern District of California.

## PARTIES

4. Plaintiff, Derek Mobley is an African-American male, over the age of forty (40) and who suffers from depression and anxiety. Mr. Mobley is an applicant.

5.  Defendant Workday is an employment agency pursuant to Section 703(b) of the Act, 42 U.S.C. § 2000e-2(b). Defendant Workday's headquarters and principal place of business is located at 6110 Stoneridge Mall Road, Pleasanton, California.

## CONDITIONS PRECEDENT TO SUIT UNDER TITLE VII, THE ADEA AND THE ADAAA

6.  On June 3, 2021, Mr. Mobley filed a charge of discrimination with the Oakland Field Office of the United States Equal Employment Opportunity Commission. On July 19, 2021, Mr. Mobley filed an amended charge of discrimination. On November 22, 2022, the EEOC issued Mr. Mobley a Dismissal and Notice of Right to Sue, giving him ninety-days from its receipt to file a case. Thus, Mr. Mobley has satisfied all prerequisites to bring this action pursuant to Title VII, the ADEA, and the ADAAA.

7.  Mr. Mobley's claims arising under 42 U.S.C. § 1981 do not require administrative exhaustion and are subject to a four-year statute of limitations.

## CLASS ACTION ALLEGATIONS

8.  The Representative Plaintiff brings this action in his own behalf and on behalf of all others similarly situated, pursuant to Rule 23 of the Federal Rules of Civil Procedure, and seek to represent the following subclasses:

•All African-American applicants or former applicants who from June 3, 2019 to the present who have not been not been referred and/or permanently hired for employment as a result of the challenged discriminatory screening process.

•All applicants or former applicants over the age of forty (40) who from June 3, 2019 to the present who have not been referred and/or permanently hired for employment as a result of the challenged discriminatory screening process.

•All disabled applicants or former applicants who form June 3, 2019 to the present who have not been referred and/or permanently hired for employment as a result of the challenged discriminatory screening process.

Mr. Mobley in the case at bar challenges systemic discrimination by, and seeks class-wide relief against, Workday for its administration and dissemination of discriminatory screening products as part of its employment policies and procedures which constitute a pattern and practice of discrimination on the basis of race, age, and disability with respect to selections. These policies and procedures have been continuously utilized by the Defendant since at least 2018, and their implementation and use has personally harmed the named the Plaintiff, and the putative class members he seeks to represent.  Moreover, the selection tools marketed by Workday to its customers allows these customers to manipulate and configure them in a discriminatory manner to recruit, hire, and onboard employees. Workday's products process and interpret an applicant's qualifications and recommend whether the applicant should be accepted or rejected.

These tools when utilized by private companies as administered by Workday relies upon subjective practices which have caused disparate impact and disparate treatment to applicants who are African-American, over the age of forty (40) or and/or disabled.  Applicants who are not members of these protected groups and who are similarly situated to the Representative Plaintiff, have not been subjected to such discriminatory treatment.

### A.   COMMON QUESTIONS OF LAW AND FACT

9. The prosecution of the claims of the Representative Plaintiff requires adjudication of numerous questions of law and fact common to his individual claims and those of the putative classes he seeks to represent.  The common questions of law would include, inter alia:  (a) whether the Defendant's screening products cause African-American, individuals over the age of

forty (40), and/or individuals with a disability to be disproportionately and more likely denied employment; (b) whether the Defendant's doing so cannot be justified as a necessary business practice for evaluating potential employees; and (c) whether the Defendant's screening products have a disparate impact on applicants who are African-American, over the age of forty (40), and/or disabled in violation of the "Civil Rights Act of 1964," 42 U.S.C. § 2000 et seq., the "Civil Rights Act of 1866," 42 U.S.C. § 1981and 1981a, the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, et seq., and the ADA Amendments Act of 2008 ("ADAAA"). The common questions of fact would include, inter alia: (1) whether Workday's administration of its screening products discriminated against the aforementioned applicants because of their race, age, and/or disability with regards to hiring; (2) whether compensatory and punitive damages, injunctive relief, and other equitable remedies for the class are warranted; and (3) whether Workday discriminated against the aforementioned protected groups in other terms and conditions of employment. The details of the Representative Plaintiff's claims are encompassed within the claims prosecuted on behalf of the class and set forth in this Complaint.

