JULIE A. TOTTEN (STATE BAR NO. 166470)
jatotten@orrick.com
ERIN M. CONNELL (STATE BAR NO. 223355)
econnell@orrick.com
KAYLA D. GRUNDY (STATE BAR NO. 300513)
kgrundy@orrick.com
ALEXANDRIA R. ELLIOTT (STATE BAR NO. 320293)
aelliottt@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105-2669
Telephone:     (415) 773-5700
Facsimile:      (415) 773-5759

JUSTIN M. WASHINGTON (SBN 334389)
justin.washington@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
355 S. Grand Avenue, Suite 2700
Los Angeles, CA, 90071
Telephone:     (213) 629-2020
Facsimile:      (213) 612-2499

Attorneys for Defendant
WORKDAY, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEREK L. MOBLEY, for and on behalf of himself and other persons similarly situated;<br><br>Plaintiff,<br><br>v.<br><br>WORKDAY, INC.<br><br>Defendant. | Case No. 4:23-cv-00770-YGR<br><br>**DEFENDANT WORKDAY, INC.'S MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:        September 12, 2023<br>Time:        2:00 p.m.<br>Courtroom:   1, 4th Floor<br>Judge:       Hon. Yvonne Gonzalez Rogers<br><br>Complaint Filed:  February 21, 2023 |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION TO DISMISS ................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES .............................................................. 2

I.     INTRODUCTION AND SUMMARY OF POINTS ................................................. 2

II.    ALLEGATIONS OF THE OPERATIVE COMPLAINT .......................................... 4

    A.    Workday Provides Customers With Software That Assists In Screening
           Applicants For Employment. ........................................................................ 4

    B.    Plaintiff Files A Charge Of Discrimination Before The EEOC Alleging
           Disparate Impact. ......................................................................................... 4

    C.    Mobley Brings This Class Action Alleging Claims Of Both Disparate
           Treatment And Disparate Impact. ................................................................ 5

III.   APPLICABLE LEGAL STANDARD ...................................................................... 6

IV.    PLAINTIFF FAILS TO ALLEGE THAT WORKDAY IS AN ENTITY THAT
      CAN BE SUBJECT TO LIABILITY UNDER TITLE VII, THE ADEA, OR THE
      ADA (ALL COUNTS) ............................................................................................. 6

    A.    An Employment Agency Must Be Engaged To A "Significant Degree" In
           Procuring Employment. ............................................................................... 7

    B.    Plaintiff Fails To Allege That Workday Is An Employment Agency................... 9

V.     PLAINTIFF'S INTENTIONAL DISCRIMINATION CLAIMS FAIL FOR
      MULTIPLE REASONS (COUNTS ONE AND THREE). ............................................. 10

    A.    Plaintiff Failed To Exhaust Intentional Discrimination Claims Under Title
           VII And The ADEA. .................................................................................... 11

    B.    Plaintiff Fails To Raise A Plausible Inference Of Intentional
           Discrimination On The Basis Of Race Or Age. ........................................... 12

    C.    Plaintiff's Allegations Of Discrimination Based On "Terms and Conditions
           Of Employment" And Invocation Of § 623(a)(1) Should Be Dismissed Or
           Struck. ......................................................................................................... 15

VI.    PLAINTIFF'S DISPARATE IMPACT CLAIMS FAIL FOR MULTIPLE
      REASONS (COUNTS TWO AND FOUR). ....................................................... 16

    A.    Neither Title VII Nor The ADEA Recognize A Disparate Impact Claim
           Against Employment Agencies. ................................................................... 17

        1.    Disparate Impact Claims Lie Only Where The Applicable Provision
                Focuses On Effects And Not Just Motivation. ............................................ 17

        2.    Title VII And The ADEA's Employment Agency Provisions Do
                Not Authorize Disparate Impact Claims. .................................................. 18

**TABLE OF CONTENTS**
(continued)

**Page**

B.     Plaintiff Has Insufficiently Pled A Disparate Impact Claim Under All Of The Statutes On Which He Relies........................................................................... 21

1.     Plaintiff Has Not Pled A Disparity............................................................ 21

2.     Plaintiff Has Not Pled A Specific Employment Practice......................... 22

3.     Plaintiff Has Not Sufficiently Pled Causation. ....................................... 24

VII.     CONCLUSION ............................................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Vivo, Inc.*,
  2012 WL 5525315 (N.D. Cal. Nov. 14, 2012) .......................................................... 20

*Alhayoti v. Blinken*,
  2022 WL 2869850 (N.D. Cal. July 21, 2022) .......................................................... 22

*Ali v. ServiceNow, Inc.*,
  2019 WL 11542365 (N.D. Cal. Sept. 23, 2019), *aff'd*, 797 F. App'x 322 (9th
  Cir. 2020) .......................................................................................................... 14, 15

*Ansari v. Mnuchin*,
  2017 WL 11696665 (N.D. Cal. Oct. 11, 2017) ................................................... 13, 14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................................. 6

*Barnhart v. Sigmon Coal Co.*,
  534 U.S. 438 (2002) ................................................................................................ 19

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................................. 6

*Blackman-Baham v. Kelly*,
  2017 WL 679514 (N.D. Cal. Feb. 21, 2017) ...................................................... 13, 15

*Borodaenko v. Twitter, Inc.*,
  2023 WL 3294581 (N.D. Cal. May 5, 2023) ........................................................... 22

*Brown v. Puget Sound Elec. Apprenticeship & Training Trust*,
  732 F.2d 726 (9th Cir. 1984) ................................................................................. 11

*Brush v. San Francisco Newspaper Printing Co.*,
  315 F. Supp. 577 (N.D. Cal. 1970), *aff'd*, 469 F.2d 89 (9th Cir. 1972) ............. 8, 10

*Canatella v. Reverse Mortg. Sols. Inc.*,
  2014 WL 7205146 (N.D. Cal. Dec. 17, 2014) ........................................................ 24

*Career Sys. Dev. Corp. v. Am. Home Ins. Co.*,
  2010 WL 11636254 (N.D. Cal. Aug. 11, 2010) ...................................................... 15

*Eldredge v. Carpenters 46 N. Cal. Ctys. Joint Apprenticeship & Training Comm.*,
  833 F.2d 1334 (9th Cir. 1987) ........................................................................... 16, 20

- iii -

*Epstein v. Wash. Energy Co.*,
    83 F.3d 1136 (9th Cir. 1996)................................................................... 15

*Flanagan v. Excel Staffing Sols., LLC*,
    2018 WL 558499 (N.D. Ill. Jan. 25, 2018) ........................................... 20

*Fonseca v. Sysco Food Servs. of Ariz., Inc.*,
    374 F.3d 840 (9th Cir. 2004)................................................................... 12

*Freeman v. Oakland Unified Sch. Dist.*,
    291 F.3d 632 (9th Cir. 2002)................................................................... 11

*Freyd v. University of Or.*,
    990 F.3d 1211 (9th Cir. 2021)................................................................. 21

*Griggs v. Duke Power Co.*,
    401 U.S. 424 (1971)................................................................................ 18

*Grigorescu v. Bd. of Trustees of San Mateo Cnty. Cmty. Coll. Dist.*,
    2019 WL 1790472 (N.D. Cal. Apr. 24, 2019) ...................................... 13

*Hill v. Mississippi State Emp.t Serv.*,
    918 F.2d 1233 (5th Cir. 1990)................................................................ 13

*Katz v. Regents of the Univ. of Cal.*,
    229 F.3d 831 (9th Cir. 2000)................................................................... 21

*Knievel v. ESPN*,
    393 F.3d 1068 (9th Cir. 2005)................................................................... 4

*Liu v. Uber Techs. Inc.*,
    551 F. Supp. 3d 988 (N.D. Cal. 2021) ............................................ 12, 21, 22, 24

*Lopez v. Pac. Mar. Ass'n*,
    2009 WL 10680881 (C.D. Cal. Apr. 3, 2009), *aff'd*, 657 F.3d 762 (9th Cir.
    2011) ...................................................................................................... 21

