JULIE A. TOTTEN (STATE BAR NO. 166470)
jatotten@orrick.com
ERIN M. CONNELL (STATE BAR NO. 223355)
econnell@orrick.com
KAYLA D. GRUNDY (STATE BAR NO. 300513)
kgrundy@orrick.com
ALEXANDRIA R. ELLIOTT (STATE BAR NO. 320293)
aelliottt@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:   (415) 773-5700
Facsimile:   (415) 773-5759

JUSTIN M. WASHINGTON (SBN 334389)
justin.washington@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
355 S. Grand Avenue, Suite 2700
Los Angeles, CA, 90071
Telephone:   (213) 629-2020
Facsimile:   (213) 612-2499

Attorneys for Defendant
WORKDAY, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEREK L. MOBLEY, for and on behalf of himself and other persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WORKDAY, INC.,<br><br>Defendant. | Case No. 4:23-cv-00770-YGR<br><br>**DEFENDANT WORKDAY, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS**<br><br>Date:         October 10, 2023<br>Time:         2:00 p.m.<br>Courtroom: 1, 4th Floor<br>Judge:        Hon. Yvonne Gonzalez Rogers<br><br>Complaint Filed: February 21, 2023 |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION AND SUMMARY OF POINTS ........................................................... 1

II. ALLEGATIONS OF THE OPERATIVE COMPLAINT ARE CONTROLLING FOR PURPOSES OF WORKDAY'S MOTION .............................................................. 1

III. PLAINTIFF FAILS TO ALLEGE THAT WORKDAY IS AN ENTITY THAT CAN BE SUBJECT TO LIABILITY UNDER TITLE VII, THE ADEA, OR THE ADA (ALL COUNTS) ................................................................................................ 2

    A. Plaintiff Points To No Allegations In His Complaint That Would Satisfy The Statutory Definition Of "Employment Agency." ............................................ 2

    B. Plaintiff's Indirect Employer Theory Has Not Been Pled And, In Any Case, Is Inapplicable. ............................................................................................. 5

IV. PLAINTIFF'S INTENTIONAL DISCRIMINATION CLAIMS FAIL FOR MULTIPLE REASONS (COUNTS ONE AND THREE). ............................................... 7

    A. Plaintiff Failed To Exhaust Intentional Discrimination Claims Under Title VII And The ADEA. ................................................................................................. 8

    B. Plaintiff Fails To Raise A Plausible Inference Of Intentional Discrimination On The Basis Of Race Or Age. ....................................................... 9

    C. Plaintiff's Allegations Of Discrimination Based On "Terms and Conditions Of Employment" And Under § 623(a)(1) Should Be Dismissed Or Struck. ......... 10

V. PLAINTIFF'S DISPARATE IMPACT CLAIMS FAIL FOR MULTIPLE REASONS (COUNTS TWO AND FOUR). ................................................................... 10

    A. Neither Title VII Nor The ADEA Recognize A Disparate Impact Claim Against Employment Agencies. ............................................................................ 10

    B. Plaintiff Has Not Sufficiently Pled A Disparate Impact Claim Under Any Of The Statutes On Which He Relies. ................................................................. 12

        1. Plaintiff Has Not Pled A Disparity ........................................................... 12

        2. Plaintiff Has Not Pled A Specific Employment Practice. ......................... 13

        3. Plaintiff Has Not Sufficiently Pled Causation. ......................................... 13

VI. CONCLUSION ................................................................................................................ 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ali v. ServiceNow, Inc.*,
  2019 WL 11542365 (N.D. Cal. Sept. 23, 2019), *aff'd*, 797 F. App'x 322 (9th Cir. 2020) .................................................................................................................. 9

*Anderson v. Pacific Maritime Ass'n*,
  336 F.3d 924 (9th Cir. 2003) ................................................................................ 6

*Blackman-Baham v. Kelly*,
  2017 WL 679514 (N.D. Cal. Feb. 21, 2017) ........................................................ 9

*Brown v. Puget Sound Elec. Apprenticeship & Training Trust*,
  732 F.2d 726 (9th Cir. 1984) ................................................................................ 8

*Brush v. San Francisco Newspaper Printing Co.*,
  315 F. Supp. 577 (N.D. Cal. 1970), *aff'd*, 469 F.2d 89–90 (9th Cir. 1972) ...... 3, 5

*Canatella v. Reverse Mortg. Sols. Inc.*,
  2014 WL 7205146 (N.D. Cal. Dec. 17, 2014) .................................................... 13

*Chevron U.S.A. v. Natural Resources Defense Council*,
  467 U.S. 837 (1984) ........................................................................................... 11

*DaSilva v. Indiana*,
  30 F.4th 671 (7th Cir. 2022) ................................................................................. 6

*Domingo v. New England Fish Co.*,
  727 F.2d 1429 (9th Cir. 1984) .............................................................................. 4

*Eldredge v. Carpenters 46 Northern California Counties Joint Apprenticeship & Training Committee*,
  833 F.2d 1334 (9th Cir. 1987) ............................................................................ 12

