UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DEREK MOBLEY,

    Plaintiff,

  v.

WORKDAY, INC.,

    Defendant.

Case No.  23-cv-00770-RFL

**ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND**

Re: Dkt. No. 17

   Derek Mobley alleges Workday, Inc., provided companies with algorithm-based applicant screening tools that discriminated against him and other similarly situated job applicants on the basis of race, age, and disability.  Mobley alleges that, as an African-American man over the age of forty with anxiety and depression, he applied to 80 to 100 jobs with companies that use Workday's screening tools and received not a single job offer.

   Workday moves to dismiss Mobley's complaint on several bases.  First, Workday argues that Mobley failed to exhaust administrative remedies with the Equal Employment Opportunity Commission as to his intentional discrimination claims.  Workday's motion on that basis is **DENIED**.  The thrust of Mobley's EEOC charge is that Workday's screening tools are biased and discriminated against him by denying him access to employment opportunities on the basis of race, age, and disability.  The allegations in the charge are reasonably related to his intentional discrimination claims and thus satisfy his obligation to exhaust remedies with the EEOC.

   Second, Workday argues that Mobley has not alleged facts to state a plausible claim that Workday is liable as an "employment agency" under the anti-discrimination statutes at issue. The allegations of the complaint are sparse on that point.  Mobley does not allege facts sufficient to state a claim that Workday was "procuring" employees for these companies, as required for

Workday to qualify as an "employment agency."  However, Mobley contends that he could amend his complaint to fix those deficiencies by pleading additional facts outlined in his opposition brief.  At the motion hearing and in his opposition brief, Mobley also identified two other potential legal bases for Workday's liability: as an "indirect employer" and as an "agent." Although the current version of the complaint does not plead those theories or facts supporting them, it appears that Mobley could potentially amend the complaint to do so.  Accordingly, Workday's motion to dismiss all claims on this basis is **GRANTED WITH LEAVE TO AMEND**.

I.      **BACKGROUND**

      A.      **The Complaint's Allegations**

Mobley alleges that Workday administers and disseminates algorithm-based applicant screening tools to thousands of companies, including numerous Fortune 500 firms.  (Dkt. No. 1 ("Compl.") ¶¶ 8, 23.)  These screening tools allegedly interpret an applicant's qualifications and recommend whether the applicant should be accepted or rejected.  (*Id.* ¶ 8.)  Workday's customers can "manipulate and configure [the tools] in a discriminatory manner to recruit, hire, and onboard employees."  (*Id.*)  According to the complaint, an applicant who does not make it past Workday's screening products will not advance in the hiring process.  (*Id.* ¶ 22.)

Mobley is an African-American male over the age of forty with a bachelor's degree in finance from Morehouse College and an associate's degree in network systems administration from ITT Technical Institute.  (*Id.* ¶ 19.)  He suffers from anxiety and depression.  (*Id.*)  Since 2018, Mobley has applied to 80 to 100 positions with companies that use Workday's screening tools for talent acquisition and hiring.  (*Id.* ¶ 20.)  He alleges that he was denied employment every time.  (*Id.*)

Mobley alleges that Workday's tools discriminated against job applicants who are African American, over the age of forty, and/or disabled.  (*Id.* ¶ 8.)  He asserts claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., the Civil Rights Act of 1866 ("Section 1981"), 42 U.S.C. § 1981, the Age Discrimination in Employment Act of 1967

("ADEA"), 29 U.S.C. § 621 et seq., and the ADA Amendments Act of 2008 ("ADAAA"), 42

U.S.C. § 12101 et seq., for intentional discrimination on the basis of race and age and disparate

impact discrimination on the basis of race, age, and disability.

### B.    Procedural Background

On July 19, 2021, Mobley filed an amended charge of discrimination with the Equal

Employment Opportunity Commission, alleging that Workday's selection tools/tests are

discriminatory.  (Compl. ¶ 6; Dkt. No. 17, Ex. A ("Charge").)  On November 22, 2022, the

EEOC issued a dismissal and notice of right to sue.  (Compl. ¶ 6.)  Mobley filed the instant

action on February 21, 2023.  (*See id.*)

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain

statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A

complaint that fails to meet this standard may be dismissed pursuant to Rule 12(b)(6).  *See* Fed.

