1    JULIE A. TOTTEN (STATE BAR NO. 166470)
     jatotten@orrick.com
2    ERIN M. CONNELL (STATE BAR NO. 223355)
     econnell@orrick.com
3    KAYLA D. GRUNDY (STATE BAR NO. 300513)
     kgrundy@orrick.com
4    ALEXANDRIA R. ELLIOTT (STATE BAR NO. 320293)
     aelliott@orrick.com
5    ORRICK, HERRINGTON & SUTCLIFFE LLP
     The Orrick Building
6    405 Howard Street
     San Francisco, CA 94105-2669
7    Telephone:    (415) 773-5700
     Facsimile:     (415) 773-5759
8

9    Attorneys for Defendant
     WORKDAY, INC.
10

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEREK L. MOBLEY, for and on behalf of himself and other persons similarly situated; <br><br>          Plaintiff, <br><br>     v. <br><br> WORKDAY, INC. <br><br>          Defendant. | Case No. 3:23-cv-00770-RFL <br><br> **DEFENDANT WORKDAY, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** <br><br> Date:         May 7, 2024 <br> Time:         10:00 a.m. <br> Courtroom:   15, 18th Floor <br> Judge:        Hon. Rita F. Lin <br><br> Amended Complaint:  February 20, 2024 |

**TABLE OF CONTENTS**

Page

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................. 1

I.      INTRODUCTION AND SUMMARY OF POINTS ............................................. 1

II.     PLAINTIFFS' ALLEGATIONS IN THE FIRST AMENDED COMPLAINT ................. 2

III.    APPLICABLE LEGAL STANDARD.................................................................. 3

IV.     PLAINTIFF FAILS TO ALLEGE THAT WORKDAY IS AN ENTITY THAT
        CAN BE SUBJECT TO LIABILITY UNDER TITLE VII, THE ADEA, OR THE
        ADA .......................................................................................................... 4

        A.      Workday Is Not An Employment Agency ............................................. 4

        B.      Workday Is Not Plaintiff's Indirect Employer....................................... 7

        C.      Workday Is A Software Provider—Not An Agent Of Its Customers..................... 8

V.      PLAINTIFF OTHERWISE FAILS TO STATE A CLAIM AGAINST
        WORKDAY ................................................................................................ 10

        A.      Plaintiff Fails To State A Claim For Intentional Discrimination......................... 10

        B.      Plaintiff's Disparate Impact Claims Fail............................................... 12

        C.      Plaintiff's FEHA Claim Fails.............................................................. 14

VI.     CONCLUSION .......................................................................................... 15

1

2

**TABLE OF AUTHORITIES**

3

**Page(s)**

4

**Cases**

5

*Ali v. ServiceNow, Inc.*,
  2019 WL 11542365 (N.D. Cal. Sept. 23, 2019) ...................................................................... 11

6

*Anderson v. Pacific Maritime Ass'n*,
  336 F.3d 924 (9th Cir. 2003).................................................................................................... 7

7

8

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................................ 3, 4

9

10

*Assoc. of Mexican-American Educators v. California*,
  231 F.3d 572 (9th Cir. 2000).................................................................................................... 8

11

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................................................. 4

12

13

*Brush v. San Francisco Newspaper Printing Co.*,
  *aff'd*, 469 F.2d 89 (9th Cir 1972) 315 F. Supp. 577 (N.D. Cal. 1970) ...................................... 4

14

*Career Sys. Dev. Corp. v. Am. Home Ins. Co.*,
  2010 WL 11636254 (N.D. Cal. Aug. 11, 2010)...................................................................... 12

15

16

*Carparts Distribution Ctr., Inc. v. Auto. Wholesaler's Ass'n of New England, Inc.*,
  37 F.3d 12 (1st Cir. 1994) ................................................................................................... 9, 10

17

18

*Davis v. Valon Mortg.*,
  2023 WL 4661789 (D. Ariz. July 20, 2023) ........................................................................... 12

19

*DeVito v. Chicago Park Dist.*,
  83 F.3d 878 (7th Cir. 1996)................................................................................................. 9, 10

20

21

*Equal Employment Opportunity Commission v. Illinois*,
  69 F.3d 167 (7th Cir. 1995)...................................................................................................... 7

22

23

*Fonseca v. Sysco Food Servs. of Ariz., Inc.*,
  374 F.3d 840 (9th Cir. 2004).................................................................................................. 10

24

*Freyd v. Univ. of Oregon*,
  990 F.3d 1211 (9th Cir. 2021)................................................................................................ 12

25

26

*Garcia v. City of King City*,
  2015 WL 1737936 (N.D. Cal. Apr. 8, 2015) ......................................................................... 12

27

28

- ii -

*Gomez v. Alexian Bros. Hosp. of San Jose*,
  698 F.2d 1019 (9th Cir. 1983) ........................................................................ 8

*Liu v. Uber Techs. Inc.*,
  551 F. Supp. 3d 988 (N.D. Cal. 2021) ................................................. 10, 12, 14

*Ortiz v. Georgia P.*,
  973 F. Supp. 2d 1162 (E.D. Cal. 2013) ........................................................ 15

*Raines v. U.S. Healthworks Med. Grp.*,
  15 Cal. 5th 268 (2023) ..................................................................................... 9

*Sibley v. Memorial Hospital v. Wilson*,
  488 F.2d 1338, 1342 (D.C. Cir. 1973) ........................................................... 8

*Smith v. BP Lubricants USA Inc.*,
  64 Cal. App. 5th 138 (2021) ........................................................................ 15

*Smith v. City of Jackson*,
  544 U.S. 228 (2005) ...................................................................................... 12

