# EXHIBIT A

# PART TWO OF FIVE

1 | AUM as much as I can, which is why I am requesting sole legal and sole physical custody. I still have four months where a court can help me. After that, the cult will have her and I do not know what else I will be able to do. If I can get her home in these four months while a family court has jurisdiction, I am confident with proper services that I can help her.

27. VP instructed Mother to not administer COVID or flu vaccines to either of the children, which Mother agreed with. Mother has become completely reliant on VP, seeking her advice on not only everything about the children, but also what to wear and who to be friends with. I fear that Mother has been swayed so heavily that she cannot make informed decisions about our children.

28. M.D., per AUM's orders (just as with K.D.), is not allowed to call me. AUM had M.D. obtain a new phone number once she arrived in California a couple weeks ago, completely cutting M.D. off from her Texas friends and from me. The same thing happened to K.D. two years earlier.

29. Before taking K.D., AUM assured us that it was best for her, necessary for her own safety, and even for M.D.'s safety due to K.D.'s alleged homicidal urges toward M.D.. AUM disallowed me contact with K.D. ever since. Every once in awhile, VP would promise that a call or a visit could occur. As it approached, she would contact us and say that K.D. had some kind of psychiatric break of melt-down, and that she could not speak to or see us after all. We were even disallowed to attend her recent graduation from Presentation High School.

30. I have zero doubt that the exact same will occur with and to M.D. without court and law enforcement help.

31. Mother remains indoctrinated, and has in fact even asked me that we both relinquish our parental rights of both girls to AUM / VP. I refused and am extremely disturbed that Mother feels inclined to give up our rights, which is why I initiated the Texas divorce action.

32. Now that I have been able to separate myself from the cult mindset, I see very clearly that our daughters are in danger. Perhaps not physically (I really don't know), but *definitely* emotionally, as they have been removed and cut off from their parents, friends, and home, and made to believe lies about themselves, each other, their parents, other family members, and spiritualists, spirits, and the occult.

33. I cannot stand by when I have no idea how either K.D. or M.D. are doing, when K.D. is being accused of homicidal thoughts and AUM trying to put her through "queer conversion" via spiritualism, and when both children are barred from contacting me.

34. I need to help K.D. and M.D. get away from this cult and desperately seek this Court's assistance in successfully getting them home to Texas. I am currently researching the proper support needed, such as child psychologists who are trained in assisting children assimilate after they leave cult environments. And I have the resources and assistance of good Texas family law counsel toward these ends.

35. I truly and genuinely believe that the Mother cannot be trusted at this time to make decisions that are in the best interests of our daughters' health, education, or welfare. She refuses to remove herself from the cult. The cult itself certainly cannot be trusted.

36. The only thing VP *would* allow is for us to pay her. She would say K.D. (and later M.D.) was in dire straits, that only she and AUM and the spiritual masters and spookies could save her, and of course that would cost a lot of money. I have gone back through our records and learned that over the last few years, VP and AUM have extracted *over $600,000* from our family. I have discovered online blogs and other information dating back as far as 2010 which reveal that VP has done the same to other families over the years.

37. I have and can present all of that information if needed, but I am trying to keep this declaration short and critical, because the bottom lines are these:

    a. I think California has home-state UCCJEA jurisdiction over K.D., in which case it can certainly issue the *Temporary Emergency Orders* requested. Mother

asserts that Texas has such jurisdiction, in which case she should have no objection and should share in California exercising Section 3424 emergency jurisdiction and ordering K.D.'s immediate return to Texas.

b. California definitely does *NOT* have UCCJEA home-state jurisdiction over M.D. – but it can and should assert Section 3424 emergency jurisdiction to secure her return to where everyone agrees *does* – Houston, Texas.

c. Regardless of the jurisdictional modality – home-state or emergency – the orders requested are appropriate and are not a "move-away" as to K.D. (although she has been in California for two years), because the children are living in the care of strangers, non-relatives, and/or non-parties – people with no custodial rights, and people whom, as Mother states in Exhibit 2, "do not claim any custodial rights and do not wish to participate in litigation." That is a relief – I am glad no non-parties are claiming custody of our children. But right now they *have* custody, which needs immediately remedied.

## CONCLUSION

38. I implore this Court for its urgent help, and thank the Court very much for its time and attention to my case and our daughters. I ask this Court to issue the Temporary Emergency Orders summarized in the "RELIEF REQUESTED" section at pages 3-4, above, and as set forth on proposed Form FL-305.

