JULIE A. TOTTEN (STATE BAR NO. 166470)
jatotten@orrick.com
ERIN M. CONNELL (STATE BAR NO. 223355)
econnell@orrick.com
KAYLA D. GRUNDY (STATE BAR NO. 300513)
kgrundy@orrick.com
ALEXANDRIA R. ELLIOTT (STATE BAR NO. 320293)
aelliott@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:   (415) 773-5700
Facsimile:   (415) 773-5759

Attorneys for Defendant
WORKDAY, INC

Lee D. Winston (Admitted Pro Hac Vice)
lwinston@winstoncooks.com
Roderick T. Cooks (Admitted Pro Hac Vice)
rcooks@winstoncooks.com
WINSTON COOKS LLC
420 20th Street North
Suite 2200
Birmingham, AL 35203
Telephone:   (205) 482-5174
Facsimile:   (205) 278-5876

Attorneys for Plaintiff DEREK L. MOBLEY

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEREK L. MOBLEY, for and on behalf of himself and other persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WORKDAY, INC.,<br><br>Defendant. | Case No. 3:23-cv-00770-RFL<br><br>**STIPULATION AND [PROPOSED] ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION** |

1. **PURPOSE**

This Order ("ESI Protocol Order") will govern discovery of electronically stored information ("ESI") and hard copy documents in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules.

2. **COOPERATION**

The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI.

3. **LIAISON**

The Parties will identify Discovery Liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI. Any Party is free to change their designated Discovery Liaison by providing written notice to the other Parties. Each Party's Discovery Liaison will be, or have access to those who are, knowledgeable about the technical aspects of Discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The Parties will rely on the Discovery Liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

4. **PRESERVATION**

The parties will discuss their preservation obligations and needs and agree that preservation of potentially relevant ESI will be reasonable and proportionate. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the parties agree that:

   a) Parties shall preserve non-duplicative, relevant information currently in their possession, custody, or control; however, Parties are not required to modify, on a going-forward basis, the procedures used by them in the usual course of business to back up and archive data.

   b) Subject to and without waiving any protection described in this same section above, the parties will endeavor to agree upon a date limitation for the preservation of ESI.

   c) The Parties agree to exchange a list of the types of ESI they believe should be preserved and the appropriate custodians, or general job titles or descriptions of

custodians, for whom they believe ESI should be preserved. The Parties shall add or remove appropriate custodians as reasonably necessary.

d) The Parties agree, based on mutual representation of the Parties' counsel, that, generally, the following sources of data are not reasonably accessible and need not be preserved, collected, processed, reviewed and/or produced:

1. Deleted, fragmented, or unallocated data only accessible by computer forensics;
2. Volatile random-access memory (RAM), temp files, or other ephemeral data that is difficult to preserve without disabling the operating system or through the use of computer forensics;
3. Temporary internet files, browser history files, cache files, and cookies;
4. Back-up data that a party knows to be duplicative of ESI, documents, data or tangible things, including metadata about such information;
5. Server, system, or network logs.

**5. SEARCH**

The Parties agree that in responding to an initial Fed. R. Civ. P. 34 request, or earlier if appropriate, they will meet and confer about methods to search ESI in order to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery. The Parties shall adopt reasonable and proportionate methodologies to identify, search, collect, cull, review, and produce ESI as required under applicable legal standards. The Parties recognize and agree that each Party may use one or more methodologies to identify, search, collect, cull, review, and produce responsive and non-privileged ESI, including the use of keyword search terms and/or the use of technology assisted review ("TAR"). A Producing Party may use TAR during the culling and review process of ESI in addition to search terms.

The Parties further recognize that different data sets may implicate different methodologies to identify, search, collect, cull, review, and produce responsive and non-privileged ESI. The Parties therefore agree to meet and confer in good faith regarding any potential disputes over their respective ESI productions.

## 6. SEARCH TERMS AND HIT REPORTS[1]

If a Receiving Party establishes that a Producing Party's production is deficient, and the Producing Party used search terms to limit or cull potentially responsive ESI from the production at issue, the Producing Party shall disclose those search terms to the Requesting Party. The Parties shall then meet and confer regarding any disputes over the disclosed search terms.

