Lee D. Winston (admitted pro hac vice)
lwinston@winstoncooks.com
Roderick T. Cooks (admitted pro hac vice)
rcooks@winstoncooks.com
Winston Cooks, LLC
420 20th Street North, Suite#2200
Birmingham, AL 35203
Telephone:    (205) 482-5174
Facsimile:    (205) 278-5876

Jay Greene
greeneattorney@gmail.com
Greene Estate, Probate, and Elder
Law Firm
447 Sutter Street, Suite 435
San Francisco, CA 94108
Phone 415-905-0215

Robert L. Wiggins, Jr. (admitted pro hac vice)
rwiggins@wigginschilds.com
Wiggins Childs Pantazis Fisher & Goldfarb, LLC
The Kress Building
301 19th Street North
Birmingham, AL 35203
Telephone:    (205) 314-0500
Facsimile:    (205) 254-1500

*Attorneys for the Plaintiff and Proposed Class and Collective Members*

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

DEREK L. MOBLEY for and on behalf of himself and other persons similarly situated,
*Plaintiff,*

V

WORKDAY, INC.,
*Defendant.*

Case No. 4:23-cv-00770-RFL

**PLAINTIFF DEREK MOBLEY'S NOTICE OF MOTION AND   MOTION FOR CONDITIONAL CERTIFICATION OF COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)**

Date: April 8, 2025
Time: 10:00 a.m.
Dept: Courtroom 15 (18th Floor)

1
2

## PLAINTIFF DEREK L. MOBLEY'S NOTICE OF MOTION AND MOTION FOR CONDITIONAL CERTIFICATION OF COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)

3
4
5
6
7
8
9
10
11
12
13
14
15
16

PLEASE TAKE NOTICE that, on April 8, 2025, at 10:00 a.m., in Courtroom 15, of this Court, located at 450 Golden Gate Avenue, 18th floor, San Francisco, California, before the Honorable Rita F. Lin, Plaintiff Derek L. Mobley will move the Court for an order conditionally certifying the proposed collective pursuant to Section 216(b) of the Fair Labor Standards Act and Section 626(b) of the Age Discrimination in Employment Act ("ADEA"). This motion is based on the Plaintiff's allegations and the declarations of the Opt-In Plaintiffs which unequivocally show that the Plaintiff and Opt-Ins are similarly situated to the members of the potential collective and there exists no material distinctions between them that would prohibit conditional certification. Therefore, the Plaintiff respectfully requests that the Court authorize the issuance of notice pursuant to 29 U.S.C. § 626(b), which incorporates the standards of § 16(b) of the Fair Labor Standards Act (29 U.S.C. § 216(b) so that potential collective members may learn of their rights and decide whether to join the lawsuit.

17
18
19
20
21
22

In support of this motion, the Plaintiff incorporates the attached memorandum of points and authorities and the accompanying declarations of Opt-In Plaintiffs Jill E. Hughes, Vanessa Knight-Bell, Sheilah Johnson-Rocha, and Richard Lieb, Jr. and the exhibits attached thereto. For the reasons set forth below, Plaintiff respectfully requests that the Court grant this motion and conditionally certify the proposed collective.

23
24
25
26
27
28

**PLAINTIFF DEREK MOBLEY'S NOTICE OF MOTION AND  MOTION FOR CONDITIONAL CERTIFICATION OF COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)**

1

**TABLE OF CONTENTS**

2

TABLE OF AUTHORITIES ........................................................................................ ii

3

MEMORANDUM IN SUPPORT OF MOTION FOR

4

CONDITIONAL CERTIFICATION .......................................................................... 1

5

    I.        PRELIMINARY STATEMENT ................................................. 1

6

    II.      STATEMENT OF RELEVANT FACTS ................................... 2

7

           A.     Workday, Inc. ......................................................... 2

8

           B.     Plaintiffs' Efforts to Secure Employment .................... 3

9

                   1.     Derek L. Mobley .......................................... 4

10

                   2.     Jill E. Hughes .............................................. 4

11

                   3.     Vanessa Knight-Bell .................................... 5

12

                   4.     Sheilah Johnson-Rocha ................................ 6

13

                   5.     Richard W. Lieb, Jr. .................................... 7

14

            C.     How Workday, Inc. Operates .................................. 8

15

    III.     PROPOSED CLASS ............................................................ 9

16

    IV.     ARGUMENT........................................................................ 9

17

           A.     Legal Framework for Conditional Certification ............ 9

18

           B.     Plaintiffs Easily Satisfy the Lenient First-Step Standard for Conditional

19

                 Certification ....................................................... 12

20

           C.     Notice.............................................................. 13

21

           D.     Workday Should Be Ordered to Produce Names and Contact Information of

22

                 Potential Class Members ....................................... 15

23

    V.      CONCLUSION.................................................................... 16

24

CERTIFICATE OF SERVICE ................................................................................. 17

25

26

27

28

-i-

**PLAINTIFF DEREK MOBLEY'S NOTICE OF MOTION AND   MOTION FOR CONDITIONAL
CERTIFICATION OF COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)**

1

# TABLE OF AUTHORITIES

2

## CASES

3

*Adams v. Inter-Con Sec. Sys., Inc.,*
4
    242 F.R.D. 530 (N.D. Cal. 2007)..........................................................................14

