Lee D. Winston (admitted pro hac vice)
lwinston@winstoncooks.com
Roderick T. Cooks (admitted pro hac vice)
rcooks@winstoncooks.com
Winston Cooks, LLC
420 20th Street North, Suite #2200
Birmingham, AL 35203
Telephone:     (205) 482-5174
Facsimile:     (205) 278-5876

Jay Greene
greeneattorney@gmail.com
Greene Estate, Probate, and Elder
Law Firm
447 Sutter Street, Suite 435
San Francisco, CA 94108
Phone 415-905-0215

Robert L. Wiggins, Jr. (admitted pro hac vice)
rwiggins@wigginschilds.com
Wiggins Childs Pantazis Fisher & Goldfarb, LLC
The Kress Building
301 19th Street North
Birmingham, AL 35203
Telephone:     (205) 314-0500
Facsimile:     (205) 254-1500

*Attorneys for the Plaintiff and Proposed Class and Collective Members*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEREK L. MOBLEY for and on behalf of himself and other persons similarly situated, *Plaintiff,*<br><br>V<br><br>WORKDAY, INC., *Defendants.* | Case No. 4:23-cv-00770-RFL<br><br>**REPLY IN SUPPORT OF PLAINTIFF DEREK MOBLEY'S NOTICE OF MOTION AND  MOTION FOR CONDITIONAL CERTIFICATION OF COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)**<br><br>Date: April 29, 2025<br>Time: 10:00 a.m.<br>Dept: Courtroom 15 (18th Floor) |

**REPLY IN SUPPORT OF PLAINTIFF DEREK MOBLEY'S NOTICE OF MOTION AND  MOTION FOR CONDITIONAL CERTIFICATION OF COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ ii

PLAINTIFFS' REPLY IN SUPPORT OF PROVIDING NOTICE OF
COLLECTIVE ACTION ..........................................................................................1

I.    The Claim's Merit And Pre-Discovery Evidence Are Not Relevant Factors For
      Determining Similarity .....................................................................................3

II.   Opt-In's Qualifications Are Not A Relevant Factor For Determining Similarity Or
      The Merits Of Their Disparate Impact Claim..................................................5

III.  Workday's Self-Serving Declaration Is No Reason For This Court To Deny
      Conditional Certification ...................................................................................7

IV.   Workday Has Offered No Reason For This Court To Abandon Stage One Of The
      Conditional Certification Analysis ....................................................................9

V.    Any Dissimilarities In The Collective Members Are Minor And Do Not Defeat
      Conditional Certification ..................................................................................10

CONCLUSION........................................................................................................11

CERTIFICATE OF SERVICE

**REPLY IN SUPPORT OF PLAINTIFF DEREK MOBLEY'S NOTICE OF MOTION AND   MOTION FOR CONDITIONAL CERTIFICATION OF COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)**

# TABLE OF AUTHORITIES

**CASES**

*Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*,
    568 U.S. 455 (2013)............................................................................................3

*Benedict v. Hewlett-Packard Co.,*
    2014 WL 587135 (N.D. Cal. Feb. 13, 2014) .......................................................9

*Bolden-Hardge v. Off. of Cal. State Controller*,
    63 F.4th 1215 (9th Cir. 2023) .........................................................................1, 2

*Bonila v. Las Vegas Cigar Co.,*
    61 F.Supp.2d 1129 (D.Nev.1999)......................................................................10

*Campbell v. City of Los Angeles,*
    903 F.3d 1090 (9th Cir. 2018) ........................................................................1, 2

*Church v. Consol. Freightways, Inc.*,
    137 F.R.D. 294 (N.D. Cal. 1991).........................................................................3

*Coates v. Farmers Grp., Inc.,*
    2015 WL 8477918 (N.D. Cal. Dec. 9, 2015).......................................................9

*Connecticut v. Teal,*
    457 U.S. 440 (1982).............................................................................................6

*Erica P. John Fund, Inc. v. Halliburton Co.*,
    563 U.S. 804 (2011) .............................................................................................1

*Escobar v. Whiteside Const. Corp.,*
    2008 WL 3915715 (N.D. Cal. 2008) ...............................................................4, 7

*Flores v. Velocity Exp., Inc.*,
    2013 WL 2468362 (N.D. Cal. June 7, 2013).......................................................3

*Griggs v. Duke Power,*
    401 U.S 424 (1971).............................................................................................6

-ii-

*Guifu Li v. A Perfect Franchise, Inc.,*
    2011 WL 4635198 (N.D. Cal. Oct. 5, 2011) ........................................................................10

*Harris v. Vector Mktg. Corp.,*
    716 F. Supp. 2d 835 (N.D. Cal. 2010) ...................................................................................7

