Lee D. Winston (ASB: 6407O72L)
*Admitted pro hac vice*
lwinston@winstoncooks.com
Roderick T. Cooks (ASB: 5819O78R)
*Admitted Pro Hac Vice*
rcooks@winstoncooks.com
Winston Cooks, LLC
420 20th Street North, Suite 2200
Birmingham, AL 35203

Robert L. Wiggins, Jr. (ASB: 1754G63R)
*Admitted Pro Hac Vice*
rwiggins@wigginschilds.com
Ann K. Wiggins (ASB: 7006i61a)
*Admitted Pro Hac Vice*
awiggins@wigginschilds.com
Jennifer Wiggins Smith (ASB:9622E53S)
*Admitted Pro Hac Vice*
jsmith@wigginschilds.com
Wiggins Childs Pantazis Fisher and Goldfarb
301 North 19th Street
Birmingham, AL 35203

Jay Greene, JD, CPA
greenattorney@gmail.com
Greene Estate, Probate, and Elder Law Firm
447 Sutter Street, Suite 435
San Francisco, CA 94108

Attorneys for the Plaintiff and the Proposed Classes and Collective

Julie A. Totten (State Bar No. 166470)
Jatotten@Orrick.Com
Erin M. Connell (State Bar No. 223355)
Econnell@Orrick.Com
Kayla D. Grundy (State Bar No. 300513)
Kgrundy@Orrick.Com
Alexandria R. Elliott (State Bar No. 320293)
Aelliottt@Orrick.Com
Orrick, Herrington & Sutcliffe LLP
The Orrick Building, 405 Howard Street
San Francisco, CA 94105-2669
Attorneys for Defendant, Workday, Inc.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DEREK L. MOBLEY, for and on behalf of himself and other persons similarly situated, | ) ) ) | Case No. 3:23-cv-00770-RFL |
| Plaintiffs, | ) ) | **PARTIES' JOINT LETTER REGARDING DISCOVERY** |
| v. | ) ) | **DISPUTE** |
| | ) ) | Courtroom:    15, 18th Floor |
| WORKDAY, INC. | ) | Judge:          Hon. Rita F. Lin |
| Defendant. | ) | Complaint Filed: February 21, 2023 |

**PARTIES' JOINT LETTER REGARDING DISCOVERY DISPUTE**

**PARTIES' JOINT LETTER REGARDING DISCOVERY DISPUTE**
*Mobley, et al. v. Workday, Inc.* Civil Action No. 3:23-cv-00770-RFL

Dear Judge Lin:

This joint letter comes pursuant to the Court's Standing Order on discovery disputes.

<u>**Plaintiff's Position:**</u>

As required, the Parties have set forth their respective positions regarding Workday's objections to producing documents and data requested to calculate the disparate impact of the screening and scoring procedures at issue in this case and how such procedures have been developed and used. Before sending this letter, the Parties repeatedly met, conferred and exchanged substantive letters and emails about their disagreements for more than three weeks. Despite such efforts, production of the requested documents and information still remains at a standstill and jeopardizes the ability to complete preparation of the Rule 23 class certification motion and evidence that is due to be filed only four months from now on September 12, 2025. *See* Doc. 93.

I. **Requests For Data Necessary To Establish Disparate Impact And Causation**

Request #3 ("RFP") seeks production of Workday's "[g]roup membership data for the evaluation data . . . that was used to evaluate bias and demographic disparities for the model(s) in question." Such data is needed to calculate statistical disparate impact and causation. Workday objects on the ground that "[e]valuation data is not customer applicant data," (Wd. Ltr. at 2), but that switch in terms is a red herring. The Request never mentions or limits itself to "customer applicant data," It seeks ***all*** "evaluation data . . . that was used **to evaluate bias and demographic disparities** for the model(s) in question," including Workday's own data, such as the "aggregated and statistical data" that Workday owns independently. Hearing Tr. at 53 (April 29, 2025) (quoting Workday's Master Subscription Agreement" with Customers which provides that "Workday owns the aggregated and statistical data derived from the operation of the Service, including, without limitation, the . . . types of transactions, configurations, and reports processed in the Service and the performance results for the Service."); *see also,* p. 3 *infra.* The "evaluation data . . . used to evaluate bias and demographic disparities" requested in RFP 3 is part of the "Bias Evaluation" defined in that section of Workday's "AI Fact Sheet" which states that such "Bias Evaluation "include[es] . . . statistical testing to detect. . . impermissible bias." Workday_Mob 00002744-00002745 (Exhibit #1 to Trindel Deposition). It also states that "Workday performed statistical testing for impermissible bias with respect to candidate gender, race, and disability." *Id.* Workday's only other ground for objection to RFP 3 involves a similar switch in terms in stating "there is no evaluation data for Candidate Skills Match because it is an algorithm." That representation is refuted in the same "Bias Evaluation" section of Workday's "AI Fact Sheet" which states that "Workday performed statistical testing in accordance with established legal standards in order to identify . . . impermissible bias in Candidate Skills Match." Workday_Mob 00002744-00002745. The same flaws apply to Workday's objections to production of the data requested in RFP 5 (c, f, h, k-m) and RFP 6 (c, e, l, m, n o, p). Such Requests are itemized and quoted in the attached list of disputed objections in Attachment A. Workday's Privilege Log does not include any privilege contention regarding those Requests.

**RFP #9:** "Workday's internal data regarding the impact of AI or ML deployed on applicants of color, and if available, on age, and/or applicants with disabilities." Contrary to

1

Workday's objection, such physical facts and "internal data" are not protected by the attorney-client, work-product or "common interest" privilege. "[T]he protection of the [attorney-client] privilege extends only to communications and not to facts." *Upjohn Co. v. United States*, 449 U.S. 383, 395-396 (1981). "The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney." *Id.*

     Race, age, disability, and employment policies and practices are physical facts that exist independently from any attorney-client communication or "work product" about such facts. The *underlying* data and facts relevant to calculating the disparate impact of Workday's services are also physical facts that exist independently from any attorney-client communication or "work product" about such impact. The mere fact that an attorney may have been involved in Workday's own calculations regarding whether such impact exists or occurred is entirely separate from the impact itself which exists in the real world independently from anything Workday or its attorneys may have done.

     Workday's other objection to this Request is based on the same alleged lack of control or access to customer or "applicant data" shown not to be true in answer to RFP # 1 and # 17 *infra.*

**RFP #14: "**Produce any audit documents performed by an independent auditor for bias regarding Workday's AI and/or ML."

**RFP #15: "**Produce any audit documents performed internally for bias regarding Workday's AI and/or ML."

  Workday objects to both such Requests by arguing it "has engaged in no such audits of Candidate Skills Match." Wd. Ltr. at 2-3. That was shown to be untrue at p. 1 above. "Bias Evaluation" and "Bias Audit" are synonyms. Workday's website posts the fact that "Workday commissioned an external auditor to conduct testing . . . for its 'bias audits,'" and that this audit was based on "a random sample of 10 Global Large Customers data over the last 12 months . . . between Sep 2023 to Sep 2024." **h**ttps://www.workday.com/en-us/legal/responsible-ai-and-bias-mitigation.html**.** It does not say that Workday's "HiredScore" subsidiary commissioned that third-party auditor. Workday's underlying data is attached as a public link to that website page. It also conducted a similar bias audit in July 2023, as shown in Workday_Mob-00003871-3872 and 00002745; *Ward's Cove Packing v. Atonio,* 490 U.S. 642, 657-658 (1989); *see also Hearing* Tr. at 13:18, 19:13-20:16, 21:2-23:4 (Workday arguing that disparate impact evidence is necessary).

