UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEREK MOBLEY,<br><br>               Plaintiff,<br><br>      v.<br><br>WORKDAY, INC.,<br><br>               Defendant. | Case No.  23-cv-00770-RFL<br><br>**ORDER RE HIREDSCORE DISPUTE**<br>Re: Dkt. No. 157 |

The parties filed a joint letter regarding the scope of the collective and whether, at the preliminary certification stage, the "unified policy" identified by Mobley—the use of Workday's AI recommendation system to score, sort, rank, or screen applicants—includes the AI features within Workday's HiredScore product (Spotlight and Fetch).  (Dkt. No. 157.)

Workday raises three arguments for why individuals whose applications were scored, sorted, ranked, or screened using the HiredScore AI features are not part of the collective.  First, Workday notes that the HiredScore technology was acquired by Workday after the filing of the operative complaint ("FAC").  (Dkt. No. 157 at 2.)[1]  However, Workday concedes that the product is now "part of its business," (*id.* at 3) and the preliminary collective definition includes individuals who submitted applications from September 24, 2020 to the present (Dkt. No. 128 at 17).  Therefore, at this stage, the fact that Workday has expanded or made changes to its AI features over time does not mean that newer AI features are outside of the scope of the unified policy substantially alleged in the FAC.

---

[1] All citations to page numbers refer to ECF pagination.

Second, Workday states that HiredScore is not "embedded in Workday's Recruiting 'platform,'" and is instead "a separate product, built on a wholly separate technology platform, that can run on Workday or any other applicant tracking system." (*Id.* at 2.)  But the allegations in the FAC—and the scope of the collective that received preliminary certification—are not limited to Workday Recruiting.  (*See*, *e.g.*, Dkt. No. 47 ¶¶ 90, 97, 99; Dkt. No. 106 at 14.)  The parties' briefing indicates that the HiredScore AI features are part of "Workday, Inc.'s job application platform."  (*See* Dkt. No. 128 at 17.)

Finally, Workday takes the position that there are material differences in the scoring algorithms between the HiredScore AI features and Candidate Skills Match ("CSM") that would create a need for subclasses or render Mobley an inadequate representative.  (Dkt. No. 157 at 3–4.)  That issue is best addressed at the decertification stage.  (*See* Dkt. No. 128 at 6–7.)

The scope of the collective, at the preliminary certification stage, includes individuals whose applications were scored, sorted, ranked, or screened using HiredScore AI features.  The parties shall meet and confer regarding a timeline for Workday to produce its list of customers who have enabled those features, and propose that in the case management statement due August 20, 2025.  If Workday can determine definitively that certain customers who enabled the AI features did not receive any scores or rankings, or did not score or screen candidates based on those AI features, Workday may exclude those customers from the list.  Otherwise, they should be included.

**IT IS SO ORDERED.**

Dated: July 29, 2025

RITA F. LIN
United States District Judge