UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEREK MOBLEY,<br><br>        Plaintiff,<br><br>v.<br><br>WORKDAY, INC.,<br><br>        Defendant. | Case No. 23-cv-00770-RFL<br><br>**ORDER RE OPT-IN PLAN**<br><br>Re: Dkt. No. 170 |

Having reviewed the parties' Joint Case Management Statement (Dkt. No. 170) and heard further argument at the Case Management Conference, the following order is entered:

1. Plaintiffs shall prepare a dissemination plan, which they should provide—after giving Workday an opportunity to comment—in the parties' next case management statement, due on **October 15, 2025**.

    a. The plan shall include a mockup of the Short Form Notice that Plaintiffs intend to run on social media platforms.

    b. The Short Form Notice shall use the following language: "Applied for a job through Workday after September 24, 2020 and got rejected? Were you over 40 when you applied, and do you believe your application was screened out by AI due to your age? You might be eligible to challenge those decisions in a lawsuit. Visit the following web site: _____."

    c. The plan shall be accompanied by a declaration from Plaintiffs' social media consultant describing the plan for how the notice will be advertised and why that is likely to reach a sufficiently broad audience.

2. The Court will provide a proposed revised Long Form Notice and Pre-Opt In

Form to which the parties may object in advance of October 15, 2025. The parties may raise any objections to the proposed revised forms in their case management statement.

3. Workday was previously instructed that if it can "determine definitively that certain customers who enabled the AI features did not receive any scores or rankings, or did not score or screen candidates based on those AI features, Workday may exclude those customers from the list" of employers it provides to the third-party administrator. (Dkt. No. 158 at 2.) Unless Workday can make such a *definitive* determination, all employers who enabled AI features must be included on the list for this stage of the screening process. (*Id.*) Workday's customers' representations that they did not use a particular feature that was enabled does not constitute a definitive determination that the AI feature was not used by that employer. While the Court understands that Workday's customers desire to be heard and that Workday would like to front-load the inquiry, the issue is better addressed through parallel third-party discovery, with evidence presented at the decertification stage.

4. Workday's list of employers shall be provided to Plaintiffs' counsel by **October 7, 2025**. The list shall be designated "Attorneys' Eyes Only" in order to ensure that information about which employers are on the list remains confidential. However, pursuant to the safeguards outlined in the parties' Protective Order, Plaintiffs' counsel may share information contained in the list of employers in order to request bids from, and retain, a social media consultant and a third-party administrator, who shall be treated in the same way as experts under the Protective Order. Plaintiffs' counsel shall not share the list with the opt-in plaintiffs who have already filed joinder forms, but instead direct them to submit the Pre-Opt-in form to the administrator.

5. As Workday has stipulated, the statute of limitations for any particular opt-in

plaintiff shall, at minimum, be tolled from the date they submit their Pre-Opt-in Form. (*Id.* at 21.) Whether further tolling is appropriate can be determined, if necessary, at the decertification stage.

Attached to this order is an Exhibit reflecting the changes and additions to the opt-in plan addressed in this order.

**IT IS SO ORDERED.**

Dated: October 2, 2025

RITA F. LIN
United States District Judge

## Exhibit A

1. **The process for permitting individuals to opt-in to the litigation shall be staged:**
    a. <u>Stage 1.</u>  Individuals submit a pre-opt-in form online (including all individuals who have already opted in to the litigation and/or are already represented by Plaintiffs' counsel).  The form should include the following information/features:
        i. Allow individuals to list each employer to whom they have submitted an application using Workday's job application platform since September 24, 2020.
        ii. Include the questionnaire and release described in the parties' prior case management statement (Dkt. No. 149), including an option for consent to have such employer(s) disclose to Workday and Plaintiffs' counsel, for purposes of this litigation only, all the information they have about the opt-in plaintiff's application.
        iii. Advise individuals that they will be screened by a third-party administrator to determine whether they applied to any employer who used Workday AI features.
    b. <u>Stage 2.</u>  Third-party administrator screens pre-opt-in forms using list provided by Workday of employers who used Workday AI features (including CSM, Spotlight and Fetch) since September 24, 2020 ("Employer List").
        i. Individuals who did not apply to an employer on the Employer List will be informed that they are not presently eligible to join the lawsuit and that they may seek the advice of Plaintiffs' counsel to raise the issue with the court if they disagree.
        ii. Individuals who did apply to an employer on the Employer List will be advised that they may opt in to the lawsuit.
            1. Eligible individuals will be informed that they will be contacted by Plaintiffs' counsel about filing their Notice of Consent to Join.
            2. Individuals who have opted out of representation will be provided with a Notice of Consent to Join form and instructed on how to file.
        iii. Notice to qualified individuals should advise:

           1. That their name will be disclosed to the employer(s) they applied to in order to obtain information about their application.
           2. The determination that they are eligible to join the lawsuit is preliminary and that they may still be dismissed from the case if it is later determined that they are not in fact eligible.

  c. <u>Stage 3</u>.  Parties conduct discovery from Workday's customers on the "recommendation" status of all plaintiffs who have opted in.
      i. It will be Plaintiffs' burden at final certification stage to show that the Plaintiffs in the collective were not recommended for hire by Workday's AI features.

