1    LEE D. WINSTON (ASB: 6407O72L)
     *Admitted pro hac vice*
2    lwinston@winstoncooks.com
     RODERICK T. COOKS (ASB: 5819O78R)
3    *Admitted Pro Hac Vice*
     rcooks@winstoncooks.com
4    WINSTON COOKS, LLC
     420 20th Street North, Suite 2200
5    Birmingham, AL 35203

6    ROBERT L. WIGGINS, JR. (ASB: 1754G63R)
     *Admitted Pro Hac Vice*
7    rwiggins@wigginschilds.com
     ANN K. WIGGINS (ASB: 7006i61a)
8    *Admitted Pro Hac Vice*
     awiggins@wigginschilds.com
9    JENNIFER WIGGINS SMITH (ASB:9622E53S)
     *Admitted Pro Hac Vice*
10   jsmith@wigginschilds.com
     WIGGINS CHILDS PANTAZIS FISHER AND GOLDFARB
11   301 North 19th Street
     Birmingham, AL 35203
12
     Attorneys for the Plaintiff and the
13   Proposed Classes and Collective

14   **[ADDITIONAL COUNSEL CONTINUED ON NEXT PAGE]**

15                    UNITED STATES DISTRICT COURT

16                    NORTHERN DISTRICT OF CALIFORNIA

17

18   DEREK L. MOBLEY, for and on behalf of       Case No. 3:23-cv-00770-RFL
     himself and other persons similarly situated;
19                                               **JOINT CASE MANAGEMENT
                    Plaintiff,                    STATEMENT**
20
            v.                                   Courtroom:    15, 18th Floor
21                                               Judge:        Hon. Rita F. Lin
     WORKDAY, INC.
22                                               Complaint Filed:  February 21, 2023
                    Defendant.
23

24

25

26

27

28

1   Jay Greene, JD, CPA
    greenattorney@gmail.com
2   Greene Estate, Probate, and Elder Law Firm
    447 Sutter Street, Suite 435
3   San Francisco, CA 94108

4   Attorneys for the Plaintiff and
    the Proposed Classes and Collective
5
    JULIE A. TOTTEN (STATE BAR NO. 166470)
6   jatotten@orrick.com
    ERIN M. CONNELL (STATE BAR NO. 223355)
7   econnell@orrick.com
    KAYLA D. GRUNDY (STATE BAR NO. 300513)
8   kgrundy@orrick.com
    ALEXANDRIA R. ELLIOTT (STATE BAR NO. 320293)
9   aelliottt@orrick.com
    ORRICK, HERRINGTON & SUTCLIFFE LLP
10  The Orrick Building
    405 Howard Street
11  San Francisco, CA  94105-2669
    Telephone:    (415) 773-5700
12  Facsimile:    (415) 773-5759

13  Attorneys for Defendant
    WORKDAY, INC.
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    On October 22, 2025, the Parties appeared before the Court for a Case Management
2  Conference ("CMC"). Following the CMC, this Court ordered a further CMC be set for November
3  5, 2025. The Court further ordered the Parties to submit a Case Management Statement including
4  (1) a proposed timeline for when the notice period will start, (2) the appearance and content of the
5  profile(s) that will post the social media notices, (3) the short form notice variations proposed by
6  Plaintiffs, (4) the long form notice, (5) a cost allocation mechanism for the third-party
7  administrator, and (6) any further proposals concerning completion of an eligibility form. ECF No.
8  186.

9    Plaintiff filed a request to continue the deadline to file this statement on October 28, 2025.
10  The Court granted that Motion and continued the deadline to file the Case Management Statement
11  to November 5, 2025. The Court also continued the Case Management Conference to November
12  12, 2025. Accordingly, the Parties file this case management statement and identify their respective
13  positions on these issues below.

14  **PLAINTIFFS' POSITIONS:**

15    **A.  The Parties Agree That There Should Be No Eligibility Form Or Process Before An**
16        **Individual Opts-In As A Party**

17    After conferring several times on this subject, the Parties are in agreement that the proposed
18  notice will not require individuals responding to the notice to submit a pre-opt-in "eligibility form"
19  or go through the third-party "eligibility" process before they have opted-in to the case as a party.
20  The Parties disagree, however, on whether a post-opt-in "eligibility form" and third-party screening
21  process will be required rather than optional. Workday has proposed "that the Court require
22  individuals who opt in to submit an eligibility form, even if the eligibility form is submitted after
23  the consent to join form." As Workday states below: "To address the Court's and Plaintiffs'
24  concerns about an improper gatekeeping role, Workday proposes that [the] eligibility form not be
25  a prerequisite to file a consent to join but rather, the Court order any opt-in plaintiffs who did not
26  complete the eligibility form prior to opting in, complete the eligibility form after opting in, at the
27  conclusion of the notice period, and confirm that any opt-in plaintiffs that fail to complete the
28  eligibility form will be dismissed from the case."  Under that formulation, Workday agrees that the

JOINT CASE MANAGEMENT STATEMENT
[CASE NO. 23-CV-00770-RFL]

eligibility form and third-party process are optional before the individual opts-in, but mandatory at the subsequent post-opt-in decertification stage of the case. Plaintiffs have proposed that any such post-opt-in screening process conducted by a third-party administrator would also be optional and voluntary.

A third-party administrators' confidential review of opt-ins' applications is not the only or best means of determining if one or more of those applications were submitted to an employer who enabled or used Workday's AI features. That simple matching of one or more applications can be done just as well, and far less expensively, by examination of the application itself or by serving a simple Rule 36 request for Workday to admit that fact (albeit without publicly identifying such employers by name if not allowed absent permission).

Counsel's experience with more than 175 individuals who have already opted-in to this case has shown individuals are able to establish they applied through Workday's platform to one or more employers who used the challenged AI features through the applications themselves, related email correspondence and communications, the individual's personal and inferential knowledge like that the Court found in regard to Derek Mobley and, ultimately, by exercising their right to conduct discovery as parties to the case, such as serving subpoenas for documents and depositions on the employers to whom they applied, serving requests for production and admissions to Workday, and by taking depositions of Workday's officials and algorithmic custodians and experts.

A post-opt-in "Eligibility Form" and process like that proposed by Workday is also contrary to the Ninth Circuit's holding in *Campbell*, 903 F.3d at 1117-1118, that such questions and facts must be decided as part of a post-discovery summary judgment proceeding on the basis of a full evidentiary record. "We conclude that, in a case such as this one, in which decertification overlaps with the merits of the underlying FLSA claims, the summary judgment standard is the appropriate one." *Campbell*, 903 F.3d at 1117-1118. That is the case here. The proposed "eligibility" question of whether individual opt-in plaintiffs applied to one or more employers who used Workday's AI application features is merely a subpart of the Court's parallel requirement that they prove they were "'denied' an 'employment recommendation'" by proving "the individual's application was scored, sorted, ranked, or screened by Workday's AI." Order, ECF 182, Exh. A at p.4. Showing

you applied to an employer that uses Workday's AI and showing that such "application was scored . . .by Workday's AI" are the same thing. Id. The Court has already found that proving your "application was scored . . .by Workday's AI" is only decided at the decertification stage of the case and that applies in exactly the same to the parallel proof that you applied to an employer that enabled or usesd Workday's AI. Both are mirror images of each other, and both are questions in "which decertification overlaps with the merits of the underlying FLSA claims, (making ) the summary judgment standard is the appropriate one." *Campbell*, 903 F.3d at 1117-1118. Such "decertification [question] overlaps with the merits of the underlying FLSA claims" because showing you applied to an employer that uses Workday's AI and showing that your "application was scored . . .by Workday's AI" is required to prove both the merits of the individual's claim and that such claim should not be dismissed at the decertification stage of the case.

**B. Plaintiffs' Proposed Revisions Of The Long Form Notice**

Based on the Parties' agreement that individuals will not be required to submit a pre-opt-in eligibility form before they opt-in, Plaintiffs have redline provisions of the Notice the court proposed in Exhibit A to ECF 182 which state or imply that individuals must submit both the pre-opt-in "Eligibility Form" **and** the "Consent to Join Form." See Exhibit #1 attached. For example, under the heading "How Join This Lawsuit," the proposed Notice ECF 182 tells the notice recipient to do the following:

" "Fill out and electronically sign the Opt-In Eligibility and Authorization Form ("Eligibility Form") **and** Consent to Join Form ("Consent Form")." ECF 182, Exh. A, p. 5.

"If you wish to have your eligibility assessed and to **join the lawsuit if found eligible,** you **must submit** an Opt-In Eligibility and Authorization Form **and** Consent to Join Form."ECF 182, Exh. A, p. 4

"By signing and submitting the Consent Form, you consent to opt in and join the Lawsuit **if you are deemed eligible."** ECF 182, Exh. A, p. 4

"The Eligibility Form **requires you** to identify the employers to whom you submitted an application for employment through Workday's job application platform since September 24, 2020 and were denied the position." ECF 182, Exh. A, p.4.

JOINT CASE MANAGEMENT STATEMENT
[CASE NO. 23-CV-00770-RFL]

"**Wait** while your Eligibility Form is reviewed **by a Court-approved third-party administrator,** who will **determine** whether the employer(s) you applied to may have used Workday AI features." ECF 182, Exh. A, p. 5.

"**If** the third-party administrator **determines** that you are eligible to join the Lawsuit, you will be opted in to the Lawsuit. Otherwise, you will **receive an ineligibility notice**, and instructions on how you can dispute your status." ECF 182, Exh. A, p.5.

"**If you are found eligible,** you will be automatically opted into the Lawsuit and will become a party without needing to take any further action."ECF 182, Exh. A, p.6.

"You may choose to join the Lawsuit as a party without participating in the eligibility determination process described above. However, failure to submit the Eligibility Form **could result in your dismissal** from the Lawsuit if you are **unable to prove that you qualify** to be a member of the ADEA collective." ECF 182, Exh. A, p.6

"**If you do not complete and submit the Forms**, or otherwise join the Lawsuit, by [60 days from the date notice is finalized], you will not be permitted to join the ADEA collective in the future."

The cumulative effect of those instructions is likely to cause significant confusion that deters laypersons from exercising their right to opt-in.  To avoid that confusion and deterrence of potential opt-ins, the Plaintiffs propose to revise the Notice in Exhibit A to ECF 182 in the manner shown in Exhibit 2.

Workday is mistaken in arguing that "Plaintiffs provided two separate edited versions of the Court's long form notice, both of which seek to rewrite the Court's notice at this late stage in negotiating the notice process." Plaintiffs immediately responded to that misunderstanding by telling Workday that the two documents were kept separate because they serve different purposes and were not meant to be combined. Those separate documents are Exhibits 1 and 2 explained above and attached hereto. Both were drafted and sent to Workday pursuant to the Court's oral instructions at the last hearing two weeks ago and the Court's separate  instructions in the Order entered that same day (ECF 186). Those Exhibits seek only to comply with such instructions, not rewrite the Court's notice at this late stage in negotiating the notice process" as Workday argues

JOINT CASE MANAGEMENT STATEMENT
[CASE NO. 23-CV-00770-RFL]

1    below. Workday acknowledges that Plaintiffs told it that Exhibit 1 "redline[d] the provisions . . .

