Exhibit "A"

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**Cincinnati Area Office**
550 Main Street, Suite 10-191
Cincinnati, OH 45202
(513) 914-6015
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 08/13/2025

**To:** Jill E. Hughes
410 E. Hackberry Drive
Arlington Heights, IL 60004

Charge No: 555-2024-01549

EEOC Representative and email:     Amy Trzop-Vos
Lead Systemic Investigator
Amy.Trzop-Vos@eeoc.gov

### DETERMINATION AND NOTICE OF RIGHTS

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice that the EEOC has dismissed your charge and has issued you notice of your right to sue the respondent(s) on this charge. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of EEOC's official notice of dismissal.** You should keep a record of the date you received the EEOC's official notice of dismissal. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 555-2024-01549

On behalf of the Commission,

Digitally Signed By: Richard Burgamy
08/13/2025
Richard Burgamy
Acting District Director, Indianapolis

**Cc:**
Anastasia Kerdock
Orrick, Herrington & Sutcliffe LLP
51 W 52ND St. Fl. 12
New York, NY 10019

Alexander Robinson
Workday, Inc.
6110 Stoneridge Mall Rd.
Pleasanton, CA 94588

Esther Lander
Orrick, Herrington & Sutcliffe LLP
2100 Pennsylvania Ave. NW Frnt. 6
Washington, DC 20037

Kayla Delgado Grundy
Orrick, Herrington & Sutcliffe LLP
405 Howard St, Fl 10
San Francisco, CA 94105

Roderick T Cooks Esq.
Winston Cooks
420 20th St N Ste 2200
Birmingham, AL 35203

**Please retain this Notice for your records.**

Enclosure with EEOC Notice of Closure and Rights (05/25)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC
*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you** *receive* **EEOC's official notice of dismissal**. You should **keep a record of the date you received EEOC's official notice of dismissal**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving EEOC's official notice of dismissal (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA, or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of your receipt of EEOC's official notice of dismissal and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of EEOC's official notice of dismissal, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method). You may also submit a

FOIA request for your charge file by U.S. Mail by submitting a signed, written request identifying your request as a "FOIA Request" for Charge Number 555-2024-01549 to the District Director at Richard Burgamy, 115 W. Washington St. South Tower Suite 600, Indianapolis, IN 46204.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 555-2024-01549 to the District Director at Richard Burgamy, 115 W. Washington St. South Tower Suite 600, Indianapolis, IN 46204.

You may request the charge file up to 90 days after receiving EEOC's official notice of dismissal. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.

### NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA)

The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at: http://www.eeoc.gov/laws/types/disability_regulations.cfm.

**"Actual" disability or a "record of" a disability**

If you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability:

- ✓ **The limitations from the impairment no longer must be severe or significant** for the impairment to be considered substantially limiting.

- ✓ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.

- ✓ **Only one** major life activity need be substantially limited.

- ✓ Except for ordinary eyeglasses or contact lenses, the beneficial effects of **"mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.

- ✓ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active**.

- ✓ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

**"Regarded as" coverage**

An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

- ✓ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.

- ✓ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively **both** transitory (lasting or expected to last six months or less) **and** minor.

- ✓ A person is not able to bring a failure to accommodate claim **if** the individual is covered only under the "regarded as" definition of "disability."

***Note:** Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability. For more information, consult the amended regulations and appendix, as well as explanatory publications, available at* http://www.eeoc.gov/laws/types/disability_regulations.cfm.

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
# E-FILE FOR ATTORNEYS

**RE:** EEOC Charge No. 555-2024-01549

1. I acknowledge that I am submitting a charge of discrimination with the EEOC on behalf of Ms. Jill E. Hughes against Workday, Inc..

2. I acknowledge that the EEOC is required to serve notice of the charge on Workday, Inc., and that the notice may include Ms. Jill E. Hughes's name or other identifying information.

3. I certify that (1) I am an attorney licensed to practice law, (2) I represent Ms. Jill E. Hughes, (3) this client has authorized me to submit this charge, and (4) the information I am providing is true and correct to the best of my knowledge.

**Signature**

Roderick T. Cook

Roderick T Cooks Esq.

**Date**

05/03/2024

DocuSign Envelope ID: 6EFFE977-2A83-43D7-85A9-542116031B17

| CHARGE OF DISCRIMINATION | AGENCY | CHARGE NUMBER |
|---|---|---|
| This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form. | ☐ FEPA<br>☒ EEOC | |

| Illinois Department of Human Rights | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| NAME *(Indicate Mr., Ms., Mrs.)* | HOME TELEPHONE *(Include Area Code)* |
|---|---|
| Jill Hughes | (773) 689-0062 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| 410 E. Hackberry Drive | Arlington Heights, IL 60004 | 02-04-1974 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME *(If more than one list below.)*

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE *(Include Area Code)* |
|---|---|---|
| Workday, Inc. | Over 1000's | (925) 951-9000 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 6110 Stoneridge Mall Road | Pleasanton, CA 94588 | Alameda |

| NAME | TELEPHONE NUMBER *(Include Area Code)* |
|---|---|
| | |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| | | |

| CAUSE OF DISCRIMINATION BASED ON *(Check appropriate box(es))* | DATE DISCRIMINATION TOOK PLACE<br>*EARLIEST (ADEA/EPA)        LATEST (ALL)* |
|---|---|
| ☐ RACE   ☐ COLOR   ☒ SEX   ☐ RELIGION   ☒ AGE<br>☐ RETALIATION   ☐ NATIONAL ORIGIN   ☒ DISABILITY   ☐ OTHER *(Specify)* | April 15, 2024<br><br>☒ CONTINUING ACTION |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - (When necessary for State and Local Requirements) |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct. | SIGNATURE OF COMPLAINANT |
| DocuSigned by:<br>*Jill Hughes*<br>Date 5/3/2024      Charging Party *(Signature)* 7CB5A36ABAC7476... | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(Day, month, and year) |

