Lee D. Winston (ASB: 6407O72L)
*Admitted pro hac vice*
lwinston@winstoncooks.com
Roderick T. Cooks (ASB: 5819O78R)
*Admitted Pro Hac Vice*
rcooks@winstoncooks.com
Bethany Mae Logan (1360X15Z)
*Admitted Pro Hac Vice*
bneal@winstoncooks.com
Winston Cooks, LLC
420 20th Street North, Suite 2200
Birmingham, AL 35203

Robert L. Wiggins, Jr. (ASB: 1754G63R)
*Admitted Pro Hac Vice*
rwiggins@wigginschilds.com
Ann K. Wiggins (ASB: 7006i61a)
*Admitted Pro Hac Vice*
awiggins@wigginschilds.com
Jennifer Wiggins Smith (ASB:9622E53S)
*Admitted Pro Hac Vice*
jsmith@wigginschilds.com
Wiggins Childs Pantazis Fisher and Goldfarb
301 North 19th Street
Birmingham, AL 35203

Jay Greene, JD, CPA
greenattorney@gmail.com
Greene Estate, Probate, and Elder Law Firm
447 Sutter Street, Suite 435
San Francisco, CA 94108

Attorneys for the Plaintiff and the Proposed Classes and Collective

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEREK L. MOBLEY, for and on behalf of himself and other persons similarly situated, )<br>Plaintiffs, )<br>v. )<br> )<br> )<br> )<br> )<br> )<br> )<br>WORKDAY, INC. )<br>Defendant. ) | Case No. 3:23-cv-00770-RFL<br><br>**PLAINTIFFS' PROPOSED LONG FORM NOTICE AND NARRATIVE**<br>Courtroom:    15, 18th Floor<br>Judge: Hon. Rita F. Lin<br>Complaint Filed: February 21, 2023 |

Plaintiffs' proposed revised long form Notice and accompanying Opt-In Form and Attorney Authorization Form are attached as Exhibits A, B and C respectively. The long form Notice attached in Exhibit A contains the following items required by the Court's Order (ECF 195), to (1) "inform opt-in plaintiffs of any fee arrangement that may affect their recovery"; (2) "explain that they have the right to join the lawsuit now, but that there will be a later stage in which the Court will determine whether they have the right to stay in the lawsuit"; (3) "explain that, if they become a party to the lawsuit, they may be required to provide certain information to Workday"; (4) further explain that "Workday may be required to provide certain information to them"; (5) explain that "the Court will have a mechanism for ordering sensitive information to be kept confidential [but] not attempt to provide a broader overview of the litigation process or confidentiality"; and (6) "explain[] that the opt-in form will be part of the public Court record." Order at 2 (ECF 195).

**Plaintiff's Position On The Remaining Disputed Provisions Of The Notice**

The attached Exhibit D is the required redline identifying the remaining disputes and "differences between the competing proposals" on such disputes which include the following:

**§I:** The parties agree on the following terms of the Introduction in §I of the Notice which states "[y]ou have the right to join this lawsuit if you applied for employment opportunities using Workday's application platform since September 24, 2020, while you were 40 or more years old," Exh. A, §I, but disagree on Workday's proposal to add the following additional clause stating you must also have been "improperly screened out by AI." Exh. D §I. That condition is better and less confusingly stated in the next section of the Notice which informs the prospective Opt-In that:

> The Court has provisionally certified an ADEA collective, which includes: "All individuals aged 40 and over who, from September 24, 2020, through the present, applied for job opportunities using Workday, Inc.'s job application platform and were denied employment recommendations." In this context, being "denied" an

"employment recommendation" means that (i) the individual's application was scored, sorted, ranked, or screened by Workday's AI; (ii) the result of the AI scoring, sorting, ranking, or screening was not a recommendation to hire; and (iii) that result was communicated to the prospective employer, or the result was an automatic rejection by Workday.

Exh. A, § II.

It is asking too much to tell prospective opt-ins in the Introduction that they must have been "improperly screened out by AI" just to file a notice of consent to join. *See e.g. Campbell v. City of Los Angeles*, 903 F.3d 1090, 1117-1118 (9th Cir. 2017). As stated in the foregoing provision of § II, that is a question that prospective opt-ins must answer at the post-discovery decertification stage of the case, not in the opening words of a mere Notice of their right to consent to join. *Id.*; *see also* Exh. A, § II.

