1  JULIE A. TOTTEN (STATE BAR NO. 166470)
   jatotten@orrick.com
2  ERIN M. CONNELL (STATE BAR NO. 223355)
   econnell@orrick.com
3  KAYLA DELGADO GRUNDY (STATE BAR NO. 300513)
   kgrundy@orrick.com
4  ALEXANDRIA ELLIOTT (STATE BAR NO. 320293)
   aelliott@orrick.com
5  ORRICK, HERRINGTON & SUTCLIFFE LLP
   400 Capitol Mall
6  Suite 3000
   Sacramento, CA 95814-4497
7  Telephone:     +1 916 447 9200
   Facsimile:     +1 916 329 4900
8
   Attorneys for Defendant
9  WORKDAY, INC.

10                          UNITED STATES DISTRICT COURT

11                      NORTHERN DISTRICT OF CALIFORNIA

12

13

14  DEREK L. MOBLEY, for and on behalf of          Case No. 3:23-cv-00770-RFL
    himself and other persons similarly situated,
15                                                 **DEFENDANT WORKDAY, INC.'S**
                    Plaintiff,                     **NOTICE OF MOTION AND MOTION**
16                                                 **TO STAY COLLECTIVE ACTION**
            v.                                     **NOTICE PROCESS; MEMORANDUM**
17                                                 **OF POINTS AND AUTHORITIES**
    WORKDAY, INC.,
18                                                 Date:        January 6, 2026
                    Defendant.                     Time:        10:00 a.m.
19                                                 Courtroom:   15, 18th Floor
                                                   Judge:       Hon. Rita F. Lin
20

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2

**Page**

3    NOTICE OF MOTION AND MOTION TO STAY NOTICE PROCESS.................................... 1

4    MEMORANDUM OF POINTS AND AUTHORITIES ........................................................... 2

     I.    INTRODUCTION ......................................................................................................... 2
5
     II.   LEGAL STANDARD ................................................................................................... 3
6
     III.  THE COURT SHOULD STAY NOTICE GIVEN THE PENDING PETITIONS
7          FOR *CERTIORARI* ...................................................................................................... 4

8          A.    The Supreme Court Is Likely To Clear Up The Four-Way Circuit Split On
                 the Standard For Authorizing Notice ................................................................ 4
9
           B.    There Is More Than A "Fair Prospect" That The Court Will Overturn The
10               Ninth Circuit's "Lenient" Standard.................................................................. 5

11         C.    Irreparable Harm Will Result From A Denial Of A Stay ..................................... 8

12         D.    The Balance Of The Equities Favors Workday ...................................................... 9

           E.    The *Landis* Factors Also Favor Staying The Notice............................................ 10
13
     IV.   CONCLUSION ............................................................................................................ 11

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION TO STAY NOTICE PROCESS
3:23-CV-00770-RFL

1

2

**TABLE OF AUTHORITIES**

3

**Page(s)**

4

**Cases**

5

*Abassi v. I.N.S.*,
    143 F.3d 513 (9th Cir. 1998) ....................................................................................... 5

6

7

*Ames v. Ohio Dept. of Youth Servs.*,
    605 U.S. 303 (2025) ....................................................................................................... 5

8

*Campbell v. City of Los Angeles*,
    903 F.3d 1090 (9th Cir. 2018) ................................................................................ 3, 6

9

10

*Clark v. A&L Homecare & Training Ctr. LLC*,
    68 F.4th 1003 (6th Cir. 2023) ............................................................................. *passim*

11

*CMAX, Inc. v. Hall*,
    300 F.2d 265 (9th Cir. 1962) ................................................................................. 3, 9

12

13

*Cracker Barrel Old Country Store, Inc. v. Harrington, et al.*,
    No. 25-559 (U.S. Nov. 5, 2025) ................................................................................ 1

14

15

*Eli Lilly & Co. v. Richards*,
    No. 25-476 (U.S. Oct. 15, 2025) ............................................................................... 1

16

*Harrington v. Cracker Barrel Old Country Store, Inc.*,
    No. 23-15650, ECF No. 76 (9th Cir. Aug. 19, 2025) ............................................... 2

