Lee D. Winston (admitted pro hac vice)
lwinston@winstoncooks.com
Roderick T. Cooks (admitted pro hac vice)
rcooks@winstoncooks.com
Bethany M. Logan (admitted pro hac vice)
Winston Cooks, LLC
420 20th Street North, Suite#2200
Birmingham, AL 35203
Telephone:      (205) 482-5174
Facsimile:       (205) 278-5876

Jay Greene
greeneattorney@gmail.com
Greene Estate, Probate, and Elder
Law Firm
447 Sutter Street, Suite 435
San Francisco, CA 94108
Phone 415-905-0215

Robert L. Wiggins, Jr. (admitted pro hac vice)
rwiggins@wigginschilds.com
Ann K. Wiggins (admitted pro hac vice)
awiggins@wigginschilds.com
Jennifer Wiggins Smith (admitted pro hac vice)
jsmith@wigginschilds.com
Wiggins Childs Pantazis Fisher & Goldfarb, LLC
The Kress Building
301 19th Street North
Birmingham, AL 35203
Telephone:      (205) 314-0500
Facsimile:       (205) 254-1500

*Attorneys for the Plaintiff and Proposed Class and Collective Members*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DEREK L. MOBLEY for and on behalf of himself and other persons similarly situated, *Plaintiff,*<br><br>V<br><br>WORKDAY, INC., *Defendant.* | Case No. 4:23-cv-00770-RFL<br><br>**DECLARATION IN SUPPORT OF PLAINTIFFS' MOTION TO CHANGE TIME PURSUANT TO LOCAL RULE 6-3(a)** |

**DECLARATION IN SUPPORT OF PLAINTIFFS' MOTION TO CHANGE TIME PURSUANT TO LOCAL RULE 6-3(a)**

I, Roderick T Cooks, declare as follows:

1. I am an attorney admitted to practice before this Court and admitted *pro hac vice* in this action. I am counseling Plaintiffs. I submit this declaration in support of **Plaintiffs' Motion to Change Time Pursuant to Civil Local Rule 6-3(a) and to Extend the Class Certification and Collective Decertification Schedule**. I have personal knowledge of the facts stated herein and could competently testify to them if called a witness.

2. The Court's current scheduling order (ECF No. 138) sets Plaintiffs' motion for class certification deadline as **January 16, 2026**, with subsequent opposition, reply, and hearing dates extending through June 2026. I am familiar with that schedule and the circumstances under which it was proposed and approved.

3. The Parties stipulated that schedule based on a shared understanding that Workday's document and data production—particularly discovery central to class certification and collective decertification—would be completed sufficiently in advance of January 16, 2026 to make the schedule workable.

4. That understanding has not been realized. Based on my review of discovery responses and productions, Workday did not produce many categories of documents and data requested as early as **September 3, 2024** until **mid-to-late December 2025**, more than one year later.

5. In particular, Workday represented in its initial responses served **November 11, 2024**, and again in supplemental responses served **July 2–3, 2025**, that it "would produce" or "make available" documents and source code responsive to **RFP No. 6 (subparts a, b, c, g, h, j, and k)**. Despite those representations, Workday did not make those materials available until approximately three weeks before the filing of Plaintiffs' present motion.

6. Those requests concern core issues in this case, including the training, operation, evaluation, and source code of Workday's Skills Embedding Model and its Spotlight and Fetch AI components. Without those materials, Plaintiffs cannot meaningfully analyze or present evidence concerning the disparate impact of Workday's AI-based hiring tools.

7. The same delay occurred with respect to **RFP Nos. 10, 11, and 14**, which seek documents concerning the development of Workday's AI and machine-learning systems, the inputs used by those systems, and any **bias or disparate-impact audits performed by independent auditors**. Although Workday stated that it would produce such materials, the production remains incomplete.

8. With respect to **RFP No. 14**, Workday has identified an external consultant and referenced a public webpage describing bias testing, but it has not produced the underlying audit documents, data, or analyses themselves.

9. Over the past year, Plaintiffs have repeatedly attempted to obtain this discovery through meet-and-confer efforts, joint letter briefing, and proceedings before Magistrate Judge Beeler. I have personally participated in those efforts.

10. Discovery disputes concerning Workday's bias audits and statistical disparate-impact data were referred to Judge Beeler but were later held in abeyance after the Court advised the Parties to first resolve disputes concerning collective notice. Plaintiffs relied on the Court's guidance and did not press discovery motions during that period.

11. During this time, Workday acknowledged that the existing class-certification schedule might not be viable given the state of discovery. In an August 4, 2025 meet-and-confer email,

    Workday questioned the viability of the January 2026 deadline and recognized that Plaintiffs might seek to move it.

12. Workday has also unilaterally extended its production deadline for documents requested from opt-in plaintiffs until **February 2, 2026**, which is after Plaintiffs' class certification motion is due. Workday declined to seek Court approval for that extension despite Plaintiffs' objection that such a delay interferes with scheduled proceedings.

13. Workday further delayed resolution of privilege issues by failing to produce a privilege log in compliance with Judge Beeler's standing order prior to any motion to compel briefing. The updated privilege was not produced until **December 31, 2025**, more than 6 months after it was due and only two weeks before Plaintiffs' class certification deadline.

14. Because of this truncated and incomplete discovery, Plaintiffs have been forced to postpone nearly all depositions of Workday personnel most knowledgeable about its AI systems, audits, and data.

15. The Court has previously held that collective decertification occurs "on or after the close of relevant discovery." In my experience litigating this case, discovery relevant to decertification and Rule 23 certification is far from complete, yet Workday seeks to proceed with decertification while continuing to withhold critical statistical and audit evidence.

16. The ongoing discovery deficiencies are not the result of delay or lack of diligence by Plaintiffs. Rather, they stem from Workday's prolonged non-production and from the Parties' and Court's reasonable decision to sequence notice issues ahead of contested discovery.

17. Without modification of the current schedule, Plaintiffs will be severely prejudiced in their ability to present a complete and accurate evidentiary record in support of class certification and in opposition to collective decertification.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

<u>Roderick T. Cooks</u>
  Name

Executed on January 8, 2026.