JULIE A. TOTTEN (STATE BAR NO. 166470)
jatotten@orrick.com
ERIN M. CONNELL (STATE BAR NO. 223355)
econnell@orrick.com
KAYLA D. GRUNDY (STATE BAR NO. 300513)
kgrundy@orrick.com
ALEXANDRIA R. ELLIOTT (STATE BAR NO. 320293)
aelliott@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone: (415) 773-5700
Facsimile: (415) 773-5759

Attorneys for Defendant
WORKDAY, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DEREK L. MOBLEY, for and on behalf of himself and other persons similarly situated;

Plaintiff,

v.

WORKDAY, INC.

Defendant.

Case No. 3:23-cv-00770-RFL

**DEFENDANT WORKDAY, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT AND TO STRIKE CERTAIN ALLEGATIONS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

Date: February 24, 2026
Time: 10:00 A.M.
Courtroom: 15, 18th Floor
Judge: Hon. Rita F. Lin

Second Amended Complaint: Jan. 7, 2026

**TABLE OF CONTENTS**

**Page**


I. INTRODUCTION AND SUMMARY OF POINTS ........ 1

II. PLAINTIFFS' ALLEGATIONS IN THE SECOND AMENDED COMPLAINT ........ 1

III. APPLICABLE LEGAL STANDARD ........ 2

A. Rule 12(b)(6) ........ 2

B. Rule 12(f) ........ 2

IV. PLAINTIFFS' DISPARATE IMPACT CLAIM UNDER THE ADEA FAILS BECAUSE THE ADEA DOES NOT AUTHORIZE A DISPARATE IMPACT CLAIM FOR APPLICANTS ........ 3

A. The ADEA Does Not Authorize A Disparate Impact Claim For Applicants ........ 3

1. The plain language of 623(a)(2) precludes a disparate impact claim. ........ 4

2. The contrasting language of Section 623(a)(1) bolsters the conclusion that Section 623(a)(2) applies only to employees. ........ 4

3. The contrasting language of the ADEA's other provisions further bolsters the conclusion that Section 623(a)(2) applies only to employees. ........ 5

B. *Rabin* Is Not Binding And Intervening Events Warrant Departure from *Rabin* ........ 5

C. Plaintiffs' Decision To Amend Makes This Issue Ripe For Decision ........ 7

V. PLAINTIFFS' FEHA CLAIMS FAIL BECAUSE FEHA CANNOT BE APPLIED EXTRATERRITORIALLY TO CONDUCT OCCURRING TO NON-RESIDENTS OUTSIDE THE STATE OF CALIFORNIA ........ 8

VI. PLAINTIFF HUGHES'S DISABILITY DISCRIMINATION CLAIM FAILS BECAUSE SHE FAILS TO ALLEGE FACTS SUPPORTING HER CLAIM ........ 11

VII. PLAINTIFFS' PRAYER FOR PUNITIVE DAMAGES MUST BE DISMISSED ........ 11

VIII. PLAINTIFFS' ALLEGATIONS RELATED TO AUTOMATED RECRUITMENT, PROMOTION, AND RETENTION OF EMPLOYEES MUST BE STRICKEN ........ 12

IX. CONCLUSION ........ 13

## TABLE OF AUTHORITIES

**Page(s)**

**Court Cases**

*Aguilar v. Zep Inc.*,
No. 13-CV-00563-WHO, 2014 WL 4245988 (N.D. Cal. Aug. 27, 2014) ........ 9

*In re Apple iPhone Antitrust Litig.*,
846 F.3d at 317 (9th Cir. 2017) ........ 8, 12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 2

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 2

*Campbell v. Arco Marine, Inc.*,
42 Cal. App. 4th 1850 (1996) ........ 9, 10

*Career Sys. Dev. Corp. v. Am. Home Ins. Co.*,
No. C 10-02679 JSW, 2010 WL 11636254 (N.D. Cal. Aug. 11, 2010) ........ 11

*Chen v. L.A. Truck Ctrs., LLC*,
42 Cal. App. 5th 488 (2019) ........ 10

*Clemmons v. Haw. Med. Servs. Ass'n*,
273 F.R.D. 653 (D. Haw. 2011) ........ 3, 13

*Ctr. for Biological Diversity v. Raimondo*,
661 F. Supp. 3d 964 (N.D. Cal. 2023) ........ 7

*Dep't of Homeland Sec. v. MacLean*,
574 U.S. 383 (2015) ........ 5

*English v. Gen. Dynamics Mission Sys., Inc.*,
No. EDCV-18-908 JGB, 2019 WL 2619658 (C.D. Cal. May 8, 2019) ........ 9

