VICTORIA WILLIAMSON, DC Bar No. 991054
(*Admitted pro hac vice*)
LOUIS LOPEZ, DC Bar No. 461662
(*Admitted pro hac vice*)
AARP FOUNDATION
601 E Street NW
Washington, DC 20049
Telephone (202) 322-4180
vwilliamson@aarp.org
llopez@aarp.org
*Attorneys for AARP and AARP Foundation as Amici Curiae*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEREK L. MOBLEY, for and on behalf of himself and other persons similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WORKDAY, INC.,<br><br>Defendant. | Case No. 3:23-cv-00770-RFL<br><br>**BRIEF OF AARP AND AARP FOUNDATION AS AMICI CURIAE IN SUPPORT OF PLAINTIFFS AND IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>Hearing Date: February 24, 2026<br>Time: 10:00 am<br>Judge Hon. Rita Lin<br>Courtroom 15, 18th Floor |

BRIEF OF AARP AND AARP FOUNDATION AS AMICI CURIAE IN SUPPORT OF PLAINTIFFS AND IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

# TABLE OF CONTENTS

I. STATEMENT OF INTEREST ............................................................................1

II. INTRODUCTION ..............................................................................................2

III. ARGUMENT ......................................................................................................4

    A. The *Rabin* Court Correctly Decided That the ADEA Authorizes Disparate Impact Claims for Job Applicants ............................................4

        1. The plain language and legislative history of the ADEA demonstrate a clear intent to permit disparate impact claims for job applicants ..................................4

        2. This Court has already considered and rejected the analysis in other circuits declining to allow disparate impact claims by job applicants under the ADEA..........................................................................................7

    B. *Loper Bright* Only Serves to Affirm This Court's Sound Reasoning in *Rabin*........................................................................8

    C. Congress's Efforts to Further Amend the ADEA Have No Bearing on This Court's Construction of the ADEA's Applicability to Job Applicants ....................................11

IV. CONCLUSION .................................................................................................13

---

BRIEF OF AARP AND AARP FOUNDATION AS AMICI CURIAE IN SUPPORT OF PLAINTIFFS AND IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

i

# TABLE OF AUTHORITIES
CASES

*Alexander v. Sandoval*,
    532 U.S. 275 (2001) ...............................................................................................11

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*,
    467 U.S. 837 (1984)..............................................................................................8, 9

*Church v. Consol. Freightways, Inc.*,
    137 F.R.D. 294 (N.D. Cal. 1991) ................................................................................5

*Duncan v. Walker*,
    533 U.S. 167 (2001)....................................................................................................5

*Griggs v. Duke Power Co.*,
    401 U.S. 424 (1971)..........................................................................................6, 8, 9

*Halliburton Co. v. Erica P. John Fund, Inc.*,
    573 U.S. 258 (2014)....................................................................................................9

*Kleber v. Carefusion Corp.*,
    No. 15-cv-1994, 2015 WL 7423778 (N.D. Ill. Nov. 23, 2015).................................1, 7, 8

*Loper Bright Enters. v. Raimondo*,
    603 U.S. 369 (2024) ………………………………………………………8, 9, 10, 11

*Rabin v. PricewaterhouseCoopers LLP*,
    236 F. Supp. 3d 1126 (N.D. Cal. 2017).......................................................................*passim*

*Robinson v. Shell Oil Co.*,
    519 U.S. 337 (1997)................................................................................................6, 8

*Skidmore v. Swift & Co.*,
    323 U.S. 134 (1944)..............................................................................................10, 11

*Smith v. City of Jackson, Miss.*,
    544 U.S. 228 (2005)..........................................................................................4, 6, 9

*United States v. Stevens*,
    997 F.3d 1307 (11th Cir. 2021) ..................................................................................4

*United States v. Woods*,
    571 U.S. 31 (2013).....................................................................................................13

