# EXHIBIT 3



February 4, 2026

***Via E-Mail***


Bob Wiggins
rwiggins@wigginschilds.com
Jenny Smith
jsmith@wigginschilds.com

Rod Cooks
rcooks@winstoncooks.com
Lee Winston
lwinston@winstoncooks.com

**Orrick, Herrington & Sutcliffe LLP**
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669

+1 415 773 5700

**orrick.com**


**Kayla Delgado Grundy**

**E** kgrundy@orrick.com
**D** +1 415 773 5537
**F** +1 415 773 5759

Re:    Plaintiffs' Omnibus Objections to Workday's Special Interrogatories and Requests for Production to Opt-In Plaintiffs

Dear Counsel:

We write concerning Plaintiffs' Omnibus objections to Workday's Special Interrogatories (the "ROGs") and Requests for Production (the "RFPs") to Opt-In Plaintiffs served on January 15, 2026. These objections are facially insufficient and make objections contrary to both the law and the purposes of the discovery process. Plaintiffs provided these responses notwithstanding Workday's agreement to an extension of time to respond, and Plaintiffs' acceptance of that extension. The first batch of opt-in plaintiff responses are presently due on February 14, 2026, but Workday has no means of determining what Plaintiffs intend to produce—if anything at all—in light of the January 15, 2026 responses.

Given the ambiguity created by Plaintiffs simultaneously serving responses and accepting an extension for those same responses, Workday responds to Plaintiffs' objections now to set expectations for what Workday expects Plaintiffs will correct by the February 14, 2026 and March 16, 2026 response deadlines.

### I.    Plaintiffs Cannot "Reserve Their Right" to Produce and Respond.

The Federal Rules of Civil Procedure (the "Rules") are clear—Plaintiffs cannot rely on blanket reservations of rights to shield themselves from responding to Workday's written discovery. *See, e.g. Bernhardt v. Cnty. of Los Angeles*, No. CV 99-10121-GHK (MC), 2005 WL 8165402, at *4 (C.D. Cal. June 22, 2005) (stating that plaintiff "must produce all documents responsive to the requests which are in the plaintiff's possession, custody or control" because the "plaintiff may not reserve the right to identify or produce other documents at a future time"). As to requests for production, the Rules require a commitment to production or specific objections; a reservation of rights to later produce without any current commitment to any such production is not contemplated. *See* Rule 34(b)(2)(B). Similarly, Rule 33 states that "[t]he responding party must serve its answers and any objections within 30 days after being served with the interrogatories" and that "[e]ach interrogatory must, to the extent it is not objected to, be answered ***separately and fully in writing under oath***." Rule 33(b)(2)-(3) (emphasis added).



Bob Wiggins
Rod Cooks
February 4, 2026
Page 2

Plaintiffs respond to RFPs 1, 2, 3, 4, 5, 8 by reserving their right to produce documents at some unspecified time in the future and subject to various limitations including "sequencing" and "extension." *See, e.g.*, Response to RFP 2 ("Plaintiffs reserve the right to produce non-privileged, responsive documents, if any, following appropriate narrowing, sequencing, and extension."); Response to RFP 4 ("Plaintiffs reserve the right to produce narrowly tailored, non-privileged, public content that directly references Defendant Workday and is directly relevant, if any, subject to reasonable limitations and protective safeguards."). Plaintiffs similarly reserve their right to respond to each and every ROG propounded by Workday. *See, e.g.*, ROG 2 ("Plaintiffs reserve the right to provide a response after Defendant identifies relevant employers or systems and after an extension of time."); ROG 6 ("Plaintiffs reserve the right to respond, if at all, following narrowing and extension.").

Moreover, as described *infra*, Plaintiffs "reserve the right" to respond or produce based on events that have already occurred. The Parties have already met and conferred and agreed to an extension for Plaintiffs to respond to Workday's discovery. There is no further "appropriate extension" to be agreed upon. Similarly, Plaintiffs "reserve the right" to produce documents subject to "protective safeguards" or "appropriate confidentiality protections," despite the fact that the Parties have already entered a protective order in this matter. *See* RFP 6; ROGs 7, 8. And Plaintiffs suggest that they will not identify employers Plaintiffs applied to that used Workday or HiredScore software until Workday "identifies relevant employers." ROG 2. Notwithstanding that such an objection has no merit, Workday provided Plaintiffs' counsel the customer list months ago. Plaintiffs' refusal to respond to discovery pending events that have already occurred demonstrates bad faith and abuse of the discovery process.

We expect these issues will be resolved in Plaintiffs' February 14 and March 16, 2026 responses. To the extent there is any dispute, however, about the appropriateness of such objections, please confirm in writing by February 16, 2026 so that we may timely raise these issues with the Court. Given the 60-day extension Plaintiffs requested, and which Workday granted for half of the opt-in Plaintiffs, Workday is not willing to delay resolution of these fundamental questions until March.

## II.    Plaintiffs Improperly Object That Workday is Seeking Individualized Discovery.

Plaintiffs object to numerous RFPs and ROGs on the basis that the requests seek "individualized" discovery. *See* Responses to RFP Nos. 1 (objecting that request "improperly seeks individualized background discovery); 2 (request seeks "individualized agency materials unrelated to the common proof issues central to this case"); 4 (request seeks "individualized employment history evidence"); 5 (request seeks "Plaintiff-by-Plaintiff adjudication of hiring outcomes"); and 7 (request "improperly collapses the collective-action framework by forcing individualized mini-trials of hiring decisions"); ROG Nos. 1 (request seeks "individualized background information"); 2 (request seeks "individualized proof"); 6 (request seeks "individualized employment histories"); 7 (request seeks "individualized proof of protected-class status"); 9



Bob Wiggins
Rod Cooks
February 4, 2026
Page 3

(request seeks "individualized damages proof"); and 11 (request seeks information "irrelevant to the operation or impact of Defendant's algorithmic systems").

Plaintiffs' objections betray their fundamental misunderstanding of the discovery process leading up to decertification. At decertification, which comes at or after the close of relevant discovery, the Court will take "a more exacting look at plaintiffs' allegations and the record" to determine whether the opt-in plaintiffs are similarly situated. *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1109 (9th Cir. 2018). The Court must make a factual determination regarding the propriety and scope of the collective and "must consider the following factors: (1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendants with respect to the individual plaintiffs; and (3) fairness and procedural considerations." *Leuthold v. Destination Am.*, Inc., 224 F.R.D. 462, 467 (N.D. Cal. 2004). Workday's requested discovery directly bears on whether the opt-in Plaintiffs are similarly situated for purposes of decertification.

Moreover, Plaintiffs forget the Court already contemplated individualized discovery would proceed and Plaintiffs chose not to pursue the third-party administrator process that would have streamlined and minimized such individualized discovery. In rejecting Workday's request that opt-in Plaintiffs complete a pre-opt-in eligibility form, the Court stated, "Workday's request to have opt-in plaintiffs complete the eligibility information ***is better framed as a discovery request***." ECF No. 195. The Court further stated that the Parties "may simply use the traditional forms of discovery under the Federal Rules. Since no pre-opt-in eligibility process is necessary anymore, no third-party administrator is needed anymore either, ***as discovery will be taken only as to those individuals who have elected to join the litigation as opt-in plaintiffs***." *Id.* (emphasis added). Plaintiffs cannot now stonewall Workday's attempt to execute on the Court's direction.

At bottom, Workday is permitted to seek individualized discovery from opt-in plaintiffs to assess their eligibility as members of the collective and to seek information relevant to decertification. *See Phillips v. Cnty. of Riverside*, No. 519CV01231JGBSHK, 2021 WL 1566970, at *3-4 (C.D. Cal. Mar. 3, 2021) ("fairness dictates that Defendant should be permitted to conduct enough [individualized] discovery in order to move for decertification and defend against Plaintiffs' claim").

Workday's document requests and interrogatories are narrowly tailored to determine relevant information about the opt-in Plaintiffs, including their prior work history, prior job application history, and their basis for asserting that they were discriminated against by employers using software provided by Workday. Plaintiffs must respond to such requests and Workday expects the forthcoming responses will include actual substantive responses and agreements.

Bob Wiggins
Rod Cooks
February 4, 2026
Page 4

### III.     Plaintiffs Improperly Assert That Workday Already Possesses The Information Requested.

Many of Plaintiffs' objections incorrectly assert that Workday is already in possession of the requested materials or can more easily find these documents via third-party discovery. *See* Responses to RFP 2 ("already in Defendant's possession, [or] obtainable directly from public agencies"); 4 ("publicly available employment records"); 5 (years of job-search activity is "equally available to Defendant or third-party platforms"); 7 ("equally or more readily available to Defendant or third-party platforms"); ROG 1 (seeks information "equally or more readily available to Defendant through discovery from its client-employers or third parties"). As Workday has repeatedly explained, it cannot access its customers' data. Workday has no obligation to obtain information from third parties when the information requested is in the possession of the opt-in Plaintiffs. *See Pegatron Tech. Serv., Inc. v. Zurich Am. Ins. Co.*, 377 F. Supp. 3d 1197, 1203 (D. Or. Apr. 29, 2019) (noting that "courts give special consideration to the burdens imposed on nonparties" and that "Courts are particularly reluctant to require a nonparty to provide discovery that can be produced by a party."); *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 577 (N.D. Cal. 2007) ("There is simply no reason to burden nonparties when the documents sought are in possession of the party defendant.") (internal quotations omitted).

### IV.     Plaintiffs Improperly Object That They Will Not Respond Absent "Safeguards."

As described *supra*, many of Plaintiffs' objections state that no production or response will be made unless the appropriate "safeguards" or "confidentiality protections" are in place. *See* Responses to RFP 3 ("subject to reasonable limitations and protective safeguards"); 6 ("subject to appropriate confidentiality protections"); 8 ("not proportional absent a heightened showing of relevance and safeguards"); ROG 7 ("without adequate justification or safeguards"); 8 ("following appropriate safeguards").

Plaintiffs' objections are nonsensical given that the Parties signed, and the Court entered, a protective order in this case more than a year ago. *See* ECF Nos. 99, 101. Opt-in Plaintiffs are free to designate their productions in accordance with the protective order's provisions. *See Holland-Hewitt v. Allstate Life Ins. Co.*, 343 F.R.D. 154, 176 (E.D. Cal. 2022) (acknowledging that protective order applied to class members).

### V.     Plaintiffs Improperly Reserve Their Right to Respond Pursuant to a Unilateral Extension.

Plaintiffs improperly assert that they will not respond to certain document requests and interrogatories unless Workday provides an extension of time to respond. *See* Responses to RFP 2 ("following appropriate narrowing . . . and extension"); 5 ("pending narrowing . . . and extension"); 6 ("following an agreed extension"); ROG 1 ("following an agreed extension"); 2 ("and after an extension of time"); ("following narrowing of scope and an extension"); 5 ("following clarification and extension"); 6 ("following clarification and extension"); 7 ("subject to a protective order and extension"); 8 ("following appropriate safeguards and



Bob Wiggins
Rod Cooks
February 4, 2026
Page 5

an extension"); 9 ("following expert discovery and an extension of time"); 10 ("after narrowing and extension"); 11 ("following an extension").

Plaintiffs cannot unilaterally demand a vague and indeterminate extension of time to respond to certain written discovery requests, particularly where Workday *already granted* Plaintiffs a generous extension of 30 days for half of Plaintiffs' responses and 60 days for the second half (after Plaintiffs requested the extension the day before their responses were due).

### VI.    Plaintiffs Improperly Object to Requests Regarding Unrelated Workday Applications.

Plaintiffs improperly object to numerous document requests and interrogatories on the grounds that they seek information related to applications to non-Workday employers. *See* Responses to RFP 4 ("Request seeks expansive employment, performance, and compensation records"); 5 ("regardless of whether Defendant's platform was involved"); 7 ("regardless of whether Defendant's platform was used, and regardless of relevance to Defendant's conduct"); ROG 10 ("exhaustive narrative of all job-search efforts"). Workday is entitled to understand how Plaintiffs approached their job search and sought employment. This information is directly relevant to whether Plaintiffs are similarly situated, qualified for the positions they applied to, and whether Workday's software *caused* a disparate impact in hiring for all of them.

### VII.    Plaintiffs' Requests for "Narrowing" are Improper.

Plaintiffs also refuse to produce documents absent "appropriate narrowing," without agreeing to meet-and-confer regarding the scope of documents and without identifying the information they are willing to produce. *See* Responses to RFPs 1 ("only after Defendant narrows this Request"); 2 ("following appropriate narrowing"); 5 ("pending narrowing"); ROGs 3 ("following narrowing of scope"); 5 ("following clarification"); 6 ("following clarification"); 10 ("after narrowing").

To the extent Plaintiffs have reasonable concerns regarding the scope of Workday's requests—which Workday asserts are appropriately tailored—the proper course would be for Plaintiffs to respond indicating what they are willing to produce or providing information that Plaintiffs agree is appropriate to facilitate a meaningful meet and confer process. To the extent Plaintiffs contend they require further clarification regarding any of the requests, Workday will make itself available to meet and confer on February 5, 2026, or February 6, 2026 to answer Plaintiffs' questions regarding RFPs 1, 2, and 5 and ROGs 3, 5, 6, and 10.

### VIII.    Plaintiffs' Responses to Workday's RFPs Contain Numerous Additional Deficiencies.

In addition to the impermissible objections addressed above, *see supra* Sections I-VI, many of Plaintiffs' individual RFP responses contain improper objections. For the sake of efficiency, and keeping in mind that Plaintiffs will be providing substantive responses, Workday addresses some of those objections here.



Bob Wiggins
Rod Cooks
February 4, 2026
Page 6

**RFP No. 1:** This request seeks complaints alleging discrimination, retaliation, harassment, or other alleged inappropriate or unlawful conduct. Plaintiffs object that this request seeks "documents wholly unrelated to Defendant Workday, Inc., its hiring platform, or its alleged centralized and uniform screening practices, and instead improperly targets Plaintiffs' personal litigation histories and background conduct," and that it improperly seeks character evidence. Not so. This request is relevant to Plaintiffs' credibility including to investigate whether Plaintiffs have previously blamed something other than Workday's software for alleged discrimination. Setting aside whether such "character evidence" would be admissible, it is discoverable.

**RFP No. 3:** This request seeks documents from social media accounts or internet postings that reference Workday or relate to this lawsuit. Plaintiffs object that the request "seeks wholesale access to Plaintiffs' social-media activity without any meaningful temporal, subject-matter, or relevance limitation, and improperly sweeps in private communications, constitutionally protected expression, and personal information wholly unrelated to the claims or defenses in this action." Plaintiffs further object that the request, "constitutes an impermissible fishing expedition premised on speculation that Plaintiffs' social-media content may undermine their claims, without any threshold showing of relevance." Plaintiffs' objections blatantly mischaracterize the request. The request is narrowly tailored to seek documents from social media accounts that specifically reference Workday or that evidence any claim or incident related to Plaintiffs' claims against Workday in this lawsuit. This request—by its own narrowly tailored ask—necessarily does not seek "wholesale access to Plaintiffs' social media activity" or "login credentials." Instead, it seeks information directly relevant to Plaintiffs' claims against Workday. It is similarly disingenuous to suggest that courts routinely reject similar requests. *See Dukes v. Wal-Mart Stores, Inc.*, No. 01-CV-2252 CRB JSC, 2013 WL 1149754, at *4 (N.D. Cal. Mar. 19, 2013) (requiring plaintiffs to produce responsive social media posts relating to allegations in complaint in their possession, custody, or control); *Armijo v. Costco Wholesale Warehouse, Inc.*, No. CV 19-00484 ACK-RT, 2021 WL 6425213, at *6 (D. Haw. Nov. 5, 2021) ("Plaintiff has put his medical, physical, emotional, and mental condition at issue in this case. As such, his … social media accounts … are clearly discoverable").

**RFP No. 6:** This request seeks all versions of Plaintiffs resumes since August 2020. Plaintiffs object that the request is overbroad in that it seeks "drafts never used or shared." Workday understands that Plaintiffs will be producing final draft copies of their resumes, though Plaintiffs condition such production on an extension and subject to appropriate confidentiality protections. Such conditions have already been addressed as discussed *supra*. But Plaintiffs cannot vaguely limit their production to resumes submitted "in connection with relevant applications." Plaintiffs must produce all copies of their resumes since August 2020.

**RFP No. 8**: This request seeks documents which Plaintiffs contend suggest that age, disability, and/or race played a role in the decision whether or not to hire Plaintiffs. Plaintiffs misconstrue Workday's request and object that it seeks "expert opinion, statistical inference, causation analysis, or legal conclusions." Workday's request does not seek expert opinion. Plaintiffs have opted into a collective action in which they



Bob Wiggins
Rod Cooks
February 4, 2026
Page 7

allege that they were discriminated against based on certain protected statuses. Workday is entitled to discovery to understand why Plaintiffs believe they were discriminated against.

**RFP No. 9:** This request seeks documents referenced in response to Workday's Special Interrogatories, Set One. Plaintiffs object that the request is "improperly circular" because their interrogatory responses are not yet complete. Plaintiffs cannot use their incomplete interrogatory responses as a means of avoiding responding to valid requests for production under the federal rules. Plaintiffs must confirm whether they will be producing documents.

### IX.    Plaintiffs' Interrogatory Responses Contain Numerous Additional Deficiencies.

In addition to the impermissible objections addressed above, *see supra* Sections I-VI, many of Plaintiffs' individual interrogatory responses contain improper objections. Understanding Plaintiffs' responses are still forthcoming, Workday addresses some of those issues here.

**ROG No. 4:** This interrogatory seeks all facts supporting any contentions Plaintiffs may have that their applications were rejected due to "algorithmic decision making." Plaintiffs object that the interrogatory "improperly seeks expert opinions, technical analysis, and causation theories." Not so. Workday is seeking discovery into ***Plaintiffs'*** understanding of the case they have chosen to join. Rule 33(a)(2) ("An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact"). Plaintiffs must respond to the interrogatory based on their personal knowledge and are free to state they have no personal knowledge.

**ROG No. 5:** This interrogatory seeks information relating to Plaintiffs understanding of Workday or Hiredscore's involvement in reviewing Plaintiffs applications or communicating with Plaintiffs. Plaintiffs again object that the interrogatory assumes facts not established—that Plaintiffs would "know whether individuals were employees or representatives of Workday or HiredScore." In making this objection, Plaintiffs again rely on the misguided objection that the request "assumes facts" not established. *See Entangled Media, LLC v. Dropbox Inc.*, No. 23-CV-03264-PCP, 2025 WL 3240878, at \*4 (N.D. Cal. Nov. 20, 2025). "When responding to interrogatories, a party has a duty to respond with all the information under its custody and control." *Fresenius Med. Care Holding Inc. v. Baxter Int'l, Inc.*, 224 F.R.D. 644, 651 (N.D. Cal. 2004). If the Plaintiffs lack personal knowledge to respond to the interrogatory, they are free to say so but must answer the interrogatory.

**ROG No. 6:** This interrogatory seeks information concerning applications Plaintiffs submitted that they do not believe was processed through Workday or HiredScore's software. Plaintiffs object to this request, stating that it seeks information "unrelated to the claims in this action" including "irrelevant comparator information." To the contrary, this interrogatory is directly relevant to assessing Plaintiffs' claims, and determining whether Workday's software caused a disparate impact on the opt-in Plaintiffs. Workday has



Bob Wiggins
Rod Cooks
February 4, 2026
Page 8

a right to inquire into Plaintiffs' job histories and application histories to determine how Workday's software may have evaluated them in comparison to a non-Workday utilizing employer.

**ROG No. 9:** This interrogatory seeks information related to Plaintiffs' alleged damages, including the total amount of income, benefits, and/or earning capacity Plaintiffs claim to have lost as a result of Workday's actions. Plaintiffs object that the request improperly seeks "damages calculations and mitigation evidence" prior to the completion of fact and expert discovery. Workday is entitled to evidence regarding Plaintiffs' alleged damages prior to the close of discovery. *See Oracle USA, Inc. v. SAP AG*, 264 F.R.D. 541, 549-50 (N.D. Cal. 2009) (discussing the defendant's efforts throughout the two year discovery phase to flesh out the plaintiffs' damages allegations). This interrogatory does not ask for an expert conclusion—it requests that Plaintiffs identify their alleged damages, which is not an expert inquiry. *See Cable & Computer Tech., Inc. v. Lockheed Saunders, Inc.*, 175 F.R.D. 646, 652 (C.D. Cal. 1997) ("Thus, although it is too early for plaintiff to provide expert opinions on the subject of damages, plaintiff may, at this time, answer interrogatory no. 1 based on the information it has to date.").

**ROG. No. 11:** This interrogatory seeks information relating to educational degrees and work-related certifications held by Plaintiffs. Plaintiffs object that the information is "already available through document discovery, disclosures, or resumes to be produced." As an initial matter, it is not clear that Plaintiffs have agreed to produce resumes. Nor is it apparent that the information requested will be included in the Plaintiffs' resumes. Plaintiffs must respond to this interrogatory, notwithstanding that information may be available in documents Plaintiffs produce. *See Pac. Marine Propellers, Inc. v. Wartsila Def., Inc.*, No. 17CV555 BEN (NLS), 2017 WL 11704059, at *8 (S.D. Cal. Oct. 20, 2017) (requiring the plaintiff to respond to interrogatory request to identify documents even where documents were previously produced business records). If Plaintiffs choose to respond to identify **by Bates number** a document or documents that contains all of the requested information, Plaintiffs are free to do so. But Plaintiffs cannot generally respond by referring to discovery broadly. *See Pac. Marine Propellers, Inc. v. Wartsila Def., Inc.*, No. 17CV555 BEN (NLS), 2017 WL 11704059, at *8 (S.D. Cal. Oct. 20, 2017) (the responding party has the duty to specify, by category and location, the records from which answers to interrogatories can be derived"); *Sanchez Y Martin, S.A. de C.V. v. Dos Amigos, Inc.*, No. 17CV1943-LAB (LL), 2019 WL 581715, at *8 (S.D. Cal. Feb. 13, 2019) ("if responsive material has already been produced, Paoli must identify the material and its location").

\*      \*      \*

As stated above, in light of Plaintiffs' January 16, 2026 responses, it is unclear what Plaintiffs intend to provide on February 14 and March 16. Please confirm that Plaintiffs will be providing additional, substantive responses to Workday's RFPs and ROGs by the opt-in Plaintiffs on those dates as previously agreed, and that those responses will take into account the matters addressed in this letter. Please note that this letter



Bob Wiggins
Rod Cooks
February 4, 2026
Page 9

is not exhaustive in addressing all of Plaintiffs' unfounded objections. If it would be helpful to discuss in advance of Plaintiffs' further responses, please let us know when you are available on February 5 or 6.

Very truly yours,

Kayla Delgado Grundy