# EXHIBIT 5



March 10, 2026

*Via E-Mail*

**Orrick, Herrington & Sutcliffe LLP**
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669

+1 415 773 5700

**orrick.com**

**Kayla Delgado Grundy**

**E**  kgrundy@orrick.com
**D**  +1 415 773 5537
**F**  +1 415 773 5759

Bob Wiggins
rwiggins@wigginschilds.com
Jenny Smith
jsmith@wigginschilds.com

Rod Cooks
rcooks@winstoncooks.com
Lee Winston
lwinston@winstoncooks.com

Re:    Deficiencies in Opt-In Plaintiffs' Responses to Workday's Special Interrogatories and Requests for Production

Dear Counsel:

We write concerning Plaintiffs' responses to date to Workday's Special Interrogatories (the "ROGs") and Requests for Production (the "RFPs") to Opt-In Plaintiffs served December 16, 2025.[1] Despite multiple extensions of time, Plaintiffs' responses remain incomplete. Although Workday addressed many deficiencies in Plaintiffs' objections in its February 4, 2026 meet-and-confer letter, Plaintiffs have failed to adapt their responses to address those concerns and in fact attempt to incorporate by reference those prior improper objections into these responses. Plaintiffs' responses are inadequate. Indeed, the number and scale of deficiencies call into question whether Plaintiffs' responses are made in good faith. Workday addresses these deficiencies in turn and expects that Plaintiffs will address them promptly and adapt future responses accordingly.

## I.    Plaintiffs' Responses Are Untimely

Workday served its limited-scope discovery requests on the Opt-In Plaintiffs on December 16, 2025. On January 14, 2026—the day before the January 15, 2026 response deadline—Plaintiffs requested a 60-day extension of time to respond. Workday agreed to a 30-day extension for half

---

[1] Workday propounded both a set of requests for production and a set of interrogatories on each Opt-in Plaintiff. In responding, Plaintiffs have collapsed their responses to these distinct sets of discovery (which are based on different rules) together. Workday similarly responds collectively. To the extent Workday's position is specific to either the RFPs or ROGs, Workday specifies its position. Otherwise, the issues identified herein apply globally.



Bob Wiggins
Rod Cooks
March 10, 2026
Page 2

of Plaintiffs' responses (due February 14, 2026 for ninety-eight opt-ins) and a 60-day extension for the second half of Plaintiffs' responses (due March 16 for ninety-seven opt-ins).[2]

Shortly before the February 14, 2026 deadline for the first half of the Opt-In Plaintiffs' responses, Plaintiffs stated that they understood their deadline to be extended to February 17, 2026 in light of the long holiday weekend. Workday did not take issue with Plaintiffs' alternative February 17, 2026 date. Yet on February 17, Plaintiffs still did not respond. Instead, at 8:00 PM PT, Plaintiffs' counsel stated, "Due to the substantial number and scope of the discovery requests served, we require additional time to ensure complete and accurate responses . . . We appreciate your professional courtesy and will keep you updated as to timing." Neither the number nor scope of requests changed between December 16, 2025 and February 17, 2026, such that Plaintiffs' last-minute, unilateral voiding of their deadline was appropriate. And although Plaintiffs did not notify Workday that they would miss the deadline until well after business hours on the day the responses were due, it seems Plaintiffs' responses were not even remotely prepared, as two weeks later the vast majority of the responses remain unserved, and the responses that have been served are neither "complete" nor "accurate."

On February 23, 2026, Plaintiffs declared that the first set of written responses and rolling document production would begin on February 26, 2026. On February 26, 2026, Plaintiffs served discovery responses for only *ten* Opt-In Plaintiffs, far fewer than the 98 that were due. On March 4, 2026, Plaintiffs served discovery responses for an additional 40 Plaintiffs.[3] No responsive documents for any Opt-In Plaintiffs have been produced to date.

Federal Rule of Civil Procedure 33 requires "[t]he responding party [to] serve its answers and any objections within 30 days after being served with the interrogatories" and that "[e]ach interrogatory [], to the extent it is not objected to, be answered separately and fully in writing under oath." Rule 33(b)(2)-(3). Federal Rule of Civil Procedure 34(b)(2) states that "[t]he party to whom the request

---

[2] Despite this extension, Plaintiffs nevertheless served "omnibus" objections to Workday's requests on January 15, 2026. The purpose of these objections is unclear. Workday addressed the improper objections in a February 4, 2026 Letter. Plaintiffs did not respond to that letter, instead suggesting it was premature pending Plaintiffs' forthcoming responses, yet the few responses Workday has now received contain and incorporate the same unfounded objections. Workday's prior correspondence addresses those objections.

[3] Workday is reviewing these responses and will follow-up to the extent there are issues in those responses that are different from those identified herein. To the extent those objections and responses overlap with Plaintiffs' February 26, 2026 responses, Workday intends that this letter address all such similar issues.



Bob Wiggins
Rod Cooks
March 10, 2026
Page 3

is directed must respond in writing within 30 days after being served." Plaintiffs' responses do not comply with the Federal Rules. Plaintiffs' deadline has long passed, yet Workday has received responses from only 50 of the 98 Opt-In Plaintiffs whose responses were due on February 17. Plaintiffs have also failed to identify any date by which they will provide substantive responses to Workday's requests and/or documents.

Workday's requests, while voluminous, are not complicated. They seek information about the Opt-In Plaintiffs that is necessary to assess their eligibility to join the collective—a matter Plaintiffs' counsel should have already investigated prior to submitting the opt-in consent forms for these individuals. It is unacceptable that more than two months after Workday served the requests, Plaintiffs have been unable to provide substantive discovery responses for even *half* of Workday's requests. As Workday has repeatedly emphasized, it does not object in principle to the reality that document production may follow written discovery responses, but it strenuously objects to Plaintiffs' failure to meaningfully respond to its requests at all.

If Plaintiffs are unable to serve the remaining 145 responses by March 16, 2026, Workday intends to raise this issue with Judge Beeler.

## II.    The Responses And Objections Are Not Verified And Are Impermissibly Vague

Plaintiffs' responses and objections are not verified and make it impossible to determine what Plaintiffs intend to produce and the basis for withholding any documents or information. As described below, Plaintiffs fail to verify their interrogatory responses, improperly incorporate objections by reference, list numerous boilerplate objections, and for the RFPs, fail to specify what they will produce. Plaintiffs must remedy these deficiencies.

### A.    Plaintiffs' Interrogatory Responses Must Be Verified

Plaintiffs' interrogatory responses are deficient as an initial matter because they are not verified. *See* FRCP 33(b)(3) ("Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath.") and 33(b)(5) ("The person who makes the answers must sign them."). Each Opt-In Plaintiff must verify their responses by attesting to their accuracy under oath.



Bob Wiggins
Rod Cooks
March 10, 2026
Page 4

**B.      Plaintiffs' Boilerplate Objections and Incorporations by Reference Are Improper**

Plaintiffs improperly include boilerplate objections (overbreadth, privacy, relevance, privilege, and failure to identify documents sought with sufficient particularity) and incorporate by reference all objections previously made. *See* ROG No. 9 ("Plaintiff adopts, incorporates and restates the above objections to Request #1 above and Interrogatory nos. 1-5 above as if such objections were fully stated herein. Plaintiff also incorporates by reference each General Objection to this set of interrogatories as if those objections were fully stated herein."); RFP Nos. 1-9.

These boilerplate objections and incorporation by reference are patently improper attempts to circumvent Plaintiffs' obligations to object "with specificity" to each interrogatory or request for production. *See* FRCP 33(b)(4) ("The grounds for objecting to an interrogatory must be ***stated with specificity***"); FRCP 34(b)(2)(B) ("the response must either state that inspection and related activities will be permitted as requested ***or state with specificity*** the grounds for objecting to the request"). Courts routinely reject a party's attempt to circumvent their discovery obligations by relying on vague incorporations of prior objections. *See, e.g. Herbalife Int'l of Am., Inc. v. Kamel*, No. CV216982MWFPVCX, 2023 WL 6193006, at *4 (C.D. Cal. July 20, 2023) (citing *Clark v. City of Los Angeles*, No. CV 20-10768, 2021 WL 4731353, at *12 (C.D. Cal. Aug. 23, 2021)) (rejecting the defendant's attempt to "incorporate by reference . . . his general objections into each specific response," and finding that the defendant's attempt to do so "is entirely improper in federal court."); *Diaz v. Heredia*, No. EDCV202332JWHKKX, 2022 WL 2134967 (C.D. Cal. Mar. 4, 2022) ("Defendant has not made any attempt to state how these objections are equally applicable to Plaintiff's request for production, other than his conclusory incorporation by reference").

Workday is entitled to know the grounds upon which Plaintiffs are withholding documents or information. To the extent Plaintiffs are withholding documents or information based on boilerplate objections and incorporation by reference, Plaintiffs must amend their responses to specify how such objections apply to each request. If Plaintiffs are not withholding documents or information based on these boilerplate objections, they must so confirm.



Bob Wiggins
Rod Cooks
March 10, 2026
Page 5

### C. Plaintiffs Must Identify What They Intend To Produce In Response To RFPs

Plaintiffs respond to each of Workday's document requests with the following improper qualifying (and unclear) language:

> Construing this Request to seek information limited to the scope of such objections and Workday's own discovery objections and definition of relevance and proportionality. . .

This response is inadequate and violates Federal Rule 34(b)(2)(B). A party cannot "combine its objections into a partial response without any indication that the response was actually a partial response." *Fay Ave. Props., LLC v. Travelers Prop. Cas. Co. of Am.*, No. CIV. 11-2389-GPC WVG, 2014 WL 2965316, at \*2 (S.D. Cal. July 1, 2014). Plaintiffs are not permitted to leave Workday "guessing whether the producing party has produced all responsive documents, or only some responsive documents and withheld others on the basis of the objections." *Id.* at \*1.

Plaintiffs must amend their responses to Workday's document requests to clearly state whether they will be producing responsive documents, and if so, what documents they intend to produce if Plaintiffs' agreement is for less than what Workday requested.

### III. Plaintiffs' New Objections Are Waived

Plaintiffs served "omnibus" objections on January 15, 2026. While Workday disputes such "omnibus" objections are permissible or effective to preserve Plaintiffs' objections, it is certainly the case that any objections not asserted in such "omnibus" objections are waived because Opt-in Plaintiffs did not otherwise timely respond to Workday's requests. *Hinostroza v. Denny's Inc.*, No. 217CV02561RFBNJK, 2018 WL 3212014, at \*5 (D. Nev. June 29, 2018) (finding objections not made in initial discovery responses waived); *Andreoli v. Youngevity Int'l, Inc.*, No. 16-CV-02922-BTM-JLB, 2018 WL 6334284, at \*8 (S.D. Cal. Dec. 5, 2018) (same); *Strange Music Inc. v. Strange Worldwide, LLC*, No. CV 20-10106-MWF (ASX), 2022 WL 22879574, at \*1 (C.D. Cal. May 12, 2022) (collecting cases and holding that a party who does not timely respond to discovery waives objections). Plaintiffs' new objections—including those identified *infra* Section IV—are waived.



Bob Wiggins
Rod Cooks
March 10, 2026
Page 6

## IV.    The Responses Plaintiffs Served Are Deficient

While Plaintiffs' new objections are waived and therefore ineffective to justify withholding documents or information, even if such objections were timely, they cannot withstand scrutiny. Workday outlines the key issues with Plaintiffs' responses below.

### A.    Plaintiffs Cannot Withhold Discovery Based On Workday's Discovery Responses

Plaintiffs object to Workday's discovery requests on the grounds that:

> Workday waived the Request and its ability or right to obtain the requested information by failing to timely answer or produce the documents in response to Requests Plaintiffs served on December 2, 2025, and September 2024.

As an initial matter, this statement is factually inaccurate. Workday has complied with its discovery obligations, including by timely answering all discovery. But even if it hadn't, Plaintiffs' objection is legally baseless. A party's alleged failure to respond to discovery does not "waive" its right to propound its own discovery requests. *Edge Sys. LLC v. Ageless Serums LLC*, No. 220CV09669FLAPVCX, 2021 WL 4497505, at *3 (C.D. Cal. Aug. 20, 2021) ("A party may not excuse its failure to comply with discovery obligations by claiming that its opposing party is similarly delinquent. Nor may a party condition its compliance with its discovery obligations on receiving discovery from its opponent.") (internal citations and quotations omitted); *Novitzky v. Transunion LLC*, No. 2:23-CV-04229-SPG-MAR, 2025 WL 1723168, at *4 (C.D. Cal. May 12, 2025) ("Numerous courts have held that Rule 26(d) prohibits a party from delaying or withholding discovery on the basis that the party has not obtained responses to its own discovery requests."). The appropriate remedy for discovery disputes is a motion to compel, not a retaliatory refusal to respond. This objection has no basis in the Federal Rules and Workday requests Plaintiffs confirm that no documents or information are being withheld as a result of this meritless objection.

### B.    Workday Is Entitled To Discovery From All Opt-In Plaintiffs

Plaintiffs object to Workday's "unilateral, non-random selection" of Plaintiffs, suggesting that the Northern District's precedent "favor[s] 'selection methods for the [opt-in] discovery group that decrease selection bias.'" ROG No. 1 (incorporated by reference into all other discovery responses). Plaintiffs ignore, however, that the Court already acknowledged Workday would



Bob Wiggins
Rod Cooks
March 10, 2026
Page 7

obtain discovery from **every** Opt-In Plaintiff as a result of Plaintiffs' refusal to participate in the third-party administrator process. In rejecting Workday's request that Opt-In Plaintiffs complete a pre-opt-in eligibility form, the Court stated, "Workday's request to have opt-in plaintiffs complete the eligibility information is better framed as a discovery request." ECF No. 195 (further stating that the parties "may simply use the traditional forms of discovery under the Federal Rules" to obtain the information contemplated by the opt-in eligibility form).

Workday did not randomly select the Opt-In Plaintiffs on whom to serve discovery; it served discovery on every Opt-In Plaintiff currently part of the collective and intends to serve similar requests on the remainder of the collective once identified. It is only through this discovery that Workday can determine whether the Opt-In Plaintiffs are properly part of the collective. There is no other basis to identify, for example, whether any particular Opt-In Plaintiff was even conceivably scored, screened, ranked, or sorted by HiredScore or CSM. Plaintiffs' case citations to other collective actions are inapposite. In those cases, there was no question whether opt-ins were in fact eligible to join the collective because notice was only sent to individuals who were, in fact, eligible. Indeed, in *Greist*, the court recognized that the appropriate scope of opt-in discovery depends on how much discovery is necessary to show that the collective is not similarly situated. *Greist v. Lendus LLC,* 2006 U.S. Dist. LEXIS 17734, *5-6 (N.D. Cal. Jan. 29, 2026) (Beeler, J.). Given the unique nature of this case—in which neither party knows whether Opt-In Plaintiffs are properly included in the collective—Workday is entitled to discovery from each and every Opt-In Plaintiff.

C.    **Workday Is Entitled To Information About The Opt-In Plaintiffs' Employment History And Job Searches**

Plaintiffs object to Workday's request for job titles, job descriptions, job responsibilities, compensation, and dates of employment because that information only becomes "relevant at the remedial Stage II proceedings after a finding and judgment of liability at Stage I of a trial on the merits." ROG No. 1 (citing ECF No. 128 at 15-16).[4] Plaintiffs similarly object to Workday's requests for information about the Opt-In Plaintiffs' job searches because "the Court has already held that

---

[4] Plaintiffs incorporate this improper objection by reference into their responses to every other interrogatory and request for production.

orrick

Bob Wiggins
Rod Cooks
March 10, 2026
Page 8

such individualized qualifications are not a factor to be considered in the decertification phase of this case." *See* ROG Nos. 2, 4, and 5. Plaintiffs misrepresent the Court's Order.[5]

The Court's order only addresses whether unqualified individuals have standing to join the preliminarily certified collective and seek injunctive relief—it does not address discoverability under Rule 26(b)(1).

Under Rule 26(b)(1), information is discoverable if it is relevant to a party's claims or defenses. Qualifications are indisputably relevant to Plaintiffs' disparate impact claim. *See, e.g.*, *Cerrato v. S.F. Cmty. Coll. Dist.*, 26 F.3d 968 (9th Cir. 1994) (*citing Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 996 (1988)) ("[i]n evaluating a disparate impact claim, a court may properly point out 'fallacies or deficiencies in the data offered by the plaintiff' . . . Such flaws may include 'statistics based on an applicant pool containing individuals lacking minimal qualifications for the job.'"). Moreover, as the Court explicitly stated, "an applicant's qualifications could affect their standing to seek damages," making this information clearly relevant and discoverable. ECF No. 128 at 17. Finally, Plaintiffs' qualifications are relevant to whether they are similarly situated—and the Court's order on preliminary certification in no way implies otherwise. The Court states that "the two-step process, culminating in a decertification motion on or after the close of relevant discovery, has the advantage of ensuring early notice of plausible collective actions, then ***eliminating those whose promise is not borne out by the record***." ECF No. 128 at 6-7 (emphasis added). Evaluating the job history and qualifications of Opt-In Plaintiffs is necessary for such an assessment, including because Opt-In Plaintiffs who are qualified are not similarly situated to those who are not.

---

[5] Workday further disputes that qualifications are irrelevant to evaluating standing for injunctive relief in a failure-to-hire disparate impact case. *See Bates v. United Parcel Serv., Inc*., 465 F.3d 1069, 1078 (9th Cir. 2006), *on reh'g in banc*, 511 F.3d 974 (9th Cir. 2007) (to establish standing to maintain disparate impact action under the ADA, plaintiffs had to establish that at least one named plaintiff was "qualified" in the sense that the named plaintiff satisfied all prerequisites other than those connected to the DOT standard); *King v. Stanislaus Consol. Fire Prot. Dist.*, 985 F. Supp. 1228, 1234 (E.D. Cal. 1997) (granting motion for summary judgment as to plaintiff's disparate impact claim because plaintiff did not show he was eligible for the position and therefore lacked standing); *Do No Harm v. Pfizer Inc.,* 646 F. Supp. 3d 490, 505 (S.D.N.Y. 2022), *aff'd*, 96 F.4th 106 (2d Cir. 2024), *opinion vacated and superseded on reh'g*, 126 F.4th 109 (2d Cir. 2025), *and vacated and remanded*, 126 F.4th 109 (2d Cir. 2025) (Plaintiff failed to establish injury in fact necessary for Article III standing because Plaintiff did not affirmatively show its members met the minimum fellowship qualifications and were able and ready to apply"); *Houser v. Pritzker*, 28 F. Supp. 3d 222, 236–37 (S.D.N.Y. 2014) (plaintiffs whose qualifications fell below those required for the position "c[ould] not demonstrate an injury-in-fact sufficient to prove Article III standing" for a disparate impact claim).



Bob Wiggins
Rod Cooks
March 10, 2026
Page 9

There is also no principled basis to withhold allegedly "merits-based discovery" until after decertification—nor do Plaintiffs cite any authority for this proposition. At decertification, **which comes at or after the close of discovery**, the Court will take "a more exacting look at plaintiffs' allegations and the record" to determine whether the Opt-In Plaintiffs are similarly situated. *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1109 (9th Cir. 2018). Plaintiffs' references to *Teamsters* and *Cox* are unavailing, as both cases involved pattern-and-practice claims and are irrelevant to the types of discovery that might be requested in an ADEA failure-to-hire disparate impact case. *Teamsters v. United States*, 431 U.S. 324, 360-362 (1977); *Cox v. American Cast Iron Pipe Co.,* 784 F.2d 1546, 1554 (11th Cir.), *cert. denied,* 479 U.S. 883 (1986). Instead, in the two-step certification context, the Court must make a factual determination regarding the propriety and scope of the collective and "must consider the following factors: (1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendants with respect to the individual plaintiffs; and (3) fairness and procedural considerations." *Leuthold v. Destination Am.*, *Inc.*, 224 F.R.D. 462, 467 (N.D. Cal. 2004).

Here, Workday is permitted to seek individualized discovery from Opt-In Plaintiffs to assess their eligibility as members of the collective and to seek information relevant to decertification. *See Phillips v. Cnty. of Riverside*, No. 519CV01231JGBSHK, 2021 WL 1566970, at *3-4 (C.D. Cal. Mar. 3, 2021) ("fairness dictates that Defendant should be permitted to conduct enough [individualized] discovery in order to move for decertification and defend against Plaintiffs' claim"). In fact, as addressed *supra*, the Court already contemplated that individualized discovery would proceed in the absence of a third-party administrator. *See* ECF No. 195. Plaintiffs chose not to proceed with the third-party administrator, which would have streamlined the process and negated the need for some of Workday's discovery requests. They cannot now stonewall Workday's attempt to execute on the Court's direction.

Ultimately, Workday's requested discovery seeks relevant and discoverable information—there is no basis to withhold responses on the grounds that the discovery is premature or otherwise.

> **D.    Plaintiffs Must Respond To Interrogatories Clearly Within The Scope Of Their Knowledge**

Plaintiffs state that they have "no knowledge or information" responsive to the following requests. As described below, these responses are facially absurd and suggest an abuse of the discovery process.



Bob Wiggins
Rod Cooks
March 10, 2026
Page 10

**ROG No. 1**. Interrogatory No. 1 asks Plaintiffs about their work history. Specifically, it asks Plaintiffs to "*identify all entities for whom you have worked or currently work (whether as an employee, independent contractor, consultant or otherwise), including your job titles, job descriptions, job responsibilities, total annual compensation, and the dates of your employment, and the reasons your employment with such entity terminated (if it terminated) since August 1, 2015.*" All of the Opt-In Plaintiffs respond that they have no knowledge to respond to this request. It is impossible that none of the Opt-In Plaintiffs have knowledge or information about their work history, and to have responded otherwise is likely perjurious and must be immediately corrected.

**ROG Nos. 2 through 5**. Interrogatory No. 2 asks Plaintiffs to "*identify all jobs to which you have applied for employment since August 2020 with employers you allege used Workday's or HiredScore's software.*" Interrogatories 3 through 5 ask for additional information about these jobs, including whether Plaintiffs were contacted by an employer in response to their application (ROG 3), all facts to support their contention that their applications were rejected due to algorithmic decision making (ROG 4), and whether they were contacted by a Workday or HiredScore representative in connection with their application (ROG 5).

For each of these, Plaintiffs suggest they cannot respond to the interrogatories because it requires knowledge of "which Workday customers enable or use Workday's or HiredScore's software" and that "Workday has refused to provide to the Plaintiff or allow Plaintiff's attorneys to disclose to the Plaintiff or anyone else." Plaintiffs' objection ignores that Workday is requesting Plaintiffs identify which employers they ***allege*** use Workday or HiredScore (and related information), as well as the facts that support their claim that their applications were rejected by algorithmic decision-making.

When responding to interrogatories, a party has a duty to respond with all the information under its custody and control. *Fresenius Med. Care Holding Inc. v. Baxter Int'l, Inc.*, 224 F.R.D. 644, 651 (N.D. Cal. 2004). "Interrogatories directing a plaintiff to state facts supporting contentions in his complaint are entirely appropriate." *Subramani v. Wells Fargo Bank, N.A.*, No. 13-CV-01605-SC, 2014 WL 7206888, at *2 (N.D. Cal. Dec. 18, 2014) (internal quotes omitted). And during discovery, Plaintiffs are obligated to furnish information which supports their claims; they cannot "sidestep this obligation by providing no response whatsoever" until they receive information from Workday. *Horonzy v. Corr. Corp. of Am.*, No. 1:11-CV-00246-BLW, 2013 WL 3148674, at *11 (D. Idaho June 19, 2013). "That is not how discovery works." *Id.*



Bob Wiggins
Rod Cooks
March 10, 2026
Page 11

Plaintiffs know the jobs to which they've applied and should be able to identify the employers that they *allege* use Workday or HiredScore. If they cannot, they should not have opted into the collective, as doing so required them to certify that they "applied for at least one employment opportunity using Workday's application platform while I was 40 or more years old." Moreover, Plaintiffs simultaneously object to other interrogatories and requests for production on the basis that Workday did not limit the requests to "Workday or its customers who used the Workday applicant screening and hiring platform." *See* ROG Nos. 1, 3; RFP Nos. 1-9. Plaintiffs cannot have it both ways—objecting that requests related to all employers are overbroad while objecting that requests related to employers who use Workday or HiredScore are somehow too narrow (or unknowable). Plaintiffs' refusal to respond to discovery on this basis demonstrates bad faith and an abuse of the discovery process.

At bottom, Workday's interrogatories ask Plaintiffs to identify details about the jobs Plaintiffs applied to which Plaintiffs *allege* relied on Workday or HiredScore software. Plaintiffs do not need any customer list to respond—Plaintiffs have knowledge related to their own allegations and must provide such information to Workday.

**ROG No. 9**. Interrogatory No. 9 asks Plaintiffs to "*state the total amount of income, benefits, and/or earning capacity that you have lost to date that you contend is a result of Defendant's alleged actions and identify the documents you reviewed to determine such number.*" Again, Plaintiffs inaccurately respond that they have no knowledge or information sufficient to respond to the interrogatory. Plaintiffs are responsible for identifying their alleged damages and providing information regarding those damages to Workday. *See Shepard v. Allstate Prop. & Cas. Ins. Co.*, No. C24-0289-JCC, 2025 WL 989932, at *2 (W.D. Wash. Apr. 2, 2025) ("Defendant may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim, including that related to damages.") (internal citations omitted).

     **E.**     **Workday's Discovery Requests Do Not Seek Documents Or Information "Uniquely Within Workday's Possession, Custody, or Control"**

Plaintiffs further object to Workday's interrogatories on the basis that they seek information "uniquely within Workday's exclusive possession, custody, or control, including but not limited to documents concerning the design, training, testing, validation, weighting, scoring, ranking, auditing, or deployment of Defendant's proprietary algorithmic or AI-driven systems and which Workday customers use such software." *See* ROG Nos. 2, 3, 4, and 5. The interrogatories do not



Bob Wiggins
Rod Cooks
March 10, 2026
Page 12

seek any information about the design, training, testing, validation, weighting, scoring, ranking, auditing, or deployment of Workday AI systems. They instead ask about jobs that Plaintiffs applied to and the details of those applications, as well as any facts supporting their allegation that their applications were improperly screened by AI tools. As discussed in Section II.D above, Workday is entitled to discovery regarding Plaintiffs' allegations and any facts in support.[6] Plaintiffs' objection is both inapplicable and improper.

### F.    Workday's Requests Need Not Be Limited To Seeking Information About Workday Customers

Plaintiffs also object to Workday's requests on the basis that they seek information not limited to Workday or its customers. *See* ROG Nos. 1, 3; RFP Nos. 1-9. As addressed in Section II.D above, Plaintiffs cannot both object that Workday's requests are too narrow (when targeted at employers who use Workday) and too broad (when targeted at all employers). Moreover, the scope of Workday's requests is proper. For example, in ROG No. 1, Workday requests information about Plaintiffs' employment history. Plaintiffs' employment history is relevant regardless of whether the particular Plaintiff was employed by an entity that used Workday's software. The Requests for Production are similarly relevant and proportional, and Plaintiffs make no real argument that they are not, beyond the boilerplate objection that the requests are not limited to Workday or its customers.

### G.    Plaintiffs Improperly Apply Federal Rule of Civil Procedure 33(d)

In response to Interrogatory No. 6, Plaintiffs state that "[p]ursuant to Fed. R. Civ. P. 33(d), the information requested in this interrogatory regarding job applications can be determined by examining documents produced as part of the Plaintiff's document production. The burden of deriving or ascertaining the requested information is substantially the same for both parties." ROG No. 6. But Plaintiffs have not produced any documents, and even if they had, Plaintiffs' response would still not comply with Rule 33(d). *See Rainbow Pioneer No. 44-18-04A v. Hawaii-Nevada Inv. Corp.*, 711 F.2d 902, 906 (9th Cir. 1983) ("the records must be specified 'in sufficient detail to permit the interrogating party to locate and identify, as readily as the party served, the records

---

[6] To the extent Plaintiffs are suggesting Workday has access to the opt-in Plaintiffs' job application history, as Workday has repeatedly stated, it has no access to its customers' data and has absolutely no information regarding Plaintiffs' job applications to any employer, regardless of whether the employer uses Workday or HiredScore.



Bob Wiggins
Rod Cooks
March 10, 2026
Page 13

from which the answer may be obtained'" and the response must "specify where in the records the answers could be found.").

Instead of meeting the requirements of Rule 33(d), Plaintiffs merely point Workday to the entirety of Plaintiffs' (nonexistent) document production, which is plainly insufficient. *See, e.g.*, *Mancini v. Ins. Corp. of New York*, No. CIV. 07CV1750-L NLS, 2009 WL 1765295, at *2 (S.D. Cal. June 18, 2009) ("referring to a wide universe of documents does not specify the records in sufficient detail."); *Dibbs v. The Franklin Mint*, 2007 WL 4327876 (W.D. Wash. Dec. 10, 2007) (responding to interrogatory by referencing entire document production does not specify records in sufficient detail); WATM LLC v. Payment All. Int'l, Inc., No. 2:24-CV-00405-JHC, 2025 WL 1736609, at *7 (W.D. Wash. June 23, 2025) ("merely list[ing] eight Bates-numbered documents [that do] not specify whether the documents are responsive to one or both of the interrogatories is insufficient."). "[U]nder Rule 33(d), the responding party chooses to produce business records in answer to the interrogatories—not to avoid answering them," which is exactly what Plaintiffs are attempting to do here. *O'Connor v. Boeing N. Am., Inc.*, 185 F.R.D. 272, 277 (C.D. Cal. 1999). Plaintiffs must identify with particularity which records are responsive to ROG No. 6 in order to meet their obligations pursuant to Rule 33(d).

### H.    Plaintiffs Opting-In to An ADEA Collective Must Provide Their Birth Dates

Plaintiffs have opted into a collective action in which they allege that they were discriminated against based on age. Yet in response to Interrogatory No. 7, three of the ten Opt-In Plaintiffs do not provide their birth dates. In the more recent March 4, 2026 responses, four of the forty Opt-In Plaintiffs list their age as opposed to their birthday—making it impossible to determine whether they were over forty when they applied to the relevant positions. Plaintiffs must provide their birthdates or withdraw their consent to opt-in to this *age* collective.

///

///

///

///

///



Bob Wiggins
Rod Cooks
March 10, 2026
Page 14

We are happy to make ourselves available to discuss any of these issues, but request that Plaintiffs promptly correct the deficient responses.

Very truly yours,

Kayla Delgado Grundy