JULIE A. TOTTEN (STATE BAR NO. 166470)
jatotten@orrick.com
ERIN M. CONNELL (STATE BAR NO. 223355)
econnell@orrick.com
KAYLA D. GRUNDY (STATE BAR NO. 300513)
kgrundy@orrick.com
ALEXANDRIA R. ELLIOTT (STATE BAR NO. 320293)
aelliott@orrick.com

ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:    (415) 773-5700
Facsimile:    (415) 773-5759

*Attorneys for Defendant Workday, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEREK L. MOBLEY, for and on behalf of himself and other persons similarly situated;<br><br>　　　　　Plaintiff,<br><br>v.<br><br>WORKDAY, INC.,<br><br>　　　　　Defendant. | Case No. 3:23-cv-00770-RFL<br><br>**DEFENDANT WORKDAY, INC.'S NOTICE OF MOTION AND MOTION FOR CERTIFICATION UNDER 28 U.S.C. § 1292(b) OF THE COURT'S ORDER GRANTING IN PART MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:　　　May 12, 2026<br>Time:　　　10:00 A.M.<br>Courtroom:　15, 18th Floor<br>Judge:　　　Hon. Rita F. Lin |

**TABLE OF CONTENTS**

**Page**

NOTICE OF MOTION AND MOTION ....................................................................................... 1

STATEMENT OF RELIEF SOUGHT ....................................................................................... 1

I.     INTRODUCTION ............................................................................................... 1

II.    BACKGROUND ................................................................................................. 2

III.   ARGUMENT ....................................................................................................... 3

      A.    THE ORDER INVOLVES A CONTROLLING QUESTION OF LAW. ............. 3

      B.    THERE IS SUBSTANTIAL GROUND FOR DIFFERENCE OF OPINION ON THE ISSUE. ................................................................................ 5

      C.    AN INTERLOCUTORY APPEAL WILL MATERIALLY ADVANCE THE TERMINATION OF THE LITIGATION. ................................................... 8

           i.    Removing a claim from the litigation materially advances the termination of the litigation. ............................................................ 9

           ii.   Deciding the question now avoids expensive and time-consuming discovery and litigation on the potentially thousands of opt-in plaintiffs' ADEA claims. ................................................................ 9

           iii.  Deciding the viability of Plaintiffs' ADEA claims enables more productive settlement discussions. ............................................... 11

           iv.  Deciding whether job applicants may bring disparate-impact claims under the ADEA provides clarity for other litigants. .............................. 12

           v.   The *Rabin* court denied certification of this issue for reasons that do not apply to this case. ................................................................. 12

CONCLUSION ....................................................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Barnes v. Kijakazi*,
2023 WL 3007904 (D. Nev. Apr. 19, 2023), *aff'd sub nom. Barnes v. O'Malley*, No. 23-15859, 2024 WL 1461366 (9th Cir. Apr. 4, 2024) ................................... 12

*Brown v. Papa Murphy's Holdings Inc.*,
2021 WL 3464927 (W.D. Wash. Aug. 6, 2021) ....................................................... 8

*Campbell v. City of Los Angeles*,
903 F.3d 1090 (9th Cir. 2018) .............................................................................. 11

*Casas v. Victoria's Secret Stores, LLC*,
2015 WL 13446989 (C.D. Cal. Apr. 9, 2015) ......................................................... 11

*In re Cement Antitrust Litig.*,
673 F.2d 1020 (9th Cir. 1981) ............................................................................ 3, 4

*Chamberlan v. Ford Motor Co.*,
402 F.3d 952 (9th Cir. 2005) ............................................................................... 12

*Champlin v. Manpower Inc.*,
2018 WL 572997 (S.D. Tex. Jan. 24, 2018) ............................................................ 8

*Couch v. Telescope Inc.*,
611 F.3d 629 (9th Cir. 2010) ................................................................................. 5

*Cunha v. Hansen Nat. Corp.*,
2012 WL 12886194 (C.D. Cal. Oct. 22, 2012) ......................................................... 4

*Flowers-Carter v. Braun Corp.*,
2021 WL 2416805 (D. Ariz. June 14, 2021) ............................................................ 4

*Goldstein v. RTX Corp.*,
2025 WL 2549704 (D. Del. Sept. 4, 2025), *report and recommendation adopted as modified*, 2025 WL 3754428 (D. Del. Dec. 29, 2025) .......................................... 8

*Griggs v. Duke Power Co.*,
401 U.S. 424 (1971) ......................................................................................... 5, 7

*Heath v. Google Inc.*,
2018 WL 398463 (N.D. Cal. Jan. 12, 2018) ........................................................... 12

*Heath v. Google* Inc.,
2019 WL 3842075 (N.D. Cal. Aug. 15, 2019) ........................................................ 12

*Henley v. Jacobs*,
2019 WL 8333448 (N.D. Cal. Oct. 25, 2019) ........................................................... 4

*Hill v. Workday, Inc.*,
773 F. Supp. 3d 779 (N.D. Cal. 2025) ................................................................................. 13

*ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union*,
22 F.4th 1125 (9th Cir. 2022)......................................................................... 8, 9, 10, 13

*Joffe v. Google, Inc.*,
746 F.3d 920 (9th Cir. 2013)................................................................................................ 4

*John v. United States*,
247 F.3d 1032 (9th Cir. 2001)............................................................................................ 14

*Kleber v. CareFusion Corp.*,
914 F.3d 480 (7th Cir. 2019) (en banc)....................................................................... 1, 6, 7, 8

*Krueger v. New York Tel. Co.*,
163 F.R.D. 446 (S.D.N.Y. 1995) .......................................................................................... 9

*Kuehner v. Dickinson & Co.*,
84 F.3d 316 (9th Cir. 1996)............................................................................................. 3, 4

*Meacham v. Knolls Atomic Power Lab'y*,
554 U.S. 84 (2008) ............................................................................................................ 9

*Moriarty v. Am. Gen. Life Ins. Co.*,
2023 WL 6280967 (S.D. Cal. Sept. 26, 2023) ........................................................................ 11

*Pottenger v. Potlach Corp.*,
329 F.3d 740 (9th Cir. 2003)............................................................................................. 10

*Rabin v. PricewaterhouseCoopers LLP*,
236 F. Supp. 3d 1126 (N.D. Cal. 2017) .......................................................................... *passim*

*Rabin v. PricewaterhouseCoopers LLP*,
2017 WL 11662124 (N.D. Cal. Apr. 17, 2017) ................................................................. 10, 13

*Rabin v. PricewaterhouseCoopers LLP*,
2021 WL 837626 (N.D. Cal. Feb. 4, 2021) .............................................................................. 12

*Raymond v. Spirit Aerosystems Holdings, Inc.*,
406 F. Supp. 3d 996 (D. Kan. 2019) ...................................................................................... 8

*Reese v. BP Expl. (Alaska) Inc.*,
643 F.3d 681 (9th Cir. 2011)......................................................................................... 3, 5, 8

*San Antonio Winery, Inc. v. Jiaxing Micarose Trade Co.*,
2021 WL 4988033 (C.D. Cal. June 1, 2021) ............................................................................ 4

*Scallon v. Scott Henry's Winery Corp.*,
686 F. App'x 495 (9th Cir. 2017) ......................................................................................... 4

*Smith v. City of Jackson*,
544 U.S. 228 (2005)............................................................................................................ 7

*Sterk v. Redbox Automated Retail LLC*,
   672 F.3d 535 (7th Cir. 2012)..................................................................................... 11

*Verthelyi v. PennyMac Mortg. Inv. Tr.*,
   2025 WL 1720193 (C.D. Cal. May 5, 2025) ............................................................. 4

*Villarreal v. R.J. Reynolds Tobacco Co.*,
   839 F.3d 958 (11th Cir. 2016) (en banc)..................................................... 1, 6, 7, 8

*Watson v. Fort Worth Bank & Trust*,
   487 U.S. 977 (1988) ................................................................................................ 10

*Wilton Miwok Rancheria v. Salazar*,
   2010 WL 693420 (N.D. Cal. Feb. 23, 2010)............................................................ 12

**Statutes**

28 U.S.C. § 1292(b) .................................................................................................... *passim*

29 U.S.C. § 623(a) ............................................................................................................ 2, 3

29 U.S.C. § 623(a)(2) ................................................................................................. *passim*

**Other Authorities**

Fed. R. App. P. 35 (2018 ed.) ............................................................................................. 6

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that at the time and place noted above, Defendant Workday, Inc. ("Workday") respectfully moves for an order certifying this Court's March 6, 2026 order (the "Order") for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

This motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities in support thereof, the Proposed Order filed concurrently herewith, and pleadings and papers on file in this action, and any oral argument as may be presented at or prior to the hearing on this motion.

**STATEMENT OF RELIEF SOUGHT**

Workday respectfully seeks certification for interlocutory appeal under 28 U.S.C. § 1292(b) of this Court's order granting in part and denying in part Workday's Motion to Dismiss the Second Amended Complaint, ECF No. 267.

**I.     INTRODUCTION**

In its recent Order denying Workday's Motion to Dismiss the Second Amended Complaint, this Court permitted Plaintiffs' claim under the Age Discrimination in Employment Act (ADEA) to proceed by ruling that § 623(a)(2) of the ADEA authorizes disparate-impact claims by job applicants. Workday respectfully requests that the Court certify this Order for interlocutory appeal under 28 U.S.C. § 1292(b) to allow the Ninth Circuit to promptly resolve whether the ADEA authorizes such a claim. This is a pure question of statutory interpretation on which district courts in this circuit squarely diverge from two en banc circuit courts on how to interpret the statutory text. *Compare Kleber v. CareFusion Corp.*, 914 F.3d 480, 488 (7th Cir. 2019) (en banc), *and Villarreal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958, 970 (11th Cir. 2016) (en banc) (holding that the ADEA does not authorize disparate-impact claims by job applicants) *with* Order at 2-3, *and Rabin v. PricewaterhouseCoopers LLP*, 236 F. Supp. 3d 1126, 1133 (N.D. Cal. 2017) (holding that it does). Despite the passage of nearly a decade since *Rabin* recognized a disparate impact claim for applicants, the Ninth Circuit has not had an opportunity to resolve the question. Permitting immediate appeal and resolution of the question will bring important clarity to the litigants in this case and others; will avoid costly litigation on the claims of thousands of

opt-in plaintiffs who would have no claim under the Seventh and Eleventh Circuits' reading of the ADEA; and will ultimately materially advance this litigation by resolving a central legal question underlying one of the major claims in the case.

Each of the statutory requirements for interlocutory appeal is satisfied. First, the Order "involves a controlling question of law" because it presents a pure question of statutory interpretation, the resolution of which may do away with Plaintiffs' ADEA claims. 28 U.S.C. § 1292(b). Second, there is plainly "substantial ground for difference of opinion" about how to interpret the text of § 623(a), as the issue has divided multiple courts. *Id.* Third, immediate appeal on this issue "may materially advance the ultimate termination of the litigation," because it may result in the dismissal of thousands of opt-in plaintiffs and will resolve before trial whether Plaintiffs' disparate-impact claims are proper under the ADEA. *Id.* Because the Order satisfies all three of § 1292(b)'s prerequisites and is a compelling candidate for interlocutory appeal, the Court should grant this Motion.

## II.    BACKGROUND

Plaintiffs sued Defendant Workday, Inc. ("Workday") for (among other claims not at issue here) disparate-impact employment discrimination on the basis of age in violation of the ADEA. *See* Second Amended Complaint, ECF No. 231, ¶¶ 189-224. Section 623(a)(2) of the ADEA makes it unlawful for an employer to "limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age." 29 U.S.C. § 623(a)(2). Plaintiffs have alleged that Workday, acting as an agent of employers, utilizes algorithm-based screening technology to review job applications and that the use of this technology has a disparate impact on job applicants at least 40 years of age. *See* Second Amended Complaint, ECF No. 231, ¶¶ 189-224; *see also id.* at ¶ 198 ("Workday's job application platform and AI screening and selection features have [a] disparate impact against applicants 40 or more years old at a statistically significant rate….").

Workday moved to dismiss Plaintiffs' disparate-impact claim under the ADEA, arguing that the ADEA does not authorize disparate-impact claims by job applicants—as two circuits

have held. *See* ECF No. 237 at 3-7. The Court rejected Workday's interpretation of § 623(a)(2) on the merits. Order at 2-3. In so doing, the Court relied on an opinion from another judge in this district, *Rabin v. PricewaterhouseCoopers LLP*, 236 F. Supp. 3d 1126 (N.D. Cal. 2017), which concluded that the ADEA authorizes disparate-impact claims by job applicants. *See* Order at 2-3.

This ruling allows Plaintiffs to continue pursuing their ADEA disparate-impact claim on a collective basis. The notice process is now complete and Plaintiffs seek to add nearly 14,000 opt-in plaintiffs to this litigation, and perhaps more, all of whom claim they applied to "at least one employment opportunity using Workday's application platform." ECF No. 277; ECF No. 277-2. The Court also set a deadline of September 11, 2026 for Workday to move to decertify the collective.

## III.     ARGUMENT

"Section 1292(b) provides a mechanism by which litigants can bring an immediate appeal of a non-final order upon the consent of both the district court and the court of appeals." *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1025-26 (9th Cir. 1981). Certification of an order under § 1292(b) is appropriate where the Order (a) "involves a controlling question of law," (b) "as to which there is substantial ground for difference of opinion," and (c) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Even under the most "formalistic" and "rigid" reading of these requirements, the Order warrants interlocutory appeal. *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 n.5 (9th Cir. 2011). And it certainly satisfies the Ninth Circuit's more "flexible approach," as interlocutory appeal now will avoid "unnecessary, protracted litigation and considerable waste of judicial resources" in this case and others—especially before litigation and further discovery on thousands of opt-ins' claims that may not be authorized by the statute. *Id.*

### A.  THE ORDER INVOLVES A CONTROLLING QUESTION OF LAW.

A controlling question of law is a legal question whose resolution "on appeal could materially affect the outcome of the litigation in the district court," *In re Cement*, 673 F.2d at 1026, even if it will not necessarily "determine[] who will win on the merits," *Kuehner v. Dickinson & Co.*, 84 F.3d 316, 319 (9th Cir. 1996). Whether § 623(a) of the ADEA authorizes

disparate-impact claims by job applicants is an important and controlling question of law for three related reasons.

*First*, the question here is "purely legal, which make[s] [it] especially appropriate under § 1292(b)'s controlling law requirement." *Cunha v. Hansen Nat. Corp.*, 2012 WL 12886194, at *6 (C.D. Cal. Oct. 22, 2012). There is no dispute in this case that Plaintiffs are job applicants and that they allege conduct solely toward job applicants, not employees. *See* Second Amended Complaint, ECF No. 231, ¶¶ 189-224. Whether § 623(a)(2) extends to applicant claims is a question of statutory interpretation with a binary answer: the provision either authorizes a claim like Plaintiffs' or it does not. And so, the issue here is a "purely legal one that can be resolved quickly without delving into … facts," which is just the sort of appeal that § 1292(b) envisions. *Henley v. Jacobs*, 2019 WL 8333448, at *2 (N.D. Cal. Oct. 25, 2019); *see also San Antonio Winery, Inc. v. Jiaxing Micarose Trade Co.*, 2021 WL 4988033, at *3 (C.D. Cal. June 1, 2021) (certifying § 1292(b) appeal involving statutory interpretation question). The Ninth Circuit routinely grants petitions for interlocutory appeal that present "novel question[s] of statutory interpretation," because those are ideal vehicles for interlocutory resolution. *Joffe v. Google, Inc.*, 746 F.3d 920, 923-24 (9th Cir. 2013); *see also Scallon v. Scott Henry's Winery Corp.*, 686 F. App'x 495 (9th Cir. 2017) (addressing "question[] of statutory interpretation" upon § 1292(b) certification by district court); *Flowers-Carter v. Braun Corp.*, 2021 WL 2416805, at *4 (D. Ariz. June 14, 2021) (certifying question for appeal where it "presents a pure question of law the Ninth Circuit could resolve without needing to delve deeply into the record").

*Second*, the legal question here is "controlling." A legal issue is controlling if "resolution of the issue on appeal could materially affect the outcome of the litigation." *In re Cement*, 673 F.2d at 1026; *see also Kuehner*, 84 F.3d at 319 (to be "controlling," the legal issue need not be dispositive of the entire lawsuit). Whether the ADEA authorizes disparate-impact claims for job applicants is necessarily "controlling" because it determines whether or not the ADEA authorizes Plaintiffs' claim: "Should the Ninth Circuit agree with Defendants' interpretation of the Act … Plaintiffs' claim would necessarily fail." *Verthelyi v. PennyMac Mortg. Inv. Tr.*, 2025 WL 1720193, at *1 (C.D. Cal. May 5, 2025) (certifying question of statutory interpretation). As the

4

Ninth Circuit has made clear, interlocutory appeal is proper where a reversal of the district court's order could remove a claim from the case, even though other claims remain. *See Reese*, 643 F.3d at 688.

*Third*, rejection of a disparate-impact claim for applicants under the ADEA in this case would result in full dismissal of *any* ADEA claim, because the Court dismissed Plaintiffs' claim under an intentional-discrimination theory. *See id.* (the possibility of removing one claim from the case is enough to justify interlocutory appeal). The first requirement of § 1292(b) is thus easily satisfied.

### B. THERE IS SUBSTANTIAL GROUND FOR DIFFERENCE OF OPINION ON THE ISSUE.

The next statutory prerequisite is just as easily met here because there are squarely conflicting judicial decisions on the proper interpretation of § 623(a)(2). The Ninth Circuit instructs that this prong is satisfied if "the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point," or "if novel and difficult questions of first impression are presented." *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010). As *Rabin* acknowledged nearly a decade ago, and as remains true today, "[n]either the Supreme Court nor the Ninth Circuit has explicitly held" that "disparate impact claims" "extend to both employees and job applicants under the ADEA." *Rabin*, 236 F. Supp. 3d at 1128. Therefore, this case presents a "novel and difficult question[] of first impression" in this Circuit. *Reese*, 643 F.3d at 688. And the courts that have had occasion to address this issue have sharply diverged on how to interpret § 623(a)(2).

On one side of that split are the decisions by this Court and *Rabin* concluding that § 623(a)(2) authorizes disparate-impact claims by job applicants. *See* Order at 2-3; *Rabin*, 236 F. Supp. 3d at 1128. *Rabin* based its conclusion on the overarching purpose of the ADEA as "remedial and humanitarian legislation" that "should be liberally interpreted." *Rabin*, 236 F. Supp. 3d at 1128. It reasoned that because the statute uses the phrase "any individual," as well as "employee," the statute recognizes disparate-impact claims for job applicants as well as employees. *Id. Rabin* also relied on Supreme Court precedent interpreting similar language in

Title VII. *Id.* at 1129 (discussing *Griggs v. Duke Power Co.*, 401 U.S. 424 (1971)). And *Rabin* noted that guidance from the Equal Employment Opportunity Commission (EEOC) had opined that the ADEA provides a disparate-impact claim for job applicants, which the court afforded *Chevron* deference. *Id.* at 1132. This Court similarly found that the ADEA permits disparate-impact claims for applicants "for the reasons articulated in *Rabin*." Order at 2-3. And while acknowledging the demise of *Chevron* deference generally, the Court reasoned that *Rabin* was "not contingent on deference to agency interpretation," and that in any event *Skidmore* deference extends to the EEOC guidance in question. *Id.* at 3.

On the other side of the split are two decisions by circuit courts squarely holding that the ADEA does not authorize disparate-impact claims by job applicants. The en banc Eleventh Circuit held in *Villarreal v. R.J. Reynolds Tobacco Co.* that "[the plaintiff] failed to state a claim under section 4(a)(2) because the text protects employees, not applicants." 839 F.3d 958, 970 (11th Cir. 2016) (en banc). After *Rabin* acknowledged—but rejected—*Villarreal*'s holding, 236 F. Supp. 3d at 1128, the Seventh Circuit, sitting en banc in *Kleber v. CareFusion Corp.*, agreed with the Eleventh in *Villarreal*: "We … now hold that the plain language of § 4(a)(2) makes clear that Congress, while protecting employees from disparate impact age discrimination, did not extend that same protection to outside job applicants." 914 F.3d 480, 488 (7th Cir. 2019) (en banc). That both circuits granted en banc rehearing is itself strong authority for the importance of the statutory and potential difference of opinion on the answer. After all, a majority of the active judges on those courts found that the question satisfied one or more of the criteria for en banc rehearing under the then-applicable Federal Rule of Appellate Procedure 35, the requirements of which are similar to (and indeed are more stringent than) § 1292(b)'s substantial-ground-for-difference-of-opinion standard. *See* Fed. R. App. P. 35 (2018 ed.) (requiring, for example, that the petition involve a conflict between the panel decision and the decisions of a different panel in the same circuit, or a decision from the United States Supreme Court, or involve "questions of exceptional importance").

Both decisions centered their analyses on the language and structure of § 623(a)(2). Diverging from *Rabin*, *Villarreal* and *Kleber* focused on the whole statutory provision, rather

than the phrase "any individual." Because the statute forbids employers to "deprive any individual of employment opportunities *or otherwise adversely affect his status as an employee*," those two en banc courts concluded that the provision qualifies the term "individual" as a person who has "status as an employee." 29 U.S.C. § 623(a)(2) (emphasis added). As *Villarreal* explained, "[b]y using 'or otherwise' to join the verbs in this section, Congress made 'depriv[ing] or tend[ing] to deprive any individual of employment opportunities' a subset of 'adversely affect[ing] [the individual's] status as an employee.' In other words, section 4(a)(2) protects an individual only if he has a 'status as an employee.'" 839 F.3d at 963 (quoting 29 U.S.C. § 623(a)(2)). *Kleber* adopted the same construction, holding that the phrase "or otherwise" "serves to stitch the prohibitions and scope of § 4(a)(2) into a whole … by limiting the reach of the statutory protection to an individual with "'status as an employee.'" *Kleber*, 914 F.3d at 482–83.

*Villarreal* and *Kleber* also parted ways with *Rabin*'s interpretation of Supreme Court precedent. *Rabin* concluded that the Supreme Court's holdings in *Griggs* (which involved an identical provision in Title VII) and *Smith v. City of Jackson*, 544 U.S. 228 (2005) (which determined that disparate-impact claims are cognizable under § 623(a)(2) of the ADEA), supported extending § 623(a)(2) to job applicants. *See Rabin*, 236 F. Supp. 3d at 1130-31. In so holding, *Rabin* acknowledged that it disagreed with *Villarreal*, and endorsed instead the position articulated in Judge Martin's dissent in that case. *See id.* at 1130-31 (quoting *Villarreal*, 839 F.3d at 987 (Martin, J., dissenting).

*Villarreal* and *Kleber* both read the same Supreme Court precedent differently, and came to the opposite conclusion as *Rabin*. *Villarreal and Kleber* both noted that *Griggs* could not have answered the issue here because the plaintiffs there were not job applicants—thus disagreeing with *Rabin*'s view that *Griggs* supported disparate-impact claims for job applicants, who were not at issue in *Griggs*. *Compare Villarreal*, 839 F.3d at 968-69; *Kleber*, 914 F.3d at 485. Additionally, both *Villarreal* and *Kleber* disagreed with *Rabin*'s view that *Smith* supported disparate-impact claims by job applicants, noting instead that *Smith* expressly "described section 4(a)(2) as a provision that covers employees," rather than job applicants. *Villarreal*, 839 F.3d at

DEFENDANT WORKDAY, INC.'S MOTION FOR
INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b)
[CASE NO. 3:23-CV-00770-RFL]

967; *see also Kleber*, 914 F.3d at 485 (pointing out that in "*Smith*[,] the Justices' separate opinions recognized the imperative of showing impact to an individual's 'status as an employee'" in interpreting § 623(a)(2)).

In short, it is not simply that "reasonable jurists might disagree on" the resolution of the question here, *Reese*, 643 F.3d at 688—they already have in the cases discussed above, as well as in several other cases. *Compare Raymond v. Spirit Aerosystems Holdings, Inc.*, 406 F. Supp. 3d 996, 1003 (D. Kan. 2019) (siding with *Villarreal and Kleber*), *and Goldstein v. RTX Corp.*, 2025 WL 2549704, at \*8 (D. Del. Sept. 4, 2025), *report and recommendation adopted as modified*, 2025 WL 3754428 (D. Del. Dec. 29, 2025) (expressly rejecting *Rabin* and agreeing with *Villarreal* and *Kleber*), *with Champlin v. Manpower Inc.*, 2018 WL 572997, at \*7 (S.D. Tex. Jan. 24, 2018) (agreeing with *Rabin* and expressly rejecting *Villarreal*'s interpretation). Section 1292(b) exists to allow district courts to facilitate appellate resolution of these sorts of conflicting legal decisions, and this Court's Order presents a prime opportunity to resolve an important question.

### C. AN INTERLOCUTORY APPEAL WILL MATERIALLY ADVANCE THE TERMINATION OF THE LITIGATION.

Finally, resolving the viability of Plaintiffs' ADEA claim at this stage "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). The Ninth Circuit has explained that "the 'materially advance' prong is satisfied when the resolution of the question may appreciably shorten the time, effort, or expense of conducting the district court proceedings." *ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union*, 22 F.4th 1125, 1131 (9th Cir. 2022) (internal citation and quotation marks omitted). All that is required is that resolving the question "*may* materially advance" the litigation's termination, not that it will *necessarily* do so. *Reese*, 643 F.3d at 688 (emphasis added). But here, there are several reasons why an interlocutory appeal on the viability of Plaintiffs' surviving ADEA claim will almost certainly materially advance this case.

**i. Removing a claim from the litigation materially advances the termination of the litigation.**

*First*, as noted *supra* 5, resolving the question will completely remove any ADEA claim from the case. That alone makes resolution sufficient to "materially advance the termination of litigation," as courts have routinely held. *Reese*, 643 F.3d at 688; *Brown v. Papa Murphy's Holdings Inc.*, 2021 WL 3464927, at *2 (W.D. Wash. Aug. 6, 2021) (certifying because "Defendants met their burden in showing that an interlocutory appeal may materially advance the termination of litigation, even if it only terminates one of [plaintiff]'s claims").

**ii. Deciding the question now avoids expensive and time-consuming discovery and litigation on the potentially thousands of opt-in plaintiffs' ADEA claims.**

*Second*, an immediate appeal that disposes of any ADEA claim could avoid a tremendous waste of the parties' and the Court's "time, effort, [and] expense" of engaging in decertification motion practice and conducting discovery on opt-in claims. *ICTSI Oregon*, 22 F.4th at 1131. This is true even under the most conservative assumptions about the timing of discovery, decertification and other motion practice, and trial in this Court *and* the time to decision in the Ninth Circuit. That is, even if the current case schedule before this Court holds and the Ninth Circuit appeal is not decided until more than a year from now, that decision *still* will avoid enormous expense in discovery and trial.

Resolving Plaintiffs' ADEA collective action will entail litigation of not only the named Plaintiffs' claims, but also the claims of potentially thousands of individual opt-in plaintiffs. This will require extensive opt-in discovery for a decertification motion regarding nearly 14,000 proposed opt-in plaintiffs who are involved in this case only by virtue of Plaintiffs' ADEA disparate-impact claim for applicants. *See* ECF No. 277-2 (showing plaintiffs seek to add 13,876 opt-in plaintiffs to the litigation). Under the current schedule—which already has been extended once—this Court will not hear Workday's forthcoming decertification motion until December 8, 2026, presumably with a decision in 2027, given the complex questions that motion will present. ECF 242. By then, briefing on a § 1292(b) appeal would likely be fully or nearly completed. If the Court denies the decertification motion, litigation of the ADEA claims would entail more

extensive discovery on the merits of each of the opt-in plaintiffs' claims, as well as on Workday's defenses and on potential damages. *See Meacham v. Knolls Atomic Power Lab'y*, 554 U.S. 84, 101 (2008) (defendants have the right to present defenses under the statute, including that reasonable factors other than age were responsible for the employment decision, and bear the burden of "producing evidence raising the defense"); *Krueger v. N.Y. Tel. Co.*, 163 F.R.D. 446, 449 (S.D.N.Y. 1995) ("defendants are entitled to discovery from the class members with respect to damages and liability issues" in collective opt-in ADEA action). At minimum, the parties will need to conduct discovery regarding whether each opt-in plaintiff applied for a job using Workday's software, submitted an application that was reviewed using AI, received a "score" or "rank" that was not a recommendation to hire that was communicated to the employer at issue, and was rejected for the job at issue *because of* Workday's AI-powered software, as opposed to some other cause, like a lack of qualifications. *See Pottenger v. Potlach Corp.*, 329 F.3d 740, 750 (9th Cir. 2003) ("To bring a disparate impact claim, [plaintiff] must show that he was subject to the particular employment practice with the alleged disparate impact."); *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 994-97 (1988) (explaining that causation requirement for disparate-impact claim is not satisfied where proffered statistics fail to account for applicant qualifications or alternative explanations for negative hiring decisions). Determining these facts will require both written discovery and deposition testimony for, again, potentially *thousands* of opt-in plaintiffs. Moreover, because each opt-in plaintiff may have applied for multiple, even dozens or hundreds of positions, with different employers using different hiring processes and sets of job qualifications, this process will be particularly onerous in this case—unlike, say, in a case where applicants applied to a narrow set of positions with a single employer. *Compare Rabin*, 2017 WL 11662124, at *2 (claims directed at single defendant-employer). This process would almost certainly be followed by full summary judgment briefing and trial, demonstrating this case is very likely to stretch well into 2028.

Even under the most conservative timeline to a Ninth Circuit decision, much (if not all) of this intense and costly litigation would be obviated by a decision that job applicants cannot bring disparate-impact claims under the ADEA. Certification would thus potentially save the parties,

10    DEFENDANT WORKDAY, INC.'S MOTION FOR
INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b)
[CASE NO. 3:23-CV-00770-RFL]

not to mention the Court, substantial "time, effort, [and] expense" to determine the viability of these claims now. *ICTSI Oregon*, 22 F.4th at 1131.

### iii. Deciding the viability of Plaintiffs' ADEA claims enables more productive settlement discussions.

*Third*, as many courts have observed, "especially in class actions, uncertainty over a key claim's status may delay settlement … and by doing so further protract the case." *Casas v. Victoria's Secret Stores, LLC*, 2015 WL 13446989, at *3 (C.D. Cal. Apr. 9, 2015). As in *Casas*, such "uncertainty" over Plaintiffs' ADEA claims "may delay ultimate resolution by leaving the parties in a state of limbo, with neither side willing to seriously entertain the other's position absent some resolution." *Id.* "[T]hat is enough to satisfy the 'may materially advance' clause of section 1292(b)." *Id.* (quoting *Sterk v. Redbox Automated Retail*, LLC, 672 F.3d 535, 536 (7th Cir. 2012)); *see also Moriarty v. Am. Gen. Life Ins. Co.*, 2023 WL 6280967, at *3 (S.D. Cal. Sept. 26, 2023) ("[U]ncertainty regarding a class action claim can delay settlement and protract litigation, which is enough to satisfy the 'may materially advance' clause of section 1292(b).") (internal quotation marks and citation omitted).

Additionally, because the ADEA disparate-impact claim is the only claim in this case that is not governed by Rule 23 (or Rule 23-like) standards for determining whether it will proceed on a classwide basis, the litigation and motion practice governing this claim differs from the rest of the case in ways that ultimately may be material, in both this Court and in future appellate proceedings. *See, e.g., Campbell v. City of Los Angeles*, 903 F.3d 1090, 1112 (9th Cir. 2018) (explaining how the requirements for collective adjudication under the ADEA differ from the requirements for class adjudication under Rule 23). Knowing now whether that claim is viable— and thus, whether a collective can even hypothetically proceed to collective adjudication on that claim—will allow Plaintiffs and Workday to structure their class certification strategy around Plaintiffs' viable claims. Moreover, settling the issue once and for all will significantly improve the productivity of the parties' settlement discussions, no matter how the Ninth Circuit decides the question.

DEFENDANT WORKDAY, INC.'S MOTION FOR
INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b)
[CASE NO. 3:23-CV-00770-RFL]

**iv.    Deciding whether job applicants may bring disparate-impact claims under the ADEA provides clarity for other litigants.**

*Fourth*, immediate appeal on this question would allow the Ninth Circuit the opportunity to provide clarity not only to the parties in this action, but also to parties in other actions. As one district court has observed, "[w]hether section 4(a)(2) of the ADEA authorizes job applicants—as opposed to employees—to bring disparate impact claims against a prospective employer is a complex question of statutory interpretation that lower courts have struggled to determine in the absence of guidance from the Ninth Circuit or the Supreme Court." *Heath v. Google Inc.*, 2018 WL 398463, at *1 (N.D. Cal. Jan. 12, 2018). And this question has continued to recur in this Circuit. *See id.* (dismissing disparate-impact claims by job applicants on other grounds without addressing statutory interpretation question); *Rabin*, 236 F. Supp. 3d at 1128; *Barnes v. Kijakazi*, 2023 WL 3007904, at *7 (D. Nev. Apr. 19, 2023), *aff'd sub nom. Barnes v. O'Malley*, No. 23-15859, 2024 WL 1461366 (9th Cir. Apr. 4, 2024) (addressing ADEA claims for job applicants, but granting motion for summary judgment to defendants on other grounds).

To date, the Ninth Circuit has not decided the question because these kinds of claims "often settle or are resolved without clear resolution of procedural matter." *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 958 (9th Cir. 2005); *see, e.g.*, *Rabin*, 2021 WL 837626, at *1 (N.D. Cal. Feb. 4, 2021) (settling case without appeal of question regarding job applicants' disparate-impact claims under the ADEA); *Heath*, 2019 WL 3842075, at *1 (N.D. Cal. Aug. 15, 2019) (same). As the Ninth Circuit has explained, "an interlocutory appeal" in such cases "may facilitate the development of the law." *Chamberlan*, 402 F.3d at 958. Interlocutory appeal at this stage could thus be a rare opportunity to help clarify the law in this Circuit, to the benefit of the parties here and in other cases. *See Wilton Miwok Rancheria v. Salazar*, 2010 WL 693420, at *13 (N.D. Cal. Feb. 23, 2010) (certifying where the "issue is important not only for the Parties but to future litigants who may be similarly situated").

**v.    The *Rabin* court denied certification of this issue for reasons that do not apply to this case.**

All of the above distinguishes this case from *Rabin*, where the court denied a motion for

12

certification because it thought an immediate appeal would not materially advance that particular litigation. The court in *Rabin* decided the certification motion before there were any opt-in plaintiffs in that case at all. Additionally, the named plaintiffs in that case *also* brought disparate-treatment claims under the ADEA. *Rabin*, 2017 WL 11662124, at *2. Thus, all of the discovery the disparate-impact claim required for both the named plaintiffs and potential future opt-in plaintiffs would "overlap with the discovery required for [the plaintiffs' and potential opt-in plaintiffs'] disparate treatment claim." *Id*. The situation here is different. The massive amount of discovery the parties will need to conduct involving the opt-in plaintiffs (which is itself more burdensome than any discovery involving the single employer at issue in *Rabin*) does not "overlap" with the discovery the parties would need to conduct anyway. And because there is no viable disparate-treatment claim under the ADEA in this case, all of the ADEA discovery here would be tied to a claim that the ADEA may not authorize in the first place.

*Rabin* also noted the existence in that case of state-law claims for age-discrimination. But there the state-law claims and ADEA claims were essentially coterminous. Here they are not. Even if Plaintiffs amend their Complaint to try to state a FEHA claim and this Court finds they have successfully done so *at the pleading stage*, that claim is far narrower than what the ADEA would permit. To begin with, only the ADEA claim will necessitate onerous litigation of opt-in claims. Moreover, even if Plaintiffs manage to satisfy FEHA's territoriality requirements on the pleadings, that hardly means that FEHA will ultimately yield the sort of nationwide age-discrimination class Plaintiffs seek through the ADEA. The territoriality inquiry *alone* will very likely exclude huge swaths of the class once the actual facts are discovered. That inquiry requires evaluation of whether "the material elements of the cause of action" occurred in California. *Hill v. Workday, Inc.*, 773 F.Supp.3d 779, 793 (N.D. Cal. 2025). The factual record on these factors is virtually certain to exclude many class members and potentially foreclose class certification altogether, such that any state-law FEHA claim is nowhere near as broad as an ADEA claim. (And, of course, if Plaintiffs elect not to amend or the FEHA claim is ultimately dismissed, the ADEA claim would be the only age-discrimination claim in the case at all.)

In short, no matter how this litigation plays out, resolving the existence of a disparate-

13    DEFENDANT WORKDAY, INC.'S MOTION FOR
INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b)
[CASE NO. 3:23-CV-00770-RFL]

impact claim for applicants under the ADEA now will spare significant "time, effort, [and] expense." *ICTSI Oregon*, 22 F.4th at 1131. Immediate appeal of this question would thus "materially advance the termination" of the litigation. 28 U.S.C. § 1292(b).

***

In short, certifying the Order for interlocutory appeal would be a sound use of the Court's discretion. As the Court observed in its Order on Workday's motion to dismiss, postponing a resolution of this statutory interpretation question "would simply delay resolution of the issue for no apparent purpose." Order at 2, n.2 (quotation marks and citation omitted). This appeal would present just the kind of clean, novel, and important legal issue the Ninth Circuit should have the opportunity to resolve "sooner, rather than later," thus "sav[ing] the courts and the litigants unnecessary trouble and expense." *John v. United States*, 247 F.3d 1032, 1051 (9th Cir. 2001) (en banc) (Rymer, J., special statement). That is precisely the sort of issue that § 1292(b) was meant to address.

**CONCLUSION**

Based on the foregoing, Defendant respectfully requests that the Court certify its Order for interlocutory appeal.

DATED:  March 27, 2026.

ORRICK, HERRINGTON & SUTCLIFFE LLP

By:  */s/ Kayla D. Grundy*
JULIE A. TOTTEN
ERIN M. CONNELL
KAYLA D. GRUNDY
ALEXANDRIA R. ELLIOTT

Attorneys for Defendant
WORKDAY, INC.