

April 3, 2026

**Orrick, Herrington & Sutcliffe LLP**
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669

+1 415 773 5700
**orrick.com**


**Kayla Delgado Grundy**

**E** kgrundy@orrick.com
**D** +1 415 773 5537
**F** +1 415 773 5759

Magistrate Judge Laurel Beeler
US District Court
Northern District of California
Courtroom B – 15th Floor
450 Golden Gate Avenue
San Francisco, CA  94102

Re:     *Derek L. Mobley v. Workday, Inc.*
         Case No. 3:23-cv-00770-RFL
         Opposition to Plaintiffs' Letter Motion for a Protective Order

Dear Magistrate Judge Beeler:

Pursuant to the Court's Standing Order and ECF Nos. 265 and 293, Workday submits the enclosed two-page letter brief in opposition to Plaintiffs' Letter Motion for a Protective Order That Limits Individualized Discovery To a Representative Sample of the 14,071 Conditional Opt-Ins, ECF No. 292-1. *See* Exhibit A.

Respectfully submitted,

Kayla D. Grundy

# EXHIBIT A

**Introduction**. Workday submits this opposition to Plaintiffs' request for a protective order. Setting aside that Plaintiffs never met-and-conferred regarding this request, Plaintiffs' request relies on inapposite authority and squarely contradicts the Court's previous guidance and rulings. The Court should deny Plaintiffs' motion.

**No Meet and Confer Efforts**. The parties have never discussed discovery concerning the additional 14,000 individuals Plaintiffs named in their March 23, 2026 filing. All of the parties' discussions, and any reference to sampling, have been directed only at the 195 Opt-in Plaintiffs that were the subject of the Court's April 1, 2026 Order. ECF No. 291. Plaintiffs' failure to meet and confer violates the Court's standing order, and their request should be denied for that reason alone. *See* Standing Order for Magistrate Judge Laurel Beeler at 3.

**The Court Has Already Rejected Plaintiffs' Argument**. This Court has already considered and rejected Plaintiffs' argument that individualized discovery is precluded at this stage of the litigation. *See* ECF No. 291 at 3. The Court concluded that Workday's discovery requests are "relevant" because they "will help determine [] eligibility to participate in the preliminarily certified age collective." *Id.* The Court's conclusion holds equally for any additional Plaintiffs that had not yet opted-in at the time Workday served its original discovery. Plaintiffs' motion seeks to relitigate an issue the Court has already decided and should be rejected.

**Plaintiffs' Request is Premature**. Plaintiffs' request for a protective order is also premature because Workday has not served any further discovery. Without knowing the content of Workday's discovery requests (or to whom they are directed), Plaintiffs have no principled basis to argue the discovery is unwarranted under the Federal Rules or controlling case law.[1]

**Sampling Is Not Appropriate**. Plaintiffs suggest that Workday should be required to sample the Opt-in Plaintiffs for discovery, relying on authority that has no application to the facts and circumstances of this case. *See* ECF No. 292-1 at 1-2. Unlike traditional FLSA and ADEA collectives, which involve a single employer with access to relevant information about the Opt-In Plaintiffs, this case requires individualized discovery to gather *any information* about each Opt-in Plaintiff, including whether such individuals meet the collective definition. The Court's order granting conditional certification defines the collective as "[a]ll individuals aged 40 or over who, from September 24, 2020, through the present, [] applied for job opportunities using Workday, Inc.'s job application platform and were denied employment recommendations." The Court defined "denied employment recommendations" to mean that: (i) the individual's application was scored, sorted, ranked, or screened by Workday's AI; (ii) the result was not a recommendation to hire; and (iii) the result was communicated to the prospective employer, or was an automatic rejection by Workday. *See* ECF No. 128 at 17-18. Each element of this definition demands an individualized inquiry. For that reason, the Court has already acknowledged that discovery on all the Opt-in Plaintiffs is required. *See* July 9, 2025 Hr. Tr. 7:11–8:5 ("I think the next step is that the parties need to do discovery on all of the opt-in Plaintiffs to figure out . . . who of the opt ins received a recommendation that they not be hired."); *see also* ECF No. 195 (rejecting the use of a third-party administrator and concluding that Workday can use "traditional forms of discovery" to

---

[1] Workday does intend to serve discovery on every Opt-in Plaintiff consistent with the Court's directives, ECF No. 195, but Workday has not yet done so or settled on the form such discovery will take.

WORKDAY'S LETTER BRIEF IOT PLAINTIFFS'
REQUEST FOR A PROTECTIVE ORDER
[ 3:23-CV-00770-RFL]

obtain the same information regarding Plaintiffs' age, email address, and job applications). Without information about where Plaintiffs applied to work and when—and how old they were at the time—it is impossible to determine whether Plaintiffs were potentially "scored, sorted, ranked, or screened" by Workday AI, much less whether the result of that scoring, sorting, ranking, or screening was a recommendation not to hire. Sampling cannot substitute for the individualized assessment the Court has directed, absent which the parties have no way to even begin to determine whether any particular Opt-in Plaintiff belongs in the collective.

Indeed, Workday proposed—and the parties originally agreed—to facilitate notice through a third-party administrator who would collect eligibility information from the Opt-in Plaintiffs in a streamlined way and provide that information to both parties. ECF Nos. 170 at 30-33 (Plaintiffs' proposed questionnaire and opt-in notice); 175 (Order referencing "pre-opt-in forms"); 177 (Order including eligibility form). Plaintiffs ultimately reneged on that agreement and objected to the highly negotiated third-party administrator process in favor of managing the notice process themselves. ECF No. 193. After rejecting the streamlined approach, Plaintiffs cannot now claim the foreseeable burden is too great to provide relevant, non-cumulative information to Workday.

**Even if Sampling Were Appropriate, Plaintiffs' Plan is Insufficient.** Even if sampling were appropriate, Plaintiffs lack any principled basis to suggest that Workday has "already exceeded any reasonable representative sampling cap." ECF No. 292-1 at 1. Discovery of a 1.4% "sample" of opt-in plaintiffs would plainly be insufficient in any case, and Plaintiffs cite no authority sanctioning such a small sampling of Opt-in Plaintiffs. Plaintiffs also have no basis to assert that discovery into the first 195 Opt-in Plaintiffs, who all chose to join the case prior to any notice being issued, is "representative" of the larger group. Indeed, it is not possible to construct a representative sample at this time based on the information available about the Opt-In Plaintiffs. Underscoring the point that discovery is required for these individuals, Workday does not have any information upon which to stratify the collective: there is no information about the jobs to which these individuals applied, the employer(s) who posted those jobs, the industries of those jobs, the number of applications submitted, the dates of those applications, the individual's age at the time of application, the level of education obtained, any specialized degrees or credentials, or whether the jobs applied to were entry level or something else. Under these circumstances, it is impossible to construct a representative sample, and a non-random "sample" of the 195 individuals who opted in prior to notice going out is plainly insufficient, particularly given there are 14,071 individuals for whom Workday has next to no information at all.

**Conclusion**. For the foregoing reasons, Workday respectfully requests that the Court deny Plaintiffs' request for a protective order. As its best compromise, Workday offers that it will seek only birthdates, job title and company applied to (along with dates of application), and resumes from all Opt-In Plaintiffs, and any additional discovery requests will be limited to a sample of 425 individuals (approximately 3% of the population identified by Plaintiffs), on the condition that Plaintiffs will be prohibited from using evidence or testimony from individuals outside the sample to oppose decertification.