JULIE A. TOTTEN (STATE BAR NO. 166470)
jatotten@orrick.com
ERIN M. CONNELL (STATE BAR NO. 223355)
econnell@orrick.com
KAYLA D. GRUNDY (STATE BAR NO. 300513)
kgrundy@orrick.com
ALEXANDRIA R. ELLIOTT (STATE BAR NO. 320293)
aelliott@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:    (415) 773-5700
Facsimile:    (415) 773-5759

Attorneys for Defendant
WORKDAY, INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEREK L. MOBLEY, for and on behalf of himself and other persons similarly situated;<br><br>        Plaintiff,<br><br>    v.<br><br>WORKDAY, INC.<br><br>        Defendant. | Case No. 3:23-cv-00770-RFL<br><br>**DEFENDANT WORKDAY, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS THIRD AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Courtroom:    15, 18th Floor<br>Judge:    Hon. Rita F. Lin<br><br>Second Amended Complaint: Jan. 7, 2026 |

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION AND SUMMARY OF POINTS ........................................................... 1

II.   RELEVANT BACKGROUND .......................................................................................... 2

III.  PLAINTIFFS' ALLEGATIONS IN THE THIRD AMENDED COMPLAINT ............... 3

IV.   APPLICABLE LEGAL STANDARD ............................................................................... 5

      A.    Rule 12(f) ............................................................................................................... 5

      B.    Rule 12(b)(6) .......................................................................................................... 5

V.    PLAINTIFFS' UNAUTHORIZED ALLEGATIONS MUST BE STRICKEN OR
      DISMISSED ...................................................................................................................... 6

      A.    The Court Did Not Permit a Discrimination Claim Against Asian
            Americans and Such Claim Is Not Viable .............................................................. 6

            1.    Rule 15 and the Court's Order Precludes These Allegations ..................... 6

            2.    Rowe's Race Claim is Barred by the Statute of Limitations ..................... 7

      B.    The Court Did Not Permit a New Disability Claim and Expanded Class
            Definition and Plaintiffs Lack Good Cause for Their Amendment ......................... 8

      C.    The Court Did Not Permit Plaintiffs to Make Wholesale Changes to Their
            Factual Allegations ................................................................................................. 9

      D.    The Court Should Strike or Dismiss the New Claims and Allegations
            Without Leave to Amend ......................................................................................... 9

VI.   PLAINTIFFS FAIL TO ALLEGE NON-CONCLUSORY FACTS SUFFICIENT
      TO WARRANT APPLICATION OF FEHA TO A NATIONWIDE CLASS OF
      APPLICANTS .................................................................................................................. 10

      A.    Plaintiffs' Allegations Regarding the Development of Workday's Software
            Are Insufficient to Justify the Application of FEHA ............................................ 10

      B.    Plaintiff Rowe's Allegations Do Not Establish a Sufficient California
            Nexus .................................................................................................................... 13

      C.    The Opt-In Plaintiffs' Allegations Regarding California-Based
            Applications Are Also Insufficient to Warrant Application of FEHA ................. 13

VII.  CONCLUSION ................................................................................................................ 14

- i -

DEFENDANT WORKDAY, INC.'S MOTION TO DISMISS THIRD AMENDED COMPLAINT AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ....................................................................................................... 5, 11

*Barnes v. Sea Hawai'i Rafting, LLC*,
  493 F. Supp. 3d 972 (D. Haw. 2020), *aff'd sub nom. Barnes v. Kris Henry,*
  *Inc.*, No. 20-17141, 2022 WL 501582 (9th Cir. Feb. 18, 2022) ................................................ 5

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .............................................................................................................. 6

*Campbell v. Arco Marine, Inc.*,
  42 Cal. App. 4th 1850 (1996) ......................................................................................... 10, 12

*Chen v. L.A. Truck Ctrs., LLC*,
  42 Cal. App. 5th 488 (2019) ................................................................................................ 12

*Civello v. Equinix Inc.*,
  No. CV-25-01028-PHX-KML, 2025 WL 1898208 (D. Ariz. July 9, 2025) ........................... 11

*Davis v. Gen. Atomics*,
  No. 8:23-CV-00132-WLH-JDE, 2025 WL 1421906 (C.D. Cal. Apr. 18, 2025) ................. 5, 6

*Dodd-Owens v. Kyphon, Inc.*,
  No. C 06-3988 JF (HRL), 2007 WL 420191 (N.D. Cal. Feb. 5, 2007) ................................. 11

*Eminence Cap., LLC v. Aspeon, Inc.*,
  316 F.3d 1048 (9th Cir. 2003) ............................................................................................. 10

*English v. Gen. Dynamics Mission Sys., Inc.*,
  No. EDCV-18-908 JGB, 2019 WL 2619658 (C.D. Cal. May 8, 2019) ................................. 10

*Gerritsen v. Warner Bros. Ent. Inc.*,
  116 F. Supp. 3d 1104 (C.D. Cal. 2015) .............................................................................. 5, 9

*Hill v. Workday, Inc.*,
  773 F. Supp. 3d 779 (2025) ................................................................................................... 6

*Hurtado v. Superior Ct.*,
  11 Cal. 3d 574 (1974) ......................................................................................................... 12

*Loza v. Intel Americas, Inc.*,
  No. 20-cv-06705-WHA, 2020 WL 7625480 (N.D. Cal. Dec. 22, 2020) ......................... 11, 14

*N. Alaska Salmon Co. v. Pillsbury*,
    174 Cal. 1 (1916) .................................................................................................................. 10

*Paparella v. Plume Design, Inc.*,
    No. 22-CV-01295-WHO, 2022 WL 2915706 (N.D. Cal. July 25, 2022) ............................... 14

*Raines v. U.S. Healthworks Med. Grp.*,
    No. 19-CV-1539-DMS-DEB, 2024 WL 3850812 (S.D. Cal. Aug. 16, 2024) ........................ 12

*Rodrigues v. Pac. Tel. & Tel. Co.*,
    70 F.R.D. 414 (N.D. Cal. 1976) ........................................................................................... 7

*Rulenz v. Ford Motor Co.*,
    No. 10-cv-19710-GPC-MDD, 2013 WL 2181241 (S.D. Cal. May 20, 2013) ....................... 13

*Ryan v. Clark Equip. Co.*,
    268 Cal. App. 2d 679 (1969) ............................................................................................... 12

*Sanders v. City of Phoenix*,
    No. CV06-1644-PHX-GMS, 2008 WL 5001624 (D. Ariz. Nov. 24, 2008) ........................... 7

*Sullivan v. Oracle Corp.*,
    51 Cal. 4th 1191, 1207 (2011), *aff'd*, 808 F. App'x 529 (9th Cir. 2020) ................................ 10

*Vaughn v. Cohen*,
    No. 3:23-CV-06142-TMC, 2024 WL 4881975 (W.D. Wash. Nov. 25, 2024) ......................... 5

**Rules**

Fed. R. Civ. P. 11 ...................................................................................................... 2, 9, 11

Fed. R. Civ. P. 12 ........................................................................................................... 5, 7

Fed. R. Civ. P. 15 ...................................................................................................... 3, 6, 7, 9

Fed. R. Civ. P. 16 ...................................................................................................... 2, 7, 9

DEFENDANT WORKDAY, INC.'S MOTION TO DISMISS AND MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT

**NOTICE OF MOTION AND MOTION**

**TO PLAINTIFFS DEREK MOBLEY, FAITHLINH ROWE, SHEILAH JOHNSON-ROCHA, JILL HUGHES AND THEIR COUNSEL OF RECORD**:

**PLEASE TAKE NOTICE** that Defendant Workday, Inc. will and hereby does move this Court to dismiss certain causes of action within the Third Amended Complaint ("TAC") pursuant to Rules 12(b)(6) and 12(f) of the Federal Rules of Civil Procedure.

The motion is made on the grounds that:

1.      Pursuant to Rules 12(f) and 12(b)(6), the Court should strike and/or dismiss Plaintiffs' new claims of race discrimination against Asian American applicants—including the second and eighth causes of action and all references to race discrimination against Asian American applicants—because Plaintiffs' amendment exceeds the scope permitted by the Court.

2.      Pursuant to Rule 12(b)(6), the Court should also dismiss Plaintiffs' new claims of race discrimination against Asian American applicants because they are untimely.

3.      Pursuant to Rule 12(f) and 12(b)(6), the Court should strike and/or dismiss Plaintiffs' new claims of disability discrimination on behalf of individuals with physical disabilities—including the second cause of action, the redefined disability class, and all references to discrimination against people with physical disabilities—because Plaintiffs' amendment exceeds the scope permitted by the Court.

4.      Pursuant to Rule 12(f) and 12(b)(6), the Court should strike and/or dismiss Plaintiffs' new factual allegations that go beyond their amended FEHA claim because Plaintiffs' amendment exceeds the scope permitted by the Court.

5.      Pursuant to Rule 12(b)(6), the Court should dismiss Plaintiffs' claims under the Fair Employment and Housing Act ("FEHA") because Plaintiffs' TAC does not plead facts sufficient to permit the application of FEHA to a nationwide class. FEHA does not apply extraterritorially to non-resident Plaintiffs whose claims lack any connection to California.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, and such other documents and information that the Court may consider.

Dated:  April 10, 2026

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: _____

JULIE A. TOTTEN
ERIN M. CONNELL
KAYLA D. GRUNDY
ALEXANDRIA R. ELLIOTT
Attorneys for Defendant
WORKDAY, INC.

<strong>MEMORANDUM OF POINTS AND AUTHORITIES</strong>

**I.        INTRODUCTION AND SUMMARY OF POINTS**

Plaintiffs' Third Amended Complaint is an entirely new complaint that almost completely reframes their allegations more than three years into this litigation and 18 months after their deadline to amend expired. Although the Court granted Plaintiffs very limited leave to file a Third Amended Complaint directly addressing deficiencies in the Second Amended Complaint, Plaintiffs far exceed the scope of what this Court permitted. Even for those claims Plaintiffs were permitted to amend, they do so inadequately by continuing to rely on conclusory, high-level allegations. Enough is enough. This Court should strike Plaintiffs' unsanctioned allegations and dismiss Counts Seven and Eight.

In January 2026, the Court permitted Plaintiffs' belated amendment to add three new named Plaintiffs, claims under California law mirroring their existing federal claims, and a new gender discrimination claim under both state and federal law. In persuading the Court to allow the amendment, Plaintiffs represented it as narrow—suggesting they were only seeking to add "one" new claim for sex discrimination that "mirror[s]" the claims "already in the operative Complaint." *See* ECF No. 198 at 6. When Workday opposed the motion as broader than Plaintiffs alleged, Plaintiffs doubled down, contending the amendment was based on the same "facts" as the existing complaint and added only "four counts in total"—two new claims for gender discrimination and two claims under FEHA for race and age discrimination against African Americans that were "not new." *See* ECF No. 220 at 9.

Now, in response to the Court's Order granting in part Workday's motion to dismiss the Second Amended Complaint ("SAC"), Plaintiffs attempt a bait and switch—offering a rewritten Third Amended Complaint ("TAC") that disregards the Court's express instruction that they ***may not add new claims or parties without leave of the Court*** and the Court's requirement to provide a redline that identifies all such new allegations. ECF No. 267. Plaintiffs add a race discrimination claim on behalf of Asian American applicants. Plaintiffs also redefine their disability class altogether to state an entirely new disability discrimination claim on behalf of individuals with physical disabilities and rewrite their factual allegations throughout to expand their theory of

1

liability. *See* Declaration of Kayla Grundy ("Grundy Decl.") ¶ 2, Ex. A (comparison of Second and Third Amended Complaints). These amendments still fail to remedy the deficiencies identified in the Court's order, ECF No. 267, regarding Plaintiffs' FEHA claims (which cannot be remedied consistent with Rule 11).

This litigation has been pending for more than three years and it is past time for the parties to turn their efforts towards class certification and collective decertification. Plaintiffs cannot impose backdoor amendments—including redefining and materially expanding one of their proposed classes—without leave of Court and without attempting to meet the good cause standard of Rule 16. Their efforts to again rewrite their complaint should be rejected.[1]

## II.      RELEVANT BACKGROUND

On January 6, 2026, the Court granted Plaintiffs leave to amend their complaint to add a gender discrimination claim under Title VII and FEHA, describing it as "***the new claim*** brought by the new Plaintiffs." Grundy Decl., Ex. C (Transcript of Jan. 6, 2026 Hearing), at 12:8-9 (emphasis added). The Court also granted Plaintiffs' request to add new Plaintiffs to the existing causes of action, explaining that it did not "see those [amendments] as materially changing the case." *Id.* at 14:23-24. Finally, after acknowledging it was a "close call," the Court granted Plaintiffs leave to add FEHA claims for race and age discrimination. *Id.* at 15:16-20.

Following the filing of the Second Amended Complaint, Workday moved to dismiss. On March 6, 2026, the Court ruled on that motion, granting it in part and denying it in part. ECF No. 267. With respect to the FEHA claims, the Court found that "the SAC lacks any non-conclusory factual allegations of what unlawful conduct took place in California," and noted that even Plaintiff Rowe's allegation that she "applied directly to Workday" was insufficient because "there are no allegations of what unlawful conduct took place in California." *Id.* at 4. The Court granted dismissal of the FEHA claims with leave to amend. With respect to Hughes's ADA claim, the Court found that while the SAC alleged Workday uses "assessments and personality tests" that are "likely to

---

[1] Plaintiffs failed to file the required redline comparing their Third Amended Complaint with the Second Amended Complaint at the time of filing. Workday attaches such a redline and also notes the allegations Workday seeks to strike as part of this motion. *See* Grundy Decl. ¶ 2, Ex. A (redline of TAC identifying paragraphs that should be struck).

DEFENDANT WORKDAY, INC.'S MOTION TO DISMISS THIRD AMENDED COMPLAINT AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

reveal . . . cognitive impairments," "anxiety," and "depression," there were "no factual allegations in the SAC describing how Workday allegedly discriminates against applicants on the basis of physical disabilities, as opposed to mental health disorders or cognitive impairments." *Id.* at 5. The Court dismissed Hughes's claim with leave to amend. *Id.*

The Court's Order specified that leave to amend was granted with respect to the FEHA claims (Counts VII and VIII) as to all Plaintiffs and the disability claim (Count II) ***only*** as to Hughes. *Id.* at 6. The Court's Order concluded with an express limitation: "If Plaintiffs wish to file a Third Amended Complaint correcting the deficiencies identified above, they shall do so by March 27, 2026. Plaintiffs may not add new claims or parties without leave of the Court or stipulation by the parties pursuant to Federal Rule of Civil Procedure 15." *Id.* at 6.

### III.    <u>PLAINTIFFS' ALLEGATIONS IN THE THIRD AMENDED COMPLAINT</u>

While Plaintiffs' TAC purports to assert the same eight causes of action against Workday, the similarities stop there.[2] Despite the Court's express instruction limiting the nature of any amendment, Plaintiffs' TAC scraps the SAC entirely. Grundy Decl. ¶2, Ex. A.

The TAC now—for the first time in this litigation—alleges that Workday's tools discriminate against "Asian American" applicants. ECF No. 287. While Plaintiffs previously pled a race discrimination claim, that claim was limited to African American applicants. *Compare* ECF No. 231 *with* ECF No. 287. None of Plaintiffs' prior pleadings alleged discrimination against Asian Americans. And other than the conclusory allegations lumping Asian American applicants into a string of impacted individuals, Plaintiffs do not otherwise amend their allegations to state a claim on behalf of Asian American applicants. *See, e.g.*, TAC ¶ 140 ("Workday's screening tools

---

[2] Plaintiffs plead eight causes of action but concede only four such causes of action remain live in this action: (a) disparate impact discrimination based on race and disability under Title VII and the Americans with Disabilities Act; (b) disparate impact discrimination under the ADEA; (c) disparate impact discrimination based on gender under Title VII and FEHA; and (d) disparate impact discrimination on the basis of race and age under FEHA. *See generally* TAC at 31-54. Plaintiffs also re-plead an aiding and abetting claim under FEHA and intentional discrimination claims under Title VII and Section 1981 but acknowledge "that Court [] previously dismissed" these claims and they "do not include such matters again except for the limited purpose of preserving whatever rights they may have to appeal." TAC ¶¶ 144, 188, 224, 225. Workday therefore does not address these claims. Workday requests that any Order issued by the Court on this Motion confirm that such claims remain dismissed for the reasons articulated in the Court's prior Order, ECF No. 80.

3

constitute employment practices that cause a disparate impact on African-American, Asian-American, and female applicants in violation of Title VII"). Plaintiffs sought neither a stipulation from Workday nor permission from the Court before expanding their claims in this way.

The TAC also states a brand new disability claim. While the prior complaints asserted a claim on behalf of applicants with "a diagnosed mental health or cognitive condition," SAC ¶ 11, the TAC expands this to encompass applicants who have "a disability or medical condition affecting mental, cognitive, or physical functioning," TAC ¶ 17. The TAC alleges that Workday's tools can identify "illness-related absences, health conditions, or limitations" and can screen out applicants based on "inferred health status" including "cancer survivorship and . . . asthma." *Id.* ¶¶ 118, 57, 59. The Court's Order authorized Plaintiffs to amend Hughes's disability claim; it did not permit Plaintiffs to reconstruct the proposed class definition to expand the claim from mental or cognitive disabilities to any conceivable disability. Plaintiffs did not seek a stipulation from Workday or permission from the Court with respect to this substantial deviation, either.

With respect to the FEHA claims, Plaintiffs' amendments are within the scope of the Court's Order. Yet, the new allegations remain conclusory. Plaintiffs allege that Workday's systems were "designed, developed, maintained, and controlled from its California headquarters" and that the "discriminatory conduct at issue—including applicant screening, scoring, and rejection—originates in and is carried out from California." *Id.* ¶¶ 4, 232. The TAC also alleges that Plaintiff Rowe "resid[ed] in California" between "2020 and April 2021" and "applied for at least seven (7) positions associated with Defendant's Pleasanton, CA headquarters," and that "[e]ach of these applications was submitted through Defendant's centralized Workday platform and processed through the same automated system." *Id.* at ¶ 73.

Finally, throughout the TAC, Plaintiffs more broadly add new and different factual allegations about Workday's AI systems and Plaintiffs' theory of the case. *See* Grundy Decl. ¶ 2, Ex. A. These new and different factual allegations have nothing to do with Plaintiff Hughes's disability discrimination claim or the FEHA claim, the only claims the Court authorized Plaintiffs to amend. For example, Plaintiffs allege, for the first time, that Workday is also liable for "using the challenged recruitment and hiring procedures in screening and selecting its own employees"—

4

an allegation made for the first time in the TAC and that has no bearing on Plaintiff Hughes's disability discrimination claim or Plaintiffs' FEHA claim. TAC ¶ 9. Indeed, the comparison of the TAC to the SAC shows how dramatically different the complaints are, despite the Court's direction that the TAC be amended only to "correct[] the deficiencies" identified in its order. *See* Grundy Decl. ¶ 2, Ex. A; ECF No. 267 at 6.

## IV.     APPLICABLE LEGAL STANDARD

### A.     Rule 12(f)

Rule 12(f) authorizes courts to strike "from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Where a party has filed an amended complaint that exceeds the scope of leave granted by the court, the proper remedy is to strike the unauthorized material. *See, e.g.*, *Vaughn v. Cohen*, No. 3:23-CV-06142-TMC, 2024 WL 4881975, at *2 (W.D. Wash. Nov. 25, 2024) (recognizing that courts, with approval from the Ninth Circuit, strike claims that "exceed the scope of an order allowing leave to amend" and collecting cases). Courts in this circuit generally hold that "when a court grants leave to amend with specified limitations, the plaintiff does not have carte blanche to make amendments beyond the scope of the leave granted." *Davis v. Gen. Atomics*, No. 8:23-CV-00132-WLH-JDE, 2025 WL 1421906, at *6 (C.D. Cal. Apr. 18, 2025). And courts routinely strike or dismiss claims that exceed the scope of leave to amend. *See, e.g.*, *Barnes v. Sea Hawai'i Rafting, LLC*, 493 F. Supp. 3d 972, 978 (D. Haw. 2020), *aff'd sub nom. Barnes v. Kris Henry, Inc.*, No. 20-17141, 2022 WL 501582 (9th Cir. Feb. 18, 2022); *Gerritsen v. Warner Bros. Ent. Inc.*, 116 F. Supp. 3d 1104, 1125 (C.D. Cal. 2015) (collecting cases).

### B.     Rule 12(b)(6)

To survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The factual allegations must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Allegations that are "merely consistent with" a defendant's liability, *id.*, or that do not state a cognizable legal theory, cannot survive a motion to dismiss. Fed. R. Civ. P. 12(b)(6). "[A] plaintiff's obligation to provide the 'grounds' of his

5

'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Failure to adequately plead grounds for the extraterritorial application of state law constitutes a failure to state a claim on the merits." *Hill v. Workday, Inc.*, 773 F. Supp. 3d 779, 792-93 (2025).

## V.    PLAINTIFFS' UNAUTHORIZED ALLEGATIONS MUST BE STRICKEN OR DISMISSED

### A.    The Court Did Not Permit a Discrimination Claim Against Asian Americans and Such Claim Is Not Viable

Plaintiffs allege an Asian American race discrimination claim in violation of the Court's Order. Plaintiffs' Second Amended Complaint did not assert a race claim on behalf of Plaintiff Rowe or other Asian American applicants. *See* ECF Nos. 198, 220. Accordingly, the Court's March 6, 2026 Order, which authorized leave to amend only to "correct[] the deficiencies identified" in the Court's order dismissing Plaintiffs' FEHA and Plaintiff Hughes's disability claims, could not have authorized Plaintiffs to file a substantively new claim for race discrimination against Asian American applicants. ECF No. 267 at 6. To assert any such claim now requires good cause and leave of Court. Plaintiffs have neither and the claim should be stricken or dismissed. The claim should also be dismissed as untimely.

### 1.    Rule 15 and the Court's Order Precludes These Allegations

The Court's March 6, 2026 Order could not have been clearer: "Plaintiffs may not add new claims or parties without leave of the Court or stipulation by the parties pursuant to Federal Rule of Civil Procedure 15." ECF No. 267 at 6. Where a court grants leave to amend for a limited purpose, a plaintiff may not use that leave to introduce new causes of action or expand the scope of the case. *Davis*, 2025 WL 1421906, at *6 ("Courts in this circuit generally hold that when a court grants leave to amend with specified limitations, the plaintiff does not have carte blanche to make amendments beyond the scope of the leave granted."). Plaintiffs cannot avoid this limitation by styling the Asian American claim as a mere expansion of the existing race discrimination cause of action. A claim on behalf of an entirely new racial group requiring different factual allegations is substantively a new claim, regardless of whether it is housed within the same cause of action. The Court should strike the Asian American race discrimination claim and all related allegations as

6

contrary to the Court's Order and Rules 15 and 16 of the Federal Rules of Civil Procedure.

### 2.    Rowe's Race Claim is Barred by the Statute of Limitations

Even if the Court were inclined to overlook Plaintiffs' disregard of its Order, Plaintiffs' Asian American discrimination claim must be dismissed under Rule 12(b)(6) because Plaintiff Rowe's statute of limitations expired on November 11, 2025—90 days after she received her right to sue notice from the EEOC on August 13, 2025. By failing to assert the claim in the proposed Second Amended Complaint, Plaintiffs abandoned any discrimination claim on behalf of Asian Americans and Plaintiff Rowe can no longer sustain such a claim in court. Plaintiffs' failure to address such a claim in the SAC is inexplicable and should not be excused. If Rowe sought to assert such a race discrimination claim, the time to do so was when she sought leave to join the litigation as a plaintiff and assert gender claims against Workday. Plaintiffs actively decided against raising an Asian American race discrimination claim at the appropriate time and should not be permitted to belatedly do so now.

To be clear, while otherwise untimely claims raised in an amended pleading may sometimes relate back to the original complaint, the relation-back doctrine has no application here—the original pleading "does not even hint at allegations of [race]-based misconduct [against Asian Americans], nor does it contain any factual assertions of conduct upon which the Court could tie these claims." *Sanders v. City of Phoenix*, No. CV06-1644-PHX-GMS, 2008 WL 5001624, at *3-4 (D. Ariz. Nov. 24, 2008) (holding that the relation-back doctrine does not apply where plaintiff seeks to add a gender-based discrimination claim and the original complaint "clearly only attempts to plead race discrimination and retaliation" because "gender-based misconduct and race-based misconduct are two distinct behaviors"). Plaintiffs pled no allegations in the SAC that would put Workday on notice of a claim of discrimination against Asian Americans—which is, in any event, a distinct claim from discrimination against African Americans. *Rodrigues v. Pac. Tel. & Tel. Co.*, 70 F.R.D. 414, 416 (N.D. Cal. 1976) (explaining that members of one ethnic group cannot properly or adequately represent members of another in a Title VII action). Indeed, all specific allegations of race discrimination center on the impact of Workday's alleged "AI screening process" on Black applicants. *See, e.g.*, TAC ¶ 34 (identifying attendance at a historically Black college as a proxy for

7

race); ¶ 111 (citing study where algorithm allegedly had a negative impact on African American patients' health outcomes); ¶¶ 125-26 (training on incumbent employees disadvantages African American applicants); ¶ 146 (construing Workday's bias testing report as negative towards African American applicants); ¶ 273 (same). Plaintiffs' Asian American discrimination claim is untethered to Plaintiffs' factual allegations and is time-barred.

### B.    The Court Did Not Permit a New Disability Claim and Expanded Class Definition and Plaintiffs Lack Good Cause for Their Amendment

The TAC similarly exceeds the bounds of the leave the Court authorized by adding a new physical disability discrimination claim that fundamentally transforms the disability discrimination claim in this case, including by expanding the purported class of applicants to those with physical disabilities. Plaintiffs add scores of new allegations regarding how Workday's software purportedly discriminates against people with physical disabilities—allegations made for the first time after three years of litigation in Plaintiffs' fourth iteration of their complaint. *See, e.g.*, TAC ¶¶ 114-118. Plaintiffs sought neither leave nor a stipulation to add these allegations, and the Court did not authorize this amendment. Permitting Plaintiffs to add these allegations at this late stage would not only prejudice Workday, it would squarely contravene the Court's orders and the Federal Rules of Civil Procedure. The new class definition and related allegations should be stricken or, in the alternative, dismissed.

The TAC redefines the proposed disability subclass from applicants with "a diagnosed mental health or cognitive condition" to encompass all applicants who have "a disability or medical condition affecting mental, cognitive, or physical functioning." *Compare* SAC ¶ 11 *with* TAC ¶ 17. The TAC adds never before pled allegations that Workday's tools can identify and screen out applicants based on "illness-related absences, health conditions, or limitations" and that these tools function as "de facto medical examinations or disability-related inquiries" that disproportionately exclude "individuals with disabilities" broadly, including those with physical impairments. TAC ¶ 118. These are not corrections of the deficiencies the Court identified in its Order; they are fundamental expansions of the scope of the case. These allegations represent a new class-wide theory of physical disability discrimination and a materially redefined putative class, not merely an

8

effort to cure Plaintiff Hughes's individual pleading deficiency. The Court did not authorize an expansion of the proposed class, the addition of new theories of proxy discrimination for physical disabilities, or the wholesale transformation of what began as a mental-health-focused disability claim into one covering all physical impairments. Instead, the Court invited Plaintiffs to allege, if they could do so consistent with Rule 11, the specific factual basis for how Hughes's disability discrimination claim comports with the complaint's existing allegations.

Plaintiffs seek to circumvent Rules 15(a)(2) and 16 to amend both their theory of disability discrimination and the scope of the disability class long after their time expired. The Court should not permit them to do so.

### C.    The Court Did Not Permit Plaintiffs to Make Wholesale Changes to Their Factual Allegations

Plaintiffs also make unauthorized wholesale changes to their factual allegations that are untethered to the amendments the Court permitted. *See* Grundy Decl. ¶ 2, Ex. A (comparison of TAC to SAC). These changes are not merely stylistic—they transform the nature of the complaint and expand the allegations against Workday years into the litigation. *See, e.g.*, TAC ¶ 9 (attempting to expand the theory of liability by alleging that Workday also "use[s] the challenged recruitment and hiring procedures in screening and selecting its own employees"). These amendments were not permitted by the Court and would prejudice Workday by expanding the scope of the case yet again a year and a half after the deadline to amend the pleadings and after Workday has already supplemented its discovery responses in reaction to prior expansions of the case.

### D.    The Court Should Strike or Dismiss the New Claims and Allegations Without Leave to Amend

The Court should strike or dismiss Plaintiffs' new claims and factual allegations and deny Plaintiffs leave to further amend. Plaintiffs had ample opportunity to seek leave to add an Asian American or physical disability claim through proper procedural channels, including when they moved for leave to file the SAC. They chose not to. Having circumvented Rules 15 and 16 by sneaking unauthorized allegations into an otherwise authorized amendment without the corresponding redline, Plaintiffs should not be rewarded with yet another opportunity to amend.

9

*See Gerritsen*, 116 F. Supp. 3d at 1125 (striking allegations exceeding scope of leave and collecting similar cases); *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (holding that "prejudice to the opposing party [] carries the greatest weight" when deciding whether to permit amendments). The Court should strike Plaintiffs' new allegations and dismiss Plaintiffs' new claims without leave to amend.

## VI. PLAINTIFFS FAIL TO ALLEGE NON-CONCLUSORY FACTS SUFFICIENT TO WARRANT APPLICATION OF FEHA TO A NATIONWIDE CLASS OF APPLICANTS

Plaintiffs' amended—yet still conclusory—allegations do not overcome the general presumption against the extraterritorial application of state law or cure the deficiencies that previously led to dismissal of their FEHA claims. In its March 6, 2026 Order, the Court recognized that California courts reject the extraterritorial application of FEHA to non-residents where "the tortious conduct took place out of [California]'s territorial boundaries," and dismissed Plaintiffs' FEHA claims because the SAC lacked "any non-conclusory factual allegations of what unlawful conduct took place in California." ECF No. 267 (citing *Campbell v. Arco Marine, Inc.*, 42 Cal. App. 4th 1850, 1859 (1996)). Having been afforded a second opportunity to plead their FEHA claims, Plaintiffs' conclusory assertions still lack the factual specificity required to establish extraterritorial application of California law to a nationwide class. Plaintiffs' seventh and eighth causes of action should again be dismissed.

### A. Plaintiffs' Allegations Regarding the Development of Workday's Software Are Insufficient to Justify the Application of FEHA

"California courts have acknowledged a general presumption against the extraterritorial application of state laws." *See English v. Gen. Dynamics Mission Sys., Inc.*, No. EDCV-18-908 JGB (SHKX), 2019 WL 2619658, at *5 (C.D. Cal. May 8, 2019) (citing *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011)), *aff'd*, 808 F. App'x 529 (9th Cir. 2020); *see also N. Alaska Salmon Co. v. Pillsbury*, 174 Cal. 1, 4 (1916) ("Ordinarily, the statutes of a state have no force beyond its boundaries."). California courts in particular reject the view that a California "employer" is subject to California law universally, regardless of the location of the allegedly aggrieved "employee." *See Campbell*, 42 Cal. App. 4th at 1852, 1859 (holding that FEHA does not apply to non-residents

10

where "the tortious conduct took place out of this state's territorial bounds").

As this Court previously recognized, allegations regarding the location of a company's principal place of business are alone insufficient to invoke California law. *See* ECF No. 267 at 4 (citing *Loza v. Intel Americas, Inc.*, No. 20-cv-06705-WHA, 2020 WL 7625480, at *4 (N.D. Cal. Dec. 22, 2020)); *see also Civello v. Equinix Inc.*, No. CV-25-01028-PHX-KML, 2025 WL 1898208, at *3 (D. Ariz. July 9, 2025) ("Out-of-state workers are not entitled to protection under the laws of California merely because a company is headquartered there.").

Plaintiffs' new allegations that Workday's "applicant-screening systems" are "designed, developed, maintained, and controlled from its California headquarters" and that "the discriminatory conduct at issue—including applicant screening, scoring, and rejection—originates in and is carried out from California" are simply repackaged allegations regarding the location of Workday's California headquarters—a theory this Court has already rejected. *See, e.g.*, TAC ¶¶ 4, 83, 227, 230, and 232. These allegations are substantively hollow—unsupported by any specific facts that would make such a conclusion plausible. *Ashcroft*, 556 U.S. at 678 (holding that a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'"). The TAC does not identify any specific discriminatory decision affecting any Plaintiff that was made or ratified in California, nor does it identify what was designed, developed, maintained, or controlled, or by whom. It does not even specify which products were purportedly developed in California. Plaintiffs' vagueness—notwithstanding years of litigation and substantial discovery—is intentional: consistent with Rule 11, Plaintiffs ***cannot*** allege that the products at issue were developed, maintained, and controlled from California.

Moreover, even if Plaintiffs had pled more specific facts regarding the development of Workday's software and that development had actually taken place in California, the fact that the underlying software may have been designed in California does not transform every out-of-state employment decision made by out-of-state employers into conduct occurring in California. *See Dodd-Owens v. Kyphon, Inc.*, No. C 06-3988 JF (HRL), 2007 WL 420191, at *3 (N.D. Cal. Feb. 5, 2007) (holding that "blanket allegation" that defendant employer "disseminated policies from within California" was not sufficient to state a FEHA claim). Plaintiffs' theory of liability—the

11

only mechanism through which Plaintiffs contend they can hold Workday responsible for employment discrimination in this case—is that Workday acts as an agent of its customers. *See, e.g.*, TAC ¶¶ 130-134. As an agent, subject to agency liability, it is axiomatic that Workday is only liable to the same extent as those customers for allegedly discriminatory employment decisions. *Raines v. U.S. Healthworks Med. Grp.*, No. 19-CV-1539-DMS-DEB, 2024 WL 3850812, at *2 (S.D. Cal. Aug. 16, 2024) (recognizing that a "'business entity acting as an agent of an employer' can be held directly liable under FEHA to the same extent as the referring employer"). It is undisputed that out-of-state plaintiffs could not sue out-of-state employers under FEHA for employment decisions made outside of California. As an alleged agent, Workday is likewise not subject to FEHA for allegedly discriminatory conduct occurring outside of California. *Id.*; *see, e.g.*, *Campbell*, 42 Cal. App. 4th at 1859. The mere fact that an agent has California connections does not extend FEHA's reach to all non-California employers who make employment decisions outside of California.

Plaintiffs' conclusory allegations that Workday's applicant screening systems are "designed, developed, maintained, and controlled" in California—solely by virtue of Workday's headquarters being in California—are insufficient to support a FEHA claim. Accepting Plaintiffs' theory would effectively abrogate the presumption against extraterritoriality for any software company headquartered in California, a result that finds no support in the law.[3] Under Plaintiffs' reasoning, any California technology company that develops software used by customers nationwide would be subject to FEHA for all employment decisions made using that software, anywhere in the country, as to any applicant. This would convert FEHA into a national employment

---

[3] Given the facts and allegations of this case, products liability law on this point is instructive: California law does not apply simply because a product was manufactured in California. *See Ryan v. Clark Equip. Co.*, 268 Cal. App. 2d 679, 682 & n.3 (1969) (the state of manufacture is not necessarily the "crucial state" in a products liability action including because "the central concern of the courts in the cases has been the compensation of the injured rather than control of the conduct of manufacture"), *disapproved of on other grounds by Hurtado v. Superior Ct.*, 11 Cal. 3d 574 (1974); *see also Chen v. L.A. Truck Ctrs., LLC*, 42 Cal. App. 5th 488, 502 (2019) ("California's interest in ensuring that manufacturers bear the financial burden of defective products is also primarily local in character, to protect California residents and persons who are injured in California from having to bear the financial costs of injuries caused by defective products.").

DEFENDANT WORKDAY, INC.'S MOTION TO DISMISS THIRD AMENDED COMPLAINT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

discrimination statute and would "raise serious constitutional concerns." *Campbell*, 42 Cal. App. 4th at 1858-59.

### B. Plaintiff Rowe's Allegations Do Not Establish a Sufficient California Nexus

Plaintiffs' TAC adds new allegations regarding Plaintiff Rowe's residency, asserting that "[b]etween 2020 and April 2021, while residing in California, Ms. Rowe applied to at least seven (7) positions associated with Defendant's Pleasanton, California headquarters." TAC ¶ 73. Plaintiffs presumably add these allegations to buttress the alleged California connection underlying their claims, but specific allegations about a handful of Rowe's job applications do nothing to buoy Plaintiffs' classwide California claims for several reasons. First, residency alone is not enough to establish the extraterritorial application of FEHA absent a sufficient California nexus regarding the location of the injury. *See Rulenz v. Ford Motor Co.*, No. 10-cv-19710-GPC-MDD, 2013 WL 2181241, at *4 (S.D. Cal. May 20, 2013) ("Plaintiff's assertion that she maintained California residency is insufficient to defeat the presumption against extraterritorial application of FEHA."). And if Rowe's former residency is not sufficient to state her own California claim, it is necessarily insufficient to support a classwide claim. In any case, Rowe is currently a Texas resident and the vast majority of her applications outlined in the TAC do not implicate California conduct. TAC ¶¶ 214-215; *Rulenz*, 2013 WL 2181241, at *4 (despite plaintiff's California residency and that one of the applied-to jobs was in California, the district court dismissed the FEHA claims because "the vast majority of Plaintiff's allegations involve acts which occurred" outside of California and the one position in California was "ancillary to the rest of the alleged injurious conduct"). Finally, Rowe alleges she applied to work for Workday as a direct employer in California. Yet, Plaintiffs' theory of liability is premised on an agency theory arising from Workday's software, not Workday's own hiring decisions for its own employees. For all these reasons, Plaintiff Rowe's new allegations are insufficient to invoke FEHA for herself, let alone for a nationwide class of applicants.

### C. The Opt-In Plaintiffs' Allegations Regarding California-Based Applications Are Also Insufficient to Warrant Application of FEHA

Plaintiffs also point to twenty-one opt-in plaintiffs (out of more than 14,000 by Plaintiffs'

13

count) who allegedly applied to jobs in California as grounds for invoking FEHA. TAC ¶¶ 243-244. These allegations are incapable of stating a classwide FEHA claim. Plaintiffs do not identify which California companies those opt-in plaintiffs applied to, whether the positions were located in California, or where the individuals were located when they applied or received application denials. As this Court has already noted, courts routinely dismiss FEHA claims on extraterritoriality grounds where allegations are as sparse and conclusory as they are here. ECF No. 267 at 4; *Paparella v. Plume Design, Inc*., No. 22-CV-01295-WHO, 2022 WL 2915706, at *5 (N.D. Cal. July 25, 2022) (granting motion to dismiss where "the Complaint [was] unclear about the identities of the actors, location of said actors, and existence of any tortious conduct in California" and granting leave to amend only if plaintiff established "(1) who was responsible for firing him; (2) where those individuals were located when they engaged in such conduct; (3) where he was located during the times that the allegedly discriminatory conduct occurred; and (iv) any other facts showing a nexus to California."); *Loza*, 2020 WL 7625480, at *4 ("[I]n the absence of any allegation that any Intel employees at Intel's Santa Clara main office [are] tied to the decision to terminate plaintiff, the complaint's allegation that Intel's principal place of business is in California is of no avail to plaintiff here."). Plaintiffs' vague allegations regarding an infinitesimal number of opt-in plaintiffs' California applications that Plaintiffs do not even allege are representative of the class they seek to represent are insufficient to overcome the presumption against the extraterritorial application of FEHA, and cannot support application of FEHA to a nationwide class of applicants with no connection to California.[4]

## VII.    CONCLUSION

For the foregoing reasons, the Court should strike and/or dismiss Plaintiffs' claims for discrimination against Asian American applicants and applicants with physical disabilities and all allegations in support of those claims. The Court should further strike and/or dismiss Plaintiffs'

---

[4] Indeed, crediting Plaintiffs' allegations about the specific 21 opt-in plaintiffs who allege they applied to at least some California position as adequate to establish a California nexus sufficient to apply California law would eviscerate extraterritorial application standards. With a purported group of over 14,000 opt-in plaintiffs and such a low bar to applying state law, Plaintiffs could conceivably seek to apply every state law of the United States to this case.

unauthorized factual allegations that appear for the first time in the TAC and fall outside the scope of the leave the Court granted. Finally, the Court should dismiss Plaintiffs' FEHA claims with prejudice.

Dated: April 10, 2026                                   ORRICK, HERRINGTON & SUTCLIFFE LLP

By: _____
            JULIE A. TOTTEN
            ERIN M. CONNELL
            KAYLA D. GRUNDY
        ALEXANDRIA R. ELLIOTT
          Attorneys for Defendant
            WORKDAY, INC.

15

DEFENDANT WORKDAY, INC.'S MOTION TO DISMISS THIRD AMENDED COMPLAINT AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT