Lee D. Winston
*Admitted Pro Hac Vice*
lwinston@winstoncooks.com
Roderick T. Cooks
*Admitted Pro Hac Vice*
rcooks@winstoncooks.com
Bethany Neal
*Admitted Pro Hac Vice*
bneal@winstoncooks.com
Winston Cooks, LLC
420 20th Street North, Suite 2200
Birmingham, AL 35203

**Local Counsel:**
Jay Greene, JD, CPA
Greene Estate, Probate, and Elder
Law Firm
447 Sutter Street, Suite 435
San Francisco, CA 94108

Robert L. Wiggins, Jr.
*Admitted Pro Hac Vice*
rwiggins@wigginschilds.com
Ann K. Wiggins
*Admitted Pro Hac Vice*
awiggins@wigginschilds.com
Samuel Fisher, Jr.
*Admitted Pro Hac Vice*
sf@wigginschilds.com
Jennifer Wiggins-Smith
*Admitted Pro Hac Vice*
jsmith@wigginschilds.com
Nicki Leili Lawsen
*Admitted Pro Hac Vice*
nlawsen@wigginschilds.com
Freddrick Malik Moore
*Admitted Pro Hac Vice*
mmoore@wigginschilds.com
Wiggins, Childs, Pantazis, Fisher &
Goldfarb, LLC
The Kress Building,
301 19th Street North
Birmingham, AL 35203

*Attorneys for the Plaintiff and Proposed Class and Collective Members*

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA**

DEREK L. MOBLEY for and on behalf of
himself and other persons similarly situated,
*Plaintiff,*

v.

WORKDAY, INC.,
*Defendant.*

Case No. 3:23-cv-00770-RFL
**PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS
PLAINTIFFS' THIRD AMENDED
COMPLAINT**

Courtroom:    15, 18th Floor
Judge:         Hon. Rita F. Lin

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS'
THIRD AMENDED COMPLAINT**

**TABLE OF CONTENTS**

I.     PLAINTIFF ROWE'S ASIAN AMERICAN ALLEGATIONS
       ARE NEITHER NEW NOR  BEYOND THE SCOPE OF LEAVE
       GRANTED ...................................................................................................................1

II.    PLAINTIFF ROWE'S TITLE VII RACE DISCRIMINATION CLAIM IS
       TIMELY AND WORKDAY FORFEITED ANY SUCH AFFIRMATIVE
       DEFENSE IN ANY EVENT .........................................................................................3

III.   THE TAC'S DISABILITY ALLEGATIONS MERELY SUPPLY
       THE DEFICIENCY THE COURT IDENTIFIED AND ALLOWED
       TO BE REPLED ............................................................................................................5

IV.    THE TAC STATES SUFFICIENT CALIFORNIA-NEXUS FACTS
       TO ESTABLISH PLAINTIFFS' FEHA CLAIMS ON A
       NON-CONCLUSORY BASIS .......................................................................................6

       A.     Plaintiff Rowe's Facts Based On Applications For
              California Jobs Are Not Conclusory.............................................................8

       B.     Plaintiff Rowe Properly Pleads Her FEHA Claims Against
              Workday As A Direct Employer, Not Just An Agent .................................9

       C.     Plaintiff Rowe's 21 Examples Of Fellow Applicants Rejected
              For California-Based Jobs Are Specific and Corroborated ......................14

V.     CONCLUSION...........................................................................................................14

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS'
THIRD AMENDED COMPLAINT**

**TABLE OF AUTHORITIES**

*Cases*

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)........................................................................................................6, 8

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007)............................................................................................................8

*Campbell v. Arco Marine, Inc.,*
    42 Cal. App. 4th 1850 (1996) ............................................................................................8

*Danning v. Lavine,*
    572 F.2d 1386 (9th Cir. 1978) ...........................................................................................4

*Dodd-Owens v. Kyphon, Inc.,*
    2007 WL 420191 (N.D. Cal. 2007) ..................................................................................13

*Ennenga v. Starns,*
    677 F.3d 766 (7th Cir. 2012) .............................................................................................5

*Hill v. Workday, Inc.,*
    773 F. Supp. 3d 779 (2025) .............................................................................................13

*Johnson v. United Cont'l Holdings, Inc.,*
    2013 U.S. Dist. LEXIS 171805, 2013 WL 6354210 (N.D. Cal. Dec. 5, 2013)..........*passim*

*Loza v. Intel Americas, Inc.,*
    2020 WL 7625480 (N.D. Cal. 2020) ................................................................................13

*Major v. Bossard Inc.,*
    2021 U.S. Dist. LEXIS 119395 (D. Ariz. Mar. 12, 2021)...................................................4

*Payan v. Aramark Mgmt. Servs. Ltd. P'ship,*
    495 F.3d 1119 (9th Cir. 2007) .......................................................................................3, 4

*Raines v. U.S. Healthworks Med. Grp.,*
    2024 WL 3850812 (S.D. Cal. Aug. 16, 2024).................................................................11

*Rulenz v. Ford Motor Co.,*
    2013 WL 2181241 (S.D. Cal. 2013).....................................................................12, 13, 14

*Sims v. WorldPac, Inc.,*
    2013 U.S. Dist. LEXIS 24740, 2013 WL 663277 (N.D. Cal. Feb. 22, 2013) ..................12

*Strickland v. GE Capital Retail Bank,*
　　2015 U.S. Dist. LEXIS 57508 (D. Ariz. May 1, 2015) ......................................................3, 4

**Statutes**

Age Discrimination in Employment Act (ADEA) ..................................................................passim

Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq................................................5

California Fair Employment and Housing Act (FEHA),
Cal. Gov't Code § 12940 et seq. ...............................................................................................passim

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq......................................passim

**Rules**

Fed. R. Civ. P. 6(a)(1)(C) .............................................................................................................3

Fed. R. Civ. P. 12(b)(6) ...........................................................................................................7, 14

Fed. R. Civ. P. 12(g)(2) .................................................................................................................4

Fed. R. Civ. P. 12(h)(1) .................................................................................................................4

Fed. R. Civ. P. 12(h)(2) .................................................................................................................4

Fed. R. Civ. P. 12(h)(3) .................................................................................................................4

Fed. R. Civ. P. 15(c) .....................................................................................................................4

Fed. R. Civ. P. 23..........................................................................................................................6

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS'
THIRD AMENDED COMPLAINT**

**PLAINTIFFS' OPPOSITON TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT**

**I.    PLAINTIFF ROWE'S ASIAN AMERICAN ALLEGATIONS ARE NEITHER NEW OR BEYOND THE SCOPE OF LEAVE GRANTED**

Like its predecessors, Workday's fourth motion to dismiss is primarily based on a series of mistakes and misstatements. The Defendant is mistaken in representing  that Plaintiff Rowe has added " a substantively new claim for race discrimination against Asian American applicants." ECF No. 301 at 12; *id.* at 12-13 (arguing "[a]  claim on behalf of an entirely new racial group requiring different factual allegations is substantively a new claim, regardless of whether it is housed within the same cause of action."). The TAC says nothing more on that subject or claim than was pled verbatim in the SAC.  *Compare* ECF No. 231 at ¶¶ 269-279 *with* ECF No. 287 at ¶¶ 283, 289-297; *See also* Exh. A (Table listing numbered allegations in SAC Count 8 FEHA claim that are repeated verbatim in TAC Count 8 FEHA claim).  The TAC's only new allegations are limited to Ms. Rowe's California-based applications and rejections in ¶¶ 284-288 that the Court explicitly granted leave to amend and that are a direct part of her Asian American allegations pled both in the SAC and repeated ***verbatim*** in the TAC. *See* ECF No. 267; ECF No. 301 at 12 (acknowledging  that "the Court's March 6, 2026 Order authorized leave to amend . . . to 'correct[] the deficiencies identified'  in the Court's order dismissing Plaintiffs' FEHA and Plaintiff Hughes's disability claims.") (quoting Order, ECF No. 267 at 6.).  Workday does not cite to even a single sentence or word in the third amended complaint that alleges a new Asian American fact or theory, much less allege an entirely "new" Asian American cause of action. *Id.*   *Every* Asian American fact or theory pled in the third amendment was an integral part of the second amendment. *Id.* Workday's own motion to dismiss the SAC stressed that it "add[ed] *three new FEHA claims, t*wo of which they could have brought at the outset of this case." ECF 206  at 19. Those "three new FEHA claims" in the Second Amended Complaint included the same Asian American facts and claim repeated word-for-word in the current Third

Amended Complaint. *Id.* Workday obviously knew that when it misrepresented that the latter third amendment adds *a substantively new claim* for race discrimination against **Asian American applicants**." ECF No. 301 at 12 (emphasis added). That is simply not true. No new claim based on Asian American race discrimination is added in the TAC. Nor are any new Asian American facts added. *Cf.* ECF No. 287 at ¶¶ 283, 289-297.

Because the Third Amended Complaint does not introduce new Asian American claims or parties and remains within the scope of the Court's Order that did not dismiss such Asian American claims from the Second Amended Complaint, Workday's Rule 15 argument  fails at the outset. The Court granted leave to amend to correct the deficiencies identified in the SAC. Adding Plaintiff Rowe, an Asian American woman, as a named plaintiff was expressly authorized. The Asian American allegations in the TAC are not a new cause of action smuggled into the pleadings; they are the natural consequence of adding Rowe as a representative plaintiff.[1]  Once Rowe is a named plaintiff asserting race discrimination on behalf of similarly situated individuals, her race became a proper basis for the class Title VII and FEHA claim.

Plaintiffs have consistently alleged that Workday's centralized, algorithm-driven screening system produces discriminatory outcomes on the basis of race.  Nothing in the Court's Order limited Plaintiffs 'race claims to a particular subgroup or prohibited Plaintiffs from alleging that the challenged system produces discriminatory effects across protected classes. To the contrary, the

---

[1] In the event that the Court views these allegations as exceeding the scope of leave, Plaintiffs respectfully request leave to amend nunc pro tunc. Good cause exists: the Asian American theory arises from Rowe's own applications and experiences, which became relevant only when Rowe joined the case. Workday suffers no prejudice—it has been litigating this case for over three years and has extensive knowledge of the claims asserted.

2

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT**

Court recognized that this case challenges "algorithm-based applicant screening tools" alleged to discriminate across protected categories.

Plaintiff Rowe's allegations are fully consistent with that framework. They arise from the same system, the same conduct, and the same discriminatory mechanisms that have been at issue from the outset of this litigation. The inclusion of Asian American applicants within the race discrimination claim is not a new claim pulled from thin air—it is a natural extension of an algorithmic discrimination theory premised on a centralized screening system that operates identically across all racial groups.

II.     **PLAINTIFF ROWE'S TITLE VII RACE DISCRIMIATION CLAIM IS TIMELY AND WORKDAY FORFEITED ANY SUCH AFFIRMATIVE DEFENSE IN ANY EVENT**

Workday's statute-of-limitations argument as to Rowe's Title VII race claim is equally mistaken in arguing that her "statute of limitations expired on November 11, 2025." ECF No. 301 at 7. That contention is clearly wrong because November 11, 2025, was Veterans Day, a federal legal holiday, Fed. R. Civ. P. 6(a)(1)(C), that automatically extended the deadline to November 12, 2025, the date that the SAC motion was filed. *See Payan v. Aramark Mgmt. Servs. Ltd. P'ship*, 495 F.3d 1119, 1126 (9th Cir. 2007) (applying Rule 6(a) to extend the 90-day period where it would otherwise expire on a non-court day). Workday ignores the well-known fact that the 90-day filing period under Title VII and the ADEA run from the date of *receipt* of the right-to-sue notice, not its issuance. *See Payan*, 495 F.3d at 1122 ("[W]e measure the start of the limitations period from the date on which a right-to-sue notice letter arrived at the claimant's address of record"); *Strickland v. GE Capital Retail Bank*, 2015 U.S. Dist. LEXIS 57508, at *7 (D. Ariz. May 1, 2015) (statute of limitations is an affirmative defense; defendant bears the burden of proving plaintiff filed beyond the limitations period). Where the actual date of receipt is unknown, the Ninth Circuit applies a rebuttable three-day

3
**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT**

mailing presumption. *Payan*, 495 F.3d at 1125–26. Under that presumption, receipt is presumed on August 16, 2025, and the 90-day deadline falls on November 14, 2025—two days *after* the SAC motion was filed. The filing was timely under any calculation.[2]

Moreover, Workday forfeited any such affirmative defense based on Title VII's 90-day period filing requirement when it chose not to argue that Rowe's claims were time-barred when it moved to dismiss the Second Amended Complaint on January 21, 2026. *See* ECF 237. Every fact Workday now marshals—the August 13, 2025 right-to-sue date, the SAC filing date, the elapsed days—existed and was well known to Workday when it filed the SAC motion without raising that defense. That choice forfeited the defense. It is also too late to raise that ground because Federal Rule of Civil Procedure 12(g)(2) provides that "a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). Rule 12(h)(1) provides that a defense is waived if omitted in the circumstances described in Rule 12(g)(2). The statute of limitations is not among the defenses preserved by Rule 12(h)(2) or (3), which save only failure to state a claim, failure to join a required party, and lack of subject-matter jurisdiction. A limitations defense omitted from a prior Rule 12 motion is therefore waived. *See Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978); *Major v. Bossard Inc.*, 2021 U.S. Dist. LEXIS 119395, at *5–11 (D. Ariz. Mar. 12, 2021) (striking limitations defense where defendant had adequate opportunity to raise it earlier and failed to provide fair notice). The statute of limitations is an affirmative defense that Workday bears the

---

[2] Rowe's allegations of race discrimination under Title VII also relate back to the same AI screening tools, the same platform, and the same discriminatory mechanism as the original complaint. That is sufficient for relation-back purposes under Rule 15(c). In addition, Workday has not moved to dismiss Plaintiffs' parallel FEHA-based race discrimination claims in Counts Seven and Eight because those claims have a considerably longer limitations period than Title VII. It is undisputed that their FEHA limitations period had not expired on November 12, 2025 (ECF No. 231), which was the effective date of the amendment adding those Count Seven and Count Eight FEHA claims to this action. *See* ECF Nos. 198, 230, 231).

4

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT**

burden of proving. *Payan*, 495 F.3d 1119, 1123 (9th Cir. 2007); *Strickland v. GE Capital Retail Bank*, 2015 U.S. Dist. LEXIS 57508, at *7 (D. Ariz. May 1, 2015). Having omitted the defense from its SAC motion, Workday cannot raise it now. As already shown above, the operative facts underlying Workday's Title VII limitations defense were identical in the SAC and the TAC. Rowe's race discrimination allegations appeared in both. The right-to-sue date did not change. The SAC filing date did not change. Workday cannot resurrect a forfeited defense simply because Plaintiffs filed a follow-up amendment on *other* defenses or issues. *See Ennenga v. Starns*, 677 F.3d 766, 773 (7th Cir. 2012) (defendant cannot raise a waived defense against a successive amended complaint where the same defense could have been raised against the prior pleading).[3]

## III. THE TAC'S DISABILITY ALLEGATIONS MERELY SUPPLY THE DEFICIENCY THE COURT IDENTIFIED AND ALLOWED TO BE REPLED

Workday attacks the TAC's physical disability allegations as unauthorized, overlooking that the Court's leave-to-amend order did not preclude Plaintiffs from correcting related deficiencies in existing counts using facts that came to light during discovery. In doing so, it repeats the same mistake in arguing that "the TAC similarly exceeds the bounds of the leave the Court authorized by adding . . . new allegations regarding how Workday's software purportedly discriminates against people with physical disabilities." ECF No. 301 at 14 (citing TAC ¶¶ 114-118). The Court dismissed such allegations in the SAC and allowed Plaintiff Hughes to replead "factual allegations . . . describing how Workday allegedly discriminates against applicants on the basis of physical disabilities, as opposed to mental health disorders or cognitive impairments." ECF No. 267 at 5. The

---

[3]Workday acknowledged in its SAC motion to dismiss that an amended complaint can revive previously forfeited arguments. *See* ECF 237 at 7 n.3 (arguing that Plaintiffs 'decision to amend subjected their ADEA claim to scrutiny "regardless of whether the general claim was previously pled"). That principle operates symmetrically: an amended complaint does not resurrect a defendant's forfeited defenses where the operative facts underlying those defenses were identical in the prior pleading and Workday had every opportunity to raise them.

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT**

leave granted expressly authorized amending the Hughes ADA claim to address those deficiencies in the SAC. The TAC directly corrects them by alleging that Workday's tools identify illness-related absences and health conditions, function as de facto medical examinations, and disproportionately exclude applicants with physical impairments including cancer and asthma—precisely the conditions Hughes has alleged in TAC ¶¶ 57, 59, 114–118.

Workday argues that this may expand the disability subclass definition if and when that Rule 23 issue is eventually reached. But that is for another proceeding, not the current Rule 12 motion to dismiss. The Court's instruction was to correct the deficiency in Hughes's individual disability claim—which required explaining how the system discriminates against physical disabilities necessarily involves alleging the mechanism that causes such physical disability discrimination. The mere fact that such disclosure may also be relevant at the Rule 23 stage of this case is not a legitimate ground for dismissing Ms. Hughes's individual claim.

## IV.   THE TAC STATES SUFFICIENT CALIFORNIA-NEXUS FACTS TO ESTABLISH PLAINTIFFS' FEHA CLAIMS ON A NON-CONCLUSORY BASIS

Workday's central argument is that the TAC's California allegations are "conclusory" because they merely restate that Workday is headquartered in California. That is obviously untrue. *See* ECF No. 287 at ¶¶ 4, 232, 234, 236, 286- 288. A statement is conclusory only when it asserts a legal conclusion without factual support. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). An allegation is not conclusory merely because it requires proof or is unfavorable to the defendant.

The Court's March 6, 2026 Order dismissed the FEHA claims in the Second Amended Complaint ("SAC") because the SAC "lack[ed] any non-conclusory factual allegations of what unlawful conduct took place in California." ECF No. 267 at 4. The Court granted leave to amend specifically to correct that deficiency. The TAC corrects it.

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT**

Unlike the SAC, the TAC alleges: (1) Workday's screening systems "are designed, developed, maintained, and controlled from its California headquarters" at 6110 Stoneridge Mall Road, Pleasanton, California; (2) Workday's algorithmic training datasets are "designed, developed, [and] operated from Workday's California operations and facilities"; (3) those California-based systems "function as the effective decisionmakers" for every applicant nationwide by evaluating applicants, assigning scores, ranking candidates, and effectuating rejection decisions; (4) Plaintiff Rowe, while residing in California between 2020 and April 2021, applied to at least seven positions at Workday's Pleasanton headquarters through the same centralized platform; and (5) more than two dozen named opt-in plaintiffs applied for California positions processed through Workday's California platform. TAC ¶¶ 4, 9, 232, 234, 236, 243–244.

Workday merely repackages a fact-intensive California-nexus question as a pleading deficiency, ignoring that the Third Amended Complaint ("TAC") alleges specific, operationally grounded facts—not mere headquarters location—tying the discriminatory conduct to California. The TAC pleads that Workday's AI-based applicant screening tools—Candidate Skills Match ("CSM"), HiredScore/Spotlight, and Fetch—are designed, trained, developed, maintained, and operated from Workday's Pleasanton, California headquarters; that every scoring, ranking, and rejection decision made for every applicant nationwide flows through that centralized California infrastructure; and that specific named Plaintiffs and dozens of identified opt-in collective members applied for California positions processed through that same system. These are not legal conclusions—they are operational facts about where the discriminatory instrument is built and how it functions. They satisfy the California nexus required to state a FEHA claim.

"[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Johnson v. United Cont'l Holdings, Inc.,* 2013 U.S. Dist. LEXIS 171805 *5 ; 2013 WL 6354210 (N.D. Cal. December 5, 2013). "To survive a motion to dismiss, a complaint must contain

7
**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT**

sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007))**.**

**A**.    **Plaintiff Rowe's Facts Based On Applications For California Jobs Are Not Conclusory.**

Workday argues that Rowe's California residency and seven California applications are insufficient because "residency alone" does not invoke FEHA and because Rowe is now a Texas resident. Neither point disposes of Rowe's claim. The amended complaint does not rely on residency alone. ECF No. 287 at ¶¶ 73-74, 230-254, 266-269, 286- 288.

Rowe applied, while residing in California, for positions at Workday's Pleasanton headquarters, through a platform designed, developed, and **operated** in California, and was screened and rejected by a California-based AI system. TAC ¶¶ 73, 234. The injury—automated rejection by a discriminatory California-built and California-run system, for California-based positions—is California conduct under any reasonable reading of *Campbell v. Arco Marine, Inc.,* 42 Cal. App. 4th 1850 (1996). Campbell held that FEHA does not reach out-of-state conduct injuring non-residents; it does not hold that California conduct injuring a California-resident applicant for a California position falls outside FEHA's reach. The plain words of the Third Amended Complaint establish that:

- The Defendant's "algorithmic training and dataset have been . . . **operated** from Workday's California operations. . . **for jobs in California"** (ECF 287, ¶ 230);

- " [T]hose same AI applicant screening services [are]  provide[d] to its out-of-state customers . . .  **from California"** (*id.* ¶ 230);

- "[T]he discriminatory conduct at issue . . . originates in and is carried out **from California**"(*id.* ¶ 232);

- Workday "failed to implement adequate bias mitigation, . . . **through its centralized, California-based hiring infrastructure.**"(*id.* ¶ 233);

- "[W]hile residing in California, Plaintiff FaithLinh Rowe applied for at least seven (7) positions **tied to or at** Defendant's Pleasanton, **California headquarters** '[and] submitted through and processed by Defendant's automated application platform" (*id.* ¶ 234);

8

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT**

- " [T]he automated screening systems that evaluated Ms. Rowe's applications were . . . **maintained and controlled** by Defendant **from** its headquarters **in Pleasanton, California.**"(*id.* ¶ 240);

- " [T]he discriminatory conduct alleged herein—including the . . . **operation . . .** of Defendant's automated screening system **occurred in** [and] was **directed from . . . this District.**"(*id.* ¶ 241);

- "[N]umerous other individuals applied for Workday jobs located **in California** using the same Workday-hosted application platform **. . .** that operates as the **exclusive gateway** for employment opportunities **in** . . . **California** and throughout the United States."(*id.* ¶ 243);

- " [E]vidence shows that these applications were processed through Workday's centralized application platform, where recruitment . . . and hiring selection decisions are . . . **executed from** Workday's headquarters **in Pleasanton, California**"(*id.* ¶ 245);

- "Workday's algorithmic systems . . . [are] **trained, and governed in California** [and] function as the **effective decisionmakers** by evaluating applicants, assigning scores, ranking candidates, and **effectuating automated rejection decisions.**"(*id.* ¶ 245);

- " [E]ach application was subjected to the same automated . . . screening . . . processes **originating** from Defendant's **California-based operations**" (*id.* ¶ 254).

The foregoing facts are non-conclusory and directly plead the type of facts that the Court found "would be sufficient to establish the requisite nexus to California" once "alleged in the complaint." Order at 4 & n. 4 (ECF No. 267).

### B.    Plaintiff Rowe  Properly Pleads Her FEHA  Claims Against Workday As A Direct Employer, Not Just An Agent.

Workday argues that Plaintiff Rowe and the putative class have no claim against "Workday as a direct employer in California" because "Plaintiffs' theory of liability is **premised on an agency theory** arising from Workday's software, not Workday's own hiring decisions for its own employees." ECF No. 301. The SAC, however, plainly alleges California FEHA claims based on applicants like Plaintiff FaithLinh Rowe who applied for employment as California-based employees of Workday and were rejected on the basis of the same Workday algorithmic recruitment and selection process that is the central claim in this case. *See* e.g. SAC at ¶ 7 ("Plaintiff Faithlinh Rowe is a . . .  a qualified HRIS professional with extensive HR experience [who] has applied . . . **directly to Workday, Inc.,** and has been disproportionately affected by the

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT**

Defendant's proprietary AI/ML products, which have a disparate impact on female and over-40 applicants."; *id.* at ¶¶ 44-46 ("Faithlinh Rowe is an Asian-American female . . . over the age of 40 [who] . . . is a qualified HRIS professional with extensive HR experience [and] . . . has unsuccessfully applied . . . **directly to Workday, Inc.**"); *id.* at ¶¶ 269-270 (Count Eight FEHA allegations that " Representative Plaintiff Faithlinh Rowe is an Asian-American female with many years of Human Resource experience . . . who has submitted numerous applications [to] Workday's platform and has been disproportionately affected by its AI/ML products"); *id.* at ¶¶ 267-268 ("The applications of other Plaintiffs who have opted-in to this case have been similarly processed through that same integrated Workday process, . . . including . . . Faithlinh Rowe and others" based on Workday's AI screening and selection features have disparate impact against applicants 40 or more years old at a statistically significant rate of greater than three standard deviations."). Those allegations regarding Plaintiff Rowe's FEHA claims in Count Eight were the basis of the Court's Order dismissing such claims with leave to replead to add "allegations of what unlawful conduct took place in California." Order at 4 & n. 4 (ECF No. 267) (finding that although the SAC pled that Plaintiff Rowe "'applied directly to Workday," it pled "no allegations of what unlawful conduct took place in California." *Id* at n. 4).

The TAC complies with that order by adding the following factual allegations in addition to those quoted above (¶¶ 230-254) — that "[b]eginning as early as 2020 and continuing through 2025, Ms. Rowe applied for . . . positions through hiring systems powered by Defendant Workday . . . for which she met or exceeded the stated qualifications, [including] . . . positions directly with Workday itself."(ECF 287, ¶ 72); that "while residing in California, Ms. Rowe applied to at least seven (7) positions associated with Defendant's Pleasanton, California headquarters . . . [which she] submitted through Defendant's centralized Workday platform" and that were "processed through the same automated system" (*id.* ¶ 73); that she "received automated . . . rejections through the Workday platform" that "were issued without any individualized feedback, interview opportunity, or indication that her applications were meaningfully reviewed by a human decisionmaker."(*id.* ¶ 74); that her "near-instantaneous rejection . . . [showed] that her application

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS'
THIRD AMENDED COMPLAINT**

was screened out by an automated system " (*id.* ¶ 78); that "[a]cross her applications submitted through Workday systems, Ms. Rowe experienced a consistent pattern of rapid, uniform rejections without explanation, feedback, or any indication of individualized human review"¶ 81**)** and that "[b]ased  on her professional experience . . .  . . such immediate and uniform rejections [were] consistent with automated screening, scoring, or ranking systems applied at or near the point of application submission." (*id.* ¶ 82).

When Workday screens applicants for its own California-based jobs using its own system, it is both the vendor and the employer. TAC ¶ 9 ("Plaintiff Rowe, an Asian American woman over the age of forty and a qualified professional, likewise experienced repeated and often immediate rejections through Workday's system, **including for positions associated with Defendant itself.**").  Given that that the TAC pleads viable "direct employer" claims against Workday that are not limited to "acts as an agent of its customers" (ECF No. 301), it is not liable "only . . . to the same extent as those customers". ECF No. 301 (citing *Raines v. U.S. Healthworks Med. Grp.*, 2024 WL 3850812, at *2 (S.D. Cal. Aug. 16, 2024) (recognizing that a '"business entity acting as an agent of an employer 'can be held directly liable under FEHA to the same extent as the referring employer").

Workday tries to strike or dismiss those seven California jobs that Plaintiff Rowe sought and was denied while she was a resident of California merely because she **subsequently** moved to Texas. Nothing in Title VII, FEHA or the ADEA supports that notion. The California jobs and discriminatory selection procedures operated in California in 2020-2021 are actionable under FEHA in their own right regardless of whether Rowe or other class members were *later* subjected to those same California-based practices when they sought *other* jobs while they were residents of *other* states in later years. A plaintiff like Faithlinh Rowe has standing to bring a FEHA claim for *each* California-related job she is denied standing alone. Workday has no basis for arguing that FEHA only allows her to challenge her  discriminatory denial of the seven California jobs she sought in 2020-2021 if they are the "majority" of the jobs she was denied once she moved to Texas. The passage Workday

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS'
THIRD AMENDED COMPLAINT**

cites from *Rulenz v. Ford Motor Co.,* 2013 WL 2181241 (S.D. Cal. 2013), does not stand for or support that proposition. *See* ECF No. 301 (arguing that *Rulenz* disallowed a FEHA claim where the majority of the alleged discrimination occurred outside California and only a single "ancillary" incident had occurred in California (and never pursued at the time)). "FEHA claims, alleged on behalf of plaintiffs domiciled in states other than California are not subject to dismissal, because, in each instance, the alleged failure to promote pertains to a position located in California." *Johnson v. United Cont'l Holdings, Inc.* 2013 U.S. Dist. LEXIS 171805 *31; 2013 WL 6354210 (N.D. Cal. December 5, 2013); *id.* at *31 (dismissing FEHA claims that "do not allege facts to support a finding that defendants' decision not to promote them was made in California."); *see also Sims v. WorldPac, Inc.,* 2013 U.S. Dist. LEXIS 24740, 2013 WL 663277 (N.D. Cal. Feb. 22, 2013) (holding that out-of-state residents' FEHA claim was actionable based "on the fact that defendant's headquarters are located in California," that "the tortious conduct took place in California," and that "the individuals who engaged in the alleged discriminatory and retaliatory conduct" did so in California).

The TAC does not allege only that Workday is a California company. It claims that California's conduct directly harms applicants for both California-based and out-of-state jobs. Specifically, Workday's AI tools are trained, governed, and operated from Pleasanton, California. Consequently, each scoring and rejection decision is **generated** by this California infrastructure, and the discriminatory output of this infrastructure is applied to every applicant, regardless of their location. TAC ¶¶ 4, 232, 234, 236.

These allegations supply exactly what the Court found missing in the SAC: a factual account of "what unlawful conduct took place in California." ECF No. 267 at 4. The unlawful conduct is the training, deployment, and operation of a discriminatory AI system **in and from California.** It is not merely that a corporate office sits in California—it is that the instrument of discrimination is built and run there.

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT**

Workday's reliance on *Loza v. Intel Americas, Inc.,* 2020 WL 7625480 (N.D. Cal. 2020), and *Dodd-Owens v. Kyphon, Inc.,* 2007 WL 420191 (N.D. Cal. 2007), is misplaced. Those cases involved employers whose discriminatory employment decisions were made by personnel located outside California; the California headquarters played no operative role in the challenged decisions. Here, Workday's California headquarters is the origin of the discriminatory mechanism itself. The distinction is not formalistic: a personnel decision made by a manager in Ohio does not become a California act because the company's HR manual was written in California. But an AI screening system that is trained, weighted, validated, and deployed by engineers in Pleasanton—and that generates every applicant score and rejection decision through that California infrastructure—is California conduct, regardless of where the applicant sits when the rejection arrives.

*Hill v. Workday, Inc.,* 773 F. Supp. 3d 779 (2025), which Workday cites for the proposition that failure to plead extraterritoriality is a merits failure, actually supports the Plaintiffs. Hill dismissed a FEHA claim where the plaintiff alleged nothing beyond Workday's state of incorporation and headquarters. The TAC alleges substantially more: operational specifics about training, development, and execution of the discriminatory system from California. That is the distinction Hill requires.

Workday's reliance on *Rulenz v. Ford Motor Co.,* 2013 WL 2181241 (S.D. Cal. 2013), is similarly distinguishable. *Rulenz* dismissed a FEHA claim where only one of many positions was in California and the bulk of the alleged discrimination occurred outside California. Here, Rowe applied to seven positions at Workday's own Pleasanton headquarters, and the discriminatory instrument is entirely California-based. Such California conduct is not ancillary—it is central. "FEHA claims, alleged on behalf of plaintiffs domiciled in states other than California are not subject to dismissal, because, in each instance, the alleged failure to promote pertains to a position located in California." *Johnson v. United Cont'l Holdings, Inc.* 2013 U.S. Dist. LEXIS 171805 *31; 2013 WL 6354210

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS'
THIRD AMENDED COMPLAINT**

(N.D. Cal. December 5, 2013); *id.* at *31 (dismissing FEHA claims that "do not allege facts to support a finding that defendants' decision not to promote them was made in California."). On that basis, the Court rejected reliance on *Rulenz, supra,* because the allegations that the plaintiff "previously had been denied a promotion in California was found to be  "ancillary" to her current claim, while "[h]ere by contrast, plaintiffs' claims that they did not receive promotions in California are not ancillary to their claims, but, rather, constitute the claims themselves." *Johnson, supra* at *31–32, n.15;).

**C.     Plaintiff Rowe's 21 Examples Of Fellow Applicants  Rejected For California-Based Jobs Are Specific and Corroborated.**

Workday argues that the TAC's allegations regarding 21 fellow opt-in plaintiffs who applied to California jobs are too vague. The TAC, however, identifies more than two dozen opt-in plaintiffs by name and alleges their applications were processed through Workday's centralized California platform. TAC ¶¶ 243–244, 3066–3067. At the pleading stage, naming specific collective members who applied for California positions processed through Workday's California infrastructure is sufficient to put Workday on notice and to make the FEHA claim plausible. Iqbal, 556 U.S. at 678.

Further discovery will establish the specific positions, California-based employers, and application dates for each. That additional factual detail is a matter of proof, not pleading sufficiency. Requiring Plaintiffs at the pleading stage to identify not only the opt-in plaintiffs but also the specific California companies, job locations, and application circumstances would impose a summary-judgment standard on a Rule 12(b)(6) motion.

**V.     CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Workday's Motion to Dismiss the Third Amended Complaint in its entirety.  Workday's motion rests on mischaracterizations. The Asian American allegations in the TAC are not new — they appear verbatim from the Second Amended Complaint and fall within the scope of the Court's leave to

amend. Workday's statute-of-limitations defense as to Plaintiff Rowe's Title VII claim fails on the merits and is independently barred because Workday forfeited it by omitting it from its motion to dismiss the SAC. The TAC's disability allegations do precisely what the Court authorized by correcting the identified deficiency. And the TAC's FEHA allegations are not conclusory — they plead specific, operationally grounded facts establishing that Workday's discriminatory screening system is designed, trained, deployed, and controlled from its Pleasanton, California headquarters, and that Plaintiff Rowe and dozens of named opt-in plaintiffs applied for California positions processed through that same system.

The TAC satisfies the pleading standards of *Iqbal* and *Twombly*. Workday's remaining arguments present factual disputes not properly resolved at the Rule 12(b)(6) stage. The motion should be denied.

**Submitted: April 24, 2026.**

Respectfully submitted,

s/Roderick T. Cooks
Lee D. Winston (ASB: 6407O72L)
*Admitted pro hac vice*
lwinston@winstoncooks.com
Roderick T. Cooks (ASB: 5819O78R)
*Admitted Pro Hac Vice*
rcooks@winstoncooks.com
Bethany Mae Logan (ASB: 1360X15Z)
*Admitted Pro Hac Vice*
bneal@winstoncooks.com
Winston Cooks, LLC
420 20th Street North, Suite 2200
Birmingham, Alabama 35203
Telephone: (205) 502-0970
Facsimile: (205) 278-5876

s/Robert L. Wiggins, Jr.
Robert L. Wiggins, Jr. (ASB: 1754G63R)
*Admitted Pro Hac Vice*
rwiggins@wigginschilds.com
Ann K. Wiggins (ASB: 7006i61a)
*Admitted Pro Hac Vice*
awiggins@wigginschilds.com
Samuel Fisher (ASB: 2675E68S)
*Admitted Pro Hac Vice*
sf@wgginschilds.com
Jennifer Wiggins Smith (ASB:9622E53S)
*Admitted Pro Hac Vice*
jsmith@wigginschilds.com
Nicki L. Lawsen (ASB: 2602C00K)
*Admitted Pro Hac Vice*
nlawsen@wigginschilds.com
Freddrick M. Moore (ASB: 7952L20o)
mmoore@wiggins childs.com
*Admitted Pro Hac Vice*
Wiggins Childs Pantazis Fisher and
Goldfarb
301 North 19th Street

15
**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS'
THIRD AMENDED COMPLAINT**

Birmingham, Alabama 35203
Telephone: (205) 314-0500
Facsimile: 205) 254-1500

**Local counsel:**

Jay Greene, JD, CPA
greenattorney@gmail.com
Greene Estate, Probate, and Elder Law Firm
447 Sutter Street, Suite 435
San Francisco, CA 94108
Telephone: (415) 905-0215

## CERTIFICATE OF SERVICE

I hereby certify that on  Apirl 24, 2026. I electronically filed the foregoing document with the United States District Court for the Northern District of California by using the CM/ECF system.  I certify that the following parties or their counsel of record are registered as ECF Filers and that they will be served by the CM/ECF system:

Julie Ann Totten       Jtotten@orrick.com, jponce@orrick.com
Erin M. Connell       econnell@orrick.com
Kyla Delgado Grundy  kgrundy@ orrick.com
Alexandria R. Elliott   aelliott@orrick.com

*s/Roderick T. Cooks*
Of Counsel

16
**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT**