JULIE A. TOTTEN (STATE BAR NO. 166470)
jatotten@orrick.com
ERIN M. CONNELL (STATE BAR NO. 223355)
econnell@orrick.com
KAYLA D. GRUNDY (STATE BAR NO. 300513)
kgrundy@orrick.com
ALEXANDRIA R. ELLIOTT (STATE BAR NO. 320293)
aelliott@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:    (415) 773-5700
Facsimile:    (415) 773-5759

Attorneys for Defendant
WORKDAY, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEREK L. MOBLEY, for and on behalf of himself and other persons similarly situated;<br><br>Plaintiff,<br><br>v.<br><br>WORKDAY, INC.<br><br>Defendant. | Case No. 3:23-cv-00770-RFL<br><br>**DEFENDANT WORKDAY, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS THIRD AMENDED COMPLAINT**<br><br>Courtroom:    15, 18th Floor<br>Judge:          Hon. Rita F. Lin<br><br>Second Amended Complaint: Jan. 7, 2026 |

# **TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ................................................................................................. 1

II.    PLAINTIFFS' NEW RACE DISCRIMINATION CLAIM ON
       BEHALF OF ASIAN AMERICANS MUST BE STRICKEN OR
       DISMISSED ......................................................................................................... 2

       A.   Plaintiffs' Race Discrimination Claim for Asian American Applicants is New,
            Exceeds the Scope of Leave Granted by the Court, and Must Be Stricken ........... 2

       B.   Plaintiffs' Asian American Discrimination Claim is Untimely .............................. 4

III.   PLAINTIFFS' NEW DISABILITY CLAIM MUST BE STRICKEN .............................. 5

IV.    PLAINTIFFS' OTHER NEW FACTUAL ALLEGATIONS MUST BE STRICKEN ...... 6

V.     PLAINTIFFS' FEHA CLAIMS MUST BE DISMISSED ................................................. 6

       A.   Plaintiffs' "Designed, Developed, and Operated in California" Allegations
            are Conclusory and Repackage a Theory the Court has Already Rejected ............. 7

       B.   Plaintiffs Cannot Change the Theory of Liability Against Workday
            After Three Years of Litigation Absent Good Cause and Leave of Court .............. 8

       C.   Plaintiffs' Application of FEHA Would Raise Serious Constitutional
            Concerns ................................................................................................................. 8

       D.   Products Liability Principles Counsel Against the Application of FEHA .............. 9

       E.   Rowe's Allegations Do Not Salvage a Nationwide FEHA Claim .......................... 9

       F.   The Twenty-One Opt-In Plaintiffs Cannot Sustain a Nationwide FEHA Class .. 10

VI.    LEAVE TO AMEND SHOULD BE DENIED ............................................................... 10

VII.   CONCLUSION ................................................................................................................. 10

# TABLE OF AUTHORITITES

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................................ 7

*Danning v. Lavine*,
   572 F.2d 1386 (9th Cir. 1978) ............................................................................................... 5

*Dodd-Owens v. Kyphon, Inc.*,
   No. C 06-3988 JF (HRL), 2007 WL 420191 (N.D. Cal. Feb. 5, 2007) ................................... 8

*Rulenz v. Ford Motor Co.*,
   No. 10-cv-19710-GPC-MDD, 2013 WL 2181241 (S.D. Cal. May 20, 2013) ................... 9, 10

*Sanders v. City of Phoenix*,
   No. CV06-1644-PHX-GMS, 2008 WL 5001624 (D. Ariz. Nov. 24, 2008) ............................ 5

*Walsh v. Nevada Dep't of Hum. Res.*,
   471 F.3d 1033 (9th Cir. 2006) ................................................................................................ 6

**California Cases**

*Campbell v. Arco Marine, Inc.*,
   42 Cal. App. 4th 1850 (1996) ................................................................................................. 8

*Chen v. L.A. Truck Ctrs., LLC*,
   42 Cal. App. 5th 488 (2019) ................................................................................................... 9

*Ryan v. Clark Equip. Co.*,
   268 Cal. App. 2d 679 (1969) *disapproved of on other grounds by Hurtado v.*
   *Super. Ct.*, 11 Cal. 3d 574 (1974) ......................................................................................... 9

**Federal Rules of Civil Procedure**

Fed. R. Civ. P. 12 ....................................................................................................................... 1, 4

**Regulations**

Cal. Code Regs., Title 2 § 11008(d)(1)(C) ................................................................................... 8

DEFENDANT WORKDAY, INC.'S REPLY IN SUPPORT OF
MOTION TO DISMISS THIRD AMENDED COMPLAINT - 3:23-CV-00770-RFL

## I.    INTRODUCTION

Plaintiffs' Opposition confirms, rather than dispels, the central premise of Workday's Motion: the Third Amended Complaint ("TAC") is an opportunistic rewrite that exceeds the narrow leave the Court granted on March 6, 2026, and that still fails—after two iterations and more than three years of litigation—to plead a viable nationwide FEHA claim.

*First*, Plaintiffs' insistence that the TAC's Asian American race discrimination claim was already pled "verbatim" in the Second Amended Complaint ("SAC") is not only wrong, it is sanctionable. The SAC contained no race discrimination claim on behalf of Plaintiff Rowe or other Asian American applicants; the only race discrimination claim ever pled is on behalf of African American applicants. Nor did Plaintiffs characterize their SAC as seeking to bring a race discrimination claim on behalf of Plaintiff Rowe or other Asian American applicants when they sought leave to amend. That they do so now exceeds the bounds of their leave, and their stretched argument violates their duty of candor to this Court. Moreover, Plaintiffs' argument that Workday forfeited its statute of limitations argument also is wrong. Fed. R. Civ. P. Rule 12(g)(2) does not require a defendant to anticipate and challenge a claim that a plaintiff has not yet pled. The SAC did not plead a discrimination claim against Asian Americans, and Workday could not have moved to dismiss a claim that had not been asserted. *Second*, Plaintiffs do not seriously contest that the TAC's physical-disability theory is materially broader than the mental-and-cognitive-impairment theory the Court permitted Hughes to replead. They entirely rewrite their class-definition and the facts but argue these revisions merely "correct the deficiency" in Hughes's individual disability claim. Notwithstanding Plaintiffs' mischaracterization of these material changes, their amendments to the disability claim plainly exceed the scope of the leave granted by the Court. *Third*, on FEHA, Plaintiffs string together a series of actions ("designed, developed, maintained, and controlled") but still fail to plead any non-conclusory facts about what that means, let alone do they identify who in California made what decision, when, or how. The Court already has rejected this precise theory once. Plaintiffs' reliance on agency, Rowe's residency in 2020-2021, and on twenty-one unidentified opt-in applications does not, and cannot, bridge that gap.

For these reasons, Plaintiffs' race discrimination claims on behalf of Asian Americans

1

should be struck or dismissed, the disability discrimination claims on behalf of individuals with physical disabilities should be struck, and the FEHA claims should be dismissed with prejudice.

II.    **PLAINTIFFS' NEW RACE DISCRIMINATION CLAIM ON BEHALF OF ASIAN AMERICANS MUST BE STRICKEN OR DISMISSED**

    A.    **Plaintiffs' Race Discrimination Claim for Asian American Applicants is New, Exceeds the Scope of Leave Granted by the Court, and Must Be Stricken**

Plaintiffs' lead argument is a blatant factual misrepresentation: that the TAC's Asian American allegations "say[] nothing more on that subject or claim than was pled verbatim in the SAC." Opp. at 1. The race discrimination claims within the SAC were pled exclusively on behalf of African American applicants. *See* SAC ¶¶ 153-187; 269-279. No claim in the SAC asserted a race claim on behalf of Asian American applicants, no SAC paragraph identified Asian Americans as a protected subclass, and no SAC factual allegation purported to describe how Workday's tools allegedly disadvantage Asian American applicants in particular. The TAC, by contrast, repeatedly and substantively expands the race claim to encompass Asian Americans.

The Court need do no more than a keyword search for "Asian" across the two complaints. This search will return only five mentions of "Asian" within the SAC (four of which only describe Rowe as "an Asian American female") compared to 19 mentions within the TAC (which repeatedly state that Workday's tools discriminate against Asian Americans). *Compare, e.g.*, SAC at 1 (Plaintiffs sue for "a pattern or practice of illegal discrimination on the basis of race (African American") *with* TAC at 1 (Plaintiffs sue for a "pattern or practice of discrimination on the basis of race—including African American and Asian American applicants"); SAC at 3 (Workday's system "is much more likely to deny applicants who are African-American, suffer from disabilities and/or are over the age of 40") *with* TAC at 4 (Defendant's system "disproportionately excludes applicants who are African American, Asian-American, female, over the age of forty, and/or disabled"); SAC ¶ 11 (bringing claims on behalf of African American, female, disabled, or over 40 applicants) *with* TAC ¶ 17 (purporting to bring claims on behalf of African American, Asian American, female, disabled, or over 40 applicants); SAC ¶ 147 (alleging that Workday's tools discriminate based on "race (African-American)") *with* TAC ¶ 140 (alleging that Workday's screening tools "cause a disparate impact on African-American, Asian-American, and female

2

applicants in violation of Title VII"); SAC ¶¶ 153-187 (bringing Title VII race and disability discrimination claims on behalf of Mobley, Hughes, and Johnson-Rocha and stating Workday tools have "a disparate impact against African-Americans"); *with* TAC ¶¶ 145-187 (bringing Title VII race, gender, and disability discrimination claims on behalf of Mobley, Hughes, Johnson-Rocha, and Rowe and alleging Rowe "is a member of a protected class based on race and sex."); *see also* Grundy Decl. to Mot. ¶ 2, Ex. A. Plaintiffs' sole reference in the SAC to discrimination against Asian Americans says Rowe has "been disproportionately affected by [Workday's] AI/ML products, which have a disparate impact on Asian, female, and over the age of 40 applicants." SAC ¶ 270. A single passing reference is insufficient to state a claim, particularly where—throughout the SAC—the race claim is expressly defined as relating to discrimination against African Americans. *See Sharda v. Adventist Health*, No. 2:25-CV-2253 DAD AC PS, 2025 WL 2709975, at *2 (E.D. Cal. Sept. 23, 2025) ("conclusory statement that plaintiff was discriminated against based on his race is not enough.").

While Plaintiffs suggest that Workday knew the SAC brought a race claim on behalf of Rowe and other Asian Americans, this too misrepresents the prior pleadings in this action. Citing to Workday's opposition to Plaintiffs' motion to amend, Plaintiffs say "Workday's own motion to dismiss the SAC stressed that it "add[ed] *three new FEHA claims*, two of which [Plaintiffs] could have brought at the outset of this case." Opp. at 1. Workday's opposition refers to the FEHA claims for (1) discrimination against African American applicants, (2) discrimination against applicants 40 or older, and (3) discrimination against women. Workday never contemplated that the SAC brought a claim on behalf of Asian Americans because it did not.

Finally, Plaintiffs suggest that "[a]dding Plaintiff Rowe, an Asian American woman, as a named Plaintiff was expressly authorized. The Asian American allegations in the TAC are not a new cause of action smuggled into the pleadings; they are the natural consequence of adding Rowe as a representative plaintiff." Opp. at 2. This too, is false. Plaintiffs' argument would mean that their case also includes claims on behalf of white applicants and men. *See* TAC ¶ 5 ("Derek L. Mobley is an African American male over the age of forty"); *id.* ¶ 53 ("Ms. Jill E. Hughes is a white female over the age of forty"). It does not, and simply adding plaintiffs with those demographics

3

does not transform a sex discrimination claim on behalf of women into one on behalf of men, or race discrimination claim on behalf of African Americans to one on behalf of Caucasian Americans.

At bottom, Plaintiffs' attempt to mislead the Court about the scope of allegations within the Second Amended Complaint violates their ethical duties and professional responsibility and should be squarely rejected, if not admonished. Plaintiffs did not plead a claim on behalf of Asian Americans in their SAC and their attempt to do so now violates the Court's direction that the TAC could not "add new claims or parties without leave of the Court or stipulation by the parties," ECF No. 267 at 6. Plaintiffs' claim for discrimination against Asian Americans must be struck.

**B.** **Plaintiffs' Asian American Discrimination Claim is Untimely**

Plaintiffs' claim for discrimination on behalf of Asian Americans must be dismissed for the separate and independent reason that it is untimely. Plaintiffs allege that the SAC was filed within 90-days after receiving a right-to-sue, accounting for Veteran's Day and the "mailing presumption"—and therefore, Rowe's race discrimination claim is timely. Opp. at 3-4. But the relevant question is not whether the SAC was filed within 90 days of receipt of Rowe's right-to-sue notice; it is whether an Asian American race discrimination claim was asserted within that window. It was not. As described above, the SAC—filed on November 12, 2025—pled no such claim. The first appearance of an Asian American race discrimination cause of action is in the TAC, filed nearly four months later, on March 27, 2026. By that date, even under Plaintiffs' calculation, the 90-day Title VII window had long since closed. *See* Opp. at 4 (stating that the 90-day deadline fell on November 14, 2025). Plaintiffs' Asian American race discrimination claim is untimely.

Plaintiffs spend several pages contending that Workday "forfeited" its statute-of-limitations defense by not raising it in their motion to dismiss the SAC, Opp. at 4-5, but this argument also fails. Rule 12(g)(2) bars only successive Rule 12 motions raising "a defense or objection that was available to the party but *omitted* from its earlier motion." Fed. R. Civ. P. 12(g)(2) (emphasis added). Workday could not have moved to dismiss an Asian American race discrimination claim in its motion to dismiss the SAC because, as described above, no such claim existed. The defense became "available" only when Plaintiffs introduced the new claim in the TAC. Plaintiffs' cited authorities do not change this conclusion, and some citations are nothing but more

4

misrepresentations to this Court. For example, Plaintiffs cite *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978) for the proposition that "a limitations defense omitted from a prior Rule 12 motion is therefore waived." Opp. at 4. *Danning* says ***nothing*** about waiver of Rule 12 defenses. Even the cases that stand for the proposition cited do not help Plaintiffs because, in each case, defendants raised defenses that could have been raised earlier. Workday could not raise a statute-of-limitations defense to a claim not yet pled and therefore has not waived or forfeited this defense.

Finally, Plaintiffs' footnote suggestion that the Asian American claim "relate[s] back" to the original complaint under Rule 15(c) should be rejected as waived. *See, e.g.*, Opp. at 4 n. 2. Even if the Court considered it, however, as Workday's Motion explained, relation-back requires that the original pleading gave the defendant fair notice of the conduct, transaction, or occurrence at issue. *Sanders v. City of Phoenix*, No. CV06-1644-PHX-GMS, 2008 WL 5001624, at *3-4 (D. Ariz. Nov. 24, 2008). As described throughout Workday's motion and this Reply, the SAC did not put Workday on notice that Plaintiffs raised discrimination claims on behalf of Asian Americans. Plaintiffs' invocation that the new race discrimination claims arise from the "the same AI screening tools" collapses the relation-back inquiry into a generality that no court has accepted. Opp. at 4 n. 2. Plaintiffs' race discrimination claim on behalf of Asian Americans must be dismissed.

## III.    PLAINTIFFS' NEW DISABILITY CLAIM MUST BE STRICKEN

Plaintiffs do not dispute that the TAC fundamentally transforms the disability discrimination claim in this case. They do not dispute that they added scores of new allegations that Workday's tools can identify and screen out applicants based on "illness-related absences, health conditions, or limitations" and that these tools function as "de facto medical examinations or disability-related inquiries" that disproportionately exclude "individuals with disabilities" broadly, including those with physical impairments. TAC ¶ 118. And they do not dispute that the TAC redefines the proposed disability subclass from applicants with "a diagnosed mental health or cognitive condition" to encompass all applicants who have "a disability or medical condition affecting mental, cognitive, or physical functioning." *Compare* SAC ¶ 11 *with* TAC ¶ 17.

Instead, to justify these wholesale changes, Plaintiffs suggest that "the Court's leave-to-amend order did not preclude Plaintiffs from correcting related deficiencies in existing counts using

5

facts that came to light in discovery." Opp. at 5. As an initial matter, Plaintiffs are less than forthright in suggesting they've learned any new facts since they filed their SAC. They've conducted no additional discovery and have not learned anything new that justifies a comprehensive rewrite of their disability discrimination claim.

More importantly, the Court did not authorize Plaintiffs to rewrite their complaint to correct "related" deficiencies with new facts. The Court invited a Rule 11–compliant pleading of how Hughes's individual physical disability claim fit within the existing framework of the complaint— it did not authorize Plaintiffs to redraw the boundaries of the putative class or to assert a new class-wide physical disability theory. Plaintiffs' suggestion that any class-definition concern is a "Rule 23 issue" for "another proceeding," Opp. at 6, misses the point. The pertinent question is not whether the redefined class would ultimately be certifiable; it is whether Plaintiffs were authorized to redefine it in the TAC at all. They were not. The Court did not grant leave to expand the proposed disability class, and Plaintiffs neither sought leave nor satisfied Rule 16's good-cause standard for doing so years after the deadline to amend the pleadings expired.

The Court should reject Plaintiffs' efforts to broaden the scope of the leave granted by the Court, to rewrite their theory of disability discrimination, and bootstrap a new class to Hughes's individual disability discrimination claim. Plaintiffs seek to circumvent Rules 15(a)(2) and 16, and the Court should not permit them to do so.

## IV.    PLAINTIFFS' OTHER NEW FACTUAL ALLEGATIONS MUST BE STRICKEN

Plaintiffs do not meaningfully respond to Workday's showing that the TAC overhauls factual allegations untethered to the amendments the Court permitted. *See* Mot. at 9; Grundy Decl. to Mot. ¶ 2, Ex. A. Plaintiffs' silence waives any argument the new factual allegations should be permitted, and the unauthorized amendments should be stricken. *Walsh v. Nevada Dep't of Hum. Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006) (finding a plaintiff's failure to respond to arguments in opposition to a motion to dismiss constitutes a concession that the claims should be dismissed).

## V.    PLAINTIFFS' FEHA CLAIMS MUST BE DISMISSED

Plaintiffs' FEHA opposition consists largely of a recitation of conclusory actions— "designed," "developed," "maintained," "controlled," "trained," "deployed," "operated,"

"governed"—repeated across various paragraphs of the TAC. Opp. at 6-13. But the Court's March 6, 2026 Order put Plaintiffs on notice that conclusory recitations of California-related verbs are not enough. ECF No. 267 at 4. Plaintiffs were directed to plead "non-conclusory factual allegations of what unlawful conduct took place in California." *Id.* The TAC still does not.

**A.**    **Plaintiffs' "Designed, Developed, and Operated in California" Allegations are Conclusory and Repackage a Theory the Court has Already Rejected**

Plaintiffs concede that their core extraterritoriality theory turns on the allegation that Workday's screening tools are "designed, developed, maintained, and controlled" from California. Opp. at 7. While Plaintiffs also concede that extraterritoriality is a "fact-intensive California nexus question," Opp. at 7, they nonetheless plead almost no factual allegations to establish that nexus. By failing to do so, they do not correct the deficiency the Court noted when it previously dismissed Plaintiffs' FEHA claim. *See* ECF No. 267 at 4 ("[T]he SAC lacks any non-conclusory factual allegations of what unlawful conduct took place in California."). The TAC still does not identify *which* Workday products were developed in California, saving those details for their Opposition. *Compare, e.g.*, TAC ¶ 227 ("Defendant's applicant-screening systems—including its artificial intelligence and machine-learning tools used to evaluate, rank, and reject applicants—are designed, developed, maintained, and controlled from its California headquarters") *with* Opp. at 7 ("The TAC pleads that Workday's AI-based applicant screening tools—Candidate Skills Match ("CSM"), HiredScore/Spotlight, and Fetch—are designed, trained, developed, maintained, and operated from Workday's Pleasanton, California headquarters"). Plaintiffs' more vague allegations in the TAC are unsurprising: consistent with Rule 11, Plaintiffs *cannot* allege that the products at issue were developed, maintained, and controlled from California. The TAC also does not identify any California-based engineer, manager, or decisionmaker associated with development, implementation, or application of the challenged tools and it does not identify when any such development occurred. Mot. at 11-12. *Iqbal* does not permit a complaint to substitute a list of operative-sounding verbs for "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). This Court rejected Plaintiffs' conclusory pleading before, and it should do so again here.

**B.      Plaintiffs Cannot Change the Theory of Liability Against Workday After Three Years of Litigation Absent Good Cause and Leave of Court**

Plaintiffs ignore Workday's argument that, even if they properly pled that Workday's software was designed in California, that fact does not transform every out-of-state employment decision made by out-of-state employers into conduct occurring in California. *See Dodd-Owens v. Kyphon, Inc.*, No. C 06-3988 JF (HRL), 2007 WL 420191, at \*3 (N.D. Cal. Feb. 5, 2007) (holding that "blanket allegation" that defendant employer "disseminated policies from within California" was not sufficient to state a FEHA claim). Instead, Plaintiffs say the TAC pleads "viable 'direct employer' claims against Workday that are not limited to 'acts as an agent of its customers.'" Opp. at 11. Plaintiffs cannot transform their theory of liability against Workday after more than three years of litigation absent good cause (there is none) and leave of court. This case is about Workday's actions as a purported agent of its customers—not its own actions as an employer. The Court should squarely reject Plaintiffs' new theory, which Plaintiffs never before pled or pursued.

**C.      Plaintiffs' Application of FEHA Would Raise Serious Constitutional Concerns**

Plaintiffs also do not respond to Workday's contention that accepting Plaintiffs' theory would effectively abrogate the presumption against extraterritoriality for any software company headquartered in California, a result that finds no support in the law. Under Plaintiffs' reasoning, any California technology company that develops software used by customers nationwide would be subject to FEHA for all employment decisions made using that software, anywhere in the country, as to any applicant because "every applicant score and rejection decision" goes through a "California infrastructure." Opp. at 13. This would convert FEHA into a national employment discrimination statute and would "raise serious constitutional concerns." *Campbell v. Arco Marine*, 42 Cal. App. 4th 1850, 1858-59 (1996). California lawmakers never contemplated such an extension of the law. *See* Cal. Code Regs., tit. 2, § 11008(d)(1)(C) ("[E]mployees located outside of California are not themselves covered by the protections of [FEHA] if the allegedly unlawful conduct did not occur in California, or the allegedly unlawful conduct was not ratified by decision makers or participants in unlawful conduct in California."). And even Plaintiffs recognize that "a personnel decision made by a manager in Ohio does not become a California act because the

company's HR manual was written in California." Opp. at 13. Rather, the relevant question is where the employment decision (in this case, a rejection of an application for employment) is made.

### D. Products Liability Principles Counsel Against the Application of FEHA

Given the issue in this case, products liability law is instructive—and Plaintiffs do not suggest otherwise. Under products liability principles, California law does not apply simply because a product was manufactured here. *See Ryan v. Clark Equip. Co.*, 268 Cal. App. 2d 679, 682 & n.3 (1969) (the state of manufacture is not necessarily the "crucial state" including because "the central concern of the courts in the cases has been the compensation of the injured rather than control of the conduct of manufacture"), *disapproved of on other grounds by Hurtado v. Super. Ct.*, 11 Cal. 3d 574 (1974); *see also Chen v. L.A. Truck Ctrs., LLC*, 42 Cal. App. 5th 488, 502 (2019) (California's interest in holding manufacturers accountable for defective products is "local in character, to protect California residents and persons who are injured in California").

### E. Rowe's Allegations Do Not Salvage a Nationwide FEHA Claim

Plaintiffs argue that Rowe's seven applications to Workday while she resided in California in 2020-2021 are sufficient to invoke FEHA on behalf of herself and a nationwide class. Opp. at 8-13. Not so. As addressed in Workday's Motion, Rowe's California residency in 2020-2021 has no bearing on her FEHA rights, much less the rights of thousands of out-of-state applicants who applied to out-of-state positions hosted by out-of-state Workday customers. *See Rulenz v. Ford Motor Co.*, No. 10-cv-19710-GPC-MDD, 2013 WL 2181241, at *4 (S.D. Cal. May 20, 2013) ("Plaintiff's assertion that she maintained California residency is insufficient to defeat the presumption against extraterritorial application of FEHA."). Moreover, numerous applications outlined in the TAC do not implicate California conduct. TAC ¶¶ 72, 214-215; *Rulenz*, 2013 WL 2181241, at *4 (dismissing plaintiff's FEHA claims despite plaintiff's California residency and application to one job in California because "the vast majority of Plaintiff's allegations involve acts which occurred" outside of California and the one California position was "ancillary to the rest of the alleged injurious conduct"). Plaintiffs' attempt to recast *Rulenz* as inapposite ignores its core holding: residency and a small number of California-related applications are insufficient to overcome FEHA's presumption against extraterritoriality. *Rulenz*, 2013 WL 2181241, at *4.

Plaintiffs cannot use Rowe's seven applications for Workday positions—an indisputably narrow factual predicate—as the lever to pull the entire nationwide putative class within FEHA's reach.

### F.    The Twenty-One Opt-In Plaintiffs Cannot Sustain a Nationwide FEHA Class

The TAC's allegation that twenty-one other opt-in plaintiffs also applied to California jobs is similarly insufficient to support a FEHA claim, whether on behalf of those individual opt-ins or a nationwide class. While Plaintiffs concede the TAC fails to identify which California companies the opt-ins applied to, whether the positions were actually located in California, or where the opt-ins were when they applied or were rejected, they defend their conclusory pleading, saying that "[f]urther discovery will establish" these basic facts. Opp. at 14. Discovery is not a substitute for plausible pleading, and significantly, Plaintiffs have resisted any discovery about the opt-in plaintiffs. *See, e.g.*, ECF No. 283. More fundamentally, even taken at face value, twenty-one opt-in applications cannot sustain application of FEHA to a nationwide class of more than 15,000. Plaintiffs offer no theory under which such a vanishingly small subset of California-related applications could overcome the presumption against extraterritoriality for the remainder. Plaintiffs' theory—that twenty-one California-based applications justify nationwide FEHA application—would, if accepted, effectively eliminate the extraterritoriality limitation altogether.

## VI.    LEAVE TO AMEND SHOULD BE DENIED

The Court should "decline[] to consider" Plaintiffs' request for leave to amend, which is raised in three sentences in a footnote. *See* ECF No. 80 at 18 n.5. Plaintiffs' request fails to identify good cause and ignores the prejudice that successive expansions of the case have imposed on Workday and on the progress of this case toward class certification and collective decertification. Plaintiffs have had four opportunities to plead their claims, and the Court should deny further leave.

## VII.    CONCLUSION

The Court should strike and/or dismiss Plaintiffs' claims for discrimination against Asian American applicants and applicants with physical disabilities and all allegations in support of those claims. The Court should further strike and/or dismiss Plaintiffs' unauthorized factual allegations that appear for the first time in the TAC and fall outside the scope of the leave the Court granted. Finally, the Court should dismiss Plaintiffs' FEHA claims with prejudice.

Dated:  May 1, 2026                    ORRICK, HERRINGTON & SUTCLIFFE LLP

By: _____
                        JULIE A. TOTTEN
                        ERIN M. CONNELL
                        KAYLA D. GRUNDY
                        ALEXANDRIA R. ELLIOTT
                        Attorneys for Defendant
                        WORKDAY, INC.

DEFENDANT WORKDAY, INC.'S REPLY IN SUPPORT OF
MOTION TO DISMISS THIRD AMENDED COMPLAINT - 3:23-CV-00770-RFL