Lee D. Winston
*Admitted Pro Hac Vice*
lwinston@winstoncooks.com
Roderick T. Cooks
*Admitted Pro Hac Vice*
rcooks@winstoncooks.com
Bethany Neal
*Admitted Pro Hac Vice*
bneal@winstoncooks.com
Winston Cooks, LLC
420 20th Street North, Suite 2200
Birmingham, AL 35203

**Local Counsel:**
Jay Greene, JD, CPA
Greene Estate, Probate, and Elder
Law Firm
447 Sutter Street, Suite 435
San Francisco, CA 94108

Robert L. Wiggins, Jr.
*Admitted Pro Hac Vice*
rwiggins@wigginschilds.com
Ann K. Wiggins
*Admitted Pro Hac Vice*
awiggins@wigginschilds.com
Samuel Fisher, Jr.
*Admitted Pro Hac Vice*
sf@wigginschilds.com
Jennifer Wiggins-Smith
*Admitted Pro Hac Vice*
jsmith@wigginschilds.com
Nicki Leili Lawsen
*Admitted Pro Hac Vice*
nlawsen@wigginschilds.com
Freddrick Malik Moore
*Admitted Pro Hac Vice*
mmoore@wigginschilds.com
Wiggins, Childs, Pantazis, Fisher &
Goldfarb, LLC
The Kress Building,
301 19th Street North
Birmingham, AL 35203

*Attorneys for the Plaintiff and Proposed Class and Collective Members*

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEREK L. MOBLEY for and on behalf of himself and other persons similarly situated, *Plaintiff,* <br><br> v. <br><br> WORKDAY, INC., *Defendant.* | Case No. 3:23-cv-00770-RFL <br><br> Judge: Hon. Laurel Beeler, United States Magistrate Judge |

**The Discovery At Issue:**

The Plaintiffs' second Request For Production No. 1 was propounded on behalf of the named Plaintiffs, Opt-In Plaintiffs and putative class members who applied for employment as Workday employees by submitting their personally-owned application data, resumes and other matters that are the subject of 2nd RFP No.1 and this Letter. The Request seeks production of each such applicant's name and other application and resume data and information that they submitted to Workday in the process of applying and being screened for hiring, promotion or employment as a Workday employee. Workday, however, has only produced "anonymized" applicant data that redacts the requested name of the applicant to whom each such anonymized datapoint applies and belongs, making it *impossible* for each plaintiff and class or collective member to know what score, disposition, Candidate ID#, reason for rejection, or other datapoint or event pertains to them or to someone else.

Rather than producing the requested name and documents that go with each such anonymized Candidate ID#, Workday has withheld such information with no legitimate basis for doing so. It claims no privilege or other authorization for withholding documentary information that is owned by each named Plaintiff, Opt-In Plaintiff and putative class member who submitted the underlying  applications and resumes from which such personal data and information comes, not Workday. The explicit terms of its Recruitment Privacy Statement (Exh. A) states that fact.

Workday not only redacted the applicant's name and substituted an anonymized Candidate ID#, but it also disconnected its normal name-to-application linkage to make it untraceable back to the applicant's real name. That prevents each applicant opt-in from being able  to identify which of the 216,622 anonymized Candidate ID# applies to them, making it impossible for them to ever use such de-identified facts and documents information to prove they are "similarly situated" in the manner Workday argues to be essential to avoid decertification and dismissal in this case.

Workday has also produced *nothing at all* in response to the "reason" for each applicant's rejection or non-selection as requested in 2nd RFP Nos.1(a & g) above. The withheld applicant names and reasons for rejection are directly relevant to the claims in this action, are in Workday's custody, are required by applicable recordkeeping regulations to have been retained, and are held under conditions that fully protect any legitimate privacy interest. Workday's continued refusal to produce them is without legal basis and warrants the relief requested.
as part of Workday's automated workflow.

The law of this District is clear: a party may not unilaterally redact information from otherwise responsive documents except for privilege and work product protection. *Kellman v. Whole Foods Market California, Inc.*, No. 17-cv-06584-LB, 2021 U.S. Dist. LEXIS 189292, at *2–4 (N.D. Cal. Sept. 30, 2021) (Beeler, M.J.); *Micron Technology, Inc. v. Factory Mutual Insurance Co.*, No. 18-cv-07689-LB, 2022 U.S. Dist. LEXIS 17396, at *2–4 (N.D. Cal. Jan. 28, 2022) (Beeler, M.J.); *Magana-Munoz v. West Coast Berry Farms, LLC*, No. 5:20-cv-02087-EJD, 2022 U.S. Dist. LEXIS 177988, at *5–7 (N.D. Cal. Sept. 29, 2022). Fed. R. Civ. P. 26(c) requires a court order for any limitation on the scope or manner of disclosure. Workday sought no such order before redacting all of the applicant's names from the requested documents and data. Workday's unilateral decision to produce only anonymized Candidate ID# in place of actual names is a relevance redaction by another label. The effect is identical and  is exactly what *Kellman* and *Micron* prohibit.

Workday withholds such applicant names on no stated legal basis. Any unstated argument based on applicant privacy fails at the threshold: under California law and Workday's own published policies. The names and personal application information at issue belong to the applicants, not to Workday. Workday is the temporary custodian of that data, not its owner; it has no cognizable privacy interest of its own to assert. Workday's redaction of opt-in plaintiffs' names

from the production is not a vindication of their privacy — it is an obstruction of their claims. The more than 14,000 opt-in plaintiffs in this action have each filed consent forms authorizing their participation in this litigation and authorizing counsel to pursue their claims on their behalf. They have not invoked any privacy right to shield their identifying information from production; they have done the opposite. A party may not assert a third party's privacy rights where that third party has consented to disclosure. Workday's published Recruitment Privacy Statement— the same document plaintiffs have targeted in discovery — expressly acknowledges that Workday collects and retains identifiable applicant data, including names, contact information, résumé content, AI-generated scores, and disposition records. *See* Exh. A.

The parties' agreed-upon Protective Order is sufficient to address any residual privacy concern for non-opt-in applicants by restricting such use to this litigation. ECF No.10. The Protective Order establishes a mechanism for designating sensitive personal information as CONFIDENTIAL or HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY. Courts in this circuit routinely order production of third-party applicant data subject to a protective order in employment discrimination cases without requiring individual consent from each data subject. If the names at issue are sensitive, they should be protected by adding such a CONFIDENTIAL designation — not by withholding them altogether. Withholding is not a recognized basis for objection where a protective order already addresses the privacy concern at issue.

The names correlated with each such anonymized "Candidate ID number" are also readily available for production. The record establishes that Workday's automated name-to-application linkage retains all applicants' names if not disconnected or redacted. Plaintiff FaithLinh Rowe, for example, was sent automated  rejection emails from Do-Not-Reply@workday.com that were addressed to her ***by name*** and the specific requisition numbers: JR-81087, JR-84574, and JR-0090475 she applied for as part of  Workday's automated application workflow. *See* Exh. B. The 216,622 artificial Candidate ID numbers that Workday has produced in lieu of those applicant's real names are part of the same automated system that generated Ms. Rowe's rejection emails bearing her name and email address. Workday cannot credibly represent that names are unavailable when its own platform uses them to communicate with applicants *by name* in real time. Any claim that applicants' names cannot be readily produced should be required to be made under oath by a person with demonstrated knowledge and be subject to cross-examination.

Moreover, multiple regulatory frameworks independently required Workday to retain applicant names linked to application records: 29 C.F.R. § 1602.14 (application forms must be preserved); UGESP § 1607.15 (individual-level selection records); ADEA, 29 C.F.R. § 1627.3(b)(1) (test papers and selection data for applicants over 40); and California Government Code § 12946 as amended by SB 807 (four-year retention of applications for employment, which bear applicant names), supplemented by the October 2025 ADS regulations, Cal. Code Regs. tit. 2, §§ 11008.1–11008.4 (retention of ADS inputs, which are application materials); *EEOC v. Crothall Services Group,* U.S. Dist. LEXIS  83520 (E.D. Pa. 2016) (UGESP recordkeeping is mandatory and court-enforceable).

The Court has already ordered Workday to "produce all non-privileged, responsive document to the plaintiffs 'second set of requests for production" by April 6, 2026. Discovery Order, ECF No. 280 at 5. Despite that Order, Workday continues to withhold the documents requested in 2nd RFP No.1(a & g) notwithstanding the fact that they are part of the non-privileged documents ordered produced. *Id.*

**Workday's Position**

Plaintiffs seek to compel the names of more than 215,000 applicants to Workday, invading the privacy of hundreds of thousands of non-parties. These privacy interests are particularly strong here because applicant names are not necessary for Plaintiffs' analysis in this disparate impact case, and Plaintiffs identify no other legitimate reason for requesting the information.

Plaintiffs' motion manufactures a problem where none exists. Workday has already produced the anonymized applicant flow data it committed to providing. And Workday has repeatedly offered to de-anonymize data for any specific Opt-In Plaintiff, but Plaintiffs inexplicably refuse to provide the unique identifying information necessary to do so. Because Plaintiffs already have everything they need and their demand unnecessarily implicates third-party privacy rights, the Court should deny their motion in its entirety.

A. **Workday has Honored its Commitment to Produce Anonymized Applicant Data, Including the Disposition Reason for Each Applicant**

Workday agreed to produce applicant flow data in ***anonymized*** form over three months ago. *See* **Exhibit A** (excerpted discovery). To the extent Plaintiffs believed anonymization was improper, the time to raise that objection was when Workday served its responses—not after Workday relied on those responses in structuring its substantial production.

Workday has produced exactly what it agreed to—a comprehensive dataset that allows for analysis while safeguarding personal information, including unique candidate IDs, *demographics, qualifications, scores, and disposition information*. To that end, Plaintiffs 'suggestion that Workday produced "nothing at all" regarding rejection reasons is false. Workday produced the reason for each applicant's disposition as it is maintained in its systems (e.g., "recruiter decline – meets BQ but others more qualified" or "recruiter decline – Workday prefers to consider for another requisition"). That Plaintiffs may not like the substance of Workday's disposition codes or desire more detail than what Workday maintains in the normal course is not grounds for a motion to compel.

B. **Workday Anonymized its Applicant Flow Data for Legitimate Privacy Reasons**

At least 200,000 of the applicants for whom Workday has produced data are ***not*** parties to this case, considering there are only 15,000 opt-in plaintiffs (who may or may not have applied to work at Workday). While Plaintiffs cite cases suggesting parties cannot make unilateral relevance redactions, those cases are inapposite. Workday did not selectively redact portions of documents to hide relevant information; rather, Workday produced a complete dataset with unique identifiers in place of names to protect the privacy of hundreds of thousands of non-party applicants. Courts routinely permit, and even require, parties to anonymize third-party identifying information when producing sensitive identifying data in discovery. *See, e.g., Jalali v. Becerra*, Case No. 8:21-cv-01866-CJC-JDEx, 2022 WL 17219491, at *3 (C.D. Cal. July 18, 2022) (permitting redaction of "irrelevant sensitive personal information" regarding applicants in an employment discrimination case); *Howington v. Taiwan Semiconductor Mfg. Co.*, Case No. 24-cv-05684-VKD, 2025 WL 2494428, at *4 (N.D. Cal. Aug. 29, 2025) (suggesting that defendants can "us[e] unique employee identifiers and omit[] sensitive private information that is not relevant to plaintiffs' inquiry" when producing data to plaintiff for a statistical analysis); *Billal v. Alere Health, LLC*, Case No.: SACV 14-00390 AN, 2014 WL 12844179, at *3 (C.D. Cal. Dec. 4, 2014) (using a unique numeric identifier in lieu of employee name is sufficient to protect third-party privacy); *Keith H. v. Long Beach Unified Sch. Dist.*, 228 F.R.D. 652, 657 (C.D. Cal. 2005) (permitting redaction of third-party names); *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1137 (9th Cir. 2003) (redacting identifying information adequately balances privacy against discovery interests). The same measures are appropriate here.

### C. **Plaintiffs Already Possess Every Data Point Necessary to Conduct their Analysis**

Plaintiffs have identified no legitimate basis for needing applicant names, particularly because to the extent they plan to analyze the data statistically (and they repeatedly have suggested they do), they can conduct any such analysis using unique identifiers. Workday has provided unique candidate IDs that allow Plaintiffs to conduct any statistical analysis of the applicant flow data they choose—including analyses across demographic categories, score distributions, and disposition patterns. Compelling production of applicant names would add nothing analytically but would implicate the substantial privacy interests of hundreds of thousands of non-party applicants who never consented to disclosure of their identities in this litigation. The existing Protective Order does not eliminate these concerns. Non-party applicants have a reasonable expectation that their identifying information will not be disclosed without their consent.

### D. **Workday Has Repeatedly Offered to De-Anonymize Data for Specific Opt-in Plaintiffs, but Plaintiffs Have Refused to Provide the Necessary Identifiers**

Plaintiffs suggest that Workday's production makes it impossible for the Opt-In Plaintiffs to know which anonymized record corresponds to them. Not so. They ignore that Workday has been, and remains, willing to produce non-anonymized data for any specific Opt-In Plaintiff who applied to Workday. However, to do so, Workday needs unique identifying information (e.g., the email address used to apply) to ensure it accurately matches an application to the correct individual. Workday has repeatedly communicated this requirement: first in its discovery responses, then in two follow-up emails, and subsequently in two meet-and-confer calls. *See* **Exhibits A-C**. Despite Workday offering this simple solution repeatedly, Plaintiffs have failed to provide meaningful identifying information for any Opt-In Plaintiff that allegedly applied to Workday. Their refusal to do so is their only obstacle to receiving the data they claim to need.

### E. **Plaintiffs' Recordkeeping-Regulation Argument is a Red Herring**

Plaintiffs further allege that multiple regulatory frameworks require Workday to retain applicant names linked to application records. Their argument misses the point. Workday does not contend that it is ***unable*** to link applicant names to application records. Rather, Workday has made a reasonable, necessary decision not to produce name-identified data to protect third-party applicant privacy. Recordkeeping obligations do not strip non-party individuals of privacy rights in civil litigation, particularly where the requesting party already received data points sufficient to run its analysis. *See, e.g.*, *Jalali*, 2022 WL 17219491, at *3 (permitting redaction of "irrelevant sensitive personal information" regarding applicants in an employment discrimination case).

### F. **Workday has Complied with the Court's Order Regarding Production**

Finally, Plaintiffs suggest Workday has not complied with the Court's Order to "produce all non-privileged, responsive documents to the plaintiffs' second set of requests for production." This assertion is false. First, the applicant data Plaintiffs now seek was not subject to Plaintiffs' prior motion and necessarily, then, is not the subject of any Court Order. Second, Workday has produced all material it agreed to produce. Accordingly, Workday's production is complete.

### G. **Conclusion**

Workday has produced the applicant flow data it committed to providing, including disposition reasons, and has offered repeatedly to de-anonymize records for any identified Opt-In Plaintiff. Plaintiffs have everything they need to litigate their claims; what they lack is any legitimate basis to override the privacy interests of at least 200,000 (and likely far more) non-party applicants. Workday respectfully requests that the Court deny Plaintiffs 'motion to compel.

**Plaintiffs' Reply**

**No Confidential Information Has Been Requested Or Produced:** Workday repeatedly refers to applicants' "privacy interests" without ever identifying any such information that has actually been produced as part of the applicant data at issue. *See* Def. Exh. A at RFP 1 and 2. For example, Workday argues that "[n]on-party applicants have a reasonable expectation that their identifying information will not be disclosed without their consent" but it has not shown that the applicant data it produced includes any such "identifying information." It doesn't. While RFP 1(a) *asks* for applicant's name, birthdate, email address and other contact information—none of which involves protected "privacy interests— the data actually produced does not include any of those items or other "identifying information." Mere names are not private to begin with, and redacting all names across the board is a far too sweeping and crude restriction that unnecessarily precludes meaningful access to non-party comparator-applicant data that is obviously not private or confidential, such as the applicant's race, gender, qualifications, education, jobs applied for, application outcomes, "aggregate tabulations," etc. The Protective Order already protects any such 'privacy interests' that could possibly be implicated by the narrow applicant data that has been produced in this case. (ECF.101) *Howington v. Taiwan Semiconductor Mfg. Co.*, 2025 U.S. Dist. LEXIS 169490, at *11 (N.D. Cal. Aug. 29, 2025) ("[T]he Court finds that these individuals' privacy interests can be adequately protected if access to the information is limited to plaintiffs' counsel and appropriate experts, as provided in the protective order").

**Plaintiffs Did Not Agree To Redact or "Anonymize" The Names Produced:** Contrary to Workday, it did not "agree" to redact the applicant's names, it only *objected* on that basis and then refused to produce the data any other way or as kept in the ordinary course of business with the applicants' names intact. In other words, it only "agreed" with itself, not the Plaintiffs.

**Plaintiffs Cannot Verify The Data Produced Without Real Applicant Names:** Name redaction precludes the ability to check the accuracy and completeness of the data produced.  Nor does Workday dispute that name redaction makes  it impossible for Plaintiffs  and class members to even find the information pertains to them or their comparators chosen ahead of them on the basis of challenged disparate impact. *See* p. 1 *supra.* Workday itself repeatedly insists that proof of disparate "requires data about **real applicants"** ECF 315 at 10, with real names that can be investigated  and compared as anecdotal proof of the disparate impact, lack of validity and pretext at issue. The data as it exists cannot be taken at face value because Workday admits that it "reflect[s] Workday's counsel's strategic curation of data to be tested." ECF 315 at 14. The first iteration of the applicant data produced in March 2026 has already been found to be corrupted and incomplete and its replacement delivered April 15, 2026 is presenting similar deficiencies and unreliability. Redaction of the applicant's names deters and undermines Plaintiff's ability to thoroughly check and verify the accuracy and completeness of such data.

**Workday Already Has Each Applicant's Email Address And Name:**  Workday represents that it has not been able to produce the non-redacted names Plaintiffs requested because it did not have the "email address or phone numbers" necessary to re-link the redacted names back to the anonymized ID# that replaced each such name. Def. Exhs. B and C attached. That  contention, however, is shown to be false in nine Workday letters attached as Exhibit B, each of which show the individual applicant's name and email address on the face of the letter, and each of which letters, names and email addresses were generated from the very same applicant database that Workday produced to the plaintiffs only in a redacted and anonymized form.  *Compare* Plf Exh. B *with* Def. Exh. C. Workday admits that when it told the Plaintiffs it would not produce non-redacted applicant names and data unless they first produced each applicant's email address, "Plaintiffs responded by stating that Workday [already]' has that data.'" Def. Exh. C. Not only was there no need for Plaintiffs to produce 200,000 email addresses that Workday already had, but the Plaintiffs did not have those email addresses or any reasonable means to obtain them or any duty to do so.

**Proposed Compromise:** The individuals' privacy interests can be adequately protected if access to the information is limited to plaintiffs' counsel and appropriate experts, as provided in the protective order.

Respectfully submitted,

*s/Lee Winston*

Lee D. Winston (ASB: 6407O72L)
*Admitted pro hac vice*
lwinston@winstoncooks.com
Roderick T. Cooks (ASB: 5819O78R)
*Admitted Pro Hac Vice*
rcooks@winstoncooks.com
Bethany Mae Logan (ASB: 1360X15Z)
*Admitted Pro Hac Vice*
bneal@winstoncooks.com
Winston Cooks, LLC
420 20th Street North, Suite 2200
Birmingham, Alabama 35203
Telephone: (205) 502-0970
Facsimile: (205) 278-5876

*s/Robert L. Wiggins, Jr.*

Robert L. Wiggins, Jr. (ASB: 1754G63R)
*Admitted Pro Hac Vice*
rwiggins@wigginschilds.com
Ann K. Wiggins (ASB: 7006i61a)
*Admitted Pro Hac Vice*
awiggins@wigginschilds.com
Samuel Fisher (ASB: 2675E68S)
*Admitted Pro Hac Vice*
sf@wgginschilds.com
Jennifer Wiggins Smith (ASB:9622E53S)
*Admitted Pro Hac Vice*
jsmith@wigginschilds.com
Nicki L. Lawsen (ASB: 2602C00K)
*Admitted Pro Hac Vice*
nlawsen@wigginschilds.com
Freddrick M. Moore (ASB: 7952L20o
mmoore@wiggins childs.com
*Admitted Pro Hac Vice*
Wiggins Childs Pantazis Fisher and Goldfarb
301 North 19th Street
Birmingham, Alabama 35203
Telephone: (205) 314-0500
Facsimile: 205) 254-1500

**Local counsel:**
Jay Greene, JD, CPA
greenattorney@gmail.com
Greene Estate, Probate, and Elder Law Firm
447 Sutter Street, Suite 435
San Francisco, CA 94108
Telephone: (415) 905-0215

6

**CERTIFICATE OF SERVICE**

I hereby certify that on May 7, 2026. I electronically filed the foregoing document with the United States District Court for the Northern District of California by using the CM/ECF system. I certify that the following parties or their counsel of record are registered as ECF Filers and that they will be served by the CM/ECF system:

Julie Ann Totten      Jtotten@orrick.com, jponce@orrick.com
Erin M. Connell      econnell@orrick.com
Kyla Delgado Grundy  kgrundy@ orrick.com
Alexandria R. Elliott   aelliott@orrick.com

*s/Lee Winston*
Of Counsel

7