Lee D. Winston, *Admitted Pro Hac Vice*
lwinston@winstoncooks.com
Roderick T. Cooks, *Admitted Pro Hac Vice*
rcooks@winstoncooks.com
Bethany Mae Logan, *Admitted Pro Hac Vice*
bneal@winstoncooks.com
WINSTON COOKS, LLC
420 20th Street North, Suite 2200
Birmingham, AL 35203
Telephone: (205) 502-0970
Facsimile: (205) 278-5876


**Local Counsel:**
Jay Greene, JD, CPA
GREENE ESTATE, PROBATE, AND ELDER
LAW FIRM
447 Sutter Street, Suite 435
San Francisco, CA 94108

Robert L. Wiggins, Jr., *Admitted Pro Hac Vice*
rwiggins@wigginschilds.com
Ann K. Wiggins, *Admitted Pro Hac Vice*
awiggins@wigginschilds.com
Samuel Fisher, Jr, *Admitted Pro Hac Vice*
sf@wigginschilds.com
Jennifer Wiggins-Smith, *Admitted Pro Hac Vice*
jsmith@wigginschilds.com
Nicki Leili Lawsen, *Admitted Pro Hac Vice*
nlawsen@wigginschilds.com
Freddrick M. Moore, *Admitted Pro Hac Vice*
mmoore@wigginschilds.com
WIGGINS CHILDS PANTAZIS FISHER &
GOLDFARB, LLC
301 North 19th Street
Birmingham, Alabama 35203
Telephone: (205) 314-0500
Facsimile: (205) 254-1500

Lori Kisch, *Admitted Pro Hac Vice*
lkisch@wigginschilds.com
Meredith Burrell, *Admitted Pro Hac Vice*
mburrell@wigginschilds.com
Jennifer M. Swedish, *Admitted Pro Hac Vice*
jswedish@wigginschilds.com
WIGGINS CHILDS PANTAZIS FISHER &
GOLDFARB
1050 Connecticut Avenue NW, Suite 500
Washington, DC 20036
Telephone: (205) 314-0500
Facsimile: (205) 254-1500

*Attorneys for the Plaintiff and Proposed Class and Collective Members*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DEREK L. MOBLEY; FAITHLINH ROWE; JILL E. HUGHES; AND SHEILAH JOHNSON-ROCHA,** on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**WORKDAY, INC.**<br><br>Defendant. | **Case No. 3:23-cv-00770-RFL-LB**<br><br>**PLAINTIFFS' MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE (ECF NO. 340)**<br><br>Courtroom: 15, 18th Floor<br><br>Judge: Hon. Rita F. Lin<br><br>Third Amended Complaint Filed: March 27, 2026 |

Plaintiffs respectfully object to two portions of Magistrate Judge Beeler's May 28, 2026 Discovery Order, ECF No. 340 ("Order"). First, Plaintiffs object to the portion of the Order addressing ECF No. 310 finding that Workday cannot be compelled under Federal Rule of Civil Procedure 34 to produce documents or data that Workday contends is owned by its customers. *See* ECF. No. 340 at 9-10.[1] This finding is contrary to law because it determined Workday's obligations under Rule 34 can be overridden by private contract, and because the Rule 34 analysis was based solely on whether Workday has "control" of the data, without regard to its possession or custody of the data. Second, Plaintiffs also respectfully object to the portion of the Order terminating as moot their letter brief seeking to require Workday to supply the names, rather than just anonymized unique identification numbers, of applicants who sought employment with Workday (ECF No. 319). This finding is contrary to law because the Order relied on Workday's Notice of Supplemental Facts (ECF No. 331), a post-reply filing that fits no exception to Civil Local Rule 7-3(d).

### STANDARD OF REVIEW

A district judge must modify or set aside any part of a magistrate's order on a non-dispositive matter that is "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A). A ruling is contrary to law when it "fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Morgal v. Maricopa Cnty. Bd. of Supervisors*, 284 F.R.D. 452, 458 (D. Ariz. 2012) (citations omitted). Legal conclusions embedded in discovery orders are reviewed de novo. *Wolpin v. Philip Morris Inc.*, 189 F.R.D. 418, 422 (C.D. Cal. 1999). The Order's failure to apply the full text of Rule 34 is an error of law subject to de novo review.

---

[1] While Plaintiffs do not formally object at this time to the Order's determinations regarding attorney-client privilege as applied to Workday's internal bias audits, *see id.* at 6-8, they do not waive their right to further address this issue in a new motion if future discovery reveals facts that are different from those relied on in this portion of the Order.

**ARGUMENT**

**I.    WORKDAY HAS CONTROL AND POSSESSION OF RELEVANT CUSTOMER DATA**

Rule 34 requires a party to produce responsive documents within its "possession, custody, or control." Fed. R. Civ. P. 34(a)(1). As courts in this District have consistently held, "'possession, custody, or control' is in the disjunctive and only one of the enumerated requirements need be met." *Soto v. City of Concord*, 162 F.R.D. 603, 619 (N.D. Cal. 1995) (internal citations omitted); *see also Nugent v. Secretlab US, Inc.*, 2024 U.S. Dist. LEXIS 175988, at *24 (N.D. Cal. Sept. 27, 2024) (same). A finding of actual possession alone "is sufficient to trigger an obligation to produce responsive documents." *PlayUp, Inc. v. Mintas*, No. 2:21-cv-02129-GMN-NJK, U.S. Dist. LEXIS 136098, at *10 (D. Nev. Aug. 1, 2024).

While the Order inherently recognized the disjunctive nature of Rule 34 in stating "a party has custody or control of documents if it has actual possession or the legal right to obtain them on demand," ECF No. 340 at 9, its analysis focused entirely on the standard for control. *See generally id.* at 340 at 9–10. The Order found that Workday does not have control by reading into Workday's customer contracts a non-existing right of the customer to seek an injunction against production and ignored the relevance of Workday's actual possession of relevant data.

**A.    Confidentiality Restrictions Do Not Negate Workday's Control of Customer Data or Thwart This Court's Authority to Order Production**

The Order expressed concern that the Master Subscription Agreement allows production only "to the extent required by law" and that customers retain the right to seek an injunction against disclosure. ECF No. 340 at 9–10. This reasoning conflates two distinct questions: whether Workday *has* the data, and whether Workday is contractually *permitted* to disclose it voluntarily. Rule 34's possession prong answers the first question. The second is not a limitation on this Court's power, but rather is a matter to be addressed through the mechanics of a production order.

Contractual confidentiality obligations do not immunize documents from discovery. Courts routinely compel production of documents subject to third-party confidentiality agreements, addressing those interests through protective orders rather than by foreclosing discovery altogether. *See, e.g., Nugent*, 2024 U.S. Dist. LEXIS 175988, at *21–22 (contractual restrictions on access do not negate possession); *see also* Fed. R. Civ. P. 26(c) (authorizing protective orders to address confidentiality concerns). The existing protective order provides the appropriate mechanism for addressing any legitimate customer confidentiality interests.

The Order erred in ruling that "Workday has [no] legal right to obtain its customers' data on demand where the mechanism for production is a court order that the customer can seek an injunction to prevent." ECF No. 340 at 9-10. This is erroneous because a private contract cannot override Rule 34, and because the contract at issue does not give Workday's customers an uninhibited right to seek an injunction.

First, a court order requiring production of applicant data relevant to a disparate impact claim is plainly appropriate under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq; the California Fair Employment and Housing Act (FEHA) Gov. Code §12940, et seq., and the Uniform Guidelines on Employee Selection Procedures, 29 CFR Part 1607; Title 2, Cal. Code Regs. § 11017(e).[2]  A private contract between Workday and its customers cannot override or nullify such statutory and regulatory data production requirements or a court order to produce such data. "A court's refusal to enforce . . .  a [contract] because it is contrary to public policy is a specific application of the more general doctrine, rooted in the common law, that a court may

[2] The Supreme Court has emphasized that "employers falling within the scope of the Uniform Guidelines on Employee Selection Procedures, 29 CFR § 1607.1, et seq., are **required** to 'maintain . . . records or other information which will disclose the impact which its tests and other selection procedures have upon employment opportunities of persons by identifiable race, sex, or ethnic group[s]." *Ward's Cove Packing Co. v. Atonio*, 490 U.S. 642, 657-658 (1989) (quoting 29 CFR §1607.4(A)) must be given" broad access to employers 'records in an effort to document their claims" so that the Court's newly adopted "specific causation requirement" is not "unduly burdensome on Title VII plaintiffs." *Id.; see also* ECF No. 310 at 9).

refuse to enforce contracts that violate law or public policy." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 42 (1987).[3] That is the case here. The operative effect of the Order's interpretation places Workday's privately negotiated contracts above the Court's authority.

Second, the Order is also erroneous in finding that the contractual "court order" mechanism is ineffective because Workday's customer can "seek an injunction to prevent" production. ECF No. 340 at 9–10. The operative customer contract has no such injunctive rights.[4] Rather, Section 4.1 provides that a party to the Master Subscription Agreement may "disclose Confidential Information of the other party . . . [when] ordered . . . by any court of competent jurisdiction" and only requires the other party be given "prompt notice" and "reasonabl[e] cooperat[ion]," not any contractual right to enjoin such a court order that authorizes Workday's production of the requested documents. Exh. A at WORKDAY_MOB_00003083. The same is true for § 4.2 which provides that "[a] disclosure by one party of Confidential Information of the other party to the extent **required by Law** shall **not** be considered a breach of this Agreement, provided the party so compelled promptly provides . . . prior notice . . . and provides reasonable assistance . . . if the other party wishes to contest the

---

[3] S*ee also, W. R. Grace & Co.* v. *Rubber Workers*, 461 U.S. 757, 766 (1983) (private contract cannot undo, excuse or modify Title VII obligations); *see also  Town of Newton v. Rumery*, 480 U.S. 386, 392 (1987 ). The rights assured by Title VII" are not rights which can be bargained away—either by a union, by an employer, or by both acting in concert."" *Williams v. Owens-Illinois, Inc.*, 665 F.2d 918, 926 (9th Cir. 1982); *Robinson v. Lorillard Corp.*, 444 F.2d 791, 799 (4th Cir. 1971) (same); *EEOC v. Astra USA, Inc.*, 94 F.3d 738, 744–45 (1st Cir. 1996) (nullifying private agreements that would have disabled or interfered with the statutory enforcement scheme of Title VII, including agreements that obstruct Title VII discovery because "any agreement that materially interferes with" Title VII enforcement is void); *EEOC v. Cosmair, Inc.*, 821 F.2d 1085, 1090 (5th Cir. 1987) (holding that agreements impairing pursuit of Title VII claims are void as against public policy).

[4] The Main Subscription Agreement document attached to Workday Opposition (ECF No. 371-3) does not bear a Bates number indicating that it has been produced to Plaintiffs as relevant to the customer contracts at issue in this litigation. The Master Subscription Agreement discussed herein is quoted extensively in ECF No. 170 and also as attached Exhibit A hereto under seal.

disclosure." *Id*. (emphasis added). Section 4.3 also offers no support for the Order's injunction theory because it plainly states that injunctive relief is *only* available "[i]f a party discloses . . . Confidential Information of the other party **in breach of** confidentiality protections." *Id.* (emphasis added). There is no evidence or finding that Workday would be "in breach of" customers' "confidentiality protections" by merely following such a court order or the foregoing terms of the Master Subscription Agreement which expressly state that such "required by Law [production] shall not be considered a breach of this Agreement." *Id.*

This Court has already held that such a "court order" gives Workday the legal right to obtain and produce confidential "customer data" to Plaintiffs' counsel without any independent customer consent beyond the "court order" and "required by Law" provisions of § 4.1 and § 4.2 of the Master Subscription Agreement. ECF No. 128 at 18; ECF No. 175 at 2, para. 4 (ordering confidential "customer data" list "*shall be provided to Plaintiffs' counsel . . .* [as] 'Attorneys' Eyes Only' in order to ensure that information . . . remains confidential.") (emphasis added)).

The Order concluded that Plaintiffs had not demonstrated control because they did not cite caselaw involving facts similar to those here, where a contract provision allows production only under a court order and where customers have a contractual right to notice for purposes of seeking an injunction against disclosure. ECF No. 340 at 9. Notably, Workday also did not cite cases involving similar factual scenarios. Indeed, the Circuit precedent analyzing the meaning of "control" under Rule 34 involved circumstances where, unlike here, it was undisputed that the party from whom production was sought did *not* have possession of the requested documents. *See In re Citric Acid Litig.*, 191 F.3d 1090, 1107 (9th Cir. 1999) ("[t]he document in question are neither in the possession nor custody" of the party from whom they were requested); *U.S. v. Int'l. Un. Of Petroleum and Indus. Workers*, 870 F.2d, 1450, 1452 (9th Cir. 1989) (party did not contend documents sought were in possession or custody of other party). It is logical that, in these and other cases addressing control under Rule 34, courts reach the control question because the party from whom documents are sought lacks possession. The lack of analogous case law

does not mandate the conclusion that Workday lacks control, but rather suggests further engagement with Workday's relationship to the data is necessary to answer the question.

### B. Workday's Control and Possession of Relevant Customer Data is Otherwise Supported by the Record in this Case

That Workday has possession of the information at issue is not in serious dispute. Workday is a software-as-a-service company. Its customers' data resides on Workday's servers, in Workday's infrastructure, under Workday's technical control. These realities are confirmed by Workday's business operations, contractual documents, and the pre-existing record in this case.

First, the applicant recruitment and processing information at issue in this case is not simply being passively stored by Workday. Rather, Workday ingests and actively analyzes customer job requisition data and applicant data and, after processing through the AI features subscribed to and activated by the customer, returns information to customers in order to "surfac[e] relevant leads and applicants with clear reasoning, while delivering high priority, actionable next-steps directly within existing workflows." Exh. B (HiredScore Datasheet).  Setting aside the likely vast amounts of non-recruiting and hiring-related customer data that Workday may store more passively, Workday ingests and transforms customer-submitted data into scored, ranked, or recommended outputs, and uses customer data to train its AI products. Workday cannot fairly ingest and use data in a way so fundamental to the operation of these products yet deny possession.

Second, Workday's Master Subscription Agreement and Innovation Services Addendum grant Workday certain licensing rights to incorporate customer data into its services. *See* Exhibit A, Master Subscription Agreement at para 3.5; Exh. C, Innovation Services Addendum at para. 6.2 (Innovations Services ("IS") licenses). Significantly, the IS Addendum expressly defines Workday as the *owner* of certain data ("Workday Results") when it has been de-linked to a specific individual person or a specific Workday customer. *Id.* at paras. 1 and 6.2.  And although the IS Addendum defines customers as the owner of other data ("Customer Results"), *see id.*, para. 6.2, that definition of ownership does not negate Workday's possession of "Customer Results" data.

*See Nugent*, 2024 U.S. Dist. LEXIS 175988 at *11, 19 (legal ownership of the documents is not determinative" — a party in actual possession of documents must allow discovery even if those documents belong to someone else).

Third, Workday's control of the applicant data is demonstrated by its self-authorized production of such applicant data to at least four external third-party entities in the last three years taken from the records of several million job applicants, including the following: 1,449,430 applicant's data produced to third-parties TIAA and DLA Piper from job applications for employment with Workday's customers for the period from June 2024 to May 2025 (ECF No. 321-3); 1,022,137 applicants' data that Workday produced to a third-party entity from job applications for employment with Workday's customers for the period from February 1, 2023 to February 12, 2024 (ECF No. 321-2); 147,077 applicants' data that Workday produced to a third-party entity in 2023 from the applicant data of ten of Workday's "Global Large Customers" for the period from July 1, 2022 to July 2, 2023 (Exh. D, 2023 HiredScore Bias Audit); and 1,443 applicants' data that Workday produced to third-party Secretariat for the period from September 1, 2025 to February 28, 2026 (ECF No. 321-4). The applicant data produced to third parties came from applications for employment with a multitude of Workday subscribers.

Finally, prior proceedings in this litigation demonstrate Workday's possession of relevant customer data. Workday has admitted that "through aggregated transactional data, [it] can identify whether CSM scores have been generated in a customer's tenant." ECF No. 149 at 11 (CMS filed July 2, 2025). It also admits that it "does have aggregated transactional data that provides general information about usage of certain aspects of Workday's products" and that it "believes that over time, this transactional data fairly captures whether applicant scores exist in a particular customer tenant." *Id. See also,* ECF No. 120, Transcript at 40:9-11, 41:1--23, April 29, 2025 ("Workday does have the ability to see . . . if Candidate Skills Match has been enabled."); CMS, p. 9 (ECF No. 131, May 28, 2025). (Workday stating it "is able to identify only whether a customer enabled the CSM feature."); ECF No. 167, Transcript at 22:4-23:19, August 27, 2025 (confirming Court's

"understanding that Workday has the information, and it is in Workday's possession [to identify] which customers have enabled AI features."); ECF No. 148, Transcript at 4:21-5:7 (June 4, 2025).

In short, the record demonstrates substantial, relevant customer data is in Workday's possession such that its production can be compelled under Rule 34.

## II.   WORKDAY'S NOTICE OF SUPPLEMENTAL FACTS WAS AN UNAUTHORIZED POST-REPLY FILING THAT VIOLATED THE CIVIL LOCAL RULES AND SHOULD NOT HAVE BEEN CONSIDERED.

On May 7, 2026, Plaintiffs filed ECF No. 319, the parties' fully briefed letter brief pursuant to the process set forth by Judge Beeler (ECF No. 293). Two weeks later—well after the record had closed, and just seven days before the hearing set by Judge Beeler—Workday filed a Notice of Supplemental Facts (Notice), to which it attached a redacted copy of a transmittal cover letter accompanying Plaintiffs' third-party subpoena, dated May 18, 2026 (ECF No. 331). Workday's Notice mischaracterized Plaintiffs' statement that they did "not require applicant names" in response to third-party subpoenas as a "conce[ssion]" that was somehow relevant to the parties' letter brief. The supplemental facts that Workday improperly submitted related to requests for statistical data that did not require names for the immediate aggregate statistical purpose for which it was subpoenaed, whereas the data requested from Workday itself specifically requested names and demographic characteristics that were needed to identify and analyze comparators as anecdotal evidence, not just as anonymous statistical evidence, but on an  individual comparative basis by race, gender, qualifications, education, jobs applied for, application outcomes, etc. *See* ECF No. 319 at 5. The Order finding this issue to be mooted relied on an unauthorized post-reply filing to erroneously find that Plaintiffs "admitted" that names were not needed from Workday.  ECF 340 at 12.

Workday's Notice unauthorized post-reply filing should not have been considered under the local rules. Civil Local Rule 7-3(d) provides that "[o]nce a reply is filed, no additional memoranda, papers or letters may be filed without prior Court approval," subject only to a narrow Objection to Reply Evidence under Rule 7-3(d)(1) or a Statement of Recent Decision under Rule

7-3(d)(2). Workday's Notice—a freestanding submission of new factual material offered to advance its substantive position—is neither. Workday neither sought nor obtained the "prior Court approval" the Rule requires, and that omission is dispositive: the Local Rules close the record once briefing concludes precisely to prevent a party from supplementing it at will with material selected to bolster its position after its opponent has lost the opportunity to respond. Because the filing was unauthorized, it was a nullity to which Plaintiffs were not required to respond, and construing Plaintiffs' non-response as an admission was clearly erroneous.

Civil Local Rule 7-3(d)'s prohibition on unauthorized post-reply filings is settled and routinely enforced. *See Casenas v. Milpitas Police Officers Ass'n*, No. 24-cv-08565-PCP, 2025 U.S. Dist. LEXIS 267893, at *9 (N.D. Cal. Dec. 30, 2025) (striking post-reply filing made "without prior Court approval" and declining to consider its arguments); *Munning v. The Gap, Inc.*, No. 16-cv-03804-TEH, 2017 U.S. Dist. LEXIS 24978, at *1–2 (N.D. Cal. Feb. 22, 2017) (striking unauthorized post-reply notice as "untimely and contain[ing] unauthorized argument"). The Order's reliance on Workday's unauthorized—a filing that fits no exception to a rule binding on every judge of this Court—is contrary to law within the meaning of Rule 72(a).

Moreover, Workday's mischaracterization of the record compounds the procedural impropriety. Plaintiffs' third-party subpoenas are intentionally narrowly tailored: Plaintiffs told *Workday's customers* that they did "not require applicant names" (provided the customers "preserve[] the underlying name-to-identifier key") as an accommodation to reduce the burden on *non-parties* and to address their distinct privacy interests. Plaintiffs' requests directed at Workday, the defendant, are necessarily different: Plaintiffs requested deanonymized information about applicants who sought employment from Workday, the *party* that hosts and controls it. It is improper to equate Plaintiffs' requests directed at non-parties as a concession that somehow undermines Plaintiffs' entitlement to deanonymized applicant data from Workday, when the two requests serve different purposes, are directed at different custodians, and where Plaintiffs

informed third parties of the need to maintain the link between identifier-to-name for potential use at a later stage.

Indeed, names are not an analytical luxury; they are essential to the merits of Plaintiffs case against Workday. Without them, no Opt-In Plaintiff can identify which of the 216,622 anonymized records Workday produced is their own — making it impossible to prove the very "similarly situated" status Workday insists is required to avoid decertification of the class under the Age Discrimination in Employment Act of 1967, or to identify and investigate the comparators selected ahead of them. Workday itself maintains that proof of disparate impact "requires data about real applicants," ECF No. 315 at 10, yet has produced a dataset that, by its own admission, "reflect[s] Workday's counsel's strategic curation of data to be tested." *Id.* at 14. Name redaction forecloses the only means of independently verifying the data's accuracy and completeness. Any privacy concern is fully answered by the Protective Order, ECF No. 101 — particularly where Workday's own automated system addresses these same applicants by name in real time.

## III.    CONCLUSION

For the foregoing reasons, the Court should overrule the determination in the Order that Workday cannot be compelled to produce documents requested in this litigation that it contends are owned by its customers. The Court should also grant Plaintiffs' request that Workday supply the names, rather than just anonymized unique identification numbers, of applicants who sought employment with Workday (ECF No. 319). The Order's finding that the issue was moot is contrary to law because the Order relied on Workday's Notice of Supplemental Facts (ECF No. 331), a post-reply filing that fits no exception to Civil Local Rule 7-3(d), which generally prohibits the filing of further pleadings absent court approval.

Dated: June 12, 2026

Respectfully submitted,

/s/ Meredith Burrell

Meredith Burrell *(admitted pro hac vice)*

Lee D. Winston (ASB: 6407O72L)
*Admitted pro hac vice*
lwinston@winstoncooks.com
Roderick T. Cooks (ASB: 5819O78R)
*Admitted Pro Hac Vice*
rcooks@winstoncooks.com
Bethany Mae Logan (ASB: 1360X15Z)
*Admitted Pro Hac Vice*
bneal@winstoncooks.com
Winston Cooks, LLC
420 20th Street North, Suite 2200
Birmingham, Alabama 35203
Telephone: (205) 502-0970
Facsimile: (205) 278-5876

**LOCAL COUNSEL:**
Jay Greene
Greene Estate, Probate, and Elder Law Firm
447 Sutter Street, Suite 435
San Francisco, CA 94108
Phone 415-905-0215
greeneattorney@gmail.com

Robert L. Wiggins, Jr., *Admitted Pro Hac Vice*
rwiggins@wigginschilds.com
Ann K. Wiggins, *Admitted Pro Hac Vice*
awiggins@wigginschilds.com
Samuel Fisher, Jr, *Admitted Pro Hac Vice*
sf@wigginschilds.com
Jennifer Wiggins-Smith, *Admitted Pro Hac Vice*
jsmith@wigginschilds.com
Nicki Leili Lawsen, *Admitted Pro Hac Vice*
nlawsen@wigginschilds.com
Freddrick M. Moore, *Admitted Pro Hac Vice*
mmoore@wigginschilds.com
WIGGINS CHILDS PANTAZIS FISHER & GOLDFARB, LLC
301 North 19th Street
Birmingham, Alabama 35203
Telephone: (205) 314-0500
Facsimile: (205) 254-1500
Lori Kisch, *Admitted Pro Hac Vice*
lkisch@wigginschilds.com
Meredith Burrell, *Admitted Pro Hac Vice*
mburrell@wigginschilds.com
Jennifer M. Swedish, *Admitted Pro Hac Vice*
jswedish@wigginschilds.com
WIGGINS CHILDS PANTAZIS FISHER & GOLDFARB
1050 Connecticut Avenue NW, Suite 500
Washington, DC 20036
Telephone: (205) 314-0500
Facsimile: (205) 254-1500

## CERTIFICATE OF SERVICE

I hereby certify that on June 12, 2026, I electronically filed the foregoing document with the United States District Court for the Northern District of California by using the CM/ECF system. I certify that the following parties or their counsel of record are registered as ECF filers and that they will be served by the CM/ECF system:

Jay Patrick Greene      jay@greenelawfirm.com
Julie Ann Totten       jtotten@orrick.com, jponce@orrick.com
Erin M. Connell        econnell@orrick.com
Kayla Delgado Grundy  kgrundy@orrick.com
Alexandria R. Elliott    aelliott@orrick.com

*s/ Meredith Burrell*
Of Counsel
Wiggins Childs Pantazis Fisher & Goldfarb
1050 Connecticut Avenue NW, Suite 500
Washington, DC 20036
Telephone: (205) 314-0500
Facsimile: (205) 254-1500