UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEREK L. MOBLEY, et al., | Case No. 23-cv-00770-RFL |
| Plaintiffs, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS** |
| WORKDAY, INC., | Re: Dkt. No. 301 |
| Defendant. | |

Plaintiffs Derek Mobley, Jill Hughes, Sheilah Johnson-Rocha and FaithLinh Rowe bring this action for employment discrimination against Workday, Inc., alleging that Workday's algorithm-based applicant screening tools discriminated against them and other similarly situated job applicants based on race, age, and disability. Workday moves to dismiss and to strike portions of Plaintiffs' Third Amended Complaint. (Dkt. No. 301 ("Motion").) Workday argues that Plaintiffs' California Fair Employment and Housing Act ("FEHA") claims fail to plead a non-conclusory nexus between the alleged misconduct and California, and that all the other amendments Plaintiffs have made are unauthorized because they are outside of the scope of Plaintiffs' leave to amend. (*Id.*) For the reasons explained below, Workday's Motion is **GRANTED IN PART AND DENIED IN PART**.

## I.     BACKGROUND

In 2023, Derek Mobley brought this action for employment discrimination against Workday. After the Court ruled on two rounds of motions to dismiss, Mobley proceeded on claims for disparate impact discrimination based on race (under Title VII of the Civil Rights Act

1

of 1964), based on disability (under the Americans with Disabilities Act ("ADA")), and based on age (under the Age Discrimination in Employment Act of 1967 ("ADEA")).  A case schedule was set, with an amended pleading deadline of October 21, 2024.  (Dkt. No. 93.)  On November 12, 2025, Mobley sought leave to file a further amended complaint adding three new named plaintiffs, and claims for gender-based discrimination under Title VII and gender-, race-, and age-based discrimination under the FEHA.  (Dkt. No. 198.).  The Court found good cause for the late amendment under Federal Rules of Civil Procedure 15 and 16, and the motion was granted.  (Dkt. No. 230; *see also* Dkt. No. 231 ("SAC").)  Workday moved to dismiss the SAC, and the motion was granted in part and denied in part.  *Mobley v. Workday, Inc.*, No. 23-cv-00770-RFL, 2026 WL 636719 (N.D. Cal. Mar. 6, 2026) ("Motion to Dismiss Order").  Plaintiffs were given leave to amend to remedy deficiencies in their FEHA claims—which lacked allegations of a nexus to California—and Hughes was granted leave to amend her ADA claim to attempt to plausibly allege discrimination on the basis of a disability.  *Id.* at *2–3.

Plaintiffs then filed a Third Amended Complaint.  (Dkt. No. 287 ("TAC"); Dkt. No. 302-1 (redline comparing SAC to TAC).)  Regarding nexus to California, the TAC alleges that Workday's "applicant-screening systems—including its artificial intelligence and machine-learning tools used to evaluate, rank, and reject applicants—are designed, developed, maintained, and controlled from its California headquarters . . . at 6110 Stoneridge Mall Road, Pleasanton, California."  (TAC ¶ 227.)  It further alleges that Workday customers and subscribers are "serviced by Workday from California" and that its "algorithmic training and dataset have been designed, developed, [and] operated from Workday's California operations and facilities . . . [to] train and operate those same AI applicant screening services Workday provides to its out-of-state customers and subscribers from California."  (*Id.* ¶¶ 229–30.)  The TAC alleges that "applicant screening, scoring, and rejection [] originates in and is carried out from California."  (*Id.* ¶ 232.)

With respect to Hughes's ADA claim, the TAC alleges that "algorithmic hiring tools can identify and rely upon [] proxy indicators of illness or health-related limitations" such as medical leave or "patterns consistent with treatment and recovery" to discriminate against individuals

2

with underlying physical health conditions.  (*Id.* ¶¶ 57–58.)  In addition, the TAC alleges that

Workday's applicant-screening tools discriminate against Asian American applicants, and asserts

a race-based disparate impact claim on behalf of Rowe under Title VII.  Finally, the TAC alleges

that Workday uses "the challenged recruitment and hiring procedures in screening and selecting

its own employees" (*id.* ¶ 9) and adds a variety of other new factual allegations in support of

Plaintiffs' claims.

## II.    ANALYSIS

### A.    Plaintiffs' FEHA Claims Are Plausibly Pled

Workday moves to dismiss Plaintiffs' FEHA claims on the basis that the statute does not

cover the conduct at issue, which Workday contends is inadequately alleged to occur in

California.  (Motion at 16.)[1]  The FEHA is a California statute, and does not apply to non-

residents absent a sufficient nexus to the state.  *Campbell v. Arco Marine, Inc.*, 50 Cal. Rptr. 2d

626, 628 (Ct. App. 1996) (holding that the FEHA did not apply to non-residents where "the

tortious conduct took place out of [California]'s territorial boundaries"); *see also* Cal. Code

Regs., tit. 2, § 11008(d)(1)(C) (similar).  However, as explained in the Motion to Dismiss Order:

> [P]articipation by an actor residing in California in alleged unlawful
> conduct can provide a basis for someone with no other California
> connections of their own to state a claim under the FEHA [if there
> are] sufficient factual allegations in the complaint to show a nexus
> between California and the allegedly unlawful conduct.

2026 WL 636719, at *2 (citing *Paparella v. Plume Design, Inc.*, No. 22-cv-01295-WHO, 2022

WL 2915706, at *4 (N.D. Cal. July 25, 2022)).

In the TAC, Plaintiffs have sufficiently alleged that Workday, whose principal place of

business is in California, participated in alleged misconduct in violation of the FEHA from its

California headquarters.  Plaintiffs allege that "Workday's algorithmic decision-making tools

---

[1] Rowe alleges that she applied to and was rejected from California-based positions while living
in California.  (TAC ¶¶ 73, 234.)  Because nexus is adequately pled based on the location of the
alleged screening technology, this order does not reach this separate nexus argument.  The same
is true of the allegations regarding those opt-in Plaintiffs who applied to jobs in California.  (*Id.*
¶¶ 243–244.)  Citations to page numbers refer to ECF pagination.

automatically screened out," or otherwise ranked or scored their applications.  (TAC ¶¶ 50, 82.)  In other words, they allege that Workday's tools played an active role in the rejection of Plaintiffs' job applications.  Plaintiffs allege that these tools were "designed, developed, maintained, and controlled from [Workday's] California headquarters"; that Workday "train[ed] and operate[d]" these tools from California; and thus that Workday's "screening, scoring, and rejection" of Plaintiffs' applications "originate[d] in and [was] carried out from California."  (*Id.* ¶¶ 227, 229–30, 232.)  Therefore, the TAC adequately alleges material participation in the allegedly unlawful discriminatory employment decisions by an actor (Workday, through its algorithmic decision-making tools) in California.  This provides sufficient nexus to California for the FEHA to apply to Workday's alleged discriminatory conduct.  Although Workday argues that these allegations are too conclusory because they do not describe which tools were allegedly designed and operated from California, at the pleading stage Plaintiffs' allegations sufficiently describe the artificial intelligence and machine learning tools at issue.

None of Workday's other arguments change this conclusion.  Workday takes the position that its liability as an agent under the FEHA must turn on the liability of its customers: Essentially, if its employer-customer would be outside of the FEHA's reach with respect to a particular employment decision, then Workday is too.  (Motion at 18 ("It is undisputed that out-of-state plaintiffs could not sue out-of-state employers under FEHA for employment decisions made outside of California.").)  However, Workday's argument is at odds with the FEHA's concept of agent liability, as described by the California Supreme Court in *Raines v. U.S. Healthworks Medical Group*, 534 P.3d 40 (Cal. 2023).  Under *Raines*, Workday is not subject to derivative liability under the FEHA based on its employer-customer's liability; instead, it is directly liable for its "own engagement in FEHA-regulated activities on the employer's behalf." *Id.* at 53.  As the California Supreme Court explained, its "rule holding that the business-entity agents of an employer can be held liable for FEHA violations neither delegates the employer's FEHA obligations nor abrogates the employer's FEHA liability. . . . it [] increases the number of defendants that might share liability for the plaintiff's damages." *Id.*

As the *Raines* court reasoned, holding business-entity agents like Workday liable for their *own* discriminatory conduct within the scope of the FEHA is consistent with public policy and the "remedial purposes" of the FEHA. *Id.* at 52 (citing Cal. Gov't Code § 12993(a)). First, it may well be that the employer has no knowledge of the agent's discriminatory practices. Second, business-entity agents will frequently provide their services to many employers, opening the door to systemic industry-wide discriminatory practices. Therefore, FEHA's remedial purpose is served by imposing liability under California law on the "entity that is most directly responsible for the FEHA violation," and "that is in the best position to implement industry-wide policies that will avoid FEHA violations." *Id*.

Workday argues that if its operations in California alone subject it to liability under the FEHA, this would amount to an impermissibly exterritorial application, converting the California statute "into a national employment discrimination statute" and raising "serious constitutional concerns." (Dkt. No. 313 at 11.)[2] In support, Workday cites *Campbell*, where the California Court of Appeals declined to apply the FEHA to alleged sexual harassment of a non-California resident that had occurred on the high seas. 50 Cal. Rptr. 2d at 631–32. The *Campbell* court explained that "the FEHA imposes no residency requirement on either the employer or the person aggrieved and no limitation based on where the conduct occurred" but "[a]t some point, a line must be drawn between those situations where the law applies and those where it does not." *Id.* at 632. Reviewing the summary judgment record, the court found no evidence that anyone in California had participated in or ratified the alleged misconduct towards the non-California resident. *Id.* at 631. The court then held that the FEHA "should not be construed to apply to non-residents employed outside the state when the tortious conduct did not occur in California." *Id.* at 633.

---

[2] At the hearing on the Motion to Dismiss, Workday's counsel referred in passing to the Commerce Clause, the Full Faith and Credit Clause, and the Due Process Clause of the United States Constitution. However, because Workday's briefing raises "constitutional" concerns only in a highly generalized manner, this order does not individually address the constitutional provisions or related cases raised for the first time at oral argument.

Applying *Campbell* confirms the FEHA's applicability to the alleged conduct here. Plaintiffs allege that Workday designs, develops, and operates tools from California that allegedly evaluate, rank, and reject job applications submitted to employers nationwide in a discriminatory fashion.  Whereas all the tortious conduct in *Campbell* occurred out-of-state, Workday allegedly engages in tortious discriminatory conduct in California to carry out duties that it has been delegated by its employer-customers, who themselves may be entirely unaware of the allegedly discriminatory nature of Workday's algorithms.  *See, e.g.*, *Sims v. Worldpac Inc.*, No. 12-cv-05275-JSW, 2013 WL 663277, at *3–4 (N.D. Cal. Feb. 22, 2013) (out-of-state resident stated a claim under the FEHA where the decision to terminate him was allegedly made by an individual working in California).  Therefore, Workday may fairly be held to account under the FEHA for its own California-based conduct.[3]

Indeed, it is difficult to see how applying California law to a company headquartered in California for its own California-based conduct raises serious constitutional concerns.  To be clear, this is not a lawsuit in which, for example, Plaintiffs seek to hold an out-of-state employer using Workday's platform liable under the FEHA for its hiring of non-California employees based solely on Workday's participation in the hiring process from California.  As the *Raines* Court explained, an agent's liability is analyzed independently of the employer's liability. *Raines*, 534 P.3d at 52.  Therefore, the out-of-state employers' liability is not at issue in this case, and this order does not reach the separate question of when an out-of-state employer hiring non-California employees might face liability under the FEHA for the actions of its California-based agents.

Finally, Workday argues that the Court should resolve this issue by looking to choice-of-law analysis in products liability cases.  *See Chen v. Los Angeles Truck Centers, LLC*, 255 Cal. Rptr. 3d 559 (Ct. App. 2019).  Those cases, however, do not shed light on the key issue of the

---

[3] This order does not reach whether the allegation that Workday's AI products were developed in California, standing alone, would satisfy the FEHA's nexus requirement.  As alleged, Workday's products were both developed in *and* operated from California.  Taken together, these allegations satisfy the nexus requirement at the pleading stage.

FEHA's text, structure, or purpose, in interpreting the statute's reach. For example, the FEHA's stated purpose is to "provide effective remedies that will both *prevent and deter unlawful employment practices* and redress the adverse effects of those practices on aggrieved persons." Cal. Gov't Code § 12920.5 (emphasis added). The FEHA seeks to address wrongful conduct by employers and their agents, and not just to provide compensation to aggrieved workers. As such, wrongful conduct within California's borders is not properly understood as "extraterritorial" under FEHA, regardless of where an aggrieved worker resides and is employed.

Furthermore, the choice-of-law analysis in the products liability context is of limited persuasive value because Workday's Motion seeks dismissal based on an argument that FEHA may not be applied extraterritorially, not based on application of the traditional three-part choice-of-law test. The traditional choice-of-law test asks:

> First, . . . whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different. Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists. Third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state . . .

*Chen*, 255 Cal. Rptr. 3d at 564 (citation omitted). Workday's Motion does not address these steps. Workday does not identify any other states whose laws conflict with the FEHA or assess how those states' interests are to be weighed against those of California under the FEHA. *Id.* at 563 ("[T]he governmental interest test[] requir[es] an analysis of the respective interests of the states involved.") (citation omitted). As such, in determining that Plaintiffs have sufficiently alleged a California nexus for purposes of their FEHA claims, this order does not reach the separate question of how the choice-of-law analysis would apply to those claims. That analysis is better performed on a fuller factual record at a later stage, such as class certification or summary judgment, in any event. *A.J. v. LMND Med. Grp., Inc.*, No. 23-cv-03288-RFL, 2024 WL 4579143, at *2 (N.D. Cal. Oct. 25, 2024).

7

Workday's Motion to Dismiss Plaintiffs' FEHA claims based on a lack of nexus to California is denied.

**B.      The Amendments to Hughes's ADA Claim are Permissible Under the Court's Prior Order**

Hughes's ADA claim was previously dismissed because Hughes had not plausibly alleged that Workday's algorithm-based applicant screening tools discriminate against her on the basis of her disability of asthma and cancer survivorship.  Motion to Dismiss Order, 2026 WL 636719, at *3.  The TAC alleges that "algorithmic hiring tools can identify and rely upon [] proxy indicators of illness or health-related limitations" such as "medical-related leave, or patterns consistent with treatment and recovery," and "can disproportionately flag and screen out such applicants based on inferred health status rather than job-related qualifications."  (TAC ¶¶ 57–59.)  The TAC alleges that Hughes experienced a "pattern of rapid, uniform rejection across multiple employers [] consistent with the operation of Workday's algorithmic screening tools identifying and acting upon proxy indicators of disability and health status."  (*Id.* ¶ 63.)

Workday does not contest the sufficiency of these allegations to state an ADA claim. Instead, Workday argues that the Court did not authorize the "addition of new theories of proxy discrimination for physical disabilities" and that Hughes was limited to pleading how her "disability discrimination claim comports with the complaint's existing allegations" related to mental and cognitive disabilities.  (Motion at 14–15.)  However, the Motion to Dismiss Order contains no such limitation.  The Order found that "there are no factual allegations in the SAC describing how Workday allegedly discriminates against applicants on the basis of physical disabilities" and invited Hughes to correct that deficiency.  2026 WL 636719, at *3.  The additional factual allegations are squarely within the scope of the leave to amend.  Workday also argues that it was improper for Plaintiffs to amend their class allegations to mirror Hughes's claim.  But Hughes brings her claims individually and on behalf of "all others similarly situated." (TAC at 1.)   Therefore, Plaintiffs were entitled to amend their class allegations as well to reflect

8

the scope of Hughes's individual claim.  Workday's Motion is denied as to Hughes's ADA claim.

###### C.    Rowe Did Not Seek Leave to Add a Race Discrimination Claim

In the TAC, Rowe seeks for the first time to assert a race-based disparate impact claim under Title VII based on her race: Asian American.  (Dkt. No. 301-2 ¶¶ 170–79.)[4]  The TAC also adds references to Asian American applicants to Plaintiffs' class action allegations for the first time.  (*Id.* ¶¶ 17–20, 23.)  Plaintiffs argue that the amendment is not barred because the SAC already contained such a claim and "[t]he TAC says nothing more on that subject or claim than was pled verbatim in the SAC."  (Dkt. No. 311 at 5–7.)  This is inaccurate.  The SAC did not contain such a claim, nor have Plaintiffs previously sought or received authorization to add one to the TAC.

The SAC did allege that Rowe is "Asian American," but contained only a single passing conclusory reference to race discrimination, without any facts alleged.  Specifically, Count VIII of the SAC (one of the FEHA disparate impact claims) contained the following allegation: "Rowe . . . has been disproportionately affected by [Workday's] AI/ML products, which have a disparate impact on Asian, female, and over the age of 40 applicants."  (SAC ¶ 270.)  No factual allegations in the SAC supported a claim that Workday's algorithm-based applicant screening tools discriminate against Asian American applicants.  To the contrary, the race-related factual allegations in the SAC described discrimination against African American and Black applicants. (*Id.* ¶¶ 63, 65, 69–70, 77, 119, 125–126, 143–47.)  Likewise, the class action allegations in the SAC expressly related only to African American applicants.  (*Id.* ¶¶ 11–12, 16.)

In light of the framing of the SAC, the allegation that Rowe is Asian American along with the single conclusory reference in Count VIII of the SAC was insufficient to put Workday

---

[4] The TAC does not assert a race-based discrimination claim under the FEHA as to Rowe.  Count VIII of the TAC, which contains Plaintiffs' "Disparate Impact Discrimination on the Basis of Race" FEHA claim, states only that "Rowe was disproportionately impacted by Defendant's AI- and machine learning-driven screening tools, which have a disparate impact on *female* applicants."  (TAC ¶ 288.)

on notice that Rowe intended to assert a disparate impact claim on the basis of race or that she intended to do so on behalf of a proposed class. And even assuming the allegation was sufficient to put Workday on *notice* of such a claim, the allegation was too conclusory to plausibly *state* a claim. As an alternative, Plaintiffs argue that "[n]othing in the Court's Order limited Plaintiffs['] race claims to a particular subgroup or prohibited Plaintiffs from alleging that the challenged system produces discriminatory effects across protected classes." (Dkt. No. 311 at 6.) But, for the past three years, Plaintiffs did not allege a general race discrimination theory. Even after Rowe was added to the SAC, Plaintiffs continued to limit all of their allegations of race discrimination to the experience of African American applicants. Rowe's race-based disparate impact claim is new, and was not authorized by the Court.

Plaintiffs request leave to amend in a footnote. (Dkt. No. 311 at 6 n. 1.) The request is waived. *See Foti v. McHugh*, 247 F. App'x 899, 901 n.2 (9th Cir. 2007). And even if it were not, Rowe has failed to show good cause for why she did not assert her claim in the SAC. Therefore, Rowe's race-based disparate impact claim is dismissed, and the unauthorized allegations added to the TAC in support of the claim are stricken. This order does not reach Workday's timeliness argument.

### D.    Plaintiffs' Additional Factual Allegations

Plaintiffs have added a variety of other factual allegations to the FAC that do not appear to directly relate to the deficiencies identified in Plaintiffs' FEHA and ADA claims. Workday moves to strike these "new and different factual allegations" as unauthorized. (Dkt. No. 301 at 10, 15.) However, the Motion to Dismiss Order only prohibited Plaintiffs from adding "new claims or parties" without leave, it did not expressly prohibit Plaintiffs from adding new factual allegations to their existing claims. Having reviewed the amendments to the TAC, Workday has only identified one amendment that constitutes a new claim or legal theory: that Workday is liable as an employer because it "use[s] the challenged recruitment and hiring procedures in screening and selecting its own employees." (*See*, *e.g.*, TAC at 3; *id.* ¶¶ 9, 195, 230, 263, 279.) That legal theory was not in the SAC. The bare allegation in the SAC that two named Plaintiffs

applied "directly to Workday" was insufficient to put Workday on notice, or to plead, a claim against Workday for its own recruitment and hiring practices.  (SAC ¶¶ 7, 46.)

This additional claim is dismissed, and the supporting allegations are stricken, because they are unauthorized.  The remaining additional factual allegations were not expressly prohibited by the Motion to Dismiss Order and are not "redundant, immaterial, impertinent, or scandalous."  Fed. R. Civ. P. 12(f).  Therefore, the motion is otherwise denied as to the additional factual allegations.

## III.    CONCLUSION

For the reasons stated above, the Court rules on Workday's Motion to Dismiss and to Strike as follows:

1. The Motion to Dismiss is **GRANTED** as to Rowe's disparate impact race discrimination claim (whether under Title VII or the FEHA), and any supporting allegations not found in the SAC are stricken;

2. The Motion to Dismiss and to Strike Hughes's ADA claim, the supporting allegations, and the related class allegations is **DENIED**;

3. The Motion to Dismiss and to Strike Plaintiffs' direct employer claim(s) about Workday's own hiring and recruitment is **GRANTED**, and any supporting allegations not found in the SAC are stricken;

4. The Motion to Dismiss the FEHA claims is otherwise **DENIED**;

5. The Motion to Strike the other new factual allegations is **DENIED**.

By **June 29, 2026**, Workday shall file a proposed order that includes a version of the TAC striking allegations in a manner consistent with this order.  Workday shall also email a Word compatible copy of the proposed order to rflpo@cand.uscourts.gov.

Plaintiffs' previously dismissed claims remain dismissed.  (*See* Dkt. No. 80.)  No further leave to amend is granted.

**IT IS SO ORDERED.**

Dated: June 22, 2026

_____
RITA F. LIN
United States District Judge