UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| DEREK L. MOBLEY, et al., | Case No. 23-cv-00770-RFL (LB) |
| Plaintiffs, | **DISCOVERY ORDER** |
| v. | Re: ECF No. 344 |
| WORKDAY, INC., | |
| Defendant. | |

### INTRODUCTION

The parties have discovery disputes. Workday moves to compel responses to its Request for Production and Special Interrogatories to all opt-in plaintiffs and seeks an order limiting the parties to the same random sample of 425 opt-in plaintiffs. The plaintiffs respond that Workday did not engage in the process for seeking this discovery provided in the court's order (ECF No. 296), Workday is not entitled to discovery from every opt-in plaintiff, the plaintiffs served timely objections, Workday cites no authority allowing it to serve a single set of interrogatories and request for production on all opt-in plaintiffs, and the sampling issue is premature because the parties have not met and conferred about it.

The court orders the discovery, but the sampling issue is premature.

ORDER – No. 23-cv-00770-RFL (LB)

**STATEMENT**

In March 2026, the plaintiffs moved for a protective order limiting individualized discovery of the conditionally certified opt-in plaintiffs.[1] Workday opposed the motion, asserting that it needed individualized discovery to determine whether opt-ins fall within the collective definition and to prepare for decertification.[2] In addressing the dispute, the court noted that it "cannot tell whether some of the information is available from opt-in forms or Workday's own records" and could not "understand why names and ages, for example, can't be cross referenced with Workday's or other records to obtain applications and resumes uploaded. At least conceptually, the discovery seems attainable without undue burden."[3] The court determined that a sample of 425 seemed reasonable for pre-certification discovery and ordered the parties to "meet and confer regarding (1) what information is available and in what form, (2) what information is needed and where it is located, and (3) the manner of selecting additional opt-ins for a representative sample comprising 425."[4]

In April 2026, Workday sent the plaintiffs a meet-and-confer letter stating that Workday sought the opt-in plaintiffs' birthdates, job titles, companies they applied to, application dates, and resumes.[5] Workday explained that it did not have possession, custody, or control of this data (which belonged to its customers) and that "[t]he opt-in plaintiffs are the only parties in possession of the information necessary to determine whether they preliminarily meet the collective definition."[6] The parties later conferred by video, and Workday reiterated what information it sought from opt-in plaintiffs and that Workday did not have access to the information.[7] The plaintiffs "requested

---

[1] Disc. Letter Br. – ECF No. 292. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Disc. Letter Br.  – ECF No. 294.

[3] Order – ECF No. 296 at 2.

[4] *Id.* at 3.

[5] Email, Ex. 1 to Disc. Letter Br. – ECF No. 344-2.

[6] *Id.* at 4.

[7] Email, Ex. 2 to *id.* – ECF No. 344-3 at 2–3.

United States District Court
Northern District of California

specifically what information Workday is seeking from the opt-in plaintiffs," and Workday said that it would serve discovery requests.[8]

"Workday requested that Plaintiffs promptly provide their position on the requested discovery so it could raise the issue" in a letter brief if necessary.[9] On May 15, 2026, Workday served on all opt-in plaintiffs (1) a request for production seeking resumes submitted with jobs since August 2020 with employers who used Workday's or HiredScore's software and (2) interrogatories seeking the name, birthdate, city, and state for each opt-in plaintiff (No. 1) and the name of the employers and jobs applied for and dates of application (No. 2).[10] The plaintiffs served objections in response.[11]

Workday originally served this discovery letter brief on the plaintiffs on May 19, 2026.[12] The plaintiffs sought a stay of discovery, which the court granted on May 25, 2026.[13] Workday re-served its letter on June 1, 2026, after the stay was lifted.[14] The parties exchanged written proposals about an informal method for collecting information that would resolve Special Interrogatory No. 2 and RFP No. 1 for all opt-in plaintiffs but failed to reach an agreement.[15] The parties reached an agreement in principle to a random sample of an additional 425 opt-in plaintiffs for additional discovery but did not agree on whether that sample would equally bind each party.[16]

**ANALYSIS**

Workday contends that (1) the court should compel the plaintiffs to respond to its Request for Production and Special Interrogatories because Workday has no independent means of obtaining the information and has issued narrowly tailored requests after meeting and conferring with the

---

[8] *Id.* at 3.

[9] *Id.*

[10] Objs. to Req. for Production & Interrogs., Exs. 3–4 to *id.* – ECF No. 344-4–5.

[11] *Id.*

[12] Burrell Decl. – ECF No. 355-1 at 3 (¶ 3).

[13] Order – ECF No. 335.

[14] Order – ECF No. 340; Burrell Decl. – ECF No. 355-1 at 4 (¶ 7).

[15] Burrell Decl. – ECF No. 355-1 at 5 (¶ 12).

[16] *Id.* at 6 (¶ 16).

plaintiffs and (2) the plaintiffs should be limited (as Workday would be) to the sample of 425 individual plaintiffs.[17] The plaintiffs respond that (1) Workday did not engage in the process provided in the court's order (ECF No. 296) for seeking this discovery, (2) Workday is not entitled to discovery from every opt-in plaintiff, (3) the plaintiffs served timely objections, (4) Workday cites no authority allowing it to serve a single set of interrogatories and requests for production on all opt-in plaintiffs, and (5) the dispute about the 425-plaintiff sample is not ripe because it was added to the letter brief before the parties had conferred on it.[18]

The court orders responses to Workday's Request for Production and Special Interrogatories, but the sampling issue is premature.

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable. Fed. R. Civ. P. 26(b). "Pretrial discovery is ordinarily accorded a broad and liberal treatment." *Peng v. Nw. Mut. Life Ins. Co.*, No. 17-cv-01760-SI, 2017 WL 3007030, at *1 (N.D. Cal. July 14, 2017) (cleaned up and quoting *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993)). Moreover, "the test for relevance is not overly exacting: evidence is relevant if it has 'any tendency to make . . . more or less probable . . . [a] fact [that] is of consequence in determining the action.'" *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, No. MDL 2672 CRB (JSC), 2018 WL 340640, at *1 (N.D. Cal. Jan. 9, 2018) (quoting Fed. R. Evid. 401).

The party moving to compel discovery "has the initial burden of establishing that the information sought is relevant to any party's claim or defense and proportional to the needs of the case." *Impinj, Inc. v. NXP USA, Inc.*, No. 19-cv-03161-YGR (AGT), 2022 WL 16586886, at *2

---

[17] Disc. Letter Br. – ECF No. 344-1 at 3.

[18] Opp'n – ECF No. 355 at 2–3.

United States District Court
Northern District of California

(N.D. Cal. Nov. 1, 2022) (cleaned up). The party resisting discovery bears the burden of showing that the discovery should not be allowed and of supporting its objections with competent evidence. *Lofton v. Verizon Wireless LLC*, 308 F.R.D. 276, 281 (N.D. Cal. 2015). Under Rule 26(b)(2)(C), the court must limit discovery that is "unreasonably cumulative or duplicative," obtainable from a less burdensome source, or where the burden "outweighs its likely benefit."

Workday has met its initial burden. The parties do not dispute the relevance of the discovery and seemingly agree that at least some discovery from all opt-ins is appropriate, with the plaintiffs having "previously produced the documents and information identified in Special Interrogatory No. 1."[19] The plaintiffs point to the court's order stating that "[a] total of 425 [opt-in plaintiffs] seems reasonable for pre-certification discovery" but ignore that the same order contemplated "discovery from all opt-ins."[20]

The plaintiffs have not established that the discovery should not be ordered. They contend that Workday failed to engage in the process described in the court's order for seeking this discovery. This is not so. The court ordered the parties to meet and confer about what information was available and its form, what information was needed, and where it is located.[21] The parties conferred by letter and video, and Workday explained what information it needed and its inability to access it. The parties even contemplated an informal process for obtaining the discovery from the plaintiffs but could not come to an agreement. This fulfills the court's instructions to meet and confer.

The plaintiffs assert that the discovery Workday seeks is the type of "mass individualized discovery courts limit in collective actions because it creates burden out of proportion to its likely benefit" and that Workday cites no authority permitting it to serve a single set of discovery requests on all opt-in plaintiffs.[22] But these arguments are undercut by the plaintiffs' having

[19] Pls.' Suppl. Resp., Ex. 5 to Mot. – ECF No. 344-6 at 3.

[20] Order – ECF No. 296 at 2–3; *see* Tr. – ECF No. 156 at 7 ("[T]he parties need to do discovery on all of the opt-in Plaintiffs to figure out . . . who of the opt-ins received a recommendation that they not be hired.")

[21] Order – ECF No. 296 at 3.

[22] Opp'n – ECF No. 355 at 3.

provided the discovery requested in Special Interrogatory No. 1. The cases the plaintiffs cite do not forbid individualized discovery from opt-ins. *See Greist v. LendUS, LLC*, No. 24-cv-02411-AMO (LB), 2026 WL 242226, at *1 (N.D. Cal. Jan. 29, 2026) ("The parties agreed to limit discovery to a specific number of opt-in plaintiffs."); *Cranney v. Carriage Servs., Inc.*, No. 2:07–cv–01587–RLH–PAL, 2008 WL 2457912, at *2 (D. Nev. June 16, 2008) (noting that some courts have permitted individualized discovery of opt-in plaintiffs and others have not); *Smith v. Lowe's Home Ctrs., Inc.*, 236 F.R.D. 354, 357 (S.D. Ohio 2006) (same), *abrogated on other grounds by Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003 (6th Cir. 2023). To the extent that the opt-in plaintiffs' not knowing which employers used Workday's or HiredScore's software contributes to burden, the opt-in plaintiffs can not be compelled to provide information they do not have.[23]

For the sampling issue, the plaintiffs represent that the parties have not satisfied the meet-and-confer requirement for the sampling issue, and Workday does not dispute this. This dispute is premature.

### CONCLUSION

The court orders the discovery requested in Workday's Request for Production and Special Interrogatories. The parties must meet and confer about the effect of choosing a random sample of opt-in plaintiffs in an effort to resolve the issue on their own before bringing it to the court.

**IT IS SO ORDERED.**

Dated: June 27, 2026

_____
LAUREL BEELER
United States Magistrate Judge

---

[23] Opp'n – ECF No. 355 at 3.