Lee D. Winston, *Admitted Pro Hac Vice*
lwinston@winstoncooks.com
Roderick T. Cooks, *Admitted Pro Hac Vice*
rcooks@winstoncooks.com
Bethany Mae Logan, *Admitted Pro Hac Vice*
bneal@winstoncooks.com
WINSTON COOKS, LLC
420 20th Street North, Suite 2200
Birmingham, AL 35203
Telephone: (205) 502-0970
Facsimile: (205) 278-5876


**Local Counsel:**
Jay Greene, JD, CPA
GREENE ESTATE, PROBATE, AND ELDER
LAW FIRM
447 Sutter Street, Suite 435
San Francisco, CA 94108

Robert L. Wiggins, Jr., *Admitted Pro Hac Vice*
rwiggins@wigginschilds.com
Ann K. Wiggins, *Admitted Pro Hac Vice*
awiggins@wigginschilds.com
Samuel Fisher, Jr, *Admitted Pro Hac Vice*
sf@wigginschilds.com
Jennifer Wiggins-Smith, *Admitted Pro Hac Vice*
jsmith@wigginschilds.com
Nicki Leili Lawsen, *Admitted Pro Hac Vice*
nlawsen@wigginschilds.com
Freddrick M. Moore, *Admitted Pro Hac Vice*
mmoore@wigginschilds.com
WIGGINS CHILDS PANTAZIS FISHER &
GOLDFARB, LLC
301 North 19th Street
Birmingham, Alabama 35203
Telephone: (205) 314-0500
Facsimile: (205) 254-1500

Lori Kisch, *Admitted Pro Hac Vice*
lkisch@wigginschilds.com
Meredith Burrell, *Admitted Pro Hac Vice*
mburrell@wigginschilds.com
Jennifer M. Swedish, *Admitted Pro Hac Vice*
jswedish@wigginschilds.com
WIGGINS CHILDS PANTAZIS FISHER &
GOLDFARB
1050 Connecticut Avenue NW, Suite 500
Washington, DC 20036
Telephone: (205) 314-0500
Facsimile: (205) 254-1500

*Attorneys for the Plaintiff and Proposed Class and Collective Members*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DEREK L. MOBLEY; FAITHLINH ROWE; JILL E. HUGHES; AND SHEILAH JOHNSON-ROCHA,** on behalf of themselves and all others similarly situated,<br><br>       Plaintiffs,<br><br>   v.<br><br>**WORKDAY, INC.**<br>       Defendant. | **Case No. 3:23-cv-00770-RFL-LB**<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO CHANGE TIME PURSUANT TO CIVIL L.R. 6-1 AND 6-3(a) TO EXTEND CLASS CERTIFICATION AND COLLECTIVE DECERTIFICATION SCHEDULE**<br><br>Courtroom: 15, 18th Floor<br><br>Judge: Hon. Rita F. Lin<br><br>Third Amended Complaint Filed: March 27, 2026 |

## I.    INTRODUCTION

Workday's Opposition is heavy with accusation and characterization of the discovery that has occurred since January 2026. Stripped of its characterizations, Workday's Opposition dispels neither of the premises on which Plaintiffs' demonstration of good cause for a modest 60-day extension is based. Indeed, it further demonstrates a record of sustained discovery activity since the Court's last extension, and it does not dispute the central facts regarding its late disclosures to Plaintiffs. It is this record, not Workday's characterization of it, that the Court must evaluate, and Plaintiffs respectfully submit that the record demonstrates good cause. Plaintiffs' bases for seeking an extension are its diligent pursuit of discovery since the January 2026 extension and the need to evaluate materials Workday produced in June 2026. Workday attempts to recharacterize Plaintiffs' motion as based on a generic desire for more discovery, but Workday's characterization ignores that the particular discovery Plaintiffs identify – applicant data and bias audits – have been the subject of active discussion and motions practice that is still not fully resolved.

## II.    ARGUMENT

### A. Workday's Characterizations Do Not Undermine Good Cause

Workday's filing confirms sustained discovery activity since January 2026, as it does not dispute that Plaintiffs met and conferred over bias-audit and customer data in February and March 2026; filed a letter brief that led to an order compelling production; pursued an objection to the Magistrate Judge's ruling that this Court remanded for further consideration; took four depositions since the January extension after reprioritizing their discovery plan to assure that they could, without leave of court, have depositions left for expert witnesses identified during the certification briefing process; served a revised 30(b)(6) notice and prepared for that deposition; and pursued third-party subpoenas notwithstanding largely uncooperative responses.

Although Workday makes much of postponed depositions, a schedule of shifting deposition dates and evolving deposition priorities in a complex, nationwide class and collective action does not, by itself, show a lack of diligence. Workday has identified friction points typical of contentious discovery in a case of this scale, but that is a far cry from the "carelessness" that courts have found incompatible with diligence. *See Johnson v. Mammoth Recreations, Inc.*, 975

REPLY ISO MOT. TO CHANGE TIME FOR CLASS CERTIFICATION AND COLLECTIVE DECERTIFICATION BRIEFING
CASE NO. 3:23-CV-00770-RFL-LB

1

F.2d 604, 609 (9th Cir. 1992). Additionally, the Court need not resolve every disputed characterization in Workday's declaration to grant this motion, because the Motion's good cause showing does not depend on that record alone. It rests independently and powerfully on the two intervening disclosures addressed in Section B below.

### B. Bias Audits and Customer Data

Workday's attempt to minimize its late production of the three internal bias evaluation reports to a page count misses what actually matters under the good cause standard: not simply the length of the documents, but their content, their history, and their timing. These reports contain far more detailed methodological and statistical information about Workday's internal bias testing than anything Workday had previously produced, including the AI fact sheets Workday's counsel had represented were comparable. Declaration of Robert Wiggins, ECF No. 374 ("Wiggins Decl.") ¶¶ 39-41. Workday's counsel had instructed a data scientist not to answer numerous questions about the results of these same evaluations based on privilege, only to produce the underlying reports as "non-privileged" days later. *Id.* ¶¶ 36-39; *see also* Declaration of Meredith L. Burrell ("Burrell Decl."), ¶ 4. Workday does not dispute that these are among the documents that Judge Beeler ordered produced no later than April 6, 2026 — nearly three months before Workday actually produced them on June 29, just two days before the Rule 30(b)(6) deposition on the very topic the reports address. Wiggins Decl.. ¶¶ 28, 35, 46; ECF No. 280.

The timing of Workday's production deprived Plaintiffs of the opportunity to seek data underlying these reports and analyze it in advance of its depositions of relevant witnesses and in advance of its class certification briefing. Significantly, the 30(b)(6) deposition of Workday revealed significant information about how Workday accessed the customer data it used to conduct these analyses, s*ee* Burrell Decl., ¶5, and who has had access to the reports since their publication, as early as April 2025. *Id.* ¶ 6. These revelations, combined with the testimony cited with Plaintiffs' Motion about Workday's possession of the data, *see* Wiggins Decl., ¶ 45, indicate that there is good cause to permit Plaintiffs sufficient time to explore the information, analyses and conclusions in these reports and to seek relief as necessary regarding Workday's refusal to produce the non-privileged data underlying these bias audit evaluations.

REPLY ISO MOT. TO CHANGE TIME FOR CLASS CERTIFICATION AND COLLECTIVE DECERTIFICATION BRIEFING
CASE NO. 3:23-CV-00770-RFL-LB

2

Workday's suggestion that Plaintiffs already had a fair opportunity to explore these documents because a 30(b)(6) designee was deposed two days following their production gets the timing backwards. Plaintiffs deposed the data scientist who authored these bias evaluation reports, on June 18, before the reports were produced, and Workday's counsel instructed her not to answer the very questions the later-produced reports address. *Id.* ¶¶ 36-37; Burrell Decl. ¶ 4. A deposition of a corporate designee conducted after that opportunity was lost does not cure the prejudice, particularly in light of the designee's lack of preparedness on the reports. *See* Section II.C, *infra*.

Workday has asserted and undoubtedly will reassert that it cannot produce the data underlying these bias evaluations due to limitations in its customer contracts. Workday's assertion on this front has been oft-repeated but not fully tested and remains under consideration by Judge Beeler. Plaintiffs requested leave to supplement the record before Judge Beeler with these bias evaluations, which would have already been in the record on Plaintiffs' original motion to compel, ECF No. 310, if Workday had timely produced them as ordered. *See* ECF No. 280.

Workday's observation that Plaintiffs told Workday they intended to seek an extension before the June 29 production, Opp. at 6; Grundy Decl. ¶ 32, is not the revelation that Workday suggests it is. Plaintiffs themselves submitted that evidence to the Court in their discussion of why a stipulation about an extension could not be reached. As is clear from Plaintiffs' filing, Plaintiffs intended to seek a 30-day extension prior to Workday's late production of bias evaluation reports, and it was Workday's subsequent production of the bias evaluation reports that led Plaintiffs to conclude a longer extension was necessary. Wiggins Decl. ¶¶ 3-4. That sequence shows Plaintiffs responding proportionately to developments as they occurred, not manufacturing a pretext.

Finally, Plaintiffs' reading of Workday's supplement to its initial disclosures is not "strained" and nothing formally limits Workday's disclosure to what it now represents in its Opposition as limited to customer data obtained by Plaintiffs from third parties.

## C. 30(b)(6) Deposition

Workday attempts to make much of the fact Plaintiffs' 30(b)(6) deposition notice covered a broad array of topics, and that it prepared its designees to testify to those topics in just five weeks. That a wide breadth of topics is relevant for corporate designee testimony in a case of this scope

is not surprising. Plaintiffs suggested that the Parties could narrow the topics for the designees appearing before the class certification briefing deadline to address the immediate burden of preparation. *See* Burrell Decl., ¶ 11. Workday did not engage with that suggestion but Workday then objected to Plaintiffs' topics and endeavored to unilaterally narrow them in many instances to say that its designees would testify only "generally" about certain topics. *See id*. As a result, Workday's designee on the topic of bias audits was not prepared to testify fully on the subject, particularly on the details of the late-produced bias evaluation reports that Workday wants credit for producing two days in advance. *See* Burrell Decl., ¶ 7. Workday is not due any credit for magnanimity in making these strategic choices which ultimately served to limit rather than accommodate Plaintiffs' access to discoverable information. ¶¶ 8-10.

### D. <u>Written Discovery</u>

A substantial volume of Workday's document production occurred after May 9, 2025, and its entire production of documents regarding the HiredScore Spotlight and Fetch products occurred on or after October 29, 2025. *See* Burrell Decl. ¶¶ 2-3. Workday's continued repeated assertion that it produced most of the relevant information in this case by May 9, 2025, purportedly to suggest that Plaintiffs should have taken depositions earlier, is misleading and ignores the substantial prejudice Plaintiffs would face had they done so and been unable to re-depose witnesses based on later-produced documents without motions practice.

Workday complains that Plaintiffs "waited until June 12" to serve additional written discovery, *see* Grundy Decl., ¶ 25, but Plaintiffs' present request for an extension is not based on an argument that they need time to review and evaluate responses to that discovery prior to the class certification deadline. Discovery in this case has not been bifurcated, and the current schedule does not include a discovery deadline. There was nothing inherently wrong with Plaintiffs' service of discovery in June. Plaintiffs were planning and preparing that discovery before Workday's disclosure on June 5 that it will rely on customer data to defend against the claims in this case, and the discovery is mentioned in Plaintiffs' Motion because it demonstrates that Plaintiffs diligently sought information about Workday's disclosure promptly after it was made.

REPLY ISO MOT. TO CHANGE TIME FOR CLASS CERTIFICATION AND COLLECTIVE DECERTIFICATION BRIEFING
CASE NO. 3:23-CV-00770-RFL-LB

4

### E. Third Party Discovery

Plaintiffs' continued need to pursue third-party discovery does not undermine good cause. In addition to the reasons set forth in its Motion, this third-party discovery bears on issues beyond class certification and Plaintiffs will continue to pursue it, notwithstanding its inherent challenges and Plaintiffs' position that Workday's access to much relevant data is within the reach of Rule 34. Workday is incorrect that no customers have asserted that Plaintiffs should seek relevant information from Workday. *See* Burrell Decl. ¶¶ 11-12.

### F. Briefing Cadence

Plaintiffs' request for an adjustment to the briefing cadence is made to create something close to parity between the Parties' opposition times. Workday's argument that the cadence was determined a long time ago does not bear on its fairness and ignores the fact that the schedule requires Plaintiffs to prepare two submissions simultaneously, both of which are anticipated to involve expert depositions and preparation of reports in half the time Workday has to prepare its class certification opposition.

### G. Prejudice to Workday

Workday's prejudice argument rests on generalized harm — the fact that this case has been pending for three years and that Workday continues to incur defense costs — rather than any specific harm flowing from a sixty-day adjustment to the schedule. *See* Opp. at 6-7. That is not the kind of prejudice that outweighs good cause. Workday will have the same opportunity to brief decertification and oppose certification that it has always had; it will simply do so after Plaintiffs and their experts have had a fair chance to evaluate evidence Workday produced, or first disclosed an intent to rely on, only in the final weeks before the current deadline.

### III.    CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that their Motion be granted.

Dated: July 10, 2026

Respectfully submitted,

*/s/ Meredith L. Burrell*
Meredith L. Burrell *(admitted pro hac vice)*

Lee D. Winston (ASB: 6407O72L)
*Admitted pro hac vice*
lwinston@winstoncooks.com
Roderick T. Cooks (ASB: 5819O78R)
*Admitted Pro Hac Vice*
rcooks@winstoncooks.com
Bethany Mae Logan (ASB: 1360X15Z)
*Admitted Pro Hac Vice*
bneal@winstoncooks.com
Winston Cooks, LLC
420 20th Street North, Suite 2200
Birmingham, Alabama 35203
Telephone: (205) 502-0970
Facsimile: (205) 278-5876


**LOCAL COUNSEL:**
Jay Greene
Greene Estate, Probate, and Elder Law Firm
447 Sutter Street, Suite 435
San Francisco, CA 94108
Phone 415-905-0215
greeneattorney@gmail.com

Robert L. Wiggins, Jr., *Admitted Pro Hac Vice*
rwiggins@wigginschilds.com
Ann K. Wiggins, *Admitted Pro Hac Vice*
awiggins@wigginschilds.com
Samuel Fisher, Jr, *Admitted Pro Hac Vice*
sf@wigginschilds.com
Jennifer Wiggins-Smith, *Admitted Pro Hac Vice*
jsmith@wigginschilds.com
Nicki Leili Lawsen, *Admitted Pro Hac Vice*
nlawsen@wigginschilds.com
Freddrick M. Moore, *Admitted Pro Hac Vice*
mmoore@wigginschilds.com
WIGGINS CHILDS PANTAZIS FISHER
& GOLDFARB, LLC
301 North 19th Street
Birmingham, Alabama 35203
Telephone: (205) 314-0500
Facsimile: (205) 254-1500
Lori Kisch, *Admitted Pro Hac Vice*
lkisch@wigginschilds.com
Meredith Burrell, *Admitted Pro Hac Vice*
mburrell@wigginschilds.com
Jennifer M. Swedish, *Admitted Pro Hac Vice*
jswedish@wigginschilds.com
WIGGINS CHILDS PANTAZIS FISHER
& GOLDFARB
1050 Connecticut Avenue NW, Suite 500
Washington, DC 20036
Telephone: (205) 314-0500
Facsimile: (205) 254-1500

## CERTIFICATE OF SERVICE

I hereby certify that on July 10, 2026, I electronically filed the foregoing document with the United States District Court for the Northern District of California by using the CM/ECF system. I certify that the following parties or their counsel of record are registered as ECF filers and that they will be served by the CM/ECF system:

Jay Patrick Greene      jay@greenelawfirm.com
Julie Ann Totten      jtotten@orrick.com, jponce@orrick.com
Erin M. Connell      econnell@orrick.com
Kayla Delgado Grundy      kgrundy@orrick.com
Alexandria R. Elliott      aelliott@orrick.com

*s/ Meredith L. Burrell*
Of Counsel
Wiggins Childs Pantazis Fisher & Goldfarb
1050 Connecticut Avenue NW, Suite 500
Washington, DC 20036
Telephone: (205) 314-0500
Facsimile: (205) 254-1500