United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| DEREK L. MOBLEY, et al.,<br>Plaintiffs,<br>v.<br>WORKDAY, INC.,<br>Defendant. | Case No. 23-cv-00770-RFL (LB)<br>**DISCOVERY ORDER**<br>Re: ECF No. 414 |

The plaintiffs in this conditionally certified ADEA collective action claim that Workday's algorithmic application discriminates against job applicants aged forty and older.[1] In June, the court ordered the opt-in plaintiffs to respond to two discovery requests: Special Interrogatory No. 2, which asks each opt-in to identify the jobs (employer, position, and application date) that they applied to since August 2020 with employers alleged to have used Workday's or HiredScore's software, and Request for Production No. 1, which asks for the resumes submitted with those applications. The trial judge upheld the order.[2] Neither order set a compliance date. The plaintiffs have not served substantive responses. Now, the parties dispute only the schedule for the plaintiffs' compliance. They agree that the initial production will be on September 21, 2026, and

[1] Order – ECF No. 128. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Orders – ECF Nos. 368, 402.

agree to rolling productions. They dispute the deadline for the production. Workday asks for October 9, 2026, because it wants discovery to prepare for its motion for decertification (due on November 10).[3] The plaintiffs ask for January 20, 2027, asserting that (1) full-collective discovery (directed at more than 15,514 individual opt-in plaintiffs) is not needed for the motion, which adjudicates whether the opt-ins may continue collectively and is illuminated sufficiently by the parties' agreed-to 424-person sample (citing *Campbell v. City of Los Angeles*, 903 F.3d 1090 (9th Cir. 2018)), and (2) October 9 is unworkable given the scale and burdens of production.[4] Workday replies that (1) further delay is "inexcusable" because Workday has received no substantive responses (including in the productions noted by the plaintiffs) in the weeks since the court's order, (2) opt-in discovery is relevant to decertification, (3) the absence of a deadline coupled with the plaintiffs' failing to produce discovery responses is the reason to impose a deadline, not justification for avoiding Rule 37(b), and (4) the plaintiffs can mitigate the risk of potential sanctions for failing to meet an October 9 deadline by showing good cause for missing responses. The plaintiffs offer rolling productions every two weeks until January 20, 2027, "with additional responses beyond that for good cause."[5]

The court orders the following schedule.[6] The plaintiffs must make their initial production by September 21, 2026 (as they agreed), make rolling productions every two weeks after that, and complete production by November 30, 2026. Workday's October 9 date is not feasible for discovery at this scale. But the plaintiffs' open-ended proposal is too indefinite for requests that have been outstanding since April and compelled since June. After the completion date, late responses require a stipulation or a court order supported by good cause specific to the opt-in plaintiffs at issue.

## STATEMENT

The court conditionally certified an ADEA collective of applicants who applied for jobs

[3] Disc. Letter Br. – ECF No. 414 at 3–4.

[4] *Id.* at 5–6.

[5] *Id.* at 7.

[6] The court can decide the dispute without oral argument. Civil L.R. 7-1(b).

United States District Court
Northern District of California

through Workday's platform, allegedly were scored, sorted, ranked, or screened by Workday's artificial-intelligence tools, and received (or whose prospective employers received) a recommendation not to hire.[7] To join, each opt-in certified that they "applied for at least one employment opportunity using Workday's application platform."[8] About 15,154 individuals filed consent-to-join forms.

Workday served the opt-in discovery on April 15, 2026; responses were due May 15, 2026. The plaintiffs served objections and no substantive responses. On June 29, 2026, the court ordered the plaintiffs to respond, and on July 23, 2026, the trial judge denied the plaintiffs' motion for relief from that order. Neither order fixed a compliance date.[9]

The parties met and conferred by videoconference on August 14 and August 21, 2026, and exchanged emails on August 17 and August 20. Workday asked for a date certain to complete production and said that, absent agreement, it would ask the court to set September 21, 2026. On August 21, the plaintiffs committed by email to produce all responsive information collected by September 21, 2026, and to make rolling productions every two weeks thereafter, but they would not commit to a completion date.[10]

The plaintiffs point to two productions: an August 19 spreadsheet with information about all 15,154 opt-ins, and a September 1 production of more than 3,200 pages of supplemental documents concerning the 195 early opt-in plaintiffs. Workday responds that the spreadsheet — full names, email addresses, dates of birth, cities, states, and platform metadata — was a compromise production responsive to different requests and contains nothing responsive to Interrogatory No. 2 or Request for Production No. 1. It is undisputed that the plaintiffs have served no responses to the compelled requests.[11]

Two other dates frame the dispute. Workday's decertification motion is due November 10,

---

[7] Disc. Letter Br. – ECF No. 414 at 7.

[8] *Id.* (quoting ECF No. 203).

[9] *Id.* at 3; Order – ECF No. 368; Order – ECF No. 402.

[10] Disc. Letter Br. – ECF No. 414 at 3.

[11] *Id.* at 6–7.

2026. And the parties agreed to conduct decertification discovery from a 425-opt-in sample. Workday served that discovery on August 21, 2026.[12]

On burden, the plaintiffs' counsel declares the following: (1) opt-ins have made about 825 inquiries since August 24, 2026, many expressing confusion about how to respond; (2) many opt-ins applied to hundreds or even thousands of jobs during the six-year period; (3) the Workday platform often lacks a complete application history (portals show partial histories, accounts disappear when employers stop using Workday, and the site sometimes returns service-interruption errors); (4) opt-ins instead reconstruct their histories through email, browser-history, and computer-file searches, which is slow, and some no longer have the email accounts or computers they used; and (5) opt-ins have asked Workday for a list of employers that used its software during the relevant period, which Workday has declined to provide.[13]

**ANALYSIS**

District courts have "wide discretion in controlling discovery." *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988); *see* Fed. R. Civ. P. 1, 16(b)–(c), 26(b). A party ordered to provide discovery must comply diligently and within a reasonable time, whether or not the order names a date. The plaintiffs implicitly concede as much: they invoke Rule 34(b)(2)(B)'s reasonable-time framework and say that their obligation to respond ran from the trial court's ruling on July 23 upholding the discovery.[14] Yet six weeks after that ruling (and, by their own account, having begun engaging the opt-ins in earnest only on August 24), they had served nothing responsive.[15]

The plaintiffs' Rule 37 argument — that Rule 37(b) authorizes sanctions only for violating an order that contains a deadline — is an argument for setting a deadline, not against one. Workday has not moved for sanctions. It asks the court to make the June 29 order administrable by fixing dates. That is ordinary case management, and the record (requests outstanding since April,

[12] *Id.* at 3–5, 7.

[13] Swedish Decl. – ECF No. 414-1 at 3–5 (¶¶ 3–14).

[14] Disc. Letter Br. – ECF No. 414 at 5.

[15] *Id.* at 6–7; Swedish Decl. – ECF No. 414-1 at 3 (¶ 3).

compelled since June, and still unanswered in September) supports doing it now.

The next issue is whether discovery from the full collective is necessary. The plaintiffs contend that it is not necessary under *Campbell* because decertification tests whether the collective may proceed as a collective, not whether each opt-in is eligible (which is a merits issue for summary judgment), and because the parties' 424-opt-in sample will supply the decertification record.[16] Those arguments go to whether discovery should have been compelled at all. The court compelled it on July 29, and the trial judge sustained it on July 23. A discovery letter is not a motion for leave to seek reconsideration, Civil L.R. 7-9, and the court will not revisit relevance here. In any event, *Campbell* does not change this analysis: it does not address the relevance of discovery about individualized merits and holds only that if a defendant prevails on decertification, the opt-ins are "dismissed without prejudice to the merits of their individual claims." 903 F.3d at 1110.

The agreed-to sample matters but only for timing. The parties chose the 425 opt-ins as the vehicle for decertification discovery, and Workday served that discovery on August 21. The responses will come due before the November 10 motion. Workday's asserted need to have the entire collective's responses in hand before it files is overstated and weakens its case for an October 9 completion date. But it does not dilute the plaintiffs' obligation to complete compelled discovery promptly. The schedule thus is as follows.

The initial production is due on September 21, 2026. Rolling productions are due every two weeks after that: October 5, October 19, November 2, November 16, and November 30, 2026. Each production must contain a list identifying the opt-in plaintiffs covered by that production. The parties must meet and confer within fourteen days of this order about reasonable measures to expedite the opt-in plaintiffs' responses, including whether Workday will provide information identifying the employers that used the software during the relevant period.[17]

---

[16] Disc. Letter Br. – ECF No. 414 at 5.

[17] *Id.* at 6 (raising this issue).

United States District Court
Northern District of California

## CONCLUSION

This resolves ECF No. 414.

**IT IS SO ORDERED.**

Dated: September 6, 2026

LAUREL BEELER
United States Magistrate Judge