# D2

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

**DEREK L. MOBLEY; JILL E. HUGHES; SHEILAH JOHNSON-ROCHA; and FAITHLINH ROWE,** on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

**WORKDAY, INC.**

Defendant.

**Case No. 3:23-cv-00770-RFL**

**DECLARATION OF JILL E. HUGHES IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

Courtroom: 15, 18th Floor

Judge: Hon. Rita F. Lin

I, Jill E. Hughes, declare as follows:

1. I am over the age of eighteen and competent to testify to the matters stated in this declaration. I make this declaration based on facts personally known to me. Where I describe my belief or understanding, I am describing my own experience as an applicant, and I am not offering expert testimony about Workday's internal software, artificial intelligence, or machine-learning systems.

2. I am a Plaintiff in *Mobley et al. v. Workday, Inc.*, Case No. 3:23-cv-00770-RFL, pending in the United States District Court for the Northern District of California. I submit this declaration in support of Plaintiffs' Motion for Class Certification.

3. I am a resident of Arlington Heights, Illinois.

## I. MY BACKGROUND

4. I was born in 1974. At all times relevant to this declaration, I was over the age of forty. I am a woman. I have one or more documented disabilities: I was previously diagnosed with cancer, and I currently have asthma.

## II. MY QUALIFICATIONS

5. I hold a Master of Arts in Media Studies from the University of Chicago and a Bachelor of Arts in English Literature from the University of Cincinnati, where I also earned a Certificate in Professional Writing. *See* ECF No. 106-2, Ex. A, Jill E. Hughes, MA Resume.

6. I have more than 28 years of professional experience in medical, technical, scientific, and legal writing and communications, including Senior Medical Communications Writer with IQVIA, Senior Medical Editor/Writer with Paradigm Medical Communications, LLC, Senior Medical Writer (Scientific Director/Scientific Lead) for the Academy for Continued HealthCare Learning, and Senior Director, Medical Information for ProCE, Inc. *See id.*

7. My professional work includes medical affairs communications, clinical policy writing, health care reimbursement communications, pharmaceutical and medical device communications, program communications, request for proposal (RFP)/request for information (RFI) and proposal writing, medical/legal review support, and multimedia or post-production content for health care and medical audiences.

8. In my experience, the combination of clinical policy, reimbursement, medical affairs, and communications skills that I possess is uncommon.

9. I have received multiple national awards for my authored clinical marketing content, including Apex Awards, MARCOM Awards, Telly Awards for Excellence in Film Production, and Hermes Creative Awards for Excellence. *See id.*

10. I am currently employed on a three-month contract with BGB Group as a Group Copy Supervisor.

11. Based on my education, work history, and professional experience, I believe I am well qualified for the positions to which I have applied through Workday, Inc.'s online job-application platform.

## III. MY APPLICATIONS VIA WORKDAY, INC.'S JOB-APPLICATION PLATFORM

12. Since at least December 2023, I have applied for hundreds of positions through Workday, Inc's online job-application platform. Examples of employers to which I have applied using the platform include, but are not limited to, 3M, Abbott, Agilent, Amgen, Becton Dickinson, Cencora, Centene Corporation, Ciena, Cigna, College Board, FIS, General Electric, Global Foundries, HCSC Corporation, Humana, Huntington National Bank, Intel, IQVIA, iRhythm, Kimberly-Clark, Pacific Life, Parsons Corporation, Smith & Nephew, Stryker, Thermo Fisher Scientific, Veralto, Yahoo, and others.

13. Since February 2025 alone, I have applied to at least 300 jobs across automated hiring platforms, including applications through Workday's platform.

14. I regularly spend time searching for and applying to jobs, including at least ten minutes per day reviewing postings and longer periods on weekends for applications that require screening questions, forms, or other steps.

15. Many of the employers to which I applied used Workday's platform to receive and process my applications. I understood that these applications were processed through Workday because the application platforms were Workday-branded; for example, Workday branding was visible in the footer or website interface, and the term "myworkday.com" was in the URL. I also understood that these applications were processed through Workday because the confirmation and rejection emails I received came from sender addresses at the myworkday.com domain.

16. Most often, I encountered Workday when I responded to job postings on websites such as LinkedIn, Indeed, Monster, or an employer's career site, and then I was redirected to the employer's specific page on Workday's platform.

17. Applying to a position through Workday's platform typically required me to create or use login credentials, upload a resume, provide structured information about my education and work history, answer application questions, and submit the application through the Workday

platform. If I wanted to apply for a job that used that system, I did not have any practical ability to bypass Workday and insist on direct review by a recruiter or hiring manager.

18. I have also experienced situations where I submitted applications to a non-Workday platform that I later learned was processed by Workday. For example, I applied to a position through Indeed, received an Indeed-branded auto-response, and then received a separate email bearing Workday branding shortly afterward for the same application, indicating that my application data had been routed through Workday after the fact. That experience led me to understand, from the applicant side, that Workday can be involved in applications submitted through integrated job boards, such as Indeed, ZipRecruiter, and other platforms, even when Workday is not apparent at the point of first application.

19. The resumes and application materials I submitted through the Workday platform reflected my education, professional history, years of experience, writing background, pharmaceutical and health care experience, and other information relevant to the jobs for which I applied. I understand those materials were the information available to be processed through the Workday platform.

20. I did not control how the Workday platform processed my applications after I submitted them. I do not know what score, ranking, filter, assessment result, dispositioning rule, or other automated process was applied to any application I submitted. I never received any meaningful information explaining how any of my applications were evaluated.

## IV. WORKDAY'S HANDLING OF MY APPLICATIONS: REPEATED REJECTIONS AND LACK OF MEANINGFUL HUMAN REVIEW

21. The applications I have submitted through the Workday platform have produced a consistent pattern of rejection or lack of response across different industries, employers, jobs, and years.

22. I have typically applied for positions through the Workday platform that matched my background. These positions are primarily in medical writing, clinical policy, reimbursement,

pharmaceutical communications, medical device communications, medical affairs, program communications, and related professional writing fields. In the majority of instances, I believe I have met or exceeded the stated requirements based on my education, experience, and work history.

23. In my experience, the typical result of my Workday-submitted applications has been either a rejection notice or no response at all. Generally, I have not been contacted by a human, nor have I received an interview or individualized feedback that would allow me to understand why I was rejected or how I could correct anything in a future application. The only Workday-indicated application that resulted in an interview was a Cardinal Health position; for all others, I did not advance past the initial automated process.

24. I have applied for multiple positions with health care, medical device, pharmaceutical, and reimbursement-related employers where my background was directly relevant. For example, I have applied to multiple positions at iRhythm, including roles in medical writing, medical communications, and brand communications, but I have received no interviews or offers through any application that I submitted through the Workday platform.

25. In some instances, my Workday-screened applications have yielded rejection emails stating or suggesting that I did not meet minimum qualifications even though, based on the posted requirements and my background, I believe I met or exceeded the requirements for the position. For example, I have applied for multiple positions with Smith & Nephew, a medical device company, through the Workday application platform. The work was in the same general medical writing and medical communications space in which I have significant experience. My background at the American Academy of Orthopaedic Surgeons, where Smith & Nephew had been a primary corporate sponsor, gave me particular familiarity with orthopedic medical communications. Despite this background, I did not receive an interview for any of the positions to which I applied at Smith & Nephew. Indeed, the email rejecting me from a Senior IP Paralegal position specifically informed me that I "do not meet the minimum requirements for the role,"

despite my extensive background and prior work as a paralegal. (Attachment A at HUGHES 018163.)

26. Regardless of the position to which I have applied, I have often received rejection notices within minutes or hours of applying. I have also received rejection notices at unusual times, including late at night, overnight, or on weekends. From my perspective as an applicant, those timing patterns do not appear consistent with meaningful individualized human review. For example, when I applied to a Manager, Clinical Training position at iRhythm, irhythmtech@myworkday.com sent me an email confirming my application on October 7, 2025, at 9:53am. (Attachment A at HUGHES 038314.) Less than 24 hours later, at 1:58am, on October 8, 2025, I received a rejection email from the same email address. (Attachment A at HUGHES 038935.)

27. Moreover, I have rarely known whether a job I applied for has been filled or whether the position has remained open or has been reposted. As an applicant, that information is generally not available to me. What I know is that I have submitted applications for roles I believed matched my qualifications and I have been repeatedly rejected or ignored.

28. I do not claim to know the internal names of Workday's software features or exactly how Workday's algorithms, models, scoring tools, or integrations work. What I know from my own experience is the result: when Workday was the gateway or appeared to be part of the screening process, I was repeatedly rejected without meaningful human contact, meaningful explanation, or an opportunity to correct or challenge the decision.

29. My experience applying through the Workday platform stands in stark contrast to my experience when human beings evaluated my candidacy. When my applications were reviewed by human recruiters and hiring managers, I repeatedly advanced to final-round interviews and received offers. I obtained a position with Inizio Evoke after seeing a posting on an online job board and applying through the Greenhouse applicant tracking system, not through Workday; I obtained a position with Citrus Communications (also known as Citrus Health Group) after the

company contacted me directly through LinkedIn and conducted interviews with me through a process that did not involve a Workday application; and I obtained a contract position with BGB Group through direct professional contact, without any online application at all.

30. Furthermore, when I initially applied to IQVIA through Workday, I was rejected, but I was subsequently hired through a non-Workday process, and I worked successfully at IQVIA for over two years. In February 2021, I applied for a Medical Writer 2 position at IQVIA through Workday, and I was rejected. I subsequently joined IQVIA as a Senior Medical Communications Writer on a temporary contract through a non-Workday process, which later converted to a full-time position. During my conversion process, IQVIA representatives explained that Workday's platform regularly automatically rejected applicants the company actually wanted to hire. I ultimately worked at IQVIA from April 2021 until August 2023.

31. Although I have done my best to provide an accurate representation of my applications via the Workday platform since December 2023, it must be noted that an applicant like me does not necessarily have access to a complete history of her applications through Workday. In some instances, the Workday platform has not preserved a complete history of my applications to a given company. For example, when I log on to my company-specific portal on the Workday platform, the portal may not show a past application, may show only a limited history, or may retain my applications for only a period of time. For example, I have applied for numerous jobs at certain employers, such as Abbott Laboratories, only to find that when I log into the employer portal now, my past application history is no longer reflected. Because of the number of applications and the way these systems operate, an applicant like me cannot always reconstruct every application from the Workday platform alone.

## V. DETERRENCE AND HARM

32. Because my applications have been repeatedly rejected through the Workday platform, I have become discouraged from applying for jobs that use Workday. The pattern of rejections has made continuing to apply through Workday feel futile.

33. When I see that an employer uses a Workday, I believe my chances of advancement are extremely low, and I expect the same result: rejection or no response. As a result, recently, I have either avoided or I have considered avoiding applying for positions when I identify Workday involvement.

34. However, because employers in my field and geographic area commonly use Workday's application platform, I may have no choice but to submit future job applications through that platform.

35. I continue to seek employment and intend to continue applying for jobs. I want to use my qualifications to obtain stable work, improve my compensation, and advance my career.

36. The repeated rejections have caused me to lose employment opportunities, income, and career advancement opportunities. They have also caused frustration, discouragement, and emotional distress.

## VI. COMMON EXPERIENCE, TYPICALITY, AND CLASSWIDE RELIEF

37. My experience with the Workday platform was not limited to a single employer, a single job posting, or one isolated hiring decision. I experienced a similar pattern across dozens of different employers and hundreds of positions, spanning multiple industries and time periods.

38. From my perspective as an applicant, the common feature was Workday, Inc's online job-application platform. For the majority of my applications, I was required to submit information through the platform; I had no practical ability to control how the platform evaluated that information; and I generally was not told how any recruitment, screening, rejection, scoring, ranking, shortlisting, or recommending decision was made.

39. I believe my claims are typical of the claims of other applicants in the protected groups I seek to represent – women and disabled applicants – because my claims arise from the same use of Workday's AI-based applicant recruitment, screening, rejection, scoring, ranking, shortlisting, or recommendation process and candidate-selection tools, including HiredScore Spotlight, Fetch, and Candidate Skills Match. I also believe I have been discriminated against on

the basis of age and have opted in to the ADEA collective action, but I do not seek to represent applicants over the age of forty in the California FEHA claims.

40. I seek relief that would benefit the class as a whole, including declaratory relief, injunctive relief, changes to Workday's screening practices, and appropriate monetary relief for applicants harmed by the challenged process.

## VII. ADEQUACY AND WILLINGNESS TO SERVE

41. I am willing to serve as a class representative for the subclasses and claims that correspond to my protected characteristics and experience. I understand that this role requires me to protect the interests of absent class members and not place my personal interests ahead of theirs.

42. I do not have any conflict with the class members I seek to represent. My interests are aligned with theirs: to challenge Workday's common employment practices and obtain relief that makes Workday's process fairer for applicants.

43. I have participated in this litigation by communicating with counsel, providing information, searching for and producing documents available to me, responding to discovery, appearing for deposition, and remaining available to assist counsel. I have appeared for two depositions in this matter, on February 10, 2025, and on June 18, 2026.

44. I understand that my lawyers handle legal filings and legal strategy, but I also understand my responsibility to provide truthful information, participate in discovery, assist counsel, and make decisions in the best interests of the class.

45. I am prepared to continue participating in this case, including by responding to additional reasonable requests for information, sitting for deposition or trial testimony if required, reviewing major developments with counsel, and considering settlement or class-wide relief issues with the interests of the class in mind.

46. Attachment A is a true and correct copy of the documents related to my applications through the Workday platform referenced in my declaration.

47. I respectfully submit this declaration in support of Plaintiffs' Motion for Class Certification.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on 9/14/2026, at Arlington Heights, Illinois.

DocuSigned by:
Jill Hughes
2A4F34CF5AC7476...

JILL E. HUGHES

# ATTACHMENT A

Redacted

---------- Forwarded message ---------
From: **workday smith-nephew** <smithnephew@myworkday.com>
Date: Wed, Apr 24, 2024 at 9:26 AM
Subject: Smith+Nephew - Application
To: [redacted]

Smith+Nephew

Hi J,

Thank you for considering us as your next employer by expressing interest in the Senior IP Paralegal (Andover, MA or remote) opening.

After careful review of your application, we regret to inform you that you do not meet the minimum requirements for this role.

We hope to keep in touch with you for future openings. Please consider joining our Talent Community, which allows you to stay up to date with job opportunities, company news and upcoming events. Join here: S+N Talent Community.

You can also find a complete list of our current openings through our Careers Page at any time.

Thank you again for your time and interest in Smith+Nephew and we wish you success in all your future endeavors.

Sincerely,

Smith+Nephew Talent Acquisition Team

Smith+Nephew

This email was intended for [redacted]

**From:** "irhythmtech@myworkday.com" <irhythmtech@myworkday.com> on behalf of "irhythmtech@myworkday.com"
**Sent:** Tue, 7 Oct 2025 09:53:29 -0600
**To:** [redacted]
**Subject:** Thank You For Applying!

iRHYTHM®

Dear Jill,
Thank you so much for applying!

Your application will be taken into careful consideration and you will hear back from us after we review your application.

Thanks,
iRhythm Talent Acquisition Team
**View Details**

This email was intended for [redacted]

**From:** "irhythmtech@myworkday.com" <irhythmtech@myworkday.com> on behalf of "irhythmtech@myworkday.com"
**Sent:** Wed, 8 Oct 2025 01:58:00 -0600
**To:** [redacted]
**Subject:** Thank You For Your Interest in iRhythm - Manager, Clinical Training

Hi Jill Hughes ,

Thank you for your interest in iRhythm Technologies. We sincerely appreciate the time you took to apply to the Manager, Clinical Training role.

We were very fortunate to have a strong group of applicants to consider for this role and have decided to move forward with other candidates. Please know that we will hold onto your application. We encourage you to keep an eye on our career site for other positions you may find interesting.

Again, we appreciate your interest and wish you all the best.

Sincerely,
The iRhythm Talent Acquisition Team

Click here to view the notification details.

This email box is not monitored. Please do not reply to this message.

workday

This email was intended for [redacted]