# D3

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

**DEREK L. MOBLEY; JILL E. HUGHES; SHEILAH JOHNSON-ROCHA; and FAITHLINH ROWE,** on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

**WORKDAY, INC.**

Defendant.

**Case No. 3:23-cv-00770-RFL**

**DECLARATION OF SHEILAH JOHNSON-ROCHA IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

Courtroom: 15, 18th Floor

Judge: Hon. Rita F. Lin

I, Sheilah Johnson-Rocha, declare as follows:

1. I am over the age of eighteen and competent to testify to the matters stated in this declaration. I make this declaration based on facts personally known to me. Where I describe my belief or understanding, I am describing my own experience as an applicant, and I am not offering expert testimony about Workday's internal software, artificial intelligence, or machine-learning systems.

2. I am a Plaintiff in *Mobley et al. v. Workday, Inc.*, Case No. 3:23-cv-00770-RFL, pending in the United States District Court for the Northern District of California. I submit this declaration in support of Plaintiffs' Motion for Class Certification.

3. On August 24, 2026, I filed a complaint against Workday, Inc. with the California Civil Rights Department, alleging a violation of the California Fair Employment and Housing Act, California Government Code § 129490 et seq. On August 24, 2026, I received a right-to-sue notice.

4. I am a resident of Bensalem, Pennsylvania.

## I. MY BACKGROUND

5. I was born in 1983. At all times relevant to this declaration, I was over the age of forty. I am an African American woman.

## II. MY QUALIFICATIONS

6. I hold a Master of Science with a major in Management from Colorado State University, a Bachelor of Business Administration from Strayer University, and an Associate in Arts in Business Administration from Strayer University. I also possess certifications and specialized training relevant to the pharmaceutical, biotechnology, clinical research, project management, data, and artificial-intelligence fields. *See* ECF No. 106-4, Ex. A, Sheilah Johnson-Rocha, MSc., ChFM, MPM Resume.

7. I have more than 21 years of professional experience in the pharmaceutical and biotechnology industries, including clinical operations, clinical trial management, quality and compliance, risk management, project and program management, clinical systems, process development, digital tools, and related management work.

8. My most recent professional employer was Takeda, where I served as Director, Project Management and Clinical Operations, Oncology and Cell Therapy Leadership until March 2023 and oversaw the rollout of Workday's Human Capital Management (HCM) system, among other responsibilities. I have also held Director-level roles at Ergomed and Premier Research LLC and Senior Project Manager roles at Parexel, Syneos Health, IQVIA, and Covance.

9. I have completed substantial training in artificial intelligence (AI), generative AI, large language models, natural language processing, data analytics, data engineering, AI governance, AI for business and health care, and related subjects. I have also pursued AI-related work connected to clinical research through the company I started, Aurelyn AI.

10. Based on my education, work history, and professional experience, I believe I am well qualified for the positions to which I have applied through Workday, Inc.'s online job-application platform.

## III. MY APPLICATIONS VIA WORKDAY, INC.'S JOB-APPLICATION PLATFORM

11. Since at least March 2023, I have applied for thousands of positions through Workday, Inc's online job-application platform. Examples of employers to which I have applied using the platform include, but are not limited to, Amgen, Asklepios BioPharmaceutical, Inc., Astra Zeneca, Beigene, Bristol Myers Squibb, Daiichi Sankyo, Exact Sciences, Genmab, Gilead, Glaxo Smith Kline, Haleon, Immunovant, Inc., Johnson and Johnson, Lilly, Merck, Sanofi, Sarepta Therapeutics, Thermo Fisher Scientific, United Therapeutics, Vertex, Viatris, and others.

12. I estimate that I applied to over approximately 500 companies in total many of which appeared to be on Workday's platform.

13. Many of the employers to which I applied used Workday's platform to receive and process my applications. I understood that these applications were processed through Workday because the application platforms were Workday-branded; for example, Workday branding was visible in the footer or website interface, and the term "myworkday.com" was in the URL. I also understood that these applications were processed through Workday because the confirmation and rejection emails I received came from sender addresses at the myworkday.com domain.

14. Most often, I encountered Workday when I responded to job postings on websites such as LinkedIn and then was redirected to the employer's page on Workday's platform.

15. Applying to a position through Workday's platform typically required me to create or use login credentials, upload a resume, provide structured information about my education and work history, answer application questions, and submit the application through the Workday platform. If I wanted to apply for a job that used that system, I did not have any practical ability to bypass Workday and insist on direct review by a recruiter or hiring manager.

16. The resumes and application materials I submitted through the Workday platform reflected my education, professional history, years of experience, pharmaceutical and biotechnology experience, and other information relevant to the jobs for which I applied. I

understand those materials were the information available to be processed through the Workday platform.

17. In my experience, Workday's parsing did not reliably capture my resume or CV information in the correct fields. I have never had an instance where Workday appropriately parsed my CV when I uploaded it. The information would appear scattered in the incorrect boxes and format, requiring me to go back and re-enter all of the information into the fields manually.

18. I did not control how the Workday platform processed my applications after I submitted them. I do not know what score, ranking, filter, assessment result, dispositioning rule, or other automated process was applied to any application I submitted. I never received any meaningful information explaining how any of my applications were evaluated.

## IV. WORKDAY'S HANDLING OF MY APPLICATIONS: REPEATED REJECTIONS AND LACK OF MEANINGFUL HUMAN REVIEW

19. The applications I have submitted through the Workday platform have produced a consistent pattern of rejection or lack of response across different industries, employers, jobs, and years.

20. I have typically applied for positions through the Workday platform that matched my background. In the majority of instances, I believe I have met or exceeded the stated requirements based on my education, experience, and work history.

21. In my experience, the typical result of my Workday-submitted applications has been either a rejection notice or no response at all. Generally, I have not been contacted by a human, nor have I received an interview or individualized feedback that would allow me to understand why I was rejected or how I could correct anything in a future application.

22. I have applied for multiple positions involving clinical operations, clinical project management, study management, trial management, quality, compliance, oncology operations, digital clinical operations, AI and digital strategy, and related pharmaceutical or biotechnology functions. For example, I applied for more than 30 roles at Johnson and Johnson (who uses

Workday), and never received an interview, including multiple roles for which I was personally referred.

23. In the heavily regulated clinical research and life sciences settings, my experience is directly relevant to many director-level and senior-level roles for which I applied. I have applied to multiple roles at Sarepta Therapeutics, including Director of Clinical Operations Program Lead, Associate Director of Clinical Operation Lead, and others, and I did not receive an interview. At Thermo Fisher Scientific, I have applied for numerous jobs, such as Director of Strategic Growth and Innovation and AD Project Management – Oversight Function, Late Phase Trials Team, and I did not receive an interview.

24. Regardless of the position to which I have applied, I have often received rejection notices shortly after applying. I have also received rejection notices at unusual times, including late at night, overnight, or on weekends. From my perspective as an applicant, those timing patterns do not appear consistent with meaningful individualized human review. For example, I have received rejection notices on the weekend at 5:30 a.m., 4:10 a.m., and 1:46 a.m.

25. Some of the jobs for which I applied were continuously reposted. When positions were reposted, I often reapplied, only to receive another apparently automated rejection or no meaningful response.

26. In 2025 and 2026, after repeated Workday-related rejections, I also observed that some applications offered a way to opt out of AI review or AI involvement. In one instance, I selected an option to opt out of AI review for what I believe was a Director of Clinical Operations position with Pfizer. Despite selecting that option, I received an email from an AI talent specialist named Claudia, who identified herself as AI and stated she was reviewing my CV and that I would hear back soon. I was later rejected.

27. Moreover, I have rarely known whether a job I applied for has been filled or whether the position has remained open or has been reposted. As an applicant, that information is

generally not available to me. What I know is that I have submitted applications for roles I believed matched my qualifications and I have been repeatedly rejected or ignored.

28. I do not claim to know the internal names of Workday's software features or exactly how Workday's algorithms, models, scoring tools, or integrations work. What I know from my own experience is the result: when Workday was the gateway or appeared to be part of the screening process, I was repeatedly rejected without meaningful human contact, meaningful explanation, or an opportunity to correct or challenge the decision.

29. Although I have done my best to provide an accurate representation of my applications via the Workday platform, it must be noted that an applicant like me does not necessarily have access to a complete history of her applications through Workday. In some instances, the Workday platform has not preserved a complete history of my applications to a given company. For example, when I log on to my company-specific portal on the Workday platform, the portal may not show a past application, may show only a limited history, or may retain my applications for only a period of time. Because of the number of applications and the way these systems operate, an applicant like me cannot always reconstruct every application from the Workday platform alone.

## V. DETERRENCE AND HARM

30. Because my applications have been repeatedly rejected through the Workday platform, I have become discouraged from applying for jobs that use Workday. The pattern of rejections has made continuing to apply through Workday feel futile.

31. When I see that an employer uses Workday, I believe my chances of advancement are extremely low, and I expect the same result: rejection or no response. As a result, recently, I have either avoided or I have considered avoiding applying for positions when I identify Workday involvement.

32. However, because employers in my field and geographic area commonly use Workday's application platform, I may have no choice but to submit future job applications through that platform.

33. I continue to seek employment and intend to continue applying for jobs. I want to use my qualifications to obtain stable work, improve my compensation, and advance my career.

34. The repeated rejections have caused me to lose employment opportunities, income, and career advancement opportunities. They have also caused frustration, discouragement, and emotional distress.

## VI. COMMON EXPERIENCE, TYPICALITY, AND CLASSWIDE RELIEF

35. My experience with the Workday platform was not limited to a single employer, a single job posting, or one isolated hiring decision. I experienced a similar pattern across hundreds of employers and thousands of positions, spanning multiple industries and time periods.

36. From my perspective as an applicant, the common feature was Workday, Inc's online job-application platform. For the majority of my applications, I was required to submit information through the platform; I had no practical ability to control how the platform evaluated that information; and I generally was not told how any recruitment, screening, rejection, scoring, ranking, shortlisting, or recommending decision was made.

37. I believe my claims are typical of the claims of other applicants in the protected groups I seek to represent – African Americans and women – because my claims arise from the same use of Workday's AI-based applicant recruitment, screening, rejection, scoring, ranking, shortlisting, or recommendation process and candidate-selection tools, including HiredScore Spotlight, Fetch, and Candidate Skills Match.

38. I seek relief that would benefit the class as a whole, including declaratory relief, injunctive relief, changes to Workday's screening practices, and appropriate monetary relief for applicants harmed by the challenged process.

## VII. ADEQUACY AND WILLINGNESS TO SERVE

39. I am willing to serve as a class representative for the subclasses and claims that correspond to my protected characteristics and experience. I understand that this role requires me to protect the interests of absent class members and not place my personal interests ahead of theirs.

40. I do not have any conflict with the class members I seek to represent. My interests are aligned with theirs: to challenge Workday's employment practices and obtain relief that makes Workday's process fairer for applicants.

41. I have participated in this litigation by communicating with counsel, providing information, searching for and producing documents available to me, responding to discovery, appearing for deposition, and remaining available to assist counsel. I have appeared for depositions on three occasions in this matter, on February 11, 2025; February 17, 2025; and June 17, 2026.

42. I understand that my lawyers handle legal filings and legal strategy, but I also understand my responsibility to provide truthful information, participate in discovery, assist counsel, and make decisions in the best interests of the class.

43. I am prepared to continue participating in this case, including by responding to additional reasonable requests for information, sitting for deposition or trial testimony if required, reviewing major developments with counsel, and considering settlement or class-wide relief issues with the interests of the class in mind.

44. I respectfully submit this declaration in support of Plaintiffs' Motion for Class Certification.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on 9/14/2026, at Bensalem, Pennsylvania.

DocuSigned by:

DD68526731894 5D

SHEILAH JOHNSON-ROCHA