### B.   TYPICALITY

10.   The claims of the Representative Plaintiff are typical of those of the members of the class. The Representative Plaintiff and all class members have been and are similarly adversely affected by the systemic racially discriminatory practices complained of herein. Specifically, the representative claims, like those of the class members, arise out of Defendant's pervasive discriminatory conduct with regard to aforementioned discrimination in hiring and other terms and conditions of employment. The relief necessary to remedy the claims of the Representative Plaintiff is the same relief that is necessary to remedy the claims of the putative class members in this case. The Representative Plaintiff seeks the following relief for individual claims and class claims asserted herein: (1) declaratory judgment that Defendant has engaged in

systemic discrimination against African-Americans, individuals over the age of forty (40), and/or the disabled; (2) a permanent injunction against such continuing discrimination; (3) injunctive relief which reforms Workday's screening products, policies, practices and procedures so that the Representative Plaintiff and the class members will be able to compete fairly in the future for jobs and enjoy terms and conditions of employment traditionally afforded similarly situated employees outside of the protected categories; (4) backpay, front pay, compensatory damages, and other equitable remedies necessary to make the Plaintiff, and the class, whole from Workday's past discrimination; and, (5) attorneys' fees, costs, and expenses.

### C. NUMEROSITY AND IMPRACTICABILITY OF JOINDER

11. The class that the Representative Plaintiff seeks to represent is too numerous to make joinder practicable. The proposed class consists of numerous former, current, and future applicants who have been denied employment due to the discriminatory administration of Workday's screening products. Workday's pattern or practice of discrimination also makes joinder impracticable by making it impractical and inefficient to identify many members of the class prior to the determination of the merits of Workday's class wide liability. Thus, the number of Class members is currently indeterminate, but is certainly numerous.

### D. ADEQUACY OF REPRESENTATION

12. The Representative Plaintiff will fairly and adequately protect the interests of the class inasmuch as they are broadly representative, as reflected in the preceding paragraphs. There are no conflicts of interest present with the members of the proposed class as each would benefit from the imposition of a remedy for the Defendant's discriminatory employment practices. The Representative Plaintiff has retained counsel experienced in litigating major class actions in the field of employment discrimination, and who are prepared and able to meet the time and fiscal demands of class action litigation of this size and complexity. The combined

interest, experience, and resources of the Representative Plaintiff and his counsel to litigate competently the individual and class claims of employment discrimination at issue satisfy the adequacy of representation requirement under Fed.R.Civ.P. 23(a)(4).

### E. EFFICIENCY OF CLASS PROSECUTION OF COMMON CLAIMS

13. Certification of a class of similarly-situated aforementioned applicants is the most efficient and economical means of resolving the questions of law and fact that are common to the individual claims of the Representative Plaintiff and the proposed class. The individual claim of the Representative Plaintiff requires resolution of the common question of whether Defendant has engaged in a systemic pattern of discrimination against African-Americans, those over forty (40) and the disabled. The Representative Plaintiff seeks remedies to undo the adverse effects of such discrimination in his own life and career. The Representative Plaintiff has standing to seek such relief because of the adverse effect that such discrimination has had on him individually and on the putative classes he seeks to represent, in general. In order to gain such relief for himself, as well as for the putative class members, the Representative Plaintiff will first establish the existence of systemic discrimination as the premise of the relief they seek. Without class certification, the same evidence and issues would be subject to re-litigation in a multitude of individual lawsuits with an attendant risk of inconsistent adjudications and conflicting obligations. Certification of the subclasses affected by the common questions of law and fact is the most efficient and judicious means of presenting the evidence and arguments necessary to resolve such questions for the Representative Plaintiff, the class and the Defendant. The Representative Plaintiff's individual and class claims are premised upon the traditional bifurcated method of proof and trial for systemic disparate treatment claims of the type at issue in this complaint. Such a bifurcated method of proof and trial is the most efficient method of resolving such common issues.

## F.    CERTIFICATION IS SOUGHT PURSUANT TO FED. R. CIV. P. 23(b)(2)

14.    Workday has acted on grounds generally applicable to the Representative Plaintiff and the proposed class by adopting and following systemic practices and procedures that discriminate on the basis of race, age, and/or disability.  Workday's screening products are regularly used to discriminate on the basis of race, age, and/or disability.  Workday has refused to act on grounds generally applicable to the putative class by: (1) refusing to adopt or follow screening productions and selection procedures which do not systemically discriminate on the basis of race, age, and/or disability.  Workday's discriminatory screening products have made appropriate final injunctive relief and declaratory relief with respect to the class as a whole.  The injunctive relief and declaratory relief are the predominate reliefs sought because they are both the cumulation of the proof of the Defendant's individual and class-wide liability at the end of Stage I of a bifurcated trial and the essential predicate for the Representative Plaintiff and the class members entitlement to monetary and non-monetary remedies at Stage II of such a trial. Declaratory and injunctive relief flow directly and automatically from proof of the common questions of law and fact regarding the existence of systemic discrimination against individuals on the basis of race, age, and/or disability.  Such relief is the factual and legal predicate for the Representative Plaintiff's and the class members entitlement to injunctive and equitable remedies caused by such systemic discrimination.

## G. ALTERNATIVELY CERTIFICATION IS SOUGHT PURSUANT TO FED. R.CIV. P. 23(b)(3)

15.    The common issues of fact and law affecting the claims of the Representative Plaintiff and proposed class members, including, but not limited to, the common issues identified above, predominate, over any issues affecting only individual claims.  A class action is superior to other available means for the fair and efficient adjudication of the claims of the Representative

Plaintiff and members of the proposed class. The cost of proving the Defendant's pattern or practice of discrimination makes it impracticable for the named Plaintiffs and members of the proposed class to control the prosecution of their claims individually. The Northern District of California is the most logical forum in which to litigate the claims of the Representative Plaintiff and the proposed class in this case because the Defendant's home office is here and it engages in or ratifies illegal conduct adversely affecting the Plaintiff here.

### H. ALTERNATIVELY, CERTIFICATION IS SOUGHT PURSUANT TO FED. R. CIV. P. 23(c)(4) FOR INJUNCTIVE AND DECLARATORY RELIEF.

16. Alternatively, claims for injunctive and declaratory relief for the Injunctive Relief Class are properly certified under Federal Rule of Civil Procedure 23(c)(4) because such claims present only common issues, the resolution of which would advance the interests of the parties in an efficient manner.

### I. ALTERNATIVELY, CERTIFICATION IS SOUGHT PURSUANT TO FED. R. CIV. P. 23(c)(4) FOR CLASS WIDE LIABILITY.

17. Alternatively, class wide liability claims are properly certified under Federal Rule of Civil Procedure 23(c)(4) for the Classes because such claims present only common issues, the resolution of which would advance the interests of the parties in an efficient manner.

### J. PUNITIVE DAMAGES MAY ALTERNATIVELY BE CERTIFIED PURSUANT TO FED.R.CIV.P. 23(b)(2).

18. Punitive damages liability may alternatively be certified under Federal Rule of Civil Procedure 23(b)(2) because such relief focuses on the conduct of Workday and not the individual characteristics of the Plaintiff and are an allowable form of incidental monetary relief.

**CLAIMS OF REPRESENTATIVE PLAINTIFFS**

**Derek Mobley**

19. Derek L. Mobley is an African-American male. Mr. Mobley possesses a Bachelor's degree in Finance from Morehouse College, and an Associate's Degree in Network Systems Administration, from ITT Technical Institute. Mr. Mobley is over the age of forty (40) and suffers from anxiety and depression.

20. Since 2018, Mr. Mobley has applied for at least 80-100 positions that upon information and belief use Workday, Inc. as a screening tool for talent acquisition and/or hiring. He has been denied employment each and every time.

21. Upon information and belief, Workday, Inc. provides screening tools that allow its customers to use discriminatory and subjective judgments in reviewing and evaluating employees for hire and allows the preselection of applicants outside of the protected categories. Indeed, because of the utilization of these screening products, there is no need in this case to distinguish one employer/client from another. Similarly, as the Representative Plaintiff here is challenging the use of these common discriminatory screening products per se, and not merely the individualized manifestations of their use, the fact that the common components may vary to some small degree or be applied by different customers is of no consequence.

22. If an individual does not make it past these Workday screening products, he/she will not advance in the hiring process.

23. Workday provides this service for hundreds if not thousands of companies, including numerous Fortune 500 firms. Individuals impacted the same way by these processes number in the thousands if not tens of thousands.

24. The selection tools and/or tests utilized by Workday, Inc. in making selection decisions-to include screening and hiring applicants discriminate on the basis of race in violation

of §703(k) of Title VII, 42 U.S.C. §2000e-2(k).  Upon information and belief, these processes disparately impact African-American applicants because the tests have the effect of disproportionately excluding African-Americans. Furthermore, the tests or selection procedures are not job-related, nor are they consistent with any business necessity.

25. Title VII prohibits discrimination by employment agencies.  Section 703(b) of the Act, 42 U.S.C. § 2000e-2(b), reads:

"it shall be an unlawful employment practice for an employment agency to fail or refuse to refer for employment, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin, or to classify or refer for employment any individual on the basis of his race, color, religion, sex, or national origin.  Section 701(c) of the Act, 42 U.S.C. § 2000e(c), defines the term "employment agency" as: any person regularly undertaking with or without compensation to procure employees for an employer or to procure for employees opportunities to work for an employer and includes an agent of such a person.  Workday, Inc. Is an employment agency under Title VII.

26. Upon information and belief, Mr. Mobley and other African-Americans have been discriminated against because of their race (African-American), in violation of the Civil Rights Act of 1964, as amended.

27. Furthermore, the screening tools marketed by Workday for the administration of its products discriminate on the basis of disability in violation of the ADA Amendments Act of 2008 (ADAAA).  Upon information and belief, these processes disparately impact disabled applicants because the screening products have the effect of disproportionately excluding individuals with disabilities.  Furthermore, the screening products are not job-related, nor are they consistent with any business necessity.

28. Finally, the screening tools marketed by Workday for hiring applicants discriminate on the basis of age in violation of the Age Discrimination in Employment Act of 1967 (ADEA).

29. Upon information and belief, these screening tools disparately impact applicants over the age of 40 because the tests have the effect of disproportionately excluding them. Furthermore, the screening tools are not job-related, nor are they consistent with any business necessity.

## CLASS CLAIMS

**A.    COUNT ONE-Intentional Discrimination on the Basis of Race
in Violation of Title VII of the Civil Rights Act of 1964 and
42 U.S.C. § 1981.**

30. Representative Plaintiff restates and incorporates by reference all applicable paragraphs above as part of this Count of the Complaint.

31. Workday has discriminated against the Representative Plaintiff and the class he Seeks to represent with regards to selection procedures and other terms and conditions of employment because of their race, in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981.

32. Workday's conduct has been intentional, deliberate, willful and conducted with disregard for the rights of the Plaintiff and members of the proposed class.

33. By reason of Workday's discriminatory employment practices, the Representative Plaintiff and the proposed class members have experienced extreme harm, including loss of compensation, wages, back and front pay, and other employment benefits, and, as such, are entitled to all legal and equitable remedies available under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981.

**B.    COUNT TWO-Disparate Impact Discrimination on the Basis of Race and Disability in Violation of Title VII of the Civil Rights Act of 1964, and the ADA Amendments Act of 2008.**

34. Representative Plaintiff restates and incorporates by reference all applicable paragraphs above as part of this Count of the Complaint.

35. The screening tools marketed Workday for making selection decisions-to include hiring discriminate on the basis of race and/or disability.

36. Workday's screening tools allow employers to consciously or unconsciously discriminate against individuals on the basis of race and/or disability in making hiring decisions. There is no business necessity justifying the disparate impact on individuals in the protective category.

37. Because of this, the decision-makers are free to exercise their discretion in an unguided, subjective manner that provides a ready mechanism for discrimination.

38. Workday's screening tools discriminated against the Representative Plaintiff and the proposed class both within and outside the liability period in this case.

39. As a direct result of Workday's discriminatory screening tools as described above, the Representative Plaintiff and the class he seeks to represent have suffered damages including, but not limited to, lost past and future income, compensation, and benefits.

**C.    COUNT THREE- Intentional Discrimination
Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 623(a)(1)**

40. Representative Plaintiff restates and incorporates by reference all applicable paragraphs above as part of this Count of the Complaint.

41. This claim is brought by the Representative Plaintiff on behalf of himself and the collective he seeks to represent. Workday's screening tools discriminate against applicants aged

40 and older. Workday marketed applicant screening tools it knew intentionally discriminated against the Representative Plaintiff and the collective in violation of the ADEA.

42. These screening tools have the effect of denying the Representative Plaintiff and the collective of employment opportunities because of their age. The discriminatory acts that constitute Workday's pattern and/or practice of discrimination have occurred both within and outside the liability period in this case.

43. As a direct result of Workday's marketing its discriminatory screening tools as described above, the Representative Plaintiff and the collective have suffered damages including, but not limited to, lost past and future income, compensation, and benefits.

44. The foregoing conduct constitutes illegal, intentional discrimination and unjustified disparate treatment prohibited by 29 U.S.C. § 623(a)(1).

### D.   COUNT FOUR- Disparate Impact Discrimination
### Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 623(a)(2)

45. Representative Plaintiff restates and incorporates by reference all applicable paragraphs above as part of this Count of the Complaint.

46. This Claim is brought by Representative Plaintiff on behalf of himself and the collective he seeks to represent. Workday maintains discriminatory policies, patterns, and/or practices that have an adverse impact on employees ages 40 and older in violation of the ADEA and are not, and cannot be, justified by reasonable factors other than age. Specifically, Workday's marketing of its screening tools have had a disparate impact on individuals over the age of 40.

47. Workday has administered these discriminatory screening tools both within and outside the liability period in this case.

48. As a direct result of Workday's discriminatory policies and/or practices as described above, the Representative Plaintiff and the collective he seeks to represent have suffered damages including, but not limited to, lost past and future income, compensation, and benefits.

**PRAYER FOR RELIEF**

WHEREFORE, the Representative Plaintiff and the Proposed Class pray for relief as follow:

1. Certification of the case as a class action on behalf the proposed subclasses;

2. Designation of Plaintiffs as representatives of the subclasses;

3. Designation of Plaintiffs' Counsel of record as Class Counsel;

4. A declaratory judgment that the practices complained of herein are unlawful and violate Title VII, 42 U.S.C. § 1981, the ADEA, and the ADAAA;

5. A preliminary and permanent injunction against the Company and its officers, agent, successors employees, representatives, and any and all persons acting in correct with them from engaging in each of the unlawful policies, practices, customs, and usages set forth herein;

6. An order that the Company institute and carry out policies, practices, and programs that provide equal employment opportunities for all minorities, and that it eradicate the effects of its past and present unlawful employment practices;

7. For back pay, front pay and other monetary relief according to proof (including interest and benefits);

8. For all damages sustained as a result of the Company's conduct according to proof;

9. For compensatory damages, nominal damages, and liquidated damages according to proof;

10. For exemplary and punitive damages in an amount commensurate with the Company's ability to pay, to deter future conduct, and to set an example for others;

11. For reasonable attorneys' fees and cost including under to the extent allowable by law;

12. Pre-judgment and post-judgment interest, as provided by law;

13. For such ancillary orders, decrees and such further legal and equitable relief as may be necessary to enjoin and restrain the improper conduct and wrongdoing of Defendant; and

14. For such other and further relief as the Court deems proper.

**JURY TRIAL DEMANDED**

Respectfully submitted,

/s/Roderick T. Cooks

/s/Lee D. Winston

Lee D. Winston
Roderick T. Cooks
Attorneys for the Plaintiffs and Proposed Class and Collective Members
*Pro Hac Vice Forthcoming*

**OF COUNSEL**:
Lee D. Winston
lwinston@winstoncooks.com
Roderick T. Cooks
rcooks@winstoncooks.com
Winston Cooks, LLC
420 20th Street North
Suite 2200
Birmingham, AL 35203
Telephone:   (205) 502-0970
Facsimile:   (205) 278-5876