*Lucas v. Gold Standard Baking, Inc.*,
    2014 WL 518000 (N.D. Ill. Feb. 10, 2014) .......................................... 20

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792 (1973)................................................................................ 13

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
    545 U.S. 913 (2005)................................................................................ 13

*Moussouris v. Microsoft Corp.*,
    2016 WL 4472930 (W.D. Wash. Mar. 7, 2016) ................................... 25

- iv -

*Opara v. Yellen*,
    57 F.4th 709 (9th Cir. 2023) ................................................................................ 13

*Radentz v. Am. Ass'n of Physician Specialists, Inc.*,
    2014 WL 12601014 (C.D. Cal. Nov. 10, 2014) .............................................. 8, 10

*Ricci v. DeStefano*,
    557 U.S. 557 (2009) ............................................................................................ 18

*Riesgo v. Heidelberg Harris, Inc.*,
    36 F. Supp. 2d 53 (D.N.H. 1997) ...................................................................... 16

*Rodriguez v. United States*,
    852 F.3d 67 (1st Cir. 2017) ................................................................................ 11

*Rollins v. Traylor Bros., Inc.*,
    2016 WL 258523 (W.D. Wash. Jan. 21, 2016) .................................................. 11

*Ross v. Lockheed Martin Corp.*,
    267 F. Supp. 3d 174 (D.D.C. 2017) .................................................................. 23

*Smith v. City of Jackson*,
    544 U.S. 228 (2005) ............................................................................... 17, 18, 22

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) ............................................................................. 15

*Stewart v. Am. Ass'n of Physician Specialists, Inc.*,
    2015 WL 7722349 (C.D. Cal. Nov. 30, 2015) ................................................... 8

*Tex. Dep't of Housing & Cmty. Aff. v. Inclusive Cmtys. Project, Inc.*,
    576 U.S. 519 (2015) ..................................................................................... 17, 18

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ............................................................................... 14, 23, 24

*Wards Cove Packing Co. v. Atonio*, 490 U.S. 642 (1989), *superseded by statute on
    other grounds*, 42 U.S.C. § 2000e-2(k) ............................................................ 22

*Watson v. Fort Worth Bank & Trust*,
    487 U.S. 977 (1988) ..................................................................................... 22, 23

*Wei v. Dep't of Physics at Univ. of Cal. at Berkeley*,
    2018 WL 457211 (N.D. Cal. Jan. 18, 2018) ..................................................... 15

*Whitsitt v. Hedy Holmes Staffing Servs.*,
    2015 WL 5560119 (E.D. Cal. Sept. 21, 2015), *aff'd*, 671 F. App'x 1004 (9th
    Cir. 2016) ............................................................................................................. 8

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS, STRIKE, OR ALTERNATIVELY, FOR
MORE DEFINITE STATEMENT; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

*Whitsitt v. Hedy Holmes Staffing Servs.*,
    671 F. App'x 1004 (9th Cir. 2016) .......................................................................... 7

**Statutes**

29 U.S.C. § 623 ............................................................................................... *passim*

29 U.S.C. § 626(d)(1) ................................................................................................ 11

29 U.S.C. § 630(c) ....................................................................................................... 7

42 U.S.C. § 1981 ............................................................................................... 2, 5, 12

42 U.S.C. § 2000e .......................................................................................... *passim*

42 U.S.C. § 3604(a) .................................................................................................. 18

42 U.S.C. § 12111 ................................................................................................... 6, 7

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)....................................................................................... 1, 6

Fed. R. Civ. P. 12(f) ................................................................................................. 16

Fed. R. Civ. P. 23 ..................................................................................................... 14

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS, STRIKE, OR ALTERNATIVELY, FOR
MORE DEFINITE STATEMENT; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE THAT at 2:00 p.m. on September 12, 2023, or as soon thereafter as counsel may be heard, in Courtroom 1 of this Court, 1301 Clay Street, Oakland, California 94612, before the Honorable Yvonne Gonzalez Rogers, Defendant Workday, Inc. ("Workday") will and does move for an Order dismissing all causes of action alleged against it in Plaintiff Derek Mobley's Complaint.

Workday moves to dismiss Plaintiff's Complaint on the grounds that Plaintiff fails to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) and for failure to exhaust administrative remedies. This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Request for Judicial Notice, the complete pleadings and records on file herein, any matters of which the Court may take judicial notice, and such other evidence and arguments presented at the hearing on this Motion.

///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION AND SUMMARY OF POINTS

This case attempts to turn a software provider into an employment agency. Defendant Workday, Inc. provides enterprise software to thousands of customers who then use that software to help run various aspects of their businesses— including payroll, financial planning, and human resources. Workday's products are made to be adaptable, meaning customers configure them according to their business needs and change them as those needs evolve. Workday also builds artificial intelligence and machine learning into its platform, making its products nimble enough to provide a wide range of powerful business solutions that help improve the human experience by achieving better productivity, information, and problem-solving.

Plaintiff Derek Mobley brings this lawsuit under four federal employment discrimination laws—Title VII of the Civil Rights Act (Title VII), the Age Discrimination in Employment Act (ADEA), the Americans with Disabilities Act (ADA), and 42 U.S.C. Section 1981. But he does not allege that he is or ever was a Workday employee. He also does not allege that he ever applied to a position at Workday. Instead, he alleges that he applied to "80-100" unidentified positions at an unidentified number of unidentified employers who he claims used an unidentified "algorithm-based screening system" provided to them by Workday. He further alleges that these unidentified Workday customers "manipulate and configure" Workday's unidentified tools "in a discriminatory manner," Compl. ¶ 8, and "use discriminatory and subjective judgments" in screening applicants. *Id.* ¶ 21. In Plaintiff's view, this makes Workday an "employment agency" covered by the federal employment discrimination laws, as he accuses Workday of employment discrimination on the basis of race, age, and disability under both disparate treatment and/or disparate impact theories. But Plaintiff's claims sputter at the starting line.

Despite Plaintiff's novel legal theory, the defects in the Complaint are basic. First, Plaintiff does not come close to pleading facts that plausibly demonstrate Workday is an "employment agency." The relevant statutory definitions and controlling case law make clear an employment agency is an entity that "regularly undertak[es]" to "procure" employees for employers or employment opportunities for prospective employees. Here, the Complaint alleges only that

- 2 -

Workday provides and administers a software product that customers use themselves to screen applicants. This deficiency alone requires dismissal of the entire Complaint. *Infra* § IV.

Plaintiff's claims each fail for multiple additional reasons as well. His intentional discrimination claims must be dismissed as unexhausted because Plaintiff never raised a disparate treatment theory in his Charge of Discrimination before the Equal Employment Opportunity Commission (EEOC). More importantly, the Complaint contains no allegations that Workday acted with discriminatory intent. Plaintiff says nothing at all about Workday's motivations and makes no attempt to plead any element of the customary prima facie case of intentional discrimination, including any information about whether he was qualified for the roles to which he applied, who was ultimately hired instead of him, and their demographics. *Infra* § V.

Plaintiff's disparate impact claims fare no better. First, even if Plaintiff had sufficiently pled that Workday is an employment agency, neither Title VII nor the ADEA authorize disparate impact claims against employment agencies. Second, even if they did, the Complaint contains no facts that would render plausible Plaintiff's bare assertion that Workday's screening tools result in a statistical hiring disparity with respect to *any* of his disparate impact claims. Third, Plaintiff fails to plead facts plausibly demonstrating that the alleged use of Workday's tools by unidentified employers constitutes a single employment "policy" or "practice" that could ground a disparate impact claim, let alone has Plaintiff sufficiently pled facts to plausibly show Workday's tools caused any alleged disparate impact. Indeed, the Complaint is utterly devoid of factual allegations specifying what Workday "screening tools" are at issue, how they work, or how they could possibly create any statistical disparity with respect to a protected class. *Infra* § VI.

Simply put, Plaintiff's Complaint accuses a software provider of providing an *unidentified* product to *unidentified* customers who allegedly used it in connection with *unidentified* jobs in *unspecified* ways. Those facts do not amount to a plausible claim for employment discrimination. The Complaint should be dismissed in its entirety.

///

///

///

## II.   ALLEGATIONS OF THE OPERATIVE COMPLAINT

### A.   Workday Provides Customers With Software That Assists In Screening Applicants For Employment.

Based in Pleasanton, California, Workday is a leading provider of enterprise cloud applications for finance and human resources, bringing its software solutions to thousands of organizations. Request for Judicial Notice In Support Of Motion To Dismiss, Ex. A (Charge of Discrimination) at 2, ¶¶ 2, 4.[1]

Plaintiff alleges that one of Workday's many applications is a "screening tool" that customers "configure" to "review[] and evaluat[e] employees for hire." Compl. ¶¶ 20-21. He further alleges Workday offers a "screening tool" or "tools," "artificial intelligence ('AI') systems," "algorithm-based applicant screening system," "screening products, policies, practices, and procedures," and "selection tools and/or tests." *Id.* ¶¶ 10, 20-21, 27-29, 35-36, 38-39, 41-43, 46-47, and Nature of Complaint. According to Plaintiff, Workday "provides this service for hundreds if not thousands of companies, including numerous Fortune 500 firms." *Id.* ¶ 23. Despite these allegations, the Complaint does not allege which of Workday's alleged tool(s) are at issue, how they work, what they do, how customers use them, or how Workday "administers" them.

### B.   Plaintiff Files A Charge Of Discrimination Before The EEOC Alleging Disparate Impact.

Plaintiff Derek Mobley is an African-American male "over the age of forty." *Id.* ¶ 19. He earned a bachelor's degree in Finance and an associate's degree in Network Systems Administration. *Id.* He also suffers from anxiety and depression. *Id.*

In July 2021, Plaintiff brought a Charge of Discrimination before the Equal Employment Opportunity Commission against Workday. Compl. ¶ 6; Ex. A (Charge of Discrimination) at 2. According to his EEOC Charge, "[s]ince 2018, [he] has applied for at least 80-100 . . . positions

---

[1] The Court may consider materials attached to or incorporated by reference in the pleadings in deciding a motion to dismiss. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). Here, Plaintiff expressly references his charge of discrimination in his Complaint. *See* Compl. ¶ 6 ("On June 3, 2021, Mr. Mobley filed a charge of discrimination with the Oakland Field Office of the United States Equal Employment Opportunity Commission. On July 19, 2021, Mr. Mobley filed an amended charge of discrimination.").

that use Workday, Inc. as a screening tool for talent acquisition and/or hiring" and "[h]e has been denied employment each and every time." *Id.* at 2. Plaintiff further alleges Workday is an "employment agency" within the meaning of Title VII and that its "tools" discriminate on the basis of race, age, and disability. *Id.* at 2-3. In each instance, Plaintiff alleges only that Workday's tools "disparately impact applicants" in a protected class. *Id.* On November 22, 2022, the EEOC issued Plaintiff a Dismissal and Notice of Right to Sue. Compl. ¶ 6.

### C.     Mobley Brings This Class Action Alleging Claims Of Both Disparate Treatment And Disparate Impact.

Plaintiff filed his Complaint in this lawsuit on February 22, 2023. He again alleges that Workday is an "employment agency," and that since 2018, he has "applied for at least 80-100 positions" that "use Workday, Inc. as a screening tool for talent acquisition and/or hiring" without success. Compl. ¶ 20. Plaintiff does not identify any prospective employer or describe any position for which he applied. He also fails to describe the required qualifications for any of the alleged positions, and further fails to plead any details about who was hired instead of him, including the successful applicants' demographics.

The Complaint alleges no factual details regarding how customers purportedly "use" Workday's screening tools, or how this allegation is consistent with the allegation that Workday "administers" the alleged tools for customers to "manipulate and configure" them in a discretionary, discriminatory manner. Compl. ¶ 8. Instead, he baldly asserts that Workday's "algorithm-based applicant screening system . . . determines whether an employer should accept or reject an application . . . based on the individual's race, age, and or disability." *Id.* at 2. He further asserts the "tools . . . allow [Workday] customers to use discriminatory and subjective judgments in reviewing and evaluating employees for hire and allows the preselection of applicants outside of the protected categories." *Id.* ¶ 21. He claims that "[i]f an individual does not make it past . . . Workday screening products, he/she will not advance in the hiring process." *Id.* ¶ 22.

Plaintiff asserts four causes of action against Workday: (1) intentional discrimination on the basis of race under Title VII and 42 U.S.C. Section 1981; (2) disparate impact discrimination on the basis of race and disability under Title VII and the ADA; (3) intentional discrimination under

the ADEA; and (4) disparate impact discrimination under the ADEA. *See generally* Compl. at 12-14. He also seeks to represent three subclasses:

- All African-American applicants or former applicants who, from June 3, 2019 to the present, have not been referred and/or permanently hired for employment as a result of the challenged discriminatory screening process.

- All applicants or former applicants over the age of forty (40) who, from June 3, 2019 to the present, have not been referred and/or permanently hired for employment as a result of the challenged discriminatory screening process.

- All disabled applicants or former applicants who, from June 3, 2019 to present, have not been referred and/or permanently hired for employment as a result of the challenged discriminatory screening process.

Compl. ¶ 8.

Plaintiff seeks certification of his alleged class action, as well as declaratory and injunctive relief, damages (including punitive damages), and costs and fees.

## III.   APPLICABLE LEGAL STANDARD

To survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The factual allegations must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Allegations that are "merely consistent with" a defendant's liability, *id.*, or that do not state a cognizable legal theory, cannot survive a motion to dismiss. Fed. R. Civ. P. 12(b)(6). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## IV.   PLAINTIFF FAILS TO ALLEGE THAT WORKDAY IS AN ENTITY THAT CAN BE SUBJECT TO LIABILITY UNDER TITLE VII, THE ADEA, OR THE ADA (ALL COUNTS).

A claim lies under Title VII, the ADEA, or the ADA only against an "employer," "employment agency," or "labor organization." 42 U.S.C. § 2000e-2 (Title VII prohibitions); 29 U.S.C. § 623 (ADEA prohibitions); 42 U.S.C. § 12111 (ADA definition of "covered entity").

Plaintiff does not allege, nor could he, that Workday was the prospective "employer" for any position to which he applied or a "labor organization." Instead, he labels Workday an "employment agency." Compl. ¶ 5. But labels alone do not suffice, and the Complaint is utterly devoid of any factual assertions that could plausibly hold Workday accountable as an employment agency within the meaning of the applicable statutes. This defect requires dismissal of Plaintiff's entire case. *E.g.*, *Whitsitt v. Hedy Holmes Staffing Servs.*, 671 F. App'x 1004, 1005 (9th Cir. 2016) (affirming dismissal of claims where plaintiff failed to plausibly allege defendant was subject to ADEA).

### A.     <u>An Employment Agency Must Be Engaged To A "Significant Degree" In Procuring Employment.</u>

"Employment agency" is defined in both Title VII and the ADA as:

> Any person regularly undertaking with or without compensation to procure employees for an employer or to procure for employees opportunities to work for an employer and includes an agent of such a person.

42 U.S.C. § 2000e(c); 42 U.S.C. § 12111(7) ("The term[] . . . 'employment agency' . . . shall have the same meaning given such terms in section 2000e of this title."). The ADEA definition similarly embraces those who "regularly undertak[e]" to "procure employees for an employer," but is narrower in that it omits the phrase "or to procure for employees opportunities to work for an employer," 29 U.S.C § 630(c); 42 U.S.C. § 2000e(c).

These statutory definitions are consistent with the plain meaning of the word "agency," which is defined as "an establishment engaged in doing business for another." *Agency*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/agency (last visited June 20, 2023). And while the statutes do not define the word "procure," the most relevant definition identifies it as meaning "to obtain (something) by particular care and effort." *Procure*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/procure (last visited June 20, 2023). Accordingly, the plain language of the relevant employment discrimination statutes confirm they are intended to cover only the actions of entities that regularly and actively engage with prospective employees to find them opportunities, or entities that actively engage with employers and then go out and find them employees. Entities that do not engage in this type of

1   conduct—and are not employers or would-be employers themselves—cannot be liable for

2   employment discrimination.

3          Controlling case law further confirms that to be an employment agency, an entity must

4   actively engage with employees to obtain employment opportunities (*e.g.*, a staffing agency or temp

5   agency), or actively engage with employers to find prospective employees (*e.g.*, a headhunter or

6   executive search firm). For example, in *Brush v. San Francisco Newspaper Printing Co.*, a seminal

7   case interpreting the employment agency definition, the court explained that "the statutory

8   requirement that an employment agency be one that 'regularly' undertakes to procure employees

9   or employment opportunities indicates that the Congress had in mind to include only those engaged

10  to a significant degree in that kind of activity as their profession or business." 315 F. Supp. 577,

11  580 (N.D. Cal. 1970), *aff'd*, 469 F.2d 89 (9th Cir. 1972). The court held that the fact that newspaper

12  organizations are "in the business of printing and publishing advertising copy presented by

13  employers, professional employment agencies and job seekers," does not make them "employment

14  agencies" under the law. *Id.* The Ninth Circuit affirmed, agreeing that the "dictionary" could not

15  support a broader reading of the term "employment agency." *Brush*, 469 F.2d at 90.

16         Courts since *Brush* have refined the "significant degree" requirement, explaining that a

17  defendant must "actively assist" in procuring employment opportunities or employees to be an

18  employment agency. *Stewart v. Am. Ass'n of Physician Specialists, Inc.*, 2015 WL 7722349, at *5

19  (C.D. Cal. Nov. 30, 2015); *see Radentz v. Am. Ass'n of Physician Specialists, Inc.*, 2014 WL

20  12601014, at *5 (C.D. Cal. Nov. 10, 2014) (finding that although defendant was "more significantly

21  involved in procuring employment opportunities than a newspaper that publishes classified ads,

22  such involvement does not rise to the level of a 'significant degree' of engagement in employment-

23  related activities" as defendant merely provided a "venue in which potential employers and

24  candidates can exchange information regarding employment opportunities" and was not "actively

25  involved in the application and interview process for any specific employers"); *Whitsitt v. Hedy

26  Holmes Staffing Servs.*, 2015 WL 5560119, at *3 (E.D. Cal. Sept. 21, 2015), *aff'd*, 671 F. App'x

27  1004 (9th Cir. 2016) (allegation of "screen[ing]" plaintiff's employment application not sufficient

28  to allege defendant was an "employment agency").

- 8 -

In short, Congress included "employment agenc[ies]" (and "labor organizations") within the federal antidiscrimination laws to embrace a defined class of entities that actively work with the workforce and prospective employers to find a match. Adopting the expansive reading required by the Complaint would dramatically widen the scope of the employment discrimination statutes to embrace an enormous range of entities, from software providers to companies that perform background checks to networking websites. Nothing in the statutory text or governing case law suggests that Congress intended the definition of "employment agency" to broadly embrace anyone that offers any product or service that is somehow related to the hiring process.

### B.   Plaintiff Fails To Allege That Workday Is An Employment Agency.

Rather than allege facts that plausibly could establish Workday comes within the statutory definitions, Plaintiff instead makes only the bare assertion that "Workday is an employment agency." Compl. ¶ 5. Beyond that, the Complaint describes a software provider. Plaintiff alleges merely that Workday "offers an algorithm-based applicant screening system that determines whether an employer should accept or reject an application for employment." Compl. at 2. He further asserts Workday "market[s]" and "administer[s]" these software-based "screening tools" to prospective employers. *See e.g.*, Compl. ¶¶ 8, 27-28, 35, 41, 43, 46, 47. Plaintiff further alleges these tools "allow [Workday's] customers to use discriminatory and subjective judgments in reviewing and evaluating employees for hire and allow the preselection of applicants outside of the protected categories." *Id.* ¶ 21.

Even if Plaintiff could prove these allegations (which Workday denies), they do not describe an entity remotely like those commonly understood to be employment agencies. Plaintiff does not allege that Workday is involved in recruiting new employees, inquiring about job opportunities on behalf of job seekers, assisting such job seekers in pursuing opportunities with new employers, or negotiating and consummating employment agreements. Indeed, the Complaint does not allege that Workday interacts with prospective employees at all—whether on behalf of employees to find them positions, or on behalf of employers to find them employees. Nor does it allege that Workday itself possesses or exercises control or decision-making authority over hiring decisions.

Workday is aware of no case that has ever found that an entity that neither interacts with

- 9 -

prospective employees nor makes hiring decisions is an "employment agency." Indeed, cases like *Brush* and *Radentz* reject employment agency status as to entities with far more involvement in the procurement of prospective employees than Workday's alleged involvement. In *Radentz*, the court found that a professional services agency that provided optional certification to its members, solicited and published job postings, and offered job-relevant training was not an employment agency under Title VII. *Radentz*, 2014 WL 12601014, at *1-3. In reaching that conclusion, the court compared the facts in *Radentz* to the facts of other cases where the defendant entity was found to be an employment agency, including a truck training program that required a certain number of job applications and invited recruiters onsite for interviews; a law school that was the primary source through which employers hired recent graduates and law school administrators spent significant time on student job placement; and a commission that provided lists of eligible employees and determined the criteria for who is eligible. *Id.* at *3-4. *Radentz* ultimately concluded that while the defendant was more involved in the procurement of employees than the newspaper at issue in *Brush*, such involvement did not rise to the level of "significant" because it merely "provide[d] a venue in which potential employers and candidates can exchange information regarding employment opportunities." *Id.* at *5. The court reached this conclusion even though the defendant, on a recurring basis, was engaged in certifying prospective employees as "accomplished practitioner[s]" and presenting them with job postings. *Id.*

By contrast here, the Complaint comes nowhere close to alleging that level of active involvement with prospective employees. Instead, it alleges that Workday provides software to customers that customers can use to help them select candidates from an applicant pool that Workday had no part in generating. Plaintiff fails to allege that Workday "procures" anything—let alone that Workday procures to the "significant degree" required by *Brush* and its progeny. Because Plaintiff does not allege that Workday is an employer, employment agency, or labor organization within the meaning of any of the applicable statutes, all of his claims should be dismissed.

## V.   PLAINTIFF'S INTENTIONAL DISCRIMINATION CLAIMS FAIL FOR MULTIPLE REASONS (COUNTS ONE AND THREE).

Even if Plaintiff had pled facts showing Workday is an "employment agency," Plaintiff's

claims for intentional discrimination on the basis of race and age fail for multiple additional reasons. As to claims brought under Title VII and the ADEA, Plaintiff failed to exhaust them before the EEOC, as required to file a civil suit. *Infra* § A. On the merits, all of Plaintiff's intentional discrimination claims fail because Plaintiff fails to plead facts raising an inference of discrimination, either through direct evidence of discriminatory intent or by trying to plead the elements of a prima facie case. *Infra* § B. And in all events, Plaintiff's (a) allegations of discrimination in the "terms and conditions of employment" and (b) invocation of § 623(a)(1) of the ADEA must be dismissed or struck because they are applicable only to employers, not employment agencies. *Infra* § C.

## A.      Plaintiff Failed To Exhaust Intentional Discrimination Claims Under Title VII And The ADEA.

Before a plaintiff may file a Title VII or ADEA suit in federal court, he must first file a charge with the EEOC identifying the unlawful actions alleged. *See* 42 U.S.C. § 2000e-5(e)(1), (f)(1); 29 U.S.C. § 626(d)(1). Although the express claim a plaintiff makes in a lawsuit need not necessarily match one-to-one with the charge, there must be some link between the EEOC charge and the complaint. *Brown v. Puget Sound Elec. Apprenticeship & Training Trust*, 732 F.2d 726, 729 (9th Cir. 1984). The question is whether the plaintiff's claim would have fallen "within the scope of . . . an EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Freeman v. Oakland Unified Sch. Dist.*, 291 F.3d 632, 636 (9th Cir. 2002).

It is settled law in the Ninth Circuit that an administrative charge that, as here, is limited to a disparate impact theory does not exhaust a disparate treatment claim. *Brown*, 732 F.2d at 730 ("Any investigation of whether [plaintiff's employment] application was rejected as a result of disparate *impact* would not have encompassed her subsequent claim that . . . she was subjected to *intentional* sex discrimination."); *e.g.*, *Rollins v. Traylor Bros., Inc.*, 2016 WL 258523, at *14 (W.D. Wash. Jan. 21, 2016) ("If an EEOC charge alleges only that an employer's neutral policy caused a disparate impact, it would be unreasonable for the EEOC to separately investigate whether the claimant also suffered intentional discrimination."). Other circuits are in accord. For example, in *Rodriguez v. United States*, the First Circuit explained that "a disparate impact allegation" cannot

- 11 -

"somehow encompass an intentional discrimination claim on the theory that the agency would have investigated intent in connection with the disparate impact claim" because "disparate treatment and disparate impact . . . involve[e] different facts and evidence." 852 F.3d 67, 80 (1st Cir. 2017) (concluding charge alleging disparate impact did not exhaust claim for disparate treatment).

Plaintiff's charge of discrimination before the EEOC alleged only disparate impact discrimination—not disparate treatment. The charge (1) identifies three types of tests that "impacted" applicants the same way; (2) cites an alleged violation of 42 U.S.C. § 2000e-2(k) (which is a subsection of Title VII titled "Burden of Proof in Disparate Impact Cases"); and (3) alleges the challenged tests disparately impact African-American, disabled, and over-40 applicants and are neither "job-related [nor] . . . consistent with any business necessity." 42 U.S.C. § 2000e-2(k). There are *no* allegations asserting intentional discrimination or, indeed, addressing Workday's intent at all. Accordingly, Plaintiffs Title VII and ADEA claims must be dismissed.

**B.**      **Plaintiff Fails To Raise A Plausible Inference Of Intentional Discrimination On The Basis Of Race Or Age.**

Even if Plaintiff had exhausted his disparate treatment claims under Title VII and the ADEA, his claims for intentional discrimination must nevertheless be dismissed because he fails to plead facts that give rise to a plausible inference that Workday (or anyone else) acted with discriminatory intent. All three of the statutes upon which Plaintiff relies require him to "plead[] facts giving rise to an inference that the [defendant] intended to discriminate against the protected group." *Liu v. Uber Techs. Inc.*, 551 F. Supp. 3d 988, 992 (N.D. Cal. 2021); *see* 42 U.S.C. § 2000e-2(b) (Title VII prohibits "fail[ure] or refus[al] to refer for employment . . . because of [] race, color, religion, sex, or national origin"); *Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 850 (9th Cir. 2004) ("Analysis of an employment discrimination claim under § 1981 follows the same legal principles as those applicable in a Title VII disparate treatment case."); 29 U.S.C. § 623(b) (ADEA prohibits "fail[ure] or refus[al] to refer for employment . . . because of such individual's age"). The Complaint comes nowhere close to alleging that Workday acted with such motivations, which is not surprising given that Workday, per Plaintiff's *own* allegations, does nothing but provide configurable software tools.

- 12 -

Indeed, although allegations establishing discriminatory motive can be direct or circumstantial, *Opara v. Yellen*, 57 F.4th 709, 721-22 (9th Cir. 2023), Plaintiff includes neither here. Instead, he makes only the threadbare assertion that Workday's "conduct has been intentional." Compl. ¶ 32; *Blackman-Baham v. Kelly*, 2017 WL 679514, at *17 (N.D. Cal. Feb. 21, 2017) (dismissing complaint because "Plaintiff's allegations concerning Defendant's discriminatory motives are entirely conclusory"). But the only Workday conduct Plaintiff alleges is the provision of a software product. And Plaintiff's theory is not that Workday's product is inherently discriminatory, but that its algorithm-based tools allow *customers* to "manipulate and configure [the tools] in a discriminatory manner," *id.* ¶ 8; "use discriminatory and subjective judgments," *id.* ¶ 21; and, ultimately, allows customers "to discriminate." *Id.* ¶ 14. Many products, software or otherwise, *can* be misused by another. Merely offering such a multi-use product, however, does not establish culpable intent. *Cf. Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 933, 934 (2005) (noting patent and copyright law "limits [on] imputing culpable intent as a matter of law from the characteristics or uses of a distributed product" or "understanding that some of one's products may be misused").

Plaintiff also fails to raise an inference of discriminatory intent through the customary *prima facie* elements of a failure to hire claim under any of the statutes on which he relies. Under Title VII, § 1981, and the ADEA, Plaintiff must allege that (i) he is a member of a protected class; (ii) he applied and was qualified for a job for which he sought to be placed; (iii) despite his qualifications, he was not referred for employment; and (iv) the employment agency referred or hired someone else to fill the position who was equally or less qualified and was outside the protected class. *E.g.*, *Ansari v. Mnuchin*, 2017 WL 11696665, *5 (N.D. Cal. Oct. 11, 2017) (Title VII and ADEA); *Grigorescu v. Bd. of Trustees of San Mateo Cnty. Cmty. Coll. Dist.*, 2019 WL 1790472, at *10-11 (N.D. Cal. Apr. 24, 2019) (Section 1981); *Hill v. Mississippi State Emp.t Serv.*, 918 F.2d 1233, 1239 (5th Cir. 1990); *see generally McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) (articulating elements of a prima facie case under Title VII). Although a plaintiff need not "*prove* her prima facie discrimination case at the pleading stage, . . . [t]he elements of a prima facie case . . . are relevant to determining whether a plaintiff has alleged sufficient facts to

1  state a plausible claim." *Ansari*, 2017 WL 11696665 at * 5.

2       Once again, Plaintiff does not come close. Instead, Plaintiff alleges no more than the

3  following regarding the jobs he did not receive:

4          Mr. Mobley has applied for at least 80-100 positions that upon
           information and belief use Workday, Inc. as a screening tool for
5          talent acquisition and/or hiring. He has been denied employment
           each and every time.

6

7  Compl. ¶ 20. Plaintiff literally says nothing about the names of employers to whom he submitted

8  these "80-100" applications, the industry or industries allegedly involved, the job titles for the

9  positions to which he applied, whether the jobs are similar or different, or whether he met the

10 minimum and/or preferred qualifications for the positions at issue. Moreover, although Plaintiff

11 alleges his educational background, he never alleges whether that background was relevant with

12 respect to the jobs to which he applied. *See Ali v. ServiceNow, Inc.*, 2019 WL 11542365, at *4

13 (N.D. Cal. Sept. 23, 2019), *aff'd*, 797 F. App'x 322 (9th Cir. 2020) (dismissing complaint where

14 plaintiff "describe[d] a variety of his accolades and certifications, [but did] not explain how his

15 qualifications, or . . . past experience, [was] relevant to any of the positions to which he applied").

16      Each of these problems become exponential when considering the classwide nature of

17 Plaintiff's claims. Plaintiff attempts to excuse this failing by suggesting that because he is

18 "challenging the use of . . . common discriminatory screening products per se," it is "of no

19 consequence" that he lumps together 80-100 unidentified positions with some number of

20 unidentified companies and untold class members. Compl. ¶ 21. While Plaintiff appears to make

21 this allegation in an attempt to support the "commonality" requirement for class adjudication under

22 Rule 23,[2] it confirms Plaintiff utterly fails to plead anything like a discriminatory motive on

23 Workday's part with respect to any of the positions for which he claims he was not hired.

24

25 [2] This allegation also fails to support any argument for class certification. To the contrary, Plaintiff
   specifically alleges elsewhere in the Complaint that the purported problem with Workday's "tools"
26 are that "customers . . . *manipulate and configure* them in a discriminatory manner," Compl. ¶ 8
   (emphasis added), which "allow[s] [customers] to use discriminatory and *subjective* judgments in
27 reviewing and evaluating employees for hire." Compl. ¶ 21 (emphasis added). Accordingly,
   Plaintiff alleges "just the opposite of a uniform employment practice that would provide the
28 commonality needed for a class action." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 355 (2011).

Plaintiff also fails to allege any facts that could permit the Court to conclude that whoever was selected for the jobs at issue were equally or less qualified than Plaintiff, and not members of the protected classes to which he asserts he belongs. Instead, he merely asserts that "[a]pplicants who are not members of these protected groups and who are similarly situated to the Representative Plaintiff, have not been subjected to such discriminatory treatment." Compl. ¶ 8. Not only are those allegations legally insufficient, but they are too conclusory to be entitled to any weight at the pleading stage. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) ("Nor is the court required to accept as true allegations that are merely conclusory. . . ."); *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996) ("[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss.").

At bottom, Plaintiff fails to include *any* allegations that would suggest intentional discrimination by Workday. Accordingly, his disparate treatment claims must be dismissed. *See, e.g.*, *Wei v. Dep't of Physics at Univ. of Cal. at Berkeley*, 2018 WL 457211, at *3 (N.D. Cal. Jan. 18, 2018) (dismissing complaint because "Plaintiff's allegation that Defendant declined to hire him on account of his age is unsupported and conclusory."); *Kelly*, 2017 WL 679514, at *17.[3]  Indeed, courts have dismissed complaints with significantly more detail than what Plaintiff offers here. *See, e.g.*, *Ali*, 2019 WL 11542365, at *4.

### C.   Plaintiff's Allegations Of Discrimination Based On "Terms and Conditions Of Employment" And Invocation Of § 623(a)(1) Should Be Dismissed Or Struck.

Even if Plaintiff's disparate treatment claims could survive in some form, this Court should address two pleading defects, both of which relate to the fact that Plaintiff alleges only that Workday is an employment agency, not an employer by dismissing or striking the allegations.

First, Plaintiff's allegations that Workday discriminated with respect to the "terms and conditions of employment" cannot proceed. Compl. ¶¶ 9-10, 31. As a matter of law, such claims exist only against *employers*, not employment agencies. *Compare* 42 U.S.C. § 2000e–2(b) ("It shall

---

[3] Plaintiff's prayer for punitive damages must also be dismissed because Plaintiff fails to plead facts sufficient to support his allegation that Workday acted with malice or reckless indifference, particularly where, as here, Plaintiff has not stated a claim for intentional discrimination. *See Career Sys. Dev. Corp. v. Am. Home Ins. Co.*, 2010 WL 11636254, *2 (N.D. Cal. Aug. 11, 2010).

be an unlawful employment practice for an employment agency to fail or refuse to refer for employment, or otherwise to discriminate against, any individual because of [protected classes]") *with* 42 U.S.C. § 2000e–2(a) ("It shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of [protected classes]"); *see also Eldredge v. Carpenters 46 N. Cal. Ctys. Joint Apprenticeship & Training Comm.*, 833 F.2d 1334, 1337-38 (9th Cir. 1987) (holding that defendant was not "in the same position as an employment agency" and could be held liable under Title VII for discrimination in providing employment); *Riesgo v. Heidelberg Harris, Inc.*, 36 F. Supp. 2d 53, 57 (D.N.H. 1997) ("42 U.S.C.A. § 2000e–2(b) . . . which catalogs the list of unlawful employment agency practices, does not bar discrimination with respect to the 'terms, conditions, or privileges of employment.'").

Second, Plaintiff may not invoke § 623(a)(1) of the ADEA as the basis for an intentional discrimination claim because that subsection applies only to employers. *See* Compl. at 13; 29 U.S.C. § 623(a)(1) ("It shall be unlawful for an employer . . . ."). To the extent that Plaintiff intended to invoke § 623(b), which applies to "Employment agency practices," the grounds for dismissal Workday has identified above, *supra* § A, B, are fully applicable to an intentional discrimination claim under § 623(b) and therefore equally merit dismissal of such a claim.

Because Plaintiff attempts to plead claims against Workday solely as an "employment agency," any invocation of statutory provisions applicable only to employers should be dismissed or struck. *See* Fed. R. Civ. P. 12(f).

## VI.   PLAINTIFF'S DISPARATE IMPACT CLAIMS FAIL FOR MULTIPLE REASONS (COUNTS TWO AND FOUR).

Plaintiff's disparate impact claims, brought under Title VII, the ADA, and the ADEA, also fail for multiple reasons. With respect to Title VII and the ADEA, there is no such thing as a disparate impact claim against an employment agency as a matter of law, requiring dismissal of those claims with prejudice. *Infra* § A. In any event, Plaintiff's allegations fall woefully short of stating a disparate impact claim. *Infra* § B.

///

- 16 -

**A.**   **Neither Title VII Nor The ADEA Recognize A Disparate Impact Claim Against Employment Agencies.**

As already explained, *supra* § V.C, Plaintiff's attempt to hold Workday liable under the federal employment statutes is premised on Workday's alleged status as an "employment agency." Plaintiff does not (and cannot) allege that Workday was his prospective "employer." As to Title VII, he specifically invokes § 2000e-2(b), Compl. ¶ 25, which applies only to "Employment agency practices." As to the ADEA, Plaintiff again, perhaps inadvertently, invokes only the subsection of the statute applicable to employers, 29 U.S.C. § 623(a)(2). Compl. at 14. For reasons explained in connection with Plaintiff's intentional discrimination claims, *supra* V.C, any claim premised on § 623(a) obviously must be dismissed because Plaintiff does not allege that Workday is an employer at all. Workday thus assumes for present purposes that Plaintiff intended to invoke § 623(b), the subsection applicable to employment agencies.

Even if Workday were an employment agency subject to § 2000e-2(b) of Title VII and § 623(b) of the ADEA, however, neither provision authorizes a disparate impact claim. That is because—in contrast to neighboring provisions that do authorize disparate impact claims—the employment agency provisions of Title VII and the ADEA contain no reference to the "*effects* of [an] action on the employee rather than the motivation for the action of the employer." *Tex. Dep't of Housing & Cmty. Aff. v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 533 (2015). Although the availability of a disparate impact claim against an employment agency under Title VII and the ADEA appears to be a question of first impression, the answer flows directly from the text of the statute, read in light of the Supreme Court's decisions in *Smith v. City of Jackson*, 544 U.S. 228 (2005), and *Texas Department of Housing & Community Affairs v. Inclusive Communities Project, Inc.*, 576 U.S. 519 (2015).

**1.**   **Disparate Impact Claims Lie Only Where The Applicable Provision Focuses On Effects And Not Just Motivation.**

Begin with *Smith*, which addressed whether the ADEA authorizes disparate impact claims under § 623(a)(2). That provision makes it unlawful for an employer "to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment

- 17 -

opportunities *or otherwise adversely affect* his status as an employee, because of such individual's age." 29 U.S.C. § 623(a)(2) (emphasis added). Those italicized words—"or otherwise adversely affect"—were all-important. 544 U.S. at 235 (plurality opinion). It was those same words in § 2000e-2(b) of Title VII, a plurality of the Court explained, that had supported the recognition of a disparate impact claim against employers under that statute. *Id.* at 235-36 (citing *Griggs v. Duke Power Co.*, 401 U.S. 424, 432-34 (1971)). The use of language that "focuses on the *effects* of the action" in § 623(a)(2) of the ADEA "strongly suggest[ed]" a disparate impact claim against employers under that provision as well. 544 U.S. at 236.

In *Texas Dept. of Housing*, the Court endorsed and adopted the same reasoning in analyzing the Fair Housing Act. That statute made it unlawful "[t]o refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, *or otherwise make unavailable* or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(a) (emphasis added). Expressly invoking *Smith*, the Court held "that antidiscrimination laws must be construed to encompass disparate-impact claims when their text refers to the consequences of actions and not just to the mindset of actors." 576 U.S. at 533. The Court therefore found "the phrase 'otherwise make unavailable' . . . of central importance," because it "refers to the consequences of an action rather than the actor's intent." *Id.* at 533-34.

By contrast, the Supreme Court has explained that neighboring provisions in the ADEA and Title VII that lack any reference to the effects of a practice do not embrace disparate impact liability. *Smith* observed that § 623(a)(1), which prohibits employers from "fail[ing] or refus[ing] to hire or to discharge any individual . . . with respect to his compensation, terms, conditions, or privileges of employment," "does not encompass disparate-impact liability." 544 U.S. at 236 n.6. And in *Ricci v. DeStefano*, the Court held that § 623(a)(1)'s Title VII counterpart, § 2000e-2(a)(1), can hold "employers liable only for disparate treatment." 557 U.S. 557, 577 (2009).

### 2. Title VII And The ADEA's Employment Agency Provisions Do Not Authorize Disparate Impact Claims.

The rule derived from *Smith* and *Texas Dep't of Housing* is simply applied here. Section 623(b) of the ADEA and § 2000e-2(b) of Title VII lack any reference to the "effects" of an

employment agency's actions, as compared with the agency's motivations. The provisions are materially identical. Both apply to employment agency practices and make it an unlawful employment practice to "fail or refuse to refer for employment, or otherwise to discriminate against, any individual because of [protected characteristic], or to classify or refer for employment any individual on the basis of his [protected characteristic]." These prohibitions are solely focused on the employment agency's motivations for taking or not taking the relevant action. Absent from either provision concerning employment agencies is the key phrase "otherwise adversely affect."

The omission hardly could have been accidental. As explained above, in the employer-focused provisions of each statute, Congress included reference to the effects of an action in one subparagraph but not the others. *Compare* 42 U.S.C. § 2000e-2(a)(1) (no reference to effects) *and* 29 U.S.C. § 623(a)(1) (same) *with* 42 U.S.C. § 2000e-2(a)(2) (reference to effects) *and* 29 U.S.C. § 623(a)(2) (same). Not only that, Congress carefully imported the "otherwise adversely affect" language into the prohibitions that pertain to "labor organizations" as well, 42 U.S.C. §§ 2000e-2 (c)(2); 29 U.S.C. § 623(c)(2), without doing the same for employment agencies. "[W]hen Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 452 (2002) (internal quotation marks omitted).

Declining to extend disparate impact liability to employment agencies also makes good sense. Employers have full control over their own employment practices, full perspective on the effects those practices may have across their workforces, and a full understanding of when those practices are justified by business necessity or factors other than some protected characteristic. Similarly, labor organizations—which typically are made up of workers in a particular industry or trade—have direct knowledge of the industries in which they operate, the needs of employers in those industries, and the likely impact of particular practices used to match union members with union jobs. The key factors governing disparate impact liability are thus within the knowledge and control of both employers and labor organizations.

But that does not necessarily hold true for employment agencies, which are often just

- 19 -

intermediaries. An executive search firm that is provided non-discriminatory characteristics for an ideal hire has no way of knowing if those neutral criteria, across a workforce, would have a disparate impact. A temp agency tasked with finding dozens of employees with a particular qualification has no direct means of confirming how essential that qualification is to the positions being filled. Congress apparently appreciated that it would be unworkable and unfair to extend disparate impact liability to entities that lack full knowledge of or control over the factors that could yield liability. *See Eldredge*, 833 F.2d at 1337 (recognizing a union training organization "does not stand in the same position as an employment agency" because it is "not simply an intermediary"). And the problem would only be worse if, as Plaintiff suggests, the definition of employment agencies extended to entities like Workday, whose knowledge of and control over the factors bearing on disparate impact liability is likely to be even more tenuous.

Although courts have, in a few instances, entertained disparate impact claims against employment agencies, none appear to have addressed the issue of whether the claim actually exists. For example, in the sole Northern District of California case to previously address disparate impact in the context of an employment agency, *Adams v. Vivo, Inc. and Genomic Health, Inc.*, Magistrate Judge Ryu granted a motion to dismiss because the plaintiff failed to allege the existence of a specific employment policy of the employment agency, rather than the employer. *Adams v. Vivo, Inc.*, 2012 WL 5525315, *5 (N.D. Cal. Nov. 14, 2012). The defendants never contested whether a disparate impact claim was proper as against the employment agency (as opposed to the employer, who was the other named defendant in that case). *Id.* Other cases similarly had no occasion to address the question. *Flanagan v. Excel Staffing Sols., LLC*, 2018 WL 558499, *4 (N.D. Ill. Jan. 25, 2018) (finding no "substantive difference between [plaintiff's] disparate treatment theory and his disparate impact theory," both of which "say that [defendant] intentionally discriminated against [the plaintiff] based on his race"); *Lucas v. Gold Standard Baking, Inc.*, 2014 WL 518000 (N.D. Ill. Feb. 10, 2014) (permitting disparate impact claim to go forward on theory of joint employment).

At bottom, there is no basis in either statutory text or case law for the existence of a disparate impact claim against an employment agency under Title VII and the ADEA. Plaintiff's disparate impact claims under those statutes must therefore be dismissed with prejudice.

- 20 -

**B.** **Plaintiff Has Insufficiently Pled A Disparate Impact Claim Under All Of The Statutes On Which He Relies.**

To state a claim for disparate impact discrimination under the ADA (and also, to the extent Plaintiff is permitted to bring a claim, under Title VII), "a plaintiff must allege (1) a significant disparity with respect to employment for the protected group, (2) the existence of a specific employment practice or set of practices, and (3) a causal relationship between the identified practice and the disparity." *Liu*, 551 F. Supp. 3d at 990 (citing *Freyd v. University of Or.*, 990 F.3d 1211, 1224 (9th Cir. 2021)); *Lopez v. Pac. Mar. Ass'n*, 2009 WL 10680881, at *5 (C.D. Cal. Apr. 3, 2009), *aff'd*, 657 F.3d 762 (9th Cir. 2011) (same elements as to ADA disparate impact claims). To the extent Plaintiff could bring a claim under the ADEA, the elements are substantially similar: "a plaintiff must demonstrate (1) the occurrence of certain outwardly neutral employment practices, and (2) a significantly adverse or disproportionate impact on persons of a particular [age] produced by the employer's facially neutral acts or practices." *Katz v. Regents of the Univ. of Cal.*, 229 F.3d 831, 835-36 (9th Cir. 2000) (internal quotation marks omitted). Here, Plaintiff's Complaint fails in every respect. It includes no allegations lending plausibility to his bare assertion of a statistical disparity concerning protected classes. *Infra* § 1. Additionally, Plaintiff neither identifies a specific employment practice or set of practices he is challenging, nor does he articulate *how* any such practice(s) could cause a statistical disparity with the required amount of specificity. *Infra* § 2.

**1.** **Plaintiff Has Not Pled A Disparity.**

With respect to a disparity, Plaintiff alleges merely that "upon information and belief, [Workday's "selection tools"] disparately impact African-American, [disabled, and over-40] applicants because the tests have the effect of disproportionately excluding African-American[], [disabled, and over-40 applicants]." Compl. ¶¶ 24, 27, 29. Plaintiff does not specify whether this alleged disparate impact exists with respect to any one Workday customer, across all of the customers who posted the "80-100" positions to which Plaintiff applied, or something else. He includes no allegations concerning why he believes this disparity exists, what investigation he conducted into the matter, or the alleged magnitude of this purported disparity.

That is not enough. Although a plaintiff need not define an alleged disparity with great

- 21 -

precision at the pleading stage, he must do more than "merely describe[e] his own experience." *Liu*, 551 F. Supp. 3d at 991. Instead, a plaintiff must at least make a "sophisticated effort . . . to develop a plausible factual basis in support of his assertion" of a disparity. *Id.* Even where a plaintiff would not be expected to have full information, he cannot simply "plow ahead to discovery" without providing some basis for a plausible inference of a disparity. *Id.* Other cases are in accord. *See Borodaenko v. Twitter, Inc.*, 2023 WL 3294581, at *4 (N.D. Cal. May 5, 2023) ("Plaintiff alleges that '[m]any disabled employees . . . have felt that, because of their disability, they will not be able to meet [Defendant's] new heightened standard of performance and productivity,' and 'have felt forced to resign.' But Plaintiff has not alleged that such individuals have actually resigned or that they have done so at higher rates than their non-disabled colleagues.") (citation omitted); *Alhayoti v. Blinken*, 2022 WL 2869850, at *9 (N.D. Cal. July 21, 2022) ("The plaintiff has not alleged any facts showing that the Department's distinction between local employees and direct hires had a disproportionate impact on any protected group. The complaint does not cite any data, scientific literature, or personal experiences to support the theory that the Department's local-employee hiring practice had a discriminatory impact on a specific protected group.").

Because he "has offered no allegations about what is actually happening," *Liu*, 551 F. Supp. 3d at 991, with respect to the hiring of Black, disabled, or over-40 applicants among customers who allegedly use Workday's software, Plaintiffs' claim should be dismissed.

## 2. Plaintiff Has Not Pled A Specific Employment Practice.

Plaintiff's disparate impact claims fail for the additional, independent reason that he fails to identify a specific employment policy or practice that allegedly caused an unlawful disparity.

Time and again, the Supreme Court has recognized that it is "not enough to simply allege that there is a disparate impact on workers, or point to a generalized policy that leads to such an impact." *Smith*, 544 U.S. at 241. Instead, Plaintiff must "isolate[e] and identify[] the *specific* employment practices that are allegedly responsible for any observed statistical disparities." *Id.* (quoting *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 994 (1988)); *accord Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 657 (1989) ("[A] plaintiff must demonstrate that it is the application of a specific or particular employment practice that has created the disparate impact."),

1    *superseded by statute on other grounds*, 42 U.S.C. § 2000e-2(k); *Dukes*, 564 U.S. at 357

2    (emphasizing specificity requirement and explaining that it is "all the more necessary when a class

3    of plaintiffs is sought to be certified").

4         Meeting this specificity requirement is also essential to pleading a causal connection

5    between an employment practice and an alleged disparity. As then-Judge Brown Jackson explained

6    after an in-depth analysis of disparate impact law, a plaintiff must ultimately "supply an account of

7    how [identified] procedures themselves resulted in . . . racially disparate outcomes." *Ross v.*

8    *Lockheed Martin Corp.*, 267 F. Supp. 3d 174, 198 (D.D.C. 2017). Absent that, "'[i]t is completely

9    unrealistic to assume that [employers'] unlawful discrimination is the sole cause of . . . statistical

10   imbalances in the composition of their work forces." *Id.* at 181 (quoting *Watson*, 487 U.S. at 992

11   (plurality opinion)). Where a plaintiff fails even to identify the particulars of a challenged

12   employment practice, it cannot begin to articulate the mechanism by which that practice could

13   cause a disparity. *Id.* at 199.

14        Here, Plaintiff comes nowhere close to meeting these requirements of specificity. *First*,

15   Plaintiff fails to even identify the employment practice he purports to challenge. Instead, Plaintiff

16   makes various vague references to the following alleged Workday products:

17   - "artificial intelligence ("AI") systems and screening tools,"

18   - "algorithm-based applicant screening system,"

19   - "discriminatory screening process,"

20   - "discriminatory screening products,"

21   - "selection tools marketed by Workday,"

22   - "Workday's products,"

23   - "screening products, policies, practices, and procedures,"

24   - "selection tools and/or tests,"

25   - "selection procedures," and

26   - "policies, patterns, and/or practices."

27   It is impossible to discern any identifiable employment practice that could have caused an unlawful

28   disparity. Is it a single software product? Several different products? The algorithm embedded in

- 23 -

DEFENDANT WORKDAY, INC.'S MOTION TO DISMISS AND MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT

that product? The intended or ordinary use of that product? A service or practice Workday provides

with respect to that product? The process into which an alleged Workday screening product might

be incorporated? Does it differ based on the point in time, the client, or the job itself? The Complaint

is so devoid of detail regarding the alleged discriminatory employment practice that it fails even

the basic requirement of providing notice to Workday of conduct that is purportedly at issue in this

case. *See Canatella v. Reverse Mortg. Sols. Inc.*, 2014 WL 7205146, at *8 (N.D. Cal. Dec. 17,

2014) (plaintiff's disparate impact claim failed where plaintiff did not plead facts demonstrating a

"*specific*, identified . . . practice or selection criterion" caused "a significant disparate impact").

Indeed, the only information Plaintiff provides strongly suggests that he is not challenging

any specific employment practice, but a nebulously plural set of associated products or services

that are inevitably put to different uses by different customers. Plaintiff specifically alleges that

Workday's screening tools "allow [Workday's] customers to manipulate and configure them in a

discriminatory manner to recruit, hire, and onboard employees," Compl. ¶ 8; "rel[y] upon

subjective practices [by private companies]," *id.*; and permit "decision-makers [] free[dom] to

exercise *their* discretion in an *unguided*, *subjective* manner that provides a ready mechanism for

discrimination" (Compl. ¶ 37) (emphasis added). In emphasizing this subjectiveness and variation,

Plaintiff has pled the opposite of a "specific employment practice or set of practices" responsible

for the alleged disparate impact and implemented by Workday. *Liu*, 551 F. Supp. 3d at 990; *Dukes*,

564 U.S. at 355. The only thing the Complaint tells us about what the challenged employment

practice *does* is that it almost certainly did it differently across the many positions Plaintiff applied

for, let alone across the positions that all members of the putative class applied to.

### 3.     Plaintiff Has Not Sufficiently Pled Causation.

Even were the Court able to fashion a coherent challenged practice, Plaintiff provides no

detail concerning how the challenged employment practice could possibly cause any unlawful

disparate impact. Plaintiff says nothing of how Workday's products work, what mechanism or

mechanisms they use to "screen" applicants, what inputs are relevant, and what outputs the products

provide. He also says nothing of how Workday's customers make use of whatever it is he is

claiming Workday provides. Without this information, it is impossible for the Court to reach the

conclusion that the challenged practice *caused* the alleged disparate impact.

Plaintiff fails to explain *how* whatever practice he is challenging would work to create a disparity concerning any protected class. He alleges no causal mechanism at all other than the unspecific suggestion that customers could theoretically import subjectivity or bias into their use of Workday's tools. Courts have dismissed disparate impact claims based on far more detailed accounts of challenged practices and their alleged effects. In *Moussouris v. Microsoft Corp.*, for example, plaintiffs challenged a specific "'stack-ranking' employee review policy," and articulated how "the forced curve might lower an employee's final score from the score the employee's manager felt the employee deserved before applying the curve." 2016 WL 4472930, *9-10 (W.D. Wash. Mar. 7, 2016). The plaintiffs alleged that these "uniform, unvalidated, and unreliable procedures for evaluating employee performance . . . systematically undervalue female technical employees relative to their similarly situated peers." *Id.* But even these details were not enough, because the plaintiffs did not supply the why: "[N]owhere does the operative complaint plausibly allege why the system might 'systematically undervalue[] female' employees." *Id.* at *9.

Because Plaintiff fails to allege what the challenged employment practice is or does, or how it could cause a statistical disparity, his disparate impact claims should be dismissed.

## VII.   <u>CONCLUSION</u>

For the foregoing reasons, Defendant respectfully requests the Court grant Defendant's Motion to Dismiss.

Dated: July 17, 2023.                                        ORRICK, HERRINGTON & SUTCLIFFE LLP


By:    _____*/s/ Julie A. Totten*_____
JULIE A. TOTTEN
ERIN M. CONNELL
KAYLA D. GRUNDY
ALEXANDRIA R. ELLIOTT
JUSTIN M. WASHINGTON
Attorneys for Defendant
WORKDAY, INC.