*Equal Employment Opportunity Commission v. Illinois*,
  69 F.3d 167 (7th Cir. 1995) .................................................................................. 6

*Freeman v. Oakland Unified School Dist.*,
  291 F.3d 632 (9th Cir. 2002) ................................................................................ 8

*Genasys Inc. v. Vector Acoustics, LLC*,
  638 F. Supp. 3d 1135 (S.D. Cal. 2022) ................................................................ 4

*Gomez v. Alexian Bros. Hosp. of San Jose*,
  698 F.2d 1019 (9th Cir. 1983) .............................................................................. 7

*Gulino v. New York State Educ. Dep't*,
 460 F.3d 361 (2d Cir. 2006) ................................................................................................. 6

*In re Hard Drive Suspension Assemblies Antitrust Litig.*,
 No. 19-MD-02918-MMC, 2020 WL 5074041 (N.D. Cal. Aug. 26, 2020) ............................. 5

*Jones v. Ohio Dep't of Pub. Safety*,
 No. 2:22-CV-3692, 2023 WL 3624787 (S.D. Ohio May 24, 2023) ....................................... 6

*Lopez v. Massachusetts*,
 588 F.3d 69 (1st Cir. 2009) ................................................................................................... 6

*Lutcher v. Musicians Union Loc. 47*,
 633 F.2d 880 (9th Cir. 1980) ................................................................................................. 7

*Radentz v. Am. Ass'n of Physician Specialists, Inc.*,
 2014 WL 12601014 (C.D. Cal. Nov. 10, 2014) ................................................................ 3, 5

*Schneider v. California Dep't of Corrections*,
 151 F.3d 1194 (9th Cir. 1998) ........................................................................................... 1, 5

*Sibley v. Memorial Hospital v. Wilson*,
 488 F.2d 1338 (D.C. Cir. 1973) ......................................................................................... 6, 7

*Stewart v. Am. Ass'n of Physician Specialists, Inc.*,
 2015 WL 7722349 (C.D. Cal. Nov. 30, 2015) ................................................................... 3, 5

*Swierkiewicz v. Sorema N. A.*,
 534 U.S. 506 (2002) .............................................................................................................. 9

*Tex. Dep't of Housing & Cmty. Aff. v. Inclusive Cmtys. Project, Inc.*,
 576 U.S. 519 (2015) ............................................................................................................ 10

*Tovar v. City of San Jose*,
 No. 5:21-CV-02497-EJD, 2021 WL 6126931 (N.D. Cal. Dec. 28, 2021) ....................... 9, 12

*True Health Chiropractic Inc. v. McKesson Corp.*,
 No. 13-CV-02219-HSG, 2021 WL 1056812 (N.D. Cal. Mar. 19, 2021) .............................. 4

*Wei v. Dep't of Physics at Univ. of Cal. at Berkeley*,
 2018 WL 457211 (N.D. Cal. Jan. 18, 2018) ......................................................................... 9

*Woodside Invs., Inc. v. Complete Bus. Sols. Grp., Inc.*,
 No. 220CV00042JAMCKD, 2020 WL 869206 (E.D. Cal. Feb. 21, 2020) ........................... 4

**Statutes**

29 U.S.C. § 626(d)(1) ................................................................................................................. 8

42 U.S.C. § 2000e-2(k) ......................................................................................................... 8, 11

- iii -
DEFENDANT WORKDAY, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS

42 U.S.C. § 2000e-5(e)(1) ................................................................................................... 8

42 U.S.C. § 2000e-5(f)(1) .................................................................................................... 8

## I. INTRODUCTION AND SUMMARY OF POINTS

Plaintiff's Opposition to Workday's Motion to Dismiss fails to demonstrate he has pled plausible causes of action against Workday. Indeed, rather than explain the sufficiency of his allegations as pled, Plaintiff instead invokes broad pronouncements attacking artificial intelligence, dismisses arguments Workday did not make, and relies on rhetoric rather than substance. Despite these tactics, Plaintiff's Opposition fails to address the fatal deficiencies Workday identifies— including an utter lack of any factual contentions that could possibly demonstrate Workday is an employment agency that engaged in unlawful discrimination against Plaintiff and the nationwide classes he seeks to represent.

The basic deficiencies in Plaintiff's Complaint remain. Plaintiff has not pled factual allegations plausibly establishing Workday is an employment agency. Nor could he, because it is not—Workday is a software provider. *Infra* § III. Plaintiff similarly identifies nothing in the Complaint supporting any inference that Workday acted with discriminatory intent. And in any event, he did not exhaust such a claim, and his Opposition fails to show otherwise. *Infra* § IV. Plaintiff does not even attempt to address his failure to plausibly plead the basic requirements of a disparate impact claim, including a statistical disparity, employment practice, or causal relationship between the two. *Infra* § V. And while Plaintiff requests leave to amend, he offers no hint of what he might add to sufficiently address the pervasive deficiencies identified by Workday.

For each of these reasons and as explained further below, Workday's Motion should be granted in its entirety.

## II. ALLEGATIONS OF THE OPERATIVE COMPLAINT ARE CONTROLLING FOR PURPOSES OF WORKDAY'S MOTION.

Workday's moving papers succinctly explain the numerous ways Plaintiff's allegations fail to state plausible causes of action under Title VII, the ADA, or the ADEA. Rather than defend those allegations, however, Plaintiff instead points the Court to extraneous evidence that he contends supports his legal theories. Yet the documents on which Plaintiff relies plainly do not demonstrate Plaintiff's pleading is adequate. *See Schneider v. California Dep't of Corrections*, 151 F.3d 1194, 1197 n.3 (9th Cir. 1998)) ("The 'new' allegations contained in the [plaintiff's] opposition motion

[] are irrelevant for 12(b)(6) purposes. In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss."). Instead, Plaintiff's misguided attempt to divert the Court's attention elsewhere serves only to underscore both the deficiency of his pleading and his failure to conduct an "inquiry reasonable under the circumstances" as required by Rule 11 prior to filing his Complaint. Fed. R. Civ. P. 11. The Court should disregard the extraneous materials upon which Plaintiff attempts to rely and base its ruling on the Complaint.

### III. PLAINTIFF FAILS TO ALLEGE THAT WORKDAY IS AN ENTITY THAT CAN BE SUBJECT TO LIABILITY UNDER TITLE VII, THE ADEA, OR THE ADA (ALL COUNTS).

As Workday's Motion explains, Plaintiff's Complaint fails to allege that Workday is an "employment agency" because it does not plausibly establish that Workday "regularly" procures employment opportunities for employees or procures employees for employers. ECF No. 17 (Mot.) at 7-11. Plaintiff's opposition does not even attempt to identify allegations in the Complaint that would satisfy the applicable standard, instead backfilling with snippets of text from Workday's website or regulatory filings. ECF No. 33 (Opp.) This approach is procedurally improper, *supra* II; ECF No. 36 (Obj. to RJN), and the added material is insufficient to satisfy the employment-agency standard in any event. *Infra* § A. Plaintiff also advances an unpled theory that even if Workday is not an employment agency, it can nevertheless be held liable because it has the "power to control access to employment opportunities." Opp. at 15-18. Even if this were procedurally proper (it is not), Plaintiff's newly included materials still fail to allege that Workday is an employment agency. *Infra* § B.

### A. Plaintiff Points To No Allegations In His Complaint That Would Satisfy The Statutory Definition Of "Employment Agency."

1.  Plaintiff does not dispute that "to be an employment agency" under the statutory definition and applicable case law, "an entity must actively engage with employees to obtain employment opportunities (*e.g.*, a staffing agency or temp agency), or actively engage with employers to find prospective employees (*e.g.*, a headhunter or executive search firm)." Mot. at 8. Nor does Plaintiff identify a single allegation in his Complaint that even gestures at the statutory

1    definition. *See* Opp. at 4-5 ("Mobley's Allegations"); *id.* at 12–14 (section addressing definition of
2    "employment agency"). That is because there are none. All the Complaint alleges is that Workday
3    "market[s]" "selection tools" that "customers . . . manipulate and configure . . . in a discriminatory
4    manner. Opp. at 5. This allegation does not come close to establishing that Workday is an
5    employment agency.

6    Plaintiff also fails to distinguish the authorities on which Workday relies. Instead, Plaintiff
7    dismisses those cases (and others) because they were not decided at the motion to dismiss stage.
8    Opp. at 10. But because Workday does not cite those cases for the purposes of a procedural
9    standard, their procedural posture is irrelevant. For example, the definition of an "employment
10   agency" does not differ depending on whether a decision is issued at the pleadings stage or at trial,
11   nor will the elements of Plaintiff's legal claims change between now and any potential motion for
12   summary judgment in this case.

13   Addressing *Brush v. San Francisco Newspaper Printing Co.*, 315 F. Supp. 577, 580 (N.D.
14   Cal. 1970), *aff'd*, 469 F.2d 89–90 (9th Cir. 1972), Plaintiff offers the factual observation that
15   Workday "is not selling classified ads," Opp. at 14 (capitalization omitted), then purports to
16   distinguish *Brush* by asserting that "Workday's AI/ML recruits applicants and makes employment
17   recommendations," *id.* But there is no allegation in the Complaint that Workday "recruits
18   applicants." And the Complaint explicitly claims not that Workday makes "recommendations," but
19   merely that its products "allow customers to use discriminatory and subjective judgments in
20   reviewing and evaluating employees for hire." Compl. ¶ 21. As for the other three cases Workday
21   cited—each of which involved a defendant exerting even more control than the defendant in
22   *Brush*—Plaintiff does not attempt to distinguish them at all. Mot. at 8 (citing *Stewart v. Am. Ass'n*
23   *of Physician Specialists, Inc.*, 2015 WL 7722349, at *5 (C.D. Cal. Nov. 30, 2015) (an entity must
24   "actively assist" in procuring employment opportunities or employees to be an employment
25   agency); *Radentz v. Am. Ass'n of Physician Specialists, Inc.*, 2014 WL 12601014, at *5 (C.D. Cal.
26   Nov. 10, 2014) (declining to extend employment agency liability where defendant is not "actively
27   involved" in hiring process); *Whitsitt v. Hedy Holmes Staffing Servs.*, 2015 WL 5560119, at *3
28   (E.D. Cal. Sept. 21, 2015), *aff'd*, 671 F. App'x 1004 (9th Cir. 2016) (holding allegation that

1  defendant company "screened" applications is not sufficient to allege that company is an
2  employment agency").

3  Nor does Plaintiff offer any authority supporting the notion that merely providing a software
4  product makes the provider an "employment agency." *See* Mot. at 8. The only case he cites,
5  *Domingo v. New England Fish Co.*, 727 F.2d 1429 (9th Cir. 1984), has nothing to do with
6  employment agencies. Opp. at 12-13.

7  Simply put, Plaintiff points to no non-conclusory allegations and no case law supporting
8  the notion that Workday is an employment agency. The Complaint should therefore be dismissed.

9  2.  Doubtless recognizing these deficiencies, Plaintiff tries to fill the void with material
10 from Workday's website and its publicly filed Form 10-K. Courts have routinely declined to take
11 notice of corporate websites. *Genasys Inc. v. Vector Acoustics, LLC*, 638 F. Supp. 3d 1135, 1146
12 (S.D. Cal. 2022) (denying request for judicial notice and collecting cases); *see* Opp. to RJN. Even
13 if the Court did judicially notice Workday's website or 10-K, the Court would simply be taking as
14 true the fact that they exist, and that Workday made representations there. *See Woodside Invs., Inc.
15 v. Complete Bus. Sols. Grp., Inc.*, No. 220CV00042JAMCKD, 2020 WL 869206, at *2 (E.D. Cal.
16 Feb. 21, 2020) ("the court is simply taking as true that the website exists and makes certain
17 representations"); *True Health Chiropractic Inc. v. McKesson Corp.*, No. 13-CV-02219-HSG,
18 2021 WL 1056812, *2 n.2 (N.D. Cal. Mar. 19, 2021) (same for 10-Ks). Although Workday stands
19 behind its public statements, it is entitled to fair notice of the claims against it asserted via properly
20 pled allegations in Plaintiff's Complaint.

21 In any event, even Plaintiff's newly included material fails to establish that Workday is an
22 employment agency under the applicable standard. Much of it merely reinforces that Workday
23 offers software products and provides technical support to help customers use them. For example,
24 Mobley includes a lengthy block-quoted passage from Workday's 10-K stating that Workday offers
25 "professional services that are performed to help [customers] use features and functions," Opp. at
26 5, as well as a statement that Workday offers "extensive customer training opportunities," Opp. at
27 6. Training customers on use of software is not procuring employees or employment opportunities.
28 Other material Plaintiff cites does nothing more than use the words "recruiting" or

"recruitment." *E.g.,* Opp. at 6-7 ("Human Capital Management"; "Referrals"). It is true that Workday offers software products that customers use for recruiting employees—just as newspapers carry classified ads that employers use to recruit employees, *cf. Brush*, 315 F. Supp. at 580 (newspaper not an employment agency), or medical boards offer certifications that candidates use to pursue job opportunities, *Radentz*, 2014 WL 12601014, at *5 (dental board not an employment agency). That recruitment is among the many human resources functions for which Workday provides a software product does not make it an employment agency. *See Stewart*, 2015 WL 7722349, at *5.

Still more material appears completely irrelevant because it references Workday products and customers that seemingly have nothing to do with Plaintiff's claims. For example, he points to a snippet in a video about "Workday Government Cloud" that refers to helping "Attract & retain workers," without suggesting that he ever applied to a government position. Opp. at 8. Similarly, he points to an *internal* recruitment tool that helps employers "identify contacts within your organization." Opp. at 7. Plaintiff does nothing to connect these acontextual snippets to the claims in his Complaint, which identify no Workday customer to which he applied and no Workday product that this customer allegedly used (let alone the particular elements of his claims, *infra* IV § B; V § B).

This Court should confine its review to the four corners of Plaintiff's complaint and grant the motion because it fails to allege that Workday is an employment agency.

### B. Plaintiff's Indirect Employer Theory Has Not Been Pled And, In Any Case, Is Inapplicable.

Similarly inappropriate is Plaintiff's attempt to advance a new, unpled theory: That "Workday's power to control access to employment opportunities means that it is a covered entity under Title VII, the ADEA, and the ADA." Opp. at 15-18. Once again, Plaintiff's opposition points to not a single factual allegation in the Complaint that would support this new theory. This is reason enough to reject it out of hand and grant Workday's motion. *See In re Hard Drive Suspension Assemblies Antitrust Litig.*, No. 19-MD-02918-MMC, 2020 WL 5074041, at *2 (N.D. Cal. Aug. 26, 2020); *Schneider*, 151 F.3d at 1197 n.3.

In any event, Plaintiff's attempt to invoke a so-called "indirect-employer liability" is misplaced. The contentious indirect-employer standard has its genesis in *Sibley v. Memorial Hospital v. Wilson*, 488 F.2d 1338, 1342 (D.C. Cir. 1973). *Sibley* held that a hospital that "control[led] the premises upon which [the plaintiff nurse's] services were to be rendered, including access to the patient for purposes of the initiation of . . . employment" could be held liable for discriminatorily "block[ing]" access to a male nurse—even if the hospital was not the nurse's direct employer. *Id.* at 1342. In *Sibley*'s wake, some courts seized on its use of the phrase "interference with the direct employment relationship" as suggesting a broad new category of covered entity under federal employment law. *See Gulino v. New York State Educ. Dep't*, 460 F.3d 361, 374 (2d Cir. 2006) (recounting the development of the law). But courts have consistently rejected this interference theory since. *Id.* ("We disagree with the *Sibley* court's expansive approach to interpreting the straightforward language of [Title VII] . . . ."); *Lopez v. Massachusetts*, 588 F.3d 69, 89 (1st Cir. 2009) ("Most other circuits have also repudiated the interference theory"); *DaSilva v. Indiana*, 30 F.4th 671, 674 (7th Cir. 2022) (siding with *Lopez* and *Gulino* and concluding "that the entity with hiring and firing authority is the right defendant"); *Jones v. Ohio Dep't of Pub. Safety*, No. 2:22-CV-3692, 2023 WL 3624787, at *4 (S.D. Ohio May 24, 2023) ("Later cases, though, cast at least some doubt on the continuing viability of the interference theory") (collecting cases in the Sixth Circuit).

The Ninth Circuit is among those that have rejected the notion that mere interference with an employment opportunity is sufficient to bring an otherwise un-covered entity within Title VII's scope. Rather, "*Sibley* and its Ninth Circuit progeny condone liability when there exists discriminatory 'interference' *by the indirect employer* and the indirect employer *had some peculiar control over the employee's relationship with the direct employer.*" *Anderson v. Pacific Maritime Ass'n*, 336 F.3d 924, 932 (9th Cir. 2003) (emphasis added). The standard is stringent. As the Seventh Circuit has put it, it is satisfied only when "the defendant so far controlled plaintiff's employment relationship that it was appropriate to regard the defendant as the de facto or indirect employer of the plaintiff." *Equal Employment Opportunity Commission v. Illinois*, 69 F.3d 167, 169 (7th Cir. 1995). And accordingly, the circumstances present in each of the cases

- 6 -

upon which Plaintiff relies only demonstrate how high the bar is. *See, e.g.*, *Sibley*, 488 F.2d at 1342 (defendant "control[led] the premises upon which [] services were to be rendered, including [the plaintiff's] access to the patient for purposes of the initiation of such employment"); *AMAE*, 231 F.3d at 581 (defendant exercised such a "peculiar degree of control" over local school districts that was so extreme it "affect[ed] the day-to-day operations of local public schools"); *Gomez v. Alexian Bros. Hosp. of San Jose*, 698 F.2d 1019, 1020 (9th Cir. 1983) (defendant hospital had complete control over whether the plaintiff was awarded a contract to operate the hospital's emergency room); *Lutcher v. Musicians Union Loc. 47*, 633 F.2d 880, 884-85 (9th Cir. 1980) (defendant labor union discriminatorily denied the plaintiff union membership and conceded that it denied him the opportunity to perform in a symphony with union musicians).

Plaintiff comes nowhere close to meeting this standard, whether in his Complaint or by invoking the materials he now asks this Court to consider. Indeed, the theory is entirely inapt. As a software provider that sells tools to would-be employers that advance their own efforts to procure employees, Workday could never be thought of as the sort of "de facto employer" in the paradigmatic indirect-employer cases described above. As for the requirement of "peculiar control," Plaintiff misrepresents the Complaint when he asserts (without citation) that it "clearly alleges that Workday exerts singular control over who advances to employment relationships with third-party employers." Opp. at 18. The Complaint says no such thing, and in fact never could because the assertion is *directly contrary* to Plaintiff's allegation that Workday's algorithm-based tools allow customers to "manipulate and configure" them to suit their purposes, Compl. ¶ 21. Plaintiff's unpled indirect-employer theory should be rejected.

### IV. PLAINTIFF'S INTENTIONAL DISCRIMINATION CLAIMS FAIL FOR MULTIPLE REASONS (COUNTS ONE AND THREE).

Workday's Motion identified three deficiencies in Plaintiff's intentional discrimination claims: (1) Plaintiff failed to exhaust his intentional discrimination claims, *infra* § A; (2) Plaintiff does not plead facts raising an inference of discrimination, *infra* § B; and (3) Plaintiff's invocation of discrimination in "terms and conditions" applies only to employers and therefore must be struck, *infra* § C. Plaintiff fails to respond meaningfully to any of these arguments.

### A. Plaintiff Failed To Exhaust Intentional Discrimination Claims Under Title VII And The ADEA.

Plaintiff does not dispute that he was required to exhaust his intentional discrimination claim before filing a Title VII or ADEA suit in federal court. Mot. at 11; *see* 42 U.S.C. § 2000e-5(e)(1), (f)(1); 29 U.S.C. § 626(d)(1). He also does not and cannot refute settled law in the Ninth Circuit that an administrative charge that is limited to a disparate impact theory does not exhaust a disparate treatment claim. *Brown v. Puget Sound Elec. Apprenticeship & Training Trust*, 732 F.2d 726, 730 (9th Cir. 1984) ("Any investigation of whether [plaintiff's employment] application was rejected as a result of disparate *impact* would not have encompassed her subsequent claim that . . . she was subjected to *intentional* sex discrimination."). And Plaintiff fails to address *Brown* or any of the additional cases Workday cites for this proposition, Mot. at 11, in his Opposition.

Instead, Plaintiff points to the bare statement in his EEOC charge that "he was discriminated against because of his race" Opp. at 19, while invoking the general proposition that "'employment discrimination charges are to be construed with the utmost liberality.'" Opp. at 19 (*quoting Paige v. State of Cal.*, 102 F.3d 1035, 1041–42 (9th Cir. 1996)). This argument is directly foreclosed by *Brown*, in which the plaintiff similarly alleged in her charge that the defendant "discriminates against women," but nevertheless was held only to have exhausted a disparate impact claim. 732 F.2d at 730.

In any event, "there is a limit" to the rule of liberal construction when "principles of notice and fair play are involved." *Freeman v. Oakland Unified School Dist.*, 291 F.3d 632, 636 (9th Cir. 2002). Here there is no fair reading of Plaintiff's charge as encompassing an intentional discrimination claim. Beyond the bare statement of "discrimination"—which could pertain to either a disparate impact or disparate treatment theory—the charge (1) identifies three types of tests that "impacted" applicants the same way; (2) cites an alleged violation of 42 U.S.C. § 2000e-2(k) (which is a subsection of Title VII titled "Burden of Proof in Disparate Impact Cases"); and (3) alleges the challenged tests disparately impact African-American, disabled, and over-40 applicants and are neither "job-related [nor] . . . consistent with any business necessity." 42 U.S.C. § 2000e-2(k). No allegations assert intentional discrimination or, indeed, address Workday's intent at all. The

intentional discrimination claims are unexhausted.

### B. Plaintiff Fails To Raise A Plausible Inference Of Intentional Discrimination On The Basis Of Race Or Age.

Not only did Plaintiff's EEOC charge contain no allegations that Workday engaged in intentional discrimination—his *Complaint* fails to do so also. As Workday's Motion explained, Plaintiff failed to "plead facts that give rise to a plausible inference that Workday . . . acted with discriminatory intent, whether directly, by stating a prima facie case under the *McDonnell Douglas* framework, or otherwise. Mot. at 12.

Plaintiff's entire response is a strawman: He insinuates that Workday's Motion is based on his "failure to recite the prima facie case elements" of an intentional discrimination claim, then points to the Supreme Court's decision in *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002), which held that a plaintiff need not do so. Opp. at 3, 9-10. Workday agrees and never argued otherwise. Mot. at 13–14 ("Although a plaintiff need not 'prove her prima facie discrimination case at the pleading stage, . . .'").

What Workday argued, and Plaintiff does not dispute, is that (a) Plaintiff must, in some manner, plead sufficient allegations to raise an inference of intentional discrimination; and (b) Plaintiff has not done so. Workday cited a host of cases dismissing complaints for such failure. Mot. at 12-15.[1] Even Plaintiff cites approvingly to Ninth Circuit case law holding that while *Swierkewicz* remains good law after *Iqbal* and *Twombly*, a plaintiff must nevertheless plead sufficient facts to raise an inference of discrimination. Opp. at 9 (citing *Austin v. Univ. of Oregon*, 925 F.3d 1135, 1136–39 (9th Cir. 2019) (finding complaint insuffucient)). Plaintiff points to no such facts in the Complaint and indeed does not respond to the argument at all, abandoning any intentional discrimination claim. *See Tovar v. City of San Jose*, No. 5:21-CV-02497-EJD, 2021

---

[1] *Blackman-Baham v. Kelly*, 2017 WL 679514, at *17 (N.D. Cal. Feb. 21, 2017) (dismissing complaint because "Plaintiff's allegations concerning Defendant's discriminatory motives are entirely conclusory"); *see Ali v. ServiceNow, Inc.*, 2019 WL 11542365, at *4 (N.D. Cal. Sept. 23, 2019), *aff'd*, 797 F. App'x 322 (9th Cir. 2020) (dismissing complaint where plaintiff did "not explain how his qualifications, or . . . past experience, [was] relevant to any of the positions to which he applied"); *Wei v. Dep't of Physics at Univ. of Cal. at Berkeley*, 2018 WL 457211, at *3 (N.D. Cal. Jan. 18, 2018) (dismissing complaint because "Plaintiff's allegation that Defendant declined to hire him on account of his age is unsupported and conclusory.").

WL 6126931, at *2 (N.D. Cal. Dec. 28, 2021) ("When a plaintiff files an opposition to a motion to dismiss addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.").

### C. Plaintiff's Allegations Of Discrimination Based On "Terms and Conditions Of Employment" And Under § 623(a)(1) Should Be Dismissed Or Struck.

Plaintiff did not address, and therefore concedes, that the Court should strike any allegations that Workday discriminated with respect to "the terms and conditions of employment" and dismiss any claims arising under § 623(a)(1) of the ADEA because such allegations can only stand against employers, not employment agencies. Mot. at 15-16.

## V. PLAINTIFF'S DISPARATE IMPACT CLAIMS FAIL FOR MULTIPLE REASONS (COUNTS TWO AND FOUR).

Plaintiff's disparate impact claims under Title VII, the ADA, and the ADEA also fail. To begin, even if Plaintiff could demonstrate that Workday is an employment agency, no such claims exist against an employment agency under Title VII and the ADEA, and those claims should be dismissed with prejudice. *Infra* § A. But if there is any doubt on that score, this Court need not even reach the issue because Plaintiff fails entirely to plead several required elements of a disparate impact claim. *Infra* § B.

### A. Neither Title VII Nor The ADEA Recognize A Disparate Impact Claim Against Employment Agencies.

As Workday demonstrates in its Motion, neither the ADEA nor Title VII authorizes a disparate impact claim against employment agencies. Mot. at 17-20. While Plaintiff claims the argument requires "legal contortions," Opp. at 20, it is in fact straightforward. The Supreme Court has consistently rooted disparate impact claims in statutory language that focuses on the "*effects* of [an] action on the employee rather than the motivation for the action of the employer," *Tex. Dep't of Housing & Cmty. Aff. v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 533 (2015). The provisions in the ADEA and Title VII referring to employer and labor organization liability employ that operative language. The provisions referring to employment agency liability do not. Congress therefore did not extend disparate impact claims to employment agencies. Plaintiff ignores this

1   textual analysis, and ultimately points to nothing in § 2000e-2(b) of Title VII or § 623(b) of the
2   ADEA that would authorize a disparate impact claim.

3   Instead of engaging with the statutory provisions that define liability, Plaintiff instead
4   invokes § 2000e-2(k)(1)(A). Opp. at 20. That provision allocates the "[b]urden of proof in disparate
5   impact cases," requiring the plaintiff to show that "a respondent uses a particular employment
6   practice that causes a disparate impact . . . and the respondent fails to demonstrate" its defenses.
7   Plaintiff's argument seems to be that because "respondent" is a defined term that includes all
8   entities potentially covered by Title VII—"employer, employment agency, labor organization, joint
9   labor-management committee," and so forth—the disparate-impact-burden-of-proof provision's
10  reference to "a respondent" must mean that Title VII authorizes disparate impact claims against all
11  of those entities.

12  That argument is untenable. Section 2000e-2(k)(1)(A) does not *create* any cause of action.
13  It merely articulates who has the relevant burdens where the statute otherwise authorizes a disparate
14  impact claim against a particular "respondent." That Congress used the convenient umbrella term
15  "respondent," rather than enumerating only those entities against whom it had elsewhere authorized
16  a disparate impact claim, cannot inferentially give rise to a claim that does not exist. When Congress
17  wants to authorize disparate impact claims, it uses words to authorize them. Where it does not, there
18  is no claim.

19  This reality also answers Plaintiff's heavy reliance on regulatory provisions, manuals, or
20  guidelines that assume the existence of disparate impact claims against employment agencies. Opp.
21  at 20-22. None of these materials identify a statutory basis for such a claim. Plaintiff, for his part,
22  does not even offer a basis for finding the relevant provisions ambiguous. The regulatory materials
23  he cites therefore carry no weight, because it is well-settled that administrative agency materials
24  enjoy no deference where, as here, the statutory language is clear. *See Chevron U.S.A. v. Natural*
25  *Resources Defense Council*, 467 U.S. 837, 842–43 (1984) ("If the intent of Congress is clear, that
26  is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously
27  expressed intent of Congress.").

28  As for the cases Plaintiff cites as purported support, none even address the relevant question.

*See* Opp. at 22-23. *Eldredge v. Carpenters 46* relates to labor organizations, not employment agencies. *Eldredge v. Carpenters 46 Northern California Counties Joint Apprenticeship and Training Committee*, 833 F.2d 1334 (9th Cir. 1987). And *Eldredge* explicitly *distinguishes* employment agencies from labor organizations in precisely the way Workday did in its Motion, Mot. at 20, explaining that an employment agency is "simply an intermediary between applicant and employer," while a labor organization selects applicants "in any way it deems appropriate." *Eldredge*, 833 F.2d at 1337. *Rabin v. PricewaterhouseCoopers LLP* addresses disparate impact claims brought by prospective employees—which is irrelevant here. 236 F. Supp. 3d 1126, 1128 (N.D. Cal. 2017). The same goes for *Raytheon Co. v. Hernandez*, which discusses disparate impact claims under the Americans with Disabilities Act, and only serves to once again reinforce that where Congress intends to authorize a disparate impact claim, it refers to practices "'that *have the effect* of discrimination.'" 540 U.S. 44, 53 (2003) (quoting 42 U.S.C. § 12112(b)).

Because Workday is not an employment agency, the Court may not need to address this issue at all. But, to the extent it does, its inquiry into whether the ADEA and Title VII authorize disparate impact claims against employment agencies should begin and end with the text, which contains no language creating such claims.

### B. Plaintiff Has Not Sufficiently Pled A Disparate Impact Claim Under Any Of The Statutes On Which He Relies.

In any event, Plaintiff offers no response to Workday's argument that he failed to plead a disparity, a specific employment practice, or a causal connection between the two. Mot. at 21-25. Plaintiff has therefore conceded the arguments and abandoned his disparate impact claims. *Tovar*, 2021 WL 6126931, at *2.

#### 1. Plaintiff Has Not Pled A Disparity.

Plaintiff fails to address Workday's argument that he has not sufficiently pled a disparity. Plaintiff summarily alleges that "upon information and belief, [Workday's "selection tools"] disparately impact African-American, [disabled, and over-40] applicants because the tests have the effect of disproportionately excluding African-American[], [disabled, and over-40 applicants]." Compl. ¶¶ 24, 27, 29. This is not enough. Although a plaintiff need not define an alleged disparity

with great precision at the pleading stage, he must do more than "merely describe[e] his own experience." *Liu*, 551 F. Supp. 3d at 991. Yet Plaintiff's allegations fall short of a "sophisticated effort . . . to develop a plausible factual basis in support of his assertion" of a disparity. *Id.*

### 2. **Plaintiff Has Not Pled A Specific Employment Practice.**

Workday's Motion noted that Plaintiff completely failed to identify the specific employment practices he is claiming caused a disparate impact. Mot. at 22-24. Plaintiff's response is a strawman and non sequitur rolled into one. He says that "Workday suggest[s] that this court adopt a pleading standard that would require detailed proof of disparate impact claims," then cites cases that deny motions to strike class action allegations. Opp. at 23-25. Workday neither demanded any proof nor moved to strike class allegations. It argued that to adequately plead a disparate impact claim, Plaintiff must identify the employment practice he claims caused that impact. Courts have not hesitated to dismiss a complaint where the plaintiff fails to do so. *See Canatella v. Reverse Mortg. Sols. Inc.*, 2014 WL 7205146, at *8 (N.D. Cal. Dec. 17, 2014) (dismissing complaint where plaintiff did not plead a "*specific*, identified . . . practice or selection criterion" caused "a significant disparate impact").

Plaintiff does not and cannot offer more clarity than the nebulously plural set of associated products or services listed in the Complaint. Compl. ¶ 8 (Workday's screening tools "allow [Workday's] customers to manipulate and configure them in a discriminatory manner"); Compl. ¶ 37 (Workday's tools "permit "decision-makers [] free[dom] to exercise their discretion in an unguided, subjective manner"). That is the opposite "specific employment practice or set of practices" responsible for the alleged disparate impact. *Liu*, 551 F. Supp. 3d at 990.

### 3. **Plaintiff Has Not Sufficiently Pled Causation.**

Finally, Plaintiff provides no detail concerning how the challenged employment practice could possibly cause any unlawful disparate impact. *See* Mot. at 24-25. Plaintiff argues that his "complaint outlines how Workday's processes and practices denied him 80-100 employment opportunities because of his race, age, and disability." Opp. at 10. But the Complaint belies this. Neither his Complaint nor his Opposition states any facts (including any expected facts and/or reasonable beliefs) concerning how Workday's products work in a discriminatory way. Nor does

Plaintiff plausibly assert any theory of causation, including whether and how his protected characteristics influenced an employment decision. Because Plaintiff fails to allege what the challenged employment practice is or does, or how it could cause a statistical disparity, his disparate impact claims should be dismissed.

## VI. CONCLUSION

In short, Plaintiff's entire Complaint should be dismissed for failure to allege facts plausibly demonstrating that Workday is an employment agency. Plaintiff's First and Third Counts for intentional discrimination also must be dismissed for the separate and distinct reason that they are unexhausted and insufficiently pled. And Plaintiff's Second and Fourth Counts for disparate impact discrimination further independently fail because no such claim can arise against employment agencies under Title VII or the ADEA, and in any case, these claims are insufficiently pled.

Defendant respectfully requests the Court grant Defendant's Motion to Dismiss.

Dated: September 25, 2023.                                              ORRICK, HERRINGTON & SUTCLIFFE LLP

By: _____
JULIE A. TOTTEN
ERIN M. CONNELL
KAYLA D. GRUNDY
ALEXANDRIA R. ELLIOTT
JUSTIN M. WASHINGTON
Attorneys for Defendant
WORKDAY, INC.