R. Civ. P. 12(b)(6).  To overcome a Rule 12(b)(6) motion to dismiss after the Supreme Court's

decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corporation v. Twombly*,

550 U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that

the claim has at least a plausible chance of success.'"  *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135

(9th Cir. 2014) (quoting *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1107 (9th Cir.

2013)).

The court "accept[s] factual allegations in the complaint as true and construe[s] the

pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire &

Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  But "allegations in a complaint . . . may

not simply recite the elements of a cause of action [and] must contain sufficient allegations of

underlying facts to give fair notice and to enable the opposing party to defend itself effectively."

*Levitt*, 765 F.3d at 1135 (quoting *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d

990, 996 (9th Cir. 2014)).  "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Iqbal*, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

In employment discrimination cases, the complaint "need not plead a prima facie case of discrimination." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 515 (2002).  "[H]eightened fact pleading of specifics" is not required, but the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

## III.   DISCUSSION

### A.   Requests for Judicial Notice

Both parties filed requests for judicial notice in connection with the motion to dismiss. (Dkt. Nos. 17-1, 33-1.)  "Generally, a court may not consider material beyond the complaint in ruling on a [Rule] 12(b)(6) motion." *Intri-Plex Techs., Inc. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007).  However, a court may take judicial notice of matters of public record "so long as the facts noticed are not subject to reasonable dispute." *Id.* (citation and internal quotation marks omitted).

Workday requests that the Court take judicial notice of Mobley's amended charge of discrimination, attached as Exhibit A to Workday's motion to dismiss.  This request, which Mobley did not oppose, is **GRANTED**. *See Dornell v. City of San Mateo*, 19 F. Supp. 3d 900, 904 n.3 (N.D. Cal. 2013) (taking judicial notice of EEOC charge because it is a public record whose accuracy is not in dispute).

Mobley requests that the Court take judicial notice of: (1) excerpts from Workday's Form 10-Ks for 2022 and 2023; (2) various webpages from Workday's website; and (3) a table of "non-motion to dismiss cases" cited in Workday's motion to dismiss.  (Dkt. No. 33-1 at 1–2.) Workday opposes judicial notice of these materials.  (Dkt. No. 36.)  Mobley's request for judicial notice is **DENIED**.

Although courts routinely take judicial notice of Form 10-Ks as proof that those documents have been publicly filed with the Securities and Exchange Commission, Mobley is

not asking the Court to take notice that those documents were filed.  Instead, Mobley requests

that the Court supplement the allegations of his complaint with the contents of the Form 10-Ks,

even though the complaint does not mention the Form 10-Ks in any way.  The Court has no legal

basis to do what Mobley requests.  *See Oklahoma Firefighters Pension & Ret. Sys. v. IXIA*, 50 F.

Supp. 3d 1328, 1350 (C.D. Cal. 2014) ("Plaintiffs cannot utilize [SEC filings] to amend the

complaint and defeat defendants' motion to dismiss.").  The Court declines to take notice of

Workday's webpages for the same reason.  *See In re Apple Inc. Device Performance Litig.*, 386

F. Supp. 3d 1155, 1166 (N.D. Cal. 2019) (denying plaintiffs' request for judicial notice of

Apple's webpages because the request "appear[ed] to be an attempt to amend the pleadings to

add more allegations").  Finally, Mobley's table of "non-motion to dismiss cases" cited by

Workday, which amounts to legal argument, is not judicially noticeable.  *Garcia v. California

Supreme Ct.*, No. CV 12-4504-DWM, 2014 WL 309000, at *1 (N.D. Cal. Jan. 21, 2014) ("A

request for judicial notice is not a proper vehicle for legal argument."); *Jones v. Curry*, No.

C071013RMW(PR), 2008 WL 3550866, at *2 (N.D. Cal. Aug. 13, 2008) ("The court need not

take judicial notice of case law.").

### B.    Exhaustion of Administrative Remedies

The parties do not dispute that Mobley's EEOC charge sufficiently exhausted his

disparate impact claims.  However, Workday seeks dismissal of Mobley's claims for intentional

discrimination under Title VII and the ADEA for failure to exhaust administrative remedies.

Workday contends that Mobley's EEOC charge alleged only claims for disparate impact, not

intentional discrimination.  (Mot. at 11–12.)  The motion to dismiss on this basis is **DENIED**.

Courts are to construe the language of EEOC charges with "utmost liberality since they

are made by those unschooled in the technicalities of formal pleading."  *B.K.B. v. Maui Police

Dep't*, 276 F.3d 1091, 1100 (9th Cir. 2002) (internal quotation marks and citation omitted).

"Even when an employee seeks judicial relief for claims not listed in the original EEOC charge,

the complaint 'nevertheless may encompass any discrimination like or reasonably related to the

allegations of the EEOC charge.'"  *Freeman v. Oakland Unified Sch. Dist.*, 291 F.3d 632, 636

5

(9th Cir. 2002) (quoting *Oubichon v. North Am. Rockwell Corp.*, 482 F.2d 569, 571 (9th Cir. 1973)).

"[T]he inquiry into whether a claim has been sufficiently exhausted must focus on the factual allegations made in the charge itself[.]" *Id.* at 637.  In determining whether the plaintiff has exhausted allegations not previously specified in the EEOC charge, the court considers factors such as "the alleged basis of the discrimination, dates of discriminatory acts specified within the charge, perpetrators of discrimination named in the charge, and any locations at which discrimination is alleged to have occurred.  In addition, the court should consider [the] plaintiff's civil claims to be reasonably related to allegations in the charge to the extent that those claims are consistent with the plaintiff's original theory of the case." *B.K.B.*, 276 F.3d at 1100.  The court "must inquire whether the original EEOC investigation would have encompassed the additional charges made in the court complaint but not included in the EEOC charge itself." *Sosa v. Hiraoka*, 920 F.2d 1451, 1456 (9th Cir. 1990) (internal quotation marks and citation omitted).

Mobley's allegations in his EEOC charge all concern bias in Workday's screening tools based on his job application experience.  The charge alleges, "Since 2018, Mr. Mobley has applied for at least 80-100 . . . positions that use Workday, Inc. as a screening tool for talent acquisition and/or hiring.  He has been denied employment each and every time."  (Charge ¶ 2.)  According to Mobley, Workday uses "personality tests," "integrity tests," and "cognitive tests" to assess various traits, and that "[i]f an individual does not make it past these Workday, Inc. tests, he/she will not advance in the hiring process."  (*Id.* ¶¶ 3, 4.)  He alleges that "[t]he selection tools and/or tests utilized by Workday, Inc. in making selection decisions - to include screening and hiring applicants discriminate on the basis of race" (*id.* ¶ 5), and "the Charging Party [Mobley] and other African-Americans have been discriminated against because of their race" (*id.* ¶ 7).  He further alleges that "the selection tools and/or tests utilized by Workday, Inc. in making selection decisions . . . discriminate on the basis of age."  (*Id.* at ¶ 9.)  Sprinkled throughout Mobley's EEOC charge are citations to Title VII and the ADEA generally, which

would apply to both disparate impact and intentional discrimination.  (*Id.* ¶¶ 5–6, 9.)  However, Mobley's citation to specific provisions within those statutes and his discussion of the applicable legal standards are focused solely on disparate impact, not intentional discrimination.  (*Id.*)

The thrust of Mobley's factual allegations in the EEOC charge is that Workday's screening tools discriminated against him based on his race and age.[1]  Those claims are reasonably related to his intentional discrimination claims in this lawsuit and are consistent with allegations of intentional discrimination.  Both theories of discrimination involve the same forms of discrimination (race and age), the same discriminatory acts (adoption/use of the screening tools), same perpetrators (persons who developed and implemented the tools), and same locations (companies at which the tools were deployed).  *B.K.B.*, 276 F.3d at 1100.

Furthermore, under these particular circumstances, the EEOC's investigation of the disparate impact claims would have encompassed similar factual issues as its investigation of intentional discrimination claims.  In a disparate impact investigation, the EEOC would focus on (a) the level of disparities, if any, caused by use of Workday's screening tools and (b) whether there was any business necessity justifying their use.  *See Rose v. Wells Fargo & Co.*, 902 F.2d 1417, 1423 (9th Cir. 1990) ("A disparate impact claim challenges employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity.") (citations and internal quotation omitted).  Both those issues would overlap with an investigation of intentional discrimination.  Intent and causation—both elements of an intentional discrimination claim—can be inferred from gross or substantial statistical disparities.  *See Gay v. Waiters' & Dairy Lunchmen's Union, Loc. No. 30*, 694 F.2d 531, 550 (9th Cir. 1982) (discussing when discriminatory intent may be inferred from statistical data); *Paige v. California*, 291 F.3d 1141, 1145 (9th Cir. 2002) (observing that causation may be inferred where statistical analysis shows a disparity that is "sufficiently substantial") (quoting *Watson v. Fort Worth Bank & Tr.*, 487 U.S.

---

[1] Mobley's EEOC charge also alleges discrimination based on disability.  There is no dispute that Mobley has exhausted administrative remedies for his disparate impact ADA claim.

7

977, 995 (1988)).

Likewise, when investigating business necessity for a disparate impact claim, the EEOC reasonably could have looked into Workday's stated reasons for adopting the screening tools at the time and Workday's evaluation of how well the screening tools satisfied its business objectives.  Those same documents and witnesses would be the focus of any intentional discrimination investigation into whether Workday deliberately adopted a biased screening tool to attract or advance younger or non-African American candidates.

Workday notes that some courts have found in other cases that an EEOC charge focused on disparate impact was not reasonably related to a later lawsuit for intentional discrimination. (Mot. at 11–12.)  Indeed, in many situations, the investigation and evidence of those two theories of liability may not be reasonably related.

*Brown v. Puget Sound Elec. Apprenticeship & Training Tr.*, 732 F.2d 726 (9th Cir. 1984), is one of those situations.  In that case, the plaintiff was initially rejected from an apprenticeship program in 1977 due to her age and ineligibility for a veterans' age credit, and she filed an EEOC charge alleging that the age credit disparately impacted women.  *Id.* at 728.  In 1978, after the veterans' age credit was abolished, the plaintiff reapplied to the program and was placed at number 34 on the waiting list.  *Id.*  A male who was number 108 on the list ultimately received admission before her, but the plaintiff did not file an EEOC charge over the waiting list bypass.  *Id.*  The plaintiff subsequently sued for (1) disparate impact discrimination based on her initial rejection in 1977 under the veterans' age credit program and (2) intentional discrimination based on being passed over on the waiting list a year later.  *Id.* at 728–29.

Under those circumstances, the Ninth Circuit held that the plaintiff had failed to exhaust her intentional discrimination claim because "[a]ny investigation of whether [the plaintiff's] application was rejected as the result of disparate *impact* would not have encompassed her subsequent claim that when she reapplied to the program she was subjected to *intentional* sex discrimination." *Id.* at 730.  The intentional discrimination claim and disparate impact claim were based on separate incidents, and the investigation of the disparate impact claim would not

8

have encompassed the later unrelated intentional discrimination claim, which was not based on the age credit.  By contrast, Mobley's claims of disparate impact and intentional discrimination are both based on Workday's screening tools, and as explained above, an EEOC investigation into whether the tools had a disparate impact or were intentionally biased would be intertwined.

        C.        **Failure to State Plausible Claims**

        1.        **Whether Workday is an "employment agency"**

At the hearing on the motion, Mobley advanced three possible theories on which Workday might be held liable: (1) as an employment agency; (2) as an indirect employer; and/or (3) as an agent of the companies that utilize Workday's screening tools.  However, Mobley alleges only an "employment agency" theory in his complaint.  (Compl. ¶ 5.)  Workday contends that the complaint fails to plausibly allege that Workday is an "employment agency," a necessary predicate to all of Mobley's claims.  (Mot. at 6–10.)  The motion to dismiss on this basis is **GRANTED WITH LEAVE TO AMEND**.

Title VII and the ADA both define an "employment agency" as "any person regularly undertaking with or without compensation to procure employees for an employer or to procure for employees opportunities to work for an employer and includes an agent of such a person." 42 U.S.C. § 2000e(c); 42 U.S.C. § 12111(7).  Section 1981 employment discrimination claims follow the same legal principles as Title VII disparate treatment claims.  *Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 850 (9th Cir. 2004).  The ADEA definition is similar but narrower, excluding the clause about procuring opportunities for employees: "any person regularly undertaking with or without compensation to procure employees for an employer and includes an agent of such a person."  29 U.S.C. § 630(c).  "[T]he statutory requirement that an employment agency be one that 'regularly' undertakes to procure employees or employment opportunities indicates that the Congress had in mind to include only those engaged to a significant degree in that kind of activity as their profession or businesses."  *Brush v. S.F. Newspaper Printing Co.*, 315 F. Supp. 577, 580 (N.D. Cal. 1970).

Here, there are insufficient allegations in the complaint to support that Workday is an

"employment agency."  As Mobley's counsel acknowledged at the hearing, the allegations of the complaint are "sparse."  The paragraph of the complaint alleging that Workday is an "employment agency" is entirely conclusory.  (*See* Compl. ¶ 5.)  Elsewhere in the complaint, there are few allegations detailing Workday's involvement in procuring employees.  Mobley does not allege details about his application process other than that he applied to jobs with companies using Workday and did not get any of them.  The complaint does not allege that Workday helps recruit and select applicants.  *See Radentz v. Am. Ass'n of Physician Specialists, Inc.*, No. EDCV1301486SJOOPX, 2014 WL 12601014, at *5 (C.D. Cal. Nov. 10, 2014) (finding defendant was not an employment agency in part because plaintiff "d[id] not allege that [defendant] [wa]s actively involved in the application and interview process for any specific employers, or help[ed] any employers pick and choose candidates").  Mobley's primary allegation is that Workday offers discriminatory applicant screening tools to companies seeking to hire employees (Compl. ¶¶ 8, 21), but he does not allege whether these tools perform screening based solely on employer criteria, Workday's own algorithm(s), or some combination of the two.  Nor does Mobley allege whether Workday is involved in procuring applications or only in helping companies organize the applications they receive independently of Workday. Given the paucity of factual allegations, the complaint does not allege that Workday is significantly involved enough in procuring employees to face liability as an "employment agency" and thus fails to state the claims asserted.

Mobley stated at the hearing and in his opposition brief that he could add additional facts that would state a plausible claim that Workday qualifies as an employment agency. Accordingly, Mobley will be granted leave to amend his complaint.  *Chinatown Neighborhood Ass'n v. Harris*, 33 F. Supp. 3d 1085, 1093 (N.D. Cal. 2014 ("If a motion to dismiss is granted, a court should normally grant leave to amend unless it determines that the pleading could not possibly be cured by allegations of other facts.") (citing *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.,* 911 F.2d 242, 247 (9th Cir. 1990)).

As for Mobley's two additional theories of liability—an "indirect employer" theory

raised in his opposition to the motion to dismiss (Opp. at 15–18), and an "agency" theory raised at the hearing on the motion—neither theory was alleged in the complaint, and the complaint does not contain factual allegations sufficient to state a plausible claim under either of those theories.

As to the indirect employer theory, the current version of the complaint contains few factual allegations about Workday's control over, participation in, or interference with the job application process.  *See Anderson v. Pac. Mar. Ass'n*, 336 F.3d 924, 932 (9th Cir. 2003) (liability exists on an indirect employer theory where the alleged the indirect employer engages in "discriminatory interference" and has "some peculiar control" over the employee's relationship with the direct employer) (internal quotation marks omitted).

The complaint also does not contain factual allegations about companies delegating control to Workday over the hiring process, as required for an agency theory of liability.  *Los Angeles Dept. of Water & Power v. Manhart*, 435 U.S. 702, 718 n.33 (1978) (describing "agent[s]" of covered employers as being liable under Title VII and noting that an employer cannot "avoid his responsibilities by delegating discriminatory programs to corporate shells"); *see also Select Issues: Assessing Adverse Impact in Software, Algorithms, and Artificial Intelligence Used in Employment Selection Procedures Under Title VII of the Civil Rights Act of 1964*, U.S. Equal Employment Opportunity Commission (May 18, 2023), available at https://www.eeoc.gov/laws/guidance/select-issues-assessing-adverse-impact-software-algorithms-and-artificial (describing the EEOC's view that "software vendors" may qualify as "agents" "if the employer has given them authority to act on the employer's behalf," which "may include situations where an employer relies on the results of a selection procedure that an agent administers on its behalf").

If Mobley wishes to pursue either of these additional theories, he should so allege in his amended complaint, supported by sufficient factual allegations.

### 2.    Workday's Remaining Arguments

As the motion to dismiss is granted based on Mobley's failure to adequately allege that

Workday is an "employment agency," the Court declines to reach Workday's remaining arguments. However, in the interest of litigation efficiency and judicial economy, the Court offers the following observations about the intentional discrimination and disparate impact claims for Mobley's consideration as he prepares his amended complaint.

The complaint as pleaded lacks allegations sufficient to support an inference of intentional discrimination by Workday. "Stating a claim for disparate treatment requires pleading facts giving rise to an inference that the employer *intended* to discriminate against the protected group." *Liu v. Uber Techs. Inc.*, 551 F. Supp. 3d 988, 992 (N.D. Cal. 2021) (emphasis in original). Mobley does not allege that he disclosed any of his protected traits to Workday or that Workday otherwise knew of or suspected his traits. Nor does Mobley plausibly allege that he was qualified for the 80 to 100 jobs that he applied for: the complaint lacks any factual allegations about the types of jobs he applied for, their requirements, or his qualifications beyond his education. Without this information, the Court cannot conclude that it is plausible that the reason Mobley did not receive employment was because of his protected traits rather than his qualifications.

Similarly, the complaint as pleaded lacks factual allegations sufficient to state a disparate impact claim. "To state a claim for disparate impact discrimination under Title VII, a plaintiff must allege (1) a significant disparity with respect to employment for the protected group, (2) the existence of a specific employment practice or set of practices, and (3) a causal relationship between the identified practice and the disparity." *Liu*, 551 F. Supp. 3d at 990 (citing *Freyd v. University of Oregon*, 990 F.3d 1211, 1224 (9th Cir. 2021)). "At the pleading stage, the complaint need only allege facts giving rise to plausible inferences that the disparity exists and is caused by the identified practice." *Id.* (citing *Moussouris v. Microsoft Corporation*, 2016 WL 6037978, at *3 (W.D. Wash. Oct. 14, 2016); *Chaidez v. Ford Motor Company*, 937 F.3d 998, 1007 (7th Cir. 2019)).

As for disparity, Mobley's only non-conclusory factual allegations regarding disparity rely on his own personal experience, but those allegations are quite sparse. He alleges that he

applied to 80 to 100 jobs but does not allege what types of jobs those were, what his

qualifications were for those jobs, or whether he got better results applying to similar jobs that

did not use Workday.

Mobley also does not adequately allege a specific employment practice.  The complaint

focuses on Workday's "screening tools" but it is unclear from the complaint what or whose

specific use of the tools is allegedly discriminatory.  For example, Mobley asserts that he is suing

Workday for its "administration and dissemination of discriminatory screening products"

(Compl. ¶ 8), but he also alleges that "these tools *when utilized by private companies* as

administered by Workday relies upon subjective practices which have caused disparate impact"

(*id.* (emphasis added)).

Lastly, the complaint does not allege a plausible theory of causation.  Mobley has not

pleaded a significant disparity sufficient to infer causation, nor does he "cite any data, scientific

literature, or personal experiences to support the theory that [Workday's screening tools] had a

discriminatory impact on a specific protected group."  *Alhayoti v. Blinken*, No. 21-CV-07713-

LB, 2022 WL 2869850, at *9 (N.D. Cal. July 21, 2022) (dismissing disparate impact claim for

failure to plead causation).

IV.    CONCLUSION

Based on the foregoing, Workday's motion to dismiss is **GRANTED WITH LEAVE**

**TO AMEND.**  Mobley shall file an amended complaint curing the deficiencies identified in this

order by no later than **February 20, 2024**.  If Mobley does not file an amended complaint by that

date, his complaint will remain dismissed, and the case will be closed.

**IT IS SO ORDERED.**

Dated: January 19, 2024

RITA F. LIN
United States District Judge

13