*Texas Department of Housing & Community Affairs v. Inclusive Communities
  Project, Inc.*,
  576 U.S. 519 (2015) ...................................................................................... 12

*Vernon v. State*,
  116 Cal. App. 4th 114 (Cal. Ct. App. 2004) ............................................ 14, 15

*Wei v. Dep't of Physics at Univ. of Cal. at Berkeley*,
  2018 WL 457211 (N.D. Cal. Jan. 18, 2018) ................................................. 11

*Whitsitt v. Hedy Holmes Staffing Servs.*,
  2015 WL 5560119 (E.D. Cal. Sept. 21, 2015), *aff'd*, 671 F. App'x 1004 (9th
  Cir. 2016) ..................................................................................................... 4, 5

*Williams v. City of Montgomery*,
  742 F.2d 586 (11th Cir. 1984) ................................................................... 9, 10

*Wynn v. Natl. Broad. Co., Inc.*,
  234 F. Supp. 2d 1067 (C.D. Cal. 2002), dismissed, No. CV00-11248-
  SVW(RZX), 2002 WL 31681865 (C.D. Cal. Mar. 6, 2002) .......................... 15

**Statutes**

28 U.S.C. § 1367(c) ........................................................................................... 14

29 U.S.C. § 623 .................................................................................................. 4

29 U.S.C. § 623(a)(1) ....................................................................................... 12

- iii -

29 U.S.C. § 623(a)(2) ........................................................................................... 12

29 U.S.C. § 623(b) ............................................................................................... 10

29 U.S.C. § 630(c) ................................................................................................. 4

42 U.S.C. § 1981 ...................................................................................... 3, 10, 12

42 U.S.C. § 2000e-2 ............................................................................................... 4

42 U.S.C. § 2000e-2(a)(1) ................................................................................... 12

42 U.S.C. § 2000e-2(a)(2) ................................................................................... 12

42 U.S.C. § 2000e-2(b) ........................................................................................ 10

42 U.S.C. § 2000e(c) .............................................................................................. 4

42 U.S.C. § 12111 .................................................................................................. 4

Fed. R. Civ. P. 12(b)(6) ......................................................................................... 4

**Other Authorities**

*Select Issues: Assessing Adverse Impact in Software, Algorithms, and Artificial
Intelligence Used in Employment Selection Procedures Under Title VII of the
Civil Rights Act of 1964*, U.S. Equal Employment Opportunity Commission
(May 18, 2023), available at https://www.eeoc.gov/laws/guidance/select-
issues-assessing-adverse-impact-software-algorithms-and-artificial ......................................... 9

DEFENDANT WORKDAY, INC.'S MOTION TO DISMISS AMENDED COMPLAINT AND MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT

1

## NOTICE OF MOTION AND MOTION

2

### TO PLAINTIFF DEREK MOBLEY AND HIS COUNSEL OF RECORD:

3      **PLEASE TAKE NOTICE** that on May 7, 2024 at 10:00am, or as soon thereafter as the

4    matter may be heard, before the Honorable Rita F. Lin for the United States District Court,

5    Northern District of California, San Francisco, in Courtroom 15 on the 18th Floor of 450 Golden

6    Gate Avenue, San Francisco, California 94102, Defendant Workday, Inc. will and hereby does

7    move this Court to dismiss the action pursuant to Rule 12(b)(6) of the Federal Rules of Civil

8    Procedure.

9      The motion is made on the grounds that:

10     **1.**     Pursuant to Rule 12(b)(6), the Court should dismiss Plaintiff's claims against

11    Defendant in their entirety for failure to allege sufficient facts showing Workday is an entity that

12    can be subject to liability under Title VII, the ADEA, or the ADA; and

13     **2.**     Pursuant to Rule 12(b)(6), the Court should dismiss Plaintiff's claims against

14    Defendants in their entirety, including his request for punitive damages, for failure to allege

15    sufficient facts to support plausible claims.

16     This Motion is based on this Notice of Motion and Motion, the accompanying

17    Memorandum of Points and Authorities, and such other documents and information that the Court

18    may consider.

19     Dated: March 12, 2024                    ORRICK, HERRINGTON & SUTCLIFFE
                                                LLP
20

21

22                                       By: _____
                                                        */s/ Julie A. Totten*
23                                              JULIE A. TOTTEN
                                                ERIN M. CONNELL
                                                KAYLA D. GRUNDY
24                                              ALEXANDRIA R. ELLIOTT
                                                Attorneys for Defendant
25                                              WORKDAY, INC.

26

27

28

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.**   <u>**INTRODUCTION AND SUMMARY OF POINTS**</u>

In Plaintiff Derek Mobley's first Complaint, he alleged that Workday, a software company, should be liable as an employment agency under federal employment discrimination laws because it allegedly sells an algorithmic screening tool that is capable of being "configured" by customers to advance "discriminatory and subjective judgments." Compl. ¶ 21. In granting Workday's first Motion to Dismiss, this Court rightly rejected that theory of liability because Plaintiff's "sparse" allegations did not plausibly allege that Workday itself actively procured employees for its employer customers (a prerequisite to allowing an employment class action to proceed against Workday as an employment agency). ECF No. 45 at 9-11.

In response to the Court's order, Plaintiff's First Amended Complaint ("FAC") purports to offer additional bases for holding Workday liable. Rather than advance new theories backed by plausible facts, however, Plaintiff instead merely disguises the old theory in artful vagary. For example, Plaintiff now alleges that "[u]pon information and belief, *Workday* determines which candidates to recommend," FAC ¶ 38 (emphasis added), and that customers "delegate their hiring function [to] *Workday*," FAC ¶ 91 (emphasis added). But the facts pled in support of these conclusory assertions make clear that when Plaintiff says "Workday," he is referring to Workday's *software* as implemented by Workday's customers. Yet conspicuously absent from the FAC is Plaintiff's prior assertion that Workday's *customers* are the entities who decide how to configure and use Workday's *software*. *See* Compl. ¶¶ 8, 21.

Plaintiff cannot solve the defects this Court previously identified because there are no facts that can transform Workday into an employment agency, an indirect employer, or an agent of its customers. Plaintiff still cannot plausibly allege that Workday "recruit[s] and select[s] applicants," dictates hiring "criteria," or "procur[es] applications," ECF No. 45 at 10; that it exercises "peculiar control" over its customers' hiring decisions, *id.* at 11; or that customers "delegate[] control to Workday," *id.* at 11. Making conclusory assertions without factual support does not render those assertions plausible. Because Plaintiff still cannot plead facts to support his allegations against Workday, this Court should dismiss the FAC, this time with prejudice.

## II.      PLAINTIFFS' ALLEGATIONS IN THE FIRST AMENDED COMPLAINT

Plaintiff's initial Complaint alleged that Workday is a software company that provides, among other products, an AI "screening tool" that its customers "configure" to "review[] and evaluat[e] employees for hire." Compl. ¶¶ 20-21. He directly asserted that Workday's customers "manipulate and configure" Workday tools "in a discriminatory manner," Compl. ¶ 8, and he predicated his claims on the theory that those tools allowed customers to "use discriminatory and subjective judgments," Compl. ¶ 21. In dismissing that Complaint, this Court recognized that Plaintiff's allegations were "entirely conclusory," and that Plaintiff did not allege anything about "whether these tools perform screening based solely on employer criteria, Workday's own algorithm(s), or some combination of the two." ECF No. 45 at 10. The Court acknowledged Plaintiff further failed to explain how Workday's tools "perform screening," what "criteria" they use, or "whether Workday is involved in procuring applications or only in helping companies organize the applications they receive independently." *Id.* Plaintiff thus failed to allege that Workday's role as a software provider brought it within the covered entities with respect to whom federal employment discrimination statutes apply.

The First Amended Complaint attempts to cure this defect by alleging two additional theories: that in addition to being an "employment agency," Workday also is an "indirect employer" and agent of its customers. FAC ¶¶ 90-117. The FAC alleges that Workday's customers delegate "their human resource hiring function to the Workday platform." FAC ¶ 90. Though at times, the FAC suggests that "Workday determines which candidates to recommend" for hiring, FAC ¶ 38, it elsewhere makes clear that Plaintiff is actually referring to Workday's "algorithmic decision-making tools and applicant screening system," which he claims "determine[s] whether an employer should accept or reject an application . . . based on the individual's race, age, and or disability." *Id.* At 2-3. Plaintiff also now includes allegations that "Workday's systems source candidates," FAC ¶ 95, that Workday "offer[s] extensive customer training opportunities," FAC ¶ 96, and that Workday "denied [candidates] employment unless they participated in the Workday platform," FAC ¶ 92—which seemingly mean that the only way to apply to a job with certain Workday customers is through the use of Workday products.

- 2 -

1   Plaintiff states that since 2017, he has "applied for over 100 positions" that "use Workday,

2   Inc. as a screening platform for talent acquisition and/or hiring." FAC ¶ 49. He also identifies 12

3   jobs to which he allegedly applied with 11 prospective employers. Plaintiff also alleges that

4   "numerous positions … required him to take a Workday branded assessment and/or personality

5   test." FAC ¶ 56. He still does not allege, however, that Workday itself recruited him to apply, nor

6   that Workday itself (as opposed to Workday's software, as configured by Workday customers)

7   played any role in the selection process. He does not allege that he disclosed any of his protected

8   traits to Workday. And he still pleads no details about who employers selected instead of him.

9   As for how Workday's screening tools allegedly impacted Plaintiff, the FAC again lacks

10   sufficient factual support. It broadly alleges that algorithmic tools *generally* can perpetuate bias,

11   without plausibly tying those general allegations to Workday's tools. FAC ¶¶ 29-37, 40-44.

12   Plaintiff also now hypothesizes that certain features of Workday software allegedly use

13   "pymetrics" to "make … decisions more predictive" and "free of bias," but they allegedly are

14   trained only on "incumbent employees," and therefore "build a homogenous workforce." FAC

15   ¶¶ 96-102. But he does not assert that Workday configures or deploys these alleged features, nor

16   does he explain how they discriminatorily impacted him based on any protected characteristic.

17   Accordingly, this abstract theory does not advance his claims against Workday.

18   Plaintiff's FAC asserts six causes of action against Workday, which he seeks to bring on

19   behalf of three broad nationwide subclasses of applicants and former applicants: (1) intentional

20   discrimination on the basis of race under Title VII; (2) disparate impact discrimination on the

21   basis of race and disability under Title VII and the ADA; (3) intentional discrimination under the

22   ADEA; (4) disparate impact discrimination under the ADEA; (5) intentional discrimination on

23   the basis of race under and 42 U.S.C. Section 1981; and (6) aiding and abetting discrimination

24   under California's Fair Employment and Housing Act (FEHA). *See generally* FAC at 8, 29-34.

25   **III.   APPLICABLE LEGAL STANDARD**

26   To survive a motion to dismiss, a complaint must "contain sufficient factual matter,

27   accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S.

28   662, 678 (2009). The factual allegations must allow "the court to draw the reasonable inference that

- 3 -

the defendant is liable for the misconduct alleged." *Id*. Allegations that are "merely consistent with" a defendant's liability, *id.*, or that do not state a cognizable legal theory, cannot survive a motion to dismiss. Fed. R. Civ. P. 12(b)(6). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## IV.    PLAINTIFF FAILS TO ALLEGE THAT WORKDAY IS AN ENTITY THAT CAN BE SUBJECT TO LIABILITY UNDER TITLE VII, THE ADEA, OR THE ADA.

The Court should dismiss Plaintiff's federal discrimination claims, this time with prejudice, because Plaintiff still fails to plausibly allege that Workday is the sort of entity that can be held liable under Title VII, the ADEA, or the ADA. Specifically, Plaintiff fails to plead facts establishing that Workday is an "employer," "employment agency," or "labor organization" (the only three types of entities against whom a claim under these statutes may be asserted). 42 U.S.C. § 2000e-2 (Title VII); 29 U.S.C. § 623 (ADEA); 42 U.S.C. § 12111 (ADA).

### A.    Workday Is Not An Employment Agency.

An "employment agency," as defined in Title VII and the ADA, must "regularly undertak[e] to procure employees for an employer or to procure for employees opportunities to work for an employer." 42 U.S.C. § 2000e(c); 42 U.S.C. § 12111(7). The ADEA definition includes only entities that procure employees for an employer. 29 U.S.C § 630(c). "[T]he statutory requirement that an employment agency be one that 'regularly' undertakes to procure employees or employment opportunities indicates that Congress had in mind to include only those engaged to a significant degree in that kind of activity as their profession or business." *Brush v. San Francisco Newspaper Printing Co.*, 315 F. Supp. 577, 580 (N.D. Cal. 1970), *aff'd*, 469 F.2d 89 (9th Cir. 1972); *see also Whitsitt v. Hedy Holmes Staffing Servs.*, 2015 WL 5560119, at *3 (E.D. Cal. Sept. 21, 2015), *aff'd*, 671 F. App'x 1004 (9th Cir. 2016) ("screen[ing]" plaintiff's employment application not sufficient to allege defendant was an "employment agency").

Here, Plaintiff's attempt to establish that Workday is in the business of procuring employees for its customer employers fails. As with Plaintiff's original Complaint, the actual *facts* pled still show only that Workday provides software to its customers, and those customers

- 4 -

1    allegedly use that software to screen (but not "procure") their own employees. FAC ¶¶ 50, 90-99.

2    Indeed, given Plaintiff also alleges that Workday provides software to 10,000 organizations and

3    65 million users, he fails to explain how it is even conceivable that Workday could be an

4    employment agency for "one in four of all U.S. job openings," *id.*

5          ***Workday does not recruit or solicit applications.*** This Court's prior order recognized the

6    initial Complaint lacked "details about [Plaintiff's] application process," including whether

7    "Workday helps recruit and select applicants" and whether it "is involved in procuring

8    applications or only in helping companies organize the applications they receive independently of

9    Workday." ECF No. 45 at 10. If Workday *did* actively recruit or solicit applications, perhaps it

10   would look more like a traditional headhunter or temp agency, actively obtaining qualified

11   candidates for specified positions. Nothing in the FAC plausibly suggests that Workday does this

12   for any positions at any employers, let alone the positions to which Plaintiff applied.

13         Plaintiff alleges that his "application process generally began with him responding to a job

14   advertisement or posting *by a prospective employer* on a *third-party website* such as LinkedIn,

15   Indeed, Monster, or Careerbuilders." FAC ¶ 51 (emphasis added). Plaintiff then claims he clicked

16   a link that took him to "the Workday platform *on the employer's website*" to complete an

17   application. FAC ¶ 52 (emphasis added). He does not allege Workday exercises control over the

18   platform on the employer's website, nor that Workday actively recruits or solicited Plaintiff or

19   anyone else. Candidates apply to employers independently; Workday does not "procure" them.

20   *Whitsitt*, 2015 WL 5560119, at *3 ("screening" resumes is not "procuring").

21         Plaintiff's bare assertions to the contrary contain no factual support. He claims employers

22   delegate "recruitment" to Workday. FAC at ¶ 8. But he offers no facts plausibly alleging that

23   Workday itself performs "recruitment" in the ordinary sense of the word—seeking out candidates

24   for employment. And elsewhere the FAC reveals that by "recruitment," Plaintiff is referring to

25   the provision of an "Applicant Tracking System," FAC ¶ 31—a system fitting this Court's

26   description of "helping companies organize the applications they receive." ECF No. 45 at 10.

27         Plaintiff also states that "Workday's systems source candidates." FAC ¶ 95. It is unclear

28   whether this assertion relies on the notion that candidates who independently decide to apply to

- 5 -

1   an employer who uses Workday will be directed to a "Workday platform," or instead relies on a

2   later claim that "Workday's AI and ML also enables incumbent employees at firms to … 'mak[e]

3   referrals and recommendations.'" FAC ¶ 100. In either event, these factual allegations do not

4   suggest *Workday* engages in solicitation or recruitment, nor do any other facts pled in the FAC.

5           ***Provision of algorithmic screening tools is not procurement of employees.*** Mobley also

6   includes artful allegations to suggest Workday possesses some degree of control over hiring

7   decisions. He claims that Workday's customers delegate "certain aspects of the employers'

8   selection decisions," FAC ¶ 108, though he does not explain what these "aspects" are. Similarly,

9   Plaintiff ambiguously claims that "Workday determines which candidates to recommend," FAC

10  ¶ 38, but read in context, this assertion ultimately is nothing more than a clever way of saying that

11  "a prospective employee can only advance in the hiring process if they get past the Workday

12  platform's screening algorithms," FAC ¶ 98. Tellingly, Plaintiff does not and cannot allege that

13  Workday controls, requires, or otherwise dictates the inputs, criteria, and ultimate functionality of

14  the configurable software tools it offers customers. Indeed, making this allegation would directly

15  contradict his previous allegations admitting that customers "manipulate and configure" Workday

16  products based on their own "subjective" needs." Compl. ¶ 8. Moreover, even if "screening"

17  candidates did amount to "procuring" applicants (which it does not), providing someone a *tool*

18  that is capable of allowing them to screen candidates is not the same thing as *screening*

19  candidates, just as giving someone accounting software is not the same thing as acting as one's

20  accountant.

21          Plaintiff attempts three workarounds, but none establishes that Workday is, to a significant

22  degree, engaged in procuring employees for its customers by offering screening tools.

23          First, Plaintiff alleges that Workday integrates "pymetrics into its algorithmic decision-

24  making tools," through which Workday allegedly "encourages and uses the recommendations of

25  incumbent employees for hiring decisions." FAC ¶ 100. Setting aside the vague nature of this

26  assertion, "encouraging" the use of an employer's incumbent employee's recommendations does

27  not suggest that Workday exerts control over hiring criteria or decides who will get hired.

28  Similarly, while Plaintiff claims that algorithmic tools "recommend job opportunities," FAC ¶ 95,

1  he concedes that these alleged recommendations are "based on the demonstrated interests" and

2  "preferences of the client-employer." FAC ¶¶ 38-39.

3       Second, Plaintiff alleges that some employers "required him to take a Workday *branded*

4  assessment and/or personality test." FAC ¶¶ 55-56 (emphasis added). To be clear: Plaintiff does

5  not allege (nor could he) that Workday develops, markets, or sells "assessments" or "personality

6  tests." The assertion appears to be that Workday's logo appeared on an assessment he took,

7  apparently while on "the Workday platform on the employer's website." FAC ¶ 52. Nothing

8  suggests that Workday dictated or controlled the use or content of any such assessment.

9       Third, Plaintiff asserts that "[f]irms purchase a subscription for Workday's services and

10 customers are provided support, including professional consulting, to enable them to delegate

11 their human resource hiring function to the Workday platform." FAC ¶ 90. But again, this is pure

12 euphemism. It equates to saying an entity providing training for Microsoft Excel enables users to

13 delegate their accounting functions to the spreadsheet software. Plaintiff's FAC establishes

14 merely that Workday provides software and trains customers on how to use it. Those factual

15 assertions do not transform Workday into an employment agency.

16      Ultimately, Plaintiff's FAC still fails to plausibly assert Workday engaged in the act of

17 procuring employees for its customers, let alone does it come close to explaining how Workday

18 conceivably could have done so for the sprawling nationwide classes Plaintiff seeks to represent.

19      **B.   <u>Workday Is Not Plaintiff's Indirect Employer.</u>**

20      For many of the same reasons, Plaintiff also fails to plead facts to meet the higher standard

21 governing the theory that Workday was his "indirect employer," let alone that this is true with

22 respect to every candidate who applied for a position at Workday's "10,000 customers." *See* FAC

23 ¶¶ 115-17. The Ninth Circuit has rejected the notion that mere interference with an employment

24 opportunity is sufficient to bring an otherwise un-covered entity within Title VII's scope. Rather,

25 an indirect employer is one "who had some peculiar control over the employee's relationship with

26 the direct employer." *Anderson v. Pacific Maritime Ass'n*, 336 F.3d 924, 932 (9th Cir. 2003); *see*

27 *also Equal Employment Opportunity Commission v. Illinois*, 69 F.3d 167, 169 (7th Cir. 1995)

28 (indirect employer theory of liability available only when "the defendant so far controlled

plaintiff's employment relationship that it was appropriate to regard the defendant as the de facto or indirect employer of the plaintiff").

The FAC's three paragraphs on the indirect employer theory are entirely conclusory and merely restate the relevant standard. Plaintiff baldly asserts Workday has the "ability to discriminatorily interfere and exert peculiar control over the prospective employee's relationship with the direct employer." FAC ¶ 117. But no factual allegations suggest that Workday exerts *any* control over its customers. Though Plaintiff elsewhere asserts that Workday "denied [candidates] employment unless they participated in the Workday platform," FAC ¶ 92, this assertion is nonsensical. Although Workday customers may choose to require candidates to apply through a Workday-branded platform, this scenario does not demonstrate controlling actions by Workday. Customers are not required to use Workday tools and are free to stop using them at any time.

Indeed, the allegations in the FAC come nowhere close to resembling the unique fact patterns where courts have found that a defendant is an indirect employer. *See, e.g.*, *Sibley v. Memorial Hospital v. Wilson*, 488 F.2d 1338, 1342 (D.C. Cir. 1973) (defendant "control[led] the premises upon which [] services were to be rendered, including [plaintiff's] access to the patient for purposes of the initiation of such employment"); *Assoc. of Mexican-American Educators v. California*, 231 F.3d 572, 581 (9th Cir. 2000) (defendant "degree of control" was so extreme it "affect[ed] the day-to-day operations of local public schools"); *Gomez v. Alexian Bros. Hosp. of San Jose*, 698 F.2d 1019, 1020 (9th Cir. 1983) (defendant hospital controlled whether plaintiff was awarded emergency room contract). Workday has no control over any premises, no power over day-to-day operations, no right to supervise, and no ability to force a customer to make decisions in the hiring process or otherwise. And Workday certainly does not possess that sort of control over *10,000* customers. Plaintiff therefore does not and never could allege an indirect employer theory.

## C.    Workday Is A Software Provider—Not An Agent Of Its Customers.

Plaintiff's third theory of liability against Workday is based on the misguided notion that Workday is an agent of its employer-customers. FAC ¶¶ 107-14. This theory also fails. In its order dismissing the initial Complaint, this Court cited authorities recognizing two types of

- 8 -

agency analysis. ECF No. 45 at 11. One is based on respondeat superior, and in particular the EEOC's view that a "software vendor" may qualify as an "agent" in "situations where an employer relies on the results of a selection procedure that an agent administers on its behalf."[1] Plaintiff does not plead this theory for good reason: The EEOC's guidance confirms that it is only "*employers*" who "may be held responsible for the actions of [such] agents." *Id.*

The second, more stringent theory is a mechanism for holding an agent itself independently liable. The case law on this theory, however, sets a high bar. An independent business entity can be held individually liable only where "the agent exercised an administrative function traditionally exercised by the employer." *Raines v. U.S. Healthworks Med. Grp.*, 15 Cal. 5th 268, 288 (2023) (collecting federal authority). The ultimate question is whether the defendant possesses such an extraordinary degree of authority and autonomy over a delegated function that it would be consistent with notions of due process for the agent's discharge of those functions to subject it to liability. *See also DeVito v. Chicago Park Dist.*, 83 F.3d 878, 881 (7th Cir. 1996) (explaining that a Board which had authority over termination of Park District's employees, "adjudicated employment disputes on behalf of the Park District, [and which was] composed entirely of Park District administrators," could be held liable for a discriminatory termination under the ADA as an agent of the Park District); *Williams v. City of Montgomery*, 742 F.2d 586, 589 (11th Cir. 1984) (stating that "[w]here the employer has delegated control of some of the employer's traditional rights, such as hiring or firing, to a third party, the third party has been found to be an 'employer' by virtue of the agency relationship"); *Carparts Distribution Ctr., Inc. v. Auto. Wholesaler's Ass'n of New England, Inc.*, 37 F.3d 12, 17-18 (1st Cir. 1994) (explaining that the "defendants would [] be rendered 'employers' of [the plaintiff] if defendants . . . act on behalf of the [employer] in the matter of providing and administering employee health benefits").

Again, Plaintiff does not come close to factual allegations establishing this stringent

---

[1] *See Select Issues: Assessing Adverse Impact in Software, Algorithms, and Artificial Intelligence Used in Employment Selection Procedures Under Title VII of the Civil Rights Act of 1964*, U.S. Equal Employment Opportunity Commission (May 18, 2023), available at https://www.eeoc.gov/laws/guidance/select-issues-assessing-adverse-impact-software-algorithms-and-artificial.

theory of liability. He includes merely the formulaic assertion that "Client-employers delegate to Workday *certain aspects* of the employer's selection decisions." FAC ¶ 108. But he does not identify these alleged aspects. He also has not, and cannot, allege that Workday defines open employment opportunities, generates candidate pools, or sets the criteria for hiring. In no sense, then, do customers "delegate" to Workday the traditional administrative function of hiring. Indeed, Plaintiff does not allege what role Workday played at all with respect to any client-employer that rejected Plaintiff for any of the positions to which he applied. *See* FAC ¶¶ 61-87. To establish the sort of all-encompassing delegation necessary to hold Workday liable as an agent, Plaintiff would have to provide specifics about what precisely Workday was empowered to do by individual employers. So too would any class member he seeks to represent.

Indeed, not only is the FAC devoid of sufficient facts to demonstrate agency liability against Workday, but it contains no suggestion of any ability to plead such facts. Plaintiff fails to plead anything close to Workday adjudicating disputes for, or sharing employees with, its customers (*DeVito*); being empowered to formulate job standards, transfer, promote, discipline, or terminate its customers' employees (*Williams*); or providing and administering employee health benefits for its customers (*Carparts*). Plaintiff cites no authority suggesting an independent third-party can be liable as an agent of an employer based merely on the provision of software.

Because Plaintiff fails to plead Workday is a covered entity under federal employment discrimination laws, the federal claims in his FAC should be dismissed with prejudice.

## V.   PLAINTIFF OTHERWISE FAILS TO STATE A CLAIM AGAINST WORKDAY

### A.   Plaintiff Fails To State A Claim For Intentional Discrimination

Plaintiff's intentional discrimination claims under Title VII, the ADEA, and § 1981 fail because Plaintiff still does not plead facts raising an inference of discrimination based on race or age. For each of these claims, Plaintiff must "plead[] facts giving rise to an inference that the [defendant] intended to discriminate against the protected group." *Liu v. Uber Techs. Inc.*, 551 F. Supp. 3d 988, 992 (N.D. Cal. 2021); *see* 42 U.S.C. § 2000e-2(b) (Title VII); 29 U.S.C. § 623(b) (ADEA); *Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 850 (9th Cir. 2004) (§ 1981). In dismissing his original complaint, the Court noted that Plaintiff did not allege he disclosed his

protected traits to Workday, nor did he plausibly allege that he was qualified for the alleged 100 jobs to which he applied. Despite amendments to his Complaint, Plaintiff still falls short.

**Disclosure of protected traits.** Rather than allege he disclosed his protected traits to Workday, Plaintiff contends that his resume (which he sometimes uploaded as part of an application and sometimes did not) states that he graduated from a Historically Black College or University and that his "extensive employment history" could be a proxy for age. FAC ¶¶ 55-57. At most, however, this allegation describes a disclosure to an employer who uses Workday's software—not a disclosure to Workday. Plaintiff does not allege a mechanism by which Workday itself could become aware of Plaintiff's protected characteristics for purposes of forming an intent to discriminate. *E.g.*, *Wei v. Dep't of Physics at Univ. of Cal. at Berkeley*, 2018 WL 457211, at *3 (N.D. Cal. Jan. 18, 2018) (dismissing complaint because "Plaintiff's allegation that Defendant declined to hire him on account of his age is unsupported and conclusory.").

**Qualifications for roles.** In the FAC, Plaintiff now alleges he has applied for more than 100 jobs that use Workday. FAC ¶ 49. But rather than plead "any factual allegations about the types of jobs he applied for, their requirements, or his qualifications besides his education," *id.*, Plaintiff identifies (but does not describe) 11 of the alleged 100+ jobs to which he applied but was not selected—several of which are outside the relevant statute of limitations. FAC ¶¶ 63-88. Plaintiff cannot—and should not be permitted to—seek incredibly broad discovery about unnamed employers who allegedly rejected him for jobs when he has not pled facts showing he was qualified for those jobs. Indeed, he does nothing more than list less than 10 percent of the jobs purportedly at issue. And even as to those 11 jobs, his allegations are so scant that they "do not explain how his qualifications, or . . . past experience, [was] relevant to any of the positions to which he applied." *See Ali v. ServiceNow, Inc.*, 2019 WL 11542365, at *4 (N.D. Cal. Sept. 23, 2019), *aff'd*, 797 F. App'x 322 (9th Cir. 2020).

**Causation.** Plaintiff also fails to allege any facts—or even a theory to be proven on information and belief—that give rise to a plausible inference of causation. He does not allege the successful candidates for the roles to which Plaintiff applied were equally or less qualified than Plaintiff and did not share his protected characteristics. He instead offers only the conclusory

- 11 -

1   allegation that "[a]pplicants who are not members of these protected groups and who are similarly

2   situated to the Representative Plaintiff, have not been subjected to such discriminatory

3   treatment." FAC ¶ 8. That is not sufficient to raise an inference of intentional discrimination. *See,*

4   *e.g.*, *Davis v. Valon Mortg.*, 2023 WL 4661789 at *4 (D. Ariz. July 20, 2023) (dismissing Title

5   VII claim because the complaint "suggests that an individual outside Plaintiff's protected classes

6   was treated more favorably, but the [complaint] fails to plead that that individual was similarly

7   situated to him").

8           At most, Plaintiff's algorithmic-intentional-discrimination claim rests on the bare

9   unsupported suggestion that use of Workday's configurable tools may generate some statistical

10  correlation along the lines of a protected class—not that it constitutes intentional discrimination

11  on that basis. The claim thus fails. *Garcia v. City of King City*, 2015 WL 1737936, at *2 (N.D.

12  Cal. Apr. 8, 2015) (stating that "mere correlation" between a defendant's actions and the race of

13  targeted individuals is insufficient to plead a § 1981 claim).[2]

14          **B.      Plaintiff's Disparate Impact Claims Fail**

15          "To state a claim for disparate impact discrimination under Title VII, a plaintiff must

16  allege (1) a significant disparity with respect to employment for the protected group, (2) the

17  existence of a specific employment practice or set of practices, and (3) a causal relationship

18  between the identified practice and the disparity." *Liu*, 551 F. Supp. 3d at 990 (citing *Freyd v.*

19  *Univ. of Oregon*, 990 F.3d 1211, 1224 (9th Cir. 2021)). The Court noted that Plaintiff's original

20  complaint failed to plausibly plead a disparity, a specific practice, and causation. ECF 45 at 12-

21  13. The FAC shares the same deficiencies.[3]

---

22  [2] Plaintiff's prayer for punitive damages also must be dismissed and/or stricken because Plaintiff

23  fails to plead facts sufficient to support his allegation that Workday acted with malice or reckless
    indifference, particularly where, as here, Plaintiff has not stated a claim for intentional

24  discrimination. *See Career Sys. Dev. Corp. v. Am. Home Ins. Co.*, 2010 WL 11636254, *2 (N.D.
    Cal. Aug. 11, 2010).

25  [3] To the extent Plaintiff is permitted to proceed against Workday on a theory that Workday is an
    employment agency (which it is not as described *supra*), the disparate impact claim also fails

26  because neither Title VII nor the ADA authorize a disparate impact claim against employment
    agencies. *Smith v. City of Jackson*, 544 U.S. 228 (2005); *Texas Department of Housing &*

27  *Community Affairs v. Inclusive Communities Project, Inc.*, 576 U.S. 519 (2015); *compare* 42
    U.S.C. § 2000e-2(a)(1) (no reference to effects) *and* 29 U.S.C. § 623(a)(1) (same) *with* 42 U.S.C.

28  § 2000e-2(a)(2) (reference to effects) *and* 29 U.S.C. § 623(a)(2) (same).

***Disparity.*** With respect to a disparity, the Court previously held Plaintiff's "sparse" allegations about his "personal experience" lacking because he did not allege "what types of jobs [he applied to], what his qualifications were for those jobs, or whether he got better results applying to similar jobs that did not use Workday." ECF 45 at 12-13. The FAC does not address these failings. While Plaintiff adds *examples* of the kinds of jobs he applied to and summarily states he was qualified for them, he adds nothing that would plausibly allege that he has more success applying to roles that do not involve Workday, or that there is any hiring differential in connection with Workday's tools in general or at any particular Workday customer.

***Employment practice.*** Plaintiff also continues to fail to allege a specific employment practice. The Court previously noted that the complaint was "unclear" with respect to "what or whose specific use of the tools is allegedly discriminatory." ECF 45 at 13. The FAC is unclear as well. For example, Plaintiff alleges that "Workday determines which candidates to recommend based on the demonstrated interests of its client-employers" and "Workday will offer recommendations that reflect whatever biases employers happen to exhibit." FAC ¶ 38. He supposes that "the recommendation algorithmic decision-making tool caters to the prejudicial preferences of the client-employer." FAC ¶ 39.

Plaintiff also confirms that the "tool" appears differently depending on the specific application. Specifically, he alleges that "numerous positions" "required him to take a Workday branded assessment and/or personality test." FAC ¶ 56. And of the 12 jobs he lists in the FAC, he alleges that only one required an "assessment." FAC ¶¶ 61-74. While Plaintiff asserts that he can attack the "tools per se, and not merely the individualized manifestations of their use," he fails to articulate an actual tool as distinct from "individualized manifestations." *See* FAC ¶ 118. Like the initial Complaint, the FAC describes the ostensible challenged practice or practices in myriad ways: "Workday's algorithmic decision-making tools" (FAC ¶ 85, 95), "Workday branded assessment and/or personality test" (*id.* ¶ 56); "Workday platforms screening algorithms" (*id.* ¶ 98); "applications" (*id.* ¶ 99); "systems of recruiting new workers" (*id.* ¶ 104); "Workday job screening platform" (*id.* ¶ 110); "selection of tools, assessments, and/or tests" (*id.* ¶ 120); and "selection procedures" (*id.* ¶ 122). Plaintiff identifies no "common components" that lead to the

- 13 -

plausible conclusion that differences among customers are "of no consequence." *See* FAC ¶ 118.[4]

*Causation.* Finally, Plaintiff cannot "allege a plausible theory of causation." ECF 45 at 13. Plaintiff tries to address the Court's concerns about causation by adding citations to scientific literature about bias in AI generally. *See, e.g.,* FAC ¶¶ 28-48. But he is suing Workday, and he offers no tie between this general literature and a specific Workday practice. *See Liu*, 551 F. Supp. 3d at 992 (general research may support an inference of causation only where accompanied by plausible allegations of similar corporate practices). At most, Plaintiff's allegations set forth a theory that human beings and most workplaces are tainted with bias, and he insinuates that Workday's "algorithm-driven" "tools" are capable of exacerbating those biases, particularly if a company "trains" the tools on "incumbent employees." FAC ¶ 102. But again, that is a critique of the underlying *criteria* customers choose for hiring, not a specific practice attributable to Workday. Plaintiff therefore fails to sufficiently plead causation.

## C.  Plaintiff's FEHA Claim Fails

Finally, Plaintiff's sixth cause of action for aiding and abetting discrimination should be dismissed. As an initial matter, this claim fails on jurisdictional grounds because Plaintiff fails to assert a viable federal claim. 28 U.S.C. § 1367(c) ("[D]istrict courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."). It also fails on the merits. To state a claim for aiding and abetting, Plaintiff must allege either that Workday "knows" of the unlawful conduct and "gives substantial assistance or encouragement," or that Workday engages in conduct that, when considered independently, constitutes discrimination. *Vernon*, 116 Cal. App. 4th at 131. "Mere

---

[4] Although Plaintiff does not specify the challenged practices that allegedly caused a disparate impact based on age and race, he appears to assert the alleged practice that disparately impacted individuals with disabilities was "Workday branded cognitive assessment or personality tests." But this allegation is similarly vague and insufficient. Simply characterizing an assessment as "Workday branded" does not sufficiently assert that Workday deployed (or even developed) the alleged assessment (which it did not), let alone does it plausibly demonstrate there was a single assessment offered to all applicants across all employers who opted to use an assessment. Not only does this insufficient allegation doom his disparate impact claim at the pleading stage, but it also confirms the futility of certifying his proposed disability class where not only could the alleged assessment vary across employers, but whether and how any individual putative class member's particular "diagnosed mental health or cognitive condition" is impacted by the various assessments also will vary.

knowledge that [discrimination] is being committed and the failure to prevent it does not constitute aiding and abetting" because "[a]s a general rule, one owes no duty to control the conduct of another." *Id.* (internal citations omitted); *see also Ortiz v. Georgia P.*, 973 F. Supp. 2d 1162, 1184 (E.D. Cal. 2013) ("A failure to act is a far cry from providing substantial assistance").

Here, Plaintiff has not plausibly alleged that Workday is aware of discrimination by any customer, nor that it "substantially assisted" discrimination; Plaintiff makes only the conclusory allegation that Workday "attempted to and did in fact, aid, abet, incite, compel, and/or coerce" its customers to discriminate. FAC ¶ 169; *see Wynn v. Natl. Broad. Co., Inc.*, 234 F. Supp. 2d 1067, 1115 (C.D. Cal. 2002), dismissed, No. CV00-11248-SVW(RZX), 2002 WL 31681865 (C.D. Cal. Mar. 6, 2002) (simply making "conclusory allegations" that defendants provided "substantial assistance and encouragement" to other defendants insufficient); *Smith v. BP Lubricants USA Inc.*, 64 Cal. App. 5th 138, 146-47 (2021) (dismissing claim where plaintiff alleged "no facts suggesting concerted activity between" codefendants, "which is the crux of an aiding abetting claim under FEHA"). And even if Workday did have the sort of specific knowledge required, when considering the allegations in their totality and disregarding unsupported conclusions, at most, Plaintiff alleges that Workday failed to prevent discrimination, which is insufficient. *Vernon v. State*, 116 Cal. App. 4th 114, 131 (Cal. Ct. App. 2004); *Wynn*, 234 F. Supp. 2d at 1115 ("[S]ubstantial assistance or encouragement" requires more than the mere inaction "to prevent discrimination"); *Ortiz v. Georgia P.*, 973 F. Supp. 2d 1162, 1184 (E.D. Cal. 2013) (same).

## VI.    **CONCLUSION**

Workday respectfully requests the Court grant its Motion, this time with prejudice.

Dated: March 12, 2024.                                    ORRICK, HERRINGTON & SUTCLIFFE LLP


                                                         By:  _____*/s/ Julie A. Totten*_____
                                                              JULIE A. TOTTEN
                                                              Attorneys for Defendant
                                                              WORKDAY, INC.