** SIGNED AND DATED ON JUDICIAL COUNCIL FORM **

Santa Clara - Family

**Electronically filed**    **FL-320**
**by Superior Court of CA,**
**County of Santa Clara,**
**on 8/18/2025 4:55 PM**
**Reviewed By: R. Fleming**
**Case #** ▓▓▓▓▓▓▓▓
**Env. #20529620**

| PARTY WITHOUT ATTORNEY OR ATTORNEY | STATE BAR NUMBER: |
|---|---|
| NAME: Jennifer J. Moore Esq., SBN: 309881 | |
| FIRM NAME: Law Office of Jennifer J. Moore | |
| STREET ADDRESS: 1024 Iron Point Road Floor One | |
| CITY: Folsom.    STATE: CA    ZIP CODE: 925630 | |
| TELEPHONE NO.: 760 505 4668    FAX NO.: | |
| EMAIL ADDRESS: ljm@lawofficeofjennifermoore.com | |
| ATTORNEY FOR (name): ▓▓▓ S.S. ▓▓▓ Respondent | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA
STREET ADDRESS: 201 NORTH FIRST STREET
MAILING ADDRESS:
CITY AND ZIP CODE: SAN JOSE. CA 95113
BRANCH NAME: FAMILY JUSTICE CENTER COURTHOUSE

PETITIONER: VARADARAJAN DWARAKANATH
RESPONDENT: ▓▓▓ S.S. ▓▓▓
OTHER PARENT/PARTY:

**RESPONSIVE DECLARATION TO REQUEST FOR ORDER**

CASE NUMBER: ▓▓▓▓

HEARING DATE:    TIME:    DEPARTMENT OR ROOM:

Read *Information Sheet: Responsive Declaration to Request for Order* (form FL-320-INFO) for more information about this form.

1. [X] **RESTRAINING ORDER INFORMATION**
   a. [X] No domestic violence restraining/protective orders are now in effect between the parties in this case.
   b. [ ] I agree that one or more domestic violence restraining/protective orders are now in effect between the parties in this case.

2. [X] **CHILD CUSTODY**
   [X] **VISITATION (PARENTING TIME)**
   a. [ ] I consent to the order requested for child custody (legal and physical custody).
   b. [ ] I consent to the order requested for visitation (parenting time).
   c. [X] I do not consent to the order requested for [X] child custody [X] visitation (parenting time)
        [X] but I consent to the following order:

   > The children to remain in my care with temporary sole legal and physical custody pending further order of the court. No contact for Father pending further order of the court given the children's allegations of sexual abuse by Father. Please See Declaration ▓▓▓ S.S. ▓▓▓.

3. [ ] **CHILD SUPPORT**
   a. [ ] I have completed and filed a current *Income and Expense Declaration* (form FL-150) or, if eligible, a current *Financial Statement (Simplified)* (form FL-155) to support my responsive declaration.
   b. [ ] I consent to the order requested.
   c. [ ] I consent to guideline support.
   d. [ ] I do not consent to the order requested [ ] but I consent to the following order:

4. [ ] **SPOUSAL OR DOMESTIC PARTNER SUPPORT**
   a. [ ] I have completed and filed a current *Income and Expense Declaration* (form FL-150) to support my responsive declaration.
   b. [ ] I consent to the order requested.
   c. [ ] I do not consent to the order requested [ ] but I consent to the following order:

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
FL-320 [Rev. January 1, 2025]

**RESPONSIVE DECLARATION TO REQUEST FOR ORDER**

Code of Civil Procedure, § 1005
Cal. Rules of Court, rule 5.92
www.courts.ca.gov

Doc ID: ac3c63b268f1dbd12eee9d5dd824af196b2819e3

017

|  |  | **FL-320** |
|---|---|---|
| PETITIONER: VARADARAJAN DWARAKANATH<br>RESPONDENT: ▮ S.S. ▮<br>OTHER PARENT/PARTY: | CASE NUMBER: ▮ |  |

**5. ☐ PROPERTY CONTROL**
   a. ☐ I consent to the order requested.
   b. ☐ I do not consent to the order requested ☐ but I consent to the following order:

**6. ☐ ATTORNEY'S FEES AND COSTS**
   a. I have completed and filed a current *Income and Expense Declaration* (form FL-150) to support my responsive declaration.
   b. I have completed and filed with this form a *Supporting Declaration for Attorney's Fees and Costs Attachment* (form FL-158) or a declaration that addresses the factors covered in that form.
   c. ☐ I consent to the order requested.
   d. ☐ I do not consent to the order requested ☐ but I consent to the following order:

**7. ☒ OTHER ORDERS REQUESTED**
   a. ☐ I consent to the order requested.
   b. ☒ I do not consent to the order requested ☒ but I consent to the following order:

      I request the court appoint a Guardian Ad Litem for the children to help them self advocate and accept service in the DVRO matters for which they are self representing litigants. I also request the court order Minor's Counsel for our children and allow them to speak directly to the Judge in this matter in chambers without either parent present. I lastly

**8. ☒ TIME FOR SERVICE / TIME UNTIL HEARING**
   a. ☐ I consent to the order requested.
   b. ☒ I do not consent to the order requested ☒ but I consent to the following order:

      I just recently retained an attorney and need additional time to respond to Father's false allegations in hos declaration. Additionally given the complex jurisdictional issue subject to the child abuse issues, my attorney

**9. ☒ FACTS TO SUPPORT** my responsive declaration are listed below. The facts that I write and attach to this form cannot be longer than 10 pages, unless the court gives me permission.    ☐ Attachment 10.

      Our children have never been "held in a cult" as Petitioner falsely accuses. I did not suggest giving up our parental rights. Rather father and I both agreed to our children residing with family and friends to go to school in California. I recently learned Father sexually abused our two girls. Our children refuse to return to Texas or be in Father's care.
      I have taken affirmative steps as a parent to protect our children from Father's further abuse, and am now residing in California with our children who are safe in my care. Our daughters have both filed domestic violence restraining orders against their Father in pro per, with both hearings set to be heard on September 3, 2025. I am requesting my sister Suchitra be appointed as their Guardian Ad Litem in the children's DV cases so they she can accept service and help them with any paperwork and appearances. The children have asked to speak directly to the Judget in their DV cases and in this matter. I am requesting Minor's Counsel be appointed, so that they can have an attorney advocate for their best interests in this case as well as the DV cases if the court will allow it.
      A long cause hearing on the merits in this case is likely necessary as I have several witnesses who can attest to the children's ongoing school enrollment and attendance, good health and welfare in my care.
      Witness List concurrently filed; Please See Declaration of Respondent ▮ S.S. ▮; Please See Declaration

I declare under penalty of perjury under the laws of the State of California that the information provided in this form and all attachments is true and correct.

Date: 08 / 18 / 2025

▮ S.S. ▮
(TYPE OR PRINT NAME)        ▶ *[signature]* (SIGNATURE OF DECLARANT)

FL-320 [Rev. January 1, 2025]     **RESPONSIVE DECLARATION TO REQUEST FOR ORDER**     Page 2 of 2

For your protection and privacy, please press the Clear This Form button after you have printed the form.    [Print this form] [Save this form] [Clear this form]

018

ATTACHMENT TO FORM FL-300: DECLARATION OF ███████ S.S. ███████

**A. <u>Lack of Proper Service of Petitioner's RFO and Ex Parte & Request Continuance</u>**

1. <u>I was never personally served with Petitioner's Request for Order, nor was I given proper notice of his ex parte</u>. I only learned of this California case when I did an internet search. I discovered there was a court date in California on July 30, 2025. My Texas attorney asked Petitioner's Texas attorney about this on July 31, 2025. <u>Petitioner's attorney acknowledged that a case was filed in California,</u> but my Texas attorney could not decipher what the case was about.

2. On August 11, 2025, I consulted a California attorney on my own initiative and discovered for the first time that there was a hearing scheduled on Aug 19, 2025. This provided me very little time to hire a California attorney or bring an attorney up to speed on all issues in this case.

3. On August 14, 2025, I was improperly served to my personal email with Petitioner's Notice of Remote Appearance. I was again improperly served to my personal email with Petitioner's ex parte brief on August 15, 2025. This was the first time I had any idea what the basis for the hearing in California may be about. **(See Exhibit A)**.

4. To this day, I still have not been served with Petitioner's underlying Request for Order, Ex Parte Application, or any supporting declarations. I have reason to believe the improper service in this matter was purposeful so that Petitioner could misrepresent important facts to this court in my absence. This is another bad faith litigation tactic, as has been commonplace with Petitioner in our Texas case.

5. Accordingly, I respectfully request the Court continue this hearing out 30 days for good cause to:

    Allow for service of Petitioner's RFO to be corrected;

    Allow the Texas and California Courts to confer on the jurisdictional issues;

    Allow for the appointment of Minor's Counsel;

    Allow our daughters' Domestic Violence Restraining Order against Petitioner scheduled for September 3, 2025, to be heard;

    And to allow my California attorney to come up to speed in this case, and provide

DECLARATION OF RESPONDENT ███████ S.S. ███████    2

Doc ID: a02727e9739d88f9e9a2360ffc553198787414d6

responsive briefing on California's authority to exercise its emergency jurisdiction to protect our children from further abuse by Petitioner, and continue going to school in California.

### B. Case Background, Children's Safety, and Schooling

6. Petitioner- Father, Varadarajan Dwarakanath (Herein "Father"), and I are the parents of K.D. (age 17 DOB: 11/26/2007, Female, herein "K.D.") and M.D. Dwarakanath (age 14 DOB: 07/21/2011, Female, herein "M.D."). Father and I have a pending divorce in Texas filed June 6, 2025. I was not served until June 16, 2025.

7. K.D., has been living in California with our family friends, Gautam Kumaran and his mother, upon request from both Father and I, since July 7, 2023. K.D. moved to California to attend Presentation Convent School for her junior and senior year of high school, where she recently graduated Summa Cum Laude. K.D. will be attending UC Davis in the fall.

8. K.D.'s move to California in 2023 was the result of a discussion that Father and I had with her to help her achieve a successful high school life. K.D. was excited by this decision and wanted a fresh start in California.

9. In September 2024, our younger daughter M.D. also asked about attending high school in California. M.D. said that California made her very happy, and that, she wanted to complete all 4 four years of high school there. Father and I discussed this and agreed that it was in the best interests of M.D. to go to high school in California.

10. In February 2025, M.D. visited California to attend an in-person interview with Valley Christian High School in San Jose, California (herein "VCHS"). Father was aware of the interview and in full support. Father booked M.D.'s tickets for the interview himself. **(See Exhibit B)**

11. On March 4, 2025, M.D. was selected to attend VCHS. Father and I paid the tuition deposit and enrolled M.D. with VCHS for Fall 2025. We had been in regular communication with VCHS for months with Father being cc'd on all the emails. **(See Exhibit C)**

12. On April 11 and April 17, 2025, Father sent Gautam Kumaran a message thanking him for caring for K.D. for the past two years while she attended school at Presentation

DECLARATION OF RESPONDENT S.S.    3

Doc ID: a02727e9739d88f9e9a2360ffc553198787414d6

1  Convent. (**See Exhibit D**).

2      13. On or about May 10, 2025, my entire perspective as to why our daughters wanted to
3  go to high school in California away from our family in Texas changed dramatically. Father and
4  I received a late-night call from K.D., who was in tears, informing us that her Grandfather
5  (father's father, who lived with us in Texas), had sexually abused her several times from age 9
6  through age 15. I was horrified.

7      14. It finally made more sense as to why our daughters had wanted so desperately to
8  move to California for high school, away from their friends and Texas family. Father's only
9  reaction to this phone call from K.D. was to say "I am sorry". He then immediately went to
10 sleep. I later confronted Father about his father's abuse, which put pressure on our marriage.

11     14. On June 6, 2025, M.D. flew to California with the full support and knowledge of
12 both parents. We arranged for M.D. to live with my sister, Suchitra Subrahmanyan who lives
13 in the Bay Area, for the duration of her schooling. M.D. had a one-way ticket for travel and
14 was dropped off at the airport by Father, since I was away in India for my father's last rites.

15     15. On or about June 7, 2025, Father made arrangements to remove Grandfather from our
16 home in Houston. Despite there being serious sexual abuse allegations against Grandfather,
17 father paid for Grandfather's airplane ticket to India. I understand that Father continues to
18 support Grandfather financially in India, which I am not in agreement with.

19     16. On June 16, 2025, Father served me with divorce papers in Texas which he filed on
20 June 9, 2025. <u>The divorce papers included automatic restraining orders against removing the
21 children from Texas, but both our daughters were already safely in California at the time of
22 service</u>, as Father and I had long planned and agreed to.

23     17. On July 27, 2025, during a get together with friends and family, <u>M.D. shocked us
24 by revealing that her father (Petitioner, Varadarajan Dwarakanath), had sexually abused her as a
25 child</u>. I was horrified to hear this. M.D. was visibly distraught and upset as she recounted
26 this. She provided specific details of the abuse and recalled that it occurred as recently as April
27 2025. I promised M.D. that I would get her help and keep her safe.

28 ///

DECLARATION OF RESPONDENT S.S.

Doc ID: a02727e9739d88f9e9a2360ffc553198787414d6