In the event that a Producing Party claims burden with respect to modified and/or additional search terms proposed by a Requesting Party, the Producing Party shall provide a hit report for the disputed search terms using industry-standard tools, such as NUIX or other similar tools. The Producing Party shall provide a hit report for the disputed search terms run over the relevant population of documents where the terms were applied, including the following with respect to each proposed or modified search term in dispute: a) The number of documents with hits for that term; and b) The number of unique documents with hits for that term (if available), i.e., documents which do not have hits for any other term.

If, after reviewing a hit report from a Producing Party, a Requesting Party so chooses, it may reasonably request a further hit report which includes: (i) the number of family members and (ii) the number of unique family members. If the ESI tool for the Producing Party is capable without undue burden of providing the number of family members and unique family members, then the Producing Party shall provide such further hit report. The Parties (including the person most knowledgeable about the capabilities of the Producing Party's ESI tool and the Requesting Party's person most knowledgeable about technical issues from its ESI service provider) shall meet and confer regarding any disputes over whether the Producing Party's ESI tool has the capability or not to provide either number of family members or number of unique family members.

The Parties shall meet and confer in good faith to resolve disagreements over the search terms or their application. To the extent the Parties are unable to resolve their dispute, the Parties shall fully comply with the provisions of this Court's Civil Standing Order regarding the

---

[1] This section shall not apply if the parties reach an agreement on the search terms to be used prior to the Producing Party making any productions.

procedure for raising discovery disputes with the Court, including the meet and confer and certification requirements therein.

The Parties agree that the mere fact that a document is hit or captured by the application of any agreed upon or requested search terms does not mean that such document is necessarily responsive to any propounded discovery request, is otherwise relevant to this litigation, or admissible. Determinations of discoverability, responsiveness and privilege shall be made by the Producing Party.

### 7. SYSTEM FILES

The Parties agree that system and application files without user created content (as identified by matching to the NIST National Software Reference Library database) need not be processed, reviewed or produced. The Parties also may filter out stand-alone files identified as zero bytes in size.

### 8. DEDUPLICATION

Each producing Party shall make reasonable efforts to globally deduplicate exact duplicate documents within that Producing Party's ESI data set across all custodial and non-custodial sources at the family level using either MD5 hash values or SHA hash values. To the extent that deduplication through MD5 or SHA hash values is not possible, the parties shall meet and confer to discuss any other proposed method of deduplication. Attachments to parent documents may not be deduplicated against a duplicate standalone version of the attachment, and standalone versions of documents may not be suppressed if a duplicate version exists as an attachment.

A producing Party will make a reasonable effort to identify all custodians, to the extent they are part of the producing Party's ESI and custodian collections, who were in possession of any deduplicated documents through an appropriate load file field, to the extent reasonably practicable. In the event of future supplemental custodian collections that impact deduplication and the applicable load file field for previously made productions, the Parties agree to meet and confer regarding supplemental load files for those affected productions (metadata "overlays") considering what is reasonable and proportionate.

### 9. EMAIL THREADING

To reduce the volume of entirely duplicative content within email threads, the Parties may, but are not required to, use email threading. A Party may use industry standard message threading technology to remove or suppress lesser inclusive email messages where the content of those messages, and any attachments, are wholly contained withing a later, more inclusive email message in the thread. If an email thread is withheld from production because of privilege or any other protection, only one entry for that document shall be included in the producing Party's privilege log.

### 10. PRODUCTION FORMATS

The Parties agree to produce documents and data in the formats described in **Appendix 1** to this ESI Order. If particular documents warrant a different format, the Parties agree to meet and confer regarding an alternative format of production of such documents. The Parties agree not to degrade the searchability of documents as part of the document production process.

### 11. PHASING

When a party propounds discovery requests pursuant to Fed. R. Civ. P. 34, the Parties agree to meet and confer regarding the phasing of the production of ESI. Productions may be made on a rolling basis.

### 12. DOCUMENTS PROTECTED FROM DISCOVERY

a) Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. For example, the mere production of privileged or work-product-protected documents in this case as part of a mass production is not itself a waiver in this case or in any other federal or state proceeding.

b) Communications involving trial counsel that post-date the filing of the complaint need not be placed on a privilege log. Communications may be identified on a privilege log by category or metadata, rather than individually, if appropriate.

**13. MODIFICATION**

This Stipulated Order may be modified by a Stipulated Order of the Parties or by the Court for good cause shown.

**IT IS SO STIPULATED**, through Counsel of Record.

Dated: November 27, 2024

JULIE A. TOTTEN
ERIN M. CONNELL
KAYLA D. GRUNDY
ALEXANDRIA R. ELLIOT
Orrick, Herrington & Sutcliffe LLP

By: */s/ Julie A. Totten*
JULIE A. TOTTEN
Attorneys for Defendant
WORKDAY, INC.

Dated: November 27, 2024

LEE D. WINSTON
RODERICK T. COOKS
Winston Cooks LLC

By: */s/ Lee D. Winston*
LEE D. WINSTON
Attorneys for Plaintiff Derek L. Mobley

**IT IS ORDERED** that the forgoing Agreement is approved.

Dated:

UNITED STATES DISTRICT COURT JUDGE
HON. RITA F. LIN

STIPULATION AND [PROPOSED] ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION - Case No. 3:23-cv-00770-RFL

**APPENDIX 1: PRODUCTION FORMAT**

1. **Production Components**. Except as otherwise provided below, ESI must be produced in accordance with the following specifications:

    a. an ASCII delimited data file (.DAT) using standard delimiters;

    b. an image load file (.OPT) that can be loaded into commercially acceptable production software (*e.g.* Concordance);

    c. single page black-and-white TIFF images, or JPEG images when color is specified herein, or native files with single page placeholder TIFF images depending on the applicable production format for each type of file;

    d. and document level .TXT files for all documents containing extracted full text or OCR text.

    e. Entire document families must be produced, even if only the parent email or an attachment to an email is responsive, except (1) junk files and non-user-created content routinely excluded during processing, and (2) documents that are withheld on the basis of attorney-client privilege, work product protection, or another applicable privilege or protection. Attachments should be consecutively produced with their parent.

2. **Production Media and Access Controls.**

    a. Documents shall be encrypted and produced through electronic means, such as secure file sharing methods (*e.g.* FTP), or on CD, DVD, flash drive or external hard drive ("Production Media"). Each piece of Production Media shall identify a production number corresponding to the production volume (*e.g.* "VOL001").

Each piece of Production Media shall also identify: (a) the case caption; (b) the Producing Party's name; (c) the production date; (d) the Bates Number range of the materials contained on the Production Media.

    b. Nothing in this Order will preclude or impair any and all protections provided the parties by any Protective Order(s) agreed and entered into by the parties. Any data produced by the producing party must be protected in transit, in use, and at rest by all in receipt of such data. Parties will use best efforts to avoid the unnecessary copying or transmittal of produced documents. Any copies made of produced data must be kept on encrypted media or hardware or otherwise secured on information systems and networks in a manner consistent with the best practices for data protection. If questions arise, Parties will meet and confer to ensure security concerns are addressed prior to the exchange of any documents.

3. **Data Load Files/Image Load Files.** Each TIFF in a production must be referenced in the corresponding image load file. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the image load file(s) in the production. The total number of pages referenced in a production's load file should match the total number of TIFF files in the production. All images must be assigned a unique Bates number that is sequential within a given document and across the production sets. The Bates Numbers in the image load file must match the corresponding documents' beginning Bates numbers in the data load file. The total number of documents in a production should match the total number of records in the data load file. Load files must not vary in format or structure within a production, or from one production to another except by agreement of the Parties.

4. **Metadata Fields.** With the exception of hard copy paper documents, which are separately discussed herein, each of the metadata and coding fields set forth below that can be extracted should be produced for each document, except that if the field contains

privileged information, that privileged information may be redacted. However, to the extent that metadata does not exist or is not available for any documents produced, this provision shall not be read to require any Party to extract, capture, collect, manually populate, or produce such metadata, with the exception of the following: (a) BEGBATES, (b) ENDBATES, (c) BEGATTACH, (d) ENDATTACH, (e) PRODVOL, (f) CONFIDENTIALITY, (g) REDACTIONS, (h) NATIVEFILEPATH, and (i) TEXTFILEPATH, which should be populated by the Party or the Party's vendor. The parties will make reasonable efforts to ensure that metadata fields automatically extracted from the documents correspond directly to the information that exists in the original documents.

| Field Name | Field Description |
| --- | --- |
| BEGBATES | Beginning Bates number for a particular document as stamped on the first production image for that document |
| ENDBATES | Ending Bates number as stamped on the last production image for a particular document |
| BEGATTACH | First production Bates number of the first attachment document image in a family |
| ENDATTACH | Last production Bates number of the last attachment document image in a family |
| ATTACHCOUNT | Number of attachments to an e-mail or embedded parent, as generated by commercially available discovery processing tools. |
| ATTACHNAMES | Names of each individual Attachment, separated by semicolons. |
| PRODVOL | Production volume |

| | |
|---|---|
| CUSTODIAN | The custodian associated with the document (for email, the mailbox where the email resided; for natives, the individual from whom the document originated) |
| ALLCUSTODIANS | List of all other custodians associated with Document; values delimited by semicolon. |
| CONFIDENTIALITY | Confidentiality designation assigned to the document consistent with the Stipulated Protective Order governing this Litigation |
| NATIVEFILEPATH | Native File Link (Native Files only) |
| TEXTFILEPATH | Path to extracted text/OCR file for the document |
| HASHVALUE | MD5 hash value of the document |
| AUTHOR | Any value populated in the Author field of the document properties |
| DOCDATE | Date the document was created according to filesystem information (format: MM/DD/YYYY) |
| DATELASTMODIFIED | Date when document was last modified according to filesystem information (format: MM/DD/YYYY) |
| FILENAME | Filename of an electronic document |
| TITLE | Any value populated in the Title field of the document properties |
| DOCEXT | File extension of document pulled from the document properties |
| FROM | The sender of the email |

| | |
|---|---|
| TO | All recipients that were included on the "To" line of the email |
| CC | All recipients that were included on the "CC" line of the email |
| BCC | All recipients that were included on the "BCC" line of the email |
| DATETIMESENT | Date and time email was sent (format: MM/DD/YYYY HH:MM) |
| EMAILSUBJECT | Subject line of email pulled from the document properties |
| REDACTIONS | Y if a document is redacted, otherwise N or empty |

5. **TIFFs.** Unless excepted below, single page, black and white, Group IV TIFFs should be provided, at least 300 dots per inch (dpi) for all documents. Each TIFF image must be named according to a unique corresponding Bates number associated with the document. Each image must be branded according to the Bates number and the agreed upon confidentiality designation. Original document orientation should be maintained (*i.e.*, portrait to portrait and landscape to landscape). Where the TIFF image is unreadable or has materially degraded the quality of the original, the Producing Party shall provide a higher quality TIFF image. Otherwise, the Parties shall meet and confer regarding production in an alternative format (*e.g.* native or original file). In addition, the Parties shall take reasonable efforts to process word processing documents (*e.g.* MS Word) with track changes and/or comments unhidden on the TIFF image. Documents that are difficult to render in TIFF because of technical issues, or any other documents that are impracticable to render in TIFF format, may be produced by a Producing Party in their native format with a placeholder TIFF image stating "Document Produced

Natively," or something similar.

6. **Color.** A Party may request replacement color images for documents originally produced in black and white if the originally produced images are impacted by the lack of color. The Requesting Party shall make the request by individual Bates number(s) and shall limit requests made pursuant to this paragraph to a reasonable number of documents. The Producing Party shall act with good faith and not unreasonably refuse to provide replacement color images. The Parties agree to meet and confer on such requests if there is disagreement.

7. **Text Files.** A single multi-page text file shall be provided for each document, and the filename should match its respective TIFF filename. When possible, the text of native files should be extracted directly from the native file. Text files will not contain the redacted portions of the documents. A commercially acceptable technology for optical character recognition "OCR" shall be used for all scanned, hard copy documents and for documents with redactions.

8. **Native Files**. Spreadsheets (*e.g.* MS Excel) will be produced in native format unless redacted, in which instance such documents shall be produced in TIFF with OCR Text Files. To the extent that they are produced in this action, audio, video, and multi-media files will be produced in native format. Native files shall be produced with a link in the NATIVEFILEPATH field, along with extracted text (where extracted text is available) and applicable metadata fields set forth in Paragraph D above. A Bates numbered TIFF placeholder indicating that the document was provided in native format must accompany every native file. Where redaction makes production of native-format files infeasible (*e.g.*, spreadsheets), the Parties will confer to determine whether a reasonably alternative format of production is necessary (*e.g.* native). The mere existence of column carryover in a redacted TIFF version of a spreadsheet does not automatically render the document as infeasible. The Parties are not precluded from using native redaction software or tools in order to produce redacted versions of documents in their native format (*e.g.* spreadsheets).

9. **Hard Copy or Paper Documents**. Documents that exist in hard copy that are not duplicative of documents produced as ESI will be scanned to .tiff image format and produced in accordance with the specifications set forth herein. Hard copy documents that are not text-searchable shall be made searchable by OCR prior to production. In scanning hard copy documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (*i.e.,* paper documents should be logically unitized). Where a document, or a document group – such as a folder, clipped bundle or binder – has an identification spine or other label, the information on the label shall be scanned and produced as the first page of the document or grouping to the extent reasonably practicable. The following information shall be produced in the load file accompanying production of hard copy documents produced by scan and OCR to the extent reasonably practicable: (a) BEGBATES, (b) ENDBATES, (c) CUSTODIAN, (d) CONFIDENTIALITY, (e) REDACTED.

10. **Bates Numbering**. Bates numbering should be a consistent length across the production and be numerically sequential within a given document. If a Bates number of set of Bates numbers is skipped, the skipped number or set of numbers should be noted with a placeholder. Child attachments to parent documents will be assigned Bates numbers that directly follow the Bates numbers on the documents to which they were attached. Each image shall have its assigned Bates number electronically stamped or burned onto the image.

11. **Hyperlinks**. Document(s) and/or folder(s) of documents that are hyperlinked inside a responsive document (including hyperlinked inside emails) within a Producing Party's custody, possession, or control, do not need to be produced in the first instance as part of the same family group as the document containing the hyperlink. If there are particular hyperlinks identified by the Requesting Party in produced documents, the Requesting Party may submit a list of hyperlinks to the Producing Party for potentially relevant documents by identifying the Bates number and URL or link text for each requested link, and the Producing Party will engage in reasonable efforts to locate the

14
STIPULATION AND [PROPOSED] ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION - Case No. 3:23-cv-00770-RFL

hyperlinked document to the extent it exists as the same version when linked and either identify it by Bates number if already produced or provide any responsive, non-produced, and non-privileged documents. The number of hyperlinks a Requesting Party may identify to a Producing Party shall not be excessive and shall be reasonable, proportional to the needs of the case, and not unduly burdensome.

12. **Embedded Objects**. The Parties agree non-substantive embedded objects, including, but not limited to, logos, icons, emoticons, and footers, may be culled from a document set (but not a document) and need not be produced as separate documents by a Producing Party (*i.e.,* such embedded objects will be produced within the document itself, rather than separate attachment documents). Embedded files, except for images (including, but not limited to, logos, icons, emoticons), are to be produced as family groups. Embedded files should be assigned Bates numbers that directly follow the Bates numbers on the documents within which they are embedded.

13. **Production of Family Groups and Relationships.** If any member of a family group is produced, all members of that group must also be produced or else logged as privileged, and no such member shall be withheld from production as a duplicate.

14. **Redactions.** Any redacted material must be clearly labeled on the face of the document as having been redacted along with the asserted reason(s) for the redaction and shall be identified as such in the load file provided with the production. Each redacted document shall be produced with a text file containing unredacted text. A document's status as redacted does not relieve the producing party from producing all the metadata required herein unless the metadata withheld contains privileged content.

15
STIPULATION AND [PROPOSED] ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION - Case No. 3:23-cv-00770-RFL