5

*Bolden-Hardge v. Off. of Cal. State Controller,*
    63 F.4th 1215 (9th Cir. 2023) ...........................................................................1
6

7

*Campbell v. City of Los Angeles,*
    903 F.3d 1090 (9th Cir. 2018) .........................................................................11

8

*Dybach v. Fla. Dept. Corr.,*
9
    942 F.2d 1562 (11th Cir. 1991) ........................................................................14

10

*Fernandez v. Tox Corp.,*
    677 F. Supp. 3d 1089 (C.D. Cal. 2023) .............................................................14
11

*Harris v. Vector Mktg. Corp.,*
12
    716 F. Supp. 2d 835 (N.D. Cal. 2010).................................................................12

13

*Heath v. Google Inc.,*
14
    215 F.Supp.3d 844 (N.D. Cal. 2016) .............................................................11, 12

15

*Hoffman-La Roche Inc. v. Sperling,*
    493 U.S. 165 (1989)...........................................................................13, 14, 15
16

17

*Hubbard v. Cnty. of Los Angeles,*
    No. CV 23-3541 PA (RAOX), 2023 WL 11884620 (C.D. Cal. Oct. 23, 2023)...............15

18

*K.H. v. Sec'y of the Dep't of Homeland Sec.,*
19
    2016 WL 3879246 (N.D. Cal. 2016) ...............................................................13

20

*Kautsch v. Premier Commun's.,*
    504 F. Supp. 2d 685 (W.D. Mo. 2007)...............................................................14

21

*Kincheloe v. American Airlines, Inc.,*
22
    No. 5:21-cv-00515-BLF, 2021 WL 2322322 (N.D. Cal. June 7, 2021)....................10, 11

23

*Kress v. Pricewaterhouse Coopers, LLP,*
    263 F.R.D. 623 (E.D. Cal. 2009) ...............................................................10, 11
24

25

*Luque v. AT & T Corp.,*
    No. 09 Civ. 5885, 2010 WL 4807088 (N.D. Cal. Nov. 19, 2010)....................................12

26

*Mobley v. Workday, Inc.,*
27
    2024 WL 3409146 (N.D. Cal. 2024) ................................................................6

28

**PLAINTIFF DEREK MOBLEY'S NOTICE OF MOTION AND   MOTION FOR CONDITIONAL CERTIFICATION OF COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)**

*Pines v. State Farm Gen. Ins. Co.*,
    1992 WL 92398 (C.D. Cal. 1992) ...................................................................11

*Prentice v. Fund for Pub. Interest Research, Inc.*,
    2007 WL 2729187 (N.D. Cal. 2007) ...............................................................11

*Ramirez v. Ghilotti Bros. Inc.*,
    941 F.Supp.2d 1197 (N.D. Cal. 2013) .............................................................11

*Sanchez v. Sephora USA, Inc.*,
    2012 WL 2945753 (N.D. Cal. July 18, 2012) .............................................11, 12

*Soler v. G&U, Inc.*,
    86 F.R.D. 524 (S.D.N.Y. 1980) .......................................................................14

*Thrower v. Universal Pegasus, Int'l Inc.*,
    484 F. Supp. 3d 473 (S.D. Tex. 2020) .............................................................14

*Tyson Foods Inc. v. Bouaphakeo*,
    136 S. Ct. 1036 (2016) ....................................................................................14

*Villa v. United Site Servs. Of California, Inc.*,
    No. 12 Civ. 318, 2012 WL 5503550 (N.D. Cal. Nov. 13, 2012) ......................12

*Williams v. Sprint/United Mgmt. Co.*,
    222 F.R.D. 483 (D. Kan. 2004) .......................................................................11

*Woods v. Vector Mktg. Corp.*,
    No. C-14-0264, 2015 WL 1198593 (N.D. Cal. Mar. 16, 2015) ........................14

*Zeman v. Twitter, Inc.*,
    2024 WL 4032051 (N.D. Cal. 2024) ...........................................................9, 10, 11

**STATUTES**

29 U.S.C. § 216(b) ...............................................................................2, 9, 10

29 U.S.C. § 256(b) .......................................................................................13

29 U.S.C. § 257 ............................................................................................13

29 U.S.C. § 626(b) .....................................................................................2, 9

29 U.S.C. § 630(b) ........................................................................................9

**PLAINTIFF DEREK MOBLEY'S NOTICE OF MOTION AND MOTION FOR CONDITIONAL CERTIFICATION OF COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)**

## MEMORANDUM IN SUPPORT OF MOTION
## FOR CONDITIONAL CERTIFICATION

## I.   PRELIMINARY STATEMENT

Plaintiff, Derek L. Mobley ("Mobley" or "Plaintiff"), brings this suit challenging Defendant Workday, Inc.'s ("Workday" of "Defendant") alleged policy or practice of discriminatory job screening-which disproportionately disqualifies individuals over the age of forty (40) from securing gainful employment.  This motion seeks certification of a nationwide ADEA collective, as set forth below.

The Plaintiff, and Opt-In Plaintiffs, Jill E. Hughes, Vanessa Knight-Bell, Sheilah Johnson-Rocha, and Richard Lieb, Jr. all have submitted hundreds of employment applications to prospective employers at a Uniform Resource Locator ("URL") that ends with @myworkday.com.  Each time their employment applications have been rejected, sometimes within minutes of submission.   Any employment applications submitted to employers via @myworkday.com are subject to Workday's proprietary screening processes during the Class Period, including the Plaintiffs and the proposed collective. It is thus reasonable to attribute any systematic disparate impact in the scoring of applicants to Workday's policy of using algorithmic decision-making tools. This causal connection is unsurprising: algorithmic decision-making tools have been known to cause disparate impact in scoring applications.

As the Court has already determined, "[t]o plead a prima facie case of disparate impact, a plaintiff must (1) show a significant disparate impact on a protected class or group; (2) identify the specific employment practices or selection criteria at issue; and (3) show a causal relationship between the challenged practices or criteria and the disparate impact." *Order* at 13 (Doc. 80) (quoting *Bolden-Hardge v. Off. of Cal. State Controller*, 63 F.4th 1215, 1227 (9th Cir. 2023)). The Court has also found that the Plaintiffs satisfied those elements of a disparate impact claim by having identified and pled "a specific employment practice" in the form of Workday's "algorithmic decision-

making tools to screen applicants . . . [that] rely on biased training data and information obtained from pymetrics and personality tests," *Order* at 13 (Doc. 80) (quoting FAC ¶¶ 28 38–39, 57), as well as "sufficiently allege[ed] that the disparity is caused by Workday's algorithmic screening tools." *Id.* at 15.

Because their applications are more likely to be flagged for rejection, applicants over 40 are disproportionately more likely to be denied jobs.  As a result, those over 40 experience significantly greater rates of rejection for employment which negatively impacts their career prospects, earnings, and quality of life.   The detailed allegations of the First Amended Complaint, basic information obtained during this litigation, and the declarations of the opt-in Plaintiffs show that the proposed collective members are "similarly situated" and far exceed the "lenient standard" required for conditional certification under 29 U.S.C. § 626(b) and 29 U.S.C. § 216(b).

The Plaintiff and the Opt-Ins similarly situated in that they were all denied employment because of the Defendant's algorithmic decision-making tools.  Thus, they have made a showing that a group of individuals were victims of a common policy or practice, meeting the lenient standard for maintaining a collective action.  This warrants conditional certification.  Moreover, the elements that must be proven to support a ADEA disparate impact claim are common to all members of the collective, i.e. proof of impact, causation, and RFOA affirmative defenses are common elements of liability, as are the resulting collective-wide injunctive and declaratory relief and objectively -based backpay calculations.

## II.    STATEMENT OF RELEVANT FACTS

### A.    Workday, Inc.

Mr. Mobley alleges that Workday, Inc. has engaged in a policy or practice that causes disparate impact by discriminating against applicants (including [Mr. Mobley]) who are age 40 and older in hiring with the resultant effect of disqualifying persons aged 40 or older from positions for

**PLAINTIFF DEREK MOBLEY'S NOTICE OF MOTION AND   MOTION FOR CONDITIONAL CERTIFICATION OF COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)**

which they are well qualified.  (FAC at pgs. 2-3).  Because Workday is the gatekeeper to employment opportunities for millions of applicants, its alleged discriminatory screening practices have a significant disparate impact on older workers seeking employment.[1]  In May of 2023, the Bureau of Labor Statistics reported more than 9.8 million job openings in the U.S., and Workday recruiting processed 2.2 million of those U.S. job requisition transactions in May, representing nearly 22% of all U.S. job openings that month.  (FAC at pg. 2).  At that rate, in 2023 alone, Workday was projected to process more than 36 million requisitions, screen 266 million applications, and make 24 million job offers in 2023 alone.   Id.  Workday processes this massive number of applications by using automated screening tools that rely on artificial intelligence.  Id.   Workday's job screening practices have systematically favored younger applicants at the expense of older candidates. (FAC at pgs. 2-3).  Workday's market dominance ensures that a significant portion of applicants must bypass its artificial intelligence ("AI") and Machine Learning ("ML") systems and screening tools to get jobs thereby depriving older workers of employment.  (FAC at pg. 2).

**B.    Plaintiffs' Efforts to Secure Employment**

Plaintiff Mobley and Opt-In Plaintiffs Hughes, Knight-Bell, Johnson-Rocha, and Lieb, have each submitted hundreds of applications to various employers who use Workday to screen applications.  Plaintiffs were over the age of 40 when they applied and allege that they were qualified for the positions but were unlawfully refused employment despite their qualifications.

---

[1]Workday was founded in 2005 and today is used by more than 10,000 organizations around the world and across industries—from medium-sized businesses to more than 50 percent of the Fortune 500. The Workday customer community has 65 million users, and in April of this year, nearly one in four of all U.S. job openings was processed on the Workday platform. *See* Landman, Inna. "First Half 2023 Hiring Trends: Slowdown and Stagnation," Workday Blog, September 20, 2023, https://blog.workday.com/en-us/2023/first-half-2023-hiring-trends-slowdown-stagnation.html.

**PLAINTIFF DEREK MOBLEY'S NOTICE OF MOTION AND   MOTION FOR CONDITIONAL CERTIFICATION OF COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)**

### 1. Derek L. Mobley

Mr. Mobley is over the age of 40 [d.o.b. 1974]. (FAC¶19). Mobley graduated from Morehouse College in 1995 with a bachelor's degree in finance and is also an honors graduate of ITT Technical Institute. (FAC¶¶20-24). Over his career Mobley has worked in various financial, IT help-desk, and customer service-oriented jobs. (FAC¶¶25-26). He possesses extensive knowledge in multiple critical roles within the Enterprise server, banking, finance, and insurance industries. (FAC¶27).

Beginning in 2017, Mobley applied for over 100 positions with employers that exclusively use Workday as a screening platform for talent acquisition and/or hiring. (FAC¶49-55). The emails by which Mobley communicated with these employers all say myworkday.com. (FAC¶53). Mobley's applications were rejected by Workday every time. Id at 49. Many of the positions for which Mobley submitted applications required him to take a Workday branded assessment and/or personality test. (FAC¶56).

Mobley never received an interview for most of the jobs for which he submitted applications, and in numerous instances he was informed of his rejection within hours of submitting his application. (FAC¶¶61-87). For example, on January 29, 2022, he applied for a job at 12:55 a.m. and received a rejection email less than an hour later, at 1:50 a.m. (FAC¶¶84-85). Despite his qualifications and experience, Mobley never received an offer of employment.

### 2. Jill E. Hughes

Ms. Hughes is over the age of 40 [year of birth 1974]. (Ex. 1-Hughes Dec. ¶7). She has a B.A. from the University of Cincinnati and an M.A. from the University of Chicago. (Ex. 1-Hughes Dec. ¶8). She possesses more than 28 years of executive-level experience as a Senior Medical Writer, Project Manager, and Scientific Director with experience writing/strategizing for major media as well as the corporate and medical arenas. Id.

Since December of 2023, Ms. Hughes has applied for hundreds of positions that use Workday, Inc. as a screening tool for sourcing, recruiting, talent acquisition and/or hiring. (Ex. 1-Hughes Dec. ¶4).  Examples of employers that she has submitted applications to include 3M; Cigna; Veralto; Stryker; Becton Dickinson; FIS Global; General Electric; Huntington; and Parsons Corporation.  She has been denied employment each time.  Id.

The companies listed above have sent at least one automated rejection email for role(s) for which Mr. Hughes met or exceeded the posted hiring requirements.  (Ex. 1-Hughes Dec. ¶5)  In some cases, the automated rejection emails stated "You do not meet the minimum requirements for this role" even though she met or exceeded all posted requirements based on her professional resume and portfolio of prior work.  Id.  The automated rejections Ms. Hughes received were often received within a few hours of applying or at odd times outside of business hours (i.e., 2:40 a.m. on a Sunday morning; 11:00 pm on a weekday), indicating a human did not review the applications.  (Ex. 1-Hughes Dec. ¶6).

Despite her qualifications, experience, and numerous applications, Ms. Hughes has only been offered an opportunity to interview once, via Cardinal Health, which resulted in a rapid rejection, only to see that same role re-posted over and over again for multiple years since.  (Ex. 1-Hughes Dec. ¶10).

### 3.    Vanessa Knight-Bell

Ms. Knight-Bell is over the age of 40 [year of birth 1970].  (Ex. 2-Knight-Bell Decl. ¶6).  She is a 2011 graduate of University of Alabama, Tuscaloosa where she obtained a bachelor's degree in commerce and business administration. (Ex. 2-Knight-Bell Decl. ¶7).  Since 1996, Ms. Knight-Bell has worked in various financial, business analyst, and customer service-oriented jobs.  (Ex. 2-Knight-Bell Decl. at Att. A (Resume`)). Since 2018 Ms. Knight-Bell has applied for 100's of positions that use Workday, Inc. as a screening tool for recruiting, talent acquisition and/or hiring. (Ex. 2-Knight-

Bell Decl. ¶4). Specifically, Ms. Knight-Bell has submitted job applications to approximately 40 different employers.  Id. During this period, she specifically recalls submitting 180 applications to Boeing, 131 applications to Northrop Grumman, 121 applications to Parsons Corporation, and 110 applications to General Dynamics Information Technology.  Id.  She never received an interview or job offer from these employers even though she met the qualifications for the positions for which she applied. Id. She received automated rejection emails, most often within 24 hours of her interview. (Ex. 2-Knight-Bell Decl. ¶5).

The denials of employment recommendations were received via automated rejection emails for role(s) for which Ms. Knight-Bell met or exceeded the posted hiring requirements.  (Ex. 2-Knight-Bell Decl. ¶5). In some cases, the automated rejection emails stated "You do not meet the minimum requirements for this role" even though she met or exceeded all posted requirements based on his professional resume. Id. Automated rejections were often received within a few hours of applying or were sent at odd times outside of business hours, indicating a human did not review the applications. Id.

### 4.    Sheilah Johnson-Rocha

Ms. Johnson-Rocha is over the age of 40 [year of birth 1983].  (Ex. 3-Johnson-Rocha Decl. ¶7).  She has three college degrees: (1) an associate's in arts (Business Administration); Bachelor of Business Administration; and, a Master of Science-Major in Management.  (Ex. 3-Johnson-Rocha Decl. ¶8).  She has worked in the pharmaceutical and biotechnology industry for approximately 21 years and is recognized as a thought leader in clinical development operations and project management.  (Ex. 3-Johnson-Rocha Decl. ¶8; Att. A (Resume`)).

Since March 2023, Ms. Rocha has submitted approximately 2,000 job applications to various pharmaceutical and biotech companies. (Ex. 3-Johnson-Rocha Decl. ¶4). A large majority of the companies to which she applied use the Workday, Inc. job application platform.  Id.  Ms. Johnson-

-6-

Rocha's qualifications and experience exceeded all criteria in the job requisitions for each of the roles for which she applied, however almost all her applications were met with an automated rejection notification. Id. Furthermore, many of the jobs for which she applied were not filled but were continuously re-posted. (Ex. 3-Johnson-Rocha Decl. ¶5). When the jobs were re-posted, she re-applied only to receive an automated rejection email. Id. In some cases, the automated rejection emails stated "You do not meet the minimum requirements for this role" even though she met or exceeded all posted requirements based on her professional resume. (Ex. 3-Johnson-Rocha Decl. ¶5). Automated rejections were often received within a few hours of applying or were sent at odd times outside of business hours, indicating a human did not review the applications. (Ex. 3-Johnson-Rocha Decl. ¶5). For some companies, she submitted 20 or more individual applications, and all were rejected. (Ex. 3-Johnson-Rocha Decl. ¶6).

### 5.    Richard W. Lieb, Jr.

Mr. Lieb is over the age 40 [year of birth 1971]. (Ex. 4-Lieb Decl. ¶7). He has a degree from the Art Institute of Pittsburgh, PA, (2015 - 2017) in Graphic Design with a concentration in Graphic Design/Adobe Cloud and a minor in Social Marketing. (Ex. 4-Lieb Decl. ¶8; Atts. A-D (Resume`)). Mr. Lieb has held management positions in prior jobs and has an extensive background in Marketing and its integration with social media. Id. He is pursuing CompTIAServer+ certifications. Id.

Since 2022, Mr. Lieb has applied for hundreds of positions that use Workday, Inc. as a screening tool for sourcing, recruiting, talent acquisition and/or hiring. (Ex. 4-Lieb Decl. ¶4). For some companies, such as Allstate, he has submitted multiple applications. Id. He has been denied employment each time. Id.

The denials of employment were received via automated rejection emails for role(s) for which Mr. Lieb met or exceeded the posted hiring requirements. (Ex. 4-Lieb Decl. ¶5). In some cases, the automated rejection emails stated "You do not meet the minimum requirements for this role" even

-7-

though he met or exceeded all posted requirements based on his professional resume.  Id.  Automated

rejections were often received within a few hours of applying or were sent at odd times outside of

business hours, indicating a human did not review the applications.  (Ex. 4-Lieb Decl. ¶6).

## C.    How Workday, Inc. Operates

Workday acts as an agent for firms who have delegated their employment decision-making

authority to its algorithmic decision-making tools.    FAC¶91, 107.    Workday's "artificial

intelligence", "machine learning", assessments, tests, and pymetrics decide who to recommend for

jobs and who to reject. FAC¶107.  Submission of application via @myworkday.com is the only way

to gain employment opportunities with these employers.  FAC¶61, 64, 66, 68, 70, 72, 76, 78, 80, 82,

84, and 92.  Workday's subscription-based service reflects an on-going relationship with their client-

employers and includes significant engagement in the process of hiring employees.    FAC¶93.

Workday boasts that it can "reduce time to hire by automatically dispositioning or moving candidates

forward in the recruiting process."  FAC¶94.  Via what it terms as "Talent Management", Workday

sources candidates and then uses algorithmic decision-making tools to recommend job opportunities.

FAC¶95.

Workday's relationships with its client-employers are not one-off transactions but

ongoing business arrangements where employers delegate their selection decisions to Workday who

in turn uses its algorithmic decision-making tools to screen out applicants who are over the age of

40.  FAC¶108.  Vis-a-`-vis pymetrics Workday's Assessment Connector uses neuroscience data and

AI to help client-employers make their hiring and internal mobility decisions more predictive, and

allegedly free of bias; however, these algorithms are only trained on incumbent employees at a

company, allowing the pymetrics Workday Assessment Connector to build a homogenous workforce

not representative of the applicant pool.  FAC¶¶101-102.  Workday also encourages and uses the

recommendations of incumbent employees for hiring decisions.  FAC¶103.  This facially neutral

-8-

employment practice has a differential effect upon applicants over 40, because any lack of work force diversity allows for incumbent employees to consciously or unconsciously refer or recommend few workers over the age of 40.   FAC¶¶103-104.

## III.    PROPOSED CLASS

Mr. Mobley requests that the Court conditionally certify the following class:

All individuals aged 40 and over who, from September 24, 2020, through the present who applied for job opportunities using Workday, Inc.'s job application platform and were denied employment recommendations.

The class is objectively defined in a way that allows class members to easily determine whether they are part of the proposed class as it only includes candidates over the age of 40 who used Workday, Inc.'s platform to access and apply for employment opportunities.

## IV.    ARGUMENT

### A.    Legal Framework for Conditional Certification

Under the ADEA "the term "employer" means a person engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year. The term also means (1) any agent of such a person . . ."   29 U.S.C. § 630(b). The ADEA prohibits employers and their agents from "discriminating against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1); *Mobley v. Workday, Inc.,* 2024 WL 3409146, *4 (N.D. Cal. 2024). The ADEA is "enforced in accordance with the powers, remedies, and procedures" of the Fair Labor Standards Act ("FLSA"). 29 U.S.C. § 626(b)." Z*eman v. Twitter, Inc.,* 2024 WL 4032051, *2 (N.D. Cal. 2024).  Section 216(b) of the FLSA provides that one or more employees may bring a collective action against any employer on behalf of "themselves and other employees similarly situated." 29 U.S.C. § 216(b). Under § 216(b), a collective action is appropriate if the proposed opt-in class of employees is "similarly situated":

-9-

"An action to recover the liability . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other *employees similarly situated*. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party, and such consent is filed in the court in which such action is brought."

29 U.S.C. § 216(b) (emphasis added).

District courts in the ninth circuit employ the familiar two-step approach to determine whether plaintiffs are similarly situated. *Zeman v. Twitter, Inc.,* 2024 WL 4032051, *2 (N.D. Cal. 2024). First, the court makes an initial, conditional determination "whether the proposed class should be given notice of the action based on the pleadings and affidavits submitted by the parties." Id. at *2 (internal quotations omitted). "The standard for certification at step one is lenient and "typically results in certification." *Zeman v. Twitter, Inc.,* 2024 WL 4032051, *2 (N.D. Cal. 2024); *Kincheloe v. American Airlines, Inc.,* No. 5:21-cv-00515-BLF, 2021 WL 2322322, at *3 (N.D. Cal. June 7, 2021).

At step one, "district courts have required little more than substantial allegations, supported by declarations or discovery, that the putative class members were together the victims of a single decision, policy, or plan and a showing that plaintiffs are generally comparable to those they seek to represent. Stated differently, plaintiffs must show that there is some identifiable factual or legal nexus [that] binds together the various claims of the class members in a way that hearing the claims together promotes judicial efficiency and comports with the broad remedial policies underlying the FLSA." *Zeman,* at 2 (internal quotations and citations omitted). Because of this lenient standard, courts need not consider evidence provided by defendants at this stage. *Kress v. Pricewaterhouse Coopers, LLP,* 263 F.R.D. 623, 628 (E.D. Cal. 2009). "Given that a motion for conditional certification usually comes before much, if any, discovery, and is made in anticipation of a later more searching review, a movant bears a very light burden in substantiating its allegations at this stage." *Prentice v. Fund*

-10-
**PLAINTIFF DEREK MOBLEY'S NOTICE OF MOTION AND   MOTION FOR CONDITIONAL CERTIFICATION OF COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)**

*for Pub. Interest Research, Inc.,* 2007 WL 2729187, *2 (N.D. Cal. 2007). Therefore, the "sole consequence of a successful motion for preliminary certification is the sending of court-approved written notice to workers who may wish to join the litigation as individuals." *Campbell v. City of Los Angeles,* 903 F.3d 1090, 1101 (9th Cir. 2018) (internal quotation marks and citations omitted). Accordingly, courts in the ninth circuit overwhelmingly "refuse to depart from the notice stage analysis prior to the close of discovery." *Ramirez v. Ghilotti Bros. Inc.,* 941 F.Supp.2d 1197, 1203 (N.D. Cal. 2013) (quoting *Kress,* 263 F.R.D. at 629). This is because at the second step of the analysis, which is made after the close of discovery and usually on a motion for decertification by the defendant, a stricter standard for "similarly situated" is employed. *Ramirez,* at 1203.

Consequently, numerous ninth circuit district courts have granted conditional certifications for collective actions alleging violations of the ADEA and authorized notice to ADEA classes. See *Zeman v. Twitter, Inc.,* 2024 WL 4032051 (N.D. Cal. 2024); *Kincheloe v. American Airlines,* Inc., 2021 WL 2322322 (N.D. Cal. 2021); *Rabin v. PricewaterhouseCoopers LLP,* 2019 WL 9078785 (N.D. Cal. 2019); *Heath v. Google Inc.,* 215 F.Supp.3d 844 (N.D. Cal. 2016); *Pines v. State Farm Gen. Ins. Co.,* 1992 WL 92398, at *4, 13 (C.D. Cal. 1992). Also, any finding of differences between class members or opt-ins does not bar conditional certification because they are "simply not relevant at the notice stage when plaintiff . . . has set forth substantial allegations that all plaintiffs were subjected to a pattern or age discrimination." *Williams v. Sprint/United Mgmt. Co.,* 222 F.R.D. 483, 487 (D. Kan. 2004). "Courts in this District have "rejected similar arguments during the first stage of the [ADEA] conditional certification process, finding that these arguments go to the merits and are better addressed at the second stage, after discovery has closed." *Heath,* 215 F. Supp. 3d at 854-55 (citing *Sanchez v. Sephora USA, Inc.,* 2012 WL 2945753, at *4 (N.D. Cal. July 18, 2012) (collecting cases)). Additionally, "'[t]he fact that a defendant submits competing declarations will not as a general rule preclude conditional certification.'" *Heath v. Google Inc.,* 215 F.Supp.3d 844,

-11-

852 (N.D. Cal. 2016); (quoting *Harris v. Vector Mktg. Corp.,* 716 F. Supp. 2d 835, 838 (N.D. Cal. 2010). Judge Labson-Freeman of this District, citing Judge Alsup also of this District, endorses this view, "competing declarations simply create a "he—said—she—said situation" and while "[i]t may be true that the [defendant's] evidence will later negate [Plaintiffs'] claims, that should not bar conditional certification at the first stage." *Heath,* at 852 (internal citation omitted).

Because the plaintiff's burden for certification at step one is exceedingly light, most courts consider only the plaintiff's evidence. See *Sanchez v. Sephora USA, Inc.,* No. 11 Civ. 03396, 2012 WL 2945753, at *4 (N.D. Cal. July 18, 2012) (Armstrong, J.) ("federal courts are in agreement that evidence from the employer is not germane at the first stage of the certification process, which is focused simply on whether notice should be disseminated to potential claimants"); *Ramirez v. Ghilotti Bros. Inc.,* 941 F. Supp. 2d 1197, 1203 (N.D. Cal. 2013) (Breyer, J.) ("courts need not even consider evidence provided by defendants at this stage"); *Luque v. AT & T Corp.,* No. 09 Civ. 5885, 2010 WL 4807088, at *5 (N.D. Cal. Nov. 19, 2010) (Breyer, J.) (same); cf. *Villa v. United Site Servs. Of California, Inc.,* No. 12 Civ. 318, 2012 WL 5503550, at *13-15 (N.D. Cal. Nov. 13, 2012) (Koh, J.) (certifying collective based on plaintiff's allegations and three declarations, and declining to consider over 200 declarations submitted by defendants, which had little "probative value" and were gathered under circumstances giving rise to a risk of coercion).

**B.    Plaintiffs Easily Satisfy the Lenient First-Step Standard for Conditional Certification.**

Plaintiffs have presented evidence well exceeding what is required to satisfy the lenient standard of step one conditional certification. Plaintiffs' declarations, documents, and allegations that the Defendant treated all applicants over the age of 40 alike regarding the critical questions in this litigation is the glue that binds the opt-in class members' claims, making adjudication on a collective-wide basis appropriate. *K.H. v. Sec'y of the Dep't of Homeland Sec.,* 2016 WL 3879246,

-12-

**PLAINTIFF DEREK MOBLEY'S NOTICE OF MOTION AND  MOTION FOR CONDITIONAL CERTIFICATION OF COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)**

*3 (N.D. Cal. 2016). These allegations and evidence support Plaintiffs' contention that Workday's artificial intelligence and machine learning screening products treat applicants over age 40 discriminatorily and have a disparate impact against them.  Specifically, each plaintiff alleges that they each have submitted 100's of applications for employment to jobs for which they either met or exceeded the minimum qualifications with no success.  Plaintiffs are rejected due to their age and Workday's algorithmic decision-making tools which discriminatorily score their application in the hiring process and prevent them from obtaining employment.  Therefore, Plaintiffs have offered enough evidence of Workday's alleged practice of age discrimination to meet the lenient standard for conditional certification.

## C.    Notice

Plaintiff requests that the Court approve the notice attached hereto.  As the Supreme Court recognized in *Hoffman-La Roche,* the goal of judicial economy weighs heavily in favor of conditional certification and the issuance of notice to potential class members. *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). Collective actions benefit the judicial system by enabling the "efficient resolution in one proceeding of common issues of law and fact." Id. "The benefits, however, depend upon employees receiving accurate and timely notice concerning the pendency of the collective action." Id. Under FLSA's collective action provisions, trial courts have the authority to facilitate notice to potential plaintiffs to inform them of an action and allow them an opportunity to opt in. Id. at 170-71. Notice should be provided in the early stages. Id. at 171.

Prompt notice to potential opt-in plaintiffs is essential because in a representative action under the FLSA, the statute of limitations on an individual's claim is not tolled until that individual files a consent form with the Court. 29 U.S.C. §§ 256(b) & 257. Because of this, courts have moved quickly to certify representative actions and facilitate notice by granting requests for expedited discovery of employee information. *Soler v. G&U, Inc.,* 86 F.R.D. 524, 528-31 (S.D.N.Y. 1980).

**PLAINTIFF DEREK MOBLEY'S NOTICE OF MOTION AND   MOTION FOR CONDITIONAL CERTIFICATION OF COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)**

The earliest possible notice will promote the broad remedial purpose of the FLSA and promote efficient case management by ensuring that similar claims are combined in one proceeding. *Dybach v. Fla. Dept. Corr.,* 942 F.2d 1562, 1567 (11th Cir. 1991); *of Kautsch v. Premier Commun's.,* 504 F. Supp. 2d 685, 690 (W.D. Mo. 2007) ("At this stage of litigation, justice is most readily served by notice reaching the largest number of potential plaintiffs."). Moreover, the only consequence of conditional certification is the sending of court- approved written notice to potential class members, who join the collective action only if they file written consent with the court. *Tyson Foods Inc. v. Bouaphakeo,* 136 S. Ct. 1036, 1043 (2016). Court approval and facilitation of written notice serves the goals of "avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action." *Hoffmann-La Roche,* 493 U.S. at 172.

Plaintiff is concurrently filing a proposed notice and consent form. Plaintiff proposes a 90-day opt-in period, consistent with what other courts have approved for large potential classes. *Woods v. Vector Mktg. Corp.*, No. C-14-0264, 2015 WL 1198593, at *4 (N.D. Cal. Mar. 16, 2015) (citing *Adams v. Inter-Con Sec. Sys., Inc.*, 242 F.R.D. 530, 542 (N.D. Cal. 2007)); *Adams v. Inter–Con Sec. Sys., Inc.,* 242 F.R.D. 530, 542 (N.D.Cal.2007) (90–day opt-in period is warranted in light of the large number of potential plaintiffs). Plaintiff proposes that notice be given as follows: e-mail through a third-party administrator and an official case web page will be created where potential collective action members can review the official notice and submit an opt-in form. *Fernandez v. Tox Corp.,* 677 F. Supp. 3d 1089, 1100 (C.D. Cal. 2023) (Approving notice via email through a third-party administrator with a 90-day opt-in period). Notice via text message may also be appropriate to consider. See *Thrower v. Universal Pegasus, Int'l Inc.*, 484 F. Supp. 3d 473, 490 (S.D. Tex. 2020) (approving text messages as a form of FLSA Notice following conditional certification to give potential plaintiffs an opportunity to join the case…. "Unlike e-mail, text messages, at the very least, have eyes laid on them before being opened or ignored. And while one's e-mail account is quickly

-14-

becoming inseparable from their cell phone—that is to say, most people own a smartphone on which they receive text messages *and* e-mails—a short vacation or busy workweek can result in literally hundreds of unread e-mails.").  Collective action members will be permitted to submit opt-in claim forms on the official case web page using online signatures and may be permitted to submit claim forms via e-mail.

**D.    Workday Should Be Ordered to Produce Names and Contact Information of Potential Class Members.**

Workday should be ordered to provide, within 45 days, the names and contact information for potential class members, *i.e.*, whose employment application(s) was scored by Workday's AI for any of their customers and who were 40 years of age as of the application date based on date of birth (if known), employment history dates, or college graduation date (if known).   *See Hoffmann-La Roche*, 493 U.S. at 170 ("The District Court was correct to permit discovery of the names and addresses of the discharged employees.").  This contact information should be provided in electronic format and should include name, positions by company applied for, along with their e-mail address, telephone number, and mailing address.  See *Hubbard v. Cnty. of Los Angeles*, No. CV 23-3541 PA (RAOX), 2023 WL 11884620, at *3 (C.D. Cal. Oct. 23, 2023) ("…courts regularly require disclosure of potential plaintiffs' contact information to plaintiffs' attorneys in FLSA collective action cases.").

///

///

///

**PLAINTIFF DEREK MOBLEY'S NOTICE OF MOTION AND   MOTION FOR CONDITIONAL CERTIFICATION OF COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)**

**V.**    **CONCLUSION**

Based on the foregoing allegations, declarations, and documents, Plaintiff respectfully

requests that the Court Conditionally certify the proposed class, authorize notice, and require

production of the names and contact information of potential class members.

Respectfully submitted,

/s/Roderick T. Cooks
Roderick T. Cooks *(admitted pro hac vice)*
Lee Winston *(admitted pro hac vice)*
Robert L. Wiggins, Jr. *(admitted pro hac vice)*
Attorney for the Plaintiff and the Proposed
Classes and the Collective

**OF COUNSEL:**
Lee D. Winston
lwinston@winstoncooks.com
State of Alabama Bar No.:6407O72L
Roderick T. Cooks
rcooks@winstoncooks.com
State of Alabama Bar No.:5819O78R
Winston Cooks, LLC
420 20th Street North
Suite#2200
Birmingham, AL 35203
Telephone:    (205) 482-5174
Facsimile:    (205) 278-5876

Robert L. Wiggins, Jr.
rwiggins@wigginschilds.com
Wiggins Childs Pantazis Fisher Goldfarb, LLC
The Kress Building,
301 19th Street North
Birmingham, AL 35203
Telephone:    (205) 314-0500
Facsimile:    (205) 254-1500

**LOCAL COUNSEL:**
Jay Greene
Greene Estate, Probate, and Elder Law Firm
447 Sutter Street, Suite 435
San Francisco, CA 94108
Phone 415-905-0215
greeneattorney@gmail.com

**PLAINTIFF DEREK MOBLEY'S NOTICE OF MOTION AND   MOTION FOR CONDITIONAL
CERTIFICATION OF COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)**

1

## **CERTIFICATE OF SERVICE**

2

3     I hereby certify that on **February 6th, 2025**, I electronically filed the foregoing document with the United States District Court for the Northern District of California by using the Court's CM/ECF system. I certify that the following parties or their counsel of record are registered as ECF Filers and that they will be served by the CM/ECF system:

4

5   Erin M. Connell            econnell@orrick.com

6   Julie Ann Totten           jtotten@orrick.com

7   Kayla Delgado Grundy        kgrundy@orrick.com, kdelgado@orrick.com

8
                                            */s/Roderick T. Cooks*
9                                           Roderick T. Cooks

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-17-

**PLAINTIFF DEREK MOBLEY'S NOTICE OF MOTION AND   MOTION FOR CONDITIONAL CERTIFICATION OF COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)**