*Heath v. Google Inc.,*
    215 F.Supp.3d 844 (N.D. Cal. 2016) .......................................................................2, 3, 7, 9

*Hoffmann v. Sbarro, Inc.,*
    982 F. Supp. 249 (S.D.N.Y. 1997) .......................................................................................11

*International Broth. of Teamsters v. U.S.,*
    431 U.S. 324 (1977) ...............................................................................................................6

*Kassman v. KPMG LLP,*
    2014 WL 3298884 (S.D.N.Y. 2014) .....................................................................................11

*Khadera v. ABM Industries Inc.,*
    C08–0417 RSM, 2011 U.S. Dist. LEXIS 152138, 2011 WL 7064235
    (W.D. Wash. Dec.1, 2011) ....................................................................................................11

*Kress v. Pricewaterhouse Coopers, LLP,*
    263 F.R.D. 623 (E.D. Cal. 2009) ....................................................................................3, 8, 9

*Labrie v. UPS Supply Chain Sols., Inc.,*
    2009 WL 723599 (N.D. Cal. Mar. 18, 2009) .......................................................................10

*Leuthold v. Destination America, Inc.,*
    224 F.R.D. 462 (N.D. Cal. 2004) .......................................................................................9, 10

*Lewis v. Wells Fargo & Co.,*
    669 F.Supp.2d 1124 (N.D. Cal. 2009) ...............................................................................8, 10

*Luque v. AT & T Corp.,*
    No. 09 Civ. 5885, 2010 WL 4807088 (N.D. Cal. Nov. 19, 2010) .....................................8, 9

*McDonnell Douglas Corp. v. Green,*
    411 U.S. 792 (1973) ...........................................................................................................6, 7

-iii-

**REPLY IN SUPPORT OF PLAINTIFF DEREK MOBLEY'S NOTICE OF MOTION AND   MOTION FOR CONDITIONAL CERTIFICATION OF COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)**

*McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*

 672 F.3d 482, 489 (7th Cir. 2012) ................................................................ 2

*Misra v. Decision One Mortg. Co.,*

 673 F.Supp.2d 987, 2008 WL 7242774 (C.D.Cal.2008)......................................11

*Northeastern Fla. Chapter, Associated Gen. Contractors,*

 508 U.S. 656 (1993)...............................................................................6

*Rees v. Souza's Milk Transp., Co.,*

 2006 WL 738987 (E.D. Cal. Mar. 22, 2006)......................................................10

*Rehwaldt v. Elec. Data Sys. Corp.,*

 1996 WL 947568 (W.D.N.Y. March 28, 1996)....................................................10

*Sanchez v. Sephora USA, Inc.,*

 2012 WL 2945753 (N.D. Cal. July 18, 2012) ................................................3, 7

*Stickle v. SCI Western Market Support Ctr., LP,*

 CV08-083-PHX-MHM, 2009 WL 3241790 (D. Ariz. 2009)............................................10

*Syed v. M-I, L.L.C.,*

 2014 WL 3778246 (E.D. Cal. 2014)...............................................................11

*Turner v. Fouche,*

 396 U.S. 346 (1970)...............................................................................6

*Tyson Foods, Inc. v. Bouaphakeo,*

 577 U.S. 442 (2016)..............................................................................1, 2

*Villa v. United Site Servs. Of California, Inc.,*

 No. 12 Civ. 318, 2012 WL 5503550 (N.D. Cal. Nov. 13, 2012)................................3, 9, 10

*Watson v. Fort Worth Bank and Trust,*

 487 U.S. 977 (1988)...............................................................................1

*Wellens v. Daiichi Sankyo Inc.,*

 2014 WL 1422979 (N.D. Cal. 2014) ...............................................................7

-iv-

**REPLY IN SUPPORT OF PLAINTIFF DEREK MOBLEY'S NOTICE OF MOTION AND   MOTION FOR CONDITIONAL CERTIFICATION OF COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)**

**PLAINTIFFS' REPLY IN SUPPORT OF PROVIDING
NOTICE OF COLLECTIVE ACTION**

Workday argues that "[p]arty plaintiffs are similarly situated when they are 'alike *in ways that matter* to the disposition of their ADEA claims'" ECF 107 at 10 (quoting *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1114 (9th Cir. 2018)) (emphasis added). The Supreme Court has similarly held that a decision on whether to allow "common" or "similarly situated" claims to proceed as a class or collective action "begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011); *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 455 (2016) (same holding in FLSA collective action).

It is axiomatic that opt-ins are "alike in ways that matter to the disposition of their ADEA claim." *Campbell*, 903 F.3d at 1114, when, as here, they have had their applications handled or processed on the basis of the same Workday recruitment and screening procedures or services. Notice is not sought for anyone else.

All such opt-in claims are necessarily based on the same three elements of a prima facie disparate impact claim that the Court has defined as the basis of the named Plaintiffs' claim: "[A] plaintiff must (1) show a significant disparate impact on a protected class or group; (2) identify the specific employment practices or selection criteria at issue; and (3) show a causal relationship between the challenged practices or criteria and the disparate impact." ECF 80 at 13 (quoting *Bolden-Hardge v. Off. of Cal. State Controller*, 63 F.4th 1215, 1227 (9th Cir. 2023)).

None of those three elements involve any individualized or subjective issues that vary from one person to another. It is axiomatic that all three of such elements are based on the same statistical evidence for the same components of Workday's recruitment and screening procedures and services. "Claims of disparate impact under Title VII must, of necessity, rely heavily on statistical proof." *Watson v. Fort Worth Bank and Trust,* 487 U.S. 977, 987 (1988). "The evidence in . . . 'disparate impact' cases usually focuses on statistical disparities, *rather than specific incidents*, and on competing explanations for those disparities." *Id.* at 987 (emphasis added).  Also, a defense to statistical evidence "is itself common to the claims made by all class members because Plaintiffs'

-1-
**REPLY IN SUPPORT OF PLAINTIFF DEREK MOBLEY'S NOTICE OF MOTION AND   MOTION FOR CONDITIONAL CERTIFICATION OF COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)**

'failure of proof on this common question' likely would have ended the litigation and thus would not have caused individual questions . . . to overwhelm questions common to the class.'" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 457 (2016) (quoting. *Amgen*, 568 U. S. at 467-470, n.5). (same). In the same way, defendant's business justification defense to  disparate impact claims is also necessarily based on objective evidence that is common to all opt-in plaintiffs.[1]

The Ninth Circuit's decision in *Campbell* also instructed that "[i]f the party plaintiffs' factual or legal similarities *are* material to the resolution of their case, dissimilarities in other respects should not defeat collective treatment." *Campbell*, 903 F.3d at 1114. "[T]he FLSA requires similarity of the kind that "allows . . . plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources." *Id.*

Workday's opposition, however, is not based on differences between plaintiff and opt-ins "that matter to the disposition of their ADEA claims." *Campbell*, 903 F.3d at 1114. Its argument has three principal flaws at odds with Circuit precedent. First, it is largely based on the limited means of inferring disparate impact that was available at the pre-discovery motion to dismiss stage of the case and ignores the post-discovery statistical analysis for *trial* of the three prima facie éléments of disparate impact set forth above. The similarly situated standard is based on what matters at trial, not at the  pre-discovery and pre-notice motion to dismiss. Second, Workday's opposition to notice depends heavily on speculative dissimilarities in overall "qualifications" that are not relevant to a disparate impact claim which is strictly limited by law to the impact of "the specific employment practices or selection criteria at issue." ECF at 13 (quoting *Bolden-Hardge*, 63 F.4th at 1227). Third, Workday's opposition is improperly based on the merits of opt-ins' "qualifications" and proof of disparate impact. *See* e.g. *Heath v. Google, Inc.*, 215 F. Supp. 3d 844, 854-855 (N.D. Cal. 2016); *Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 459-460, 466 (2013).

---

[1] "If the [challenged] policy causes racial discrimination and is not justified by business necessity, then it violates Title VII as 'disparate impact' employment discrimination — and whether it causes racial discrimination and whether it nonetheless is justified by business necessity are issues common to the entire class and therefore appropriate for class-wide determination." *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482, 489 (7th Cir. 2012).

-2-

**REPLY IN SUPPORT OF PLAINTIFF DEREK MOBLEY'S NOTICE OF MOTION AND   MOTION FOR CONDITIONAL CERTIFICATION OF COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)**

## I. The Claim's Merit And Pre-Discovery Evidence Are Not Relevant Factors For Determining Similarity.

Workday's opposition to notice is impermissibly based on "similarly situated" criteria related solely to the merits of Plaintiffs' disparate impact claim, not factors that matter to whether notice of the collective action should be provided to persons whose applications were handled or processed on the basis of Workday's recruitment and screening procedures or services. *See* e.g. *Heath v. Google, Inc.*, 215 F. Supp. 3d 844, 854-855 (N.D. Cal. 2016) (holding that "inquiries into the qualifications and situation of each member of the collective action . . . go to the merits and are better addressed at the second stage, after discovery has closed.") (citing *Sanchez*, 2012 U.S. Dist. LEXIS 99924, 2012 WL 2945753, at *4 (N.D. Cal. July 18, 2012)).

The Supreme Court has established a similar rule even for the much more difficult certification standards of Rule 23(b)(3), holding that "evaluation of the probable outcome on the merits is not properly part of the certification decision." *Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013); *id.* at 459-460 ("[T]he office of a Rule 23(b)(3) certification ruling is not to adjudicate the case; rather, it is to select the 'metho[d] 'best suited to adjudication of the controversy 'fairly and efficiently.'").[2] "Plaintiffs need not conclusively establish that collective resolution is proper, because a defendant will be free to revisit this issue at the close of discovery." *Heath*, 215 F. Supp. 3d at 851 (citing *Kress*, 263 F.R.D. at 630). And "while it may be true that the defendant's evidence will later negate Plaintiffs' claims, that should not bar conditional certification

---

[2] "The 'similarly situated' requirement is 'considerably less stringent than the requirement of Fed. R. Civ. Proc. 23(b)(3) that common questions predominate.'" *Hoffman*, 215 F. Supp. 3d at 851, n. 2 (quoting *Church v. Consol. Freightways, Inc.*, 137 F.R.D. 294, 305 (N.D. Cal. 1991); *Villa*, 2012 U.S. Dist. LEXIS 162922, 2012 WL 5503550 at *14  ("a collective action does not require a showing that common claims predominate."). Courts have consistently rejected efforts to substitute the more rigorous standards for class certification under Rule 23. *Heath,* 215 F. Supp. 3d at 852-853 (citing *Flores v. Velocity Exp., Inc.*, No. 12-cv-5790-JST, 2013 U.S. Dist. LEXIS 77821, 2013 WL 2468362, at *7 (N.D. Cal. June 7, 2013). Imposing the requirements for Rule 23 class actions "would impede ADEA plaintiffs' opportunity to proceed collectively and, therefore, is contrary to the broad remedial purposes of prohibiting arbitrary age discrimination." *Heath,* 215 F. Supp. 3d at 852-853 (quoting *Church*, 137 F.R.D. at 304, 306).

-3-

**REPLY IN SUPPORT OF PLAINTIFF DEREK MOBLEY'S NOTICE OF MOTION AND   MOTION FOR CONDITIONAL CERTIFICATION OF COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)**

at the first stage." *Id.* at 852 (cleaned up; quoting *Escobar*, 2008 U.S. Dist. LEXIS 68439, 2008 WL 3915715, at *4).

For example, Workday argues that notice should only be given to persons who can establish an "inference of discrimination" by having a "'zero percent success rate at passing Workday's initial screening" (ECF 107 at 13-14, quoting ECF 80 at 15); *id.* (arguing that otherwise "the collective would include people whose claims are not 'similar' to Plaintiff's because they did not experience a 'zero percent success rate' when applying for jobs through Workday" (ECF 107 at 13); *id.* at 14 (arguing "[i]ndividuals who actually had some success when applying for jobs through Workday are not entitled to the same 'inference of discrimination' this Court gave Plaintiff based on Plaintiff's alleged 'zero percent success rate,'" quoting ECF No. 80 at 13-16); *id.* at 13 (arguing "[t]his Court previously held that Plaintiff stated a disparate-impact claim under the ADEA because he alleged that although he applied for over 100 jobs for which he was allegedly qualified, he had a 'zero percent success rate at passing Workday's initial screening,'" quoting ECF 80 at 15); *id.* at 13-14 (arguing the Court found "Plaintiff's 'zero percent success rate' across a high number of applications . . . justified an inference of discrimination" but "the same would not be true for the members of Plaintiff's putative collective—which is comprised of individuals who are at least 40 and who were 'denied employment recommendations.'"); *id.* at 14 (arguing "the collective would include individuals who were rejected from only one job, or only a few jobs" and that "[t]hese claims would be completely different from Plaintiff's, which is premised on the allegation that he was rejected from "over 100 jobs," citing ECF 80 at 14); *id.* at 14 (arguing "[w]hether or not such individuals could survive a motion to dismiss if they brought these claims on their own, they certainly could not do so based on anything like the reasoning applied by this Court."); *id.* at 15 (arguing "three of the opt-in plaintiffs recount being interviewed or hired for jobs after applying through Workday, though they also generally allege many other rejected applications.").

Those proposed "similarly situated" criteria are limited to the substantive proof of disparate impact on the merits. The Court explicitly stated that fact when it found that "[t]he zero percent success rate at passing Workday's initial screening . . . plausibly supports an inference that

-4-

**REPLY IN SUPPORT OF PLAINTIFF DEREK MOBLEY'S NOTICE OF MOTION AND   MOTION FOR CONDITIONAL CERTIFICATION OF COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)**

Workday's algorithmic tools disproportionately reject applicants based on factors other than qualifications, such as a candidate's race, age, or disability, " and that  "[a]t this stage, these allegations are sufficient to allege a disparate impact on applicants with Mobley's protected traits." Order at 15 (ECF 80); *id.* at 4 (citing the  plausibility-on-the-merits standard of review in *Twombly*, 550 U.S. at 570). The Court also made it clear that it looked to such "zero percent success rate" not as a required element of proof, but merely as part of the limited facts available at that early, pre-discovery stage of the case. Order at 15 (ECF 80) (noting "at the pleading stage, allegations of a disparity need not be so precise" and can include "visually obvious inconsistencies between the racial composition of the defendant's employees and that of the surrounding population" and  "personal observations and experience") By no means, however, is that a basis for deciding or denying notice.

## II.    Opt-In's Qualifications Are Not A Relevant Factor For Determining Similarity Or The Merits Of Their Disparate Impact Claim.

Workday is similarly mistaken in proposing to base notice on the merits of class members' "qualifications" to ultimately be hired. ECF 107 at 14 (arguing "the notice that Plaintiff requests includes, on its face, individuals who were not qualified for the jobs to which they applied" and "were rejected for non-discriminatory reasons"); *id.* at 15 (arguing "a potential plaintiff who cannot even allege that he was qualified for the position to which he applied is not entitled to the same inference of discrimination afforded to Plaintiff's allegations"); *id.* (arguing "[i]t is difficult to imagine how a plaintiff could plausibly state a claim for disparate impact discrimination under the ADEA without alleging they applied to some high number of jobs, they were rejected from those jobs, and they were qualified for those jobs"); *id.* at 16 (arguing that "[g]iven [Plaintiff's] failure to submit a shred of evidence supporting even his own ADEA claim, there can be no question that Plaintiff has failed to show that he is similarly situated to the opt-in plaintiffs, much less all of the members of the collective he is seeking to represent."); *id.* at 17 (arguing "the opt-in plaintiffs [have] vague 'wide disparities' in their 'qualifications and/or experiences' that "must be the collective's death knell.").

Such overall "qualifications" have no relevance to notice of a collective  disparate impact claim. Such claims are based solely on "the specific employment practices or selection criteria at

-5-

**REPLY IN SUPPORT OF PLAINTIFF DEREK MOBLEY'S NOTICE OF MOTION AND   MOTION FOR CONDITIONAL CERTIFICATION OF COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)**

issue" and the "causal relationship between the challenged practices or criteria and the disparate impact." ECF 80 at 13. Disparate impact claims have no element of proof that includes the overall mix of "qualifications" typically used in a *McDonnell Douglas* disparate treatment case as the basis for establishing a prima facie inference of intentional discrimination.  *See e.g. Connecticut v. Teal,* 457 U.S. 440, 442-443, 445-446, 448-451, 453-456 (1982). The disparate impact claim against Workday only addresses the 'opportunity-to-be-considered" or "recommended" stage of the selection process, not the overall qualifications that the employer may consider in making the ultimate decision of who to hire. As held in *Connecticut v. Teal, supra,* disparate impact at that "opportunity" stage of the process violates the Act regardless of whether the plaintiff would have ultimately been hired  at the later "bottom line" stage of the selection process as a whole. *Id.* at 449-451. As the Court explained:

> The statute speaks, not in terms of jobs and promotions, but in terms of *limitations* and *classifications* that would deprive any individual of employment *opportunities*. A disparate-impact claim reflects the language of § 703(a)(2) and Congress' basic objectives in enacting that statute: "to achieve equality of employment *opportunities* and remove barriers that have operated in the past to favor an identifiable group of white employees over other employees." 401 U.S. at 429-430 (Court's emphasis) *** In considering claims of disparate impact under § 703(a)(2) this Court has consistently focused on employment and promotion requirements that create a discriminatory bar to *opportunities*. *** The suggestion that disparate impact should be measured only at the bottom line ignores the fact that Title VII guarantees these individual respondents the *opportunity* to compete equally with white workers on the basis of job-related criteria.  Title VII strives to achieve equality of opportunity by rooting out "artificial, arbitrary, and unnecessary" employer-created barriers to professional development that have a discriminatory impact upon individuals. *** In sum, respondents' claim of disparate impact from the examination, a pass-fail barrier to employment opportunity, states a prima facie case of employment discrimination under § 703(a)(2), despite their employer's nondiscriminatory "bottom line," and that "bottom line" is no defense to this prima facie case under § 703(h).

*Connecticut v. Teal,* 457 U.S. at 449-451 (quoting *Teamsters,* 431 U.S. at 342 and *Griggs,* 401 U.S. at 431). [3]

---

[3] *See also, Northeastern Fla. Chapter, Associated Gen. Contractors,* 508 U.S. 656, 666-667 (1993) ("The 'injury in fact' . . .  is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit."); *Turner v. Fouche,* 396 U.S. 346, 362

(Continued...)

**REPLY IN SUPPORT OF PLAINTIFF DEREK MOBLEY'S NOTICE OF MOTION AND   MOTION FOR CONDITIONAL CERTIFICATION OF COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)**

Accordingly, the type of overall qualifications argued by Workday are not a relevant basis for determining which potential opt-ins are "similarly situated" to the named Plaintiff or other Opt-ins. Those qualifications are only relevant to disparate treatment claims that are not part of this case. Even it that were not the case, individual qualifications are not a proper "similarly situated" criterion for deciding the mere issue of notice. *Heath*, 215 F. Supp. 3d at 854-855 (holding that "inquiries into the qualifications and situation of each member of the collective action . . . go to the merits and are better addressed at the second stage").

**III.    Workday's Self-Serving Declaration Is No Reason For This Court To Deny Conditional Certification.**

The "fact that a defendant submits competing declarations will not as a general rule preclude conditional certification." *See Harris v. Vector Mktg. Corp.,* 716 F.Supp.2d 835, 838 (N.D.Cal. 2010) (citation omitted). Judge Alsup of this District noted, competing declarations simply create a "he–said–she–said situation"; stating that while "[i]t may be true that the [defendant's] evidence will later negate [the plaintiff's] claims, that should not bar conditional certification at the first stage." *Heath v. Google Inc.,* 215 F.Supp.3d 844, 852 (N.D. Cal. 2016) (quoting *Escobar v. Whiteside Const. Corp.,* 2008 WL 3915715, at *4 (N.D.Cal. 2008)).  Moreover, given the relatively low threshold at the early or notice stage, courts in this district have also "declined to consider evidence offered by defendants in opposition to a plaintiff's motion for conditional class certification." *gr v. Daiichi Sankyo Inc.,* 2014 WL 1422979, at *2 (N.D.Cal. 2014); (citing *Sanchez v. Sephora USA, Inc.,* 2012 WL 2945753, at *4 (N.D.Cal. July 18, 2012) ("[F]ederal courts are in agreement that evidence from the employer is not germane at the first stage of the certification process, which is focused simply on whether notice should be disseminated to potential claimants."); *Harris,* 716 F.Supp.2d at 838 ("A plaintiff need not submit a large number of declarations or affidavits to make the requisite factual showing. A handful of declarations may suffice.... The fact that a defendant submits competing declarations

---

(1970) ("We may assume that the plaintiffs have no right to be appointed to the . . . board of education. But they do have a . . right to be *considered* for public service without the burden of invidiously discriminatory disqualifications") (cleaned up; emphasis added).

-7-

**REPLY IN SUPPORT OF PLAINTIFF DEREK MOBLEY'S NOTICE OF MOTION AND   MOTION FOR CONDITIONAL CERTIFICATION OF COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)**

will not as a general rule preclude conditional certification."); *Luque v. AT & T Corp.,* 2010 WL 4807088, at *5 (N.D.Cal. Nov. 19, 2010) (disregarding thirty declarations submitted by defendants in opposition to motion for conditional certification [,] stressing that "[c]ourts need not even consider evidence provided by defendants at this [notice] stage[ ]"); Accord *Kress v. PricewaterhouseCoopers, LLP,* 263 F.R.D. 623, 628 (E.D.Cal.2009) ("In determining whether plaintiffs have met this standard, courts need not consider evidence provided by defendants."); *Lewis v. Wells Fargo & Co.,* 669 F.Supp.2d 1124, 1128 (N.D. Cal. 2009)(where plaintiffs met their burden at the notice stage, the Court did not consider Defendant's fifty-four declarations).   Thus, the declaration of Jamie Moore, a Workday Senior Director, should not factor into this Court's determination of whether Mobley has provided enough evidence to justify the dissemination of notice to potential claimants.

If this Court were to consider Moore's declaration, which it should not, it and the declarations filed by the opt-in plaintiffs buttresses Workday's deep involvement in their customers' applicant screening process.  Moore notes that Workday is utilized by over 50% of the Fortune 500, details that each customer receives the identical Workday product, and explains that the customers decide how to use the AI, if at all.  Moore also acknowledges that Workday Recruiting contains AI but that the company itself is unsure (with limited or no visibility) in how the customers use the product. Although Workday states that it has *no data* concerning their customers' hiring information, Moore is somehow able to testify that 4775 Workday customers utilized Workday Recruiting as of January 2025 and between 2020 and 2024 their customers received over 1.1 billion applications which resulted in 113 million job offers.

Moore's testimony, the testimony of the opt-in plaintiffs along with the pleadings establishes consistent with the challenged practice that all applicants required to apply through Workday to access employment opportunities are exposed to the same software.  Mobley is challenging Workday's deployment of their AI (with limited or no visibility) in the recruiting and hiring process, not their customers conduct.

**REPLY IN SUPPORT OF PLAINTIFF DEREK MOBLEY'S NOTICE OF MOTION AND   MOTION FOR CONDITIONAL CERTIFICATION OF COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)**

If there are no users of Workday's AI  (despite the representations in Workday's Marketing Materials and other filings) in the application process the defendant can raise this defense at decertification. Such an argument is improper here as the plaintiffs need not conclusively establish that collective resolution is proper, because a defendant will be free to revisit that issue at the close of discovery. *Kress,* 263 F.R.D. at 630." *Heath,* at 844.

## IV.    Workday Has Offered No Reason For This Court To Abandon Stage One Of The Conditional Certification Analysis.

Workday concedes, as it must, that the prevailing approach in determining whether collective action members are "similarly situated," is the "**two-step** approach involving initial notice to prospective plaintiffs, followed by a final evaluation whether such plaintiffs are similarly situated." See, Doc.#107 fn. 2; *Leuthold v. Destination America, Inc.,* 224 F.R.D. 462, 467 (N.D. Cal. 2004). It then, wrongly, asks this Court to reverse the order and apply a heightened standard at the initial stage because a modicum of discovery has been conducted.  This approach has been overwhelmingly rejected by this court and others within the Ninth Circuit as they have refused "to depart from the notice stage analysis prior to the close of discovery."  See, *Luque v. AT&T Corp.,* 2010 WL 4807088, at *3 (N.D. Cal. Nov. 19, 2010) (parties engaged in extensive discovery but discovery had not been completed); *La v. PricewaterhouseCoopers, LLP,* 263 F.R.D. 623, 629 (E.D. Cal. 2009) (refused to depart from the notice stage analysis prior to the close of discovery even where defendants had produced 75,000 pages of documents from related action which had closed discovery, produced an additional 13,000 pages of documents, and conducted depositions of several plaintiffs and declarants);  *Coates v. Farmers Grp., Inc.,* 2015 WL 8477918 (N.D. Cal. Dec. 9, 2015) (refusing to apply heightened standard to conditional certification inquiry where defendants deposed three opt-in plaintiffs and produced documents relevant to class certification); *Benedict v. Hewlett-Packard Co.,* 2014 WL 587135 (N.D. Cal. Feb. 13, 2014) (refusing to apply heightened standard where defendants produced 50,000 documents, provided witnesses, deposed named plaintiffs, and plaintiffs sent a notification letter to putative class because discovery was "not yet complete."); *Villa v. United Site Servs. of Cal., Inc.,* 2012 WL 5503550 (N.D. Cal. Nov. 13, 2012) (refusing to apply heightened

**REPLY IN SUPPORT OF PLAINTIFF DEREK MOBLEY'S NOTICE OF MOTION AND   MOTION FOR CONDITIONAL CERTIFICATION OF COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)**

standard where discovery was "ongoing" and fact discovery had not yet closed); *Guifu Li v. A Perfect Franchise, Inc.,* 2011 WL 4635198 (N.D. Cal. Oct. 5, 2011) (parties engaged in "significant discovery" and were approaching discovery deadlines); *Lewis v. Wells Fargo & Co.,* 669 F. Supp. 2d 1124 (N.D. Cal. 2009) ("volumes of paper ha[d] been produced and several witnesses deposed"); *Labrie v. UPS Supply Chain Sols., Inc.,* 2009 WL 723599 (N.D. Cal. Mar. 18, 2009) ("discovery has not yet been completed" and case not "ready for trial"); *Rees v. Souza's Milk Transp., Co.,* 2006 WL 738987 (E.D. Cal. Mar. 22, 2006) (court ordered preliminary scheduling order and limited discovery to class certification but "discovery on the merits" was not complete); *Leuthold v. Destination Am, Inc.,* 224 F.R.D. 462, 467–68 (N.D. Cal. 2004) (second tier analysis applies once discovery is complete and the case is ready to be tried).  Here, the record for this Court to consider only consists of declarations from four opt-in plaintiffs, a declaration from a Workday official, and excerpts from the four opt-in plaintiffs' depositions.  Put simply, this record does not support the application of second stage analysis.  This is why conditional certification is appropriate here, and why Workday may, at the close of discovery, seek decertification.

**V.      Any Dissimilarities In The Collective Members Are Minor And Do Not Defeat Conditional Certification.**

For the notification stage of the litigation, plaintiffs' allegations need neither be "strong [n]or conclusive." *Rehwaldt v. Elec. Data Sys. Corp.,* 1996 WL 947568, at *4 (W.D.N.Y. March 28, 1996). The evidence must only show that there is some "factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged policy or practice." *Bonila v. Las Vegas Cigar Co.,* 61 F.Supp.2d 1129, 1138 n. 6 (D.Nev.1999).  In determining whether a plaintiff has made a showing that he is similarly situated with putative class members, courts need not decide disputed factual issues.  *Villa v. United Site Services of California, Inc.,* 2012 WL 5503550 (N.D.Cal. 2012) (consideration of differences in "employment settings and factual background" among collective members is "properly reserved for after the completion of discovery"); *Stickle v. SCI Western Market Support Ctr., LP*, CV08-083-PHX-MHM, 2009 WL 3241790 at 2 (D. Ariz. 2009).  They need only decide whether plaintiff has made a "modest factual showing" that

-10-
**REPLY IN SUPPORT OF PLAINTIFF DEREK MOBLEY'S NOTICE OF MOTION AND   MOTION FOR CONDITIONAL CERTIFICATION OF COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)**

prospective class members share "similar factual and legal characteristics." *See, e.g., Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997). Here, there are no significant differences between Mobley and the opt-in plaintiffs as they all are challenging the same unlawful employment practice, discriminatory algorithmic decision-making in all its manifestations. *Kassman v. KPMG LLP,* 2014 WL 3298884, at *7 (S.D.N.Y. 2014). Exactly how Workday's product(s) operates is for discovery to suss out. For purposes of conditional certification, the plaintiff need only show that class members' positions are similar, not "identical," to the positions held by other members. See *Misra v. Decision One Mortg. Co.,* 673 F.Supp.2d 987, 2008 WL 7242774, at *7 (C.D.Cal.2008). Therefore, small dissimilarities in the precise details of Mobley's and the opt-ins application experiences do not negate the fact they all submitted hundreds of applications via Workday branded application platforms, received hundreds of automatic declinations via email from those same Workday branded application platforms, and were unsuccessful in obtaining employment. *Syed v. M-I, L.L.C.,* 2014 WL 3778246, at * 10 (E.D. Cal. 2014) (citing *Khadera v. ABM Industries Inc.,* C08–0417 RSM, 2011 U.S. Dist. LEXIS 152138, 2011 WL 7064235, at *3 (W.D.Wash. Dec.1, 2011) ("If one zooms in close enough on anything, differences will abound[.]"). The plaintiffs' relative qualifications are not at issue; rather, whether they were subjected to the same alleged discriminatory practice.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for 216(b) certification should be granted.

Respectfully submitted,

/s/Roderick T. Cooks
Roderick T. Cooks *(admitted pro hac vice)*
Lee Winston *(admitted pro hac vice)*
Robert L. Wiggins, Jr. *(admitted pro hac vice)*
Attorney for the Plaintiff and the Proposed
Classes and the Collective

-11-

**OF COUNSEL:**
Lee D. Winston
lwinston@winstoncooks.com
State of Alabama Bar No.:6407O72L
Roderick T. Cooks
rcooks@winstoncooks.com
State of Alabama Bar No.:5819O78R
Winston Cooks, LLC
420 20th Street North
Suite#2200
Birmingham, AL 35203
Telephone:    (205) 482-5174
Facsimile:    (205) 278-5876

Robert L. Wiggins, Jr.
rwiggins@wigginschilds.com
Wiggins Childs Pantazis Fisher Goldfarb, LLC
The Kress Building,
301 19th Street North
Birmingham, AL 35203
Telephone:    (205) 314-0500
Facsimile:    (205) 254-1500

**LOCAL COUNSEL:**
Jay Greene
Greene Estate, Probate, and Elder Law Firm
447 Sutter Street, Suite 435
San Francisco, CA 94108
Phone 415-905-0215
greeneattorney@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on **March 27th, 2025**, I electronically filed the foregoing document with the United States District Court for the Northern District of California by using the Court's CM/ECF system. I certify that the following parties or their counsel of record are registered as ECF Filers and that they will be served by the CM/ECF system:

Erin M. Connell                 econnell@orrick.com

Julie Ann Totten                jtotten@orrick.com

Kayla Delgado Grundy            kgrundy@orrick.com, kdelgado@orrick.com

*/s/Roderick T. Cooks*
Roderick T. Cooks

-12-

**REPLY IN SUPPORT OF PLAINTIFF DEREK MOBLEY'S NOTICE OF MOTION AND   MOTION FOR CONDITIONAL CERTIFICATION OF COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)**