  Workday's Privilege Log does not include any privilege regarding RFP 14. The privilege Log lists for RFP 15 is invalid for the same reasons as stated in regard to RFP 9.

   **RFP #17: "**All applicant flow data for Hewlett Packard Enterprise, Service Solutions, Equifax, Equifax, Expedia, Fiserv, NCR Corporation, Duke Energy, Unum, Quicken Loans, Sedgwick, Comcast and Resmedvia." Workday objects that such data is not within its control or access and is "*equally available* to Plaintiff via third-party discovery." Obj. to Req. 5 (emphasis added); *id.* at ## 6-8, 11, 14, 16-17, 19, 25 (same objection). The Customers say the opposite in their subpoena objections — that such records and data are not in their possession or control, but are instead "in the possession, custody or control of **a party to the litigation.**" Kite Pharma, Inc's General Obj. at 3, ¶10 (emphasis added); *see also id.* at Obj. ##1-9, 11-20. That "party to the litigation" is necessarily Workday. The Customers' objection that their data should be obtained from Workday is consent to such production and a waiver of any objection to such production.

   Workday's Customers also explicitly gave their consent to Workday producing such data in §4.1 of their Master Subscription Agreement by agreeing that "each party may disclose to the other party Confidential Information" and that such information may be shared with third parties when "the Receiving Party is ordered to produce Confidential Information of the Disclosing Party by

any court of competent jurisdiction . . . [or] to the extent otherwise required by Law." *Id. at* §4.1. Workday concedes that "Workday's customer data is stored on Workday's servers [and is] referred to internally as customer tenants." Letter, p. 3 (May 2, 2025). Workday's "AI Fact Sheet" states that such Customer data includes "Candidate Name or ID, Skills Match Score, Skills Match Score Details, Skills Matched, Gender, Race, Stage."Workday_Mob 00002744 (Trindel Depo. Exhibit #1). The Customers' consent and waiver to production of such data is also repeated in the next section (§4.2) entitled "Compelled Disclosure," stating "[a] disclosure by one party of Confidential Information of the other party to the extent required by Law shall not be considered a breach of this Agreement . . . ." *Id.* at §4.2.

Moreover, §3.6 expressly states that Workday "**owns** the **aggregated and statistical data** derived from the operation of the Service, including, without limitation, the . . . reports processed in the Service and the performance results for the Service." The term "Service" is defined as Workday's "software-as-a-service applications." *Id.* at §11. Section 3.1 specifically states that "Workday and its licensors *own* all right, title and interest in and to the Service, Documentation, and other Workday Intellectual Property Rights." (emphasis added). Workday's Privilege Log does not include any privilege contention regarding RFP 17.

## II. Requests Related To How Workday's Services Are Used And Developed

Plaintiffs also seek production of the documents requested in RFP 1, 4-8, 10-13, 16 and 19-25 set forth verbatim in Attachment A. Those Requests primarily address how Workday's screening and scoring procedures have been developed and used. Hearing Tr. at 20 (discussing need for such information). Workday's objections to such Requests are flawed for the reasons given at pp. 1-3 above. The parties unsuccessfully met and conferred about such objections.

**Workday's Position:**

Plaintiff seeks an order compelling Workday to produce unidentified documents in response to sweeping discovery requests untethered to Plaintiff's stated purpose of "calculat[ing] the disparate impact of the screening and scoring procedures at issue." Plaintiff's submission ignores the parties' meet and confer conversations, injects new issues never raised with Workday, and asserts arguments Plaintiff knows to be unfounded. Plaintiff's request should be denied.

**RFP 3**: RFP 3 is part of a series of requests related to "evaluation data," which is a term of art among developers in the machine learning space and is not defined in Plaintiff's Requests. In its response, Workday construed "evaluation data" consistent with its industry meaning as a data set used to determine whether the predicted results of a model are accurate, and accurately responded that no such data exists for CSM. *See* Workday's Response to RFP 1. Plaintiff has no basis to contend otherwise. Rather than engage with Workday's response, Plaintiff takes out of context Workday's meet and confer letter addressing the inconsistency between the matters Plaintiff purported to meet and confer on (applicant data) and the RFPs he identified supporting such requests (like RFP 3, seeking evaluation data). Regardless, Plaintiff asserts now, for the first time, that "evaluation data" has some broader meaning but this position is unsupported in Plaintiff's requests, correspondence to date, or the facts of this case. Nevertheless, even were the Court to construe "evaluation data" as including data underlying Workday's privileged analyses, that data is not discoverable as further described below. *See infra* Response to RFPs 9, 14, 15.

**RFPs 9, 14, and 15**: Plaintiff attacks Workday's privilege assertion in response to RFPs 9, 14, and 15. Plaintiff entirely ignores important distinctions to accuse Workday of some wrongdoing. In particular, Workday has never denied that it conducted privileged audits of CSM. Rather, Workday asserts that it has not engaged in any audits by an *independent auditor*. Further, Workday has explained that the audit Plaintiff references from Workday's website was done by HiredScore—a company Workday acquired in 2024. HiredScore conducted that audit and posted the results as an independent company. Yet Plaintiff continues to point to this audit (about a separate product) as an alleged admission about CSM.

As for Workday's privileged audits of CSM, Workday has consistently asserted attorney-client and work product privilege over these audits, which were conducted at the direction of counsel. While Plaintiff claims underlying data is not privileged, he ignores that Workday's counsel curated the data—making that selection of data attorney work product. *See, e.g.*, *Suboh v. Bellsouth Bus. Sys. Inc.*, No. 03-cv-996, 2004 WL 5550100, at *9 (N.D. Ga. Nov. 17, 2004) (the specific information an attorney asked to be compiled for a report is privileged). As Workday has explained, it does not possess its customers' applicant data. Rather, consistent with the permission granted to Workday by certain customers, Workday's counsel advised which data fields to include in its analysis and Workday pulled that data—Workday does not have access to applicant data *writ large*. Furthermore, Workday no longer has access to even the limited, attorney work product dataset. More fundamentally, Plaintiff does not need to invade the privilege to conduct his own disparate impact analysis for this case. Plaintiff has no disparate treatment claim that would make Workday's knowledge of any alleged disparities relevant. The information responsive to RFPs 9, 14, and 15 as articulated is privileged, and Workday should not be compelled to produce it when non-privileged data is available should Plaintiff request it from the appropriate customers, applicant data sets are available for purchase from various sources, or Plaintiff could choose to use the forthcoming training data set for this purpose.

**RFP 17**: RFP 17, which seeks applicant flow data for only 12 entities, is the only request at issue that bears on Plaintiff's request for data sufficient to conduct a disparate impact analysis, and it is far narrower than Plaintiff's current request for **all** of Workday's customer data. In any event, Plaintiff's request is misleading and misguided.

First, Plaintiff's argument that Workday's customers have consented to Workday's production of their data misrepresents Workday's contracts and Workday's customers' responses to Plaintiff's subpoenas. Workday's contracts with its customers are very clear that—like **any** cloud services provider which hosts data belonging to someone else—Workday does not own the customer data on its platform and has no legal right access it, except to provide the contracted services. *See*, e.g., MSA Sections 1.1, 3.4, 4.1 (stating data is owned by the customer and must be kept confidential).

While Plaintiff points the Court to section 4.1 of one example of a contract with a Workday customer, he misleadingly truncates the relevant clause. It says: "Each party shall disclose Confidential Information of the other party only as follows: . . . (iv) to the extent the Receiving Party is ordered to produce Confidential Information of the Disclosing Party by any court of competent jurisdiction . . . but only if the party (a) gives prompt notice, if legally permissible, of

the demand to the other party, including the contents of such demand, (b) reasonably cooperates in any such effort by the Disclosing Party, at the expense of the Disclosing Party, if the Disclosing Party wishes to contest the disclosure, and (c) in any event, only discloses Confidential Information to the extent necessary to protect or enforce its legal rights or to defend itself or to comply with the Legal Demand." To construe such a provision as *"consent and waiver"* is preposterous. Such a provision is not sufficient to give Workday possession, custody, or control over its customer's data and any conclusion otherwise would have far-reaching implications for every technology company, social media platform, and cloud services provider in the country. Equally absurd is Plaintiff's claim that Workday's customers have directed Plaintiff to Workday to obtain their own applicant data based on a boilerplate general objection that unspecified information requested in the subpoena may be obtained through less burdensome means. Nowhere in Kite Pharma's response (or any other customer's response Workday is aware of) does it state that Workday is in possession, custody, or control of its data, much less authorize Workday to produce it.

Second, distinct from any contractual provisions between Workday and its customers, given Workday's role as a data processor, provision of the customer data Plaintiff seeks may violate privacy laws, including but not limited to the Stored Communications Act, 18 U.S.C. §§2701 *et seq.* The parties should be permitted to fully brief this question before Workday is potentially compelled to violate state or federal law.

Third, and again as Workday has advised Plaintiff, the "aggregated and statistical data" referenced in some of Workday's contracts is not applicant data that could be used to perform a disparate impact analysis. Nor do Workday's contracts suggest that "aggregated and statistical data" includes applicant flow data. Rather, this data is "observability data" (also commonly referred to as system usage or telemetry data), which provides summary level insights into actions taken by customers within their Workday application. This consists of information like date, server role, task process ID, and runtime, that can be used to detect customer issues and understand product usage. While through this data Workday can identify the number of times CSM scored an application, it cannot identify the applicant, the job, or what score the applicant received. In other words, the "aggregated and statistical data" could not be used to perform a disparate impact analysis of job applicants.

**<u>RFP 1, 4-8, 10-13, 16, 19-25</u>**: Finally, the throwaway request that the Court compel Workday to produce any additional documents (in response to 18 separate requests) is premature and inappropriate. Plaintiff has never sought to meet and confer at all about any documents other than "data necessary to perform a disparate impact analysis." Plaintiff's submission also fails to address Workday's substantive responses to those Requests.

In conclusion, the Court should deny all of Plaintiff's requests outright. However, to the extent the Court is inclined to order relief, it should do so only for those matters on which Plaintiff has met and conferred in good faith and after full briefing on the issues.

Dated: May 8, 2025                    WIGGINS CHILDS PANTAZIS GOLDFARB


By: _____ */s/ Robert L. Wiggins* _____
ROBERT L. WIGGINS, JR.
ANN K. WIGGINS
JENNIFER WIGGINS SMITH

WINSTON COOKS LLC
LEE D. WINSTON
RODERICK T. COOKS

Attorneys for Plaintiff
DEREK MOBLEY

*ADMITTED PRO HAC VICE*


Dated: May 8, 2025                    ORRICK, HERRINGTON & SUTCLIFFE LLP


By: _____ */s/ Kayla D. Grundy* _____
JULIE A. TOTTEN
ERIN M. CONNELL
KAYLA D. GRUNDY
ALEXANDRIA R. ELLIOTT
Attorneys for Defendant
WORKDAY, INC.

**ATTACHMENT A**

***PRODUCTION REQUESTS PLAINTIFFS SEEK TO COMPEL***

**I.** *Requests Primarily Related To Statistical Disparate Impact And Causation*

**RFP #3** Group membership data for the evaluation data (i.e., knowledge of which demographic group(s) each example in the evaluation data belongs to) that was used to evaluate bias and demographic disparities for the model(s) in question.

**RFP #5** All Documents, Communications, and Information identifying each Algorithmic Tool utilized by Workday customers in connection with review of applicants for employment, including but not limited to all Documents, Communications, and Information concerning:

\***

     c.     All summary statistics considered, generated, and reviewed in connection with the development, use, . . . and/or adjustment of each Algorithmic Tool.

     f.     Each algorithmic or machine learning method, model, approach, and/or paradigm used in connection with each Algorithmic Tool.

     h.     Any tests, validations, and/or assessments conducted in connection with the development, use, . . . and/or adjustment of each Algorithmic Tool (including but not limited to bias testing or auditing), including the sources and content of any data used . ..and the results of the assessment, validation, or testing.

     k.     How Workday uses each Algorithmic Tool in connection with the applicant screening process.

     l.     Whether and how each Algorithmic Tool interacts with any other Algorithmic Tool(s).

     m.     Any category or type of decision in connection with the employment screening process that Workday's AI made in full or partial reliance on any Algorithmic Tool, including the Algorithmic Tool involved with each such decision and the extent to which the Tool influenced the decision.

**RFP # 6** All documents containing a technical description and software code of the model training, including: * * *

     c.     An explanation of, and the code used to perform, any bias measurements and mitigation techniques used in training, tuning, or adjusting the model

     e.     Metadata for the dataset

     g.     Any code used to calculate, extract, or encode the features and labels.

     l.     Description and code used for bias evaluation of the model including explanation of what subgroups (e.g. demographic attributes, population definitions) were measured during the bias evaluation

     m.     Explanation of how subgroup membership was determined, and coverage of subgroup membership data (e.g., direct survey, human labelers, 1st or 3rd party inference, etc.)

     n.     Definitions of which bias metrics were used

     o.     Code used to mitigate bias in the model

     p.     From January 1, 2018 to present, logs of all changes to the software code utilized by Workday customers to screen applicants.

**RFP #9** Workday's internal data regarding the impact of AI or ML deployed on applicants of color, and if available, on age, and/or applicants with disabilities.

**RFP #11** Produce a list of all inputs into any software code designed for the recruitment, evaluation, analysis and/or recommendation of applicants to Workday customers.

**RFP # 12** Produce a list of all inputs removed from the software code and the reason for removals.

**RFP #13** Produce log of all software changes to AI/ML designed for the recruitment, evaluation, analysis and/or recommendation of applicants.

**RFP #14** Produce any audit documents performed by an independent auditor for bias regarding Workday's AI and/or ML.

**RFP #15** Produce any audit documents performed internally for bias regarding Workday's AI and/or ML.

**RFP #16** All documents reflecting compliance or compatibility with civil rights laws from the date of the initiation of the creation of Workday's AI/ML that is offered to customers to assist in the hiring of applicants.

**RFP #17** All applicant flow data for Hewlett Packard Enterprise, Service Solutions, Equifax, Equifax, Expedia, Fiserv, NCR Corporation, Duke Energy, Unum, Quicken Loans, Sedgwick, Comcast and Resmedvia.

**RFP #20** All document[s] reflecting the inputs, the relative importance placed on those inputs, and, if applicable, other parameters for the models in order to improve the accuracy of the prediction or classification of Workday AI in the evaluation of employment applicants for Workday customers.

**RFP #21** All chat messages (e.g. Slack, Microsoft Team, etc., email, text message), discussing discrimination identified in the software code.

**RFP #23** All Documents, Communications, and Information concerning each algorithmic tool(s) that Workday provides to customers and/or uses on their behalf to sort, screen, . . . or categorize applicants in any manner that affects or influences how employment applications for Workday customers . . .

**RFP # 24** All notices received via letter, email, social media (X), Linked-In messages or any other manner from applicants who contend that the Workday or a Workday customer discriminated against them through the use of Workday's AI.

## II. *Requests Primarily Related To The Use And Development of Workday's Procedures*

**RFP #1** For Workday's Algorithmic tools utilized in applicant screening process, a representative sample of evaluation data (both features and ground-truth labels)

**RFP #4** Predictions (model outputs) for each example in the evaluation data.

**RFP #5** All Documents, Communications, and Information identifying each Algorithmic Tool utilized by Workday customers in connection with review of applicants for employment, including but not limited to all Documents, Communications, and Information concerning:

    a.    The source, content, quantity, quality, and/or validity of all data on which each Algorithmic Tool was trained.

    b.    Any efforts to review, analyze, audit, assess, clean, correct, and/or supplement any data on which each Algorithmic Tool was trained.

    d.    All inputs, fields, features, parameters, variables, modes, and/or specifications used in connection with each Algorithmic Tool, along with any data dictionaries, definitions, and/or descriptions of the inputs, fields, features, parameters, variables, modes, and/or specifications.

    f.     Each algorithmic or machine learning method, model, approach, and/or paradigm used in connection with each Algorithmic Tool.

    g.     All descriptions, codes, programs, and/or summaries concerning how the Algorithmic Tool maps the described input data [sic]

    i.     Any updates, tuning, feature selection, or modifications that were considered, implemented, and/or rejected during the development, use, supplementation, recalibration, and/or adjustment of each Algorithmic Tool.

    j.     All efforts to deploy, scale, operationalize each Algorithmic Tool for, or practices, procedures, and/or protocols for processing, investigating, handling, adjusting, reviewing applicant's suitability for hire.

**RFP #6** All documents containing a technical description and software code of the model training, including:

    a.     A technical specification for the model itself, including the intended goal of the model, the sources of data that were considered when performing research related to the building of the model

    b.     A complete description of how the training data was sampled

    d.     A plain English description of features or data sources that were technically available for inclusion in the model at research time, and explanations for why they were or weren't included in the final model.

    f.     A plain English description of each feature and label

    h.     Technical description of any feature engineering including how empty values (missing data) were handled

    i.     Evaluation of the model

    j.     Description and any code used to evaluate the model during the development phase, and the output of that evaluation

    k.     Description and code for ongoing evaluation while the model was in production

**RFP #7** All documents reflecting how Workday customers use generative AI to screen applicants for employment.

**RFP #8**  All documents concerning Derek Mobley and where he applied for employment with Workday's customers.

**RFP #10** Produce any documents, including but not limited to electronic mail, created during the development of the AI and ML utilized in recruiting, screening, and/or recommending applicants for employment including but not limited to the software code development process.

**RFP # 12** Produce a list of all inputs removed from the software code and the reason for removals.

**RFP #17** All applicant flow data for Hewlett Packard Enterprise, Service Solutions, Equifax, Equifax, Expedia, Fiserv, NCR Corporation, Duke Energy, Unum, Quicken Loans, Sedgwick, Comcast and Resmedvia.

**RFP # 19** All application for patents regarding software code for screening, categorization, ranking and/or recommendation for applicants for employment

**END**

## ATTACHMENT B

## MOBLEY'S APPLICABLE DEFINITIONS

1.      The term "Artificial Intelligence" or "AI" means a machine-based system that can, for a given set of human-defined objectives, make predictions, recommendations, or decisions influencing real or virtual environments. Artificial Intelligence is used interchangeably with Machine Learning.

2.      The term "Algorithmic Tool" means a computer-based tool used to predict outcomes or assist with decision-making.

4.      "Machine Learning (or "ML") refers to the creation of statistical, algorithmic, or computational models through the analysis of data." Machine Learning is also used interchangeably with Artificial Intelligence.

7.      The terms "discrimination," "discriminate," "discriminatory," or similar terms mean any violation of Title VII of the Civil Rights Act of 1964, as amended, or 42 U.S.C.§§ 1981 and 1985(4), each as amended.

9.      The term "document" or "documents" as used herein is to be construed in the broadest sense permitted by the Federal Rules of Civil Procedure and shall mean any kind of written, recorded or graphic matter, however produced or reproduced, or any kind of description, whether sent or received or neither, including originals, non-identical copies (whether different from

## REQUEST FOR PRODUCTION NO. 1:

For Workday's Algorithmic tools utilized in applicant screening process, a representative sample of evaluation data (both features and ground-truth labels).

## RESPONSE TO REQUEST FOR PRODUCTION NO. 1:

Workday incorporates each of its General Objections herein by reference. Workday objects that this Request is vague and ambiguous, particularly with respect to its use of the terms "algorithmic tools," "applicant screening process," "representative sample," "evaluation data," "features," and "ground-truth labels." Workday objects to this Request as vague as to time. Workday objects to this Request to the extent it seeks sensitive, confidential, or proprietary

information or documentation. Workday further objects to this Request to the extent it seeks information or documentation that is not relevant to the subject matter of the instant suit and is not reasonably calculated to lead to the discovery of admissible evidence. Workday further objects to this Request on the grounds that it is overbroad, unduly burdensome, and not proportional to the needs of the case. Workday further objects to this Request to the extent that it seeks information or documentation protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity.

Subject to and without waiving the foregoing objections, and construing "algorithmic tools" to mean Candidate Skills Match ("CSM"), which is the only software feature available at the time of the filing of Plaintiff's complaint that could be characterized as "algorithmic" and used by employers to categorize applicants, and construing "evaluation data" as a data set used to determine whether predicted results of a model are accurate, Workday responds as follows: It is not typical that algorithms (as opposed to models) would have evaluation data. Accordingly, because CSM is an algorithm and not a model, no "evaluation data" exists for CSM. CSM delivers insights to customers by comparing the skills extracted from a job requisition with skills extracted from job applications or resumes submitted in connection with a particular job requisition, but CSM does not make any decisions on behalf of customers.

## REQUEST FOR PRODUCTION NO. 3:

Group membership data for the evaluation data (i.e., knowledge of which demographic group(s) each example in the evaluation data belongs to) that was used to evaluate bias and demographic disparities for the model(s) in question.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 3:

Workday incorporates each of its General Objections herein by reference. Workday objects that this Request is vague and ambiguous, particularly with respect to its use of the undefined terms "group membership," "evaluation data," "bias," and "model(s)." Workday objects to this Request to the extent it seeks sensitive, confidential, or proprietary information or documentation, including that of third parties. Workday further objects to this Request to the

extent it seeks information or documentation that is not relevant to the subject matter of the instant suit and is not reasonably calculated to lead to the discovery of admissible evidence. Workday further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case. Workday further objects to this Request to the extent that it seeks information or documentation protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity.

Subject to and without waiving the foregoing objections, Workday responds: In light of Workday's response to Request No. 1, there is no evaluation data for CSM. Accordingly, data responsive to this Request does not exist.

**REQUEST FOR PRODUCTION NO. 4:**

Predictions (model outputs) for each example in the evaluation data.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

Workday incorporates each of its General Objections herein by reference. Workday objects that this Request is vague and ambiguous, particularly with respect to its use of the undefined terms "predictions," "model outputs" and "evaluation data." Workday objects to this Request to the extent it seeks sensitive, confidential, or proprietary information or documentation, including that of third parties. Workday further objects to this Request to the extent it seeks information or documentation that is not relevant to the subject matter of the instant suit and is not reasonably calculated to lead to the discovery of admissible evidence. Workday further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case. Workday further objects to this Request to the extent that it seeks information or documentation protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity.

**REQUEST FOR PRODUCTION NO. 5:**

All Documents, Communications, and Information identifying each Algorithmic Tool utilized by Workday customers in connection with review of applicants for employment, including but not limited to all Documents, Communications, and Information concerning:

a.      The source, content, quantity, quality, and/or validity of all data on which each Algorithmic Tool was trained.

b.      Any efforts to review, analyze, audit, assess, clean, correct, and/or supplement any data on which each Algorithmic Tool was trained.

c.      All summary statistics considered, generated, and reviewed in connection with the development, use, supplementation, recalibration, and/or adjustment of each Algorithmic Tool.

d.      All inputs, fields, features, parameters, variables, modes, and/or specifications used in connection with each Algorithmic Tool, along with any data dictionaries, definitions, and/or descriptions of the inputs, fields, features, parameters, variables, modes, and/or specifications.

e.      and/or [sic] results, along with any data dictionaries, definitions, and/or descriptions of the predictive goals, outputs, outcome variables, and/or results.

f.      Each algorithmic or machine learning method, model, approach, and/or paradigm used in connection with each Algorithmic Tool.

g.      All descriptions, codes, programs, and/or summaries concerning how the Algorithmic Tool maps the described input data [*sic*]

h.      Any tests, validations, and/or assessments conducted in connection with the development, use, supplementation, recalibration, and/or adjustment of each Algorithmic Tool (including but not limited to bias testing or auditing), including the sources and content of any data used in the assessment, validation, or testing and the results of the assessment, validation, or testing.

i.      Any updates, tuning, feature selection, or modifications that were considered, implemented, and/or rejected during the development, use, supplementation, recalibration, and/or adjustment of each Algorithmic Tool.

j.      All efforts to deploy, scale, operationalize each Algorithmic Tool for, or practices, procedures, and/or protocols for processing, investigating, handling, adjusting, reviewing applicant's suitability for hire.

k.      How Workday uses each Algorithmic Tool in connection with the applicant screening process.

l.      Whether and how each Algorithmic Tool interacts with any other Algorithmic Tool(s).

m.      Any category or type of decision in connection with the employment screening process that Workday's AI made in full or partial reliance on any Algorithmic Tool, including the Algorithmic Tool involved with each such decision and the extent to which the Tool influenced the decision.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

Workday incorporates each of its General Objections herein by reference. Workday objects that this Request is vague and ambiguous, particularly with respect to its use of the terms "algorithmic tool," "validity," "data," "trained," "summary statistics," "considered," "adjustment," "modes," "results," "algorithmic or machine learning method," "paradigm," "maps," "bias," "updates," "tuning," "suitability for hire," "screening process," "interacts," and "decision." Workday objects to this Request to the extent it seeks sensitive, confidential, or proprietary information or documentation, including that of third parties. Workday objects to this Request as unduly burdensome and oppressive to the extent it represents at least 13 different requests combined into one for no other reason than to make responding to the Request difficult for Workday. Workday further objects to this Request to the extent it seeks information or documentation that is not relevant to the subject matter of the instant suit and is not reasonably calculated to lead to the discovery of admissible evidence. Workday further objects to this Request on the grounds that it seeks "[a]ll documents, communications and information" and is, on its face, overbroad, unduly burdensome, and not proportional to the needs of the case. Workday further objects to this Request to the extent that it seeks information or documentation

protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity. Finally, Workday objects to this Request to the extent that it seeks information or documentation that is in the possession, custody, or control of entities other than Workday, including information or documentation that is equally available to Plaintiff via third-party discovery.

Subject to and without waiving the foregoing objections, and construing "Algorithmic Tool" to mean CSM, Workday responds as follows:

Subject to entry of a protective order, Workday will produce documents sufficient to identify the inputs and outputs considered by CSM, and describe those inputs and outputs, functionality of CSM, and assessments of the early functionality of CSM by customers.

**REQUEST FOR PRODUCTION NO. 6:**

All documents containing a technical description and software code of the model training, including:

    a.    A technical specification for the model itself, including the intended goal of the model, the sources of data that were considered when performing research related to the building of the model

    b.    A complete description of how the training data was sampled

    c.    An explanation of, and the code used to perform, any bias measurements and mitigation techniques used in training, tuning, or adjusting the model

    d.    A plain English description of features or data sources that were technically available for inclusion in the model at research time, and explanations for why they were or weren't included in the final model.

    e.    Metadata for the dataset [*sic*]

    f.    A plain English description of each feature and label

    g.    Any code used to calculate, extract, or encode the features and labels.

    h.    Technical description of any feature engineering including how empty values (missing data) were handled

i.      Evaluation of the model

j.      Description and any code used to evaluate the model during the development phase, and the output of that evaluation

k.      Description and code for ongoing evaluation while the model was in production

l.      Description and code used for bias evaluation of the model including explanation of what subgroups (e.g. demographic attributes, population definitions) were measured during the bias evaluation

m.      Explanation of how subgroup membership was determined, and coverage of subgroup membership data (e.g., direct survey, human labelers, 1st or 3rd party inference, etc.)

n.      Definitions of which bias metrics were used

o.      Code used to mitigate bias in the model

p.      From January 1, 2018 to present, logs of all changes to the software code utilized by Workday customers to screen applicants

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

Workday incorporates each of its General Objections herein by reference. Workday objects that this Request is vague and ambiguous, particularly to the extent the request is for a "technical description" and then identifies numerous categories of information that are not technical descriptions. Workday objects to the terms and phrases "technical description," "model training," "model," "building," "bias," "mitigation techniques," "adjusting," "inclusion," "research time," "feature," "label," "calculate," "extract," "encode," "feature engineering," and "evaluation," "subgroups," "evaluation," "coverage," "bias metrics," and "mitigate." Workday objects to this Request to the extent it seeks sensitive, confidential, or proprietary information or documentation, including that of third parties. Workday objects to this Request as unduly burdensome and oppressive to the extent it represents at least 16 different requests combined into one for no other reason than to make responding to the Request difficult for Workday. Workday further objects to this Request to the extent it seeks information or documentation that is not

relevant to the subject matter of the instant suit and is not reasonably calculated to lead to the discovery of admissible evidence. Workday further objects to this Request on the grounds that it seeks "[a]ll documents" and is, on its face, overbroad, unduly burdensome, harassing, and not proportional to the needs of the case. Workday further objects to this Request to the extent that it seeks information or documentation protected by the attorney-client privilege, work product doctrine, common interest doctrine or any other applicable privilege or immunity. Finally, Workday objects to this Request to the extent that it seeks information or documentation that is in the possession, custody, or control of entities other than Workday, including information or documentation that is equally available to Plaintiff via third-party discovery.

Subject to and without waiving the foregoing objections, and construing the "model" to be referring to the Skills Embedding Model, Workday responds as follows:

Subject to entry of a protective order, Workday will produce documents sufficient to show a description of how the model works and was trained.

**REQUEST FOR PRODUCTION NO. 7:**

All documents reflecting how Workday customers use generative AI to screen applicants for employment.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

Workday incorporates each of its General Objections herein by reference. Workday objects that this Request is vague and ambiguous, particularly with respect to its use of the undefined terms "generative AI" and "screen." Workday objects to this Request to the extent it seeks sensitive, confidential, or proprietary information or documentation, including that of third parties. Workday further objects to this Request to the extent it seeks information or documentation that is not relevant to the subject matter of the instant suit and is not reasonably calculated to lead to the discovery of admissible evidence. Workday further objects to this Request on the grounds that it seeks "[a]ll documents" and is, on its face, overbroad, unduly burdensome, and not proportional to the needs of the case. Workday further objects to this Request to the extent that it seeks information or documentation protected by the attorney-client

privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity. Finally, Workday objects to this Request to the extent that it seeks information or documentation that is in the possession, custody, or control of entities other than Workday, including information or documentation that is equally available to Plaintiff via third-party discovery.

Subject to and without waiving the foregoing objections, Workday responds as follows:

Workday does not market and sell generative AI software features to customers for use in reviewing applications for employment.  Accordingly, Workday does not have documents responsive to this Request in its possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 8:**

All documents concerning Derek Mobley and where he applied for employment with Workday's customers.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

Workday incorporates each of its General Objections herein by reference. Workday objects that this Request is vague and ambiguous as to time. Workday further objects to this Request on the grounds that it seeks "[a]ll documents" and is, on its face, overbroad, unduly burdensome, and not proportional to the needs of the case. Workday further objects to this Request to the extent that it seeks information or documentation protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity. Finally, Workday objects to this Request to the extent that it seeks information or documentation that is in the possession, custody, or control of entities other than Workday, including Plaintiff himself who is in the best position to identify the jobs to which he applied and which form the basis of his claims.

Subject to and without waiving the foregoing objections, Workday responds as follows:

After a reasonably diligent search, Workday has no non-privileged responsive documents in its possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 9:**

Workday's internal data regarding the impact of AI or ML deployed on applicants of color, and if available, on age, and/or applicants with disabilities.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

Workday incorporates each of its General Objections herein by reference. Workday objects that this Request is vague and ambiguous, particularly with respect to its use of the undefined terms "internal data," "impact," "AI," "ML," and "deployed on." Workday objects to this Request as vague as to time. Workday objects to this Request to the extent it seeks sensitive, confidential, or proprietary information or documentation. Workday further objects to this Request to the extent it seeks information or documentation that is not relevant to the subject matter of the instant suit and is not reasonably calculated to lead to the discovery of admissible evidence. Workday further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case. Workday further objects to this Request to the extent that it seeks information or documentation protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity.

Subject to and without waiving the foregoing objections, Workday responds as follows:

After a reasonably diligent search, Workday has no non-privileged responsive documents in its possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 10:**

Produce any documents, including but not limited to electronic mail, created during the development of the AI and ML utilized in recruiting, screening, and/or recommending applicants for employment including but not limited to the software code development process.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

Workday incorporates each of its General Objections herein by reference. Workday objects that this Request is vague and ambiguous, particularly with respect to its use of the terms "AI," "ML," "utilized," "recruiting," "screening," "recommending," and "software code development process." Workday objects to this Request to the extent it seeks sensitive,

confidential, or proprietary information or documentation, including that of third parties. Workday further objects to this Request to the extent it seeks information or documentation that is not relevant to the subject matter of the instant suit and is not reasonably calculated to lead to the discovery of admissible evidence. Workday further objects to this Request on the grounds that it seeks "any documents…created during the development of AI and ML" and is, on its face, overbroad, unduly burdensome, and not proportional to the needs of the case. Workday further objects to this Request to the extent that it seeks information or documentation protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity.

Subject to and without waiving the foregoing objections, Workday responds as follows:

Workday is willing to meet and confer concerning a reasonable scope of this Request.

**REQUEST FOR PRODUCTION NO. 11:**

Produce a list of all inputs into any software code designed for the recruitment, evaluation, analysis and/or recommendation of applicants to Workday customers.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

Workday incorporates each of its General Objections herein by reference. Workday objects that this Request is vague and ambiguous, particularly with respect to its use of the terms "inputs" "recruitment," "evaluation," "analysis," and "recommendation." Workday objects to this Request to the extent it seeks sensitive, confidential, or proprietary information or documentation, including that of third parties. Workday further objects to this Request to the extent it seeks information or documentation that is not relevant to the subject matter of the instant suit and is not reasonably calculated to lead to the discovery of admissible evidence. Workday further objects to this Request to the extent that it seeks information or documentation protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity. Finally, Workday objects to this Request to the extent that it seeks information or documentation that is in the possession, custody, or control of

entities other than Workday, including information or documentation that is equally available to Plaintiff via third-party discovery.

Subject to and without waiving the foregoing objections, and construing "software code designed for the recruitment, evaluation, analysis and/or recommendation of applicants" to mean CSM, Workday responds as follows:

Subject to entry of a protective order, and without agreeing that this Request accurately describes CSM, Workday will produce documents sufficient to show the inputs considered by CSM.

**REQUEST FOR PRODUCTION NO. 12:**

Produce a list of all inputs removed from the software code and the reason for removals.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

Workday incorporates each of its General Objections herein by reference. Workday objects that this Request is vague and ambiguous, particularly with respect to its use of the terms "inputs," "software code," and "removals." Workday objects to this Request to the extent it seeks sensitive, confidential, or proprietary information or documentation, including that of third parties. Workday further objects to this Request to the extent it seeks information or documentation that is not relevant to the subject matter of the instant suit and is not reasonably calculated to lead to the discovery of admissible evidence. Workday further objects to this Request to the extent that it seeks information or documentation protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity.

Subject to and without waiving the foregoing objections, and construing "software code" to mean CSM, Workday responds as follows:

After a reasonably diligent search, Workday has no non-privileged, responsive documents in its possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 13:**

Produce log of all software changes to AI/ML designed for the recruitment, evaluation, analysis and/or recommendation of applicants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

Workday incorporates each of its General Objections herein by reference. Workday objects that this Request is vague and ambiguous, particularly with respect to its use of the undefined terms "log," "software changes" "AI/ML," "recruitment," "evaluation," "analysis," and "recommendation." Workday objects to this Request to the extent it seeks sensitive, confidential, or proprietary information or documentation. Workday further objects to this Request to the extent it seeks information or documentation that is not relevant to the subject matter of the instant suit and is not reasonably calculated to lead to the discovery of admissible evidence. Workday further objects to this Request on the grounds that it is overbroad, unduly burdensome, and not proportional to the needs of the case. Workday further objects to this Request to the extent that it seeks information or documentation protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity.

Subject to and without waiving the foregoing objections, Workday responds as follows:

Despite the fact that Workday disagrees with the characterization of its products, Workday will produce non-privileged documents sufficient to show changes made to CSM, subject to entry of a protective order.

**REQUEST FOR PRODUCTION NO. 14:**

Produce any audit documents performed by an independent auditor for bias regarding Workday's AI and/or ML.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

Workday incorporates each of its General Objections herein by reference. Workday objects that this Request is vague and ambiguous, particularly with respect to its use of the terms "audit," "independent auditor," "bias," and "AI and/or ML." Workday objects to this Request to

the extent it seeks sensitive, confidential, or proprietary information or documentation, including that of third parties. Workday further objects to this Request to the extent it seeks information or documentation that is not relevant to the subject matter of the instant suit and is not reasonably calculated to lead to the discovery of admissible evidence. Workday further objects to this Request on the grounds that it seeks "any audit documents" and is, on its face, overbroad, unduly burdensome, and not proportional to the needs of the case. Workday further objects to this Request to the extent that it seeks information or documentation protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity. Finally, Workday objects to this Request to the extent that it seeks information or documentation that is in the possession, custody, or control of entities other than Workday, including information or documentation that is equally available to Plaintiff via third-party discovery.

Subject to and without waiving the foregoing objections, and construing "Workday's AI/ML" to mean CSM, Workday responds as follows:

After a reasonably diligent search, Workday has no non-privileged, responsive documents in its possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 15:**

Produce any audit documents performed internally for bias regarding Workday's AI and/or ML.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

Workday incorporates each of its General Objections herein by reference. Workday objects that this Request is vague and ambiguous, particularly with respect to its use of the terms "audit," "performed," "bias," and "AI and/or ML." Workday objects to this Request to the extent it seeks sensitive, confidential, or proprietary information or documentation, including that of third parties. Workday further objects to this Request to the extent it seeks information or documentation that is not relevant to the subject matter of the instant suit and is not reasonably calculated to lead to the discovery of admissible evidence. Workday further objects to this

Request on the grounds that it seeks "any audit documents" and is, on its face, overbroad, unduly burdensome, and not proportional to the needs of the case. Workday further objects to this Request to the extent that it seeks information or documentation protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity.

Subject to and without waiving the foregoing objections, and construing "Workday's AI and/or ML" to mean CSM, Workday responds as follows:

After a reasonably diligent search, Workday has no non-privileged, responsive documents in its possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 16:**

All documents reflecting compliance or compatibility with civil rights laws from the date of the initiation of the creation of Workday's AI/ML that is offered to customers to assist in the hiring of applicants [*sic*]

**RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

Workday incorporates each of its General Objections herein by reference. Workday objects that this Request is vague and ambiguous, particularly with respect to its use of the terms "compliance," "compatibility," "initiation of the creation," "AI/ML," and "assist." Workday objects to this Request to the extent it seeks sensitive, confidential, or proprietary information or documentation, including that of third parties. Workday further objects to this Request to the extent it seeks information or documentation that is not relevant to the subject matter of the instant suit and is not reasonably calculated to lead to the discovery of admissible evidence. Workday further objects to this Request on the grounds that it seeks "all documents" and is, on its face, overbroad, unduly burdensome, and not proportional to the needs of the case. Workday further objects to this Request to the extent that it seeks information or documentation protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity. Finally, Workday objects to this Request to the extent that it seeks information or documentation that is in the possession, custody, or control of entities other

than Workday, including information or documentation that is equally available to Plaintiff via third-party discovery.

Subject to and without waiving the foregoing objections, Workday responds as follows:

After a reasonably diligent search, Workday has no non-privileged, responsive documents in its possession, custody, or control.

## REQUEST FOR PRODUCTION NO. 17:

All applicant flow data for Hewlett Packard Enterprise, Service Solutions, Equifax, Equifax, Expedia, Fiserv, NCR Corporation, Duke Energy, Unum, Quicken Loans, Sedgwick, Comcast and Resmedvia.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 17:

Workday incorporates each of its General Objections herein by reference. Workday objects that this Request is vague and ambiguous, particularly with respect to its use of the terms or phrases "applicant flow data" and "Service Solutions." Workday objects to this Request to the extent it seeks sensitive, confidential, or proprietary information or documentation, including that of third parties. Workday further objects to this Request to the extent it seeks information or documentation that is not relevant to the subject matter of the instant suit and is not reasonably calculated to lead to the discovery of admissible evidence. Workday further objects to this Request on the grounds that it is overbroad, unduly burdensome, and not proportional to the needs of the case. Workday further objects to this Request to the extent that it seeks information or documentation protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity. Finally, Workday objects to this Request to the extent that it seeks information or documentation that is in the possession, custody, or control of entities other than Workday, including information or documentation that is equally available to Plaintiff via third-party discovery.

Subject to and without waiving the foregoing objections, Workday responds as follows:

After a reasonably diligent search, Workday has no responsive customer applicant data in its possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 19:**

All application for patents regarding software code for screening, categorization, ranking and/or recommendation for applicants for employment.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

Workday incorporates each of its General Objections herein by reference. Workday objects to this Request to the extent it seeks sensitive, confidential, or proprietary information or documentation, including that of third parties. Workday further objects to this Request to the extent it seeks information or documentation that is not relevant to the subject matter of the instant suit and is not reasonably calculated to lead to the discovery of admissible evidence. Workday further objects to this Request on the grounds that it seeks "[a]ll application[s] for patents" and is, on its face, overbroad, unduly burdensome, and not proportional to the needs of the case. Workday further objects to this Request to the extent that it seeks information or documentation protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity. Finally, Workday objects to this Request to the extent that it seeks information or documentation that is in the possession, custody, or control of entities other than Workday, including information or documentation that is equally available to Plaintiff via third-party discovery.

Subject to and without waiving the foregoing objections, and construing "software code for screening, categorization, ranking and/or recommendation for applicants" to mean CSM, Workday responds as follows:

After a reasonably diligent search, and without agreeing that this Request accurately describes CSM, Workday has no non-privileged, responsive documents in its possession, custody, or control, as Workday did not apply to any patents specifically for CSM. To the extent Workday's existing patents might apply to and protect CSM, those patents are publicly available.

**REQUEST FOR PRODUCTION NO. 20:**

All document [*sic*] reflecting the inputs, the relative importance placed on those inputs, and, if applicable, other parameters for the models in order to [*sic*] improve the accuracy of the

prediction or classification of Workday AI in the evaluation of employment applicants for Workday customers.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

Workday incorporates each of its General Objections herein by reference. Workday objects that this Request is vague and ambiguous, particularly with respect to its use of the terms "inputs," "relative importance," "parameters," "models," "Workday AI," and "evaluation." Workday objects to this Request to the extent it seeks sensitive, confidential, or proprietary information or documentation, including that of third parties. Workday further objects to this Request to the extent it seeks information or documentation that is not relevant to the subject matter of the instant suit and is not reasonably calculated to lead to the discovery of admissible evidence. Workday further objects to this Request on the grounds that it seeks "[a]ll document[s]" and is, on its face, overbroad, unduly burdensome, and not proportional to the needs of the case. Workday further objects to this Request to the extent that it seeks information or documentation protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity.

Subject to and without waiving the foregoing objections, and construing "Workday AI" to mean CSM, Workday responds as follows:

Subject to entry of a protective order, Workday will produce documents sufficient to show the inputs and the way in which those inputs are considered with respect to CSM. For the avoidance of doubt, Workday does not concede this Request accurately describes CSM, including because CSM does not evaluate employment applicants for customers, but instead compares the skills extracted from employers' job postings and the skills extracted from resumes or applications that applicants submit to any particular job posting, and generates a score for applicants based on the extent to which the skills match.

**REQUEST FOR PRODUCTION NO. 21:**

All chat messages (e.g. Slack, Microsoft Team, etc., email, text message), discussing discrimination identified in the software code.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 21:**

Workday incorporates each of its General Objections herein by reference. Workday objects that this Request is vague and ambiguous, particularly with respect to its use of the terms "discrimination" and "software code." Workday objects to this Request to the extent it seeks sensitive, confidential, or proprietary information or documentation, including that of third parties. Workday further objects to this Request to the extent it seeks information or documentation that is not relevant to the subject matter of the instant suit and is not reasonably calculated to lead to the discovery of admissible evidence. Workday further objects to this Request on the grounds that it is overbroad, unduly burdensome, and not proportional to the needs of the case. Workday further objects to this Request to the extent that it seeks information or documentation protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity.

Subject to and without waiving the foregoing objections, Workday responds as follows:

Workday is willing to meet and confer concerning a reasonable scope of this Request.

**REQUEST FOR PRODUCTION No. 22:**

Workday's EEO-1 from January 1, 2020 to present.

**RESPONSE TO REQUEST FOR PRODUCTION No. 22:**

Workday incorporates each of its General Objections herein by reference. Workday objects to this Request to the extent it seeks sensitive, confidential, or proprietary information or documentation, including that of third parties. Workday further objects to this Request to the extent it seeks information or documentation that is not relevant to the subject matter of the instant suit and is not reasonably calculated to lead to the discovery of admissible evidence. Workday further objects to this Request on the grounds that it is overbroad, unduly burdensome, and not proportional to the needs of the case. Workday further objects to this Request to the extent that it seeks information or documentation protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity. Subject to and without waiving the foregoing objections, Workday responds as follows:

Workday's EEO-1 forms provide information about its own employees, which are not at issue in this lawsuit.

**REQUEST FOR PRODUCTION NO. 23:**

All Documents, Communications, and Information concerning each algorithmic tool(s) that Workday provides to customers and/or uses on their behalf uses to sort, screen, label, route, track, estimate, or categorize applicants in any manner that affects or influences how employment applications for Workday customers, including the speed with which any Workday algorithmic tools processes [*sic*]

**RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

Workday incorporates each of its General Objections herein by reference. Workday objects that this Request is vague and ambiguous, particularly with respect to its use of the terms and phrases "algorithmic tool(s)" and "affects or influences how employment applications for Workday customers." Workday objects that this Request is nonsensical. Workday objects to this Request to the extent it seeks sensitive, confidential, or proprietary information or documentation, including that of third parties. Workday further objects to this Request to the extent it seeks information or documentation that is not relevant to the subject matter of the instant suit and is not reasonably calculated to lead to the discovery of admissible evidence. Workday further objects to this Request on the grounds that it is overbroad, unduly burdensome, and not proportional to the needs of the case. Workday further objects to this Request to the extent that it seeks information or documentation protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity.

Subject to and without waiving the foregoing objections, Workday responds as follows:

Workday is willing to meet and confer with Plaintiff to better understand what documents he intends to seek with this Request.

**REQUEST FOR PRODUCTION NO. 24:**

All notices received via letter, email, social media (X), Linked-In messages or any other manner from applicants who contend that the Workday or a Workday customer discriminated against them through the use of Workday's AI.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 24:**

Workday incorporates each of its General Objections herein by reference. Workday objects to this Request to the extent it seeks sensitive, confidential, or proprietary information or documentation, including that of third parties. Workday objects to this Request as vague and ambiguous, including but not limited to the terms "social media (X)," "the Workday," and "Workday's AI." Workday further objects to this Request to the extent it seeks information or documentation that is not relevant to the subject matter of the instant suit and is not reasonably calculated to lead to the discovery of admissible evidence. Workday further objects to this Request on the grounds that it is overbroad, unduly burdensome, and not proportional to the needs of the case. Workday further objects to this Request to the extent that it seeks information or documentation protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity.

Subject to and without waiving the foregoing objections, Workday responds as follows:

After a reasonably diligent search, and subject to entry of a protective order, Workday will produce non-privileged communications from job applicants who expressed the belief that a Workday algorithmic or artificial intelligence tool discriminated against them in advancing their application through the recruiting and hiring process.

**REQUEST FOR PRODUCTION NO. 25:**

All documents received from any Workday customer concerning Derek Mobley.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 25:**

Workday incorporates each of its General Objections herein by reference. Workday objects to this Request to the extent it seeks sensitive, confidential, or proprietary information or documentation, including that of third parties. Workday further objects to this Request on the grounds that it seeks "[a]ll documents" and is, on its face, overbroad, unduly burdensome, and

not proportional to the needs of the case. Workday further objects to this Request to the extent that it seeks information or documentation protected by the attorney-client privilege, work product doctrine, common interest doctrine, or any other applicable privilege or immunity. Finally, Workday objects to this Request to the extent that it seeks information or documentation that is in the possession, custody, or control of entities other than Workday, including information or documentation that is equally available to Plaintiff via third-party discovery.

Subject to and without waiving the foregoing objections, Workday responds as follows:

After a reasonably diligent search, Workday has no non-privileged responsive documents in its possession, custody, or control.