2. **The following disclosures should be included in the long form publication notice:**
   a. The complete collective definition.
   b. An explanation of the three-stage process for identifying potential collective members.  For example:
      i. To submit a form, you only need to know that you were over 40 years old at the time you applied for job opportunities using Workday, Inc.'s job application platform.
      ii. A third-party administrator will then screen your form to determine whether the employer(s) you applied to had used Workday AI features.  You should receive notice of your status within 30 days of [the end of publication notice period].
      iii. If you are screened and choose to opt in, your name will then be disclosed to the employer(s) you applied to, to determine whether you were denied an employment recommendation.  This process may be lengthy.
   c. If you opt in you may ultimately be bound by a judgment.  If you do not opt in, you will be precluded from future participation in the class.
   d. If you do not want to be represented by Plaintiffs' Counsel, you have the right to hire a different attorney or represent yourself.  Contact the third-party administrator at any point to advise them if you do not want to be represented by Plaintiffs' Counsel.

3. **Third-Party Administrator:**
   a. A third-party administrator is necessary to ensure confidentiality of sensitive information provided by opt-ins and employers.
      i. The cost will be split between Plaintiffs and Workday, except that Workday will pay the cost of the manual portion of the administrator's review to determine which employer is referenced in the pre-opt-in form.
      ii. Workday has obtained preliminary bids and proposed three options for third-party administrators to Plaintiffs. Plaintiffs intend to seek revised and/or additional bids.
      iii. Plaintiffs and Workday shall meet and confer to reach an agreement on the retention of a third-party administrator, and shall advise the Court of their selection by **October 15, 2025**.
   b. Plaintiffs' counsel shall instruct the individuals who have already filed Notice of Consent to Join forms in this action to submit the pre-opt-in form online, so that the third-party administrator may ensure their eligibility to opt in.
      i. Individuals who have not been found to be eligible by the third-party administrator (or via the dispute process discussed below) will be dismissed from the litigation after the close of the opt-in period.
      ii. As Workday has stipulated, the statute of limitations for any particular opt-in plaintiff shall, at minimum, be tolled from the date they submit their Pre-Opt-in Form. Whether further tolling is appropriate can be determined, if necessary, at the decertification stage.
   c. No later than **October 7, 2025**, Workday will provide Plaintiffs with the Employer List, which is a list of the employers who used Workday AI features (including CSM, Spotlight and Fetch) from **September 24, 2020 to September 9, 2025**, and a list of common misspellings and abbreviations of the names of said employers. Any employer who enabled a Workday AI feature during the relevant time period must be included on the Employer List, unless Workday can definitively determine, through technological means, that the feature was never used by the employer.
      i. The Employer List shall be designated "Attorneys' Eyes Only," and Plaintiffs' counsel shall limit access to the information contained in the

6

                Employer List consistent with the parties' Protective Order. (Dkt. No. 101.)

        ii. Subject to the safeguards described in the Protective Order, Plaintiffs may share information from the Employer List for the purpose of requesting bids from, or retaining, a social media consultant or third-party administrator, who shall be treated in the same way as experts under the Protective Order.

d. Subject to the safeguards described in the Protective Order, the Employer List shall be provided to the third-party administrator within **7 days** after a third-party administrator has been retained.

    i. If discovery reveals that the list of employers provided by Workday was incomplete, Workday shall pay the cost of the third-party administrator's re-review to determine if any of the individuals who were previously determined ineligible are now eligible with the updated list.

    ii. Workday's list of employers who have used AI features will not be "controlling." If there is a dispute regarding whether a customer used AI features, and the parties are unable to resolve it, that dispute will be for the Court to decide. On the flip side, if a proposed collective member has not applied to an employer who used AI features, they are not potentially within the collective definition.

e. The third-party administrator will provide the parties with updates confirming the number of opt-ins deemed eligible and ineligible based on their eligibility form on a weekly basis. Within **7 days** after the close of the opt-in period, the third-party administrator will provide the parties a final list of all eligible opt-ins and their eligibility forms (which shall be treated as confidential under the Protective Order in this case).

f. Within **14 days** of the third-party administrator's provision of the final list, Plaintiffs' counsel shall provide Workday with a list of all opt-ins represented by Plaintiffs' counsel.

g. Plaintiffs will then file a single compilation of all Notice of Consent to Join forms on the docket together at the close of the opt-in period (which may later be supplemented at the conclusion of the dispute process discussed below).

      h. Also within **14 days** of the third-party administrator's provision of the final list, Plaintiffs shall provide Workday with a list of all individuals who they believe were improperly deemed ineligible.

      i. Thereafter, the parties shall have **14 days** to meet and confer regarding the eligibility determination. At the conclusion of the meet and confer period, the parties shall submit to the Court a single list of the individuals whose eligibility remains in dispute. The parties shall meet and confer regarding the best method for efficiently seeking the Court's guidance regarding disputes around eligibility.

4. **Notice:**

      a. The publication period (which is also the pre-opt-in period) shall be 60 days from the date notice is finalized.

      b. Notice shall be paid for by Plaintiffs, and shall be disseminated via social media, and not on the Workday platform.

      c. Plaintiffs shall prepare a detailed dissemination plan, which they should provide—after giving Workday an opportunity to comment—in the parties' next case management statement due on **October 15, 2025**.