2    that are inconsistent with the right to file an opt-in consent form without going through the pre-opt-

3    in 3rd party screening process."

4        Workday is also mistaken in arguing that "Plaintiffs distort the requirements to join the

5    collective, [by] stating, "You have the right to join this lawsuit if you applied for employment

6    opportunities using Workday's application platform since September 24, 2020, while you were 40

7    or more years old." It also errs in representing that "Opt-in plaintiffs have no 'right' to join the

8    lawsuit unless they meet the full collective definition." There is no possibility that "this statement

9    may mislead potential opt-ins with respect to whether they will be **permitted to continue in the**

10   **lawsuit**." That is an entirely different issue which covered in the "Description of the Lawsuit"

11   section of the Court's proposed Notice without alteration. See ECF 182, Exh. A, Sec. II, p.4.

12       Workday is similarly mistaken in arguing that it is "irrelevant to . . . inform[] potential opt-

13   in plaintiffs that they will be able to 'subpoena documents from the employers to whom you

14   applied,' 'obtain production of documents from Workday,' and 'obtain testimony in support of your

15   claim by deposition' to 'prove the merit of your claim and damages for age discrimination.'" Those

16   procedural rights are essential in light of Workday's insistence that the Notice include detailed

17   reference to the decertification stage of the case at which such discovery rights are crucial. The

18   same is true of the provision informing  potential opt-in plaintiffs that (1) '[a]s  a party Plaintiff to

19   this case, you will also have the right to confidentiality of your communications with the Plaintiffs'

20   attorneys as part the attorney-client privelege [sic], as well as the right to confidentiality of your

21   communications with fellow members of the certified Plaintiff collective that are protected by a

22   joint prosecution agreement . . . ."; and  (2) "You have the right to have the Plaintiffs'attorneys

23   represent you in preparation and proof of the merits of your claim in this case and to contact them

24   for advice or assistance at this link or at the email addresses and phone numbers below at no out-

25   of-pocket expense to you." That is a fact, not an advertisement or misstatement of the fee

26   arrangement with Plaintiffs'counsel.

27   **C.  Social Media Profiles**

28       Workday's section admits that it "asked Plaintiffs to provide the proposed content [of social

1  media "profiles"] on Friday, October 24, 2025 following the Case Management Conference and
2  Order earlier that week." Doc 186 (entered October 23, 2025). Workday also admits that '[o]n
3  Monday, October 27, 2025, the Parties met and conferred by phone" about such profiles and that
4  Plaintiffs '"expressed confusion" about what Workday wanted and "stated an intention to inquire
5  about such profiles with Angeion." Plaintiffs did so that day and the Parties conferred again the
6  next day, Tuesday, October 28, 2025. The following, Monday, November 3, 2025, Plaintiffs told
7  Workday that "they cannot design the 'appearance of the profiles' until they know more about the
8  design of Angeion's website." Plaintiffs subsequently informed Workday that it is premature to
9  complete or produce any profiles before this Case management Notice is due today.

10  Plaintiffs' Counsel and Social Media Consultant have worked diligently on the newly raised
11  "profile" issue throughout the two weeks since the Court ordered the parties to meet and confer on
12  that issue (ECF 186). That Order did not require that Plaintiffs complete and produce any such
13  profiles by today's date. Workday also never mentioned anything about "profiles" during the many
14  months the Parties and Court were spending many hours working on the proposed social media
15  plan, notices and related items since May of this year

16  **D. Cost Allocation**

17  On the allocation of Angeion's cost, the Court ordered that "Workday is responsible for the
18  entire cost associated with the third-party administrator's matching of the employers listed on each
19  opt-in eligibility form with the list provided by Workday and the associated communication of
20  which individuals are determined to be on the eligible list, *to the extent that cost exceeds the cost*
21  *of the same service if a drop-down menu had been used."* ECF 186. (italics added). On Monday
22  October 27, 2025, Plaintiffs explained to Angeion and Workday why all of such costs substantially
23  exceed the miniscule cost that Plaintiffs would have incurred if Workday had not opposed use of a
24  a drop-down menu. There would have been no cost whatsoever if potential opt-in plaintiffs had
25  been provided a dropdown menu that would have given them the means to match sich of employer
26  names to the physical or electronic applications that exist.

27  ///
28  ///

1    **WORKDAY'S POSITIONS:**

2        **A. Timeline**

3            The Parties conferred with Angeion concerning the time required to set up the proposed

4    case website including the long form notice, the eligibility form, and the consent to join form, as

5    well as any related collateral. Angeion confirmed they expect a 14-day turnaround from retention

6    to when the website is live. This 14-day time period includes 7-days for Angeion to provide drafts

7    and mock-ups to the Parties and 7-days during which the Parties review and approve Angeion's

8    proposals. Angeion suggested several potential areas for approval including the website content,

9    layout, and flow, as well as other collateral derived from the Court-approved long form notice such

10   as frequently asked questions and a call center script.

11           Based on the above, Workday proposes the following schedule:

| November 12, 2025 | Parties engage Angeion |
|---|---|
| November 19, 2025 | Last day for Angeion to provide drafts/mock ups |
| November 24, 2025 | Last day for parties to propose edits |
| December 1, 2025 | Last day to raise dispute with the Court or, if no disputes, start of notice period |
| January 30, 2025 | Last day of notice period (if notice period starts 12/1/25) |

21       **B. Social Media Profiles**

22           Plaintiffs have not yet provided Workday with the proposed content of social media profiles.

23   Workday requested Plaintiffs provide the proposed content on Friday, October 24, 2025 following

24   the Case Management Conference and Order earlier that week requiring the Parties to confer. On

25   Monday, October 27, 2025, the Parties met and conferred by phone. On the call, Plaintiffs' counsel

26   expressed confusion about what Workday and the Court meant by "profiles" and stated an intention

27   to inquire about such profiles with Angeion. Workday advised Plaintiffs to consult with their social

28   media consultant. Plaintiffs stated their social media consultant was similarly unsure. Workday

JOINT CASE MANAGEMENT STATEMENT
[CASE NO. 23-CV-00770-RFL]

endeavored to explain what it intended by social media profile and requested Plaintiffs provide their proposal later that day, or no later than the morning of Tuesday, October 28, 2025. On Monday, November 3, 2025, Plaintiffs informed Workday that they cannot design the "appearance of the profiles" until they know more about the design of Angeion's website. On Wednesday November 5, 2025, Plaintiffs continued to state that it was premature to provide the social media profiles. Workday cannot comment on the appearance and content of the profiles until Plaintiffs provide the profiles to Workday.

### C. Short Form Variations

Workday provided redline edits to Plaintiffs' proposed short form variations on Monday, October 27, 2025, which are attached hereto as **Exhibit A**.[1] On Monday, November 3, 2025, Plaintiffs informed Workday that they are "not inclined to accept the revisions [Workday] proposed." Though Plaintiffs have not shared any rationale for rejecting Workday's proposals, it is Workday's position that the revisions are minimal, do not add substantial length to the text, and make the short form variations more accurate. Workday has also aligned its proposed edits to the Court's guidance at the last case management conference. Workday therefore requests that the Court order its revisions be incorporated into the short form notice variations.

### D. Long Form Notice

As described below, Workday's position is that the eligibility form should be required for all opt-ins, even if it is not required until after an opt-in has filed a consent to join form. Workday otherwise has no revisions to the Court's proposed long form notice, attached hereto as **Exhibit B**.

On Tuesday, November 4, 2025, Plaintiffs provided two separate edited versions of the Court's long form notice, both of which seek to rewrite the Court's notice entirely. Workday understands that one version reflects Plaintiffs' proposed edits to the Court's long form notice, though Plaintiffs acknowledged they were "still working on the role of the third-party administrator process." In the other version of the long form notice, Plaintiffs "redline[d] the provisions . . . that

---

[1] The formatting of Workday's proposed redlines is suboptimal as a result of converting Plaintiffs' PDF proposal, which included several images, into an editable word document. Despite several requests, Plaintiffs did not provide a native Word version of the proposal, stating they also only possessed a PDF version. Workday does not expect the Court will have any issue identifying the proposed changes, but is happy to clarify if and as needed.

JOINT CASE MANAGEMENT STATEMENT
[CASE NO. 23-CV-00770-RFL]

are inconsistent with the right to file an opt-in consent form without going through the pre-opt-in 3rd party screening process." While Workday requested that Plaintiffs submit a single proposed long form notice for Workday's consideration, Plaintiffs declined to do so. Although Workday submits that Plaintiffs' efforts to rewrite the Court's long form notice is improper at this late stage, Workday nonetheless responds to the two versions of Plaintiffs' long form notice in turn below. Workday may have additional comments on Plaintiffs' long form notice if and when Plaintiffs finalize their proposed changes.

### 1. Plaintiffs' Long Form Notice

Plaintiffs' edits to the Court's long form notice distort the requirements to join the collective, provide information beyond that which is needed for a long form notice, and transform a neutral description of the lawsuit into a solicitation for opt-in plaintiffs.

First, Plaintiffs include misleading information throughout their edits to the long form notice. For example, in their first bullet, Plaintiffs distort the requirements to join the collective, stating, "You have the right to join this lawsuit if you applied for employment opportunities using Workday's application platform since September 24, 2020, while you were 40 or more years old." This statement is misleading. Opt-in plaintiffs have no "right" to join the lawsuit unless they meet the full collective definition. While Plaintiffs may opt-in to the preliminarily certified collective, they have no right to continue in the lawsuit unless they can show they meet the entire collective definition. As drafted, this statement may mislead potential opt-ins with respect to whether they will be permitted to continue in the lawsuit. Similarly, Plaintiffs revise the third paragraph of the "Description of the Lawsuit" section to suggest that an individual will be joined in the lawsuit once they submit their opt-in form, entirely ignoring that opt-ins cannot remain in the lawsuit unless they meet all eligibility requirements.

Plaintiffs also provide information that is irrelevant to the opt-in process. For instance, in the third bullet, Plaintiffs propose informing potential opt-in plaintiffs that they will be able to "subpoena documents from the employers to whom you applied," "obtain production of documents from Workday," and "obtain testimony in support of your claim by deposition" to "prove the merit of your claim and damages for age discrimination." This information does not describe the

1    litigation, has no bearing on the process by which an individual can opt-in to the litigation, and does

2    not address the consequences of opting in (or not). Similarly, in the fourth bullet, Plaintiffs state,

3    "As a party Plaintiff to this case, you will also have the right to confidentiality of your

4    communications with the Plaintiffs' attorneys as part the attorney-client privelege [sic], as well as

5    the right to confidentiality of your communications with fellow members of the certified Plaintiff

6    collective that are protected by a joint prosecution agreement . . . ." This too does not describe the

7    litigation, nor does it bear on the process for opting in or the legal rights affected by such a decision.

8            Finally, Plaintiffs' revisions transform a neutral, court-approved, long form notice into an

9    advocacy piece soliciting opt-in plaintiffs. For example, in the second bullet, Plaintiffs state, "You

10   have the right to have the Plaintiffs' attorneys represent you in preparation and proof of the merits

11   of your claim in this case and to contact them for advice or assistance at this link or at the email

12   addresses and phone numbers below. [sic] *at no out-of-pocket expense to you*." (emphasis added).

13   Not only does this read like an advertisement, it also misleads potential opt-in plaintiffs about the

14   fee arrangement with Plaintiffs' counsel. Presumably, Plaintiffs' counsel is not representing the

15   collective on a pro bono basis—rather, there is likely a contingency fee by which Plaintiffs' counsel

16   will take a portion of any recovery (and if Plaintiffs lose, they may be responsible for costs). Other

17   federal courts specifically require that fee arrangements be disclosed in long form notices, but at a

18   minimum, the fee arrangement should not be misleading. *See, e.g.*, *Carabajo v. APCO Insulation*

19   *Co. Inc.*, No. 22-CV-04175-PKC-SJB, 2023 WL 3931618, at *10 (E.D.N.Y. June 9, 2023) ("Courts

20   in this District have also found that "collective action notice[s] must include a statement informing

21   potential opt-in plaintiffs of any fee arrangement, to which the named plaintiffs and their counsel

22   agreed and which may impact the opt-in plaintiffs' recovery.").

23                    **2.  Plaintiffs' Edits re Opt-In Process**

24           As to Plaintiffs' revisions to the opt-in process, Plaintiffs suggest their edits are intended to

25   make clear that opt-in plaintiffs do not *have* to submit the Opt In Eligibility and Authorization

26   Form. As described below, Workday submits that the eligibility form should be required for all opt-

27   ins, even if it is not required until after an opt-in has filed a consent to join form. Notwithstanding

28

JOINT CASE MANAGEMENT STATEMENT
[CASE NO. 23-CV-00770-RFL]

this central disagreement, Plaintiffs redline edits do not serve to clarify that potential opt-in plaintiffs do not have to submit the eligibility form and Workday opposes Plaintiffs revisions.[2]

Most centrally, Plaintiffs' edits suggest that the eligibility form is used to determine whether opt-in plaintiffs are similarly situated. The eligibility form does not bear on whether individuals are similarly situated; instead, it is one step in determining whether an individual meets the collective definition. Workday also rejects Plaintiffs' attempt to recharacterize the importance of completing the eligibility form. Plaintiffs suggest that failure to complete the eligibility form will make it "more difficult for you to show that you are similarly situated to the Plaintiff" but Plaintiffs strike the language that failure to complete the eligibility form may "result in your dismissal from the Lawsuit if you are unable to prove that you qualify to remain a member of the ADEA collective." Opt-in plaintiffs should be fully informed of the potential consequences related to their failure submit the opt-in eligibility form so that they can make an informed decision about whether to submit the form. Third, Workday opposes Plaintiffs' recharacterization of the Opt-In Eligibility Form as the "Employer Application List and Authorization." Ultimately, the eligibility form will be used to determine whether individuals meet the opt-in definition—it is properly characterized as an "Eligibility Form." Fourth, Workday opposes Plaintiffs' effort to prevent potential opt-in plaintiffs from contacting the third-party administrator. On the final page of Plaintiffs' proposed long form notice, Plaintiffs strike language that directs potential opt-in plaintiffs to contact the third-party administrator with questions or if they do not wish to be represented by Plaintiffs' counsel. Not all opt-in plaintiffs will choose to be represented by counsel, and they should be permitted to also contact the third-party administrator with questions or to opt out of representation by Plaintiffs' counsel. Finally, Workday opposes Plaintiffs' insertion in the last paragraph stating that individuals

---

[2] Workday cannot fully address Plaintiffs' proposed edits because, as of 10 PM on Tuesday November, 4, 2025, Plaintiffs have provided a draft that has multiple sections where Plaintiffs intend to add additional information. For example, under No. 2 in "How to Join this Lawsuit," Plaintiffs say, "INSERT INSTRUCTIONS ON FILING OPT-IN FORM, THE BELOW 'LEGAL EFFECT OF OPTING IN' SUBSECTION AND A NEW SUBSECTION ON THE RIGHT TO PARTICIPATE AS A PARTY DURING THE DISCOVERY DECERTIFICATION STAGE AND DETERMINATION." And under "Effect of Submitting the Opt-In Eligibility and Authorization Form and the Consent to Join Form" Plaintiffs state, "Add explanation of optional participation in this 'Opt-In Eligibility' process." While Workday expects Plaintiffs may add language prior to filing, Workday does not anticipate having an opportunity to comment on this language.

1     can retain a different attorney "at [their] own expense." This statement implies that there is no cost

2     associated with retaining Plaintiffs' counsel—which is false—and misleads individuals into

3     believing that having plaintiffs' counsel represent them is more cost-effective decision.

4     **E. Cost Allocation**

5           Following the Court's guidance during the October 22, 2025 Case Management Conference

6     Workday requested Angeion provide a bid for the same scope of work except that rather than

7     backend matching of employers input by job applicants, applicants could choose from a dropdown

8     menu of companies. Workday made this request solely at the Court's suggestion that it would be

9     one way to isolate the costs in the current bid that "exceed[] the cost of the same service if a drop-

10    down menu had been used," which is how the Court described the costs Workday alone is

11    responsible for. ECF No. 186.

12          Angeion has since confirmed—on a call with both Workday's counsel and Plaintiffs'

13    counsel—that there is no cost difference between the two options for either the setup of the website

14    or the processing of the opt-in forms. Workday has already agreed to bear the costs of quality

15    assurance, which includes the cost of confirming close but not exact matches, even though that line

16    item is overinclusive to the extent a certain percentage of manual quality control review is standard

17    regardless of how the employer matching took place.

18          However, the Parties have been unable to move forward in retaining Angeion because

19    Plaintiffs disagree with this cost allocation. Instead, Plaintiffs take the position that Workday must

20    bear the entire cost of Angeion's services because the entire cost of a third party administrator only

21    arises out of Workday's confidential customer list. Workday disagrees, and the Court has already

22    repeatedly held that the third party administrator is necessary to protect *applicant* confidential

23    information and has further ordered the costs be split between the parties (with the exception of any

24    additive costs related to the confidentiality of the customer list). *See e.g.*, ECF No. 175.

25          Workday proposes that it bear the quality assurance costs and the remainder of Angeion's

26    services be billed 50/50 between the Parties, consistent with the Court's prior orders.

27    **F. Use of Eligibility Form**

28          Workday understands the Court's hesitance to "play a gatekeeping role" with respect to opt-

in plaintiffs. Though Plaintiffs suggest that Workday "agrees" the proposed opt-ins need not complete the eligibility process prior to opting in, Plaintiffs misstate Workday's position. Workday merely acknowledges the Court's position from the last Case Management Conference during which the Court stated it did not want to be a gatekeeper in the opt-in process. However, Workday believes opt-in Plaintiffs should be permitted to fill out the eligibility form before opting in if they choose to do so. Moreover, Workday is concerned that no potential opt-ins will make use of the eligibility process if it is optional. Indeed, in meet and confer discussions about the cost allocation of the third party administrator, Plaintiffs suggested if Workday did not bear the cost of processing opt-in forms, that would impact counsel's recommendation to potential opt-ins about whether they should complete the form or not. And now, in their portion of the CMC statement, Plaintiffs suggest they would prefer the eligibility form not be utilized "at all." Given the substantial costs the parties will incur to stand up the eligibility process, and the fact that neither party is able to assess whether any particular opt-in meets the Court's collective definition, Workday's position is the eligibility form should be required. To address the Court's and Plaintiffs' concerns about an improper gatekeeping role, Workday proposes that eligibility form not be a prerequisite to file a consent to join but rather, the Court order any opt-in plaintiffs who did not complete the eligibility form prior to opting in, complete the eligibility form after opting in, at the conclusion of the notice period, and confirm that any opt-in plaintiffs that fail to complete the eligibility form will be dismissed from the case.

Workday further disagrees with Plaintiffs characterization that "a third-party administrators' confidential review of an opt-ins' applications is not the only or best means of determining if one or more of those applications were to an employer who enabled or used Workday's AI features." Plaintiffs' counsel suggests that their experience with "more than 175 individuals who have already opted-in" shows that there are many "evidentiary means" of establishing the facts for the Court to find "either directly or inferentially" that the opt-ins applied to an employer who used AI features. This is flatly wrong. While the Court has given Plaintiffs the benefit of "inferring" Plaintiffs were subjected to AI tools at the motion to dismiss and conditional certification stage, these inferences are insufficient to support final collective certification or class

certification. Moreover, throughout discovery, including the depositions of Derek Mobley and several early opt-ins, counsel has in fact shown they are unable to assist opt-in plaintiffs in identifying the universe of employers to which they applied, much less providing evidentiary support for their assertions.

For example, while Named Plaintiff Derek Mobley states in his First Amended Complaint that he applied to over 100 positions that exclusively use Workday, in his deposition and discovery responses, Mobley could only identify twenty employers to whom he applied. Several of the opt-in Plaintiffs fared no better in identifying the universe of employers to whom they applied. In fact, of the four opt-in Plaintiffs for whom Workday has served discovery, each Plaintiff stated they could not remember the universe of employers to whom they applied (and each affirmatively deleted evidence that would show the employers to whom they applied **after** opting in). For example, opt-in Plaintiff Richard Lieb stated that he "regularly deletes emails and other documents" and therefore does not have any records for employment since August 2020. Similarly, opt-in Plaintiff Sheilah Johnson-Rocha testified that she mass deletes her emails and therefore was unable to gather information about the alleged 2,000 positions to which she applied (nor could she remember all the employers to whom she applied).

Additionally, the opt-in Plaintiffs testified that Plaintiffs' counsel did not assist them in responding to Workday's discovery requests. For example, opt-in Plaintiff Jill Hughes testified that, to respond to Workday's requests for production, she independently reviewed the requests, interpreted them, and conducted her own self-guided search of her email inbox. Opt-in Plaintiff Richard Lieb testified that he did not understand Workday's discovery requests and did not know how to respond to them. He further admitted that he neglected to search his email accounts for roles to which he applied. And opt-in Plaintiff Sheilah Johnson-Rocha did not produce emails regarding her job applications because it was "too difficult."

At bottom, it is simply not true that discovery to date has proven opt-in plaintiffs have superior ways to demonstrate the employers to whom they applied. Absent an eligibility process, there will be no principled way of obtaining preliminary information about the opt-in plaintiffs necessary for decertification and class certification. In the interest of judicial economy and

efficiency, the Court should mandate that all opt-in plaintiffs complete the eligibility process—either before or after they opt in to the preliminarily certified collective.

Finally, Plaintiffs' allegation that *Campbell v. City of Los Angeles* somehow precludes the Court from ordering opt-in Plaintiffs to complete the eligibility form after opting in is wrong. Workday is not attempting to use the eligibility form to decertify the collective and the eligibility form does not purport to assess, for example, whether Workday's AI tools cause a disparate impact on older applicants. The only thing the eligibility form does is identify—based on the opt-in's admission—whether the opt-in applied to an employer who enabled Workday's AI tools. Put simply, *Campell* does not preclude the Court from ordering opt-in Plaintiffs to complete the eligibility form after they opt-in, and for the reasons provided herein, the Court should do so.

Dated: November 5, 2025                    WINSTON COOKS, LLC


By: _____ */s/ Lee D. Winston* _____
LEE D. WINSTON
Attorneys for Plaintiff and the Proposed
Classes and Collective

Dated: November 5, 2025                    JULIE A. TOTTEN
ERIN M. CONNELL
KAYLA D. GRUNDY
ALEXANDRIA R. ELLIOTT
ORRICK, HERRINGTON & SUTCLIFFE
LLP


By: _____ */s/ Julie A. Totten* _____
JULIE A. TOTTEN
Attorneys for Defendant

PLAINTIFFS' EXHIBIT 1

PLAINTIFFS' REPORT ON THIRD-PARTY NOTICING PROCESS (FORTHCOMING

## Exhibit A – Long Form Notice

**TO:** All individuals 40 years of age or older who, at any time from September 24, 2020 to the present, applied for job opportunities using Workday, Inc.'s job application platform.

**Re:** Collective action lawsuit against Workday for alleged violations of the Age Discrimination in Employment Act ("ADEA").

## I.    INTRODUCTION

This notice and its contents have been authorized by the United States District Court for the Northern District of California. The Court has taken no position in this case regarding the merits of Plaintiffs' claims or of Workday's defenses. This notice is intended to provide information about whether you may wish ~~be eligible~~ to join the lawsuit as a party and, if so, the steps you may take to join.

If you wish to ~~have your eligibility assessed and~~ to join the lawsuit ~~if found eligible~~, you must submit ~~an Opt-In Eligibility and Authorization Form and~~ the Consent to Join Form accompanying this Notice. ~~, which you can find on the official case webpage, _____.~~ That form must be submitted by **[60 days from the date the social media notice begins] is ~~finalized~~].**

## II.    DESCRIPTION OF THE LAWSUIT

Derek Mobley ("Plaintiff") filed this action against Workday, Inc. in the Northern District of California, Case No. 3:23-0770-RFL ("Lawsuit"), on behalf of himself and all others similarly situated. Mobley's claims include that Workday allegedly violated the Age Discrimination in Employment Act ("ADEA") through its use of certain Artificial Intelligence ("AI") features on its job application platform. Mobley alleges that he is over 40, and was rejected from over 100

jobs for which he met the qualifications and applied to via Workday, including through emails received less than an hour after he applied, or in the middle of the night. Mobley contends that these rejections were the result of bias in Workday's AI. Workday denies these allegations. The Court has not made any findings about whether Plaintiff's claims or Workday's denial of liability have any merit.

The Court has provisionally certified an ADEA collective, which includes: "All individuals aged 40 and over who, from September 24, 2020, through the present, applied for job opportunities using Workday, Inc.'s job application platform and were denied employment recommendations." In this context, being "denied" an "employment recommendation" means that (i) the individual's application was scored, sorted, ranked, or screened by Workday's AI; (ii) the result of the AI scoring, sorting, ranking, or screening was not a recommendation to hire; and (iii) that result was communicated to the prospective employer, or the result was an automatic rejection by Workday.

For you to remain a party to this Lawsuit as part of a certified ADEA collective, the Court will ultimately need to determine that you meet all the requirements described in the above paragraph. The ~~preliminary eligibility~~ determination process is described below. **However, all you need to know, right now, to file an Opt-In Form ~~to request an eligibility determination~~ is that, on or after September 24, 2020, you applied for and were denied employment opportunities using Workday's application platform while you were 40 or more years old.**

## III. HOW TO JOIN THIS LAWSUIT

If you would like to join this Lawsuit as part of the ADEA collective, you should:

1) Have applied for employment opportunities using Workday's application platform since September 24, 2020, while you were 40 or more years old and were denied.

2) Fill out and electronically sign the Opt-In ~~Eligibility and Authorization Form ("Eligibility Form") and~~ Consent to Join Form ("Consent Form") **provided here** [add link] ~~located on the official case webpage at _____.~~ **[INSERT INSTRUCTIONS ON FILING OPT-IN FORM, THE BELOW "LEGAL EFFECT OF OPTING IN" SUBSECTION AND A NEW SUBSECTION ON THE RIGHT TO PARTICIPATE AS A PARTY DURING THE DISCOVERY DECERTIFICATION STAGE AND DETERMINATION]**

3) ~~Wait while your Eligibility Form is reviewed by a Court-approved third-party administrator, who will determine whether the employer(s) you applied to may have used Workday AI features. You should receive notice of your status within 30 days of [the end of publication notice period]. If the third-party administrator determines that you are eligible to join the Lawsuit, you will be opted in to the Lawsuit. Otherwise, you will receive an ineligibility notice, and instructions on how you can dispute your status.~~

4) ~~If you are opted in to the Lawsuit, wait while counsel for the parties investigate whether you were denied an employment recommendation. This process may be lengthy.~~

5) If~~_~~ you are <u>ultimately</u> determined to satisfy all the conditions for membership in the ADEA collective certified by the Court, you will remain a party to the Lawsuit. If you do not satisfy the conditions for membership, you will be dismissed from the Lawsuit by the Court. That means you will be removed as a party from this Lawsuit, though you may still be able to pursue your own separate lawsuit, depending on your situation.

### A.   Effect of Submitting the Opt-In Eligibility and Authorization Form and the Consent to Join Form

**[Add explanation of optional participation in this "Opt-in Eligibility" process]** The <u>Employer Application List And Authorization</u>  ~~Eligibility~~ Form requires you to identify the employers to whom you submitted an application for employment through Workday's job application platform since September 24, 2020 and were denied the position. **Please be sure to identify _all_ employers that you remember applying to during the relevant time period, because this may affect <u>the eventual determination of whether your claim is similarly situated to the initial Plaintiff sufficiently for you to remain a party to this case.</u> ~~your eligibility to join this Lawsuit.~~** You may, but do not have to, upload documentation of your job applications submitted through Workday's job application platform to assist the third-party administrator in evaluating <u>whether you are sufficiently similarly situated to the Plaintiff to remain a party to the Lawsuit.</u> ~~a party to the Lawsuit.~~ However, even if you upload documentation, you must still describe each one of your applications by manually entering information about each application in the  <u>Employer Application List And Authorization</u> ~~Eligibility~~  Form fields.

The information you submit in your  <u>Employer Application List And Authorization</u>  ~~Eligibility~~ Form will be reviewed by a court-approved third-party administrator, who will <u>recommend whether you are similarly situated to the Plaintiff sufficiently to remain a party to the Lawsuit</u> ~~decide if you may be eligible to join this Lawsuit~~ as an ADEA collective member. The third-party administrator's review is limited to determining whether any of the employers you listed on your Form are employers who enabled Workday's AI features during the time period in question.

The third-party administrator will treat the information you submit in your <u>Employer Application List and  Authorization</u> ~~Eligibility~~ Form as confidential. It can only be shared for the reasons described below:

~~Only if you are found to be eligible to join the Lawsuit, the~~ <u>The</u>  <u>Employer Application List And Authorization</u> ~~Eligibility~~  Form authorizes the third-party administrator to disclose to counsel for the parties in this Lawsuit (1) your name, birth date, and contact information; (2) the details (including documents) you have provided about your applications to employers who have enabled Workday's AI features ("Qualifying

Applications"); and (3) your Consent Form, which was will be publicly filed with the Court.

Only if you are found to be eligible to join the Lawsuit, the The Employer Application List And Authorization  Eligibility Form authorizes counsel for the parties to this Lawsuit to (1) contact the employers who received your Qualifying Applications, and (2) receive from the employers all information and documentation regarding your Qualifying Applications, including personal identifying information, only for use in this Lawsuit. Authorizing the disclosure of your documents and information is necessary to determine whether you satisfy all the conditions for membership in the collective certified by the Court, so that you may remain a party to the Lawsuit.

If you are found not to be similarly situated to the Plaintiff ineligible to join the Lawsuit, and you wish to dispute this determination with the help of Plaintiffs' counsel, the  Employer Application List And Authorization Eligibility Form authorizes Plaintiffs' counsel to receive your complete records from the employers on your Employer Application List  Eligibility Form and Consent Form.

By signing and submitting the Consent Form, you consent to opt in and join the Lawsuit. if you are deemed eligible. If you are found eligible, you will be automatically opted into the Lawsuit and will become as a party without needing to take any further action.

You may choose to join the Lawsuit as a party without participating in the eligibility determination process described above. However, failure to submit the  Employer Application List And Authorization Eligibility Form could make it more difficult for you to show that you are  similarly situated to the Plaintiff result in your dismissal from the Lawsuit if you are unable to prove that you qualify sufficiently for you to remain be a member of the ADEA collective. You will have the right, however, to present evidence of the employers to whom you applied for employment through Workday's application platform and other evidence at any proceeding to determine whether you or the opt-in collective are sufficiently similarly situated to Plaintiff Mobley to remain parties in this Lawsuit.

If you do not complete and submit the necessary Opt-In Form[s] or otherwise join the Lawsuit, by January ___, 2026 [60 days from the date the social media notice begins is finalized], you will not be permitted to join the ADEA collective in the future.

**B.**  **Legal Effect of Opting In**

If you are found eligible and are opted in to the Lawsuit, or you otherwise join the Lawsuit, as part of the ADEA collective you will be bound by a favorable or unfavorable judgment on Plaintiffs' ADEA claim. If you do not opt in or otherwise join, you will be precluded from future participation in this case, including participation in any settlement related to the ADEA claim, but you may still bring your own separate lawsuit, depending on your situation.

No ADEA collective has been finally certified, and regardless of your having opted in to thr case eligibility recommendation, you may still be dismissed from the case.

## IV.    NO RETALIATION PERMITTED

Federal law prohibits Workday and its customer employers from retaliating against you for opting-in to this Lawsuit or otherwise exercising your rights.

## III.    YOUR LEGAL REPRESENTATION IF YOU JOIN

The Plaintiffs in this case are represented by:

[Plaintiffs' counsel's names and addresses]

If you have questions about this Notice, the Employer List Opt-In Eligibility and Authorization Form, or the Consent to Join Form, you may contact the third-party administrator at _____, or the attorneys listed above ("Plaintiffs' Counsel") at [EMAIL ADDRESSES].

If you want to join the Lawsuit, but you do not want to be represented by Plaintiffs' Counsel, you have the right to hire a different attorney at your own expense or represent yourself. Contact the third-party administrator at any point to advise them if you do not want to be represented by Plaintiffs' Counsel.

**PLEASE DO NOT CONTACT THE COURT WITH QUESTIONS ABOUT THIS LAWSUIT.**

7

**PLAINTIFFS' EXHIBIT 2**

**Exhibit 2 – Long Form Notice**

Formatted: Font: 12 pt

Formatted: Font: 12 pt

### NOTICE OF COLLECTIVE ACTION LAWSUIT

*Mobley v. Workday, Inc.  Case No. 3:23-0770-RFL, Northern District of California,*

**TO:** All individuals 40 years of age or older who, at any time from September 24, 2020 to the present, applied for job opportunities using Workday, Inc.'s job application platform.

**Re:** Collective action lawsuit against Workday for alleged violations of the Age Discrimination in Employment Act ("ADEA").

### I.    INTRODUCTION

This notice and its contents have been authorized by the United States District Court for the Northern District of California. The Court has taken no position in this case regarding the merits of ~~Plaintiffs~~ 'Plaintiffs' claims or of Workday's defenses.

The purpose of this notice is to provide notification of your following rights under the Age Discrimination in Employment Act ("ADEA"):

- You have the right to join this lawsuit if you applied for employment opportunities using Workday's application platform since September 24, 2020, while you were 40 or more years old;

- You have the right to have the Plaintiffs' attorneys represent you in preparation and proof of the merits of your claim in this case and to contact them for advice or assistance at this link  or at the email addresses and phone numbers below.  at no out-of-pocket expense to you  listed on page ___ of this notice. You may also, if you choose, hire your own attorney or represent yourself in this proceeding.

- To join this lawsuit all you need to know or do, right now, is to fill out and electronically sign and return the Notice of Consent To Join Form  at this link on or before January ___, 2026 [*i.e.,* 60 days from the first date that Plaintiffs' social media notice ads begin]. That "Opt-In Form" states you applied for one or more employment opportunities using Workday's application platform since September 24, 2020, while you were 40 or more years old;

- Once you submit your Opt-In Form to join this case as a party, you will have the same rights as all the ~~the~~ other Plaintiffs to prepare and present your disparate impact discrimination claim and defend your entitlement to remain a party in this case, including your right as a party to subpoena documents from the employers to whom you applied for employment through Workday's application platform, to obtain production of documents

1

from Workday, to obtain testimony in support of your claim by deposition, to serve questions and requests for admissions for Workday to answer and otherwise have Plaintiffs' attorneys represent you in pursuing such evidence as may be needed to maintain your status as a party and prove the merit of your claim and damages for age discrimination.

- As a party Plaintiff to this case, you will also have the right to confidentiality of your communications with the Plaintiffs' attorneys as part the attorney-client privelege, as well as the right to confidentiality of your communications with fellow members of the certified Plaintiff collective that are protected by a joint prosecution agreement entered into as part of this case, including the collective proof of age-based disparate impact that is common to the claims of all members of the certifed collective of opt-in Plaintiffs and to Workday's liability for such age discrimination.

## II.    DESCRIPTION OF THE LAWSUIT

Derek Mobley ("Plaintiff") filed this action against Workday, Inc. in the Northern District of California, Case No. 3:23-0770-RFL ("Lawsuit"), on behalf of himself and all others similarly situated. His allegations include that Workday, Inc., through its use of certain Artificial Intelligence ("AI") features on its job application platform, violated the Age Discrimination in Employment Act ("ADEA"). Workday denies these allegations. The Court has not made any findings about whether Plaintiff's claims or Workday's denial of liability have any merit.

The Court has provisionally certified an ADEA collective, which includes: "All individuals aged 40 and over who, from September 24, 2020, through the present, applied for job opportunities using Workday, Inc.'s job application platform and were denied employment recommendations." In this context, being "denied" an "employment recommendation" means that (i) the individual's application was scored, sorted, ranked, or screened by Workday's AI; (ii) the result of the AI scoring, sorting, ranking, or screening was not a recommendation to hire; and (iii) that result was communicated to the prospective employer, or the result was an automatic rejection by Workday.

For you to join this Lawsuit  Once you submit your Opt-In Form to join this case as a party and member of  to the certified ADEA collective, the Court will ultimately need to determine that you meet all the requirements described in the above paragraph. The third-party administrator process is described  below  and  is part of that procedural step in this case. **However, all you need to know, right now, to opt-in to this case is that, on or after September 24, 2020, you applied for employment opportunities using Workday's application platform while you were 40 or more years old.**

To join this case, please complete, sign and mail or e-mail the attached Opt-In Form as soon as possible. Plaintiffs' lawyers must receive your Form by January ___ ,2026 in order to preserve you right to join this case.

After  you submit your Opt-In Form , the  Plaintifs Plaintiffs' attorneys will represent you in obtaining the documents, testimony and other evidence that you may need to show that you

2

meet all the requirements described in the above paragraph, including the third-party administrator stage of such decertification determination.

If you have any questions or need any assistance in preparing your claim or responding to the procedural requirements of this case, you may contact the Plaintiffs' attorneys, Rod Cooks and Lee Winston of Winston Cooks, LLC at 205-___-___, by email at _____ or _____ or , Bob Wiggins, Jenny Smith or Ann Wiggins at the Wiggins, Childs law firm at 205-___-___, and by email at rwiggins@wigginschilds.com, awiggins@wigginschilds.com or jsmith@wigginschilds.com

**III. LEGAL EFFECT OF OPTING IN TO JOIN THIS CASE**

If you are found eligible and are opted in to the Lawsuit, you will be bound by a favorable or unfavorable judgment on Plaintiffs' ADEA claim. If you do not opt in, you will be precluded from future participation in this case, including participation in any settlement related to the ADEA claim, but you may still bring your own separate lawsuit, depending on your situation.

No ADEA collective has been finally certified, and regardless of your initial eligibility recommendation, you may still be dismissed from the case.

**IV.** ~~HOW TO~~ OPTIONAL PARTICIPATION IN THIRD-PARTY ASSESSMENT PROCESS ~~JOIN THIS LAWSUIT~~

If you submit a Consent To Join Form, you may, but do not have to, provide a manual list of the employers to whom you applied for employment reviewed by a third-party administrator, who will determine whether the employer(s) you applied to may have used Workday AI features. This requires you to identify the employers to whom you remember submitting an application for employment through Workday's job application platform since September 24, 2020. **Please be sure to identify** _all_ **employers that you remember applying to during the relevant time period, because this may affect your eligibility to** continue as a party ~~to this~~ to this **Lawsuit.** You may, but do not have to, upload documentation of your job applications submitted through Workday's job application platform, to assist the third-party administrator in evaluating your eligibility. However, even if you upload documentation, you must still describe each one of your applications by manually entering information about each application in the Form fields. The third-party administrator's review is limited to determining whether any of the employers you listed on your Form are employers who enabled Workday's AI features during the time period in question.

~~The third-party administrator will treat the information you submit in your Form as confidential. It can only be shared for the reasons described below:~~
~~Only if you are found to be eligible to join the Lawsuit, the Form authorizes the third-party administrator to disclose to counsel for the parties in this Lawsuit (1) your name, birth date, and~~

**Formatted:** Justified, Indent: Left: 0", Right: 0", Space Before: 0 pt, After: 0 pt, Line spacing: single

3

contact information; (2) the details (including documents) you have provided about your applications to employers who have enabled Workday's AI features ("Qualifying Applications").

3. **V. –NO RETALIATION PERMITTED**

Federal law prohibits Workday from retaliating against you for "opting-in" to this Lawsuit or otherwise exercising your rights.

4. **VI. YOUR LEGAL REPRESENTATION IF YOU JOIN**

If you elect to ~~join  in~~join ~~in~~this lawsuit by electronically completing and submitting a "Consent to Join" form, your counsel will be:

Roderick T. Cooks link                                      Robert L. Wiggins link
Lee D. Winston link                        Ann K. Wiggins link
                                           Jennifer Smith link
Winston Cooks, LLC                    ~~—~~Wiggins, Childs, Pantazis, Fisher & Goldfarb L~~LC~~
420 20th Street North Suite 2200        301 19th Street South
Birmingham, AL. 35203                 Birmingham, AL. 35

[EMAIL ADDRESSES].

If you want to join the Lawsuit, but you do not want to be represented by Plaintiffs' Counsel, you have the right to hire a different attorney or represent yourself. Contact the third-party administrator at any point to advise them if you do not want to be represented by Plaintiffs' Counsel.

**PLEASE DO NOT CONTACT THE COURT WITH QUESTIONS ABOUT THIS LAWSUIT.**

5

Formatted: Justified, Space Before: 0 pt, Line spacing: single

## DESCRIPTION OF THE LAWSUIT

You have received this notice because _____.

## WHO IS ELIGIBLE TO JOIN THIS CASE?

You may be eligible to join this case if you served as a Site Manager in the United States within Vox Media's SB Nation business division during any week from March 27, 2015 through present.

## WHAT HAPPENS IF YOU JOIN THIS CASE?

If you choose to join this case, you may be required, with the help of Plaintiffs' lawyers, to answer written questions, produce documents related to _____Pyour work as Site Manager, attend a deposition, and/or testify in court. You will not be responsible for paying any lawyers' fees. Plaintiffs' lawyers are being paid on contingency, which means that if Plaintiffs do not receive a recovery in this case, no lawyer fees will be owed. If Plaintiffs obtain a recovery, either by settlement or judgment, Plaintiffs' lawyers may, pursuant to the FLSA, file a request with the Court to receive part of the recovery as compensation for their services. Any settlement or fee award would require the Court's approval as being fair and reasonable.

If Plaintiffs win this case, you may receive compensation for unpaid minimum wages and/or overtime wages. The maximum possible recovery allowed under the FLSA is double (2x) any unpaid minimum wages and overtime. If you elect to join this case, you designate the Plaintiffs as your agent to make decisions for you relating to the litigation, including settlement, lawyer fees and costs, and any other matters relating to this case, regardless of whether a recovery is ultimately achieved.

Thus, if you elect to join this case, Plaintiffs' decisions will be binding on you and your claims. A recovery is not guaranteed and depends on the adjudication of the claims.

You do not need to join this case. It is your choice. If you do not join the case, you preserve the right to file your own separate claim, or not, as you choose.

## YOUR RIGHTS TO PARTICIPATE IN THIS CASE

You have the right to join, or not join, this case. If you fall within the definition of the "FLSA

Class" above, you may join this case by completing, signing, and returning, the enclosed "Opt-In

Consent Form," by mail or email to:

6

**Vox Media Site Manager Wage Litigation**

James E. Goodley

Jennings Sigmond, P.C.

1835 Market Street, Suite 2800

Philadelphia, PA 19103

jgoodley@jslex.com

If you have any questions or need any assistance, you may contact the Plaintiffs' attorneys, James E. Goodley of Jennings Sigmond, P.C. at 215-351-0614, by email at: jgoodley@jslex.com or Ginger L. Grimes of Goldstein, Borgen, Dardarian & Ho at 510-287-4356, by email at: ggrimes@gbdhlegal.com

To join this case, please complete, sign and mail or e-mail the enclosed Opt-In Consent Form as soon as possible. Plaintiffs' lawyers must receive your form by June 3, 2019 in order to preserve you right to join this case.

**RETALIATION AND DISCRIMINATION PROHIBITED**

The FLSA prohibits Vox Media from retaliating or discriminating against you in any way because you elect to join this case. If you suspect you have been retaliated or discriminated against because of your choice to join this case, you may contact Plaintiffs' lawyers to so inform them.

2

**Formatted:** Font: (Default) Times New Roman

**Formatted:** Font: 12 pt

## PLEASE TAKE NOTE

Generally there is a two (2) year deadline for filing your claims under the FLSA, or three (3) years if the violation is willful. These statutory limitations periods have been extended by one year based on a tolling order entered earlier in this litigation so that the filing deadlines are now three (3) years, or four (4) years if the violation is willful. Plaintiffs have alleged that Vox Media's violations of the FLSA were willful, while Vox Media denies these allegations. The deadline begins to run from the date(s) in which hours were worked. Therefore, you should return the form as soon as possible to preserve your claims to the maximum possible extent. **Please do not contact the Court about this Notice.**

3

8

### IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

CHERYL C. BRADLEY, individually and on :

### CONSENT TO JOIN COLLECTIVE ACTION LAWSUIT

Pursuant to 29 U.S.C. § 216(b), I consent to become a party plaintiff in the above-captioned Fair Labor Standards Act case, to be represented by Jennings Sigmond, P.C. and Goldstein, Borgen, Dardarian & Ho, and to be bound by judgment of the Court.

I worked as a Site Manager or Managing Editor for SB Nation Website _____ from on or about _____ (date) to on or about _____ (date).

**Formatted:** Font: 12 pt

# EXHIBIT A

**PLAINTIFFS' EXHIBIT 1**

## PLAINTIFFS' REVISED DISSEMINATION PLAN

### Overview

This plan provides a step-by-step description of Plaintiffs' social media notice and how Plaintiffs' social media consultant will disseminate deploy, and monitor a 60-day digital notice campaign based on the plan. The plan uses paid advertising across Meta (Facebook and Instagram), LinkedIn, and Google platforms to reach adults aged 40 and older who may have applied for employment through Workday's systems. These platforms were selected for their proven ability to reach the 40+ demographic, their transparency in reporting audience data, and their compliance capabilities.

### Concensus Platforms

**Facebook & Instagram (Meta Ads):** Highest concentration of 40+ users, allows demographic targeting, and provides integrated lead forms.

**LinkedIn Ads:** Professional credibility, targeting of active job seekers and industries where Workday is widely used.

**Google Search & Display:** Captures individuals actively searching for legal representation or age discrimination information. Also provides retargeting opportunities.

**X (formerly Twitter):** Reaches a highly engaged audience of professionals, HR personnel, and technology users who regularly discuss employment, recruiting, and artificial intelligence topics, all directly relevant to this case. X's real-time content environment allows the notice to appear alongside trending discussions on workplace fairness, AI in hiring, and employment law, ensuring that the campaign reaches individuals likely to have applied through or interacted with Workday's recruiting systems.

### Number of Users Per Platform

**Facebook & Instagram:** Used by approximately 80% of U.S. adults aged 40-64 (Pew Research Center, 2024).

**LinkedIn:** Used weekly by roughly 60% of adults aged 40-64, particularly among professionals and job seekers.

**Google Search & Display:** Reaches over 90% of U.S. internet users monthly (Statista 2025).

**X (formerly Twitter):** Used by an estimated 27% of adults aged 40-64, but over-indexes for professionals, journalists, and tech users who discuss AI, recruiting, and employment issues (Pew Research Center 2024).

### Why These Platforms Will Reach the Target Audience

According to 2024 data from the Pew Research Center, approximately 80% of U.S. adults aged 40-64 use Facebook or Instagram, and 60% use LinkedIn at least once a week. Nielsen's 2024 Digital Ad Ratings report further confirms that campaigns targeting adults aged 40 and over on these platforms achieve verified reach accuracy above 90%. Together, these platforms cover the vast majority of working-age adults, including those most likely to have interacted with employers that use Workday's recruiting software. Their combined reach ensures broad, demographically appropriate notice distribution consistent with federal notice standards.

### Ad Spend Allocation

| | |
|---|---|
| **Facebook & Instagram (Meta Ads):** | 50% |
| **LinkedIn:** | 25% |
| **Google Search & Display:** | **15%** |
| **X:** | 10% |

To achieve flexible optimization, this allocation may be reallocated by Plaintiffs' media consultant among such platforms or others as needed based on performance data (i.e., Cost Per Click, Click-Through Rate, and On-Site Conversion Rate) to ensure the greatest reach and engagement among the target audience

### Schedule & Duration

The Plan will run for at least 60 days in three graduated phases:

- Phase 1 (Days 1-15): Awareness across all platforms.
- Phase 2 (Days 16-45): Lead generation optimization, reinforcement/retargeting ads
- Phase 3 (Days 46-60): Reinforcement/Retargeting ads

This proposed 60-day graduated digital notice plan is expected to be sufficient notification to individuals over 40 who applied for jobs through Workday and may want to consent to join this case. The allocation across Facebook/Instagram, LinkedIn, and Google provides broad reach, professional credibility, and intent capture. The plan is transparent, targeted, and compliant with federal standards for class action notice. The dissemination will employ a layered targeting approach across Meta, Google and LinkedIn to maximize reach and frequency among the target audience. This includes:

1.    Workday Applicant Audience: Targeting Workday customers using its job appication platform.

2.    Lookalike Audiences: Creating lookalike audiences (Meta and LinkedIn) based on the demographics and behavior of the Workday Applicant Audience to find similar users, thereby expanding reach.

3.    Active Job Seeker Audience: Targeting users showing recent activity related to job seeking, resume updates, or interaction with professional content/sites known to use Workday's software.

All advertisements will direct users to a single, mobile-optimized landing page This page will feature highly visible, clearly labeled buttons for the three main options: File a Consent Form, Request Assistance of Plaintiffs' Counsel and Consent To Document Disclosures. Responders who elect to file a Consent Form rather than a separate lawsuit will be emailed a Questionaire eliciting information on the names of the employers they applied to in the relevant period and any other sensitive or confidential information agreed upon to be needed by the third-party administrator. Such email will come directly from the third-party administrator and all responses will be returned directly to the third-party administrator for safekeeing of all sensitive or confidential infirmation on terms agreed upon by the Parties.

### Optimization and Monitoring

Campaign performance will be monitored daily to ensure that ads are being delivered efficiently and proportionally across age, region, and platform. Adjustments will be made to maintain broad national coverage and cost-effective reach, based on standard metrics such as Cost Per Thousand Impressions (CPM), Click-Through Rate (CTR), and Conversion Rate. This iterative process ensures the notice continues to appear to new, relevant users throughout the campaign duration.

### Compliance Considerations

All advertisements will be neutral, notice-style, and strictly informational. Messaging will avoid solicitation and instead direct individuals to official notice landing page. All ad creatives and copy will be reviewed and approved by counsel prior to launch. They will contain no persuasive language or calls to action beyond directing individuals to the official notice website. No personal data will be collected by the social media consultant; all form submissions will occur solely through the secure website.

### Electronic Form Responses

The digital advertising program will direct recipients to a secure website portal containing the court-approved long-form notice, the accompanying forms to use to respond to such notice, instructions on how to electronically transmit such forms and communicate with Plaintiffs' counsel to request assistance or answer questions directly from the webpage portal and other relevant court-approved case documents.

### Content of Dissemination Notice And Mockup of Social Media Ads

Examples of the content and appearance of the social media ads are attached. The content of the notice to be disseminated from the webpage will first include notice of the pendency of the collective action under §216(b) and §256 of the FLSA and the recipients' right under such statute to "be a party to any such action [whenever] he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought," 29 U.S.C. §216(b), q such party status is a necessary precondition to standing to appeal any subsequent determination that the recipient is not "similarly situated" to the other Plaintiffs, and that the determination of the latter "similarly situated" status will be made at the post-discovery decertification stage of the case in accordance with the standards of *Campbell v. City of Los Angeles,* 903 F.3d 1090 (9th Cir. 2017). *See* Case Management Statement filed Ocober 15, 2025 for further explanation of such content.

### Structure Of Dissemination Plan

The Dissemination Plan is structured to separately address both the Court's "Stage 1" and "Stage 2" bifurcation (ECF 175, Exh A, §1; ECF 177, Exh A, §I), The content addressing Stage 1 gives notice of the statutory opportunity to opt-in to the collective action or to instead file a separate lawsuit in accordance with the principal purpose of the notice allowed by *Hoffmann-La Roche v. Sperling,* 493 U.S. 165, 170 (1989). *Cf.* ECF 175, Exh A, §1(a); ECF 177, Exh A, § **I.** The content addressing Stage 2 gives notice of the third-party administrator's matching procedure and the overall "similarly situated" determination that comes after the individual has chosen to pursue their individual claim on a collective basis, *Cf.* ECF 175, Exh A, §1(b); ECF 177, Exh A, §III.A).This is further addressed in the Plaintiffs' Report section of the Joint Case Management Statement filed herewith.

## Exhibit A - SHORT FORM NOTICE MOCKUPS

The following mock-ups illustrate the Short Form Notice as it will appear in digital advertisements across Meta (Facebook and Instagram), LinkedIn, Google Display/Search, and X

4

(formerly Twitter). These examples are provided to demonstrate the appearance, tone, and layout of the notice content as it will be displayed on users' feeds or search results.

All ad copy is drawn directly from the Court-approved Short Form Notice and has been formatted in compliance with each platform's technical requirements. The materials are neutral, factual, and non-promotional and contain no persuasive or solicitational language. Each ad directs users exclusively to the official notice website managed by the Court-appointed Notice Administrator, where the full Long Form Notice is hosted.

These mock-ups are illustrative only. Final versions may vary slightly in size or, aspect ratio, or character length to conform to specific platform display standards, but the substance, tone, and notice language will remain identical to those approved by Plaintiffs' counsel and consistent with this submission. the language included herein.

## 1. Instagram & Facebook Ads

# Were you rejected after applying through <u>Workday?</u>

**Applied for a job after September 24, 2020 and got rejected?**



4

ye.

Learn More

C 2 Q V

89 views

<u>Workdaycase</u> Applied for a job after September 24, 2020 and got rejected? If you were 40 or over, believe AI screening impacted your application, you may request to join a federal lawsuit.

View all 14 comments

6

O [Workdaycase.com](Workdaycase.com)                    .                    ..
Sponsored • el

Applicants 40 or over who applied through Workday after September 24, 2020 and were rejected may request to join a lawsuit.



[WORKDAYCASE.COM](WORKDAYCASE.COM)

**Did AI impact your job application?**

Learn ~~How~~More

06 Like            1:1 Comment            ⇗ Share

**Variation 1 (Notice)**
**Headline: Official Court Notice**
**Headline 2:** Workday Applicant ~~Class Member~~ Notice
**Body or Caption:** LEGAL NOTICE

Information for applicants age 40 and older who sought employment through Workday after September 24, 2020. Your legal rights ~~concerning the application process~~<u>to join the lawsuit</u> may be affected. **CTA:** Learn more: [Website]

**<u>Variation 2 (Time + Date Focused)</u>**
**Headline:** Official Court Notice
**Headline 2:** Notice: Applicants Age 40 & Over
**Body or Caption:** A federal court ~~is providing~~<u>has authorized</u> notice to certain job applicants who used the
Workday application platform between 9/24/2020 and the present.
**CTA:** View Notice [Website]

**<u>Variation 3 (Neutral + Direct)</u>**
**Headline:** Were you rejected after applying through Workday?
**Body or Caption:** Applied for a job after September 24, 2020 and got rejected? If you were 40 or over believe AI screening impacted your application, you may request to join a federal lawsuit.
**CTA:** Learn more: [Website]

**<u>Variation 4 (Informative + Concise)</u>**
**Headline:** Age and Job Applications
**Body or Caption:** If you applied through Workday after September 24, 2020, were 40 or over, and got rejected, you may have legal options.
**CTA:** Click the link below to see if you qualify. [Website]

**<u>Variation 5 (Question + CTA)</u>**
**Headline:** Did AI impact your job application?
**Body or Caption:** Applicants 40 or over who applied through Workday after September 24, 2020 and were rejected may request to join a lawsuit.
**CTA:** Learn how: [Website]

**<u>Variation 6 (Story-style / Relatable)</u>**
**Headline:** Job Rejection?
**Body or Caption:** Applied through Workday after Sept 24, 2020 and didn't hear back? Were you 40 or over? You could challenge AI screening decisions. Find out more: [Website]
CTA: Learn More / Visit [Website]

## 2. LinkedIn Ads

**M I** **W o r k d a y c a s e . c o m**  3 9  f o l l o w e r s
P r o m o t e d  I n d i v i d u a l s  4 0  o r  o l d e r
w h o  a p p l i e d  f o r  j o b s  t h r o u g h
W o r k d a y  a f t e r  S e p t  2 4 ,
2020 may be affected. Read the official notice.



**AI and Job Applications**                                    ͟(͟Learn͟ ͟More)

Workdaycase.com

O47                                                              21 Comments

**a**Like              4 Comment           (-) Share           *I* Send

**Variation 1- Sponsored Content**
**Headline:** Workday Applicants: Official Court Notice
**Body:** Individuals 40 or older who applied for jobs through Workday after Sept 24 2020 may be affected. Read the official notice.
**CTA:** Learn More [Website]

**Variation 2 - Message Ad 1**

9

**Subject:** Official Court Notice — Workday Applicants
**Body:** This is a Court-Authorized Legal Notice.
If you are age 40 or older and applied for a job through Workday after September 24, 2020, this notice may affect your rights.
The U.S. District Court authorized this message to inform potential ~~class members~~plaintiffs about a
pending lawsuit regarding Workday's employment screening system.

To review the full notice and learn more, please visit the official case website

below. **CTA:** Learn More [Website]


**<u>Variation 3 - Message Ad 2</u>**
**Subject:** Court-Authorized Notice — Age & Employment
**Body:** The U.S. District Court approved this legal notice to inform job applicants 40 and older who used Workday's platform after Sept 24, 2020.
This communication is for informational purposes only and does not mean you are ~~a class member or~~ entitled to relief. Visit the official site for details and deadlines.

**CTA:** Learn More [Website]


**<u>Variation 4 - Text Ad (Sidebar) 1</u>**
**Headline:** Court Notice — Workday
**Body:** If you applied via Workday after 9/24/20 and are 40+, read this official notice.
**CTA:** Learn More [Website]


**<u>Variation 5 - Text Ad (Sidebar) 2</u>**
**Headline:** Age & Job Applications
**Body:** U.S. Court authorized notice for Workday applicants 40+ since Sept 2020.
**CTA:** Learn More [Website]

### 3. Google Ads

**Sponsored**

Workday Case

● [https://workdaycase](https://workdaycase) > google ad mockup test
**Age 40+1 Age Bias Case Ⅰ Workday Lawsuit Notice**
Did you apply for a job via Workday after 9/24/2020? See if your legal rights are impacted
by this federal notice.

---

**Variation 1**
**Headline 1:** Workday Lawsuit Notice
**Headline 2:** Ages 40+
**Headline 3:** Official ~~Court~~ Case Information
**Description:** Did you apply for a job via Workday after 9/24/2020? See if your legal rights are
impacted by this federal notice.

**Variation 2**
**Headline 1:** Workday Age Bias Case
**Headline 2:** 40+ Applicant Notice
**Headline 3:** Legal Right~~s Affected~~ to Join
**Description:** Applicants age 40 or over who applied through Workday may be affected by a
Court authorized notice. Visit the court-approved notice portal.

**Variation 3**
**Headline 1:** Workday Job Applications
**Headline 2:** Age 40 and Over Notice
**Headline 3:** Court-Authorized Update
**Description:** Applied via Workday after Sept 24 2020? A federal court issued a legal notice.

**Variation 4**
**Headline 1:** Workday Applicants 40+
**Headline 2:** Official Court Notice
**Headline 3:** Employment Information
**Description:** U.S. District Court authorized a notice for Workday users age 40 and over.

11

,

**Variation 5**
**Headline:** OFFICIAL COURT NOTICE
**Text:** Workday Applicants Age 40+ Applied after 9/24/2020. Review your legal right to joins.
**CTA:** View Notice

**Variation 6**
**Headline:** Think AI may have screened you out?. 40 or over and rejected? You could join a lawsuit.
**Text:** Workday Hiring Process Notice. Information for applicants age 40 or over who used the platform.
**CTA:** Learn More

**Variation 7**
**Text:** Rejected for a Workday job after Sept 24, 2020? 40 or over? Review the official court notice.
**CTA:** Learn More

**Variation 8**
**Headline** 1: Workday Hiring Notice
**Headline 2:** Applicants Age 40 +
**Headline 3:** Court-Authorized Info
**Description:** Information for adults 40 and over who applied via Workday after Sept 24 2020.

**Variation 9**
**Text:** 40 or over and denied by Workday? This official notice may concern your application.
**CTA:** Learn More

**4.** X

———

⬤ **Workday Case** If you are an individual age 40+ who applied through Workday after September 24, 2020, your legal rights may be affected by an ongoing federal lawsuit.



[Workdaycase.com](Workdaycase.com)
Workday 40+ Applicant Notice

**EI** Promoted

13

**Variation 1**
**Headline:** Workday Applicant Legal Notice
**Body:** FEDERAL COURT NOTICE: Information for Workday job applicants age 40 and over who applied after 9/24/2020. Review your rights ~~concerning the hiring process~~to join the lawsuit.
**CTA:** Learn More / Visit Website [Website]

**Variation 2**
**Headline:** A Federal Court Notice is Available
**Body:** ATTENTION WORKDAY APPLICANTS
Have you reviewed the court-mandated notice for individuals age 40+ applying after 9/24/2020? This notice is about potential legal rights.
**CTA:** View Notice [Website]

**Variation 3**
**Headline:** Workday 40+ Applicant Notice
**Body:** If you are an individual age 40+ who applied through Workday after September 24, 2020, You may have a ~~r~~ legal right~~s may be affected by~~to join an ongoing federal lawsuit.
**CTA:** Learn More [Website]

**Variation 4**
**Headline:** Official Court Notice
**Headline 2:** AI Hiring Lawsuit Notice
**Body:** COURT-APPROVED NOTICE: A lawsuit is proceeding concerning Workday's AI-based screening tools and their impact on job applicants age 40 and over who applied after 9/24/2020.
**CTA:** Read Full Notice [Website]

**Variation 5**
**Headline:** Official Court Notice
**Headline 2:** Workday Case: Response Due
**Body:** DEADLINE ALERT: Applicants to Workday age 40 or older who applied after 9/24/2020 must act by the court-set deadline to preserve their right to join~~s in~~ the ongoing lawsuit.
**CTA:** View Deadline Info [Website]

**Variation 6**
**Headline:** Official Court Notice
**Headline 2:** Am I Part of the Applicant ~~Class~~Collective?
**Body:** LEGAL NOTICE REGARDING: Individuals who applied for a job through Workday and satisfy all three criteria: 1) Age 40+ 2) Applied after 9/24/2020 3) Were rejected are preliminarily eligible.
**CTA:** Check Eligibility Now [Website]

# PLAINTIFFS' EXHIBIT IB

Docusign Envelope ID: 400EA200-4924-48DE-ABBD-CA7054062D20

1

2         **UNITED STATES DISTRICT COURT**

3         **NORTHERN DISTRICT OF CALIFORNIA**

4    DEREK L. MOBLEY, for and on behalf of          Case No. 3:23-cv-00770-RFL-LB

5    himself and other persons similarly situated;    Complaint Filed: February 21, 2023
         Plaintiff,
6
     v.
7
     WORKDAY, INC.
8
         Defendant.
9

10

11

12         <u>**DECLARATION OF ABBY GARCIA**</u>

13   I, Abby Garcia, hereby declare under penalty of perjury pursuant to 28 U.S.C. §
     1746 that the following is true and correct.
14

15   **1.    Qualifications**

16   I am a social media consultant with over 13 years' experience designing and managing paid
     digital advertising campaigns for public awareness, consumer protection, and legal notice
17   programs. I am a graduate of the University of California-Los Angeles. I have been retained by
     Plaintiffs 'counsel to assist in developing and implementing the social media component of
18   the collective action notice plan in this matter.

19

20   **2.    How the Notice Will Be Advertised**

21   The digital notice campaign will use paid advertisements on major, reputable social media
22   and digital platforms, specifically Meta (Facebook and Instagram), LinkedIn, Google
     Display/Search, and X (formerly Twitter).
23
     Each advertisement will:
24
     Contain language approved in the Court-approved Short Form Notice,
25
26   Some of the proposed mock-ups included in the attached dissemination plan for further
     consideration contain variations to the notice language for brevity designed to fit within the
27   social media context,

28
                         Declaration of Abby Garcia
                  Mobley et sl. v. Workday, Inc. 3:23-cv-00770-RFL-LB

Docusign Envelope ID: 400EA200-4924-48DE-ABBD-CA7054062D20

Be neutral, factual, and non-promotional,

Include a direct link to the notice website where collective members can access the full notice and additional case information.

The campaign will run for 60 days, using paid placements targeted to adults aged 40 and older in the United States. Ads will appear in users 'feeds and search environments as sponsored content, ensuring visibility alongside their normal online activity.

This approach combines:

**Broad demographic coverage** (Facebook and Instagram),

**Professional targeting** (LinkedIn),

**High-intent search reach** (Google), and

**Supplemental awareness among HR, tech, and policy communities** (X/Twitter).

All advertisements will undergo review and final approval prior to publication.

The accompanying Proposed Digital Notice Plan outlines the campaign schedule, platform mix, and creative review process. My role is to oversee implementation of that plan and ensure that each placement complies with platform policies.

## 3. Why This Plan Will Reach a Sufficiently Broad Audience

The chosen platforms are among the most widely used digital networks by adults aged 40 and older. According to public research by the Pew Research Center (2024), roughly 80% of U.S. adults aged 40-64 use Facebook or Instagram weekly, and over 60% use LinkedIn or YouTube. This ensures that the platforms selected are representative of the target population and capable of delivering notice to a broad, diverse audience nationwide.

By combining the broad demographic reach of Meta (Facebook and Instagram), the professional targeting capabilities of LinkedIn, the intent-based visibility of Google Search and Display, and the supplemental awareness generated on X (formerly Twitter), the campaign ensures that notice appears repeatedly across multiple contexts and user groups, making it reasonably calculated to reach a broad and representative audience of adults aged 40 and over.

This multi-platform approach, supported by neutral creative and counsel oversight, satisfies the requirements standard federal notice practices by ensuring that the message reaches users through multiple pathways rather than relying on a single source or channel.

Using multiple platforms with distinct user bases ensures that notice is:

**Repeated across different contexts** (social, professional, and search),

1    **Delivered to users with varied online behaviors,** and

2    **Not dependent on a single medium** or demographic subset.

3    This combination of reach, platform diversity, and continuous exposure makes the plan
4    reasonably calculated to reach a sufficiently broad audience of potential collective
5    members, satisfying standard federal notice practices.

6    ## 4.  Compliance and Neutrality

7    All advertisements will be compliant with applicable platform policies. The campaign will
8    not collect any personal information or track user behavior. All user interactions will occur
9    through a secure website.

10   ## 5.  Conclusion

11
12   Based on my professional experience and the characteristics of the selected platforms, it is
     my opinion that this digital advertising plan is reasonably calculated to reach a broad and
13   representative audience of adults aged 40 and older who may be members of the
     collective. I declare under penalty of perjury that the foregoing is true and correct.

14   Executed this 15 day of October 2025, at Los Angeles, California.

15
16   is/ *rilolni* aartia
     Abby d2reir
17   Social Media Consultant

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT B

## Exhibit A – Long Form Notice

**TO:** All individuals 40 years of age or older who, at any time from September 24, 2020 to the present, applied for job opportunities using Workday, Inc.'s job application platform.

**Re:** Collective action lawsuit against Workday for alleged violations of the Age Discrimination in Employment Act ("ADEA").

## I.      INTRODUCTION

This notice and its contents have been authorized by the United States District Court for the Northern District of California.  The Court has taken no position in this case regarding the merits of Plaintiffs' claims or of Workday's defenses. This notice is intended to provide information about whether you may be eligible to join the lawsuit as a party and, if so, the steps you may take to join.

If you wish to have your eligibility assessed and to join the lawsuit if found eligible, you must submit an Opt-In Eligibility and Authorization Form and Consent to Join Form, which you can find on the official case webpage, _____.  That form must be submitted by **[60 days from the date notice is finalized].**

## II.      DESCRIPTION OF THE LAWSUIT

Derek Mobley ("Plaintiff") filed this action against Workday, Inc. in the Northern District of California, Case No. 3:23-0770-RFL ("Lawsuit"), on behalf of himself and all others similarly situated.  Mobley's claims include that Workday allegedly violated the Age Discrimination in Employment Act ("ADEA") through its use of certain Artificial Intelligence ("AI") features on its job application platform.  Mobley alleges that he is over 40, and was rejected from over 100 jobs for which he met the qualifications and applied to via Workday, including through emails received less than an hour after he applied, or in the middle of the night.  Mobley contends that these rejections were the result of bias in Workday's AI.  Workday denies these allegations.  The Court has not made any findings about whether Plaintiff's claims or Workday's denial of liability have any merit.

The Court has provisionally certified an ADEA collective, which includes: "All individuals aged 40 and over who, from September 24, 2020, through the present, applied for job opportunities using Workday, Inc.'s job application platform and were denied employment recommendations." In this context, being "denied" an "employment recommendation" means that (i) the individual's application was scored, sorted, ranked, or screened by Workday's AI; (ii) the result of the AI scoring, sorting, ranking, or screening was not a recommendation to hire; and (iii) that result was communicated to the prospective employer, or the result was an automatic rejection by Workday.

For you to remain a party to this Lawsuit as part of a certified ADEA collective, the Court will ultimately need to determine that you meet all the requirements described in the above paragraph.  The preliminary eligibility determination process is described below.  **However, all you need to know, right now, to request an eligibility determination is that, on or after September 24, 2020, you applied for and were denied employment opportunities using**

4

**Workday's application platform while you were 40 or more years old.**

## III.    HOW TO JOIN THIS LAWSUIT

If you would like to join this Lawsuit as part of the ADEA collective, you should:

1) Have applied for employment opportunities using Workday's application platform since September 24, 2020, while you were 40 or more years old and were denied.

2) Fill out and electronically sign the Opt-In Eligibility and Authorization Form ("Eligibility Form") and Consent to Join Form ("Consent Form") located on the official case webpage at _____.

3) Wait while your Eligibility Form is reviewed by a Court-approved third-party administrator, who will determine whether the employer(s) you applied to may have used Workday AI features.  You should receive notice of your status within 30 days of [the end of publication notice period].  If the third-party administrator determines that you are eligible to join the Lawsuit, you will be opted in to the Lawsuit. Otherwise, you will receive an ineligibility notice, and instructions on how you can dispute your status.

4) If you are opted in to the Lawsuit, wait while counsel for the parties investigate whether you were denied an employment recommendation.  This process may be lengthy.

5) If you are determined to satisfy all the conditions for membership in the ADEA collective certified by the Court, you will remain a party to the Lawsuit.  If you do not satisfy the conditions for membership, you will be dismissed from the Lawsuit by the Court.  That means you will be removed as a party from this Lawsuit, though you may still be able to pursue your own separate lawsuit, depending on your situation.

### A.    Effect of Submitting the Opt-In Eligibility and Authorization Form and the Consent to Join Form

The Eligibility Form requires you to identify the employers to whom you submitted an application for employment through Workday's job application platform since September 24, 2020 and were denied the position.  **Please be sure to identify *all* employers that you remember applying to during the relevant time period, because this may affect your eligibility to join this Lawsuit.**  You may, but do not have to, upload documentation of your job applications submitted through Workday's job application platform to assist the third-party administrator in evaluating your eligibility.  However, even if you upload documentation, you must still describe each one of your applications by manually entering information about each application in the Eligibility Form fields.

The information you submit in your Eligibility Form will be reviewed by a court-approved third-party administrator, who will decide if you may be eligible to join this Lawsuit as an ADEA collective member.  The third-party administrator's review is limited to determining whether any of the employers you listed on your Form are employers who enabled Workday's AI features during the time period in question.

The third-party administrator will treat the information you submit in your Eligibility Form as confidential.  It can only be shared for the reasons described below:

> Only if you are found to be eligible to join the Lawsuit, the Eligibility Form authorizes the third-party administrator to disclose to counsel for the parties in this Lawsuit (1) your name, birth date, and contact information; (2) the details (including documents) you have provided about your applications to employers who have enabled Workday's AI features ("Qualifying Applications"); and (3) your Consent Form, which will be publicly filed with the Court.

> Only if you are found to be eligible to join the Lawsuit, the Eligibility Form authorizes counsel for the parties to this Lawsuit to (1) contact the employers who received your Qualifying Applications, and (2) receive from the employers all information and documentation regarding your Qualifying Applications, including personal identifying information, only for use in this Lawsuit.  Authorizing the disclosure of your documents and information is necessary to determine whether you satisfy all the conditions for membership in the collective certified by the Court, so that you may remain a party to the Lawsuit.

> If you are found ineligible to join the Lawsuit, and you wish to dispute this determination with the help of Plaintiffs' counsel, the Eligibility Form authorizes Plaintiffs' counsel to receive your complete Eligibility Form and Consent Form.

By signing and submitting the Consent Form, you consent to opt in and join the Lawsuit if you are deemed eligible.  If you are found eligible, you will be automatically opted into the Lawsuit and will become a party without needing to take any further action.

You may choose to join the Lawsuit as a party without participating in the eligibility determination process described above.  However, failure to submit the Eligibility Form could result in your dismissal from the Lawsuit if you are unable to prove that you qualify to be a member of the ADEA collective.

If you do not complete and submit the Forms, or otherwise join the Lawsuit, by [60 days from the date notice is finalized], you will not be permitted to join the ADEA collective in the future.

**B.**    **Legal Effect of Opting In**

If you are found eligible and are opted in to the Lawsuit, or you otherwise join the Lawsuit, as part of the ADEA collective you will be bound by a favorable or unfavorable judgment on Plaintiffs' ADEA claim.  If you do not opt in or otherwise join, you will be precluded from future participation in this case, including participation in any settlement related to the ADEA claim, but you may still bring your own separate lawsuit, depending on your situation.

No ADEA collective has been finally certified, and regardless of your initial eligibility recommendation, you may still be dismissed from the case.

## IV.      NO RETALIATION PERMITTED

Federal law prohibits Workday from retaliating against you for opting-in to this Lawsuit or otherwise exercising your rights.

## V.      YOUR LEGAL REPRESENTATION IF YOU JOIN

The Plaintiffs in this case are represented by:

[Plaintiffs' counsel's names and addresses]

If you have questions about this Notice, the Opt-In Eligibility and Authorization Form, or the Consent to Join Form, you may contact the third-party administrator at _____, or the attorneys listed above ("Plaintiffs' Counsel") at [EMAIL ADDRESSES].

If you want to join the Lawsuit, but you do not want to be represented by Plaintiffs' Counsel, you have the right to hire a different attorney or represent yourself.  Contact the third-party administrator at any point to advise them if you do not want to be represented by Plaintiffs' Counsel.

**PLEASE DO NOT CONTACT THE COURT WITH QUESTIONS ABOUT THIS LAWSUIT.**