EEOC FORM 5 (10/94)

DocuSign Envelope ID: 6EFFE977-2A83-43D7-85A9-542116031B17

**Charging Party's Averments**

1.  The Charging Party, Jill E. Hughes, is a female over the age of 50 (d.o.b. February 4, 1974). Ms. Hughes possesses B.A. from the University of Cincinnati and her M.A. from the University of Chicago and has more than 28 years of executive-level experience in her professional career of medical/technical/scientific and legal writing/communications.

2.  She is challenging Workday's use of Artificial Intelligence and Machine Learning which disproportionately discriminates against applicants over the age of 40, females and /or persons with disabilities as a class in violation of Title VII, the Americans with Disabilities Act Amendments Act of 2008 ("ADAAA of 2008"), and the Age Discrimination in Employment Act ("ADEA"). Upon information and belief, Workday's algorithmic decision-making tools have subjected Ms. Hughes to disparate treatment on the basis of her age, gender, and disability [cancer survivor with current asthma diagnosis]. Further, Workday's algorithmic decision-making tools have a disparate impact on female applicants and those over the age of 40 and who suffer from disabilities.

3.  Since December 2023, Ms. Hughes has applied for hundreds of positions that use Workday, Inc. as a screening tool for sourcing, recruiting, talent acquisition and/or hiring. She has been denied employment each time.

4.  This charge of discrimination alleges violations of Title VII's prohibition against gender discrimination, the ADAAA of 2008's prohibition against disability discrimination, and the Age Discrimination in Employment Act of 1967, which prohibit employers and employment agencies from discriminating in hiring on the basis of age.

5.  Workday, Inc., a third-party vendor, sources, screens, recruits, and acquires talent for its client -customers. Upon information and belief Ms. Hughes' applications have all been screened by artificial intelligence processes and/or applications.

6.  Upon information and belief, artificial intelligence ("AI"), to include algorithms and machine learning ("ML"), created by Workday, Inc. evaluated Ms. Hughes' applications and decided whether she moved forward in the hiring process.

7.  Workday primarily sells to medium-sized and large, global organizations that span numerous industry categories, including professional and business services, financial services, healthcare, education, government, technology, media, retail, and hospitality. Firms purchase a subscription for Workday's services and as part of their subscription, customers are provided support services to include professional consulting to enable them to use Workday applications. Workday has acknowledged that the development of AI and ML poses present ethical issues in the area of human rights and employment that could expose it to legal liability.

8.  The selection tools marketed by Workday, Inc. to its customers allows them to manipulate and configure them in a discriminatory manner to source, recruit, hire, and onboard employees. Workday's processes interpret an applicant's qualifications and recommend whether the applicant should be accepted or rejected. Applicants who are not members of these protected groups and who are similarly situated to Ms. Hughes, have not been subjected to such discriminatory disparate treatment.

9.  As part of its Strategic Enforcement Plan for 2024-2028 the EEOC stated: "In implementing the SEP, the Commission can – and will – do more to combat employment discrimination, promote inclusive workplaces, and respond to the national call for racial and economic justice. Among other changes, this SEP:

> "Recognizes employers' increasing use of technology including artificial intelligence or machine learning, to target job advertisements, recruit applicants, and make or assist in hiring and other employment decisions, practices, or policies."

10.  Workday's hiring applications are technically complicated as such it provides its customers with highly skilled and trained service professionals to assist in its implementation and use. Professional consulting services are

DocuSign Envelope ID: 6EFFE977-2A83-43D7-85A9-542116031B17

performed by Workday's own staff, by a third party, or by a combination of the two.

11.    Workday touts the efficiency of their "AI" and "ML" tools to its customers for applicant sourcing, recruitment and selection decisions, i.e. functions traditionally performed by employment agencies.

12.    Workday's approach to AI is unique in that according to it, "Workday thinks about and implements AI and ML differently than any other enterprise software company in the world."

13.    In its securities filings, Workday states, "Human Capital Management: Solutions for the Office of the CHRO In the changing world of human resources ("HR"), Workday helps organizations identify and respond to rapidly changing conditions, whether they stem from shifting talent needs or a renewed focus on belonging and diversity. Workday's suite of HCM applications allows organizations to manage the entire employee lifecycle – from recruitment to retirement - enabling HR teams to hire, onboard, pay, develop and reskill, and provide meaningful employee experiences that are personalized and helpful, based on listening to the diverse needs of today's workforce.

14.    For example, our skills technology, built on an AI and ML foundation, helps organizations make the important shift to a skills-first approach, helping them prepare today for the jobs of tomorrow."

15.    Workday operates on a fee-based subscription model that reflects an on-going relationship with their client employers, to wit it states "[a]dditionally, we offer extensive customer training opportunities and a professional services ecosystem of experienced Workday consultants and system integrators to help customers not only achieve a timely adoption of Workday but continue to get value out of our applications over the life of their subscription."

16.    Workday's AI and ML recruit applicants for its customers and then refine the candidate pools:

A.    Referrals:

Workday Recruiting enables the entire organization to participate in the talent acquisition process using referrals and recommendations.  Through the referral leaderboard, you can encourage employees to generate more referrals by allocating points to the referral activity.

B.    Endorsements:

Refine candidates' pools with endorsements.  As candidates indentify[sic] contacts within your organization, Workday automatically seeks their endorsement.

17.    Workday, Inc. provides this service for hundreds if not thousands of companies, including numerous Fortune 500 firms.  Women, the disabled and individuals over the age of 40 who have been disparately impacted the same way by these processes number in the hundreds, if not thousands.

18.    The recruiting, procurement, selection processes and/or tests utilized by Workday, Inc. in making selection decisions-to include sourcing, recruiting, screening and hiring applicants discriminate on the basis of gender, disability, and age.

19.    Upon information and belief, these processes disparately impact women, the disabled, and individuals over the age of 40 as a class in that these they have the effect of disproportionately excluding them from jobs for which they are qualified.  Moreover, these processes are not reasonably designed and administered to achieve a legitimate business purpose and do not take into account potential harm to women, the disabled, and older workers.  Finally, these selection processes are not job-related, nor are they consistent with any business necessity.

20.    Amazon recently came under fire because its engineers unwittingly created an algorithm that rejected women applicants who used the term "women" in their application materials. The algorithm rejected potentially qualified women before they even reached the interview stage, but other candidates who were not even qualified made out through the hiring process.  The reason for this hiring bias was the fact that the AI had learned to replicate the biases

DocuSign Envelope ID: 6EFFE977-2A83-43D7-85A9-542116031B17

of the data used to create it. See Lori Andrews & Hannah Bucher, *Automating Discrimination:  AI Hiring Practices and Gender Inequality,* 44:1 Cardozo Law Review, 145 (2022-2023).

21.    Upon information and belief, Workday processes operate by requiring an applicant, as part of the employment process, to surrender their personnel information, employment history, and other factors to Workday's proprietary Large Language Models ("LLM's") and AI for screening and/or advancement in the employment process.

22.    By funneling all applicants through Workday's software, employers have designated Workday and their AI to serve as their exclusive agent for employment opportunities. Requiring applicants to submit to Workday's AI for employment consideration is subject to class wide consideration as an employment practice.

23.    Workday's AI screening mechanism functions as an employment test/screening tool for applicants to advance in an employer's referral and selection process.

24.    Workday's algorithmic decision-making tools and AI disparately impact Ms. Hughes and other members of the classes represented here by disqualifying them for employment on unlawful and discriminatory grounds. Workday's AI has not been validated in accordance with the Uniform Guidelines on Employment Selection Procedures.

25.    For example, she has been questioned about whether she has a disability and always clicks yes, as she is a cancer survivor with a current diagnosis of asthma.  Questions for characteristics that are close proxies for disabilities, are likely to screen out  people with physical or mental health disabilities (like Ms. Hughes) based on factors that are not necessary for essential job functions in violation of the ADAAA.

26.    Workday deploys its AI without proper guardrails including the full description and disclosure of the training data used to create the LLM's which reflects intentional discrimination against women, the disabled, and individuals over the age of 40.

27.    Regarding AI "Model Opacity and Access" the Department of Justice stated-

"The agencies also worry that many automated systems are "black boxes" whose internal workings may not be clear even to the developer of the system. This lack of transparency, the agencies assert, could makes it more difficult for developers, businesses, and individuals to know whether an automated system is fair."

28.    Failing to disclose in detail how the AI is being used to screen applicants runs counter to Workday's conclusory representations to be one of the world's most ethical companies.  In other marketing materials, Workday concedes that their AI sources applicants, makes recommendations, and selects candidates based on other prohibited factors such as age in the search for younger workers and in violation of the Title VII, the ADAAA, and the Age Discrimination in Employment Act of 1967.

29.    Moreover, upon information and belief, Ms. Hughes's age [50] is also a but for factor in her denial of employment as her resume` reflects over 20+ years of work history.  Studies have shown that extensive work-history is often used as a proxy for age discrimination.

_____
5/3/2024
Date

_____
DocuSigned by:
*Jill Hughes*
2A4F34CF5AC7476...
Name

Exhibit "B"

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**Cincinnati Area Office**
550 Main Street, Suite 10-191
Cincinnati, OH 45202
(513) 914-6015
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
### (This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 08/13/2025

**To:** Sheilah Johnson-Rocha
9676 Boca Gardens Pkwy C
Boca Raton, FL 33496

Charge No: 510-2024-10951

EEOC Representative and email:    Amy Trzop-Vos
Lead Systemic Investigator
Amy.Trzop-Vos@eeoc.gov

---

### DETERMINATION AND NOTICE OF RIGHTS

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice that the EEOC has dismissed your charge and has issued you notice of your right to sue the respondent(s) on this charge. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of EEOC's official notice of dismissal.** You should keep a record of the date you received the EEOC's official notice of dismissal. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 510-2024-10951

On behalf of the Commission,

Digitally Signed By: Richard Burgamy
08/13/2025
Richard Burgamy
Acting District Director, Indianapolis

cc:
Anastasia Kerdock
Orrick, Herrington & Sutcliffe LLP
51 W 52ND ST FL 11
New York, NY 10019

Esther Lander
Orrick, Herrington & Sutcliffe LLP
2100 Pennsylvania Ave. NW FRNT 5
Washington, DC 20037

Kayla Delgado Grundy
Orrick, Herrington & Sutcliffe LLP
405 Howard St FL 10
San Francisco, CA 94105

Roderick T Cooks Esq.
Winston Cooks, LLC
420 20th Streete North Suite 2200
Birmingham, AL 35203

**Please retain this Notice for your records.**

# INFORMATION RELATED TO FILING SUIT
# UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

## IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* EEOC's official notice of dismissal**. You should **keep a record of the date you received EEOC's official notice of dismissal**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving EEOC's official notice of dismissal (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA, or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of your receipt of EEOC's official notice of dismissal and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

## ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

## HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of EEOC's official notice of dismissal, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method). You may also submit a

Enclosure with EEOC Notice of Closure and Rights (05/25)

FOIA request for your charge file by U.S. Mail by submitting a signed, written request identifying your request as a "FOIA Request" for Charge Number 510-2024-10951 to the District Director at Richard Burgamy, 115 W. Washington St. South Tower Suite 600, Indianapolis, IN 46204.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 510-2024-10951 to the District Director at Richard Burgamy, 115 W. Washington St. South Tower Suite 600, Indianapolis, IN 46204.

You may request the charge file up to 90 days after receiving EEOC's official notice of dismissal. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
## E-FILE FOR ATTORNEYS

**RE:** EEOC Charge No. 510-2024-10951

1. I acknowledge that I am submitting a charge of discrimination with the EEOC on behalf of Sheilah Johnson-Rocha against Workday, Inc..

2. I acknowledge that the EEOC is required to serve notice of the charge on Workday, Inc., and that the notice may include Sheilah Johnson-Rocha's name or other identifying information.

3. I certify that (1) I am an attorney licensed to practice law, (2) I represent Sheilah Johnson-Rocha, (3) this client has authorized me to submit this charge, and (4) the information I am providing is true and correct to the best of my knowledge.

**Signature**

Roderick T. Cook

Roderick T Cooks Esq.

**Date**

09/03/2024

| **CHARGE OF DISCRIMINATION** | AGENCY | CHARGE NUMBER |
|---|---|---|
| This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form. | ☐ FEPA<br>☒ EEOC | |

| New York State Human Rights Law | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| NAME *(Indicate Mr., Ms., Mrs.)*<br>Sheilah Johnson-Rocha | HOME TELEPHONE *(Include Area Code)*<br>(215) 787-7095 | |
|---|---|---|

| STREET ADDRESS<br>9676 Boca Gardens Pkwy C | CITY, STATE AND ZIP CODE<br>Boca Raton, FL 33496 | DATE OF BIRTH<br>01/30/1983 |
|---|---|---|

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME *(If more than one list below.)*

| NAME<br>Workday, Inc. | NUMBER OF EMPLOYEES, MEMBERS<br>Over 1000's | TELEPHONE *(Include Area Code)*<br>(925) 951-9000 |
|---|---|---|

| STREET ADDRESS<br>6110 Stoneridge Mall Road | CITY, STATE AND ZIP CODE<br>Pleasanton, CA 94588 | COUNTY<br>Alameda |
|---|---|---|

| NAME | TELEPHONE NUMBER *(Include Area Code)* |
|---|---|

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|

CAUSE OF DISCRIMINATION BASED ON *(Check appropriate box(es))*

☒ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☒ AGE
☐ RETALIATION  ☐ NATIONAL ORIGIN  ☐ DISABILITY  ☐ OTHER *(Specify)*

DATE DISCRIMINATION TOOK PLACE
EARLIEST (ADEA/EPA)    LATEST (ALL)
Last 300-days    September 2, 2024

☒ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - (When necessary for State and Local Requirements) |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct. | SIGNATURE OF COMPLAINANT |
| | |
| | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Day, month, and year) |
| Date  9/3/2024    Charging Party (Signature) | |

DocuSigned by:
*Sheilah Johnson-Rocha*

EEOC FORM 5 (10/94)

Docusign Envelope ID: 2270A4A5-5668-432D-A6D1-76747CE3F215

## Class Action Charge for Race, Gender, and Age Discrimination in Hiring

1.     The Charging Party, Sheilah Johnson-Rocha, is an African-American female over the age of 40 (d.o.b. January 30, 1983). Ms. Johnson-Rocha has three college degrees: (1) an Associate in Arts (Business Administration); Bachelor of Business of Administration; and, a Master of Science-Major in Management. She also possesses various certifications within the pharmaceutical and biotechnology industry. She has worked in the pharmaceutical and biotechnology industries for the past 21 years.

2.     Despite her stellar qualifications, Ms. Johnson-Rocha has been unemployed and unable to secure a job for approximately 542 days. Within the last 300-days, Ms. Johnson-Rochas has applied for well over 2,000 jobs at various pharmaceutical and biotech companies. A large majority of the companies to which Ms. Johnson-Rocha has applied use the Workday, Inc. job application platform.

3.     Upon information and belief, artificial intelligence ("AI"), to include algorithms and machine learning ("ML"), created by Workday, Inc. are evaluating Ms. Johnson-Rocha's applications and disqualifying her for employment.

4.     Ms. Johnson-Rocha's qualifications and experience exceeded all criteria in the job requisitions for each of the roles for which she applied, however almost all of her applications were met with an automated rejection notifications. Out of 2,000 applications she has only spoken with 6 hiring officials. Put simply, she not only met the knowledge, skills, and abilities requirements for these jobs, she exceeded them. Yet she has not been able to secure a job.

5.     Furthermore, many of the jobs for which she has applied are not filled and are continuously re-posted. When the jobs are re-posted, Ms. Johnson-Rocha applies only to again face an automated rejection. For some companies, she has submitted 20 or more applications and all have been rejected. Upon information and belief, Workday, Inc.'s AI and ML determine who moves forward in the employment process.

6.     Workday, Inc. does not maintain diverse teams of employees that would enable it to mitigate diversity deficits which upon information and belief leads to the AI bias being experienced by Ms. Johnson-Rocha. Despite paying lip service to diversity initiatives as of June 2020, African-Americans made up less than 3% of its workforce. Moreover, upon information and belief this number drops precipitously for African-Americans involved in the creation of AI and ML tools.

7.     Workday primarily sells to medium-sized and large, global organizations that span numerous industry categories, including professional and business services, financial services, healthcare, education, government, technology, media, retail, and hospitality. Firms purchase a subscription for Workday's services and as part of their subscription, customers are provided support services to include professional consulting to enable them to use Workday applications. Workday has acknowledged that the development of AI and ML poses present ethical issues in the area of human rights and employment that could expose it to legal liability.

8.     The selection tools and services marketed by Workday, Inc. to its pharmaceutical and biotechnology customers allows these customers to manipulate and configure them in a discriminatory manner to recruit, hire, and onboard employees. Workday's processes interpret an applicant's qualifications and recommend whether the applicant should be accepted or rejected. Applicants who are not members of these protected groups and who are similarly situated to Ms. Johnson-Rocha, have not been subjected to such discriminatory treatment.

9.     As part of its Strategic Enforcement Plan for 2024-2028 the EEOC stated: "In implementing the SEP, the Commission can – and will – do more to combat employment discrimination, promote inclusive workplaces, and respond to the national call for racial and economic justice. Among other changes, this SEP:

> Recognizes employers' increasing use of technology including artificial intelligence or machine learning, to target job advertisements, recruit applicants, and make or assist in

1

Docusign Envelope ID: 2270A4A5-5668-432D-A6D1-76747CE3F215

hiring and other employment decisions, practices, or policies"

10.     Workday's hiring applications are technically complicated as such it provides its customers with highly skilled and trained service professionals to assist in its implementation and use. Professional consulting services are performed by Workday's own staff, by a third party, or by a combination of the two.

11.     Workday touts the efficiency of their "AI" and "ML" tools to its customers for applicant recruitment and selection decisions, i.e. functions traditionally performed by employment agencies.  Workday's approach to AI is unique in that according to it, "Workday thinks about and implements AI and ML differently than any other enterprise software company in the world."

12.     In its securities filings, Workday states, "Human Capital Management: Solutions for the Office of the CHRO In the changing world of human resources ("HR"), Workday helps organizations identify and respond to rapidly changing conditions, whether they stem from shifting talent needs or a renewed focus on belonging and diversity. Workday's suite of HCM applications allows organizations to manage the entire employee lifecycle - from recruitment to retirement - enabling HR teams to hire, onboard, pay, develop and reskill, and provide meaningful employee experiences that are personalized and helpful, based on listening to the diverse needs of today's workforce. For example, our skills technology, built on an AI and ML foundation, helps organizations make the important shift to a skills-first approach, helping them prepare today for the jobs of tomorrow."

13.     Workday operates on a fee based on a subscription model that reflects an on-going relationship with their client employers, to wit it states "[a]dditionally, we offer extensive customer training opportunities and a professional services ecosystem of experienced Workday consultants and system integrators to help customers not only achieve a timely adoption of Workday but continue to get value out of our applications over the life of their subscription."

14.     Workday's AI and ML recruits applicants for its customers and then refines the candidate pools:

     A.     Referrals:

        Workday Recruiting enables the entire organization to participate in the talent acquisition process using referrals and recommendations.  Through the referral leaderboard, you can encourage employees to generate more referrals by allocating points to the referral activity.

     B.     Endorsements:

        Refine candidates' pools with endorsements.  As candidates indentify[sic] contacts within your organization, Workday automatically seeks their endorsement.

15.     Workday, Inc. provides this service for hundreds if not thousands of domestic and foreign companies, including numerous Fortune 500 firms.  Individuals impacted the same way by these processes number in the hundreds of thousands.

16.     The recruiting, procurement, selection processes and/or tests utilized by Workday, Inc. in making selection decisions-to include recruiting, screening and hiring applicants discriminate on the basis of race and sex in violation of §703(k) of Title VII, 42 U.S.C. §2000e-2(k).  Upon information and belief, these processes also disparately impact African-American and female applicants because they have the effect of disproportionately excluding them.  Furthermore, the  selection procedures are not job-related, nor are they consistent with any business necessity.

17.     The recruiting, procurement, selection processes and/or tests utilized by Workday, Inc. in making selection decisions-to include recruiting, screening and hiring applicants discriminates against African American females as a distinct protected subclass.  Workday's "intersectional" discrimination subjected Ms. Johnson-Rocha to disparate

treatment because she belongs simultaneously to two or more protected classes, African-American and female, in violation of §703(k) of Title VII, 42 U.S.C. §2000e-2(k). Upon information and belief, these processes also disparately impact African-American female applicants because they have the effect of disproportionately excluding them. Furthermore, the selection procedures are not job-related, nor are they consistent with any business necessity.

18.    Title VII prohibits discrimination by employment agencies.  Section 703(b) of the Act, 42 U.S.C. § 2000e-2(b), reads:

"it shall be an unlawful employment practice for an employment agency to fail or refuse to refer for employment, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin, or to classify or refer for employment any individual on the basis of his race, color, religion, sex, or national origin.
Section 701(c) of the Act, 42 U.S.C. § 2000e(c), defines the term "employment agency" as: any person regularly undertaking with or without compensation to procure employees for an employer or to procure for employees opportunities to work for an employer and includes an agent of such a person." Workday, Inc. is an employment agency under Title VII.

19.    Workday acts as an Employment Agency.

20.    Pursuant to 42 U.S.C. § 2000e-2(k)(1)(A) (Title VII) that "An unlawful employment practice based on disparate impact is established under this subchapter only if-(i) a complaining party demonstrates that a respondent uses a particular employment practice that causes a disparate impact on the basis of race, color, religion, sex, or national origin and the respondent fails to demonstrate that the challenged practice is job related for the position in question and consistent with business necessity. . .  "Title VII defines a respondent as: "(n) The term "respondent" means an employer, employment agency, labor organization, joint labor-management committee controlling apprenticeship or other training or retraining program, including an on-the-job training program, or Federal entity subject to section 2000e-16 of this title." 42 U.S.C. § 2000e(n).  Again, under any definition Workday is an employment agency.

21.    Firms purchase a subscription for Workday's services and as part of their subscription, customers are provided support services, including professional consulting, to enable them to delegate their human resource hiring function to the Workday platform.  Workday acts as an agent on behalf of the employers, who have delegated their employment hiring decision-making authority to it.  Acting expressly or impliedly and at the direction of employers, Workday denied Ms. Johnson-Rocha and the putative class members employment unless they participated in the Workday platform. The Workday platform is the only way to gain employment with these employers. Workday's subscription-based service reflects an on-going relationship with their client-employers and includes significant engagement in the process of hiring employees.

22.    Workday's website states that it can "reduce time to hire by automatically dispositioning or moving candidates forward in the recruiting process. In what it terms "Talent Management" Workday's systems source candidates and then use algorithmic decision-making tools to recommend job opportunities.  Workday's marketing materials state that "[a]dditionally, we offer extensive customer training opportunities and a professional services ecosystem of experienced Workday consultants and system integrators to help customers not only achieve a timely adoption of Workday but continue to get value out of our applications over the life of their subscription."

23.    Workday's relationships with its client-employers are not one-off transactions but ongoing business arrangements where employers delegate their hiring function Workday who in turn uses its algorithmic decision-making tools to screen out applicants who are African-American, female,  and/or over the age of 40.  As stated previously, a prospective employee can only advance in the hiring process if they get past the Workday platforms screening algorithms.

24.    Workday embeds artificial intelligence ("AI") and machine learning ("ML") into its algorithmic decision-making tools, enabling these applications to make hiring decisions.  Workday's AI and ML also enables

SJ

Docusign Envelope ID: 2270A4A5-5668-432D-A6D1-76747CE3F215

incumbent employees at firms to participate in the talent acquisition process by making referrals and recommendations.

25.     Similarly, Workday also encourages and uses the recommendations of incumbent employees for hiring decisions.  Upon information and belief, this facially neutral employment practice has a differential effect upon African-Americans, women, and workers over the 40, because any lack of work force diversity allows for incumbent employees to consciously or unconsciously refer or recommend few, if any members of these protected classes.

26.     These systems of recruiting new workers operate to discriminate against African-Americans, women, and workers over the age of 40.  A wealth of literature discusses the potential for bias resulting from algorithmic decision-making. As the FTC has acknowledged, algorithmic bias is everywhere. Mounting evidence reveals that algorithmic decisions can produce biased, discriminatory, and unfair outcomes in a variety of high-stakes economic spheres including employment, credit, health care, and housing.

27.     Workday Acts as an Agent.

28.     Using their "AI", "ML", assessments, tests, and pymetrics to make job recommendations (algorithmic decision-making tools) or control access to jobs (equitable or otherwise), makes Workday an agent for its client-employers. Client-employers delegate to Workday certain aspects of the employers' selection decisions as to Ms. Johnson-Rocha and the putative Class Members.

29.     Chief among those was the decision to screen out Class Members from gaining employment.  Employers directed job applicants to the Workday job screening platform which then determines if they receive a job.  According to Workday's Marketing Materials, "Our skills intelligence foundation helps you build diverse teams by expanding candidate pools with equitable, AI- and ML-driven job recommendations. . . disposing of candidates "en masse" through the use of algorithmic decision-making tools delegates to Workday the responsibility to oversee the applicant hiring process.  This process is the only means an employee who applies for a job with an employer who uses the Workday platform can obtain employment.  Workday is contracted to provide these services.

30.     Workday is an Indirect Employer.

31.     Workday's ability to limit the employment opportunities of Ms. Johnson-Rocha and the putative Class Members directly interferes with any direct employment relationship between them and prospective employers. Workday's client contracts with them to provide these services via their algorithmic screening tools.  Workday is an indirect employer by virtue of its ability to discriminatorily interfere and exert peculiar control over the prospective employee's relationship with the direct employer.

32.     Upon information and belief, Ms. Johnson-Rocha and other African-Americans have suffered intentional discrimination and disparate impact discrimination on the basis of and because of their race (African-American), in violation of the Civil Rights Act of 1964, as amended.  Additionally, race was and is a motivating factor in the discrimination faced by the Charging Party and other African-Americans who have encountered the aforementioned discriminatory hiring processes.

33.     Further, as part of the employment process Ms. Johnson-Rocha was required to surrender her personnel information, employment history, and other factors to Workday's proprietary Large Language Models("LLMs") and AI for screening and/or advancement in the employment process.  By funneling all applicants through Workday's software, employers have designated Workday and its AI to be the exclusive agent for employment opportunities.  Requiring applicants to submit to Workday's AI for employment consideration is subject to class wide consideration as an employment practice.

Docusign Envelope ID: 2270A4A5-5668-432D-A6D1-76747CE3F215

34.     Workday deploys its AI without proper guardrails including the full description and disclosure of the training data used to create the LLMs which also reflects intentional discrimination against Ms. Johnson-Rocha and African Americans as a class.

35.     Failing to disclose in detail how the AI is being used to screen applicants runs counter to Workday's conclusory representations to be one of the world's most ethical companies.  In other marketing materials, Workday concedes that their AI obtain applicants, makes recommendations, and selects candidates based on other prohibited factors such as age in the search for younger workers and in violation of the Age Discrimination in Employment Act of 1967. Training Workday's LLMs in discriminatory decision making for one prohibited factor increases the likelihood that other prohibited categories such as race are also used to make the employment selection rejections/recommendations.

36.     Moreover, upon information and belief, Ms. Johnson-Rocha's age [41] is also a but for factor in her denial of employment as her resume` reflects over 20 years of work history.  Studies have shown that extensive work history is often used as a proxy for age discrimination.

37.     This charge of discrimination alleges violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§2000e et seq. and the Age Discrimination in Employment Act of 1967 ("ADEA"), which prohibit employers from discriminating in hiring on the basis of race, gender and age, respectively.

38.     Workday's recruiting, procurement, selection processes and/or tests utilized disparately impact applicants over the age of 40 because the tools used have the effect of disproportionately excluding them.  Furthermore, the selection procedures are not job-related, nor are they consistent with any business necessity.

| | |
|---|---|
| 9/3/2024 | *Sheilah Johnson-Rocha* |
| Date | Name |

Exhibit "C"

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

Cincinnati Area Office
550 Main Street, Suite 10-191
Cincinnati, OH 45202
(513) 914-6015
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 08/13/2025

**To:** Faithlinh Rowe
327 Hawks Drive Rockwall
Rockwall, TX 75087

Charge No: 555-2025-01605

EEOC Representative and email:     Amy Trzop-Vos
Lead Systemic Investigator
Amy.Trzop-Vos@eeoc.gov

### DETERMINATION AND NOTICE OF RIGHTS

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice that the EEOC has dismissed your charge and has issued you notice of your right to sue the respondent(s) on this charge. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of EEOC's official notice of dismissal.** You should keep a record of the date you received the EEOC's official notice of dismissal. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 555-2025-01605

On behalf of the Commission,

Digitally Signed By: Richard Burgamy
08/13/2025

Richard Burgamy
Acting District Director, Indianapolis

**cc:**
Anastasia Kerdock
Orrick, Herrington & Sutcliffe
405 Howard Street Fl 10
San Francisco, CA 94105

Ashley Goldsmith
Workday, Inc.
6230 Stoneridge Mall Rd.
Pleasanton, CA 94588

Ruth Bolden
Workday, Inc.
6230 Stoneridge Mall Rd.
Pleasanton, CA 94588

Kayla Grundy
Orrick, Herrington & Sutcliffe
405 Howard Street Fl 10
San Francisco, CA 94105

Roderick T Cooks Esq.
Winston Cooks, LLC
420 20th Street North Suite 2200
Birmingham, AL 35203

**Please retain this Notice for your records.**

Enclosure with EEOC Notice of Closure and Rights (05/25)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC
*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you** *receive* **EEOC's official notice of dismissal**. You should **keep a record of the date you received EEOC's official notice of dismissal**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving EEOC's official notice of dismissal (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA, or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of your receipt of EEOC's official notice of dismissal and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of EEOC's official notice of dismissal, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method). You may also submit a

Enclosure with EEOC Notice of Closure and Rights (05/25)

FOIA request for your charge file by U.S. Mail by submitting a signed, written request identifying your request as a "FOIA Request" for Charge Number 555-2025-01605 to the District Director at Richard Burgamy, 115 W. Washington St. South Tower Suite 600, Indianapolis, IN 46204.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 555-2025-01605 to the District Director at Richard Burgamy, 115 W. Washington St. South Tower Suite 600, Indianapolis, IN 46204.

You may request the charge file up to 90 days after receiving EEOC's official notice of dismissal. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency    GAVIN NEWSOM, GOVERNOR

**Civil Rights Department**    KEVIN KISH, DIRECTOR

2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 (voice) | 800-700-2320 (TTY) | California's Relay Service at 711
www.calcivilrights.ca.gov | contact.center@dfeh.ca.gov

| | |
|---|---|
| EEOC Number: | 555-2025-01605 |
| Case Name: | Mrs. Faithlinh Rowe v. Workday, Inc. |
| Filing Date: | May 09, 2025 |

### NOTICE TO COMPLAINANT AND RESPONDENT

This is to advise you that the above-referenced complaint is being dual filed with the California Civil Rights Department (CRD) by the U.S. Equal Employment Opportunity Commission (EEOC). The complaint will be filed in accordance with California Government Code section 12960. This notice constitutes service pursuant to Government Code section 12962.

The EEOC is responsible for the processing of this complaint. Please contact EEOC directly for any discussion of this complaint or the investigation.

### NOTICE TO COMPLAINANT OF RIGHT TO SUE

This letter is also your Right to Sue notice. **This Right to Sue Notice allows you to file a private lawsuit in State court**. According to Government Code section 12965, subdivision (c), you may bring a civil action under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The lawsuit may be filed in a State of California Superior Court. Government Code section 12965, subdivision (c), provides that such a civil action must be brought within one year from the date of this notice. Pursuant to Government Code section 12965, subdivision (e)(1), this one-year period will be tolled during the pendency of the EEOC's investigation of your complaint. You should consult an attorney to determine with accuracy the date by which a civil action must be filed. This right to file a civil action may be waived in the event a settlement agreement is signed.

Be advised, CRD does not retain case records beyond three years after a complaint is filed.

CRD-200-02 (09/2022)

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
# E-FILE FOR ATTORNEYS

**RE:** EEOC Charge No. 555-2025-01605

1. I acknowledge that I am submitting a charge of discrimination with the EEOC on behalf of Mrs. Faithlinh Rowe against Workday, Inc..

2. I acknowledge that the EEOC is required to serve notice of the charge on Workday, Inc., and that the notice may include Mrs. Faithlinh Rowe's name or other identifying information.

3. I certify that (1) I am an attorney licensed to practice law, (2) I represent Mrs. Faithlinh Rowe, (3) this client has authorized me to submit this charge, and (4) the information I am providing is true and correct to the best of my knowledge.

**Signature**

Roderick Cooks

Roderick T Cooks Esq.

**Date**

05/09/2025

Docusign Envelope ID: 22CDEBE2-7098-4898-BF57-E8D2BF3BC5C9

## CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

| AGENCY | CHARGE NUMBER |
|---|---|
| ☐ FEPA | |
| X EEOC | |

_____ and EEOC

*State or local Agency, if any*

| NAME *(Indicate Mr., Ms., Mrs.)* | HOME TELEPHONE *(Include Area Code)* |
|---|---|
| FaithLinh(Faith) Rowe | 408-702-0454 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| 327 Hawks Drive Rockwall, Texas 75087 | | 1981 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME *(If more than one list below.)*

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE *(Include Area Code)* |
|---|---|---|
| Workday Inc. | more than 15 | |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 6110 Stoneridge Mall Road Pleasanton, CA 94588 | | |

| NAME | TELEPHONE NUMBER *(Include Area Code)* |
|---|---|
| | |

| | COUNTY |
|---|---|
| | |

CAUSE OF DISCRIMINATION BASED ON *(Check appropriate box(es))*

| [X] RACE | [ ] COLOR | [X] SEX | [ ] RELIGION | [X] AGE |
|---|---|---|---|---|
| [ ] RETALIATION | [X] NATIONAL | [ ] DISABILITY | [ ] OTHER *(Specify)* | |

DATE DISCRIMINATION TOOK PLACE
EARLIEST *(ADEA/EPA)*     LATEST *(ALL)*

July 15, 2024 (earlier as well) and continuing

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I am filing this charge to challenge class wide, Race (Asian), National Origin (Asian), sex and Age discrimination in Workday's proprietary Large Language Models ("LLM") Artificial Intelligence ("AI") and Machine Learning ("ML") products utilized to evaluate/screen applicants for employment.    I have been an HRIS professional for many years and have extensive HR experience. I am well qualified and submitted applications for many vacancies which required that I use the Workday platform.    I have also unsuccessfully applied directly to Workday Inc. for employment.

On July 15, 2024, I applied for an Associate Director HR Technology to AT&T via the Workday platform. AT&T funnels applicants through Workday's software. Workday's proprietary AI disproportionately affects me, Female, Asian applicants, and individuals over 40.   Upon submitting my application, it immediately was rejected and I was deemed no longer under consideration.

CONTINUED ON FOLLOWING PAGE



Docusign Envelope ID: 22CDEBE2-7098-4898-BF57-E8D2BF3BC5C9

How Workday's AI/ML screens applications remains a mystery to the applicants. Certain processes that have been disclosed are recognized to be systemically discriminatory.    For example, Workday concedes that it AI/ML seeks out recommendations from the current workforce to reward job applicants in the AI/ML screening process.    Utilizing an employer's current workforce as a benchmark for advancement in the application process as it relates to higher paying positions automates past discriminatory hiring practices.

Using training data that has not validated in accordance with Uniform Guidelines on Employee Selection reflects disparate treatment (intentional discrimination given the statistical disparities) and disparate impact against myself and women as class, applicants over the age of 40 and Asian Americans.

As the gatekeeper for employment opportunities, Workday is an employment agency and agent.    Workday is creating discriminatory barriers to entry that violate Title VII and the Age Discrimination in Employment Act.    Despite caution from leading experts that AI/ML is untested for recommendation of candidates for employment selection and subject to discriminatory AI drift, Workday deems their product as "Ethical AI". Overselling Workday's AI/ML's capabilities without proper safeguards or disclosures of what the data is trained on harm the employment opportunities for women, Asian Americans as a class of persons and/or persons over 40 reflecting intentional discrimination and disparate impact.

| | NOTARY - (When necessary for State and Local Requirements) |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | |
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct. | SIGNATURE OF COMPLAINANT |
| 5/9/2025<br><br>Date          Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(Day, month, and year) |