**§II:** Plaintiffs disagree with striking the following italicized clause in the sentence in Section II of the Notice that informs potential opt-ins that once they submit their Opt-In Consent to Join Form, "the Court will subsequently need to determine that you meet the requirements described in the above paragraph *and you will be represented by the Plaintiffs' attorneys in making that showing*." Exh. A, §II. That clause fact is included pursuant to the Court's Order requiring that the Notice "explain that they have the right to join the lawsuit now, but that there will be a later stage in which the Court will determine whether they have the right to stay in the lawsuit" and that "if they become a party to the lawsuit, they may be required to provide certain information to Workday," Order at 2 (ECF 195). Such prospective opt-ins are entitled to be informed that they will have the assistance of Plaintiffs' counsel in meeting such challenge at the decertification stage of the lawsuit.

**§§III and IV:** Plaintiffs similarly disagree with Workday's proposal to strike all of the provisions of §§III-IV, which explain the prospective opt-in's right to confidentiality of their

personal information and documentation, along with the purpose of the Confidentiality Authorization Form to allow their attorneys to obtain their information and documents from the Workday customer-employers to whom they applied for employment through Workday's job application platform. Exh. A, §§III-IV; Exh. C, Confidentiality Authorization Form. The Court's Order requires the Notice to explain that "the Court will have a mechanism for ordering sensitive information to be kept confidential." Order at 2 (ECF 195). Plaintiffs' proposed notification in §§III and IV explains such "mechanism" to prospective opt-ins as required. Workday's proposed alternative does not do so by merely telling them that "[t]he Court has procedures that will protect confidential information from public disclosure as appropriate." Exh. D.

**§V:** For the same reason as in §II above, Plaintiffs disagree with Workday's proposal to strike the following notification in §V that informs prospective opt-ins about "how your claim [will] be handled and proven," *id.,* as follows:

> After you submit your Opt-In Consent To Join Form to the Plaintiffs' attorneys for filing, they will continue to represent you in obtaining the documents, testimony and other evidence that you may need to show that you meet all the requirements necessary to litigate your claim as a party to this lawsuit. As such a party, you will have the same rights and status as the other party Plaintiffs to prepare and present your disparate impact discrimination claim and defend your entitlement to remain part of this case, including your right to have your attorneys subpoena documents from the employers to whom you applied for employment through Workday's application platform, to obtain production of documents from Workday, to obtain testimony in support of your claim by deposition, to serve questions and requests for admissions for Workday to answer and to otherwise have Plaintiffs' attorneys represent you in pursuing such evidence as may be needed to maintain your status as a party and prove the merit of your claim and damages for age discrimination.

Exh. A, §V.

Plaintiffs disagree with Workday's proposal to substitute its preference for the following more limited and discouraging version of Plaintiffs' attorneys' role in representing their clients:

- If you choose to join this case, you may be required, with the help of Plaintiffs' lawyers, to answer written questions, produce documents related to your job

PLAINTIFFS' PROPOSED LONG FORM NOTICE AND NARRATIVE

application process, attend a deposition, and/or testify in court. Workday may also be required to answer written questions or produce documents related to its products to you.

Exh. D, §V.

The Plaintiffs' version of their own advertisements and Notice should not be subject to Workday's preferences or restrictions over that chosen by the Plaintiffs that has not been shown to be false, deceptive or to concern unlawful activities. *See e.g., Shapero v. Kentucky Bar Ass'n*, 486 U.S. 466, 472-474, 479-480 (1988). *Shapero* held that a mass dissemination of a letter sent "to potential clients who have had a foreclosure suit filed against them" could not be constitutionally restricted when "not false or deceptive and does not concern unlawful activities." *Id.* (holding that governmental entities cannot disallow lawyer's advertisements or "[c]ommercial speech that is not false or deceptive and does not concern unlawful activities . . . [except] in the service of a substantial governmental interest, and only through means that directly advance that interest.") (quoting *Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626, 638 (1985)). Workday's mere preference for its own wording of Plaintiffs' notice and its contents does not satisfy that standard. The Court explained that:

> Lawyer advertising is in the category of constitutionally protected commercial speech. *See Bates v. State Bar of Arizona,* 433 U.S. 350 (1977). The First Amendment principles governing state regulation of lawyer solicitations for pecuniary gain are by now familiar: "Commercial speech that is not false or deceptive and does not concern unlawful activities . . . may be restricted only in the service of a substantial governmental interest, and only through means that directly advance that interest." *Zauderer, supra,* at 638 (citing *Central Hudson Gas & Electric Corp. v. Public Service. Comm'n of New York,* 447 U.S. 557, 566, 65 L. Ed. 2d 341, 100 S. Ct. 2343 (1980)). Since state regulation of commercial speech "may extend only as far as the interest it serves," *Central Hudson, supra,* at 565, state rules that are designed to prevent the "potential for deception and confusion . . . may be no broader than reasonably necessary to prevent the" perceived evil. *In re R. M. J.*, 455 U.S. 191, 203 (1982).
>
> * * *
>
> Our lawyer advertising cases have never distinguished among various modes of written advertising to the general public. * * * Thus, Ohio could no more

prevent *Zauderer* from mass-mailing to a general population his offer to represent women injured by the Dalkon Shield than it could prohibit his publication of the advertisement in local newspapers. Similarly, if petitioner's letter is neither false nor deceptive, Kentucky could not constitutionally prohibit him from sending at large an identical letter opening with the query, "Is your home being foreclosed on?," rather than his observation to the targeted individuals that "It has come to my attention that your home is being foreclosed on." * * *

The court below disapproved petitioner's proposed letter solely because it targeted only persons who were "known to need [the] legal services" offered in his letter, 726 S.W.2d at 301, rather than the broader group of persons "so situated that they might in general find such services useful." Generally, unless the advertiser is inept, the latter group would include members of the former. The only reason to disseminate an advertisement of particular legal services among those persons who are "so situated that they might in general find such services useful" is to reach individuals who actually "need legal services of the kind provided [and advertised] by the lawyer." But the First Amendment does not permit a ban on certain speech merely because it is more efficient; the State may not constitutionally ban a particular letter on the theory that to mail it only to those whom it would most interest is somehow inherently objectionable.

* * *

Respondent does not argue before us that petitioner's letter was misleading in those respects. Nor does respondent contend that the letter is false or misleading in any other respect.

*Shapero,* 486 U.S. at 472-474, 479-480.

Respectfully submitted,

*/s/Roderick T. Cooks*

Lee D. Winston (ASB: 6407O72L)
*Admitted pro hac vice*
lwinston@winstoncooks.com
Roderick T. Cooks (ASB: 5819O78R)
*Admitted Pro Hac Vice*
rcooks@winstoncooks.com
Bethany Mae Logan (ASB: 1360X15Z)
*Admitted Pro Hac Vice*
bneal@winstoncooks.com
Winston Cooks, LLC
420 20th Street North, Suite 2200
Birmingham, AL 35203
Telephone: (205) 502-0970
Facsimile: (205) 278-5876

Robert L. Wiggins, Jr. (ASB: 1754G63R)
*Admitted Pro Hac Vice*
rwiggins@wigginschilds.com
Ann K. Wiggins (ASB: 7006i61a)
*Admitted Pro Hac Vice*
awiggins@wigginschilds.com
Jennifer Wiggins Smith (ASB:9622E53S)
*Admitted Pro Hac Vice*
jsmith@wigginschilds.com
Wiggins Childs Pantazis Fisher and Goldfarb
301 North 19th Street
Birmingham, Alabama 35203
Telephone: (205) 314-0500
Facsimile: 205) 254-1500

PLAINTIFFS' PROPOSED LONG FORM NOTICE AND NARRATIVE

**Local Counsel**:
Jay Greene, JD, CPA
greenattorney@gmail.com
Greene Estate, Probate, and Elder Law Firm
447 Sutter Street, Suite 435
San Francisco, CA 94108
Telephone: (415) 905-0215

## CERTIFICATE OF SERVICE

I hereby certify that on  November 14, 2025, I electronically filed the foregoing document with the United States District Court for the Northern District of California by using the CM/ECF system.  I certify that the following parties or their counsel of record are registered as ECF Filers and that they will be served by the CM/ECF system:

Jay Patrick Greene   jay@ greenelawfirm.com
Julie Ann Totten     Jtotten@orrick.com, jponce@orrick.com
Erin M. Connell      econnell@orrick.com
Kyla Delgado Grundy  kgrundy@ orrick.com
Alexandria R. Elliott (aelliott@orrick.com)

*s/Roderick T. Cooks*
Of Counsel

PLAINTIFFS' PROPOSED LONG FORM NOTICE AND NARRATIVE