17

18

*Hoffmann-La Roche Inc. v. Sperling*,
    493 U.S. 165 (1989) ............................................................................................. *passim*

19

20

*Hollingsworth v. Perry*,
    558 U.S. 183 (2010) ...................................................................................... 2, 3, 4, 9

21

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936) ......................................................................................... 2, 3, 9

22

23

*Larroque v. First Advantage Lns Screening Sols, Inc.*,
    2016 WL 39787 (N.D. Cal. Jan. 4, 2016) .............................................................. 10

24

25

*Leiva-Perez v. Holder*,
    640 F.3d 962 (9th Cir. 2011) ......................................................................... 2, 4, 5, 6

26

*Lusardi v. Xerox Corp.*,
    118 F.R.D. 351 (D.N.J. 1987) ................................................................................... 6

27

28

*Manrique v. O'Keefe*,
    2022 WL 2116832 (N.D. Cal. June 13, 2022) ......................................................... 5

*Maryland v. King*,
    567 U.S. 1301 (2012) ............................................................................................ 5, 7

*McElrath v. Uber Techs, Inc.*,
    2017 WL 1175591 (N.D. Cal. Mar. 30, 2017) ...................................................... 10

*Richards v. Eli Lilly & Co.*,
    149 F.4th 901 (7th Cir. 2025) ..................................................................... 1, 3, 4, 6

*Richards v. Eli Lilly & Co.*,
    No. 24-2574, ECF No. 59 (7th Cir. Sept. 2, 2025) ................................................ 2

*Swales v. KLLM Transp. Servs., L.L.C.*,
    985 F.3d 430 (5th Cir. 2021) .......................................................................... *passim*

*Wei Lin v. Valinken*,
    2020 WL 1274133 (E.D. Cal. Mar. 17, 2020) ...................................................... 5

**Rules**

Fed. R. Civ. P. 23 ............................................................................................................ 9

Fed. R. Civ. P. 54(b) ....................................................................................................... 7

S. Ct. R. 10 .................................................................................................................. 3, 5

**Other Authorities**

Stephen M. Shapiro et al., Supreme Court Practice ch. 4, § 4.4 (11th ed. 2019) ........................... 3

## **NOTICE OF MOTION AND MOTION TO STAY NOTICE PROCESS**

PLEASE TAKE NOTICE THAT at 10:00 a.m. on January 6, 2026, or as soon thereafter as counsel may be heard, in Courtroom 15 of this Court, 450 Golden Gate Avenue, 18th Floor, San Francisco, CA 94102, before the Honorable Rita F. Lin, Defendant Workday, Inc. ("Workday") will and does move for an Order staying the collective action notice process.

Workday moves to stay the notice process on the grounds that the Supreme Court is considering two petitions for *certiorari* that implore the Court to clarify the standard that governs notice in an ADEA collective action. The Court is likely to grant *certiorari*, there is more than a fair probability the Court will overturn the Ninth Circuit's "lenient standard," Workday and its customers will be irreparably harmed absent a stay, and the balancing of the equities favor Workday. *See Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010). Moreover, staying the notice process would not damage Plaintiffs, the hardship Workday will suffer without a stay is extreme, and a stay will simplify this case. *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). Workday therefore moves this Court to grant a stay of the notice process while the remaining claims proceed as scheduled.

This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Kayla D. Grundy, the complete pleadings and records on file herein, any matters of which the Court may take judicial notice, and such other evidence and arguments presented at the hearing on this Motion.

1          **MEMORANDUM OF POINTS AND AUTHORITIES**

2  **I.     INTRODUCTION**

3          Thirty-six years ago, in *Hoffmann-La Roche*, the Supreme Court first held that district courts

4  have authority to "facilitat[e] notice to potential plaintiffs" in collective actions under the ADEA.

5  *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989).  The Court declined, however, to

6  provide any "details" on how district courts should decide whether to authorize notice, and to

7  whom, beyond prohibiting "the solicitation of claims" and "the appearance of judicial endorsement

8  of the merits of the action." *Id.* at 170, 174.  Accordingly, courts around the country have developed

9  materially different standards, resulting in a deeply entrenched, four-way circuit split with even

10  more variation among district courts.  *See Richards v. Eli Lilly & Co.*, 149 F.4th 901, 906-12

11  (7th Cir. 2025) (explaining different approaches taken across courts).  Now, for the first time since

12  *Hoffmann-La Roche* was decided, the Supreme Court is poised to finally clarify the standard that

13  governs notice in an ADEA collective action, thereby resolving the circuit split on a material issue

14  at the heart of this case.

15          Two pending petitions for *certiorari*—as well as an amicus brief on behalf of twenty

16  states—implore the Supreme Court to determine this wildly splintered issue.  *See* Petition for Writ

17  of *Certiorari* at i-ii, *Cracker Barrel Old Country Store, Inc. v. Harrington, et al.*, No. 25-559

18  (U.S. Nov. 5, 2025) ("Cracker Barrel Pet."); Petition for Writ of *Certiorari* at i, *Eli Lilly & Co. v.*

19  *Richards*, No. 25-476 (U.S. Oct. 15, 2025) ("Eli Lilly Pet."); Brief of *Amici Curiae* State of Ohio

20  et. al. at 3, *Eli Lilly & Co. v. Richards*, No. 25-476 (U.S. Nov. 17, 2025) ("States' Br.").  The

21  *Cracker Barrel* petition specifically advocates for striking down the "lenient" standard adopted by

22  the Ninth Circuit—the exact standard relied upon by this Court in authorizing notice in this case.

23  *See* Cracker Barrel Pet. at 4-5, 8; ECF No. 128.  The *Eli Lilly* petition goes even further and asks

24  the Court to overturn *Hoffmann-La Roche* entirely.  *See* Eli Lilly Pet. at i.

25          Given the four-way circuit split and the significance of the legal question involved, the

26  Supreme Court is likely to grant *certiorari* in one, or both, of these cases during this term.

27  Thereafter, the Supreme Court is likely to issue an opinion clarifying the controlling standard for

28  issuing notice in this case.  In fact, the Supreme Court may even invalidate the notice process

altogether, just a few months after this Court authorized what may be the broadest and most far-reaching notice ever authorized under the ADEA.  Pausing the notice process—but allowing the rest of the litigation to continue—has virtually no cost to Plaintiffs.  At the same time, it will grant this Court the benefit of the Supreme Court's guidance on this significantly unsettled issue, and will avoid irreparable harm to Workday. These exact same considerations led the Ninth Circuit *and* the Seventh Circuit to stay their mandates in their own cases raising the issue, thereby pausing the issuance of notice until the Supreme Court has ruled on the pending petitions.  *See Harrington v. Cracker Barrel Old Country Store, Inc.*, No. 23-15650, ECF No. 76 (9th Cir. Aug. 19, 2025); *Richards v. Eli Lilly & Co.*, No. 24-2574, ECF No. 59 (7th Cir. Sept. 2, 2025).  The Court here should do the same.

## II.   <u>LEGAL STANDARD</u>

"To obtain a stay pending the filing and disposition of a petition for a writ of certiorari, an applicant must show (1) a reasonable probability that four Justices will consider the issue sufficiently meritorious to grant certiorari; (2) a fair prospect that a majority of the Court will vote to reverse the judgment below; and (3) a likelihood that irreparable harm will result from the denial of a stay."  *Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010); *see also Leiva-Perez v. Holder*, 640 F.3d 962, 965 (9th Cir. 2011) (discussing standards for seeking a stay pending disposition of petition for *certiorari*).  "In close cases the . . . Court will balance the equities and weigh the relative harms to the" parties. *Hollingsworth*, 558 U.S. at 190; *see also Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) (recognizing "the power" a district court holds "to stay proceedings" in a case pending the outcome of a decision on a related issue in a different proceeding).

When a party seeks to pause proceedings in a district court pending the outcome of a different proceeding involving different parties, "the competing interests which will be affected by the granting or refusal to grant a stay must be weighed.  Among these competing interests are the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be

1    expected to result from a stay." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (articulating

2    the *Landis* balancing test).[1]

### III.    THE COURT SHOULD STAY NOTICE GIVEN THE PENDING PETITIONS FOR *CERTIORARI*

#### A.    The Supreme Court Is Likely To Clear Up The Four-Way Circuit Split On the Standard For Authorizing Notice.

Because the two pending petitions for *certiorari* identify a significant circuit split, there is easily a "reasonable probability" that the Supreme Court will grant on one or both of them. *See Hollingsworth*, 558 U.S. at 190. Indeed, Supreme Court Rule 10, titled "Considerations Governing Review on Certiorari," explicitly identifies situations where "a United States court of appeals has entered a decision in conflict with the decision of another United States court of appeals on the same important matter," as well as situations where "an important question of federal law that has not been, but should be, settled by [the Supreme] Court," as "compelling reasons" that warrant granting review. S. Ct. R. 10(a), (c); *see also* Stephen M. Shapiro et al., Supreme Court Practice ch. 4, § 4.4 (11th ed. 2019) (ebook) ("The Supreme Court often . . . will grant certiorari where the decision of a federal court of appeals . . . is in direct conflict with a decision of another court of appeals on the same matter of federal law.").

Here, as the Seventh Circuit explains in *Eli Lilly*, there is a deep, wide, and openly acknowledged circuit split regarding the appropriate standard district courts should apply when deciding whether to issue notice in an ADEA (or FLSA) collective action. *See Eli Lilly*, 149 F.4th at 906-12. The Ninth Circuit falls on one end of the split, authorizing notice using a "lenient" "plausibility standard" standard based primarily on the pleadings. *See Campbell v. City of Los Angeles*, 903 F.3d 1090, 1109 (9th Cir. 2018). The Fifth Circuit is on the opposite side of the split, authorizing notice only after district courts have "rigorously scrutinize[d]" whether the proposed notice recipients' claims are "actually similar" to the named plaintiffs' claims. *See Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430, 434 (5th Cir. 2021). By contrast, the Sixth Circuit

---

[1] Although *Hollingsworth* is more specific and recent than *Landis*, some courts still look to the balancing test articulated in *Landis* when determining whether to issue a stay based on a pending decision in a separate action (although those courts do not address why *Hollingsworth* is not appropriate). Even under *Landis*, however, the balance of equities significantly weighs in favor of staying the notice in this case. *See* Section III.E., *infra*.

1   authorizes notice if plaintiffs show a "strong likelihood" of similarity between the named plaintiffs'

2   claims and the notice recipients' claims, which is akin to the standard courts apply when reviewing

3   the likelihood of success on the merits for preliminary injunctions.  *Clark v. A&L Homecare &*

4   *Training Ctr. LLC*, 68 F.4th 1003, 1011 (6th Cir. 2023).  The Seventh Circuit has adopted yet

5   another approach, authorizing notice where plaintiffs "make a threshold showing that there is a

6   material factual dispute as to whether the proposed collective is similarly situated," but giving

7   district courts discretion not only on whether to issue notice, but also on whether to order additional

8   discovery, or even deny the motion without prejudice.  *Eli Lilly*, 149 F.4th at 913-14.

9        The "importance" of the issue (*i.e.*, the standard governing notice in an FLSA or ADEA

10   collective action case like this one) "cannot be overstated."  *Swales*, 985 F.3d at 443.  In fact, courts

11   repeatedly have acknowledged both the existence of the circuit split and the need for the Supreme

12   Court to resolve it.  *See Clark*, 68 F.4th at 1007 (explaining that the "30-odd years" since *Hoffmann-*

13   *La Roche* have left the district courts "with little guidance that one can call law"); *Eli Lilly*,

14   149 F.4th at 906 ("With minimal guidance from Congress or the Court, district courts have largely

15   been left to devise their own standards for facilitating notice to similarly situated employees."); *see*

16   *also id.* at 907 ("Consensus as to the proper standard for notice remains elusive.").  Additionally,

17   *twenty states* (among several other amici) have filed an amicus brief asking the Court to take up the

18   Eli Lilly petition to "end *Hoffmann-La Roche*'s mischief, or at least clarify the standard that

19   applies."  States' Br. at 3.  Given the openly acknowledged, deeply entrenched circuit split on this

20   important question of federal law, combined with two petitions that cleanly present the issue for

21   the Supreme Court's review, as well as nearly **half** of the United States begging for the Court's

22   intervention, there is more than a "reasonable probability" that the Supreme Court will grant

23   *certiorari* on one or both of these petitions and determine the standard that will control in this case.

24   *See Hollingsworth*, 558 U.S. at 190.

25        **B.    There Is More Than A "Fair Prospect" That The Court Will Overturn The Ninth Circuit's "Lenient" Standard**

26

27        The "fair prospect" standard requires a showing that a petitioner "has a substantial case for

28   relief on the merits."  *Leiva-Perez*, 640 F.3d at 967-68.  The standard is not an exacting one and

does not "demand a showing that success is more likely than not." *Id*. at 968.  It is enough that the petition raises "serious legal questions." *Id.* (quoting *Abassi v. I.N.S.*, 143 F.3d 513, 514 (9th Cir. 1998)).  "For example, courts have found that the standard is met when a petition implicates an area of law that is evolving, because the petition then raises a 'serious legal question.'" *Manrique v. O'Keefe*, 2022 WL 2116832, at *3 (N.D. Cal. June 13, 2022) (quoting *Wei Lin v. Valinken*, 2020 WL 1274133, at *2 (E.D. Cal. Mar. 17, 2020)).  And the Supreme Court has found "there is a fair prospect" that the Court will reverse the law in one circuit when there is "considered analysis of courts on the other side of the split." *Maryland v. King*, 567 U.S. 1301, 1303 (2012).  That standard is easily met here.

*First*, if the Supreme Court grants *certiorari* on the questions presented in Eli Lilly's petition, there is a fair prospect that the Court will overturn *Hoffmann-La Roche* entirely.  As Justice Scalia explained in his dissent in *Hoffmann-La Roche*, the decision raises serious Article III concerns by "giving a court authority to take action directed, not to the resolution of the dispute before it, but to the generation and management of other disputes." 493 U.S. at 176.  Indeed, the issue of whether courts have this authority "should not be assumed unless it has been clearly conferred." *Id.*  Here, as explained by twenty U.S. states, "no source of authority gives courts power to solicit non-party plaintiffs in this way.  Not the statute.  Not the Constitution.  Not the federal civil rules.  And certainly not any history or tradition." States' Br. at 2.

"Judge-made doctrines have a tendency to distort the underlying statutory text, impose unnecessary burdens on litigants, and cause confusion for courts." *Ames v. Ohio Dept. of Youth Servs.*, 605 U.S. 303, 313 (2025) (Thomas, J., concurring).  *Hoffmann-La Roche* is no exception. *Hoffmann-La Roche* invented a doctrine for facilitating collective adjudication without any anchor in statutory text or historical practice, leaving courts to create their own individual standards for how to implement the doctrine, and resulting in significant confusion.  *See Clark*, 68 F.4th at 1007. To make matters worse, the doctrine imposes severe burdens on defendants—ironically, the intended beneficiaries of Congress's choice to amend the FLSA (and the ADEA) to exclude representative actions.  *See Hoffmann-La Roche*, 493 U.S. at 173.  Indeed, "the decision to send notice of an FLSA suit to other employees is often a dispositive one, in the sense of forcing a

1    defendant to settle—because the issuance of notice can easily expand the plaintiffs' ranks a

2    hundredfold." *Clark*, 68 F.4th at 1007.  It is no wonder, then, that twenty states explicitly ask the

3    Court to end the "mischief" and overturn *Hoffmann-La Roche* entirely.  States' Br. at 3 ("This Court

4    should grant the petition to end *Hoffmann-La Roche*'s mischief.").

5        *Second*, even if the Court decides to keep *Hoffmann-La Roche*, there is more than a "fair

6    prospect"—or "serious legal question"—as to the appropriate standard for issuing notice.  *Leiva-*

7    *Perez*, 640 F.3d at 967-68.  The Ninth Circuit's standard is just one of many that courts apply in

8    deciding whether, and to whom, to authorize dissemination of a notice in a FLSA or ADEA

9    collective action.  *See supra* III.A.  And, at minimum, it has no greater claim to being rooted in

10   Supreme Court guidance, statutory text, or history and tradition than any of the others.  *See*

11   *Campbell*, 903 F.3d at 1108 (explaining there is no "statutory or case law guidance" on the standard

12   for authorizing notice); *Clark*, 68 F.4th at 1007 (explaining that there is "little guidance that one

13   can call law" on the standard for authorizing notice, because "[n]either the statute, nor *Hoffmann-*

14   *La Roche*, nor (so far as we can tell) any traditional practice at common law or equity says much

15   about what the requisite showing should be"); *Swales*, 985 F.3d at 440 ("[N]othing in the FLSA,

16   nor in Supreme Court precedent interpreting it, requires or recommends (or even authorizes) any

17   'certification' process.").

18       In fact, multiple courts around the country already have significantly scrutinized the Ninth

19   Circuit's standard.  *See, e.g., Eli Lilly*, 149 F.4th at 907 ("In recent years, [the] lenient notice

20   standard" created by *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987), and then adopted by

21   the Ninth Circuit "has become the object of increasing scrutiny.").  *Three* circuits have explicitly

22   rejected it in favor of a more rigorous standard. *Eli Lilly*, 149 F.4th at 911 (rejecting lenient standard

23   because it "threatens judicial neutrality" and "transform[s] what should be a neutral case

24   management tool into a vehicle for strongarming settlements and soliciting claims"); *Clark*,

25   68 F.4th at 1010 (rejecting lenient standard because it runs afoul of *Hoffmann-La Roche*'s

26   prohibition against soliciting claims); *Swales*, 985 F.3d at 440-41 (rejecting lenient standard

27   because it requires courts to ignore evidence on the merits of similarity when there is a fact dispute,

28   which runs afoul of *Hoffmann-La Roche*'s prohibition against judicial endorsement of the merits).

1    Such "considered analysis . . . on the other side of the split" demonstrates a "fair prospect" that the

2    Supreme Court will not adopt the Ninth Circuit's standard nationwide.  *King*, 567 U.S. at 1303.

3    And if the Supreme Court indeed invalidates that standard, which this Court applied in granting

4    conditional certification here, before notice has in fact been disseminated, the Court would be

5    compelled to revisit its conditional certification order (either on its own or on Workday's motion).

6    Fed. R. Civ. P. 54(b) ("[A]ny order or other decision, however designated, that adjudicates fewer

7    than all the claims . . . may be revised at any time before the entry of a judgment adjudicating all

8    the claims and all the parties' rights and liabilities.").

9        **C.    Irreparable Harm Will Result From A Denial Of A Stay**

10           In light of the deeply entrenched circuit split, combined with the likelihood the Ninth Circuit

11   standard will be overturned, there is no question that Workday will suffer irreparable harm absent

12   a stay.  If Plaintiffs are permitted to post notice publicly and promote that notice using social media,

13   these actions cannot be undone.  Particularly here, where Workday is not the would-be employer,

14   and does not know the number of applicants at issue—let alone their names and contact

15   information—combined with the reality that the notice would be disseminated in a highly public

16   manner without any ability to narrow its recipients to only those who are, in fact, "eligible to join

17   the suit," the harms to Workday are magnified.  *See Clark*, 68 F.4th at 1010.

18           Given the circumstances of the publication notice at issue here, which Plaintiffs intend to

19   disseminate via social media, the risk of "stirring up" litigation that would not otherwise exist is

20   substantially more likely.  *See Swales*, 985 F.3d at 435.  Anyone with internet access will have

21   access to the notice, with no restrictions on age, location, whether the company that they applied to

22   in fact used Workday's software (let alone the AI features of that software), when they applied to

23   jobs, the jobs to which they applied, or whether they were facially qualified for those jobs.  *See*

24   ECF No. 195.  Even assuming some individuals may ignore the notice if they do not view

25   themselves as one of the intended recipients, the notice invites anyone age 40 or over who applied

26   to jobs through Workday's "job application platform" to join this lawsuit, regardless of whether

27   that individual has any reason to believe that they were disadvantaged in some way due to

28   Workday's AI-powered recruiting software.  ECF No. 203.  The sheer volume of potential opt-ins

MOTION TO STAY NOTICE PROCESS
3:23-CV-00770-RFL

this process could yield demonstrates exactly the concerns other circuits have articulated with the notice process.  *See Clark*, 68 F.4th at 1007 (issuing notice can be dispositive "in the sense of forcing a defendant to settle—because the issuance of notice can easily expand the plaintiffs' ranks a hundredfold"); *Swales*, 985 F.3d at 436 (issuance of notice "exerts formidable settlement pressure").

If notice were to proceed now, and *Hoffman-La Roche* is overturned or the Ninth Circuit's standard for notice is overturned in favor of a more exacting standard Plaintiffs have not met (and cannot meet),[2] there is no way to reverse the harm to Workday (or Workday's customers).  The number of plaintiffs in this case would be increased (likely exponentially), massively increasing the costs of litigation and/or potential resolution, and Workday will have suffered the reputational harm of its name being advertised across the internet as an alleged bad actor in a notice branded as "Court Approved."  Workday's relationships with its customers will continue to be impacted based solely on Plaintiffs' unsubstantiated theory of agency—all as a result of a notice process that the Supreme Court may soon invalidate entirely.  And here, unlike any other collective actions that have proceeded to notice, the process risks direct harm not only to Workday but to unnamed third parties.  Workday's customers similarly will have to navigate the confusion caused by the notice and the impact of the notice on their own job applicants.

### D.    The Balance Of The Equities Favors Workday

In stark contrast to the prejudice Workday will suffer, Plaintiffs will experience—at most— minimal harm from the requested stay.  Indeed, to date, despite months of negotiating and litigating aspects of the notice process, Plaintiffs have demonstrated no urgency regarding the dissemination of the notice (and in fact have themselves continually delayed the process).  *See, e.g.*, ECF No. 202 (noting Plaintiffs failure to submit required documents to the Court for approval); ECF No. 204 (resubmitting short form notice variations despite Court's prior order resolving short form notice); Declaration of Kayla Grundy, Ex. A (10/22/25 Hr. Tr.) 10:10-11:13 (seeking to further meet and confer on content of notice, despite Court's tentative ruling); ECF No. 170 (submitting an

---

[2] *See* ECF No. 128 at 1-2 ("The proposed collective is similarly situated because Mobley has *substantially alleged* the existence of a unified policy . . . . At this stage, that is sufficient.") (emphasis added).

inadequate dissemination plan); ECF No. 160 (proposing an opt-in process utilizing a third party administrator in August, and later advocating for abandoning that process).  Most recently, Plaintiffs proposed delaying the dissemination process until January 6, 2026—not because the website could not be ready in advance of that date, but because Plaintiffs were told that running their notice over the holidays was "inadvisable."  ECF No. 204 (suggesting notice begin in January); Grundy Decl., ¶ 2.  If a unilateral delay to benefit Plaintiffs by avoiding the holidays is warranted, certainly Plaintiffs can withstand a slightly longer delay to allow the Supreme Court to weigh in on this significant legal question that has direct implications in this case.

Importantly, Workday seeks to stay only the collective action's notice and decertification process.  The remaining claims can (and should) continue to move forward and adhere to the existing case schedule.  Namely, Workday still intends to complete its document production this calendar year.  The Court would still rule on Plaintiffs' pending Motion for Leave to File a Second Amended Complaint, and Rule 23 class certification briefing on Plaintiffs pending race and disability discrimination claims would still proceed pursuant to the existing case schedule.  In the unlikely event that the Supreme Court denies *certiorari*, the notice process would resume just a few short weeks after Plaintiffs intended.  If the Supreme Court grants *certiorari*, the parties and this Court will have the benefit of the Supreme Court's controlling guidance, and notice can be addressed consistent with the controlling standard.  Any slight inconvenience of pausing the notice process is insufficient to outweigh the permanent harm Workday faces.

### E.    The *Landis* Factors Also Favor Staying The Notice

Even under the test articulated before *Hollingsworth* in *Landis*, the balancing of equities favors granting Workday's request for a stay.  *See CMAX, Inc.*, 300 F.2d at 268 (articulating the *Landis* factors as (1) the possible damage caused by a stay, (2) the hardship or inequity which a party may suffer in the absence of a stay, and (3) whether a stay will simplify or complicate issues, proof, and questions of law).

*First*, staying the notice would not cause Plaintiffs "damage."  As described, *supra*, the case will otherwise continue, including the upcoming briefing on Plaintiffs' motion for class certification related to Plaintiffs' pending race and disability discrimination claims.  Additionally,

1   Plaintiffs will still have the opportunity to proceed with their notice and collective action at a later

2   time, regardless of whether the Court denies the petition or overturns the Ninth Circuit's standard.

3          On the other hand, the hardship Workday will suffer without a stay is extreme. *See supra*

4   Section III.C. (describing the likelihood of stirred up litigation, increased litigation costs, including

5   for discovery into opt-ins for purposes of decertification, and increased settlement pressure);

6   *Larroque v. First Advantage Lns Screening Sols., Inc.*, 2016 WL 39787, at *2 (N.D. Cal. Jan. 4,

7   2016) (considering engaging in "expansive discovery" and "briefing" at risk of being rendered

8   "moot and unnecessary" a "significant hardship").  The Court should not sanction the dissemination

9   of notice now, potentially just weeks before the Supreme Court decides it will weigh in on this

10  significant legal question. *See McElrath v. Uber Techs., Inc.*, 2017 WL 1175591, at *6 (N.D. Cal.

11  Mar. 30, 2017) (granting request to stay entire action in part because the outcome of the Supreme

12  Court decision "will have a significant impact on this case").

13         *Finally*, there is no question a stay will simplify this case for several reasons.  First, the

14  parties have been litigating the parameters of a notice for several months and continue to disagree

15  about how the process should proceed.  These questions could be tabled by the Court for now and

16  the parties could instead direct their resources to litigating the question of class certification.

17  Second, as the Court has already recognized, there are significant discovery hurdles with respect to

18  assessing claims of the opt-in plaintiffs.  *See e.g.*, ECF No. 195 (suggesting a streamlined process

19  to reduce discovery costs).  As the number of opt-in plaintiffs continues to grow, those hurdles will

20  similarly multiply.  To engage in the time consuming and burdensome process of discovery to

21  assess the claims of these opt-ins, which will likely involve hundreds of third parties and an untold

22  number of individual plaintiffs now when in a matter of weeks the Supreme Court could take up

23  the matter and in a matter of months overturn the process altogether is not a good use of the Court

24  or the parties' efforts; particularly where there are additional claims that could continue in the

25  meantime.

26  **IV.    CONCLUSION**

27         Under any standard the Court applies, a stay of the notice process is warranted.  Workday

28  respectfully requests the Court order a partial stay of this matter, staying the notice process and any

MOTION TO STAY NOTICE PROCESS
3:23-CV-00770-RFL

1    decertification motion until the Supreme Court determines whether to grant one or both of the

2    pending petitions, and if one or both is granted, renders a substantive decision.

3

4    Dated: December 1, 2025                    ORRICK, HERRINGTON & SUTCLIFFE LLP

5

6                                              By:        /s/ Kayla Delgado Grundy

7                                                        Julie A. Totten
                                                        Erin M. Connell
8                                                      Kayla Delgado Grundy
                                                       Alexandria Elliott
9                                                    Attorneys for Defendant
                                                      WORKDAY, INC.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION TO STAY NOTICE PROCESS
                                                            3:23-CV-00770-RFL