*Griggs v. Duke Power Co.*,
401 U.S. 424 (1971) ........ 6

*Hurtado v. Superior Ct.*,
522 P.2d 666 (1974) ........ 10

*Kasel v. Remington Arms Co.*,
24 Cal. App. 3d 711 (1972) ........ 10

*King v. Burwell*,
576 U.S. 473 (2015) ........ 4

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Kleber v. CareFusion Corp.*,
914 F.3d 480 (7th Cir. 2019), *cert. denied*, 140 S. Ct. 306 (2019) .............................. 3, 4, 6, 7

*Liu v. Uber Techs. Inc.*,
551 F. Supp. 3d 988 (N.D. Cal. 2021) .............................................................................. 11

*Loper Bright Enterprises v. Raimondo*,
603 U.S. 369 (2024) ............................................................................................................ 7

*N. Alaska Salmon Co. v. Pillsbury*,
174 Cal. 1 (1916) ................................................................................................................ 9

*Polselli v. Internal Revenue Serv.*,
598 U.S. 432 (2023) ............................................................................................................ 5

*Rabin v. PricewaterhouseCoopers LLP*,
236 F. Supp. 3d 1126 (N.D. Cal. 2017) ....................................................................... 5, 6, 7

*Raymond v. Spirit Aerosystems Holdings, Inc.*,
406 F. Supp. 3d 996 (D. Kan. 2019) ................................................................................... 3

*Ryan v. Clark Equip. Co.*,
268 Cal. App. 2d 679 (1969) ............................................................................................. 10

*Schechner v. CBS Broad., Inc.*,
No. C 08-05049 MHP, 2010 WL 2794374 (N.D. Cal. July 15, 2010) ................................. 12

*Smith v. City of Jackson*,
544 U.S. 228 (2005) ............................................................................................................ 4

*In re Sony Grand Wega KDF-EA10/A20 Series Rear Projection HDTV Television Litig.*,
758 F. Supp. 2d 1077 (S.D. Cal. 2010) ........................................................................ 7, 12

*Thompson v. Nat'l R.R. Passenger Corp.*,
No. C 08-03280 CRB, 2008 WL 11398932 (N.D. Cal. Dec. 17, 2008) ................................. 9

*Tremblay v. OpenAI, Inc.*,
742 F. Supp. 3d 1054 (N.D. Cal. 2024) .............................................................................. 1

*Villarreal v. R.J. Reynolds Tobacco Co.*,
839 F.3d 958 (11th Cir. 2016), *cert. denied*, 137 S. Ct. 2292 (2017) ................................. 3, 4

*In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*,
903 F. Supp. 2d 880 (C.D. Cal. 2012) ........................................................................... 8, 12

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Whittlestone, Inc. v. Handi-Craft Co.*,
618 F.3d 970 (9th Cir. 2010) .......... 3, 13

**Statutes & Regulations**

29 U.S.C. § 623 .......... 3, 4, 5, 6

Cal. Code Regs. Title 2, § 11008(a) .......... 9

**Rules**

Fed. R. Civ. P. 1 .......... 8

Fed. R. Civ. P. 12 .......... *passim*

**Other Authorities**

H.R. 3491 (2023-24) .......... 7

H.R. 3992 (2021-22) .......... 7

H.R. 5514 (2025-26) .......... 7

H.R. 8381 (2019-20) .......... 7

**NOTICE OF MOTION AND MOTION**

**TO PLAINTIFFS DEREK MOBLEY, FAITHLINH ROWE, SHEILAH JOHNSON-ROCHA, JILL HUGHES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on February 24, 2026 at 10:00am, or as soon thereafter as the matter may be heard, before the Honorable Rita F. Lin for the United States District Court, Northern District of California, San Francisco, in Courtroom 15 on the 18th Floor of 450 Golden Gate Avenue, San Francisco, California 94102, Defendant Workday, Inc. will and hereby does move this Court to dismiss the action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and to strike certain allegations pursuant to Rule 12(f).

The motion is made on the grounds that:

1. Pursuant to Rule 12(b)(6), the Court should dismiss Plaintiffs' fourth cause of action because the Age Discrimination in Employment Act does not create a cause of action for disparate impact discrimination for job applicants; and

2. Pursuant to Rule 12(b)(6), the Court should dismiss Plaintiffs' claims under the Fair Employment and Housing Act ("FEHA") because FEHA does not apply extraterritorially to non-resident Plaintiffs whose claims lack any connection to California.

3. Pursuant to Rule 12(b)(6), the Court should dismiss Plaintiff Jill Hughes's claim for disability discrimination under the Americans with Disabilities Act ("ADA") because the Second Amended Complaint alleges only that Workday discriminates against applicants with diagnosed mental health or cognitive conditions, but Plaintiff Hughes fails to allege any such disability.

4. Pursuant to Rule 12(b)(6), the Court should dismiss Plaintiffs' prayer for punitive damages because Plaintiffs have not pled sufficient facts to show fraud, oppression, or malice.

5. Pursuant to Rule 12(f), the Court should strike Plaintiffs' allegations related to "recruitment," "promoting," or "retaining" of employees as Plaintiffs make no factual allegations to support any claims related to discrimination in recruitment, promotion, or retention of employees.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, and such other documents and information that the Court

may consider.

Dated: January 21, 2026

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: */s/ Julie A. Totten*

JULIE A. TOTTEN
ERIN M. CONNELL
KAYLA D. GRUNDY
ALEXANDRIA R. ELLIOTT
Attorneys for Defendant
WORKDAY, INC.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION AND SUMMARY OF POINTS

The Court should dismiss Plaintiffs' revised disparate impact claims under the Age Discrimination in Employment Act ("ADEA"), new claims under California's Fair Employment and Housing Act ("FEHA"), Plaintiff Jill Hughes's disability discrimination claim, and Plaintiffs' prayer for punitive damages. ***First***, Plaintiffs' ADEA claims fail because the ADEA does not authorize disparate impact claims by job applicants. Because Plaintiffs chose to amend their ADEA claim through the Second Amended Complaint ("SAC"), Plaintiffs' claim is subject to a renewed motion to dismiss, and Ninth Circuit guidance suggests the Court can, and for practical reasons should, address this issue anew. *See Tremblay v. OpenAI, Inc.*, 742 F. Supp. 3d 1054, 1057 (N.D. Cal. 2024). ***Second***, Plaintiffs' FEHA claims fail because FEHA does not apply extraterritorially, and Plaintiffs plead no facts tethering their claims to California. Absent any California nexus, these claims fall outside of FEHA's reach. ***Third***, the Court should dismiss Plaintiff Jill Hughes's Americans with Disabilities Act ("ADA") claim because she fails to allege the very disability on which Plaintiffs' theory of discrimination rests. Plaintiffs' claim for disability discrimination hinges on the allegation that "Workday's branded cognitive tests or personality assessments" have a disparate impact on applicants with a "diagnosed mental health or cognitive condition," yet Hughes pleads no such condition. ***Fourth***, the Court should dismiss Plaintiffs' prayer for punitive damages as Plaintiffs have not sufficiently pled any fraud, oppression, or malice, particularly where all intentional discrimination claims have been dismissed. ***Finally***, the Court should strike Plaintiffs' allegations concerning the "recruitment," "promotion," or "retention" of applicants as Plaintiffs allege no facts supporting a claim that Workday's "AI/ML products" discriminate in recruitment, promotion, or retention, nor do Plaintiffs allege that they were ever subjected to Workday "AI/ML products" in connection with their recruitment, promotion, or retention.

## II. PLAINTIFFS' ALLEGATIONS IN THE SECOND AMENDED COMPLAINT

Plaintiffs' SAC asserts eight causes of action against Workday, although Plaintiffs concede only four such causes of action remain live in this action: (a) disparate impact discrimination based on race and disability under Title VII and the Americans with Disabilities Act; (b) disparate impact

discrimination under the ADEA; (c) disparate impact discrimination based on gender under Title VII and FEHA; and (d) disparate impact discrimination on the basis of race and age under FEHA. *See generally* SAC at 30-50.[1] For each claim, Plaintiffs allege that Workday's "discriminatory job screening" has a disparate impact on "African American, female, over-40, and disabled applicants, including the Representative Plaintiffs and the proposed classes." *Id.* at 2. Representative Plaintiffs Derek Mobley, Jill Hughes, Sheilah Johnson-Rocha, and Faithlinh Rowe seek to bring these claims on behalf of themselves and four broad nationwide subclasses of job applicants including: (a) all "African-American applicants or former applicants," (b) all "female applicants or former applicants," (c) all "applicants or former applicants over the age of forty," and (d) "all applicants or former applicants who have a diagnosed mental health or cognitive condition." *Id.* ¶ 11. Plaintiffs seek punitive damages and to certify "punitive damages liability" as a class. *Id.* at ¶ 21.

## III. APPLICABLE LEGAL STANDARD

### A. Rule 12(b)(6)

To survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The factual allegations must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Allegations that are "merely consistent with" a defendant's liability, *id.*, or that do not state a cognizable legal theory, cannot survive a motion to dismiss. Fed. R. Civ. P. 12(b)(6). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

### B. Rule 12(f)

Rule 12(f) authorizes courts to strike "from a pleading an insufficient defense or any

[1] Plaintiffs also re-plead an aiding and abetting claim under FEHA and intentional discrimination claims under Title VII and Section 1981 but acknowledge "that Court [] previously dismissed" these claims and they "do not include such matters again except for the limited purpose of preserving whatever rights they may have to appeal." SAC ¶¶ 152, 188, 225, 226. Workday therefore does not address these claims. Workday requests that any Order issued by the Court on this Motion confirm that such claims remain dismissed for the reasons articulated in the Court's prior Order, ECF No. 80.

redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A matter is "immaterial" if it "has no essential or important relationship to the claim for relief or the defenses being pleaded." *Clemmons v. Haw. Med. Servs. Ass'n*, 273 F.R.D. 653, 656 (D. Haw. 2011). "Impertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Id.* The purpose of Rule 12(f) is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010).

## IV. PLAINTIFFS' DISPARATE IMPACT CLAIM UNDER THE ADEA FAILS BECAUSE THE ADEA DOES NOT AUTHORIZE A DISPARATE IMPACT CLAIM FOR APPLICANTS

Plaintiffs' fourth cause of action for disparate impact discrimination under the ADEA fails because the ADEA does not extend disparate impact protection to job applicants. Both the Seventh and the Eleventh Circuits—in *en banc* decisions that the U.S. Supreme Court declined to review—held that the ADEA does not permit disparate impact claims by job applicants. *See Kleber v. CareFusion Corp.*, 914 F.3d 480 (7th Cir. 2019), *cert. denied*, 140 S. Ct. 306 (2019); *Villarreal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958, 970 (11th Cir. 2016), *cert. denied*, 137 S. Ct. 2292 (2017); *see also Raymond v. Spirit Aerosystems Holdings, Inc.*, 406 F. Supp. 3d 996, 1000 (D. Kan. 2019) (holding no disparate impact claim for job applicants under the ADEA). The Ninth Circuit has not addressed the question, and the one Northern District of California Court that has held otherwise did so without the benefit of relevant subsequent events, including the Seventh Circuit's opinion.

### A. The ADEA Does Not Authorize A Disparate Impact Claim For Applicants

As to employers—and therefore their agents—Section 623(a) of the ADEA provides that it shall be unlawful for an employer:

> (1) to fail or refuse to hire or to discharge ***any individual*** or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such ***individual's*** age; [or]
>
> (2) to limit, segregate, or classify ***his employees*** in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his ***status as an employee***, because of such individual's age[.]

29 U.S.C. § 623(a)(1), (2) (emphasis added). Section 623(a)(1) governs disparate treatment claims,

while Section 623(a)(2) governs disparate impact claims. *See Smith v. City of Jackson*, 544 U.S. 228, 235-36 (2005).

**1. The plain language of 623(a)(2) precludes a disparate impact claim.**

As with all issues of statutory interpretation, the Court must begin with the plain language of the statutory text. "If the statutory language is plain, [the court] must enforce it according to its terms." *King v. Burwell*, 576 U.S. 473, 486 (2015). Section 623(a)(2) of the ADEA makes it unlawful for an employer to "limit, segregate, or classify his ***employees*** in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect ***his status as an employee***, because of such individual's age." 29 U.S.C. § 623(a)(2) (emphasis added). As both the Seventh and Eleventh *en banc* courts have concluded, this language plainly applies only to individuals with "status as an employee" and not job applicants. *See Kleber*, 914 F.3d at 482-83; *Villarreal*, 839 F.3d at 963; *see also* Merriam-Webster's Collegiate Dictionary, available at: https://www.merriam-webster.com/dictionary (defining "applicant" as "one who applies," including for example, "a job applicant," while defining an "employee" as "one employed by another usually for wages or salary and in a position below the executive level"); 29 U.S.C. § 630(f) (defining "employee" as any individual employed by an employer). The phrase "otherwise adversely affect his status as an employee" limits the reach of the statute to those with status as an employee, which does not include job applicants.

**2. The contrasting language of Section 623(a)(1) bolsters the conclusion that Section 623(a)(2) applies only to employees.**

The conclusion that Section 623(a)(2) applies only to employees is bolstered by the contrasting language of Section 623(a)(1), which expressly extends protections to job applicants. In Section 623(a)(1), Congress made it unlawful for an employer to "fail or refuse to hire or to discharge ***any individual*** or otherwise discriminate against ***any individual*** with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1) (emphasis added). Congress plainly extended Section 623(a)(1) and its protection against disparate treatment to job applicants with the phrase "fail or refuse to hire ***any individual***." (emphasis added). But the language covering applicants in Section 623(a)(1) is

conspicuously absent from Section 623(a)(2).

**3. The contrasting language of the ADEA's other provisions further bolsters the conclusion that Section 623(a)(2) applies only to employees.**

Contrasting language from other surrounding ADEA provisions further confirms that Section 623(a)(2) does not apply to applicants. For example, in Section 623(c)(2), Congress makes it unlawful for a labor organization to "limit, segregate, or classify its membership . . . in any way which would deprive or tend to deprive any individual of employment opportunities . . . or otherwise adversely affect his status as an employee ***or as an applicant for employment***, because of such individual's age." 29 U.S.C. § 623(c)(2) (emphasis added). While both Section 623(a)(2) and (c)(2) prohibit conduct that would "deprive or tend to deprive any individual of employment opportunities," the difference between the provisions is striking. Unlike Section 623(a)(2), Section 623(c)(2) explicitly extends to any individual with "status as an employee ***or as an applicant for employment***." No such language is contained within Section 623(a)(2).

And yet again, in Section 623(d), Congress plainly extended protections to job applicants by making it "unlawful for an employer to discriminate against any of his employees ***or applicants for employment***" because such an individual has opposed unlawful age discrimination. 29 U.S.C. § 623(d). And again, no such language is contained within Section 623(a)(2).

It defies logic that Congress silently intended for Section 623(a)(2) to apply to job applicants, when in three other sections of the same act, Congress explicitly and plainly extended such protection. "Had Congress wanted to include [protections for job applicants under § 623(a)(2)], it certainly knew how to do so." *Polselli v. Internal Revenue Serv.*, 598 U.S. 432, 439 (2023). Where, as here, Congress "uses particular language in one section of a statute but omits it in another," courts can assume that Congress "act[ed] intentionally." *See Dep't of Homeland Sec. v. MacLean*, 574 U.S. 383, 391 (2015).

**B. *Rabin* Is Not Binding And Intervening Events Warrant Departure from *Rabin***

While the Seventh and Eleventh Circuits' *en banc* courts agree that job applicants cannot maintain a disparate impact claim under the ADEA—and the Supreme Court denied certiorari in both cases—a single district court reached the opposite conclusion. *See Rabin v.*

*PricewaterhouseCoopers LLP*, 236 F. Supp. 3d 1126, 1130 (N.D. Cal. 2017). *Rabin* is not binding, and in any event, it is unpersuasive for three reasons that have emerged since it was decided.

***First***, the *Rabin* court decided the issue without the benefit of the Seventh Circuit's *en banc* reasoning in *Kleber v. CareFusion Corp*. The *Rabin* court thus had only one circuit court decision to grapple with; it may have reached a different conclusion with the benefit of *Kleber*'s analysis.

In *Rabin*, the district court concluded that job applicants can bring a disparate impact claim under the ADEA based largely on the Supreme Court's decision in *Griggs v. Duke Power Co.*, 401 U.S. 424 (1971). The *Kleber* court carefully explained why *Griggs* does not support the conclusion that the ADEA provides a disparate impact claim for job applicants. More specifically, *Griggs* does not support the conclusion that job applicants can bring disparate impact claims under the ADEA because *Griggs* simply does not address job applicants. To reach such a conclusion, this Court would have to read beyond the facts of the case. In *Griggs*, several African American employees of Duke Power challenged the company's practice of conditioning certain job transfers and promotions on graduating from high school and passing a standardized aptitude test under Title VII. *See* 401 U.S. at 426. At the time, Title VII mirrored the present language of Section 623(a)(2). The Court held that Title VII prohibits disparate impact discrimination by using "practices that are fair in form, but discriminatory in operation" unless the employer can show that the challenged practice is "related to job performance" and therefore a "business necessity." *Id.* at 431. Nowhere in *Griggs* did the Court extend its holding to job applicants. Indeed, following *Griggs*, Congress amended Title VII to expressly include "applicants for employment." Pub. L. No. 92-261, § 8(a), 86 Stat. 109 (1972). Congress had no reason to amend Title VII if the provision has always covered job applicants, "especially if the Supreme Court had just said so in *Griggs*." *Kleber*, 914 F.3d at 486. And though Congress amended Title VII to cover "applicants for employment," to date, it has not modified Section 623(a)(2) of the ADEA in the same way.

***Second***, *Rabin* was decided before ***three*** unsuccessful legislative attempts to amend the ADEA to permit disparate impact claims by job applicants. While *Rabin* rejected the argument that Congress's decision to add the phrase "or applicants for employment" to Title VII but not to the ADEA implied job applicants remain unprotected under Section 623(a)(2), it did so before

Congress repeatedly tried—and failed—to amend the ADEA. *See* H.R. 8381 (2019-20) (referred to committee and now inactive); H.R. 3992 (2021-22) (stalled in Senate); H.R. 3491 (2023-24) (referred to committee and no further action); H.R. 5514 (2025-26) (still pending). "The ultimate goal of statutory construction is to effectuate Congress's intent in enacting the statute," and "[i]n every case, 'it is the intent of Congress that is the ultimate touchstone.'" *Ctr. for Biological Diversity v. Raimondo*, 661 F. Supp. 3d 964, 969 (N.D. Cal. 2023). Here, where Congress has been unable to successfully pass an amendment to make it explicit that the ADEA extends protections to job applicants, it cannot be presumed that Congress ***intended*** such protections apply.

Finally, *Rabin* was decided before *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024). While *Rabin* separately held that *Chevron* deference mandates the conclusion that the ADEA extends to disparate impact claims by jobseekers, it did so ***before*** *Loper Bright* overruled *Chevron* and eliminated *Chevron* deference. *See Rabin*, 236 F. Supp. 3d at 1132.[2] *Rabin*'s reliance on *Chevron* deference is thus no longer valid.

With the benefit of the Seventh Circuit's reasoning in *Kleber*, the failed amendments to the ADEA, and the intervening *Loper Bright* decision, this Court should decline to follow *Rabin v. PricewaterhouseCoopers LLP*. As both the Eleventh and Seventh Circuits have held, the plain language and structure of the ADEA compel the conclusion that job applicants cannot maintain a disparate impact claim under the ADEA. The Court should therefore dismiss Count Four for failure to state a claim upon which relief can be granted.

### C. Plaintiffs' Decision To Amend Makes This Issue Ripe For Decision

To the extent Plaintiffs argue, or the Court has concerns, that Workday should have moved to dismiss Plaintiffs' ADEA claim in response to Plaintiff's prior complaint, courts in the Ninth Circuit have held that Plaintiffs' decision to amend means that Plaintiffs mooted their prior complaint and subjected their revised ADEA claim to scrutiny, regardless of whether the general claim was previously pled.[3] *See, e.g., In re Sony Grand Wega KDF-EA10/A20 Series Rear*

---

[2] Workday notes that this intervening change in the law occurred ***after*** this Court's order on Workday's Second Motion to Dismiss. ECF No. 80.

[3] The Court held Workday waived an argument that the ADEA does not extend to job applicants in its previous order on Workday's Motion to Dismiss. *See* ECF No. 80. Under Rule 12, only defenses

*Projection HDTV Television Litig.*, 758 F. Supp. 2d 1077, 1098 (S.D. Cal. 2010) ("When Plaintiffs filed [an Amended Complaint] it superseded their previous complaint, and [Defendant] was therefore free to move again for dismissal."); *In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 903 F. Supp. 2d 880, 893 (C.D. Cal. 2012) (rejecting argument that successive motion to dismiss grounds had been waived even though they could have been raised in previous motion, because "[c]ourts in this Circuit . . . have permitted defendants moving to dismiss an amended complaint to make arguments previously made and to raise new arguments that were previously available").

Indeed, Ninth Circuit guidance confirms that, as a matter of practicality and in the spirit of judicial economy, the Court should consider Workday's argument that the ADEA does not permit disparate impact claims by job applicants on the merits. *See In re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 318 (9th Cir. 2017) (acknowledging that denying Rule 12(b)(6) motions as late-filed "can produce unnecessary and costly delays, contrary to the direction of Rule 1"), *aff'd sub nom. Apple Inc. v. Pepper*, 587 U.S. 273 (2019); Fed. R. Civ. P. 1 ("These rules . . . should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.").

For these reasons, Plaintiffs' ADEA claims should be dismissed.

## V. <u>PLAINTIFFS' FEHA CLAIMS FAIL BECAUSE FEHA CANNOT BE APPLIED EXTRATERRITORIALLY TO CONDUCT OCCURRING TO NON-RESIDENTS OUTSIDE THE STATE OF CALIFORNIA</u>

Plaintiffs—who plead absolutely no connection to California—cannot avail themselves of California law, as California courts reject the application of FEHA to conduct affecting non-residents outside the state. Because Plaintiffs are not protected by FEHA, their FEHA claims in the seventh and eighth causes of action fail.

"California courts have acknowledged a general presumption against the extraterritorial

---

alleging lack of personal jurisdiction, improper venue, insufficient process, and insufficient service of process are waived by failure to present the defense in an initial motion or responsive pleading. *See* Fed. R. Civ. P. 12(h); *In re Apple iPhone Antitrust Litig.*, 846 F.3d at 317. By contrast, Workday retains the ability to raise the argument that Plaintiffs' ADEA claim fails as a matter of law in subsequent motion practice, including a judgment on the pleadings or motion for summary judgment, or for the reasons described herein, this motion to dismiss.

application of state laws." *See English v. Gen. Dynamics Mission Sys., Inc.*, No. EDCV-18-908 JGB (SHKX), 2019 WL 2619658, at *5 (C.D. Cal. May 8, 2019) (citing *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011)), *aff'd*, 808 F. App'x 529 (9th Cir. 2020); *see also N. Alaska Salmon Co. v. Pillsbury*, 174 Cal. 1, 4 (1916) ("Ordinarily, the statutes of a state have no force beyond its boundaries."). In other words, the extraterritorial application of California law is improper where non-residents of California raise claims based on conduct that allegedly occurred outside of the state. *Aguilar v. Zep Inc.*, No. 13-CV-00563-WHO, 2014 WL 4245988, at *11 (N.D. Cal. Aug. 27, 2014); *see also Thompson v. Nat'l R.R. Passenger Corp.*, No. C 08-03280 CRB, 2008 WL 11398932, at * 3 (N.D. Cal. Dec. 17, 2008) (California courts disfavor the application of California law to "conduct occurring in a foreign jurisdiction." (citing *Diamond Multimedia Sys., Inc. v. Superior Ct.*, 19 Cal. 4th 1036, 1059–60 & n.20 (1999))). And California courts have correctly rejected the view that a California "employer" is subject to California law universally, regardless of the location of the allegedly aggrieved "employee." *See Campbell v. Arco Marine, Inc.*, 42 Cal. App. 4th 1850, 1859 (1996) (holding that FEHA does not apply to non-residents where "the tortious conduct took place out of this state's territorial bounds").

Plaintiffs' conclusory allegations about venue and Workday's corporate presence cannot cure the missing California nexus. The question is not where Workday sits but rather where the alleged discriminatory decisions were made and where the injuries occurred. Here, Plaintiffs plead nothing connecting themselves to the State of California, nor could they consistent with Rule 11. Plaintiffs cannot deny that they reside outside of California and applied to out-of-state employers who allegedly sent them rejection letters outside of California. Plaintiffs don't even allege that Workday is making decisions about their employment in the State of California.

To the extent Plaintiffs argue that Workday's development or sale of software in California creates a sufficient nexus, that argument fails. Plaintiffs do not allege that Workday developed the products at issue in California, or that California is the relevant point of sale. But even if they did, their theory of liability is that Workday acts as an agent of its customers and is therefore liable to the same extent as those customers for allegedly discriminatory employment decisions. Cal. Code Regs. Tit. 2, § 11008(a) ("An agent of an employer is also an 'employer' for purposes of [FEHA].").

It is undisputed that out-of-state plaintiffs could not sue out-of-state employers under FEHA for employment decisions made outside of California. As an alleged agent, Workday is likewise not subject to FEHA for allegedly discriminatory conduct occurring outside of California. *Id.*; *see, e.g.*, *Campbell*, 42 Cal. App. 4th at 1859.

While this is an employment case, products liability law similarly dictates that California law does not apply simply because a product was manufactured in California. *See Ryan v. Clark Equip. Co.*, 268 Cal. App. 2d 679, 682 & n.12 (1969) (the state of manufacture is not necessarily the "crucial state" in a products liability action including because "the central concern of the courts in the cases has been the compensation of the injured rather than control of the conduct of manufacture"), *disapproved of on other grounds by Hurtado v. Superior Ct.*, 522 P.2d 666 (1974); *see also Kasel v. Remington Arms Co.*, 24 Cal. App. 3d 711, 735 (1972) (holding that California's interest "in compensating its residents injured by defective products outweighs any interest Mexico might have in the regulation of its own manufacturers"). While California has a "theoretical interest" in applying its products liability laws to California defendants who place "an allegedly defective product into the stream of commerce," the "underlying basis for the policy is the protection of California residents and other persons within its territorial jurisdiction from injury." *Chen v. L.A. Truck Ctrs., LLC*, 42 Cal. App. 5th 488, 498 (2019). "California's interest in imposing that policy becomes hypothetical when the injured persons are not California residents and were not injured in California." *Id.*; *see also id.* at 502 ("California's interest in ensuring that manufacturers bear the financial burden of defective products is also primarily local in character, to protect California residents and persons who are injured in California from having to bear the financial costs of injuries caused by defective products.").

The Court should dismiss the FEHA claims with prejudice, as Plaintiffs have already amended their complaint twice and, as demonstrated by their failure to rebut Workday's futility arguments in their reply on their motion for leave to file an amended complaint, ECF No. 220, they cannot amend their complaint consistent with Rule 11 to allege any California nexus.

## VI. PLAINTIFF HUGHES'S DISABILITY DISCRIMINATION CLAIM FAILS BECAUSE SHE FAILS TO ALLEGE FACTS SUPPORTING HER CLAIM

To state a claim for disparate impact discrimination under the ADA "a plaintiff must allege (1) a significant disparity with respect to employment for the protected group, (2) the existence of a specific employment practice or set of practices, and (3) a causal relationship between the identified practice and the disparity." *Liu v. Uber Techs. Inc.*, 551 F. Supp. 3d 988, 990 (N.D. Cal. 2021).

With respect to their claim for disability discrimination, Plaintiffs allege that "Workday branded assessments or personality tests" "reveal mental health disorders and cognitive impairments," and "[p]ersons with these disorders and impairments are likely to perform worse on these assessments and tests and be screened out." SAC ¶¶ 78-81. Plaintiffs seek to represent a class of "all applicants or former applicants ***who have a diagnosed mental health or cognitive condition who*** . . . ***were required to take a Workday branded cognitive assessment or personality test***." *Id.* ¶ 11.

Plaintiff Hughes's disability claim fails because she does not allege she has the type of disability that Plaintiffs claim is being screened out. Her claim is premised on "branded assessments" and "personality tests" that allegedly screen out individuals with "mental health disorders" and "cognitive impairments," yet she never pleads that she was ever subjected to an assessment or personality test nor does she allege she suffers from a mental health disorder or cognitive impairment. Instead, she alleges physical disabilities (asthma and cancer) without any allegation tying such disabilities to "branded assessments" and without identifying any other specific employment practice that disparately impacts individuals with those disabilities. She thus fails to state a claim. *Liu*, 551 F. Supp. 3d at 990.

## VII. PLAINTIFFS' PRAYER FOR PUNITIVE DAMAGES MUST BE DISMISSED

Plaintiffs' prayer for punitive damages also must be dismissed because Plaintiffs fail to plead facts sufficient to support the allegation that Workday acted with malice or reckless indifference, particularly where, as here, Plaintiffs' intentional discrimination claims have been dismissed. *See Career Sys. Dev. Corp. v. Am. Home Ins. Co.*, No. C 10-02679 JSW, 2010 WL

11636254, *2 (N.D. Cal. Aug. 11, 2010); *Schechner v. CBS Broad., Inc.*, No. C 08-05049 MHP, 2010 WL 2794374, at *11 (N.D. Cal. July 15, 2010) (holding punitive damages are not available for disparate impact claims under FEHA and Title VII). As with Plaintiffs' ADEA claims, this issue is ripe for decision because Plaintiffs' decision to amend their complaint subjected their prayer for punitive damages to new scrutiny, regardless of whether the general claim was previously pled. *See, e.g.*, *In re Sony Grand Wega KDF-EA10/A20 Series Rear Projection HDTV Television Litig.*, 758 F. Supp. 2d at 1098; *In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 903 F. Supp. 2d at 893.[4] Moreover, new circumstances warrant a renewed motion to dismiss Plaintiffs' prayer for punitive damages. More specifically, when Workday initially requested that Plaintiffs' prayer for punitive damages be dismissed, Plaintiffs had pled live intentional discrimination claims. Now, Plaintiffs acknowledge all intentional discrimination claims have been dismissed. For these reasons, the Court should consider, and grant, Workday's motion to dismiss Plaintiffs' request for punitive damages.

## VIII. PLAINTIFFS' ALLEGATIONS RELATED TO AUTOMATED RECRUITMENT, PROMOTION, AND RETENTION OF EMPLOYEES MUST BE STRICKEN

Finally, Plaintiffs' allegations related to the recruitment, promotion, and retention of employees must be struck as immaterial and impertinent under Rule 12(f). Plaintiffs allege that "[t]he automated ***recruitment***, hiring, ***promoting***, ***retaining***, and otherwise screening and scoring tools utilized by Workday for making selection decisions-to include hiring-discriminate" on the basis of race, age, gender, and disability. *See* SAC ¶¶ 180, 216, 248, 272. Plaintiffs make numerous other similar allegations throughout the Second Amended Complaint about the purportedly discriminatory nature of Workday's "automated ***recruitment***, hiring, ***promoting***, ***retaining***, screening and scoring tools." *See* SAC ¶¶ 181, 184, 185, 220, 223, 249, 252, 253, 273, 276, 277. Plaintiffs' allegations about Workday's "automated recruitment . . . promoting . . . [and] retaining . . . tools" must be stricken because the SAC contains ***no*** allegations about any such tools, does not

[4] Again, while the Court held Workday waived its argument against punitive damages, any purported waiver extended to that motion to dismiss only. Workday remained free to re-raise its argument against punitive damages in a future motion. *See* Fed. R. Civ. P. 12(h); *In re Apple iPhone Antitrust Litig.*, 846 F.3d at 317.

suggest that any of the Representative Plaintiffs were subjected to such tools, and does not raise any claims related to recruitment, promotion, or retention. *See Clemmons*, 273 F.R.D. at 660 (striking allegations related to national origin and age discrimination because plaintiff did not bring any claims for national origin or age discrimination). These allegations should be stricken to "avoid the expenditure of time and money" arising "from litigating spurious issues." *Whittlestone*, 618 F.3d at 973.

## IX. CONCLUSION

For the reasons provided herein, the Court should dismiss Plaintiffs' ADEA and FEHA claims with prejudice. It should similarly dismiss Plaintiff Hughes's disability discrimination claim and Plaintiffs' request for punitive damages. Finally, the Court should strike any mentions to discrimination in recruitment, promotion, or retention.

Dated: January 21, 2026

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: */s/ Julie A. Totten*

JULIE A. TOTTEN
ERIN M. CONNELL
KAYLA D. GRUNDY
ALEXANDRIA R. ELLIOTT
Attorneys for Defendant
WORKDAY, INC.