*Villareal v. R.J. Reynolds Tobacco Co.*,
    839 F.3d 958 (11th Cir. 2016) ................................................................................1, 6-7

-------------------------------------------------------------------------------------------------------------------
BRIEF OF AARP AND AARP FOUNDATION AS AMICI CURIAE IN SUPPORT OF PLAINTIFFS AND IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

ii

STATUTES

Age Discrimination in Employment Act of 1967
29 U.S.C. §§ 621 *et seq.*................................................................................................1
29 U.S.C § 621(b) ...........................................................................................................6
29 U.S.C. § 623(a)(1) ......................................................................................................8
29 U.S.C. § 623(a)(2).............................................................................................*passim*
29 U.S.C. § 623(c)(2)..................................................................................................7, 8
29 U.S.C. § 628 ............................................................................................................10

Title VII of the Civil Rights Act of 1964
42 U.S.C. §§ 2000e *et seq.* ..............................................................................................6


ADMINISTRATIVE MATERIAL

33 Fed. Reg. 9173 (1968) ............................................................................................10


OTHER AUTHORITIES

Miriam Cross, *Older Adults Are Looking for Jobs, but Age Discrimination Hampers the Search*, AARP Bulletin (Sept. 4, 2025),
https://www.aarp.org/advocacy/age-discrimination-senate-hearing ......................................2

U.S. Equal Emp. Opportunity Comm'n, *Written Testimony of Laurie McCann, Senior Attorney, AARP Foundation* (June 14, 2017),
https://www.eeoc.gov/meetings/meeting-june-14-2017-adea-50-more-relevant-ever/mccann# ............................................................................... 2

Congresswoman Sylvia Garcia, House of Representatives, Press Release, *Congresswoman Sylvia Garcia Leads Bipartisan Push to Protect Older Job Applicants* (Sept. 22, 2025), https://sylviagarcia.house.gov/media/press-releases/congresswoman-sylvia-garcia-leads-bipartisan-push-to-protect-older-job-applicants................................................12

Nancy A. LeaMond, *AARP is Fighting to Ensure Older Workers Get a Fair Shot*, AARP (May 20, 2025), https://www.aarp.org/advocacy/fighting-age-discrimination-in-workforce-2025/...........................................................................................................2

Justyna Stypinska, *AI ageism: a critical roadmap for studying age discrimination and exclusion in digitalized societies*,
AI & Society, Vol. 28, No. 3 (October 3, 2022),
https://pmc.ncbi.nlm.nih.gov/articles/PMC9527733/ .............................................................2

---
BRIEF OF AARP AND AARP FOUNDATION AS AMICI CURIAE IN SUPPORT OF PLAINTIFFS AND IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

iii

## I. STATEMENT OF INTEREST

AARP is the nation's largest nonprofit, nonpartisan organization dedicated to empowering Americans 50 and older to choose how they live as they age. With a nationwide presence, AARP strengthens communities and advocates for what matters most to the more than 100 million Americans 50-plus and their families: health and financial security, and fulfillment. AARP's charitable affiliate, AARP Foundation, works for and with vulnerable people over 50 to end senior poverty and reduce financial hardship by building economic opportunity. AARP Foundation has long advocated on behalf of older adults by filing lawsuits and amicus briefs challenging policies and practices that pose a threat to their financial security.

AARP and AARP Foundation have a strong interest in the proper interpretation and application of § 623(a)(2) of the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 *et seq.* (ADEA), and have been involved in litigation on this subject for years. For example, AARP Foundation participated as co-counsel representing the plaintiff in *Rabin v. PricewaterhouseCoopers LLP*, in which this Court construed § 623(a)(2) to protect older job applicants' right to be free from disparate impact age discrimination. 236 F. Supp. 3d 1126, 1133 (N.D. Cal. 2017). AARP Foundation also participated as co-counsel for the plaintiff in *Kleber v. Carefusion Corporation*, No. 15-cv-1994, 2015 WL 7423778 (N.D. Ill. Nov. 23, 2015), and the appeal of the same case to the U.S. Court of Appeals for the Seventh Circuit, 914 F.3d 480 (7th Cir. 2019), and filed an amicus brief in support of the plaintiff in *Villareal v. R.J. Reynolds Tobacco Company,* 839 F.3d 958 (11th Cir. 2016). Further, AARP and AARP Foundation have

---

BRIEF OF AARP AND AARP FOUNDATION AS AMICI CURIAE IN SUPPORT OF PLAINTIFFS AND IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

submitted comments and testimony to Congress and the Equal Employment Opportunity Commission (EEOC) supporting the proper interpretation and application of § 623(a)(2).[1]

## II.  INTRODUCTION

In this class and collective action, Plaintiffs Derek Mobley, Jill Hughes, Sheilah Johnson-Rocha, and Faithlinh Rowe, allege that Defendant Workday, Inc. engages in a pattern or practice of illegal discrimination in hiring based on age, race, sex, and disability. Specifically, Plaintiffs plausibly allege that Defendant utilizes discriminatory job screening practices through its use of proprietary Large Language Models, Artificial Intelligence (AI), and Machine Learning that systematically "screen out" older applicants. Plaintiffs plead that these applicant screening tools have a disparate impact based on age, in violation of the ADEA, 29 U.S.C. §§ 621 *et seq.*

Defendant's motion to dismiss asks this Court to reverse its prior decision and find, among other things, that § 623(a)(2) does *not* authorize a disparate impact claim for job applicants under the ADEA—a legal conclusion that would contradict this Court's past precedent

---

[1] *See, e.g.,* Nancy A. LeaMond, *AARP is Fighting to Ensure Older Workers Get a Fair Shot*, AARP (May 20, 2025), https://www.aarp.org/advocacy/fighting-age-discrimination-in-workforce-2025/ (describing AARP's support of the proposed Protecting Older Workers Against Discrimination Act); U.S. Equal Emp. Opportunity Comm'n, *Written Testimony of Laurie McCann, Senior Attorney, AARP Foundation* (June 14, 2017), https://www.eeoc.gov/meetings/meeting-june-14-2017-adea-50-more-relevant-ever/mccann# (detailing AARP Foundation's position that the ADEA cannot fulfill its "central mandate to abolish age discrimination in hiring unless it fully protects applicants for employment").

[2] *See generally* Miriam Cross, *Older Adults Are Looking for Jobs, but Age Discrimination Hampers the Search*, AARP Bulletin (Sept. 4, 2025), https://www.aarp.org/advocacy/age-discrimination-senate-hearing; *see also* Justyna Stypinska, *AI ageism: a critical roadmap for studying age discrimination and exclusion in digitalized societies*, AI & Society, Vol. 28, No. 3, 665-77 (October 3, 2022), https://pmc.ncbi.nlm.nih.gov/articles/PMC9527733/.

---
BRIEF OF AARP AND AARP FOUNDATION AS AMICI CURIAE IN SUPPORT OF PLAINTIFFS AND IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

2

in *Rabin*. This threshold issue has vast implications for millions of older adults seeking to enter or re-enter the workforce, which is all the more important amidst a retirement crisis and the rising adoption of algorithmic screening practices that can contravene the clear text and remedial purpose of the ADEA.[2] In *Rabin*, this Court correctly held that the plain language of § 623(a)(2), along with Congress's intent, authorizes disparate impact claims for job applicants—construing the ADEA to protect the rights of older job applicants to be free from age discrimination in hiring. Put simply: The *Rabin* Court understood the ADEA to protect the rights of older job applicants because it is the only way to make sense of § 623(a)(2), particularly given the statute's plain language and legislative history, instructive Supreme Court precedent, and the ADEA's implementing agencies' persuasive and consistent view that it protects job applicants.

To support its flawed position, Defendant relies on out-of-circuit authority—that is neither binding nor persuasive—to resurface irreconcilable arguments that this Court already considered and prudently rejected in *Rabin*. Because this Court's precedent is compelled by the ADEA's text and purpose, Amici respectfully petitions the Court to reaffirm *Rabin*'s vindication of the rights of older job applicants and deny Defendant's motion to dismiss Plaintiffs' disparate impact claims under the ADEA on that basis.

---

BRIEF OF AARP AND AARP FOUNDATION AS AMICI CURIAE IN SUPPORT OF PLAINTIFFS AND IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

3

III.  **ARGUMENT**

  A.  **The *Rabin* Court Correctly Decided That the ADEA Authorizes Disparate Impact Claims for Job Applicants.**

  1.  **The plain language and legislative history of the ADEA demonstrate a clear intent to permit disparate impact claims for job applicants.**

In *Rabin*, this Court recognized that the plain language of the ADEA supports the argument that prospective employees may bring disparate impact claims. In getting there, the *Rabin* Court first recognized guidance from the Supreme Court indicating § 4(a)(2)[3] authorizes disparate impact claims. *See Smith v. City of Jackson, Miss.*, 544 U.S. 228, 243 (2005) (overturning Fifth Circuit's holding that a disparate-impact theory of recovery is never available under the ADEA). To address the question of whether job applicants could utilize § 623(a)(2) to bring disparate impact claims, the *Rabin* Court simply relied on the plain language of the statute for its interpretation. "As with any statutory interpretation question, our analysis 'must begin, and usually ends, with the text of the statute.'" *United States v. Stevens*, 997 F.3d 1307, 1314 (11th Cir. 2021) (citation modified). ADEA § 623(a)(2) holds that it is unlawful for an employer:

> To limit, segregate, or classify his employees in any way which would deprive or tend to deprive ***any individual*** of employment opportunities or otherwise adversely affect his status as an employee, because of ***such individual's*** age …

29 U.S.C. § 623(a)(2) (emphasis added). As this Court has already noted this provision "uses the

---

[3] ADEA § 4(a)(2) is officially codified at 29 U.S.C. § 623(a)(2). For consistency purposes, Amici will utilize § 623(a)(2) throughout this amicus brief unless a particular quotation uses § 4(a)(2).

BRIEF OF AARP AND AARP FOUNDATION AS AMICI CURIAE IN SUPPORT OF PLAINTIFFS AND IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

4

phrase 'any individual,' rather than 'employee'" to identify those the statute protects from workplace discrimination. This is in contrast to elsewhere in the ADEA, where Congress chose to solely use the term "employee" and not reference the broader category of affected individuals. *Rabin*, 236 F. Supp. 3d at 1128. Congress selects its words carefully; a statute should be construed so that "if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (citation modified).

Here, reading ADEA § 623(a)(2) to foreclose disparate impact claims for job applicants would render the term "individual" superfluous. As noted above, the phrase "individual" appears twice in § 623(a)(2) ("deprive any *individual* of employment opportunities" … "because of such *individual*'s age") demonstrating "Congress's intent to include all 'individuals' within [its] ambit." *Rabin*, 236 F. Supp. 3d at 1128. If Congress intended for the reach of § 623(a)(2) to be limited to employees, then it would not have included the phrase "any individual." Accordingly, the most consistent reading of § 623(a)(2) requires the conclusion that Congress intended to prohibit employers from taking actions regarding employees generally that would discriminate against *any individual*, including job applicants.

Even beyond the statute's plain language, this Court has also repeatedly recognized that the ADEA serves the "broad remedial purpose of prohibiting age discrimination," which is "to be liberally construed in light of its purpose." *Church v. Consol. Freightways, Inc.*, 137 F.R.D. 294, 306 (N.D. Cal. 1991); *see, e.g., Rabin*, 236 F. Supp. 3d at 1128 ("The ADEA is remedial humanitarian legislation and should be liberally and interpreted to effectuate the congressional purpose of ending age discrimination in employment.") (citation modified). Congress's intent in enacting the ADEA was to "give older workers employment opportunities whenever possible"

---

BRIEF OF AARP AND AARP FOUNDATION AS AMICI CURIAE IN SUPPORT OF PLAINTIFFS AND IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

5

and "to prohibit arbitrary age discrimination in employment." *Smith*, 544 U.S. at 241; 29 U.S.C. § 621(b).

Given the ADEA's broad remedial purpose, it is consistent with Congressional intent to authorize disparate impact claims for job applicants. As this Court has noted, Supreme Court precedent supports this reading. *Rabin*, 236 F. Supp. 3d at 1130. In *Smith*, the high Court recognized that, given that the ADEA was enacted shortly after Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*., and that Congress used the same language in both statutes, it is presumed that "Congress intended that text to have the same meaning in both statutes." *Smith*, 544 U.S. at 233. In recognizing this presumption, the Supreme Court deemed *Griggs v. Duke Power Company*, 401 U.S. 424 (1971), as "a precedent of compelling importance." *Smith*, 544 U.S. at 234. As this Court wrote in *Rabin*, *Griggs*—which considered "identical statutory language in Title VII"—should be read liberally to extend to job applicants, as the language of the opinion suggests that the "Court did not intend to limit Title VII's protections in a way that excluded job applicants." *Rabin*, 236 F. Supp. 3d at 1130.

Reading *Griggs* in conjunction with other Supreme Court precedent, such as *Robinson v. Shell Oil Company*, 519 U.S. 337 (1997), further bolsters the argument that Title VII authorizes disparate impact claims for job applicants under that statute. Significantly, the *Robinson* Court wrote that when the term "employee" "lacks any temporal qualifier," it can include people other than current employees. *Robinson*, 519 U.S. at 342. Indeed, the unanimous opinion in *Robinson*, authored by Justice Clarence Thomas, even notes one provision of Title VII where the term "employee" "most naturally is read to mean 'prospective employees.'" *Id*. at 343 n.3. If the term "employees" can mean prospective employees, surely the term "any individual" can too. *See*

---

BRIEF OF AARP AND AARP FOUNDATION AS AMICI CURIAE IN SUPPORT OF PLAINTIFFS AND IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

6

*Villarreal*, 839 F.3d at 982 (Martin, J., dissenting). Relying on this rationale, this Court should find that ADEA § 623(a)(2) not only protects current employees but can also be reasonably read to encompass *prospective* employees. *See id.* ("The text of the ADEA makes plain that 'any individual' who is 'deprive[d] ... of employment opportunities' because of his age can a file a disparate impact claim.").

### 2. This Court has already considered and rejected the analysis in other circuits declining to allow disparate impact claims by job applicants under the ADEA.

When deciding that job applicants may bring disparate impact claims under the ADEA, the *Rabin* Court had knowledge of the *Villareal* decision hailing from the U.S. Court of Appeal for the Eleventh Circuit. *See Rabin*, 236 F. Supp. 3d at 1128 (acknowledging that *Villarreal* reached the "opposite" conclusion on § 623(a)(2)). Since this Court issued the *Rabin* decision in 2017, the Seventh Circuit decided *Kleber*, which like the *Villarreal* decision, held that "the reach of [ADEA] § 4(a)(2) does not extend to applicants for employment." *Kleber*, 914 F.3d at 482; *accord Villarreal*, 839 F.3d 958 at 963. Both *Kleber* and *Villarreal* narrowly interpret the phrase "or otherwise adversely affect his status as an employee" in § 623(a)(2) as "limiting the reach of the statutory protection to an individual with 'status as an employee.'" *Kleber*, 914 F.3d at 482; *accord Villarreal*, 839 F.3d at 964. Both opinions also look to § 623(c)(2), which applies to labor organizations and is nearly identical to § 623(a)(2), except that it explicitly includes the phrase "status as an employee or applicant for employment," which both courts argue makes clear Congress's intent to limit the reach of § 623(a)(2) to "only someone with 'status as an employee.'" *Kleber*, 914 F.3d at 484; *accord Villarreal*, 839 F.3d at 966.

---
BRIEF OF AARP AND AARP FOUNDATION AS AMICI CURIAE IN SUPPORT OF PLAINTIFFS AND IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

7

This Court previously rejected both of these arguments in *Rabin* and should do so again here. As this Court has already recognized, the argument that ADEA § 623(a)(2) "gives only employees, not applicants, the right to bring disparate impact claims" is "undermined" by the Supreme Court's holding in *Griggs*. *Rabin*, 236 F. Supp. 3d at 1129. This Court also rejected the argument that § 623(c)(2)'s inclusion of "as an applicant for employment" necessarily means that § 623(a)(2) cannot provide a disparate impact claim for job applicants, because § 623(c)(2) governs *labor organizations*, which—unlike employers—"don't refer applicants." *Id*. *Kleber* builds on *Villarreal*'s arguments by comparing the language in § 623(a)(2) to § 623(a)(1), the disparate treatment provision, and § 623(d), the retaliation provision, which—like § 623(c)(2)— explicitly include references to hiring practices or applicants for employment. *Kleber*, 914 F.3d at 484. But these arguments are equally unpersuasive in light of this Court's understanding of the ADEA's relationship to Title VII and its governing precedent in *Griggs* and *Robinson*. Thus, this Court should reaffirm its decision in *Rabin* and hold that § 623(a)(2) permits prospective employees to bring disparate impact claims under the ADEA.

**B.**  ***Loper Bright* Only Serves to Affirm This Court's Sound Reasoning in *Rabin*.**

Unable to rebut this Court's rigorous *Rabin* reasoning on the merits, Defendant resorts to a collateral attack under *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024). Def.'s Mot. to Dismiss, Dkt. No. 237, at 7. But this argument too fails.

*First*, Defendant wrongly suggests that *Rabin*'s holding was dependent upon deference under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). To the contrary, the *Rabin* Court explained that "the Court believes the language of the statute, read in light of *Griggs* and *Smith*, makes plain that the ADEA permits job applicants to bring disparate

---

BRIEF OF AARP AND AARP FOUNDATION AS AMICI CURIAE IN SUPPORT OF PLAINTIFFS AND IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

8

impact claims." *Rabin*, 236 F. Supp. 3d at 1132. The *Rabin* Court went on to conclude that applying deference under *Chevron* only *further* confirmed its interpretation—but plainly did *not* rely upon *Chevron* as the principal basis for its analysis or ultimate holding. *Id.* at 1132-33 (discussing "decades-old interpretation of the ADEA by its implementing agency" as consistently "interpret[ing] the ADEA as permitting disparate impact claims by job-seekers"). Thus, *Loper Bright* does nothing to diminish this Court's independent construction and analysis of the ADEA's plain language in *Rabin*.

*Second*, even if *Rabin*'s holding *was* solely dependent upon *Chevron* deference—which it was not—Defendant would *still* be wrong to claim *Loper Bright* summarily renders *Rabin* "no longer valid." Def.'s Mot. to Dismiss, Dkt. No. 237, at 7. To the contrary, *Loper Bright* expressly did "not call into question prior cases that relied on the *Chevron* framework." *Loper Bright*, 603 U.S. at 412. The *Loper Bright* Court actually explained that "[t]he holdings of those [*Chevron*-based] cases … are still subject to statutory stare decisis despite our change in interpretive methodology." *Id.* Thus, "[m]ere reliance on *Chevron* cannot constitute a 'special justification' for overruling such a holding." *Id.* (quoting *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 266 (2014)).

*Third*, *Loper Bright* does not preclude this Court—whether in *Rabin* or in the instant matter—from consulting EEOC's "decades-old interpretation of the ADEA" as further "confirm[ing] that job applicants like Plaintiffs may bring disparate impact claims." *Rabin*, 236 F. Supp. 3d at 1133. If anything, *Loper Bright* encourages courts to supplement their independent analysis with consideration of longstanding agency interpretations such as those consulted in *Rabin*. *See Loper Bright*, 603 U.S. at 394, 402 ("courts may—as they have from the start—seek

---

BRIEF OF AARP AND AARP FOUNDATION AS AMICI CURIAE IN SUPPORT OF PLAINTIFFS AND IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

9

aid from the interpretations of those responsible for implementing particular statutes" because "[s]uch interpretations 'constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance' consistent with the APA," and where "interpretations issued contemporaneously with the statute at issue, and which have remained consistent over time, may be especially useful in determining the statute's meaning") (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). Here, Congress unequivocally "delegate[d] discretionary authority" to EEOC—*see* 29 U.S.C. § 628—such that it is wholly appropriate for this Court to "seek aid from the interpretations of those responsible for implementing particular statutes." *Loper Bright*, 603 U.S. at 394.

As convincingly collated by this Court in *Rabin*, rules and interpretive guidance issued by EEOC, and by the Department of Labor (DOL)— EEOC's predecessor interpreter of the ADEA—have for decades "endorse[d]" the idea of "applicant disparate impact claims" under federal age discrimination law. *Rabin*, 236 F. Supp. 3d at 1133 (recounting, *inter alia*, that "[o]nly months after the ADEA was signed into law, the [DOL] … declared that supposedly neutral 'pre-employment' tests must be 'reasonably necessary for the specific work to be performed' and 'equally applied to all applicants'") (quoting 33 Fed. Reg. 9173 (1968)). The fact that DOL and EEOC's position has "remained consistent over time" carries extra weight that is "especially useful in determining the statute's meaning." *Loper Bright*, 603 U.S. at 394, 395. While the ADEA's plain text and remedial purpose alone support following *Rabin* and deciding this issue in Plaintiffs' favor, those agencies' views "constitute a body of experience and informed judgment" that only add further credence to Plaintiffs' position. *Skidmore*, 323 U.S. at 140; *accord Loper Bright*, 603 U.S. at 394 (same).

---

BRIEF OF AARP AND AARP FOUNDATION AS AMICI CURIAE IN SUPPORT OF PLAINTIFFS AND IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

10

Therefore, to the extent this Court views *Loper Bright* as relevant to its analysis here, that case only serves to vindicate—rather than diminish—this Court's prior holding in *Rabin* that ADEA § 623(a)(2) creates a pathway for older job applicants to fight back against disparate-impact discrimination.

### C. Congress's Efforts to Further Amend the ADEA Have No Bearing on This Court's Construction of the ADEA's Applicability to Job Applicants.

Defendant tries to bolster their argument that *Rabin* should be overturned by providing an updated legislative history on the ADEA. Specifically, Defendant notifies the Court that since *Rabin* was decided in 2017, Congress has put forth several bills attempting to amend the ADEA and none have been successful to date. Def.'s Mot. to Dismiss, Dkt. No. 237, at 7. This argument is directly contradictory to established Supreme Court precedent that it is "impossible to assert with any degree of assurance that congressional failure to act represents affirmative congressional approval of the Court's statutory interpretation." *Alexander v. Sandoval*, 532 U.S. 275, 292 (2001). Defendant's argument is nothing more than an attempt to create ambiguity in the Congressional intent of the current statute which, as the *Rabin* Court clearly noted, does not exist.

As noted above, the *Rabin* Court concluded that if Congress intended for the reach of ADEA § 623(a)(2) to be limited to employees, then it would not have included the phrase "any individual." *Rabin*, 236 F. Supp. 3d at 1128. The *Rabin* Court concluded the most consistent reading of § 623(a)(2) requires the conclusion that Congress intended to prohibit employers from taking actions that would discriminate against *any individual*, not just existing employees. *Id.* Further, the Court focused its explanation on the remedial purpose of the ADEA and the Supreme

---
BRIEF OF AARP AND AARP FOUNDATION AS AMICI CURIAE IN SUPPORT OF PLAINTIFFS AND IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

11

Court's guidance that the purpose should essentially mirror that of Title VII. This allowed the Court to come to the most sensible conclusion that the current reading of the plain language of the ADEA already permits job applicants to assert disparate impact claims.

As such, amending the ADEA to update the language in § 623(a)(2) to specifically include the word "applicants" is not necessary for a court to get to the same conclusion that the *Rabin* Court reached. Congresswoman Sylvia Garcia, who recently introduced several proposed amendments to the ADEA, noted Congress's intent to protect job applicants from unlawful age discrimination:

> The [ADEA] … was designed to protect all Americans 40 and older from workplace discrimination—whether they're current employees or job seekers. However, two federal court rulings—*Villarreal* … and *Kleber* … created a legal loophole that undermines these protections for older Americans seeking jobs.[4]

While any potential future amendments may address this legal loophole or further support or clarify the *Rabin* Court's interpretation, such amendments do not change Congress's *original* intent regarding this issue—to protect job applicants from disparate-impact discrimination. Furthermore, the Supreme Court has instructed, "post-enactment legislative history (a contradiction in terms) is not a legitimate tool of statutory interpretation." *United States v.*

---

[4] Congresswoman Sylvia Garcia, House of Representatives, Press Release, *Congresswoman Sylvia Garcia Leads Bipartisan Push to Protect Older Job Applicants* (Sept. 22, 2025), https://sylviagarcia.house.gov/media/press-releases/congresswoman-sylvia-garcia-leads-bipartisan-push-to-protect-older-job-applicants.

---

BRIEF OF AARP AND AARP FOUNDATION AS AMICI CURIAE IN SUPPORT OF PLAINTIFFS AND IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

12

*Woods*, 571 U.S. 31, 48 (2013) (citation modified). The potential future amendments Defendant references would simply bolster Congress's original intent.

IV. **CONCLUSION**

For the foregoing reasons, and those provided in Plaintiffs' memorandum in opposition to Defendant's motion to dismiss, this Court should affirm its prior holding in *Rabin*, vindicate the text and purpose of the ADEA to protect older job applicants, and deny Defendant's motion to dismiss.

Dated: February 12, 2026

Respectfully Submitted

/s/ VICTORIA WILLIAMSON

_____
VICTORIA WILLIAMSON, DC Bar No. 991054
(*Admitted pro hac vice*)
LOUIS LOPEZ, DC Bar No. 461662
(*Admitted pro hac vice*)
AARP FOUNDATION
601 E Street NW
Washington, DC 20049
Telephone (202) 322-4180
vwilliamson@aarp.org
llopez@aarp.org

---

BRIEF OF AARP AND AARP FOUNDATION AS AMICI CURIAE IN SUPPORT OF PLAINTIFFS AND IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

13

# CERTIFICATE OF SERVICE

I certify that on February 12, 2026, I electronically submitted the foregoing Brief of AARP and AARP Foundation as Amici Curiae, along with the Notice of Motion and Motion of AARP and AARP Foundation for Leave to File Accompanying Brief as Amici Curiae, and [Proposed] Order, with the Clerk of Courts using the CM/ECF system which will automatically send email notification of such filing to the attorneys of record.

DATED: February 12, 2026                    Respectfully Submitted

/s/ VICTORIA WILLIAMSON
_____

VICTORIA WILLIAMSON, DC Bar No. 991054
(*Admitted pro hac vice*)
AARP FOUNDATION
601 E Street NW
Washington, DC 20049
Telephone (202) 322-4180
vwilliamson@aarp.org

---

BRIEF OF AARP AND AARP FOUNDATION AS AMICI CURIAE IN SUPPORT OF PLAINTIFFS AND IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS